**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

|  |  |  |
|---|---|---|
| ALEJANDRO UMAÑA,<br>Movant, | : | No. 16-CV-00057-RJC<br>(3:08cr134-2) |
|  | : |  |
| -v- | : | **CAPITAL § 2255 PROCEEDINGS** |
| UNITED STATES OF AMERICA,<br>Respondent. | : | HON. ROBERT J. CONRAD JR. |

**MR. UMAÑA'S RESPONSE TO THE GOVERNMENT'S REQUEST FOR AN OPPORTUNITY TO RESPOND TO THE MOTION TO VACATE BEFORE RESOLUTION OF DISCOVERY**

Mr. Umaña filed his discovery request in compliance with this Court's scheduling order and with great care to ensure that the good cause that underlies every request was spelled out in great detail. Rather than responding to Mr. Umaña's discovery requests, the Government instead asks this court to change course by seeking to have the court dismiss claims in advance of discovery. Doing so would not only be legally inappropriate, but would also greatly prejudice Mr. Umaña; he is entitled to discovery not only to support his substantive claims but also to demonstrate the invalidity of procedural bars the Government might seek to interpose. Moreover, there is nothing that prevents the Government from asserting in response to any individual claim that discovery is unnecessary because that particular claim is legally insufficient.

1

**A.  Mr. Umaña has presented detailed and reasonable discovery requests.**

It is first important to keep the number and quality of the discovery requests made by Mr. Umaña in perspective.  Fifty percent of the claim-specific-discovery requests pertain to the allegations of other murders in California (Claims V, VI, and VII).  *See* ECF Doc. No. 36-1 at 13-50.[1]  The allegations of other murders dominated the Government's case for death at Mr. Umaña's sentencing trial and was the first and only time there was any fact-finding into these murders in any jurisdiction.  Mr. Umaña has raised serious concerns that a significant amount of discovery relating to these California murders was never produced at trial, including recorded interviews of exculpatory eyewitnesses.  ECF Doc. No. 36-1 at 9, 36-37.  The Discovery Motion lays out evidence supporting these concerns. This includes a letter from the California District Attorney's Office to the Charlotte United States Attorney's Office which enclosed discovery relating to the California murders.  ECF Doc. No. 36-4, Exhibit 17.  The DA's Office made clear that the discovery it was providing was limited since their office had not received, nor would it be asking for, the complete investigative Los Angeles Police Department file.  *Id*.  The Discovery Motion also includes three transcripts of audio-taped interviews of testifying witnesses produced by the Government after the filing of the § 2255 Motion.  ECF Doc. No. 36-4, Exhibits 20, 21, and 22.  These recordings suggest that the trial prosecutors themselves likely never received the recordings

-----

[1] Discovery requests starting at page 77 relate to the broad disclosure obligations under *Brady v. Maryland*, 373 U.S. 83, 87 (1963) and *Giglio v. United States*, 405 U.S. 150, 154 (1972) imposed on the Government by both constitutional doctrine and the Department of Justice's own ethical guidelines for its prosecutors and are not tailored to specific claims within the § 2255 Motion.  ECF Doc. No. 36-1 at 77 - 89.  These obligations exist regardless of whether or not Mr. Umaña makes a specific request.

since the prosecutors' proffers to the Court relating to reliability and the testimony elicited from the witnesses are in direct contradiction to the newly produced evidence. *See* ECF 36-1 at 19-22. There is little reason to dispute that there is currently additional, outstanding discovery that relates directly to these unadjudicated murders.

Moreover, Mr. Umaña's discovery requests are carefully detailed to show the Court why good cause exists. To the extent possible, Mr. Umaña provided specific information of discovery he knows to be missing, including tape numbers of video or audio recordings of eyewitness interviews. Mr. Umaña lists additional evidence he has reason to believe exists and is relevant to his § 2255 claims. Importantly, Mr. Umaña argued that the majority of the discovery requests relating to the California murders can be resolved by coordinating access to the LAPD and FBI investigative files.[2]

In addition to the claims relating to the California murders, Mr. Umaña laid out good cause for all other requests in his Discovery Motion by explaining how the discovery sought could help support the specific claims in his § 2255 Motion. This includes, for example, requests in support of his claims of ineffective assistance of counsel and prosecutorial misconduct in Claims I, VI, VII and XIII, relating to the Government's investigation into Mr. Umaña's background. ECF Doc. No. 36-1 at 50-56. Despite the fact that the Government investigated Mr. Umaña's background prior to trial by contacting and interviewing people who knew him as a child, no discovery was produced

---

[2] According to a one-page FBI-302 produced in discovery, between January 11 to January 16, 2009, FBI agents and prosecuting attorneys traveled to Los Angeles for meetings, interviews, and investigation. *See* January, 2009 FBI-302 attached to ECF 36-1 as Exhibit 18. No discovery relating to the meetings and interviews was produced. *See* ECF 36-1 at 16-17.

3

regarding the investigation other than a half-page of notes by the prosecuting attorney.  ECF Doc. No. 22-18, Appendix 75.  To the extent Mr. Umaña was aware of a contact and/or interview, he requested specific discovery.  Since Mr. Umaña is not privy to the full scope of the Government's investigation, he also made broader requests of additional information that the Government might possess.  Information gathered by the prosecution team is critical, considering the limited scope of the evidence regarding Mr. Umaña's childhood, background, and history that was shown to the jury at the sentencing phase of his trial.[3]

Other discovery requests are obligated by statute.  For example, Mr. Umaña "has essentially an unqualified" right to inspect and copy the relevant jury lists in order to determine whether the venire was drawn in compliance with statutory and constitutional law.  *Test v. United States*, 420 U.S. 28, 29-30 (1975); *See also* 28 U.S.C. § 1867(f); *United States v. Curry*, 993 F.2d 43, 44 (4th Cir. 1993) ("Under *Test*, Curry was entitled to inspect, reproduce, and copy the master jury list to support a motion for a new trial based upon a substantial failure to comply with the provisions of 28 U.S.C. §§ 1861-68 ('the Act') in selecting the grand or petit jury.").

In sum, the Discovery Motion is reasonably detailed so that the Court can make an informed decision relating to good cause.

---

[3] Information of Mr. Umaña's childhood and family is a "constitutionally indispensable part of the process of inflicting the penalty of death," *Woodson v. North Carolina*, 428 U.S. 280, 304 (1976), and "might well have influenced the jury's appraisal of his moral culpability." *Williams v. Taylor*, 529 U.S. 362, 398 (2000).

**B. Mr. Umaña Is Entitled To A Fully-Developed Factual Record to Support His Motion Prior to the Resolution of the Claims.**

Because the requests are tied to specific claims and provide the good cause basis for their production, there is no reason to place the resolution of these requests on hold. The Government's position that legal resolution of the claims should come prior to factual development of the record is not supported by Supreme Court precedent. Habeas corpus discovery does not require that the Court first determine whether or not the claims are meritorious, or even whether or not a petitioner is entitled to an evidentiary hearing in order to compel production of discovery. Instead, Mr. Umaña need only demonstrate that "specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997) (quoting *Harris*, 394 U.S. at 286). Indeed, in *Bracy*, the petitioner filed his discovery motion simultaneously with his habeas corpus petition. *Id*. at 902, 909.[4] The Supreme Court recognized that Mr. Bracy may not have been able to succeed on the merits of his claim but nevertheless ordered discovery. *Id*. at 909. Thus, *Bracy* demonstrates that ordering discovery is necessary to allow a petitioner to fully develop the factual basis of his claims for relief. Accordingly, the Government's suggestion that this Court should not rule on Mr. Umaña's discovery requests until after determining the merits of his claims places the proverbial cart before the horse and is contradicted by *Bracy*.

---

[4] The Government previously objected to Mr. Umaña's pre-petition discovery motion (ECF Doc. No. 13), stating such a motion was premature. ECF 18 at 2 (citing *Calderon v. United States District Court*, 98 F.3d 1102, 1109 (9th Cir. 1996)). As explained in detail below, "[o]nce filed, however, [the] petition should not be subject to dismissal until after the court has dealt with the discovery request." *Calderon*, 98 F.3d at 1109 (Schroder, J., concurring).

Nor, as the Government contends, does discovery rise or fall on issues of perceived procedural bars possibly offered in defense of the actual § 2255 Motion. The *Bracy* Court's focus on the "good cause" requirement makes clear that even the possible existence of a procedural impediment that could ultimately prevent the Court from granting relief does not alter the availability of discovery. In *Bracy*, any facts developed through federal discovery would have been unexhausted, *see Keeney v. Tamayo-Reyes*, 504 U.S. 1, 9-10 (1992), and it appears that the judicial bias claim itself was unexhausted. *See Bracy*, 520 U.S. at 902; *United States ex rel. Collins v. Wellborn*, 868 F. Supp. 950, 991 (N.D. Ill. 1994) (indicating bias claim raised for first time on post-conviction appeal in state court). But the *Bracy* court did not impose any additional requirement before compelling discovery other than the "good cause" standard already imposed by Rule 6(a) itself. *See also Jones v. Woods*, 114 F.3d 1002, 1009-1010 (9th Cir. 1997) (allowing discovery on apparently unexhausted claim without reference to exhaustion and without regard to potential availability of evidentiary hearing); *McDaniel v. United States District Court (Jones)*, 127 F.3d 886, 888 (9th Cir. 1997) (relying solely on "good cause" requirement of *Bracy*).

Moreover, discovery is necessary *before* determining whether to invoke procedural bars and/or whether the defendant can demonstrate "cause" and "prejudice" to excuse any procedural bar raised by the Government. *See, e.g., Murray v. Carrier*, 477 U.S. 478, 485 (1986). The discovery of new evidence may constitute cause upon a showing that the factual basis for a claim "was not reasonably available to counsel." *Id.* at 488; *McCleskey v. Zant*, 499 U.S. 467, 494 (1991). Thus, the Government's apparent position that this Court must first rule on the claims, or even any procedural aspects of those claims, before providing discovery is wrong.

6

Indeed, other federal judges have recognized the fact development function of discovery and authorized discovery in capital Section 2255 cases before the Government's response to the § 2255 Motion was filed. *See United States v. Lawrence*, No. 15-cv-3060, ECF Doc. No. 341 (S.D. Ohio Jan. 11, 2016) (ordering dates for filing of discovery motion, the Government's response, and defendant's reply and noting that the Government's Response to the § 2255 Motion would be scheduled at a later time); *Barnette v. United States*, 12-cv-327-V, ECF Doc. No. 53 (W.D. NC, Aug. 9, 2013) (ordering resolution of discovery prior to Government's responsive pleadings); *Purkey v. United States*, 06-cv-8001-W-FJG, ECF Doc. No. 29 (W.D. Mo., Sept. 6, 2007) (Gaitan, J.) (ordering pre-petition discovery); *Fulks v. United States*, 4:02-cr-992-JFA, ECF Doc. No. 1115 (D.S.C., Sept. 18, 2008) (granting discovery before the government had filed its response to the § 2255 Motion); and *Hall v. United States*, 94-cr-00121-Y-2, ECF Doc. No. 969 (N.D. Texas, June 19, 2000) (ordering the resolution of discovery prior to Government's responsive pleadings).

The grant of discovery is also not connected with whether or not the petitioner demonstrates his entitlement to an evidentiary hearing. This procedure makes sense in light of the differing standards and purposes of discovery and an evidentiary hearing. A petitioner is entitled to discovery, upon a showing of good cause, in order to permit the petitioner to *develop the facts* demonstrating his entitlement to relief. Under Section 2255, an evidentiary hearing is required unless "the motion and the files and the records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also Payne v. Bell*, 89 F.Supp.2d 967,970-71 (W.D. Tenn. 2000) (finding that petitioner need not establish his entitlement to relief on the merits of his claims since good cause to grant discovery is not as high as the standard for granting relief or even as that for granting an evidentiary hearing). A petitioner must *plead and present sufficient facts*

7

supporting his legal claims in order to demonstrate his or her entitlement to an evidentiary hearing. *See Jones*, 114 F.3d at 1009 (habeas petitioner entitled to post-conviction discovery testing of physical evidence prior to dismissal of claims because "such discovery is essential for Jones to develop fully his ineffective assistance of counsel claim," and the test results may establish the prejudice required to make out such a claim."); *East v. Scott,* 55 F.3d 996, 1002 (5th Cir. 1995) (petitioner demonstrated "good cause" to conduct discovery in support of his due process claim where witnesses and their files were necessary to fully develop the facts needed to consider petitioner's claim); *Toney v. Gammon*, 79 F.3d 693, 700 (8th Cir. 1996) (reversing the district court's denial of discovery where discovery was necessary for petitioner to fully develop the facts of his ineffective assistance of counsel claim).[5] In other words, the process of developing facts comes prior to determining if sufficient facts were plead and presented to warrant an evidentiary hearing. Thus, requiring that Mr. Umaña demonstrate his entitlement to an evidentiary hearing before granting him the discovery required in order to develop the facts necessary to accomplish that task (i.e., demonstrating an entitlement to a hearing) is directly contradicted by *Bracy* and Section 2255 procedure.

---

[5] The Government relies on *Engelen v. United States*, 68 F.3d 238, 241 (8th Cir. 1995) and *Jackson v. United States*, 638 F.Supp. 2d 514 (W.D.N.C. 2009) to support the argument that Mr. Umaña's § 2255 Motion can be dismissed without the resolution of discovery. ECF 39 at 5. Neither *Engelen* nor *Jackson* addressed the standard for permitting discovery but simply addressed the standard for obtaining an evidentiary hearing. *Engelen*, 68 F.3d at 241; *Jackson*, 638 F.Supp. 2d at 524.

**C.** **The Resolution of These Requests Prior to the Court's Legal Determination of Mr. Umaña's Capital §2255 Claims is Necessary and More Efficient.**

The Government has not provided any reason why it cannot address the legal sufficiency of any particular claim as part of its response to the Discovery Motion. If the Court agrees with the Government that Mr. Umaña has not set forth sufficient good cause for discovery because the claim would be legally insufficient, then the Court need not address the "specificity, scope, materiality and privilege issues" surrounding the requests related to that claim. *See* ECF 39 at 11.

On the other hand, developing the factual record prior to the Government's response and the Court's resolution of the claims is more efficient and necessary in this case for several reasons. One reason is that the discovery requests relate to defenses to potential procedural bars raised by the Government. The Government asserts, for example, that numerous ineffective assistance of counsel and *Brady v. Maryland*, 373 U.S. 83 (1963) claims can be resolved without discovery because the Court need only look at the *facts already alleged* in the § 2255 Motion and *the record* to determine if Mr. Umaña would have received a sentence of death even if his allegations were proven to be true. ECF Doc. No. 39 at 13. Without the full complement of factual support, however, the parties cannot accurately respond to the viability of the claims. Nor can the Court make a sound determination.

The recent production of recorded interviews after the filing of the § 2255 Motion is a good example of why discovery should come first. In the § 2255 Motion, Mr. Umaña alleged counsel was ineffective in challenging the only witness to identify Mr. Umaña as the shooter in Lemon Grove Park and the Government committed misconduct in failing to produce recordings of this witness's pre-trial interviews. At trial, on direct and cross-examination, the witness testified that despite his pre-trial written statement indicating some uncertainty, he actually was confident when

9

making the identification of Mr. Umaña as the Lemon Grove Park shooter.  ECF Doc. No. 36-1 at 19-20.  If the Government were to respond to the § 2255 Motion prior to the production of the taped interviews, the Government may have argued that even if the facts alleged in the § 2255 Motion were true, it would not have changed the sentence of death since trial counsel was able to present some prior inconsistent statements made by the witness.

The recently produced discovery changes that analysis.  Contrary to the record before the Court, the tapes show there was actually no ambiguity about the witness's inability to identify Mr. Umaña as the shooter.  The witness repeatedly stated he did not see the shooter's face and could not identify him.  ECF 36-1 at 20-22.  It was only after persistence from the detective that the witness chose Mr. Umaña but again reiterated that he did not recognize the face of the shooter.  *Id.* at 21.  When the detective asked if the witness could state he was "sure" about his identification, the witness unequivocally said "No. I'm not sure. No." *Id.* at 22.  The recently produced discovery also clarifies and amplifies Mr. Umaña's *Brady* and *Napue v. Illinois*, 360 U.S. 264 (1959) claims by putting into context the prosecutor's proffer to the Court that the witness's testimony should be permitted since the witness said "I will never forget that face" or the prosecutor successfully soliciting a response from the witness that he was "sure" about his identification of Mr. Umaña. ECF 36-1 at 19-22.  Thus, having the full facts would assist both parties to address the true scope of the claims, and allow the Court to make a final accurate legal determination.

Conducting discovery prior to the resolution of the claims by the Court also provides Mr. Umaña the ability to amend his § 2255 Motion.  Under Federal Rule of Civil Procedure 15, a court should "freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2).  This does not mean that Mr. Umaña can seek to add in new claims or new theories into the case but can

10

seek to clarify or amplify a claim or theory in the motion by way of additional facts. "[T]he thrust of Rule 15 is to reinforce the principle that cases should be tried on their merits rather than the technicalities of pleadings." *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir. 1986) (internal citations and quotations omitted); *see also United States v. Weintraub*, 871 F.2d 1257, 1259 (5th Cir. 1989) (amendment after new information revealed during discovery). It makes sense to provide Mr. Umaña with discovery so as to permit him to clarify or amplify his motion prior to any legal determination of the merits of the claims.

Finally, the need for the development of the full record is particularly true in capital cases because the "finality" of death and its "qualitative[] differen[ce] from a sentence of imprisonment, however long," magnifies the "need for reliability" and, accordingly, the need for reliable fact-determination procedures. *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976). Because habeas corpus discovery is designed to aid courts in determining the validity of the movant's claims, it is indispensable to the reliability of habeas corpus proceedings in capital cases. *Wilson v. Butler*, 825 F.2d 879, 883 (5th Cir. 1987) ("[I]f death is involved, the petitioner should be presented every opportunity possible, consistent with the interests of the state, to present facts relevant to his constitutional claims."); *Payne v. Bell*, 89 F. Supp. 2d 967, 971 (W.D. Tenn. 2000) ("more liberal discovery is appropriate in capital cases where the stakes for prisoners are so high"). Because this is a death penalty case, broad discovery is necessary to ensure that extra measure of process which is demanded under the circumstances.

### D. Conclusion

For the reasons described above and in Mr. Umaña's prior submissions, the Government's request for placing the resolution of discovery on hold is unavailing, and should be denied. The

11

Government should be ordered to respond to Mr. Umaña's discovery motion within a reasonable amount of time as determined by the Court.

If, however, the Court grants the Government's request to file a response to the § 2255 Motion prior to discovery, Mr. Umaña requests that the Court order that Mr. Umaña be allowed to amend his § 2255 Motion under Rule 15 within a reasonable time as ordered by the Court *after* the resolution of his discovery requests. Mr. Umaña also requests that he be given the additional 120 days to file a reply to the Government's response to the § 2255 Motion as agreed to by the Government. Mr. Umaña's requests will ensure the careful and full consideration is given to his claims.

Dated: December 1, 2016                                             Respectfully submitted,


*/s/ Kenneth J. Rose*                                              */s/ Zandra L. Lopez*
**KENNETH J. ROSE**                                           **ZANDRA L. LOPEZ**

The Center for Death Penalty Litigation        Federal Defenders of San Diego, Inc.
123 West Main Street, Suite 700                     225 Broadway, Suite 900
Durham, North Carolina 27701-3228            San Diego, California 92101-5030
Telephone: 919-956-9545                               Telephone: 619-234-8467
ken@CDPL.ORG                                            Zandra_Lopez@fd.org
Attorneys for Alejandro Umaña                      Attorneys for Alejandro Umaña

12

**CERTIFICATE OF SERVICE**

I hereby certify that on December 1, 2016, I electronically filed the foregoing Response to the Government's Request for an Opportunity to Respond to the Motion to Vacate before Resolution of Discovery with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the following:

> Anthony J. Enright
> Assistant United States Attorney
> Suite 1650, Carillon Building
> 227 West Trade Street
> Charlotte, NC 28202
> Anthony.enright@usdoj.gov

> */s/ Kenneth J. Rose*
> **KENNETH J. ROSE**
> The Center for Death Penalty Litigation
> 123 West Main Street
> Suite 700
> Durham, North Carolina 27701-3228
> Telephone: 919-956-9545
> ken@CDPL.ORG

> */s/ Zandra L. Lopez*
> **ZANDRA L. LOPEZ**
> Federal Defenders of San Diego, Inc.
> 225 Broadway, Suite 900
> San Diego, California 92101-5030
> Telephone: 619-234-8467
> Zandra_Lopez@fd.org

> Attorneys for Alejandro Umaña

13