IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:16cv57-RJC
(3:08cr134-RJC-2)

| | |
|---|---|
| ALEJANDRO ENRIQUE RAMIREZ UMAÑA ) <br> ) <br>     **Petitioner,** ) <br> ) <br> v. ) <br> ) <br> UNITED STATES OF AMERICA ) <br> ) <br>     **Respondent.** ) <br> _____ ) | **ORDER** |

**THIS MATTER** is before the Court upon Petitioner Alejandro Enrique Ramirez Umaña's unopposed motion to place the above-captioned action in abeyance. (Doc. No. 45).

**I.    RELEVANT PROCEDURAL HISTORY**

On April 19, 2010, a jury convicted Umaña of four capital offenses: two counts of murder in aid of racketeering, 18 U.S.C. § 1959(a)(1), and two counts of murder while using a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c), (j)(1). See United States v. Umaña, 750 F.3d 320, 329 (4th Cir. 2014), cert. denied, 135 S. Ct. 2856 (2015). The same jury found that Umaña was death-eligible on all four capital counts, see id., and it returned verdicts imposing the death penalty for all four counts, id. at 329-30. The Court of Appeals for the Fourth Circuit affirmed Umaña's convictions and sentences. Id. at 360.

On June 22, 2016, Umaña filed a Motion to Vacate, Set Aside or Correct his convictions and sentences pursuant to 28 U.S.C. § 2255. (Doc. No. 22). In Claim XXII of his Motion to Vacate, Umaña argues that his convictions and death sentences under § 924(c) & (j)(1) are unconstitutional in light of the Supreme Court's holding in Johnson v. United States, 135 S. Ct.

1

2551, 2557 (2015), made retroactive on collateral review by Welch v. United States, 136 S. Ct. 1257 (2016). (Mot. to Vacate 323-44, Doc. No. 22).

On December 13, 2016, Umaña filed the instant Motion to hold this action in abeyance pending decisions by the United States Supreme Court in Lynch v. Dimaya, No. 15-1498, the Fourth Circuit Court of Appeals in United States v. Simms, No. 15-4640, and the Fourth Circuit Court of Appeals in United States v. Ali, No. 15-4433, whichever is issued latest. (Doc. No. 45). Umaña asserts that the Government does not oppose this Motion. (Mot. to Stay 4 n.1, Doc. No. 45).

II. DISCUSSION

In Johnson, the Supreme Court held that the residual clause of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), is unconstitutionally vague. 135 S. Ct. at 2558. Under the ACCA, a defendant faces an enhanced sentence if he has three qualifying prior convictions for either a "violent felony" or a "serious drug offense," "committed on occasions different from one another." § 924(e)(1). The ACCA defines a "violent felony" as any crime punishable by imprisonment for a term exceeding one year that:

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

(ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*.

§ 924(e)(2)(B)(i)(ii) (emphasis added). The italicized closing words of § 924(e)(2)(B)(ii) constitute the ACCA's residual clause. See Johnson, 135 S. Ct. at 2556. Thus, a defendant who was sentenced to a mandatory minimum term based on a prior conviction that satisfies only the residual clause of the "violent felony" definition of the ACCA is entitled to relief from his sentence.

Petitioner was not convicted under § 924(e). He was convicted under § 924(c). To

2

sustain a conviction under 18 U.S.C. § 924(c), the government must prove that the defendant (1) discharged or brandished a firearm and (2) did so during and in furtherance of a crime of violence. Section 924(c)(3) defines a crime of violence as "an offense that is a felony and . . . (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another or (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." Id. As with the ACCA, the first definition is referred to as the "force clause" and the second as the "residual clause."

The crimes of violence alleged in Umaña's § 924(c) & (j)(1) indictments were conspiracy to participate in a racketeering enterprise in violation of 18 U.S.C. § 1962(d), and murder in aid of racketeering in violation of the Violent Crimes in Aid of Racketeering ("VICAR") Act, 18 U.S.C. § 1959. See Third Superseding Indict. at Counts 23 and 25, United States v. Umaña, 3:08cr134-RJC-2 (W.D.N.C. filed July 29, 2009), (Doc. No. 623). Umaña contends that neither of those offenses is a "crime of violence" as that term is defined under the force clause of § 924(c). He contends further that the residual clause of § 924(c) is materially indistinguishable from the residual clause of the ACCA and, therefore, is unconstitutionally vague under Johnson. Consequently, Umaña argues, his § 924(c) & (j)(1) convictions and death sentences must be vacated.

On September 29, 2016, the Supreme Court granted certiorari in Lynch v. Dimaya, to address "[w]hether 18 U.S.C. 16(b), as incorporated into the Immigration and Nationality Act's provisions governing an alien's removal from the United States, is unconstitutionally vague." See Pet'r's Br. at *1, Lynch v. Dimaya, 2016 WL 6768940 (U.S. filed Nov. 14, 2016) (No. 15-1498). The residual clause of § 16(b) contains a "materially identical definition" as § 924(c)'s

residual clause. Id. at *33. In Simms and Ali, cases before the Fourth Circuit, the appellants contend that, under Johnson, the residual clause of § 924(c)'s definition of "crime of violence" is unconstitutionally vague. (Mot. to Stay 4-5.) Asserting that his Johnson claim is potentially dispositive of his entire § 2255 Motion, Umaña moves to hold this action in abeyance pending decisions in the aforementioned cases. (Mot. to Stay 5.) Because the Court concludes that a VICAR murder is a crime of violence under § 924(c)'s force clause, § 924(c)(3)(A), Umaña's motion to hold this action in abeyance shall be denied.

To determine whether an offense is a crime of violence under the force clause, the Court begins with the "categorical approach" established in Taylor v. United States, 495 U.S. 575 (1990), to see whether the predicate offense necessarily had as an element "the use, attempted use, or threatened use of physical force against the person or property of another," § 924(c)(3)(A). See United States v. Castleman, 134 S. Ct. 1405, 1413 (2014). This approach requires that courts "look only to the statutory definitions—i.e., the elements—of a defendant's [offense] and not to the particular facts underlying [the offense]." Taylor, 495 U.S. at 600.

A VICAR conviction requires proof of five elements: (1) the organization is a Racketeer Influenced and Corrupt Organizations Act ("RICO") enterprise; (2) the enterprise was engaged in racketeering activity as defined in RICO; (3) the defendant had a position in that enterprise; (4) the defendant committed the alleged crime of violence in violation of federal or state law; and (5) the defendant's general purpose in doing so was to maintain or increase position in the enterprise. See § 1959; United States v. Fiel, 35 F.3d 997, 1003 (4th Cir. 1994) (citation omitted). The fourth element is the key conduct element in determining if the VICAR offense has as an element the use, attempted use, or threatened use of physical force.

In Umaña's case, the key conduct element is "murder," which is not defined in § 1959(a).

4

Umaña's indictment charges that the VICAR murders were committed in violation of N.C. Gen. Stat. § 14-17, North Carolina's murder statute. See Third Superseding Indict. at Counts 22 and 24, 3:08cr134-RJC-2, (Doc. No. 623). In such a situation, the Court must "compare the elements of the statute forming the basis of the defendant's [charge or] conviction with the elements of the 'generic' crime—i.e., the offense as commonly understood." Descamps v. United States, 133 S. Ct. 2276, 2281 (2013). If the generic crime is a "crime of violence," as it is defined under § 924(c), the statute of conviction also will qualify as a "crime of violence," if the statute's elements are substantially the same or narrower than those in the generic crime. See id.

Murder, at common law, is "the unlawful killing of a human being by a person with 'malice aforethought.'" Schad v. Arizona, 501 U.S. 624, 640 (1991). In United States v. Marrero, the Third Circuit Court of Appeals reviewed the Model Penal Code, Black's Law Dictionary, and state laws, and adopted the following contemporary definition of generic murder as "causing the death of another person either intentionally, during the commission of a dangerous felony, or through conduct evincing reckless and depraved indifference to serious dangers posed to human life." 743 F.3d 389, 401 (3d Cir. 2014), cert. denied, 135 S. Ct. 950 (2015) abrogation on other grounds recognized by United States v. Calabretta, 831 F.3d 128 (3rd Cir. 2016); see also United States v. Castro-Gomez, 792 F.3d 1216, 1216–17 (10th Cir.), cert. denied, 136 S. Ct. 492 (2015) (citing Marrero's definition of generic murder). The definition of generic murder adopted by the Third Circuit does not change the elements of common law murder; it identifies theories that supply the mens rea for "malice aforethought." See e.g. Schad, 501 U.S. at 648 (Scalia, J., concurring in part and concurring in the judgment) (noting that different theories can supply the mens rea of "malice aforethought," including "an intention to kill or grievously injure, knowledge that an act or omission would probably cause death or

5

grievous injury, an intention to commit a felony, or an intention to resist lawful arrest").

Umaña contends that generic murder is not a "crime of violence" as that term is defined by the § 924(c)'s force clause. He argues that the full range of conduct covered by the generic definition of murder does not require "the use . . . of physical force against the person . . . of another," § 924(c)(3)(A). He argues further that the Court must look to the most innocent conduct criminalized by the generic definition and, if such conduct does not require the intentional use of violent physical force, then murder is not a crime of violence for § 924(c) purposes. Umaña provides as examples: murder by poison, murder by depravation, and murder by means of fright, none of which, he argues, requires the use of violent physical force.

When analyzing force clauses with similar or identical language, the Supreme Court has defined both "physical force" and what it means to "use" physical force. In Johnson v. United States, the Supreme Court held that under the ACCA's force clause, "the phrase 'physical force' means violent force—that is, force capable of causing physical pain or injury to another person." 559 U.S. 133, 140 (2010) ("Johnson 2010"). In Leocal v. Ashcroft, the Court explained that the "key phrase in [18 U.S.C.] § 16(a)—'the use . . . of physical force against the person or property of another'—most naturally suggests a higher degree of intent than negligent or merely accidental conduct.'" United States v. McNeal, 818 F.3d 141, 155 (4th Cir. 2016) (quoting Leocal v. Ashcroft, 543 U.S. 1, 9 (2004)) (internal quotation marks omitted).

Generic "murder" has two elements: 1) an unlawful killing of a human being, and 2) malice aforethought. See Schad, 501 U.S. at 640. The conduct element of murder – "an unlawful killing" – necessarily requires physical injury to the body of another person, even if the injury is no more than cessation of that person's heart. Causing bodily injury to another necessarily requires the application of violent physical force, as it is defined in Johnson 2010.

6

See Castleman, 134 S. Ct. at 1416-17 (Scalia, J., concurring in part and concurring in the judgment) ("[I]t is impossible to cause bodily injury without using force 'capable of' producing that result.").

Moreover, the Supreme Court has made clear that the common-law concept of "force" encompasses indirect, as well as direct force. See Castleman, 134 S. Ct. at 1414 (citing Johnson 2010, 559 U.S. at 138). For example, "a battery[1] may be committed by administering a poison or by infecting with a disease, or even by resort to some intangible substance, such as a laser beam." See Castleman, 134 S. Ct. at 1414-15 (citation and internal quotation marks omitted). The "use of force" is not the act of administering poison; "it is the act of employing poison . . . as a device to cause physical harm." Castleman, 134 S. Ct. at 1415 (equating the contrary argument to the idea that "pulling the trigger on a gun is not a 'use of force' because it is the bullet, not the trigger, that actually strikes the victim"). Therefore, the unlawful killing of another, whether through direct or indirect means, categorically requires violent physical force. See id. ("It is impossible to cause bodily injury without applying force in the common-law sense.").

The conduct element of murder is not, by itself, an element requiring the "use . . . of physical force," however. In Leocal, the Court read a "mens rea" component in 18 U.S.C. § 16's force clause, that "most naturally suggests a higher degree of intent than negligent or merely accidental conduct." 543 U.S. at 9.

As noted, different theories can supply the mens rea of "malice aforethought." See Schad, 501 U.S. at 648. The contemporary definition of generic murder, as adopted by the Third Circuit, recognizes "intent to kill," "intent to commit a dangerous felony," and "reckless and depraved indifference to serious dangers posed to human life" as theories that can supply the

---

[1] The common law crime of "battery" has as an element the use of force "satisfied by even the slightest offensive touching." See Castleman, 134 S. Ct. at 1410.

mens rea of "malice aforethought." See Marrero, 743 F.3d at 401. At common law, the intent to kill and the intent to commit a felony were alternative aspects of the single concept of "malice aforethought" necessary to sustain a conviction for premeditated murder or felony murder. See Schad, 501 U.S. at 640.

Based upon the foregoing, "malice aforethought" for generic murder requires a mens rea of intent, knowledge, or "reckless and depraved indifference," all of which exceed the degree of intent necessary for "negligent or merely accidental conduct." See Leocal, 543, U.S. at 9. Umaña counters that, in this Circuit, the reckless application of force does not constitute the "use" of force under § 924(c). See e.g. United States v. Vinson, 805 F.3d 120, 125 (4th Cir. 2015) ("Although the Leocal Court expressly did not decide whether reckless conduct could constitute a "use" of force, . . . this court has since concluded that a reckless use of force does not satisfy the requirements of § 16[.]") (citing Leocal, 543, U.S. at 13; Garcia v. Gonzales, 455 F.3d 465, 469 (4th Cir. 2006) ("[R]ecklessness, like negligence, is not enough to support a determination that a crime is a 'crime of violence.'")).

There is a difference between mere recklessness and malice, however. "Malice aforethought . . . is the distinguishing characteristic which, when present, makes a homicide murder rather than manslaughter." United States v. Fleming, 739 F.2d 945, 947 (4th Cir. 1984) (citing Stevenson v. United States, 162 U.S. 313, 320 (1896)).[2] The Fourth Circuit has adopted the following definition of generic manslaughter: "a criminal homicide that is committed (1) recklessly . . . or (2) intentionally if committed under the influence of extreme mental or

---

[2] In United States v. Fleming, the Fourth Circuit addressed whether a vehicular homicide can ever amount to murder under 18 U.S.C. 1111(a), the federal statute which divides the crime of murder into two degrees. 739 F.2d 945, 946 (4th Cir. 1984). Section 1111(a) reads, in part: "Murder is the unlawful killing of a human being with malice aforethought." "Malice aforethought is a concept that originated with the common law and is used in 18 U.S.C. § 1111(a) in its common law sense." Id. at 947 n.2 (citing Stevenson, 162 U.S. at 320).

8

emotional disturbance for which there is a reasonable explanation or excuse." United States v. Peterson, 629 F.3d 432, 436–37 (4th Cir. 2011). The Peterson Court applied the Model Penal Code's definition of "recklessness," which is "a 'conscious[ ] disregard [ ] of a substantial and unjustifiable risk that the material element will result from [the] conduct.'" Id. at 436 (quoting Model Penal Code § 2.02(2)(c) (1962)) (alterations in original).

The difference between "malice," which will support a conviction for generic murder, and "recklessness" which will permit a conviction only for generic manslaughter, "is one of degree rather than kind." Fleming, 739 F.2d at 948 (citing United States v. Dixon, 419 F.2d 288, 292–293 (D.C. Cir. 1969) (Leventhal, J., concurring) (difference between murder and manslaughter lies in the quality of the accused's awareness of the risk)). "Malice may be established by evidence of conduct which is 'reckless and wanton and a gross deviation from a reasonable standard of care, of such a nature that a jury is warranted in inferring that [the] defendant was aware of a serious risk of death or serious bodily harm.'" Fleming, 739 F.2d at 947–48 (quoting United States v. Black Elk, 579 F.2d 49, 51 (8th Cir. 1978)). Notably, the Model Penal Code (hereinafter "MPC") recognizes a difference between the degree of recklessness required for a manslaughter conviction and that required for a murder conviction. Compare MPC § 210.2 to § 210.3 (1985). Under the MPC, "malice aforethought" may be established by conduct "committed recklessly under circumstances manifesting extreme indifference to the value of human life." § 210.2. Thus, generic "malice aforethought" requires a higher degree of intent than "reckless" conduct.

Together, the elements of generic murder categorically require the "use . . . of physical force against the person . . . of another," as those terms have been interpreted by the U.S. Supreme Court, see Castleman, 134 S. Ct. at 1414-15; Johnson 2010, 559 U.S. at 140; Leocal,

9

543 U.S. at 9. Therefore, generic murder in aid of racketeering, § 1959(a), is a crime of violence under the force clause of § 924(c).

The Court's next step is to compare the elements of generic murder to the elements of the statute forming the basis of Umaña's murder in aid of racketeering convictions, N.C. Gen. Stat. § 14-17. See Descamps, 133 S. Ct. at 2281. North Carolina law recognizes only one crime of murder – an unlawful killing of another with malice aforethought, express or implied. See State v. Hunt, 582 S.E.2d 593, 597 (N.C. 2003). North Carolina's murder statute, § 14-17, codifies the common-law crime of murder and divides it into first-degree and second-degree murder. See Hunt, 582 S.E.2d at 597 (citation omitted). The "legislature 'select[ed] from all murders denounced by the common law those deemed most heinous by reason of the mode of their perpetration and classifie[d] them as murder in the first degree[.]'" Id. (quoting State v. Davis, 290 S.E.2d 574, 588 (N.C. 1982)).

At the time Umaña committed the murders at issue in this action, and through entrance of judgment, § 14-17 read as follows:

> A murder which shall be perpetrated by means of a nuclear, biological, or chemical weapon of mass destruction as defined in G.S. 14-288.21, poison, lying in wait, imprisonment, starving, torture, or by any other kind of willful, deliberate, and premeditated killing, or which shall be committed in the perpetration or attempted perpetration of any arson, rape or a sex offense, robbery, kidnapping, burglary, or other felony committed or attempted with the use of a deadly weapon shall be deemed to be murder in the first degree, a Class A felony, and any person who commits such murder shall be punished with death or imprisonment in the State's prison for life without parole as the court shall determine pursuant to G.S. 15A-2000, except that any such person who was under 18 years of age at the time of the murder shall be punished with imprisonment in the State's prison for life without parole. All other kinds of murder, including that which shall be proximately caused by the unlawful distribution of opium or any synthetic or natural salt, compound, derivative, or preparation of opium, or cocaine or other substance described in G.S. 90-90(1)d., or methamphetamine, when the ingestion of such substance causes the death of the user, shall be deemed murder in the second degree, and any person who commits such murder shall be punished as a Class B2 felon.

N.C. Gen. Stat. § 14-17 (effective June 14, 2007 to November 30, 2012). The definition of murder remains that at common law. See Hunt, 582 S.E.2d at 597 (citation omitted).

The three types of criminal conduct that qualify as first-degree murder: (1) willful, deliberate, and premeditated killings; (2) killings resulting from poison, imprisonment, starvation, torture, or lying in wait; and (3) killings that occur during specifically enumerated felonies or during a "felony committed or attempted with the use of a deadly weapon," § 14–17, "require that the defendant had 'actual intent' to commit the act that forms the basis of a first-degree murder charge." State v. Jones, 538 S.E.2d 917, 923–24 (N.C. 2000). With respect to the third category, felony murder, the malice element is satisfied by the intent to commit the unlawful felony. See id. at 924. Thus, "malice aforethought" for a first-degree murder conviction requires the State to prove that the defendant had a specific intent to kill the victim, an actual intent to poison, imprison, starve, torture, or lie in wait for the victim, or an actual intent to commit the underlying felony, during the course of which an unlawful killing occurred. See id. at 924-25 (citations omitted).

"Any other intentional and unlawful killing of a human being with malice aforethought, express or implied, remains murder as at common law, but is classified by [§ 14-17] as murder in the second degree[.]" Hunt, 582 S.E.2d at 597 (quoting Davis, 290 S.E.2d at 588) (internal quotation marks omitted). While an "[i]ntent to kill is not a necessary element of second-degree murder, . . . there must be an intentional act sufficient to show malice." State v. Brewer, 402 S.E.2d 380, 385 (N.C. 1991) (citation omitted). "[A]n act inherently dangerous to human life . . . intentionally done so recklessly and wantonly as to manifest a mind utterly without regard for human life and social duty and deliberately bent on mischief," is sufficient to demonstrate "malice." State v. Davis, 678 S.E.2d 385, 389 (N.C. Ct. App. 2009), rev'd in part on other

11

grounds, 698 S.E.2d 65 (N.C. 2010).

The degree of "recklessness" required to demonstrate malice substantially corresponds to or is narrower than the degree of "recklessness" required for generic murder. Again, using the MPC, generic "malice aforethought" may be established by conduct demonstrating a "conscious[ ] disregard [ ] [of] a substantial and unjustifiable risk that [death] . . . will result from [the] conduct[,]" § 2.02, "under circumstances manifesting extreme indifference to the value of human life," § 210.2. Under North Carolina law, "malice aforethought" may be established by: 1) the intentional commission of an inherently dangerous act, 2) with deliberate recklessness, 3) where the degree of recklessness demonstrates an utter disregard "for the value of human life" and "a mind bent on mischief." See Davis, 678 S.E.2d at 389. In other words, "malice aforethought" may be proved by the intentional performance of an inherently dangerous act "in such a reckless manner as to reflect knowledge that injury or death would likely result."[3] State v. Rich, 527 S.E.2d 299, 304 (N.C. 2000).

The Court concludes that the crime of murder under North Carolina law substantially corresponds to, or is narrower than, the generic definition of murder. Therefore, murder under North Carolina law is a crime that has as an element the "use . . . of physical force against the person . . . of another," see § 924(c)(A). Consequently, Umaña's murder in aid of racketeering convictions constitute crimes of violence under the force clause of § 924(c).

### III. CONCLUSION

The Motion before this Court is to hold the above-captioned action in abeyance until the

---

[3] With respect to death resulting from the illegal delivery of a controlled substance, the category of conduct specifically designated in § 14–17 as second degree murder, that designation does not relieve the State of proving malice to support a charge of second-degree murder. See State v. Barnes, 741 S.E.2d 457, 465–66 (N.C. Ct. App. 2013) (citing State v. Liner, 391 S.E.2d 820, 822 (N.C. Ct. App. 1990) (holding that the State was required to prove the element of malice in order to support a charge of second-degree murder in the context of a death resulting from the delivery of controlled substances)).

Supreme Court or the Fourth Circuit determines whether § 924(c)'s "residual clause" is unconstitutionally vague under Johnson. Umaña's VICAR murder convictions were crimes of violence under the "force clause" of § 924(c). Thus, there is no need to hold this action in abeyance on the grounds stated in the Motion.

**IT IS, THEREFORE, ORDERED** that Umaña's unopposed motion to place the above-captioned action in abeyance (Doc. No. 45) is **DENIED**.

Signed: January 25,

Robert J. Conrad, Jr.
United States District Judge