# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### Charlotte Division

ALEJANDRO UMAÑA,

          Movant,

      v.

UNITED STATES,

          Respondent.

3:16-CV-00057-RJC

CAPITAL § 2255 PROCEEDING

HON. ROBERT J. CONRAD, JR.

### MEMORANDUM IN SUPPORT OF MOTION TO RECUSE TRIAL JUDGE

Movant, Alejandro Umaña, through counsel, pursuant to 28 U.S.C. § 455, hereby moves to recuse the Trial Judge from presiding over further proceedings on his Motion to Vacate and Set Aside Conviction and Sentence Pursuant to 28 U.S.C. § 2255.

### FACTUAL BACKGROUND

Mr. Umaña is an indigent, death-sentenced federal prisoner. His timely Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Conviction and Sentence of a Person in Federal Custody was filed on June 22, 2016. Doc. 22. On February 22, 2018, undersigned counsel will be filing a Motion for Leave to File Supplement/Amendment to Motion to Vacate and Set Aside Conviction and Sentence Pursuant to 28 U.S.C. § 2255. In the Supplement/Amendment, Mr. Umaña has raised a colorable claim involving judicial bias arising from this Court's tenure as United States Attorney at a time in which a joint federal and state investigation was developing evidence supporting the Government's RICO prosecution in this case. Mr. Umaña has also raised constitutional claims involving improprieties and misconduct arising from that joint federal/state task force investigation.

1

This Court served as the United States Attorney for the Western District from October 2001 to June 2004. Exh.1. When MS-13 emerged as a criminal threat in Charlotte the United States Attorney and other federal law enforcement agencies began collaborating with local police to combat this problem.[1] The new gang unit formed by federal prosecutors and announced by this Court in its capacity as the United States Attorney was described by press reports to "include agents from the FBI, the Charlotte-Mecklenburg Police Department, the Bureau of Alcohol, Tobacco, Firearms and Explosives, the Drug Enforcement Administration, the Department of Homeland Security's Immigration and Customs Enforcement, the State Bureau of Investigation and the Mecklenburg district attorney's office" and intended to "focus not only on the gang leaders and those committing crimes but on entire gang structures and their operations." *Federal Gang Unit Formed to Fight Crime in Charlotte; Tougher Laws to be Used to Combat Organizations*, Charlotte Observer, Nov. 13, 2003, 2003 WLNR 3061243. Operation Fed Up conducted extensive investigations that resulted in RICO prosecutions that targeted members and associates of MS-13 beginning in June and October of 2003. *Gang Sweep in City Nets 62 Suspects: Federal Agents, Police Conduct Crackdown Against Street Violence*, Charlotte Observer, Oct. 8, 2003, 2003 WLNR 3066465; *Anti-Gang Campaign Pays Off in Crime Drop Less Violence Attributed to Key Gang Following Multi-Agency Sweep*, Charlotte Observer, Oct. 3, 2004, 2004 WLNR 3274074.

The Government alleged that the RICO conspiracy in this case began in 2003, *see* CR 3, and the Government's evidence at trial included testimony regarding MS-13 activity in Charlotte

---

[1] *See, e.g.*, *Gangs of Charlotte: Their Numbers are Growing, More are Armed: A New Police Unit Gets More Work. Is it Enough?*, Charlotte Observer, Oct. 5, 2003, 2003 WLNR 3062697; *Police Unit Created to Combat Gangs' Growth; Issue Linked to About 100 Violent Offenses*, Charlotte Observer, June 14, 2003, 2003 WLNR 3038835; *Police Link Gang Slayings Suspects Charged in 4 Mecklenburg Killings Since April At Least 6 Additional Murders Also Connected, Internal Memo Says*, Charlotte Observer, May 31, 2003, 2003 WLNR 3074667.

2

as early as June 2003. GPT at 2-7; Gov. Ex. 1. *See also United States v. Rosales Lopez, et al.*, 1:08-cr-134, Doc. 1072. (CMPD Detective Tim Jolly testifying in Mr. Umaña's co-defendants' trial that Operation Fed Up "targeted [gang members] . . . in October 2003," and "did a full scale operation where we arrested, either on immigration violations, state warrants, or federal firearm violations, 63 gang members in and around the Charlotte area" and conducted a second operation in 2004).

Operation Fed Up I & II targeted a number of the defendants in this RICO case. For example testimony in this case and co-defendant proceedings indicate that Manuel DeJesus Ayala ("Chacua") was a target from at least 2003,[2] and Elvin Pastor Fernandez Gradis at least as early as 2004.[3] Documents provided in the pretrial discovery indicate that after Manuel Ayala and Nelson Hernandez-Ayala were arrested on June 18, 2003 for gang-related graffiti, the Charlotte ATF faxed their arrest records to ICE (Exh. 2, Exh. 3, Exh. 4, Exh. 5) who opened an investigation. (Exh. 6 and Exh. 7).

Pretrial discovery documents also indicate that there were additional investigations and/or arrests of Mr. Umaña's RICO co-defendants as a result of the joint local, state, and federal investigation that occurred during this Court's tenure as the United States Attorney. For example, the pretrial discovery indicates that RICO codefendant Carlos Figueroa Pineda was arrested for narcotics possession on February 13, 2004, following a CMPD knock and talk at an address from

---

[2] *See* GPT at 755-56 (CMPD Detective Hastings testimony that he came across Manuel Ayala ("Chacua") "right around 2003. He escaped the initial Fed Up roundup," but was arrested and deported not long afterwards); CoDef NT 11. (Manuel DeJesus Ayala ("Chacua") "was one of the targets we were looking for and arrested in 'Operation Fed Up.'").

[3] *See United States v. Rosales Lopez, et al.*, 1:08-cr-134 Doc. 1077 at 1067-68. (ICE Agent Jose Romero testimony in the codefendants' trial that Gradis was arrested "during an operation we call 'Fed up'").

which a known MS-13 member had been deported during Operation Fed Up. Exh. 8 at 9. In addition, as part of "Operation Los Treces," the ATF, North Carolina State Bureau of Investigation, and CMPD Violent Crime Task Force were jointly investigating RICO co-defendant Mario Guarjardo-Garcia (under the alias Iran Guerrero-Gomez) as early as April 8, 2004. *See* CR 623, Third Superseding Indictment at ¶23b-e; Exh. 9. Finally, discovery documents indicate that the ATF was developing sources, information from whom it would share with CMPD, *see* Exh. 10 at 3, and actively monitoring radio traffic to protect those sources (regarding whom CMPD would take ATF direction). Exh. 11 and Exh. 12.

**CONTROLLING PRECEDENT REQUIRES JUDICIAL RECUSAL UNDER THESE CIRCUMSTANCES.**

28 U.S.C. § 455(a) requires that "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might be reasonably questioned." 28 U.S.C. § 455(b) further provides that any judge "shall also disqualify himself under the following circumstances: (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding; . . . (3) Where he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy . . .."

Likewise, due process requires an unbiased tribunal. The question is "not whether a judge harbors an actual, subjective bias, but instead whether, as an objective matter, 'the average judge in his position is 'likely' to be neutral, or whether there is an unconstitutional 'potential for bias.'" *Williams v. Pennsylvania*, 136 S. Ct. 1899, 1905 (2016) (quoting *Caperton v. A.T. Massey Coal Co., Inc.,* 556 U.S. 868, 881 (2009)); *see also Tumey v. Ohio*, 273 U.S. 510, 532 (1927); *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 822 (1986). This due process requirement takes on even greater significance in a capital case such as this, because of the Eighth Amendment's heightened

4

due process requirements.  *E.g.*, *Lockett v. Ohio*, 438 U.S. 586, 604 (1978); *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976)

As the United States Supreme Court recently recognized in *Williams*:

> No attorney is more integral to the accusatory process than a prosecutor who participates in a major adversary decision. When a judge has served as an advocate for the State in the very case the court is now asked to adjudicate, a serious question arises as to whether the judge, even with the most diligent effort, could set aside any personal interest in the outcome. There is, furthermore, a risk that the judge "would be so psychologically wedded" to his or her previous position as a prosecutor that the judge "would consciously or unconsciously avoid the appearance of having erred or changed position." *Withrow*, 421 U.S., at 57, 95 S.Ct. 1456. In addition, the judge's "own personal knowledge and impression" of the case, acquired through his or her role in the prosecution, may carry far more weight with the judge than the parties' arguments to the court. *Murchison*, supra, at 138, 75 S.Ct. 623; *see also Caperton, supra*, at 881, 129 S.Ct. 2252.

*Williams*, 136 S. Ct. at 1906.  The Court further held that "The involvement of multiple actors and the passage of time do not relieve the former prosecutor of the duty to withdraw in order to ensure the neutrality of the judicial process in determining the consequences that his or her own earlier, critical decision may have set in motion."  *Williams*, 136 S. Ct. at 1907.

In this case, because the RICO prosecution was the culmination of a continuous investigation that began in 2003 or earlier involving the same pattern of criminal activity by the MS-13 clique led by Manuel Ayala, many of the same alleged conspirators, and many of the same law enforcement agents and also because Mr. Umaña has raised claims of improprieties arising from those investigations, recusal from presiding over the 2255 proceedings is appropriate under the statutory and constitutional law described above.

Claims of judicial disqualification constitute structural error that can be raised at any time during the proceedings.  *Fowler v. Butts*, 829 F.3d 788, 794-95 (7th Cir. 2016) (citing *Williams* and *Nguyen v. United States*, 539 U.S. 60 (2003); overruling prior circuit precedent); *but see United States v. Owens*, 902 F.2d 1154 (4th Cir. 1990) ("Timeliness is an essential element of a

recusal motion.", specifically addressing 455(a)); *Kolon Industries v. DuPont*, 748 F.3d 160, 168 (2014) (extending *Owens* to recusal motions under 455(b)).

Mr. Umaña's motion for judicial recusal is timely, as it is being filed contemporaneously with his Supplement/Amendment in which his claim of judicial bias is raised. Moreover, Mr. Umaña anticipates filing supplemental discovery requests, including requests for discovery regarding the Court's involvement in MS-13 investigations and prosecutions at the time the Court served as United States Attorney. As demonstrated in the Supplement/Amendment and in Mr. Umaña's Motion for Leave to Supplement/Amend, to the extent prior counsel should have raised this issue before this Court earlier, their failure to do so constituted ineffective assistance of counsel.

WHEREFORE, Mr. Umaña respectfully moves for recusal of the Trial Judge from presiding over further proceedings on his Motion to Vacate and Set Aside Conviction and Sentence Pursuant to 28 U.S.C. § 2255.

Respectfully submitted,

| | |
|---|---|
| */s/ Kelly D. Miller* | */s/ Zandra L. Lopez* |
| KELLY D. MILLER | ZANDRA L. LOPEZ |
| Asst. Federal Public Defender | Federal Defenders of San Diego, Inc. |
| Federal Public Defender | 225 Broadway, Suite 900 |
| Middle District of Pennsylvania | San Diego, California 92101-5030 |
| 100 Chestnut Street, Suite 300 | Tel: 619-234-8467 |
| Harrisburg, PA 17101 | Zandra_Lopez@fd.org |
| Tel: 717-782-3843 | |
| Fax: 717-782-3966 | |
| kelly_miller@fd.org | |

Dated: February 22, 2018

6

<h1 style="text-align:center">CERTIFICATE OF SERVICE</h1>

I, Kelly D. Miller, hereby certify that I have electronically filed the foregoing Memorandum in Support with the Clerk of Court using the CM/ECF system and a copy of the foregoing document has been served this day upon the following via CM/ECF:

Anthony J. Enright
Assistant United States Attorney
Suite 1650, Carillon Building
227 West Trade Street
Charlotte, NC 28202
anthony.enright@usdoj.gov

*/S/ KELLY D. MILLER*
KELLY D. MILLER
Asst. Federal Public Defender
Federal Public Defender
Middle District of Pennsylvania
100 Chestnut Street, Suite 300
Harrisburg, PA 17101
Tel: 717-782-3843
Fax: 717-782-3966
kelly_miller@fd.org

Dated: February 22, 2018