# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### Charlotte Division

|  |  |
|---|---|
| ALEJANDRO UMAÑA,<br>        Movant,<br><br>     v.<br><br>UNITED STATES,<br>        Respondent. | 3:16-CV-00057-RJC<br><br>CAPITAL § 2255 PROCEEDING<br><br>HON. ROBERT J. CONRAD, JR. |

**MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO FILE SUPPLEMENT/AMENDMENT TO MOTION TO VACATE AND SET ASIDE CONVICTION AND SENTENCE PURSUANT TO 28 U.S.C. § 2255**

Movant, Alejandro Umaña, through counsel, hereby moves for leave to supplement his Motion to Vacate and Set Aside Conviction and Sentence Pursuant to 28 U.S.C. § 2255.

### PROCEDURAL HISTORY

1. Mr. Umaña is an indigent, death-sentenced federal prisoner. His timely Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Conviction and Sentence of a Person in Federal Custody was filed by court-appointed counsel Kenneth Rose, of the Center for Death Penalty Litigation, and Zandra Lopez, of the Federal Defenders of San Diego, Inc., on June 22, 2016. Doc. 22.

2. On October 21, 2016, Attorneys Rose and Lopez filed Mr. Umaña's Initial Motion for Leave to Conduct Discovery and Incorporated Memorandum. Doc. 36.

3. On January 30, 2017, Mr. Umaña filed a Motion for Substitution of Counsel. Doc. 48. Attorney Rose, who had served as lead counsel since the beginning of the 2255 proceedings, sought to withdraw due to changed personal and professional circumstances that prevented him from devoting the necessary time to Mr. Umaña's case. *Id.* at 2. Mr. Umaña sought appointment

1

of the Federal Public Defender's Office for the Middle District of Pennsylvania to assume Attorney Rose's role as lead counsel. *Id.* at 2-4. On February 22, 2017, this Court granted Mr. Umaña's Motion for Substitution of Counsel, relieved Attorney Rose of his duties, and appointed the Harrisburg Federal Defenders, Kelly Miller appearing. Doc. 49.

4.      On March 23, 2017, the Government filed its Response to Umaña's Motion for Leave to Conduct Discovery, Doc. 50

5.      Until this Court appointed the Harrisburg Federal Defenders, Mr. Umaña's 2255 counsel were the same as his direct appeal counsel – the Center for Death Penalty Litigation and the San Diego Federal Defenders. *See Umaña v. United States*, No. 10-6, Order (4th Cir. Oct. 14, 2010) (appointing Malcom Ray Hunter, then-Executive Director of the North Carolina Center for Death Penalty Litigation, as lead counsel and the San Diego Federal Defenders as co-counsel for Mr. Umaña's direct appeal); *United States v. Umaña*, 3:08-cr-134, Doc. 1621 (appointing the San Diego Federal Defenders and Kenneth J. Rose, of the Center for Death Penalty Litigation, to represent Mr. Umaña in the 2255 proceedings).  This provided not only for continuity of counsel but also allowed the team to proceed efficiently and productively given their familiarity with the large trial record.

6.      Counsel have identified additional factual and legal averments supporting the claims previously raised in the initial 2255 Motion, and additional legal and factual grounds requiring relief.  Mr. Umaña now seeks leave of this Court to supplement and amend his 2255 Motion for the reasons stated below.

## PERMITTING MR. UMAÑA TO SUPPLEMENT THE 2255 MOTION IS IN THE INTERESTS OF JUSTICE

7.      28 U.S.C. § 2242 provides that a 2255 motion "may be amended or supplemented as provided in the rules of procedure applicable to civil actions."  *See also* Rule 11 of the Rules

2

Governing 2255 Proceedings (rules of civil procedure apply to extent not inconsistent with habeas rules); Advisory Committee Note to Rule 5 of the Rules Governing 2255 Proceedings ("civil rule 15(a) may be used to allow the petitioner to amend his petition"); *Withrow v. Williams*, 507 U.S. 680, 696 n.7 (1993) ("Rule 15 applies in habeas actions"). Under Rule 15(a)(2), "[t]he court should freely give leave [to amend] when justice so requires." Similarly, Rule 15(d) provides for supplemental pleadings when the pleading sets "out any transaction, occurrence or event that happened after the date of the pleading to be supplemented."

8. This Court should grant Mr. Umaña leave to supplement and amend his 2255 Motion in the interests of justice. First, many of the allegations in Mr. Umaña's Supplement/Amendment relate back to the initial 2255 Motion and are timely placed before this Court. *See* Fed.R.Civ.P. 15(c)(1); *Mayle v. Felix*, 545 U.S. 644, 659 (2005) ("relation back depends on the existence of a common core of operative facts uniting the original and newly asserted claims"). The claims raised in the Supplemental/Amended 2255 Motion relate back as follows:

- **Claim 31** relates back to the legal and factual averments of Claims 1-4, 8, 20, and 24 of the initial 2255 Motion because all arise out of the common core of operative facts of Mr. Umaña's impairments in cognitive function, intellectual disability, brain damage caused by a multitude of life history risk factors, symptomology of psychotic disorder; recurring lack of ability to understand the circumstances of his case or criminal justice system (beyond mere cultural misunderstanding); written correspondence demonstrating brain damage, and cognitive and psychiatric impairments; ongoing (pre-trial to present day) perseverative fixation on getting transferred back to El Salvador; language barrier and overall communication barrier with trial counsel; recurring debilitating headaches; and trial counsel's failure to adequately investigate and present these serious mental health issues in an appropriate manner.

- **Claim 32** relates back to the legal and factual averments of Claims 1, 2, 5, 7, and 12 of the initial 2255 Motion because all arise out of the common core of operative facts surrounding the impropriety of government witnesses involved in the investigation and prosecution of Mr. Umaña; the unplanned, alcohol-fueled, emotionally charged nature of the argument, fight, and shooting in the Las Jarochitas restaurant in Greensboro; trial counsel's failure to consult with mental health experts to assist in determining, and presenting evidence on, the role that Mr. Umaña's brain damage and cognitive limitations played on his mental state,

3

role or status in the gang, and/or ability or rank to order anyone to do anything, especially while incarcerated pre-trial.

- **Claim 33** relates back to the legal and factual averments of Claim 6, 7, 8 of the initial 2255 Motion because all arise out of the common core of operative facts of the Government's presentation of evidence and argument in Mr. Umaña's trial and pre-trial proceedings that is inconsistent with or contradicted by (exculpatory) evidence possessed by the Government, including but not limited to exculpatory evidence possessed and presented by the Government in the co-defendants' proceedings.

- **Claim 34** relates back to the legal and factual averments of Claims 5, 12, 27, 29, 30 of the initial 2255 Motion because all arise out of the common core of operative facts about the Government's multi-agency investigation of Mr. Umaña and post-arrest interrogation of Mr. Umaña, and the Government's pattern of misconduct in presenting inadmissible or constitutionally unreliable evidence.

- **Claim 35** relates back to the legal and factual averments of Claims 5, 6, 7, 10, 11, 12, and 30 of the initial 2255 Motion because all arise out of the common core of operative facts showing the Government's pattern of misconduct in repeatedly presenting inadmissible or constitutionally unreliable information to the Court and Mr. Umaña's jury; and trial counsel's ineffectiveness in failing to identify and litigate Government misconduct.

- **Claim 36** relates back to the legal and factual averments of Claims 3, 5, 8, 10, 12, 26 and 30 of the initial 2255 Motion because all arise out of the common core of operative facts surrounding the use and translation of Mr. Umaña's jail correspondence, including his privileged correspondence to the Salvadoran consulate; the Government's pattern of misconduct in repeatedly presenting inadmissible or constitutionally unreliable information to the Court and Mr. Umaña's jury; and trial counsel's failure to identify and litigate Government misconduct.

- **Claim 37** relates back to the legal and factual averments of Claims 14, 15, 16, 17, 18, 20, 21 of the initial 2255 Motion because all arise out of the common core of operative facts surrounding public sentiment among members of the public in Charlotte and the surrounding District Court jurisdiction about race, violence, immigrants, gangs, and the high-profile multi-defendant gang arrest in this case.

- **Claim 38** relates back to the legal and factual averments of Claims 4, 5, 6, 7, 9, 10, 11, 12, 27, 29, and 30 of the initial 2255 Motion because all arise out of the common core of operative facts of the Government's failure to disclose, and counsel's ineffectiveness in failing to litigate or otherwise independently develop, evidence of the full temporal and geographic extent of the Government's investigation into the Charlotte MS-13 gang and its members; counsel's ineffectiveness in failing to investigate and identify evidence of institutional and judicial bias; the Government's pattern of progressing a constitutionally unreliable capital proceeding; and trial counsel's ineffectiveness in failing to identify and litigate Government misconduct.

4

- **Claim 39** relates back to the legal and factual averments of Claim 25 of the initial 2255 Motion because all arise out of the common core of operative facts of the federal Government's modern use of criminal statutes and severe sentencing, including capital prosecution, in a racially, ethnically, and geographically biased manner that operates to the detriment of racial, ethnic, and national-origin minorities in certain areas of the country.

- **Claim 40** relates back to the legal and factual averments of Claims 6, 7, 8, 10, 11 12, 25, 27 of the initial 2255 Motion because all arise out of the common core of operative facts of the Government's pattern of progressing a constitutionally unreliable capital proceeding in its discovery practices and evidentiary presentation; and trial counsel's ineffectiveness in failing to identify and litigate Government misconduct.

- **Claim 41** relates back to the legal and factual averments of Claims 6, 7, 11, 12, 15, 18, 26, 28, and 30 of the initial 2255 Motion because all arise out of the common core of operative facts of the Government's pattern of progressing a constitutionally unreliable capital proceeding; and trial counsel's ineffectiveness in failing to identify and litigate Government misconduct.

- **Claim 42** relates back to the legal and factual averments of Claims 2, 3, and 4 of the initial 2255 Motion because all arise out of the common core of operative facts because all arise out of the common core of operative facts of Mr. Umaña's impairments in cognitive function, intellectual disability, brain damage caused by a multitude of life history risk factors, symptomology of psychotic disorder; recurring lack of ability to understand the circumstances of his case or criminal justice system (beyond mere cultural misunderstanding); written correspondence demonstrating brain damage, and cognitive and psychiatric impairments; ongoing (pre-trial to present day) perseverative fixation on getting transferred back to El Salvador; language barrier and overall communication barrier with trial counsel; recurring debilitating headaches; and trial counsel's failure to adequately investigate and present these serious mental health issues in an appropriate manner, and failure to correct the District Court's erroneous mental health findings and rulings.

- **Claim 43** relates back to the legal and factual averments of Claims 1-4, 8, 19, 20, 24, and 28 of the initial 2255 Motion because all arise out of the common core of operative facts of Mr. Umaña's impairments in cognitive function, intellectual disability, brain damage caused by a multitude of life history risk factors including pre-natal exposure to alcohol, toxins, and controlled substances; symptomology of psychotic disorder; recurring lack of ability to understand the circumstances of his case or criminal justice system (beyond mere cultural misunderstanding); written correspondence demonstrating brain damage, and cognitive and psychiatric impairments; ongoing (pre-trial to present day) perseverative fixation on getting transferred back to El Salvador; language barrier and overall communication barrier with trial counsel; recurring debilitating headaches; and trial counsel's failure to adequately investigate and present these serious mental health issues in an appropriate manner.

- **Claim 44** relates back to the legal and factual averments of Claim 6 of the initial 2255 Motion because all arise out of the common core of operative facts of the Government's "reverse mitigation" trip to El Salvador and Guatemala, investigation into and interview of

5

witnesses who provided historical information about Mr. Umaña and his family, and concealment of mitigating information uncovered during that trip; and the Government's chilling effect on mitigating witnesses in El Salvador and Guatemala.

- **Claim 45** relates back to the legal and factual averments of Claim 6 of the initial 2255 Motion because all arise out of the common core of operative facts of the Government's "reverse mitigation" trip to El Salvador and Guatemala, investigation into and interview of witnesses who provided historical information about Mr. Umaña and his family, concealment of mitigating information uncovered during that trip (and the Court's failure to permit trial counsel to present some of that mitigating information once counsel learned about it mid-penalty phase); and the Government's chilling effect on mitigating witnesses in El Salvador and Guatemala.

- **Claim 46** relates back to the legal and factual averments of Claims 1 and 2 of the original 2255 Motion because all arise out of the common core of operative facts of trial counsel's failure to competently plan and execute a coherent penalty-phase case based on mitigating information Mr. Umaña's life history.

- **Claim 47** relates back to the legal and factual averments of Claim 5, 8 of the original 2255 Motion because all arise out of the common core of operative facts of the Government's representations about and discovery (or lack thereof) provided for the Government's non-statutory aggravation evidence; and the notice and discovery provided on non-statutory aggravation, investigation of that aggravation, and trial counsel's preparation for the penalty phase accordingly.

- **Claim 48** relates back to the legal and factual averments of Claims 5, 8, 9, 10, and 22 of the initial 2255 Motion because all arise out of the common core of operative facts of the notice and discovery provided on non-statutory aggravation, investigation of those incidents, and trial counsel's preparation for the penalty phase accordingly.

- **Claim 49** relates back to the legal and factual averments of Claims 1, 2, and 25 of the initial 2255 Motion because all arise out of the common core of operative facts of trial counsel's failure to investigate and coherently understand Mr. Umaña's life story, present a penalty-phase case based on his life story, and request jury instructions tailored to his life story.

- **Claim 50** relates back to the legal and factual averments of Claims 7, 8, 25, 27 of the initial 2255 Motion because all arise out of the common core of operative facts of trial counsel's did not appropriately litigate jury instructions tailored to Mr. Umaña's case and preserve issues for appellate review.

- **Claim 51** relates back to the legal and factual averments of Claims 15 and 16 of the initial 2255 Motion because all arise out of the common core of operative facts of trial counsel's, the Government's, and the District Court's actions during jury selection, which tainted Mr. Umaña's capital proceeding.

- **Claim 52** relates back to the legal and factual averments of Claims 1-10, 19, 20, 22, 24, and 28 of the initial 2255 Motion because all arise out of the common core of operative

6

facts of Mr. Umaña's impairments in cognitive function, intellectual disability, brain damage caused by a multitude of life history risk factors; written correspondence demonstrating brain damage, and cognitive and psychiatric impairments; ongoing (pre-trial to present day) perseverative fixation on getting transferred back to El Salvador; language barrier and overall communication barrier with trial counsel; recurring debilitating headaches; the Government's representations about and discovery (or lack thereof) provided for the Government's anti-*Atkins* case and non-statutory aggravation; and the notice and discovery provided on non-statutory aggravation, investigation of those incidents, and trial counsel's preparation for the penalty phase accordingly.

- **Claim 53** relates back to the legal and factual averments of Claims 6, 7, and 8 of the initial 2255 Motion because all arise out of the common core of operative facts surrounding the use and translation of Mr. Umaña's written and oral jail communications, which correspondence demonstrated brain damage and cognitive and psychiatric impairments; the Government's pattern of misconduct in "cherry-picking" evidence that was contradicted by other evidence in its possession, and presenting that inadmissible or constitutionally unreliable information to the Court and Mr. Umaña's jury; and trial counsel's failure to identify and litigate Government misconduct.

- **Claim 54** relates back to the legal and factual averments of 5 and 8 of the initial 2255 Motion because all arise out of the common core of operative facts of the Government's representations about and discovery (or lack thereof) provided for the Government's non-statutory aggravation evidence; and the notice and discovery provided on non-statutory aggravation, investigation of that aggravation, and trial counsel's preparation for the penalty phase accordingly.

- **Claim 55** relates back to the legal and factual averments of Claims 1-10, 19, 20, 22, 24, and 28 of the initial 2255 Motion because all arise out of the common core of operative facts of Mr. Umaña's impairments in cognitive function, intellectual disability, brain damage caused by a multitude of life history risk factors; written and oral communication demonstrating brain damage, and cognitive and psychiatric impairments; ongoing perseverations about getting transferred to El Salvador to serve his sentence; language barrier and overall communication barrier with trial counsel; tenuous ability to even speak Spanish; recurring debilitating headaches; the Government's representations about and discovery (or lack thereof) provided for non-statutory aggravation; and trial counsel's investigation and preparation for the penalty phase accordingly.

- **Claim 57** relates back to the legal and factual averments of Claims 1-10, 19, 20, 22, 24, and 28 of the initial 2255 Motion because all arise out of the common core of operative facts of Mr. Umaña's impairments in cognitive function, intellectual disability, brain damage caused by a multitude of life history risk factors; written and oral communication demonstrating brain damage, and cognitive and psychiatric impairments; ongoing perseverations about getting transferred to El Salvador to serve his sentence; language barrier and overall communication barrier with trial counsel; tenuous ability to even speak Spanish; recurring debilitating headaches; the Government's representations about and discovery (or lack thereof) provided for non-statutory aggravation; and trial counsel's investigation and preparation for the penalty phase accordingly.

7

- **Claim 58** relates back to the legal and factual averments of Claims 5, 6, 7, 8, 11, 12, 15, 18, 26, 28, and 30 of the initial 2255 Motion because all arise out of the common core of operative facts of the Government's presentation of evidence and argument in Mr. Umaña's trial and pre-trial proceedings that is inconsistent with or contradicted by (exculpatory) evidence possessed by the Government; the Government's representations about discovery (or lack thereof) provided to counsel, and trial counsel's investigation and preparation for the case accordingly; the Government's pattern of progressing a constitutionally unreliable capital proceeding; and trial counsel's failure to identify and litigate Government misconduct and discovery and/or investigation issues.

9. Second, as demonstrated in the attached proposed Supplement/Amendment, as a result of brain damage; cognitive impairment; schizophrenia spectrum/psychotic disorder; and complex trauma history, Mr. Umaña lacks (and has lacked, since the inception of these proceedings) the ability to consult with his lawyers with a reasonable degree of rational understanding and lacks (and has lacked) a rational as well as factual understanding of the proceedings against him. *See Drope v. Missouri*, 420 U.S. 162, 172 (1975). Thus, to the extent this Court may find that not all of Mr. Umaña's allegations in the Supplement/Amendment relate back to the initial 2255 Motion, equitable tolling of the statute of limitations is warranted. *See United States v. Sosa,* 364 F.3d 507, 513 (4th Cir. 2004) (citing *Grant v. McDonnell Douglas Corp.*, 163 F.3d 1136, 1138 (9th Cir. 1998). *See also Fahy v. Horn*, 240 F.2d 239, 244-45 (3d Cir.), *cert. denied*, 534 U.S. 944 (2001) (granting equitable tolling in capital case, recognizing that "death is different," such that "we must allow less than 'extraordinary' circumstances to trigger equitable tolling"); *cf. Ryan v. Gonzales*, 568 U.S. 57, 76 (stay of 28 U.S.C. 2254 proceedings due to petitioner's incompetence may be appropriate "[i]f a district court concludes that the petitioner's claim could substantially benefit from the petitioner's assistance").

10. Third, as demonstrated in the above procedural history, the Harrisburg Federal Defenders are the first non-conflicted counsel to represent Mr. Umaña in these 2255 proceedings. Neither the San Diego Federal Defenders nor Attorney Rose, of CDPL, could be reasonably

8

expected to investigate, develop, or assert claims of their own ineffectiveness, if any such claims in fact exist. *See Christeson v. Roper*, 135 S.Ct. 891, 894 (2015). The Harrisburg Federal Defender was the first attorney appointed to this case who would be able to conduct such an inquiry. As such, the Harrisburg Federal Defender was duty-bound to become fully-acquainted with all prior proceedings, ABA Guideline 6.1, Commentary, ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases, ("ABA Guidelines"), 31 Hofstra L. Rev. 913, 968 (2003), and, in light of the Government's assertions in its discovery Response, investigate to determine whether there are potentially meritorious claims of ineffective assistance of appellate counsel that must be raised on Mr. Umaña's behalf. ABA Guideline 10.8 ("The Duty To Assert Legal Claims"), *id.* at 1028; ABA Guideline 10.15.1, Commentary, *id.* at 1086 ("As with every other stage of capital proceedings, collateral counsel has a duty in accordance with Guideline 10.8 to raise and preserve all arguably meritorious issues.").

11.     Thus, in Mr. Umaña's discovery reply, Attorney Miller reiterated that the Harrisburg Federal Defender was the first attorney capable of reviewing the record for appellate counsel's ineffectiveness; noted that that review was not yet complete due to the size and complexity of the record; and averred that "counsel is not in a position to adequately assess the validity of the government's procedural defenses regarding appellate counsel's conduct, nor is counsel in a position to adequately consult with or advise Mr. Umaña regarding these complex legal and factual issues." Doc. 61 at 4.

12.     To the extent that the claims in this Supplement/Amendment raise issues of appellate counsel's ineffectiveness, the Harrisburg Federal Defenders are the first counsel who have been able to assert those claims on Mr. Umaña's behalf. *See Christeson v. Roper*, 135 S.Ct. 891, 894 (2015).

9

13. Fourth, because this 2255 proceeding is Mr. Umaña's first opportunity to challenge his trial counsel's ineffectiveness, he has the right to effective assistance of counsel in this proceeding. *See Martinez v. Ryan*, 566 U.S. 1 (2012). To the extent that this Court may find that some of the allegations in the Supplement/Amendment do not relate back to the initial 2255 Motion, Mr. Umaña was denied the effective assistance of counsel in these 2255 proceedings. As demonstrated in the attached proposed Supplement/Amendment, Mr. Umaña's allegations have merit. There can be no strategic basis for counsel's failure to raise these allegations in the initial 2255 Motion, and there is a reasonable probability that Mr. Umaña will be granted a new trial or sentencing hearing, or that he will be declared ineligible for the death penalty under *Atkins v. Virginia*, 536 U.S. 304 (2002), based on the allegations in the proposed Supplement/Amendment.

14. Finally, counsel have been duly diligent in conducting the required investigation and record review in an expeditious manner in order to present the amended and supplemental facts and legal bases as quickly as was possible. In light of the serious consequences as well as the heightened procedural safeguards required in a capital case, permitting amendment where, as here, counsel has been duly diligent in conducting the necessary investigation and record review in an expeditious manner, is in the interests of justice.

10

WHEREFORE, Mr. Umaña respectfully moves this Court to grant him leave to Supplement and Amend his 2255 Motion.

Respectfully submitted,

/s/ Kelly D. Miller
KELLY D. MILLER
Asst. Federal Public Defender
Federal Public Defender
Middle District of Pennsylvania
100 Chestnut Street, Suite 300
Harrisburg, PA 17101
Tel: 717-782-3843
Fax: 717-782-3966
kelly_miller@fd.org

/s/ Zandra L. Lopez
ZANDRA L. LOPEZ
Federal Defenders of San Diego, Inc.
225 Broadway, Suite 900
San Diego, California 92101-5030
Tel: 619-234-8467
Zandra_Lopez@fd.org

Dated: February 22, 2018

11

**CERTIFICATE OF SERVICE**

I, Kelly D. Miller, hereby certify that I have electronically filed the foregoing Memorandum in Support with the Clerk of Court using the CM/ECF system and a copy of the foregoing document has been served this day upon the following via CM/ECF:

Anthony J. Enright
Assistant United States Attorney
Suite 1650, Carillon Building
227 West Trade Street
Charlotte, NC 28202
anthony.enright@usdoj.gov

*/S/ KELLY D. MILLER*
KELLY D. MILLER
Asst. Federal Public Defender
Federal Public Defender
Middle District of Pennsylvania
100 Chestnut Street, Suite 300
Harrisburg, PA 17101
Tel: 717-782-3843
Fax: 717-782-3966
kelly_miller@fd.org

Dated: February 22, 2018

12