IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL NO. 3:16CV57

| | | |
|---|---|---|
| ALEJANDRO RAMIREZ UMAÑA, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

**RESPONSE OF THE UNITED STATES TO
UMAÑA'S MOTION FOR LEAVE TO AMEND HIS 2255 MOTION**

The United States respectfully requests that this Court deny Alejandro Ramirez Umaña's motion for leave to file a supplemental or amended 2255 motion. Umaña has previously asked this Court to avoid "piecemeal litigation." (Doc. No. 25-1, at 5.) And this Court has advised Umaña that it "disfavors the 'everything but the kitchen sink' approach to litigation." (Doc. No. 47, at 4.) Nevertheless, twenty months after Umaña filed his original 410–page 2255 motion and the statute of limitations expired, Umaña has filed a 221-page supplemental motion that seeks to raise scores of new purported grounds for relief under the guise of 28 new subject headings labeled as "claims." (Doc. No. 71.)

This Court should reject Umaña's belated effort to amend his 2255 motion because amendment would be futile. The vast majority of Umaña's new purported grounds for relief are untimely and do not come close to meeting the requirements of the relation-back doctrine. And the handful of new theories that could arguably present a closer question about the application of that doctrine are readily subject to dismissal for other reasons —they are refuted by the record, for example, or foreclosed by well-established precedent.

## DISCUSSION

This Court should deny Umaña's motion for leave to amend his 2255 motion because the amendment he proposes would be "futile." *United States v. Pittman*, 209 F.3d 314 (2000). An amendment is futile to the extent that it presents matters that "would be subject to dismissal." *Gohier v. Enright*, 186

F.3d 1216, 1218 (10th Cir. 1999); *U.S. ex rel. Ahumada v. NISH*, 756 F.3d 268, 274 (4th Cir. 2014).  Umaña was required to file his 2255 motion within the "1–year period of limitation" that ended on June 22, 2016, the day that he filed his original, 410-page motion.  28 U.S.C. § 2255(f)(1); *Umaña v. United States*, 135 S. Ct. 2856 (June 22, 2015) (denying certiorari); *Clay v. United States*, 537 U.S. 522, 527 (2003).

Umaña's proposed supplemental motion contains 28 subject headings, numbered 31–58.  (Supp. 2255 Mot. 2–211.)  Although he refers to these headings as "claims," he purports to describe under most of these individual headings a host of different purported new grounds for relief.  (*Id.* at 2–211.)  Umaña did not file his proposed amendment, or his motion for leave to file it, until February 22, 2018, more than a year and a half after the limitations period expired.  Twenty five of Umaña's twenty-eight purported new "claims" are untimely and do not come close to meeting the requirements of the relation-back doctrine.  The majority of new grounds that he asserts in his other three "claims" also do not come close to relating back, and the handful of allegations within those three claims that arguably present a closer relation-back question are readily subject to dismissal for other reasons.[1]  And none of the grounds that Umaña seeks to

---

[1] All of the grounds Umana seeks to present in his supplemental motion would likely be subject to dismissal for a number of reasons, in addition to being time barred, and the United States has not attempted to identify all of those reasons in this response.  This Court has not yet asked the United States to respond to Umaña's 2255 motion, in original or amended form, and the United States reserves the right to assert any defense or argument or oppose Umaña's 2255 motion on any ground at the appropriate time.

2

present are entitled to any equitable tolling, let alone 20 months' worth.

**A.     Twenty five of Umaña's amended claims present only grounds that do not come close to meeting the requirements of the relation-back doctrine.**

The grounds described under 25 of the 28 subject headings in Umaña's amended motion are untimely and, in their entirety, do not come close to meeting the requirements of the "relation back" doctrine.  Fed. R. Crim. P. 15(c); *Pittman*, 209 F.3d at 314; (*cf.* Mot. for Leave to Supplement 2255 3–8.)  Umaña was required to timely file a 2255 motion that contained "all the grounds for relief" available to him and "state[d] the facts supporting each ground."  R. Governing 2255 Motions 2(b)(1), (2); *Mayle v. Felix*, 545 U.S. 644, 654, 661 (2005).  The relation-back doctrine does not relieve Umaña of these requirements.  *See Mayle*, 545 U.S. at 661.  Nor does it allow him to "circumvent" the one-year "statute of limitations."  *Hill v. Mitchell*, 842 F.3d 910, 925 (6th Cir. 2016).

The relation-back doctrine extends only to amended claims that arise out of the same "conduct, transaction, or occurrence" and share a "common core of operative facts" with claims properly set out in the original motion.  *Felix*, 545 U.S. at 646.  The doctrine applies, for example, to amended claims that represent a "slightly *more* specific iteration" of original claims previously set out with specificity.  *Hill* 842 F.3d at 923 (emphasis in original) (citing *Woodward v. Williams*, 263 F.3d 1135, 1142 (10th Cir. 2001)).  Courts have also held the doctrine to permit amendments that "clarified or amplified a claim" arising out of the same set of facts alleged in the original motion.  *Id.*  For example, the

3

relation-back doctrine applied "where the original petition challenged the trial court's admission of recanted statements" and "the amended petition challenged the court's refusal to allow the defendant to show" that the *same* statements "had been recanted." *Id.* (quoting *Mayle*, 545 U.S. at 664 n.7). Claims that are "completely new," in contrast, "cannot relate back" to an original pleading. *Pittman*, 209 F.3d at 318.

"An amended habeas petition" does *not* benefit from the relation-back doctrine to the extent that "it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Felix*, 545 U.S. at 650. The operative facts for an "ineffective assistance" claim, for example, include the specific "acts or omissions of counsel" that are allegedly deficient. *Strickland v. Washington*, 466 U.S. 668, 690 (1984). So an amended claim alleging an attorney's "failure to effectively cross-examine" witnesses does not relate back to a claim that the attorney failed "to object to the admission of evidence." *United States v. Hernadez*, 436 F.3d 851, 853–54, 858 (8th Cir. 2006); *see also Turner v. United States*, 699 F.3d 578, 584 (1st Cir. 2012); *United States v. Ciampi*, 419 F.3d 20, 24 (1st Cir. 2005) (explaining that an amended claim alleging *attorney* malfeasance does not relate back to a claim alleging an error by the *court*.). Nor does a claim that an attorney inadequately cross-examined one witness relate back to a claim that the attorney inadequately cross-examined a different witness. *Mandacina v. United States*, 328 F.3d 995, 1003 (8th Cir. 2003) (cited with approval in *Felix*, 545 U.S. at 664 n.7). Similarly, "the basis for

4

a *Brady* claim is *the evidence that was being suppressed.*" *Hill*, 842 F.3d at 910 (emphasis in original). Accordingly, an amended *Brady* claim asserting that specific evidence was suppressed does not relate back to a claim asserting that different evidence was suppressed. *Mandacina*, 328 F.3d at 1003. "[E]ach alleged withholding of evidence represents a distinct act." *Id.* Nor does an amended *Brady* claim identifying specific evidence relate back to a claim alleging "a suspicion that *something*" was suppressed. *Hill*, 842 F.3d at 910.

Because "relation back depends on the existence of a 'common core of operative facts' uniting the original and newly asserted claims," both the original and amended claims must set out the facts that support them. *Felix*, 545 U.S. 644, 661; R. Governing 2255 Motions 2(b)(2). If the original claim is "completely bereft of specific fact allegations or evidentiary support," the Court cannot conclude that an amended claim shares with it a common core of operative facts. *Hill,* 842 F.3d at 925. Likewise if the new claim fails to allege specific facts. *See id.* An amended claim that fails to allege specific facts is also futile for another reason: conclusory allegations are subject to dismissal. *See*, e.g.*, Clinton v. United States,* No. 3:10-CR-208-RJC-DSC, 2015 WL 5155372, at *5 (W.D.N.C. Sept. 2, 2015) (dismissing claims that were "conclusory and fail[ed] to identify any specific conduct by counsel that was objectively unreasonable.").

Although Umaña's motion for leave to amend invokes the relation-back doctrine (*see* Mem. ISO Leave to Supplement 3), it does not come close to meeting its requirements. Umaña's relation-back argument consists of single-sentence

5

bullet points that refer generally to hundred-or-more-page stretches of his original motion. (*Id.* at 3–8). These bullet points do not identify any specific facts that appear in both Umaña's original and amended motion, let alone operative facts that form a common core. (*Id.*) Even if Umaña did more than ask this Court to sift on its own through his more than 600 pages of filings, however, he would not benefit from the relation-back doctrine. Umaña's amended claims assert only "new ground[s] for relief," and, to the extent his new claims allege specific facts at all, they "differ in both time and type" from those in his original motion. *Felix*, 545 U.S. at 650.

1. **Umaña's claim 31, alleging that Umaña was not competent during his criminal trial to understand the proceedings and assist his trial counsel, does not relate back to any of his earlier claims.**

Umaña's claim 31 alleges, for the first time, that Umaña was not "competent to stand trial" or participate in related proceedings. (Supp. 2255 Mot. 2.) He alleges that this court erred by "failing to inquire of his competency." (*Id.* at 10–11.) And he alleges that his attorneys were ineffective for failing to "seek a competency evaluation." (*Id.* at 10–11.)

This claim differs from what he alleged in his 2255 motion — that he was categorically ineligible for the death penalty because of an intellectual disability. (2255 Mot. 102–07 (claim 4).) Intellectual disability, a condition also called mental retardation, requires proof of "subaverage intellectual functioning" and "significant limitations in adaptive skills" that "became manifest before age 18."

6

*Atkins v. Virginia*, 536 U.S. 304, 318 (2002). Proof of the condition exempts a defendant from the death penalty, but it does not render him incompetent to stand trial. *Id.* at 318. In the words of the Supreme Court, "[m]entally retarded persons frequently know the difference between right and wrong and *are competent to stand trial.*" *Atkins v. Virginia*, 536 U.S. 304, 318 (2002) (emphasis added).

"The test for determining competency in a federal court is whether the defendant 'has sufficient *present ability* to consult with his lawyer with a reasonable degree of rational understanding — and whether he has a rational as well as a factual understanding of the proceedings against him.'" *United States v. Basham*, 789 F.3d 358, 379 (4th Cir. 2015) (emphasis added). A finding of incompetence does not exempt a defendant from the death penalty. An incompetent defendant avoids a trial only until he "attain[s] the capacity to permit the proceedings to go forward." *See United States v. Magassouba*, 544 F.3d 387, 405 (2d Cir. 2008) (quoting 18 U.S.C. § 4241(d)(2)).

The two claims "arise from separate occurrences of 'both time and type.'" *Pittman*, 209 F.3d at 318. The two claims involve different standards that require proof of different facts. They focus on different time periods: Intellectual disability focuses on a condition that became manifest before age 18; competence focuses on his present ability. The two standards impose different consequences and involve different strategic implications for the defense. This Court's decision affirmatively rejecting Umaña's claim of intellectual disability is a distinctly

7

different occurrence from this Court's omission to order a competency hearing on its own initiative.  (*See* Supp. Mot. 10–11.)  Similarly, any omission by Umaña's attorney to seek a competency evaluation from the Court is a different occurrence from counsel's previously alleged failure to investigate "mitigation evidence at the penalty phase of his trial";  failure to present to the "sentencing jury" additional lay and expert testimony about his mental health history; and failure to investigate and present sufficient evidence in support of his intellectual-disability claim; and other allegations in Umaña's original motion.  (2255 Mot. 7 (claim 1), 62–96 (claim 2), 97–107 (claim 3)); *see Schneider v. McDaniel*, 674 F.3d 1144, 1152 (9th Cir. 2012) (alleged failure to assert voluntary intoxication defense did not relate back to alleged failure to investigate competency to stand trial).  "The fact that amended claims arise from the same trial and sentencing proceeding as the original motion does not mean that the amended claims relate back for purposes of Rule 15(c)."  *Pittman*, 209 F.3d at 318.

>    **2.      Umaña's claim 32, alleging several categories of new purported errors related to witnesses and evidence, does not relate back.**

Umaña's claim 32 contains three categories of allegations.  (Supp. 2255 Mot. 13–37.)  He makes allegations about errors by the government and his attorneys related to the testimony of Detective Frank Flores, a government witness.  (*Id.* at 17.)  He alleges that misconduct by his attorney and the government prevented the jury from hearing five categories of purported evidence about Umaña's murders, witness tampering, and the organization of his gang.

8

(*Id.* at 22–30.)  And he alleges that the government withheld unspecified evidence purportedly obtained from or related to seven individuals.  (*Id.* at 30–36.)  All of these allegations are new and do not relate back to any timely claims.

### a.  Umaña's allegations about Detective Frank Flores do not relate back to any of his earlier claims.

Umaña's supplemental motion alleges, for the first time, that the testimony of Detective Flores, who, in Umaña's words, offered "general opinions/descriptions of MS-13 processes and procedures" and examined MS-13 graffiti, was "constitutionally flawed."  (Supp. 2255 Mot. 17.)  And he alleges that the jury never learned of these flaws because of "prosecutorial misconduct" and "counsel's ineffectiveness."  *Id.* at 16.

Counsel's allegations about Flores do not relate back to any of Umaña's earlier claims.  Umaña has never previously alleged that anything about Flores's testimony was unconstitutional.  (*Cf.* 2255 Mot. 200–01 (arguing that Flores's testimony *corroborates* Umaña's theory about his tattoos).)  Nor did he timely allege the facts that he now alleges raise the appearance of impropriety.  Although Umaña's 2255 motion alleges a host of different theories of ineffective assistance of counsel (*see* 2255 Mot. 7–167, 210–48, 258–74, 298–306, 312–19, 345–51, 373, 377–70), an allegation that his attorneys should have done more to impeach Flores's trial testimony is not among them (*id.*).  Nor are allegations that the United States presented false testimony by Flores or suppressed evidence that would impeach him among Umaña's numerous theories of

9

prosecutorial misconduct.  (*See* 2255 Mot. 169–208, 251–57, 308–10, 351–52, 379); *Mandacina*, 328 F.3d at 1003.

> **b.** **Umaña's allegations that misconduct by his attorney and the government prevented the jury from hearing evidence about Umaña's murders, witness tampering, and the organization of his gang do not relate back.**

Umaña's supplemental motion makes five new allegations that he says "disput[e] the government's theories" about what occurred at Las Jarochitas, witness-tampering efforts, and the structure of MS-13.  (Supp. Mot. 22–30.)  He alleges that when Umaña killed two brothers at Las Jarochitas, "members of Umaña's party did not know why Mr. Umaña shot the men."  (Supp. 2255 Mot. 23.)  According to his supplemental motion, "Umaña did not order the activities described in the witness tampering counts."  (Supp. 2255 Mot. 23.)  "MS-13 did not operate according to the hierarchical structure that the Government presented at trial."  (Supp. 2255 Mot. 24–25.)  "Umaña was not a 'leader'" in MS-13.  (Supp. 2255 Mot. 25.)  And "Umaña did not come to North Carolina to organize MS-13."  (Supp. Mot. 26.)

Umaña's conclusory assertion that the jury did not hear evidence of these new allegations "as a result of counsel's ineffectiveness and the Government's *Brady, Giglio*, and *Napue* violations" (*Supp. Mot.* 36–37) does not relate back to any of his earlier claims.  Most obviously, he does not allege any specific incompetent "acts or omissions of counsel" that kept this evidence from the jury, *Strickland*, 466 U.S. at 690.  Nor does he identify any specific *evidence* that was

10

withheld or falsely presented to the jury, favorable, material, and not already possessed by the defense. (*See* U.S. Resp. to Discovery Mot. 42–46, 62 (discussing the requirements for *Brady*, *Giglio*, and *Napue* claims)). Umaña's amended claim does not allege the "operative facts" that establish an attorney or government misconduct claim, let alone the same "core of operative facts" that appear in his original motion. *Hill*, 842 F.3d at 924.

Even if Umaña's assertion were not conclusory, it would not satisfy the relation-back doctrine. Even at the high level of generality at which he presents his amended allegations, they differ in time and type from the allegations he made against his trial attorneys and the government in his original motion. Umaña never alleged that his attorneys were deficient for failing to establish the five conclusions related to Las Jarochitas, culpability for witness tampering, and the structure of the gang that he alleges in his brief. (*See* 2255 Mot. 7–167, 210–48, 258–74, 298–306, 312–19, 345–51, 373, 377–70.) Nor did he allege that the government withheld or falsely presented this evidence. (*See* 2255 Mot. 169–208, 251–57, 308–10, 351–52, 379.)

> **c. Umaña's allegations that the United States suppressed information from or related to seven new individuals do not relate back.**

Finally, Umaña asserts that the United States suppressed information obtained during meetings or conversations with Manuel DeJesus Ayala, Cesar Castillo, Nelson Hernandez-Ayala, Yelson Castro-Licona, Helverth Castellon, related to the credibility of Juan Vela-Garcia, and concerning unspecified

11

"irregularities" related to Charlotte Mecklenburg Police Detective Chuck Hastings. (2255 Supp. Mot. 30–36.) Umaña has again failed to allege the specific *evidence* that was purportedly unconstitutionally withheld. (*Id.* at 30–36.) He, at best, speculates that because discussions or meetings may have occurred, the prosecution team must have obtained some kind of favorable, material, evidence not already possessed by the defense that it failed to disclose. This failure is again fatal to any application of the relation-back doctrine. *Hill*, 842 F.3d at 924 ("[T]he basis for a *Brady* claim is *the evidence that was being suppressed* — not a suspicion that *something* was being suppressed.").

Even if Umaña's amended claim identified the operative facts of a *Brady* claim, it would not relate back to any timely filed claim. Umaña's original 2255 motion does not allege that the United States suppressed any information supplied by Ayala, Castillo, Hernandez-Ayala, Castro-Licona, or Castellon. (Supp. 2255 Mot. 30–34.) And Umaña's original 2255 motion does not allege that the United States suppressed evidence that would impeach the credibility of Juan Vela Garcia or Detective Hastings, both of whom testified at Umaña's trial (*id.* at 35–36). *Mandacina*, 328 F.3d at 1002–03.

> **3. Umaña's claim 33, alleging that the United States engaged in misconduct with the evidence and argument presented at the separate trial of Umaña's codefendants, does not relate back to any of Umaña's claims.**

Umaña alleges for the first time in Claim 33 that the United States engaged in prosecutorial misconduct because the testimony and argument at a

12

different trial of Umaña's codefendants did not focus on Umaña. (Supp. Mot. 37–39.) He makes the conclusory assertion that "For a prosecutor to assert inconsistent theories as was done here violated Mr. Umaña's Fifth, Sixth, and Eighth Amendment rights." (*Id.* at 39.) And he alleges, without elaboration, "Had counsel objected and fully litigated this issue and on direct appeal, there is a reasonable probability of a different outcome." (*Id.* at 39.)

This claim does not relate back to Umaña's original 2255 motion. That motion alleges several different types of prosecutorial misconduct. (*See* 2255 Mot. 169–208, 251–57, 308–10, 351–52, 379.) But pursuit of the inconsistent theories that he describes in his supplemental motion is not among them. His allegation of ineffective assistance of counsel is wholly conclusory. Indeed, he does not even purport to say that counsel engaged in conduct that was objectively unreasonable, let alone identify specific acts or omissions that consist of the same core of operative facts that appear in his original motion. And, in any event, Umana never previously alleged that his trial counsel failed to object to or litigate a claim based on the government's conduct of the trial of Umaña's codefendants. Nor did he previously allege that his appellate attorneys were deficient, in any way.

4. **Umaña's claim 35, newly alleging that the jury improperly heard several words and phrases not challenged in his 2255 motion, does not relate back to that motion.**

In claim 35, Umaña complains about a hodgepodge of words and phrases that were before the jury in the form of opening arguments, the indictment,

13

testimony, or transcripts, which he failed to challenge in his original 2255 motion. (Supp. 2255 Mot. 44–67.) He alleges that the jury should not have received Umaña's full indictment, which alleges RICO overt acts carried out by Umaña's coconspirators (*id.* at 46–47), and this Court should have issued a limiting instruction informing the jury that the overt acts of others in furtherance of the conspiracy should not be considered in the penalty phase (*id.* at 53–56). He challenges testimony by Lenny Moriera indicating that Umaña and others "went in and rolled on the Bloods," an MS-13 rival gang. (*Id.* at 47.) He challenges the prosecutor's statement during opening argument that "[t]his group has a motto, a creed, a mission statement . . . murder, rape, control." (*Id.* at 50; Exhibit 1 to United States' Response to Motion for Discovery (Doc. No. 50, 3:16CV57), Mar. 23, 2017 (hereinafter "Gov't Exh. 1"), at 1216).[2] He challenges statements by Detective Sloane, who testified about the 2007 arrest of William Cordova, about two minor females located in the hotel room in which Cordova had been present. (Supp. 2255 Mot. 51–53; Gov't Exh. 1, at 1372–73, 1384–86.) He challenges a handwritten annotation in a transcript of a police interview with Luis Rivera that says "2 other homicides." (Supp. 2255 Mot. 57–59.) He challenges statements in a transcript of an interview in which Rene Arevalo indicates that Umaña is the kind of guy who will shoot you if you say something and that he

---

[2] A member of MS-13 and an expert on MS-13's history, structure, rules, and organization both testified during the trial that MS-13 does have this motto. (*See* Gov't Exh. 1, at 1255, 1257, 1293–94, 1424–25.)

14

was "into the devil." (Supp. 2255 Mot. 61–64.) And he challenges the failure to redact from the transcript of the April 2008 interview with Umaña several statements by police officers. (Supp. 2255 Mot. 59–60, 64–67.) As with other claims, he asserts that these matters were improperly in front of the jury as a result of ineffective assistance of counsel, prosecutorial misconduct, and errors by this Court. (*Id.* at 44–67.)

None of these complaints relate back to Umaña's original motion. Each complaint concerns a new purported ground, supported by alleged "facts that differ in both time and type from those the original pleading set forth." *Felix*, 545 U.S. at 650.

Umaña did not challenge any of these words or phrases in his original motion. He did not challenge the United States' reference to MS-13's motto in its opening statement. He did not allege that counsel, the government, or this Court erred by placing RICO overt acts before the jury. He did not challenge the testimony of Moriera or Sloane. He did not challenge the propriety of any handwritten marks in the transcript of Rivera's interview. Umaña challenged redactions from other parts of the transcript of Arevalo's interview (*see* 2255 Mot. 149), but he did not challenge the failure to redact Arevalo's purported "opinion" about what "kind of guy" Umaña is. (Supp. 2255 Mot. 61–62). And, although Umaña alleged that his trial attorneys failed to present enough information "[a]t the motion hearing" on Umaña's motion to suppress his statement on voluntariness and *Miranda* grounds (2255 Mot. 149), Umaña failed to allege that

15

the portions of the transcript about which he complains in his supplemental motion should have been redacted after this Court denied the motion to suppress.

**5. Umaña's claim 36, alleging improper use of communications between Umaña and the Salvadorian consulate, does not relate back to any prior claims.**

Umaña's claim 36 alleges for the first time that the United States improperly "introduced and relied on" Umaña's communications with Salvadorian consulate, in violation of the Vienna Convention on Consular Relations. (Supp. 2255 Mot. 67–71.) He alleges that his attorneys were constitutionally deficient for failing to "raise and litigate" this issue on "trial and direct appeal." (*Id.* at 71.)

This claim does not relate back to any of Umaña's prior claims. Although his 2255 motion alleges a violation of the same Convention, the facts he alleges in support of that claim are entirely different from those he now asserts. In his original 2255 motion, Umaña alleged only that he was denied his rights as a "*Guatemalan* citizen" with respect to the "*Guatemalan* Consulate." (*Id.* at 354–55 (emphasis added).) His prior claim has nothing to do with communications between Umaña and the *Salvadorian* consulate. Moreover, Umaña's original motion alleged that the United States and his attorneys were deficient for failing to *facilitate communication* between Umaña and his consulate, not for improperly using or litigating the use of consular communications at a pretrial hearing or at trial. (2255 Mot. 354–72.) Finally, Umaña's original motion failed to allege that his attorneys were in any way ineffective on "direct appeal." (Supp. 2255 Mot.

16

67–71.)

**6. Umaña's claim 37, alleging that venue was improper because of prejudicial publicity and community sentiment, does not relate back to any earlier claims.**

Umaña's claim 37, alleging that venue was improper because of prejudicial publicity (Supp. 2255 Mot. 72–86), does not relate back to any of the claims Umaña filed in his 2255 motion. Umaña did not allege that pretrial publicity or community sentiment made venue improper in this district or that his attorneys — who actively sought a change of venue on other grounds (*see* J.A. 997) — were ineffective for failing to challenge venue on these grounds.

**7. Umaña's claim 38, alleging that Judge Conrad was required to recuse himself from Umaña's trial because he had previously served as United States attorney, does not relate back to any earlier claims.**

Umaña's claim 38, alleging that Judge Conrad was required to recuse himself based on his prior service as United States Attorney, and that counsel was deficient for failing to seek recusal, does not relate back to any of his earlier claims. The claim differs "in both time and type from those the original pleading set forth." *Felix*, 545 U.S. at 650. Moreover, this Court has already held that Umaña's recusal theory is "without merit," and, further, "frivolous." (Doc. No. 76, at 5–11.) Amendment would therefore be futile even if this claim related back, because "an attorney is not ineffective for failing to raise meritless, or even long-shot, theories." *Carrasco v. United States*, No. 3:13-CR-199-RJC-1, 2016 WL 6023539, at *4 (W.D.N.C. Oct. 13, 2016) (citing *United States v. Mason*, 774 F.3d

17

824, 830 (4th Cir. 2014)).

### 8. Umaña's claim 39, alleging that the government improperly uses "RICO to prosecute street criminals" and improperly "compa[red] Umaña's undocumented status to that of one of the victims," does not relate back to his original motion.

Umaña's claim 39, alleging that the government improperly uses "RICO to prosecute street criminals" and improperly "compa[red] Umaña's undocumented status to that of one of the victims" does not relate back to "Claim 25" of his original motion. (Supp. 2255 Mot. 91–94.) Umaña's original motion relies on a specific study, "The Federal Death Penalty System: A Statistical Survey (1988–2000) (Sept. 12, 2000)," and alleges that the Justice Department's "decision to seek the death penalty" was based on Umaña's race, the race of the victim, and the geographic location where his crime occurred. (2255 Mot. 351–53.) His amended claim is based on an entirely different publication: "Jordan Blair Woods, Systemic Racial Bias and RICO's Application to Criminal Street and Prison Gangs, 17 Mich. J. Race & L. 303, 335 (2012)" (Supp. 2255 Mot. 92), which discusses the decision to charge RICO, not the decision to seek the death penalty. *See* 17 Mich. J. Race & L. at 335. Similarly, Umaña's allegation that the prosecutor made a comparison between Umaña and his victim during closing argument that was somehow improper (Supp. 2255 Mot. 94), is entirely different in time and type from an allegation that the Justice Department improperly made the "decision to seek the death penalty." (2255 Mot. 351–53.) Nor did Umaña allege the closing-argument comparison as a basis for his claim in his

18

original motion. Finally, Umaña did not previously allege that his trial attorneys were deficient for failing to raise these arguments, or that his appellate attorneys were deficient in any way.

### 9. Umaña's claim 40, asserting new challenges to evidence, argument, and jury instructions related to Umaña's victims, does not relate back to his earlier motion.

Umaña's claim 40 alleges several new purported errors related to Umaña's victims. Manuel Garcia's wife testified that Umaña's murder of her husband was "senseless" and that another family member had described Garcia's father as a "broken man." (Supp. 2255 Mot. 95–96.) Manuel's daughter testified that Umaña's murders were "senseless actions." (Supp. Mot. 96.) Douglas Friend testified that Manuel was friendly and reliable and that both Manuel and Ruben Garcia did good work. (Supp. Mot. 96–97.) Juan Lara testified that Andy Abarca, with whom he played basketball in Lemon Grove Park, was a "nice person" who was "in the real estate business." (Supp. Mot. 96.) Umaña alleges that each of these witness statements was improper and that the United States improperly relied upon them in closing argument. (Supp. Mot. 94–99.) He also argues that the United States improperly referred to the victims of the murders in which Umaña participated on Fairfax Avenue in Los Angeles as "kids" when they were "20 and 17." (Supp. Mot. 98.) He argues that this Court improperly instructed the jury about how to consider victim-impact evidence. (Supp. Mot. 100.) And he alleges that trial counsel was deficient for failing to object to these alleged errors and to make a record for later review. (Supp. Mot. 94, 100.)

19

These purported grounds are all new and do not relate back to any of Umaña's original claims. Umaña did not challenge the propriety of any of this testimony about or by Umaña's victims. He did not challenge the prosecutors' reference to "kids." (Supp. Mot. 98.) He did not challenge this Court's instruction about victim-impact evidence. And he did not allege that his attorneys were deficient for failing earlier to raise these issues or for failing to make a record of them.

### 10. Umaña's claim 41, newly challenging several statements by the United States during closing argument, does not relate back to any earlier claims.

Umaña seeks in claim 41 to challenge an assortment of statements by the United States during its closing argument, which Umaña did not challenge in his original 2255 motion. (Supp. 2255 Mot. 101–07.) He alleges that the United States improperly said that one of "Moe and Chipis" got "beaten up on order of this defendant"; spoke of a "vacuum of information" surrounding Umaña's decision to join MS-13; asked the jury to consider the source of information testified to by Umaña's "hired mitigation expert"; said that expert was hired to "convince [the jury] to do other than what you know you need to do"; compared prison to sending a "child to their room"; and asked the jury not to "be the water that washes the blood from his hands." (*Id.*) Umaña alleges that the government repeatedly asked jurors to "stand in the victims' shoes," (*id.* at 106) a phrase that does not appear on the transcript pages he cites (*see* Gov't Exh. 1, at 3403, 3413). Umaña repeats arguments he makes elsewhere in his supplemental motion that

20

the prosecutor improperly compared Umaña to some of his victims (Supp. 2255 Mot. 103) and referred to other Umaña victims as "kids" (*id.* at 106). And, again, Umaña alleges that his trial and appellate counsel were deficient for failing "to fully litigate this [sic] issues." (*Id.* at 102.)

Umaña's effort to challenge these statements does not relate back to his original 2255 motion. The allegations he presents in claim 41 are not among the several allegations of prosecutorial misconduct he alleged in that motion. (*See* 2255 Mot. 169–208, 251–57, 308–10, 351–52, 379.) Nor are his conclusory allegations that counsel should have done more to respond to these statements among his numerous allegations of ineffective assistance of trial counsel. (*See* 2255 Mot. 7–167, 210–48, 258–74, 298–306, 312–19, 345–51, 373, 377–70.) And Umaña did not allege that counsel performed deficiently "on direct appeal" in any respect. (Supp. 2255 Mot. 102.)

### 11. Umaña's claim 43, which alleges for the first time that trial counsel deficiently failed to present evidence of Umaña's exposure to alcohol and pesticides and failed to request a diminished-capacity jury instruction, does not relate back.

Umaña's claim 43, which alleges for the first time that trial counsel unreasonably failed to present evidence that Umaña "suffers from Fetal Alcohol Spectrum Disorder," failed to present evidence that Umaña was exposed to pesticides, and failed to request a jury instruction on diminished "capacity to appreciate the wrongfulness of the defendant's conduct or to conform conduct to the requirements of the law," (Supp. 2255 Mot. 123–38), does not relate back to

21

any of Umaña's earlier claims. Umaña did not previously allege that his attorneys improperly omitted to investigate Fetal Alcohol Spectrum Disorder or exposure to pesticides as a defense, defenses which differ significantly from those discussed in Umaña's original motion. *See Schneider*, 674 F.3d at 1152. Nor does his original motion allege that his attorneys unreasonably failed to request a diminished-capacity jury instruction, in "claim 2" (Supp. 2255 Mot. 136), or elsewhere. (*See* 2255 Mot. 64–69.)

**12. Umaña's claim 44, alleging that the United States suppressed "evidence regarding the civil war in El Salvador," does not relate back.**

Umaña's claim 44, alleging that the United States suppressed "evidence regarding the civil war in El Salvador," does not relate back to any of the claims in his original 2255. This claim does not contain nearly enough operative facts to permit a conclusion that it shares a common core with a claim in his original motion. *Hill,* 842 F.3d at 925. And this type of allegation, which would require proof that the prosecution team somehow had superior information about that war that is favorable, exculpatory, and material, does not appear anywhere in his original 2255 motion. *See Mandacina*, 328 F.3d at 1002–03.

**13. Umaña's claim 45, alleging that this Court erred when it rejected counsel's effort to introduce at trial a narrative accompanying Umaña's birth certificate, does not relate back.**

Umaña's claim 45 alleges, for the first time on postconviction review, that this Court erred "[d]uring the penalty phase" by denying counsel's request to

22

introduce a narrative that accompanied his Guatemalan birth certificate. (Supp. 2255 Mot. 140.) Although trial counsel litigated this issue vigorously at trial and in post-trial briefing, (Gov't Exh. 1, at 3154–57, 3594–95), Umaña alleges, in conclusory terms, that counsel did not "fully litigate[] this issue at trial and on direct appeal" (Supp. 2255 Mot. 141.)

Contrary to what Umaña asserts, Claim 45 does not relate back to Claim 6 of Umaña's original 2255 motion. (*Id.* at 140.) That original claim alleges that the United States engaged in misconduct during Umaña's "pretrial" *Atkins* hearing by failing to disclose Umaña's Guatemalan birth certificate, which was accompanied by a narrative, until trial, when the United States turned it over to the defense. (2255 Mot. 190–91.) It does not allege any error related to the birth certificate at the penalty phase, and it does not allege errors by trial counsel or this Court. And Umaña's original 2255 motion alleged no errors by his appellate counsel. Simply put, claim 45 is based on factual allegations different in time and type from those in Umaña's original motion and does not relate back. *See Felix*, 545 U.S. at 661 (allegations of pretrial misconduct do not relate back to allegations of error occurring during the trial); *Ciampi*, 419 F.3d at 24 (allegation of attorney error does not relate back to allegation of court error).

### 14. Umaña's Claim 46, alleging that the jury directly violated the Constitution, does not relate back.

Umaña's claim 46 contends for the first time that the jury itself directly violated Umaña's constitutional rights by declining to unanimously find two

23

mitigating factors, that he "was exposed to the violence of civil war in his native El Salvador at an early age" and that "he did not have the benefit of schooling beyond the third grade." (Supp. 2255 Mot. 143.) As with other claims, he also includes conclusory language that his attorneys were deficient for failing to raise and litigate "these issues at trial and on appeal." *Id.* at 144.

This claim does not relate back to "Claims 1 and 2 of the initial 2255 motion." (Supp. 2255 Mot. 141.) Those claims concerned only errors by Umaña's trial counsel; not errors by the jury or his appellate counsel. (2255 Mot. 7–96.) And Umaña's original claims did not assert that counsel was ineffective for failing to argue that the jury was somehow constitutionally compelled to find these factors. Claim 46 "is completely new and thus cannot relate back" to Umaña's "original pleading." *Pittman*, 209 F.3d at 318.

### 15. Umaña's claim 47, alleging defects in the Notice of Intention to Seek the Death Penalty filed by the United States, does not relate back.

Claim 47 alleges for the first time that the United States' Notice of Intention to Seek the Death Penalty was constitutionally inadequate. (Supp. 2255 Mot. 144–148.) He alleges that the allegation in the notice that Umaña "participated and aided and abetted the killing of Andy Abarca" is constitutionally defective. (Supp. 2255 Mot. 146.) And he alleges that a handwritten note in the margin of the transcript of the police interview with Luis Rivera further rendered the Notice filed by the United States defective. (Supp. 2255 Mot. 146.) He again includes conclusory allegations that his trial and

24

appellate attorneys were deficient for failing to raise these issues. (Supp. Mot. 148.)

This claim does not relate back to "Claims 5 and 8 of the initial 2255 motion." (Supp. 2255 Mot. 144.) Umaña did not previously allege *any* type of defect in the Notice of intention to seek the death penalty. (2255 Mot. 110–67; 210–34.) An omission to raise these arguments is not among his original motion's numerous allegations of attorney incompetence. And Umaña did not previously allege that his appellate attorneys were constitutionally deficient, in any way.

### 16. Umaña's claim 48, which alleges that counsel failed adequately to challenge several aggravating factors submitted to the jury, does not relate back.

Umaña's claim 48 alleges, for the first time in this postconviction proceeding, that several "aggravating factors" submitted to the jury were "overbroad, vague, and duplicative." (Supp. 2255 Mot. 148.) He challenges the statutory factor for death eligibility requiring proof that he knew his act of violence created a grave risk of death to a person other than the victim, 18 U.S.C. § 3591(a)(2)(D); and the statutory aggravating factors requiring proof that he knowingly created a grave risk to a person other than the victim, 18 U.S.C. § 3592(c)(5), and intentionally killed or attempted to kill more than one person in a single episode, 18 U.S.C. § 3592(c)(16). (Supp. 2255 Mot. 150–53.). He challenges non statutory aggravating factors requiring proof that Umaña committed a gang-motivated killing (Gov't Exh. 1, at 156); that he demonstrated a callous disregard for the severity of the offense (*id.*); and that he participated in

25

other uncharged murders and acts of violence (*id.* at 157).  And he challenges several "sub-factors" of the factor requiring proof that Umaña was likely to commit criminal acts of violence in the future (*id.* at 157–58).  (Supp. 2255 Mot. 155.)  Although Umaña concedes that his trial counsel pressed "similar objections pre-trial," he nevertheless asserts in conclusory terms that counsel "failed to fully present these issues."  (*Id.* at 149.)

These allegations do not relate back to any of Umaña's prior claims. Umaña did not previously allege that his attorneys were deficient for omitting to challenge or "fully present" challenges to the submission of these factors to the jury.  (*Id.* at 149); *Turner*, 699 F.3d at 584 (holding that the relation-back standard cannot be satisfied "by raising some type of ineffective assistance in the original petition, and then amending the petition to assert another ineffective assistance claim based upon an entirely distinct type of attorney misfeasance").

### 17.   Umaña's claim 49, alleging for the first time that this court erred by giving or omitting to give four jury instructions, does not relate back to any of Umaña's original claims.

Umaña's claim 49 alleges that this Court erred by giving or omitting to give four instructions that he did not challenge in his original 2255 motion. Umaña alleges that this court erred by giving the instruction required by statute as a "[s]pecial precaution to ensure against discrimination," 18 U.S.C. § 3539(f); by omitting to give "an instruction on the presumption of life"; by "fail[ing to define 'reasonable doubt'"; and by omitting to instruct the jury "that it must find uncontested mitigating factors."  (Supp. 2255 Mot. 156–64.)  And he alleges for

26

the first time that his trial and appellate attorneys were deficient for failing to "fully litigat[e] this issue." (*id.* at 156.)

These allegations do not relate back to any of Umaña's original claims. Umaña's original motion does not allege that this Court erred by giving or omitting to give any of these instructions. It does not allege that trial counsel unreasonably omitted to litigate any of these instructions. And it does not allege that appellate counsel did anything wrong.

### 18. Umaña's claim 50, challenging two additional jury instructions, does not relate back to any of Umaña's original claims.

Umaña's claim 50 also challenges jury instructions that Umaña failed to challenge in his original 2255 motion. He alleges that later instructions given by this Court improperly referred to earlier instructions defining felony murder under North Carolina law, and these instructions somehow created a "reasonable likelihood" that the jury concluded that Umaña committed the December 8, 2007 murders of the Garcia brothers "in the course of a robbery." (Supp. 2255 Mot. 165.) He alleges that this Court erred when it instructed the jury about "reasonable doubt," conceding that the instruction was proper under the law of "this Circuit." (*Id.* at 166.) And he again alleges that his trial and appellate attorneys were deficient for raising these issues. (*Id.* at 168.)

Like his other new challenges to jury instructions, these allegations do not relate back to any claim in Umaña's original 2255 motion. That motion does not allege error in these instructions, that trial counsel unreasonably failed to litigate

27

them, or that appellate counsel did anything wrong.

### 19. Claim 52, which alleges that this Court improperly considered materials from his codefendants' trial and secretly considered unspecified material containing unspecified exculpatory information, does not relate back.

Umaña's claim 51 concerns this Court's consideration of materials from the trial of his codefendants in its order after Umaña's *Atkins* hearing, this Court's consideration of several letters in that order, and this Court's alleged secret consideration of other unspecified materials that allegedly contain unspecified exculpatory information. Umaña alleges that this Court improperly considered "testimony and exhibits presented in the" trial of Umaña's "codefendants" when concluding that Umaña was not mentally retarded or intellectually disabled. (Supp. 2255 Mot. 191–94.) He alleges that this Court improperly considered "six specific letters" that it "referenced" when making that determination. (*Id.* at 192–93.) He also speculates that this Court also considered other letters that it did not disclose, and further speculates that those letters "contained material evidence contradicting the Court's rulings." (*Id.* at 193.) He similarly contends that this court secretly considered unspecified "expert and other evidence directly disputing the Court's conclusions" when addressing Umaña's motion to strike allegations of unadjudicated murders from the Notice of Intent to Seek the Death Penalty. (*Id.* at 193–94.) He alleges generally that "[t]he Court's exposure" to unspecified "other not-of-record information and evidence" violated Umaña's constitutional rights. (*Id.* at 194.)

28

And he alleges in conclusory terms that his trial and appellate attorneys were constitutionally deficient for failing to "fully raise and litigate" these issues. (*Id.*).

These allegations do not relate back to Umaña's original 2255 motion. To the extent they fail to specify what information this Court supposedly improperly considered or failed to disclose, they do not allege enough facts to permit a conclusion that they share a common core of operative facts with claims in Umaña's original motion. *See Hill*, 842 F.3d 910, at 925. To the extent his allegations contain facts, they are different in time and type from those alleged in support of his original claims. Umaña's original motion did not allege that this Court improperly considered "extra-record information in ruling on critical issues." (Supp. 2255 Mot. 194). He did not allege that his trial attorneys improperly omitted to challenge these alleged improprieties. And he did not allege that his appellate attorneys did anything improper.

### 20. Claim 53, which newly alleges errors related to funding for translations, does not relate back.

Umaña's amended claim 53, alleging that this Court and Umaña's attorneys did not properly handle requests for funding translations, does not relate back to Umaña's earlier claims. Umaña speculates that records of "calls and letters" that were not translated by the defense would have "disputed" other unspecified translations that this Court considered when ruling on Umaña's *Atkins* motion. (Supp. 2255 Mot. 196–98.) And he speculates that these untranslated records would also have disputed unspecified translations and facts

29

that were presented to the jury.  (Supp. 2255 Mot. 196–98.)  He alleges that this Court erred by indicating that it intended to deny an initial request for $320,630.00 for translation funding and by declining to preclude the United States from introducing translations.  (*Id.* at 195–99.)  He alleges that trial counsel was deficient for reducing its funding request.  (*Id.*)  And he alleges that appellate counsel was deficient for failing to litigate this issue on appeal.  (*Id.*)  These claims are "completely new and thus cannot relate back" to Umaña's "original pleading."  *Pittman*, 209 F.3d at 318.

> **21.    Umaña's claim 54, challenging the timing of this Court's rulings on Umaña's motion to strike portions of the Notice of Intention to Seek the Death Penalty and motion to exclude evidence of Umaña's conduct in El Salvador, does not relate back.**

Umaña's claim 54, challenging the timing of this Court's rulings on two defense motions, does not relate back to any of Umaña's original claims.  Umaña criticizes the timing of this Court's rulings on Umaña's motion to strike allegations of unadjudicated murders in Los Angeles and his motion in limine on evidence of an unadjudicated murder in El Salvador.  (Supp. 2255 Mot. 200–02.)  He alleges that his trial attorneys were constitutionally compelled to seek a continuance in the light of that timing, although he does not specify what his attorneys would have done differently if they had sought or received one.  (*Id.* at 201–02.)  And he alleges that his appellate attorneys were deficient for omitting to raise this issue on direct appeal.   These allegations differ in time and type from those that appear in Umaña's original motion.  They therefore do not meet

30

the requirements of the relation-back doctrine.

**22.  Umaña's claim 55, alleging in conclusory terms that his attorneys failed to present a coherent defense theory, does not relate back.**

Umaña's claim 55, which alleges that his trial counsel "failed to develop and present a coherent defense theory" (Supp. Mot. 202–04), does not relate back to any of his earlier claims.  Although the claim contains citations to other claims among a number of general allegations, it does not allege any specific errors or omissions by counsel.  It therefore does not allege a common core of operative facts with any earlier claim.  And, to the extent it alleges any new errors or omissions by trial counsel beyond the other claims that it cites, these new errors or omissions would not meet the requirements of the relation-back doctrine.  Counsel's conclusory assertion that his attorneys failed to litigate this issue "on appeal" (*Id.* at 204) also does not relate back because Umaña's original motion does not allege ineffective assistance of appellate counsel.

**23.  Umaña's claim 56, alleging ineffective assistance of appellate counsel, does not relate back.**

Umaña's claim 56, alleging that his attorneys were constitutionally deficient on his direct appeal for omitting to raise each of the hundreds of purported grounds for relief in Umaña's original 2255 motion and his supplemental 2255 motion (Supp. 2255 Mot. 205–07),[3] does not relate back to his

---

[3]  Umana's everything-including-the-kitchen-sink theory of ineffective assistance directly contradicts longstanding Supreme Court precedent.  *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at

31

original motion. Umaña's original motion alleges errors by the government, his trial attorneys, and this Court, but it does not allege any claims based on unreasonable errors or omissions by the attorneys that represented him on direct appeal. His amended claim concerns different purported errors or omissions by a different set of attorneys that purportedly occurred during a different proceeding at a different time. Umaña's claim of ineffective assistance of appellate counsel, therefore, does not come close to meeting the requirements of the relation-back doctrine. *Pittman*, 209 F.3d at 318–19 (claim alleging counsel's failure to appeal did not relate back to claim asserting ineffective assistance of counsel during sentencing); *Osborne v. Graham*, No. 15-CV-6042 CJS, 2018 WL 1827673, at *9 (W.D.N.Y. Apr. 17, 2018) ("[A] claim of ineffective assistance of appellate counsel does not relate back to a claim of ineffective assistance of trial counsel, or vice versa, since the claims pertain to different attorneys and different venues.").

> **24.  Umaña's claim 57, which asks this Court to hold that the Fourth Circuit directly violated Umaña's constitutional rights, does not relate back to any of Umaña's earlier claims.**

Umaña's claim 57, which alleges that "the Fourth Circuit Court of Appeals violated" his rights under several provisions of the Constitution (Supp. Mot. 208–11), does not relate back to any of the claims in Umaña's original 2255 motion. That original motion alleges errors by the government, Umaña's trial attorneys, and this Court during trial proceedings, but it does not allege that the Fourth

---

most on a few key issues.").

Circuit directly violated his rights.  Umaña's request that this Court review the binding decision of the Fourth Circuit — a request that depends on an unsupported and counterintuitive theory about the relationship between federal courts — does not relate back to any of Umaña's original claims.

### 25. Umaña's claim 58, alleging that limited access to documents filed on this court's docket violated his rights, does not relate back to any earlier claim.

Umaña's claim 58 alleges that this Court, his trial attorneys, and his appellate attorneys violated Umaña's rights because he was denied access to some documents entered on the docket of his criminal case, which involved more than 25 different defendants.  (Supp. Mot. 211–14.)  Although, as Umaña acknowledges (*id.* at 212), this Court provided him with a "complete docket sheet" with information about each filing (June 6, 2013, Order (Doc. No. 1543, 3:08CR134), at 2), Umaña's supplemental motion fails to specify the documents that he did not receive in violation of his constitutional rights.  (Supp. Mot. 211–14.)  He alleges that his trial attorneys were ineffective for failing to litigate access to these unspecified documents.  (*Id.* at 211–12.)  And, although he concedes that his appellate counsel sought "full access to the trial record" in this Court and on direct appeal, he nevertheless alleges that his appellate attorneys were constitutionally deficient.  *Id.* at 212.

Umaña's document-access theories do not relate back to his original claims.  Because he fails to specify any undisclosed documents to which he is purportedly constitutionally entitled, he has not alleged any operative facts, let

33

alone operative facts that share a common core with those in his original motion. Nor did Umaña allege that this Court denied his rights by withholding information on this court's docket, or that his trial attorneys unreasonably omitted to request any document on that docket. And Umaña did not allege that his appellate attorneys were deficient in any way.

**B. Although three of Umaña's amended claims include some allegations that present a closer question under the relation-back doctrine, they would be futile even if they were timely.**

Umana's remaining amended claims, numbered 34, 42, and 51, are also futile. Each of these claims allege a number of new purported grounds for relief. The majority of those grounds are futile because, like the grounds addressed above, they do not come close to meeting the requirements of the relation-back doctrine. A handful of grounds within these claims potentially present a closer question about whether the relation-back doctrine applies. But all of the grounds within this handful would readily be subject to dismissal, even if they were timely. Accordingly, this Court should deny Umana's motion for leave to amend in its entirety.

**1. Umaña's claim 34, alleging that he was interrogated in violation of his Sixth Amendment right to counsel, is futile.**

Umaña's amended claim 34, which alleges that he was interrogated in violation of his right to counsel, contains four parts. First, Umaña was interviewed by police on April 23, 2008. And the propriety of the admission of his statements was litigated thoroughly and affirmed on appeal. *United States v.*

34

*Umaña*, 750 F.3d 320, 345 (4th Cir. 2014).  Umaña now speculates, without identifying any specific conversations, that "this was not the only instance in which law enforcement working with the prosecution interrogated or attempted to interrogate Mr. Umaña despite the attachment of his Sixth Amendment right to counsel." (Supp. Mot. 43.)  Second, Umaña speculates, again without identifying any specific communications, that the "Government was also intercepting attorney-client privileged communications and monitoring wiretaps where surveilled persons called Mr. Umaña's attorney." (*Id.*)  Third, Umaña alleges that his trial counsel "sought to suppress the April 23, 2008 statement pretrial on Fifth Amendment grounds but failed to raise the clear Sixth Amendment violation." (*Id.* at 44.)  Finally, Umaña alleges that his appellate counsel failed to raise the same argument "on appeal." (*Id.* at 44.)

Three of the four parts of Umaña's claim 34 do not come close to meeting the requirements of the relation-back doctrine.  His allegations that police completed or attempted unspecified interrogations of Umaña beyond the April 23 interview and intercepted communications do not allege any operative facts, let alone facts that share a common core with those he previously alleged.  And he never alleged in his 2255 motion that these additional interrogations or interceptions occurred, or that this Court or his attorneys failed to handle them properly.  Nor did Umaña allege that his appellate counsel unreasonably failed to do anything, let alone raise a claim of a Sixth Amendment violation during his direct appeal.  These components of Umaña's amended claim 34 do not relate

35

back to any claims in his original motion and are untimely.

The application of the relation-back doctrine to Umaña's allegation that his *trial* attorneys failed to raise a Sixth Amendment challenge along with their Fifth Amendment challenge to his April 23, 2008 statements arguably presents a closer question. In his original 2255 motion, Umaña alleged that his trial attorneys did not do enough to challenge that same statement on voluntariness and *Miranda* grounds. (*See* 2255 Mot. 313.)

Even if were to relate back, this new allegation of attorney omission remains futile because the record directly refutes it. Umaña's trial counsel argued unequivocally that "[t]he April 23, 2008 statement was taken in violation of the Defendant's *Sixth Amendment right to counsel.*" (Gov't Exh. 1, at 190, 199–207.) Trial counsel made the argument in a pretrial motion to suppress (*id.*), during the suppression hearing held by this Court (*id.* at 469, 473–75), and again in a motion for a new trial (*id.* at 3595–3601). Umaña's trial attorneys asserted the same theory proffered by Umaña's supplemental 2255 motion — that his Sixth Amendment right to counsel attached when he was arrested in December 2008 for the homicides in Greensboro, and police violated that right when they interrogated him after that date (Supp. 2255 Mot. 40–44). (*See, e.g.*, Gov't Exh. 1, at 190, 199.) This Court ruled that the April 23 interview did not violate Umaña's Sixth Amendment rights. (Gov't Exh. 1, at 481, 3683.)

Because "the record refutes" Umaña's "factual allegations" that his trial attorneys failed to challenge evidence of his April 23, 2008 interview on Sixth

36

Amendment grounds, this claim would be subject to dismissal whether or not it relates back. *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). This amended claim would therefore be futile, this Court should deny leave to file it. *Pittman*, 209 F.3d at 314.

### 2. Umaña's claim 42, which seeks to relitigate this Court's determination that Umaña is not mentally retarded and asserts ineffective assistance of counsel, is futile.

Umaña's claim 42 contains two parts, both of which are futile. The first part alleges a number of new attorney errors and omissions during the *Atkins* hearing conducted by this Court, which do not relate back. This first part also alleges two omissions that arguably overlap with prior allegations but are insufficient on their face. The second part alleges that this Court erred when it declined to find that Umaña was mentally retarded or intellectually disabled. Although the amended claim repeats some allegations that appear in Umaña's original motion, the amended claim is barred by the well-established relitigation and nonretroactivity doctrines.

### a. Umaña's theories of attorney error during this Court's *Atkins* hearing are futile.

Umaña's allegation that his trial attorneys inadequately cross examined an expert who testified for the United States at Umaña's *Atkins* hearing, Dr. Enrique Suarez, does not relate back to Umaña's "Claim[] 3," (Supp. 2255 Mot. 108). Umaña failed to allege that counsel failed to adequately cross-examine Dr. Suarez in his original claim. (*See* 2255 Mot. 97–102); *Mandacina*, 328 F.3d at

37

1003.

Umaña's contentions that his attorneys should have presented the testimony of witnesses unmentioned in his original claim alleging ineffective assistance during Umaña's *Atkins* hearing also do not relate back. Umaña's supplemental motion alleges, in largely conclusory terms, that his attorneys should have presented at Umaña's *Atkins* hearing testimony from "Vilma Araceli Salazar de Argueta, Roxana Cruz Torres, Vilma Elizabeth Torres de Cruz, Luis Munroy, Zoila Olana . . . Saul Umaña and Leticia Ramirez Diaz," Luis Ramos, and unnamed witnesses who knew Umaña in New York. (Supp. 2255 Mot. 110–12.) These witnesses would purportedly offer lay anecdotes about "adaptive deficits" Umaña purportedly exhibited when he was younger by, for example, telling "immature jokes" as a teenager or putting his shoes on the wrong feet. (*id.*) Umaña also alleges that his defense team should have asked "Ana Gladys Magana" to interpret Umaña's school records, should have presented the transcript of his April 2008 police interview as evidence of adaptive deficits, and should have presented the testimony of unnamed "witnesses who travelled with Mr. Umaña." (*id.* at 112–115.)

Umaña failed to allege in his original motion that counsel was deficient for failing to call or identify all but two of these witnesses during the *Atkins* hearing. Umaña's original claim alleged that counsel failed to present the testimony of "his Aunt Reina," "his paternal cousin, Lillian Tino," "Vilma Araceli Salazar de Argueta," Monica Tatiana Reyes, and "Saul Osvaldo Umaña." (2255 Mot. 97–

38

100.)  With the exception of allegations related to Saul Umaña and Vilma Araceli Salazar de Argueta, Umaña's new allegations involve attorney omissions related to entirely different witnesses and do not arise from a common core of operative facts.  *Mandacina*, 328 F.3d at 1003 (attorney omissions related to one witness do not relate back to attorney omissions related to a different witness).

Although Umaña's original and amended 2255 motions both allege that his attorneys omitted to present the testimony of Saul Umaña and Vilma Araceli Salazar de Argueta during Umaña's *Atkins* hearing, an amendment including these allegations would remain futile even if it related back.  Umaña's amended claim does not identify any specific testimony these individuals would have provided.  Accordingly, even if true, his allegations do not identify evidence that "no competent attorney" would have declined to pursue, *Premo v. Moore*, 562 U.S. 115, 124 (2011), let alone evidence that raises a reasonable probability of a different result, *Strickland*, 466 U.S. at 689.  Umaña's conclusory and facially insufficient allegations about these witnesses would, therefore, be subject to dismissal even if timely.

### b. Umaña's theory that this Court erred by finding that he failed to prove that he was mentally retarded is futile.

After a full hearing, this Court found that Umaña failed to meet his burden to prove that he was ineligible for the death penalty on grounds of mental retardation.  (*See* U.S. Response to Umaña's Motion for Leave to Conduct Discovery (Doc. No. 50), at 11–14) (describing the proceedings)).  This Court

39

applied the three-part definition of this condition that the United States Supreme Court described in *Atkins*, 536 U.S. at 308, reaffirmed in *Hall v. Florida*, 134 S. Ct. 1986, 1994 (2014), and called the "generally accepted, uncontroversial intellectual-disability diagnostic definition" in *Moore v. Texas*, 137 S. Ct. 1039, 1045 (2017)  (Gov't Exh. 1, at 1000–01).  The definition this Court applied is the same definition Dr. John Gregory Olley, a qualified professional psychologist presented by Umaña, testified was in current use.  (*Id.* at 533–36, 1000 n.3.)  The Fourth Circuit affirmed this Court's rejection of Umaña's mental-retardation theory.  *Umaña*, 750 F.3d at 358.

In his original 2255 motion, Umaña's claim 4 asked this Court to relitigate his mental-retardation theory, asserting that this Court had erred by focusing on "Umaña's strengths, rather than deficits," and based its findings on "Umaña's self-reports and the testimony of correctional officers."  (2255 Mot. 105.)  Umaña's original motion asked this Court for a determination of "intellectual disability" (*id.* at 102), which is an alternative term for the phenomenon previously called "mental retardation."  *Hall*, 134 S. Ct. 1986 (2014).

Umaña's amended claim 42 also alleges that this Court erroneously considered Umaña's strengths, self-reported behavior, and reports of correctional officers, but the amended claim alleges for the first time that this Court contravened the Supreme Court's 2017 holding in *Moore v. Texas*, 137 S. Ct. 1039 (2017).  (Supp. 2255 Mot. 119, 121, 122).  *Moore* held that a Texas state court erred by concluding that a defendant's IQ score alone established that he was not

40

intellectually disabled.  *Moore*, 137 S. Ct. at 1049–50.  And *Moore* held that the state court's consideration of the defendant's "adaptive functioning" deviated from both "prevailing clinical standards" and the "older clinical standards the court claimed to apply."  *Moore*, 137 S. Ct. at 1049–50.

To the extent that Umaña's allegations that this Court erroneously rejected his intellectual-disability theory arguably relate back to his original motion,[4] they remain futile.  At the outset, Umaña already litigated the issue of intellectual disability before this Court and the Fourth Circuit.  He is barred from relitigating this Court's determination.  *See Kaufman v. United States*, 394 U.S. 217, 227 n.8 (1969); *United States v. Roane*, 378 F.3d 382, 396 n.7 (4th Cir. 2004) (citing *Boekenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976)).  *Moore* did not change the law in any material way, and the decision offers Umaña no basis for escaping the relitigation bar.  *Cf. Roane* 378 F.3d at 396 n.7.  This Court did not apply Texas's erroneous approach to determining mental retardation; since well before *Moore*, "federal courts have been guided primarily" by the "clinical standards" referred to by the Supreme Court "in determining whether a defendant is intellectually disabled when facing federal charges." *See United States v. Williams*, 1 F. Supp. 3d 1124, 1136 (D. Haw. 2014).[5]

---

[4]  Umana's entirely new allegations, for example, his allegations that this Court erred by "directly review[ing]" Umana's letters, reviewing translations of letters, or considering his ability to drive (Supp. 2255 Mot. 120–21), do not relate back to any of his original claims.

[5]  To the extent Umana seeks to present an argument that he failed to present to this Court or to the Fourth Circuit, Umana's procedural default bars the argument.  (*See* U.S. Response to Umana's Motion for Leave to Conduct Discovery (Doc. No. 50), at 117–18).

Even if Umaña were not barred from relitigating the issue of intellectual disability, the 2017 decision in *Moore* would not help him. *Moore* did not announce a new rule that applies retroactively to cases on collateral review. *See In re Payne*, No. 17-6390, 2018 WL 774004, at * (6th Cir. Feb. 8, 2018) (citing decisions); *Williams v. Kelley*, 858 F.3d 464, 474 (8th Cir. 2017). "The nonretroactivity principle *prevents* a federal court" from granting a prisoner postconviction relief "based on a rule announced after his conviction and sentence became final." *Caspari v. Bohlen*, 510 U.S. 383, 389 (1994). Because Umaña's conviction and sentence became final years before *Moore* was decided, his amended claim based on *Moore* would be subject to dismissal, even if timely. *See United States v. Sanders*, 247 F.3d 139, 140, 151 (4th Cir. 2001). Amendment would, therefore, be futile.

### 3. Umaña's Claim 51, which alleges errors related to each of the jurors who participated in the verdict, is futile.

Umaña's original 2255 motion raised issues related to a handful of jurors; his amended claim 51 seeks to add allegations related to all twelve of the jurors before whom he was tried. Umaña's new allegations that relate to jurors unchallenged in his original 2255 motion or allege entirely different facts do not relate back. And the new allegations that arguably overlap with those in his original motion fail as a matter of law, for other reasons.

Umaña alleges that several jurors harbored some kind of bias or other flaw. ███████████████████████████████████████████████

42



Umaña also alleges several errors by this Court in questioning jurors and ineffective assistance of counsel. Umaña alleges that this Court did not ask enough of



Umaña's allegations related to jurors ████████████████████ ██ do not come close to meeting the requirements of the relation-back doctrine. Umaña's original motion sought to raise issues related only to four specific seated jurors: ████████████████████ (2255 Mot. 277, 292.)  Alleged biases harbored by different jurors and attorney or court errors related to the voir dire or individualized instruction of these different jurors do not arise from the same core of operative facts.  Although Umaña's original 2255 motion contains a conclusory allegation that ███████████████████████ ██████████████████████████████ ██████████████████████, this argument is entirely different in time and type from his amended claim that █████████████ ██████████████████████████

Umaña's new allegations related to Juror ██ do not relate back to his original motion, which alleged only that ███████████████ ████████████████████████

44

████████████████████ Umaña's amended claim does not concern ████████

████████████████████████████████████████████████████

Although related to the same juror, Umaña's amended claim alleges entirely

different facts — ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████ [6] (Supp. 2255 Mot. 176, 181.) Umaña's amended claim

related to ████████, therefore, does not share a common core of operative fact

with Umaña's original claim.

And Umaña's conclusory allegation that his appellate attorneys were

constitutionally deficient to the extent they omitted to raise the "above described

errors on direct appeal" (Supp. 2255 Mot. 191) do not relate back to his original

motion. That motion does not allege that his appellate attorneys were in any way

deficient.

Umaña's amended claim related to ████████ involves some allegations

that arguably overlap with allegations in Umaña's original 2255 motion. The

original motion alleges that ████████████████████████████████████

████████████████████████████. The original motion alleges that ████████

<hr />

[6] Umana does not allege that ████████ failed to disclose ████████████████████
████████████████████████, and neither of these facts would require the juror to be
removed for cause. *See United States v. Fulks*, 454 F.3d 410, 430–33 (4th Cir. 2006). And the
inference that Umana draws from ████████ statements — ████████████████████████
████████████████ — is contradicted by the record. ████████████████████████████
████████████████████████████████████████████████████
████████████████████████

45



Umaña's amended claim related to ████████ would be futile, however, even if it relates back to his original motion. His amended claims related to this juror fail on their face, as a matter of law.

Umaña's theory ████████████████████████████████████████████████, fails as a matter of law for a number of reasons. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

█████████████████████████ ██ ███████████████████████

██████████████████████████████

████████████████████

Umaña's allegation that his attorney was constitutionally deficient for omitting to seek Juror ████████████████████████████████████, also fails as a matter of law. ██████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████. Nor has Umaña alleged facts establishing that no "reasonable lawyer could have concluded" that keeping ████ ██ on the panel was in Umaña's interest, *United States v. Powell*, 850 F.3d 145, 150 (2017). Umaña also cannot establish a reasonable probability that the "result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. He cannot establish that his effort to challenge ████████ would have been successful, and he cannot establish that a jury without ████████ would not "also have imposed the death penalty in this case." *Keith v. Mitchell*, 455 F.3d 662, 677 (6th Cir. 2006).

Umaña's theory that this Court was constitutionally compelled to remove ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████ also fails as a matter of law. ████████████████████████ ████████████ ████████████████████████████

47



"The doctrine of implied bias is limited in application to those extreme situations where the relationship between a prospective juror and some aspect of the litigation is such that it is highly unlikely that the average person could remain impartial in his deliberations under the circumstances." *Umaña*, 750 F.3d at 341.

Umaña's allegations do not come close to establishing unconstitutional bias by █████████████████████████████████████████████████████

48



Finally, this Court was not constitutionally compelled to remove ████ ███████████████████████████████████████████████████ ████████████████████████████████ ████████████████████████████████████████████████ ████████████████████ ████████████████ ████████████████████

Umaña's amended allegations of ineffective assistance of counsel related to ████████ also fail as a matter of law. Any omission by counsel to ask this Court to exclude ████████ for cause was not objectively unreasonable. A reasonable attorney could conclude that Umaña's interests would not be served by the strike, *Powell*, 850 F.3d at 150, and a reasonable attorney could conclude that the request "would have failed," *Premo v. Moore*, 562 U.S. 115, 124 (2011). The record establishes that counsel's voir dire of ████████ was not constitutionally deficient; counsel questioned ████████████████████████████████████████ ██████████████████████████████████████ ████████████████████, and "[a]n attorney's actions during *voir dire* are considered to be matters of trial strategy." *Keith*, 455 F.3d 662, 672. Those actions "cannot be the basis for a claim of ineffective assistance unless counsel's decision is shown to be so ill-chosen that it permeates the entire trial with

49

obvious unfairness," *id.*, and the record of counsel's voir dire leaves no room for that conclusion. Nor can Umaña establish prejudice. He cannot establish a reasonable probability that this Court would have excluded ███████ for cause had counsel taken a different approach, and he cannot establish a reasonable probability that a jury with someone else in place of ███████ would have declined to sentence Umaña to death. *Id.* at 677–78.

Each of the theories Umaña presents in his claim 51 are subject to dismissal, either because they are untimely or otherwise readily subject to dismissal. Amendment of Umaña's 2255 motion with claim 51 would, therefore, be futile.

### C. Umaña is not entitled to equitable tolling.

Umaña is not entitled to "equitable tolling of the statute of limitations." (Mem. ISO Leave to Supplement 8.) "Equitable tolling of petitions for collateral review is available only when a defendant demonstrates '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" *Whiteside v. United States*, 775 F.3d 180, 184 (4th Cir. 2014) (en banc) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (4th Cir. 2010)). The relevant circumstance must be "truly 'extraodrinary,'" must be "external to the party's own conduct," and must be "beyond the defendant's control." *Id.* at 184–85; *Menominee Indian Tribe of Wis. v. United States*, 136 S. Ct. 750, 756 (2016) ("[T]he second prong of the equitable tolling test is met only where the circumstances that caused a litigants delay are both

50

extraordinary *and* beyond its control.").  And the circumstance must have "prevented [Umaña] from filing within the limitations period at all."  *Id.* at 185. None of Umaña's purported excuses for waiting until more than a year and a half after the expiration of the limitations period meets these requirements.

### 1. Umaña has not identified any extraordinary circumstance external to the defense that prevented him from timely filing his amended claims.

None of Umaña's purported excuses meets the second requirement for equitable tolling.  None of them involves extraordinary circumstances external to the defense that prevented the timely filing of any of Umaña's amended claims. *Whiteside*, 775 F.3d at 184.

### a. Umaña's purported mental incompetency does not support equitable tolling.

Umaña's purported mental incompetency (Mem. ISO Leave to Supplement 8) does not provide a basis for equitable tolling.  Lack of competence during postconviction proceedings does not involve an extraordinary circumstance external to the defense.  Umaña has no constitutional or statutory right to be competent during postconviction proceedings, *Ryan v. Gonzales*, 568 U.S. 57, 68 (2013), "counsel can generally provide effective representation to a habeas petitioner regardless of the petitioner's competence," *id.*, and Umaña's attorneys have obviously been able to zealously represent Umaña despite any mental health issues that may affect him, *see United States v. Sosa*, 364 F.3d 507, 513 (4th Cir. 2004) ("[The defendant's] diligence in seeking to vacate or modify his

51

sentence indicates quite clearly that his is not an extraordinary case."). Nor did any lack of competence "prevent[] timely filing.'" *Whiteside*, 775 F.3d at 184. Umaña alleges that he was incompetent at the time he filed his original 2255 motion and at the time he filed his proposed amended motion. (Mem. ISO Leave to Supplement 8.) He was at no time "prevented" from filing either of these documents, and he could have filed both of them within the applicable limitations period. *Whiteside*, 775 F.3d at 184.

### b. Umaña's new allegations of ineffective assistance of appellate counsel are not subject to equitable tolling.

Umaña's belated allegations of "appellate counsel's ineffectiveness" (Mem. ISO Leave to Supplement 8–9) are not subject to equitable tolling. Any decision by counsel not to "investigate, develop, or assert" claims of ineffective assistance of counsel until after the limitations period lapsed (Mem. ISO Leave to Supplement 8–9) is neither extraordinary nor "external to the [defense's] own conduct." *Whiteside*, 775 F.3d at 184. "Attorney error that does not violate the Constitution . . . is attributed to the prisoner 'under well-settled principles of agency law.'" *Davila v. Davis*, 137 S. Ct. 2058, 2065 (2017) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Only "[a]n error amounting to constitutionally ineffective assistance is 'imputed to the state' and is therefore external to the prisoner.'" *Id.* (quoting *Murray*, 477 U.S. at 488). Because Umaña "does not have a constitutional right to counsel" in this 2255 proceeding, he shoulders the full responsibility for any omission to timely file claims of ineffective assistance of

52

appellate counsel. *Id.* at 2062–63.

Even if the decision by Umaña's defense team to delay allegations of appellate-attorney incompetence were somehow external to the defense, the purported conflict that he alleges to arise from Umaña's appellate attorneys' continuing to represent him in this postconviction proceeding did not "prevent[] timely filing" of any claims. *Whiteside*, 775 F.3d at 184. Zandra Lopez, who represented Umaña in his direct appeal, signed Umaña's proposed supplemental 2255 motion asserting theories of ineffective assistance of appellate counsel. (Supp. 2255 Mot. 1, 220.) Her status as appellate counsel did not prevent her from filing these claims on time any more than it prevented her from filing them twenty months late. That "the Harrisburg Federal Defenders" joined the defense team more than a year ago (Mem. ISO Leave to Supplement 8–9) would not help Umaña even if their participation were somehow critical to his assertion of appellate-ineffectiveness claims. Nothing extraordinary or external to the defense prevented Umaña from engaging the Harrisburg attorneys or other counsel outside counsel *before* the statute of limitations expired instead of after. And equitable tolling is not available when a litigant is "responsible for [his] *own* delay." *Menominee Tribe*, 136 S. Ct. at 756.

### c. Umaña's allegation that his postconviction attorneys are constitutionally deficient does not support equitable tolling.

Umaña's conclusory allegation that, if all of his other excuses for delay fail, then his current postconviction attorneys must have denied him "the effective

53

assistance of counsel in these 2255 proceedings," (Supp. 2255 Mot. 10), does not support equitable tolling. His allegation identifies nothing "truly 'extraordinary.'" *Whiteside*, 775 F.3d at 184–85. Neither untimely filings nor attorney negligence are extraordinary. *See Cadet v. Fla. Dep't of Corr'ns*, 853 F.3d 1216, 1227 (11th Cir. 2017). And allegations that Umaña's postconviction attorneys erred by bringing his claims now instead of more than a year and a half ago would not be grounds for equitable tolling, *Lawrence v. Florida*, 549 U.S. 327, 336–37 (2007) ("Attorney miscalculation is simply not sufficient to warrant equitable tolling, particularly in the postconviction context where prisoners have no constitutional right to counsel."), even if counsel's errors result in the dismissal of claims of ineffective assistance of trial counsel. *See Lombardo v. United States*, 860 F.3d 547, 555–61 (7th Cir. 2017); *Arthur v. Thomas*, 739 F.3d 611, 630–31 (11th Cir. 2014); *Shank v. Vannoy*, No. 16-30994, 2017 WL 6029846, at *2 (5th Cir. Oct. 26, 2017); *Bland v. Superintendent Greene SCI*, No. 16-3457, 2017 WL 3897066, at *1 (3d Cir. Jan. 5, 2017); *Benfield v. Hunt*, No. 5:16-CV-00203-FDW, 2018 WL 576347, at *3 (W.D.N.C. Jan. 26, 2018).

### 2. Umaña has failed to demonstrate that he has been pursuing his rights diligently, in any event.

Even if Umaña's purported excuses for ignoring the statute of limitations justified *some* delay, the timing of his amended motion would preclude him from making the required showing that he "has been pursuing his rights diligently." *Whiteside,* 775 F.3d at 184. Umaña waited a full *twenty months* after the one-

54

year statute of limitations passed to file his proposed amended motion.  In other words, the *additional* time that Umaña seeks, under the guise of equitable tolling, is well beyond the total amount of time that Congress gave him in the first place.  28 U.S.C. § 2255(f).  Even if something extraordinary and external to the defense prevented Umaña from filing all of his claims before June 22, 2016, he would not have waited until February 22, 2018, if he had "been pursuing his rights diligently."  *Whiteside,* 775 F.3d at 184.

None of Umaña's purported excuses for his untimely filing would justify twenty months of delay.  He contends his alleged status as incompetent has not changed "since the inception of the proceedings," (Mem. ISO Leave to Supplement 8), so that allegation does not explain any delay.  The "Harrisburg Federal Defenders" could have become involved earlier.  (*Id.* at 8–9.)  But, in any event, Harrisburg attorneys represented Umaña for at least a year before Umaña filed his amended motion.  (*Id.* at 8–9.)  Umaña cannot plausibly contend that the boilerplate allegations of ineffective assistance of appellate counsel in his amended motion[7]  required a full year of "diligent[]" work to prepare.  *Whiteside,* 775 F.3d at 184.  Nor does Umaña's conclusory allegation of ineffective assistance of postconviction counsel explain 20 months' worth of delay.  Umaña has been represented by the same team of attorneys for more than a year, and some of the

---

[7]   Umaña does not purport to argue that the involvement of Harrisburg attorneys excuses the delay associated with any of his claims other than ineffective assistance of appellate counsel, (Mem. ISO Leave to Supplement 8–9), nor could he sensibly do so.

55

same attorneys have represented him for at least half a decade. They could have filed his amended claims 6, or 12, or 20 months ago.

Umaña's supplemental 2255 motion is not the product of his diligent pursuit of his rights, in any sense. Umaña has long been represented by a team of experienced attorneys well familiar with the law governing the timing of postconviction filings. If Umaña wished to have this Court consider the theories he raised for the first time in his February 2018 proposed motion, Umaña and his attorneys "could have easily included them in his original § 2255 motion." *Pittman*, 209 F.3d. at 318. Because Umaña and his counsel instead chose to file them more than a year and a half later than the law allows, this Court should deny Umaña's motion for leave to file his amended 2255 motion.

## CONCLUSION

The United States respectfully requests that this Court deny Umaña's motion for leave to supplement his 2255 motion. Permitting Umana to file hundreds of additional pages of untimely and futile allegations additional at this stage would serve only to delay the resolution of any "real and obvious wrongs" that Umana claims to have identified in his original, 410–page motion. *Rich v. Calderon*, 187 F.3d 1064, 1068 (9th Cir. 1999).

56

RESPECTFULLY SUBMITTED, this 7th day of May, 2018.

R.  ANDREW MURRAY
UNITED STATES ATTORNEY

/s/Anthony J. Enright
Assistant United States Attorney
United States Attorney's Office
227 West Trade Street, Suite 1650
Charlotte, North Carolina 28202
(704) 344-6222 (phone)
(704) 344-6629 (fax)
anthony.enright@usdoj.gov

57

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 7th day of May, 2018, I caused to be served a copy of the foregoing response to be served on counsel for Umaña via electronic case filing

s/ANTHONY J. ENRIGHT
Assistant United States Attorney

58