# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### Charlotte Division

_____

ALEJANDRO UMAÑA,

                Movant,

         v.

UNITED STATES,

                Respondent.

_____

3:16-CV-00057-RJC

CAPITAL § 2255 PROCEEDING

HON. ROBERT J. CONRAD, JR.

**REPLY TO GOVERNMENT'S OPPOSITION TO MOTION TO SUPPLEMENT/AMEND MOTION TO VACATE AND SET ASIDE CONVICTION AND SENTENCE PURSUANT TO 28 U.S.C. § 2255**

*/s/ Kelly D. Miller*
KELLY D. MILLER
Asst. Federal Public Defender
Federal Public Defender
Middle District of Pennsylvania
100 Chestnut Street, Suite 300
Harrisburg, PA 17101
Tel: 717-782-3843
Fax: 717-782-3966
kelly_miller@fd.org

# TABLE OF CONTENTS

Table of Contents .................................................................................................................. i

    A.     Amendment is Warranted to Vindicate Mr. Umaña's Right to Effective/Un-conflicted Counsel in Section 2255 Proceedings. ......................................................................... 1

    B.     The Amended Motion Meets the Requirements of Section 2255(f)(4). .......................... 5

    C.     Even if the Amended Petition is Untimely, and It is Not, Principles of Equitable Tolling Warrant Permitting Amendment. ................................................................................... 8

    D.     Even if Section 2255(f)(4) and Equitable Tolling Do Not Apply (But They Do), The Amended Claims Relate Back to the Initial Motion. ..................................................... 11

    E.     Conclusion. ................................................................................................................. 15

Certificate of Service .......................................................................................................... 16

i

Mr. Umaña seeks leave to amend his initial motion.  As described previously and below, leave is warranted because the allegations in the supplement/amendment relate back to his original motion; supplement/amendment is necessary to vindicate Mr. Umaña's statutory and constitutional right to unconflicted/effective Section 2255 counsel; the supplement/amendment meets the requirements of Section 2255(f)(4); and the circumstances – including his initial 2255 counsel's disabling conflict of interest that precluded them from investigating, developing and presenting colorable claims for relief and Mr. Umaña's mental incapacity – meet the requirements of equitable tolling.

**A.  Amendment is Warranted to Vindicate Mr. Umaña's Right to Effective/Unconflicted Counsel in Section 2255 Proceedings.**

Recognizing "that federal habeas corpus has a particularly important role to play in promoting fundamental fairness in the imposition of the death penalty," Congress, through 18 U.S.C. § 3599(a)(2), has provided "indigent capital defendants with a mandatory right to qualified legal counsel" in federal capital habeas proceedings.  *McFarland v. Scott*, 512 U.S. 849, 859 (1994);  *see also Woodson v. North Carolina*, 428 U.S. 280, 305 (1976).

Federal capital prisoners have two separate and distinct avenues of obtaining relief from an invalid conviction:  direct appeal and a challenge under Section 2255. When Congress mandated a right to counsel during Section 2255 proceedings, it created a due process and equal protection life and liberty interest in those procedures.  *Evitts v. Lucey*, 469 U.S. 387, 393 (1985); *Hicks v. Oklahoma*, 447 U.S. 343, 346 (1980); *Ford v. Wainwright*, 447 U.S. 399, 428- 29.  Due process and equal protection require that one cannot have a right without a remedy.  *See Marbury v. Madison*, 1 Cranch 137, 163, 2 L.Ed. 60 (1803) ("The government of the United States has been emphatically termed a government of laws, and not of men.  It will certainly cease to deserve this high appellation, if the laws furnish no remedy for the violation of a vested legal right").  As

1

Congress has elected to create two distinct and separate rights and processes to challenge the validity of a capital criminal conviction, the procedures for each must comport with due process and equal protection. *Evitts*, 469 U.S. at 393.

In *Martinez v. Ryan*, 566 U.S. 1 (2012), a Section 2254 case, the Supreme Court recognized the need for "an effective attorney" during "the initial-review collateral proceeding" where that "is the first designated proceeding for a prisoner to raise a claim of ineffective assistance at trial." 566 U.S. at 11, 12. As the Court noted, a petitioner attempting to raise ineffective assistance of trial counsel claims faces substantial obstacles to developing those claims. These obstacles arise from the petitioner's inability to conduct the necessary extra-record investigation from prison as well as the absence of "a court opinion or the prior work of an attorney addressing" the claim of ineffective assistance on which to rely. *Id.* at 11-12. The Court found these obstacles particularly troubling in light of the "bedrock principle" that the accused has a "right to effective assistance of counsel at trial." *Id.* at 12. As a result, the Court fashioned a remedy for those cases in which "there was no counsel or counsel . . . was ineffective" during the "initial-review collateral proceeding" and held that "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial." *Id.* at 17.

Federal capital petitioners have one avenue – and only one avenue – to fully develop and present claims arising from trial and appellate counsel's ineffectiveness: a motion under Section 2255. *See Massaro v. United States*, 538 U.S. 500, 508 (2003); *United States v. Williams*, 977 F.2d 866, 871 (4th Cir. 1992). Congress specifically provided that a capital petitioner is entitled to effective assistance of counsel during this initial-review collateral proceeding and the rationale of *Martinez* requires that there must be an adequate remedy when a petitioner is deprived of that right.

2

Indeed, Congress anticipated as much by treating the right to effective counsel in Section 2254 cases differently from Section 2255 cases. While claims arising from ineffective assistance of habeas counsel in Section 2254 proceedings are specifically excluded, *see* 28 U.S.C. § 2254(i), there is no corresponding provision under Section 2255.[1]

Mr. Umaña was represented by the same counsel on direct appeal and at the time his initial Section 2255 Motion was filed. Counsel was ethically precluded from investigating, developing or raising their own ineffectiveness for failing to raise and preserve claims during those proceedings. *Christeson v. Roper,* ___ U.S. ___, 135 S. Ct. 891, 894 (2015) ("Advancing such a claim would have required [counsel] to denigrate their own performance. Counsel cannot reasonably be expected to make such an argument, which threatens their professional reputation and livelihood"); *Gray v. Pearson*, 526 Fed. Appx. 331, 334 (4th Cir. 2013); *Juniper v. Davis*, 737 F.3d 288 (4th Cir. 2013).[2] It was not until the Harrisburg Capital Habeas Unit was appointed that Mr. Umaña was provided un-conflicted counsel, able to "take and have a new and fresh perspective on the trial and appellate court records." *United States v. Runyon*, No. 4:08cr16, 2014 U.S. Dist. LEXIS 162488, *6, n. 5 (E.D. Va.) (citing *Juniper*, 737 F.3d at 290).[3]

---

[1] For these reasons, the government's reliance on *Davila v. Davis*, 137 S.Ct. 2058 (2017), a Section 2254 case, for the proposition that Mr. Umaña does not have a right to counsel in these Section 2255 proceedings fails.

[2] The government's contentions that initial 2255 counsel's signature on the Amended Motion somehow imposes on initial 2255 counsel an obligation to circumvent their ethical duties and develop claims arising from their own ineffectiveness (*see* Doc. 77 at 53) fails. There were no allegations of appellate ineffectiveness in the initial Motion. It was not until un-conflicted counsel was appointed and had the opportunity to conduct the necessary investigation that those claims became available to Mr. Umaña and the presence of conflicted counsel's signature on that document does not change that fact.

[3] Nor, as the government contends, is the Amended Motion confined to one "boilerplate appellate ineffectiveness claim." Doc. 77 at 55. Instead, as demonstrated throughout the Amended claims,

Following appointment, undersigned counsel diligently began the process of conducting an independent review of the voluminous pretrial, trial and appellate records and the extra-record investigation necessary to discharge her ethical duties to develop and present all potentially meritorious claims for relief in this capital case.[4] After conducting the constitutionally and ethically required review, counsel filed the Amended Motion within one year of counsel's appointment and entry of appearance. *See* Doc. 49 (Appointment Order, February 22, 2017); Doc. 55 (Entry of Appearance of Ms. Miller, March 28, 2017); Doc. 69 (Supplemental/Amended Motion, February 22, 2018).[5]

As Mr. Umaña was denied his statutory and constitutional right to un-conflicted/effective 2255 counsel, permitting amendment and consideration of the merits of the claims is the proper remedy to vindicate the denial of those rights. In *United States v. Sanchez*, 9:16-cv-80693 (S.D. Fla.), the District Court reached a similar conclusion. There, the petitioner was initially represented by counsel in the 2255 proceedings who also had represented him on direct appeal. After recognizing the conflict of interest, the District Court appointed new counsel and permitted un-conflicted counsel to file an Amendment eleven months after that appointment and two years after the initial 2255 Motion had been filed. *Id.* Doc. 79 (*Order on Motion for Leave to Amend*,

---

Mr. Umaña has raised and demonstrated that initial 2255 counsel failed to present the factual and legal bases for multiple colorable constitutional claims requiring relief.

[4] *See* ABA GUIDELINES FOR THE APPOINTMENT AND PERFORMANCE OF DEFENSE COUNSEL IN DEATH PENALTY CASES, Guideline 10.8; Guideline 10.15.1, Commentary.

[5] The government repeatedly characterizes the Amended motion in terms of being filed 20 months after the initial 2255 Motion in an effort to demonstrate a lack of diligence. *See* Doc. 77 at 2, 3, 53, 54, 55, 56. As described above, because initial 2255 counsel was ethically precluded from conducting any investigation or development of claims involving their own ineffectiveness, that characterization is both misleading and wrong. The relevant date for consideration is the point at which un-conflicted counsel was appointed.

February 13, 2018).[6]  The same result is warranted here in order to vindicate Mr. Umaña's right to un-conflicted 2255 counsel.

**B.      The Amended Motion Meets the Requirements of Section 2255(f)(4).**

Section 2255(f)(4) provides that a petitioner has one year from "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence," in order to file claims for relief. 28 U.S.C. 2255(f)(4).  Section (f)(4) "is not a tolling provision that extends the length of the available filing time." *Wims v. United States*, 225 F.3d 186, 190 (2nd Cir. 2000).  Rather, it "resets the limitations period's beginning date." *Id.* Accordingly, the question is not, as the government would have this Court believe (*See* Doc. 77 at 2, 3, 53, 54, 55, 56), whether Mr. Umaña and his counsel were diligent from the date on which direct appeal was final, or even the date on which Mr. Umaña filed his initial 2255 Motion.  Instead, the focus centers on the date upon which the facts supporting the claims could reasonably have been discovered through due diligence.

The test for determining the proper trigger date is "when a duly diligent person in petitioner's circumstances would have discovered [the new facts supporting the claims]." *Id.* at 190.  "The statute does not require the maximum feasible diligence, only 'due,' or reasonable diligence." *Wims*, 225 F.3d at 190, n. 4.  The inquiry "is individualized and requires a court to consider the totality of the circumstances." *Hannigan v. United States*, 131 F. Supp. 3d 480, 488 (E.D. N.C. 2015).  Relevant factors include the "conditions of confinement and the reality of the prison system," *Montenegro v. United States*, 248 F.3d 585, 592 (7th Cir. 2001), as well as the

---

[6] Notably, the government did not object to the Amendment. *See United States v. Sanchez*, 9:16-cv-80693 (S.D. Fla.) (Order on Motion for Leave to Amend, February 13, 2018 at 2).  Although the circumstances here are almost identical, it is perplexing that the government does object to Mr. Umaña's motion.

"prisoner's ability to communicate with the court and counsel." *Hannigan*, 131 F. Supp. 3d at 488.

Initial 2255 counsel was not only ethically prohibited from presenting claims of their own ineffectiveness, they were also prohibited from "attempt[ing] to investigate or advance [their] own potential errors." *Gray*, 526 Fed. Appx. at 334-35. For these reasons, the government's contention that initial 2255 counsel was not duly diligent in failing to seek the assistance of un-conflicted counsel earlier fails. *See* Doc. 77 at 53, 55. In order to meet the government's diligence requirement, counsel would have had to do precisely that which the Supreme Court and this Circuit have held they cannot do. *Christeson,* 135 S. Ct. at 894; *Gray*, 526 Fed. Appx. at 334-35. Conflicted counsel were unable to objectively evaluate their own ineffectiveness on appeal directly impacting their capability to discover colorable claims for relief for collateral review. Accordingly, the facts supporting the claims could not have been discovered prior to the appointment of un-conflicted counsel and as those claims were filed within one year of un-conflicted counsel's appointment, Section 2255(f)(4) applies.

Nor can the failure to file these claims earlier be attributed to a lack of diligence on Mr. Umaña's part. The *Martinez* Court found the petitioner could overcome default on the basis of his initial-review counsel's ineffectiveness even though the petitioner had not raised his post-conviction counsel's ineffectiveness in the state court proceedings and even though there was no evidence that the petitioner suffered from a mental infirmity preventing him from raising the claim. Instead, the Court focused its determination on the complexity of developing ineffectiveness claims as well as the substantial obstacles preventing even a non-capital prisoner from conducting the necessary extra-record investigation and development of claims involving counsel's ineffectiveness. *Martinez*, 566 U.S. at 11-12.

Those circumstances are even more substantial for Mr. Umaña. He has been confined to the highly restrictive conditions of federal death row throughout the appellate and Section 2255 proceedings preventing him from conducting any extra-record investigation. He is a foreign national who understands little to nothing about the United States criminal justice system. He speaks very little English and is not able to read, let alone understand, the volumes of English records in this case, nor is he capable of comprehending relevant caselaw to identify potential issues.

Moreover, as described in the Motion and Amended Motion, Mr. Umaña suffers from intellectual deficits,[7] cognitive impairments and severe mental illness, all of which precludes a conclusion that Mr. Umaña could have adequately navigated through the process to develop and present claims involving his counsel's ineffectiveness, or even understood that his initial 2255 counsel had failed to do so. Indeed, as demonstrated in the Amended Motion and as Dr. Pablo Stewart has concluded to a reasonable degree of medical certainty (*see* Exh. A), as a result of his cognitive, mental and emotional impairments, Mr. Umaña lacks sufficient ability to consult with his lawyer with any reasonable degree of rational understanding and he also lacks a rational as well as a factual understanding of the proceedings. Even if his impairments do not render him legally incompetent (but they do), the averments and proffers presented in the Amended Motion demonstrate that Mr. Umaña lacks the cognitive and mental functioning necessary to navigate through a foreign criminal justice system to preserve his statutory and constitutional right to counsel at trial and during the Section 2255 proceedings.

---

[7] Even if he does not meet the requirements for Intellectual Disability (and as described in the Motion and Amended Motion, had counsel performed effectively, this Court would have learned that he does), there is no question that Mr. Umaña's test scores indicate intellectual impairments directly impacting his ability to navigate through the complex process of developing and presenting claims arising from his counsel's ineffectiveness.

For each of these reasons, the totality of the circumstances demonstrates that the earliest point at which Mr. Umaña could have discovered the facts supporting the claims in the Amended Motion was after un-conflicted counsel was appointed and entered her appearance. As the Amended Motion was filed within one year of that date, the claims are timely under Section 2255(f)(4). To the extent the government disputes any of the facts offered supporting the totality of the circumstances (and it does not appear that it does), the appropriate remedy is a hearing, not dismissal. *See Aron v. United States*, 291 F.3d 708, 715 (11th Cir. 2002) (remanding for a hearing because "Aron has plainly alleged facts regarding his diligence that would entitle him to relief in the form of a timely petition").

### C. Even if the Amended Petition is Untimely, and It is Not, Principles of Equitable Tolling Warrant Permitting Amendment.

In *Holland v. Florida*, the Supreme Court affirmed the presumption in favor of applying principles of equitable tolling in AEDPA cases, recognizing that "the presumption's strength is reinforced by the fact that 'equitable principles' have traditionally 'governed' the substantive law of habeas corpus." 560 U.S. 631, 646 (2010) (quoting *Munaf v. Geren*, 553 U.S. 674, 693 (2008)). Equitable tolling is appropriate where the petitioner demonstrates "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. Diguglielmo*, 544 U.S. 408, 418 (2005). The *Holland* Court made clear that the Court's inquiry must be a flexible one that a "draw[s] upon decisions made in other similar cases for guidance" but also recognizes "that specific circumstances, often hard to predict in advance, could warrant special treatment in an appropriate case." *Holland*, 560 U.S. at 650.

There are a number of extraordinary circumstances warranting equitable tolling in this case. First, as noted above, Mr. Umaña was deprived of his right to unconflicted/effective counsel. Up until the undersigned was appointed, Mr. Umaña's sole advocates labored under a disabling

8

conflict of interest that precluded them from investigating and developing colorable constitutional claims requiring relief.

Relying on non-capital cases in which the petitioner does not have a right to counsel, or Section 2254 cases, where Congress elected to treat the petitioner's right to counsel differently than 2255 petitioners,[8] the government contends that the failure to provide Mr. Umaña with unconflicted/effective Section 2255 counsel and conflicted counsel's failure to raise the amended/supplemental claims sooner does not satisfy the extraordinary circumstances factor. The government's contentions fail for a number of reasons. First, as noted above, Mr. Umaña has a statutory and constitutional right to Section 2255 counsel that is distinct from the right to counsel in capital Section 2254 cases and, unlike non-capital Section 2255 petitioners, Mr. Umaña is specifically entitled to counsel during the Section 2255 proceedings. As these decisions bear no similarity to Mr. Umaña's case, they offer no "guidance" regarding whether or not the denial of his right to un-conflicted/effective Section 2255 counsel constitutes an extraordinary circumstance. The "specific circumstances" of Mr. Umaña's case demonstrate that he has a right to un-conflicted counsel who is able to develop and raise all meritorious claims – even those challenging counsel's ineffectiveness on appeal – but was not provided that counsel until the appointment of the Harrisburg CHU.

---

[8]*See* Doc. 77 at 54 (citing *Whiteside v. United States*, 775 F.3d 180 (4th Cir. 2014) (drug convictions); *Cadet v. Florida Department of Corrections*, 853 F.3d 1216 (11th Cir. 2017) (Section 2254 challenge of state battery conviction); *Lawrence v. Florida*, 549 U.S. 327 (2000) (Section 2254 challenge of state murder conviction); *Lombardo v. United States*, 860 F.3d 547 (7th Cir. 2017) (life sentence); *Arthur v. Thomas*, 739 F. 3d 611 (11th Cir. 2014) (Section 2254 challenge of state murder conviction); *Shank v. Vannoy*, 2017 WL 6029846 (5th Cir. 2017) (Section 2254 challenge to state aggravated rape conviction); *Bland v. Superintendent Greene SCI*, 2017 WL 3897066 (3d Cir. 2017) (Section 2254 challenge of state non-capital murder conviction); *Benfield v. Hunt*, 2018 WL 576347 (W.D.N.C. 2018) (Section 2254 challenge of state robbery and weapons charges).

In addition, the government's attempt to characterize the issue in this case as one of mere failing to "meet a deadline" and, therefore, not the type of attorney misconduct that meets the extraordinary circumstances factor (Doc. 77 at 53-54) fails on the facts and the law. As a factual matter, this is not a case in which counsel merely missed a deadline. Instead, by virtue of their clear conflict of interest, initial 2255 counsel was precluded from developing and presenting colorable constitutional claims for relief. Moreover, the government's reliance on a "rigid" rule that no attorney neglect satisfies the extraordinary circumstances requirement for equitable tolling was specifically rejected by the *Holland* Court. *Holland*, 560 U.S. at 651 (rejecting the Eleventh Circuit's rigid rule because it "fails to recognize that, at least sometimes, professional misconduct that fails to meet the Eleventh Circuit's standard could nonetheless amount to egregious behavior and create an extraordinary circumstance"). Mr. Umaña's case – in which he was denied his right to un-conflicted/effective counsel that resulted in the failure to develop and present colorable constitutional claims requiring relief – presents precisely the type of circumstances that the *Holland* Court recognized may arise that, while perhaps not meeting the rigid rule, still presented circumstances extraordinary enough to require equitable tolling.

The government's contention that Mr. Umaña's incompetency fails to establish an extraordinary circumstance warranting equitable tolling also fails. As the government concedes, a factor relied on by the Supreme Court in rejecting a claim that competency is not necessarily required in a Section 2254 habeas proceeding was that "counsel can generally provide effective representation to a habeas petitioner regardless of the petitioner's competence." *Ryan v. Gonzales*, 568 U.S. 57, 68 (2013). But, as described above and in the Amended Motion, Mr. Umaña was deprived of his right to "effective representation" because his initial 2255 counsel labored under a conflict of interest that prevented them from raising all available claims for relief. Mr. Umaña

10

suffers from debilitating cognitive and mental illness, including psychotic symptoms and intellectual deficits. He is incapable of understanding the proceedings or adequately consulting with counsel. *See* Exh. A (Stewart Declaration). His incompetency provides an additional circumstance in favor of equitable tolling.

Similarly, the government's attempt to charge an incompetent, intellectually impaired, severely mentally ill foreign national who speaks little English and has little to no comprehension of the criminal justice process with an obligation to recognize that his counsel is conflicted and know how to obtain a remedy for the denial of his right to counsel in order to satisfy the due diligence requirement (Doc. 77 at 54-55) also fails. As alleged in the Amended Motion and as Dr. Stewart's declaration (Exh. A) demonstrates, as a result of his cognitive, mental and emotional impairments, Mr. Umaña has neither a rational or factual understanding of the proceedings, nor the capacity to adequately consult with his counsel. Even if he were not incompetent, and he is, his cognitive, mental and emotional impairments that include intellectual deficits and psychotic symptoms prevented him from understanding the issues surrounding his counsel's conflict or comprehending how to navigate through the criminal justice system to obtain relief from the denial of his statutory and constitutional right to un-conflicted/effective Section 2255 counsel. For each of these reasons, the government's contentions fail and equitable tolling is warranted.

### D. Even if Section 2255(f)(4) and Equitable Tolling Do Not Apply (But They Do), The Amended Claims Relate Back to the Initial Motion.

The government's contentions that the claims and allegations in the Amended Motion do not relate back to the Initial Motion as contemplated by Fed. R. Civ. Proc. 15 also fail. Throughout its response, the government contends that amendment is not warranted on futility grounds (Doc. 77 at 2, 5, 17, 34, 37, 39, 41, 42, 46, 50, 56). "Leave to amend, however, should only be denied on the ground of futility when the proposed amendment is clearly insufficient or frivolous on its

11

face." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986) (citing *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir.1980), *cert. dismissed*, 448 U.S. 911 (1980); *Buder v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 644 F.2d 690, 695 (8th Cir.1981)).  The allegations presented in the Amended Motion, if proven following discovery and an evidentiary hearing, demonstrate the denial of multiple constitutional rights that requires grant of relief.  That the government disputes the factual averments does not support futility, it requires an evidentiary hearing.  Rule 15's mandate that "[t]he court should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), is "to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962).  If facts alleged in the amendment may be a basis for relief, the movant "ought to be afforded an opportunity to test his claim on the merits." *Id.*

Throughout its response, the government misdirects this Court's focus to the differing legal elements and legal remedies averred in each claim (*see, e.g.,* Doc. 77 at 6-7), rather than the proper inquiry into the "common core of operative facts," and, in so doing, mischaracterizes as factual allegations what are actually legal theories (*see, e.g, id.* at 6).  A claim that is added to a 2255 Motion by amendment after expiration of the applicable statute of limitations relates back and is timely when "the original and amended petitions state claims that are tied to a common core of operative facts . . .." *Mayle v. Felix*, 545 U.S. 644, 664 (2005).  This permits, as the government concedes, amendments that make a more specific iteration of the original claim or that clarify or amplify a claim set out in the original motion.  *See* Doc. 77 at 3-4 (citing *Hill v. Mitchell*, 842 F.3d 910, 923 (6th Cir. 2016) and *Woodward v. Williams*, 263 F.3d 1135, 1142 (10th Cir. 2001)).  An amendment that adds new argument to an original claim relates back.  *See, e.g.*, *Lowery v. United States*, No. 3:09-cv-260-RJC, 2012 U.S. Dist. LEXIS 87302, at **3-5, 9-10 (W.D.N.C. June 25, 2012).  And, a more carefully drafted version of the prior claim, that makes a more specific

12

allegation of a prior claim, relates back to that prior claim. *Dean v. United States*, 278 F.3d 1218, 1223 (11th Cir. 2002) (per curiam) (claim specifying which piece of evidence was erroneously admitted related back to broader claim that erroneous evidence was admitted). These principles apply to numerous claims in the Amended Motion, including: Initial Claim 19 and Amended Claim 34 (both relating to counsel's litigation of the suppression of Mr. Umaña's statement); Initial Claim 25 and Amended Claim 39 (both alleging that the death sentence was sought based on race); Initial Claims 1-4 and Amended Claim 42 (all alleging ineffectiveness in the investigation and presentation of adaptive deficits and mental health, establishing Mr. Umaña's entitlement to *Atkins* relief under prevailing medical professional norms); Initial Claims 1-2 and Amended Claim 43 (all alleging ineffectiveness in failing to investigate fetal alcohol and toxin exposure, *see* Doc. 22 at 11, 60, 70, 78, 86); and Initial Claim 16 and Amended Claim 51 (both alleging the denial of a fair and impartial jury). Because these amended claims merely clarify or amplify claims in the Initial Motion, amendment is warranted.

But also, and contrary to the government's assertions, *see* Doc. 77 at 6, the standard articulated in *Mayle* permits *entirely new grounds for relief* when the new claims are supported by common, but not necessarily coterminous, facts that supported original claims under original legal theories. *See Mayle*, 545 U.S. at 664 n.7. Thus, the Supreme Court has recognized that a claim that the petitioner was denied the opportunity to show that a statement had been recanted relates back to a claim that the statement was erroneously admitted. *Mayle*, 545 U.S. at 664 n.7 (citing with approval *Woodward v. Williams*, 263 F.3d 1135, 1142 (10th Cir. 2001)). Relation back also allows amendment when "[b]oth pleadings relate[] to evidence obtained at the same time by the same police department." *Id.* (citing with approval *Mandacina v. United States*, 328 F.3d 995, 1000-01 (8th 2003)).

13

These principles support leave to amend to include the new grounds for relief in Mr. Umaña's Amended Motion. Contrary to the government's assertions, *see* Doc. 77 at 5-6, Mr. Umaña's relation back arguments in his memorandum in support of leave to amend (Doc. 68-1) presented this Court with sufficient specific facts to demonstrate the common nucleus of operative facts required by Rule 15. For example, for Claim 31, regarding Mr. Umaña's incompetence to stand trial, Mr. Umaña directed this Court's attention to seven claims in the Initial Motion that extensively discuss the mental health impairments and collateral facts that also underlie his claim of trial incompetency. *See* Doc. 68-1 at 3.

When these claims are analyzed under the proper standard, it is clear that Claim 31 relates back. Claim 31 relies on allegations of mental health impairments, including trauma and its effects, intellectual and cognitive impairments, brain damage, and psychotic symptomatology, Doc. 69 at 3-5; that Mr. Umaña was prevented from participating in his trial and communicating with and assisting counsel due to language barriers, brain damage, deficits in intellectual functioning, and psychiatric illness, *id.* at 3-5; that even the government language expert noted Mr. Umaña was difficult to interpret and communicated in "Umana-speak" that gave her "headaches," *id.* at 6-7; and that Mr. Umaña's illness during the November 30, 2009 Atkins hearing evidenced his inability to participate in and withstand the stress and cognitive challenges of assisting in his own defense in court proceedings. *Id.* at 8-10. These facts are all contained within the claims of the Initial Motion. *See* 2255 Motion at 34-61, 63-90, 98-102, 228, 319-21, 348-51. If ever "justice so require[d]" amendment, *see* Fed. R. Civ. P. 15(a)(2), it would be to assess the competency of a non-English speaking immigrant with limited education, brain damage, cognitive and intellectual impairments, and psychotic symptomatology, facing a sentence of death.

14

### E.  Conclusion

For each of these reasons and those described in the prior submissions, the government's contentions fail.  The amendment/supplement is timely and leave to amend is warranted.

Respectfully submitted,

*/s/ Kelly D. Miller*
KELLY D. MILLER
Asst. Federal Public Defender
Federal Public Defender
Middle District of Pennsylvania
100 Chestnut Street, Suite 300
Harrisburg, PA 17101
Tel: 717-782-3843
Fax: 717-782-3966
kelly_miller@fd.org

Dated: May 29, 2018

15

**CERTIFICATE OF SERVICE**

I, Kelly D. Miller, hereby certify that I have electronically filed the foregoing document with the Clerk of Court using the CM/ECF system and a copy of the foregoing document has been served this day upon the following via CM/ECF:

Anthony J. Enright
Assistant United States Attorney
Suite 1650, Carillon Building
227 West Trade Street
Charlotte, NC 28202
anthony.enright@usdoj.gov

*/S/ KELLY D. MILLER*
KELLY D. MILLER
Asst. Federal Public Defender
Federal Public Defender
Middle District of Pennsylvania
100 Chestnut Street, Suite 300
Harrisburg, PA 17101
Tel: 717-782-3843
Fax: 717-782-3966
kelly_miller@fd.org

Dated: May 29, 2018

16