# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### Charlotte Division

ALEJANDRO UMAÑA,

                Movant,

        v.

UNITED STATES,

                Respondent.

3:16-CV-00057-RJC

CAPITAL § 2255 PROCEEDING

HON. ROBERT J. CONRAD, JR.

**MEMORANDUM IN SUPPORT OF MOTION TO STAY PROCEEDINGS DUE TO INCOMPETENCY**

Movant, Alejandro Umaña, through counsel, hereby moves to stay these proceedings due to his competency.

### PROCEDURAL HISTORY

Mr. Umaña is an indigent, death-sentenced federal prisoner. His timely § 2255 Motion was filed by court-appointed counsel Kenneth Rose, of the Center for Death Penalty Litigation, and Zandra Lopez, of the Federal Defenders of San Diego, Inc., on June 22, 2016. Doc. 22. On February 22, 2017, this Court granted Mr. Umaña's Motion for Substitution of Counsel, relieved Attorney Rose of his duties, and appointed the Harrisburg Federal Defenders, Kelly Miller appearing. Doc. 49. On February 22, 2018, Mr. Umaña filed a Motion for Leave to File Supplement/Amendment to his 2255 Motion, Doc. 68, and a Supplemental/Amended § 2255 Motion. Docs. 69, 71. In the Preliminary Statement to the Supplemental/Amended § 2255 Motion, Mr. Umaña asserted that he is not, and has never been, competent to assist counsel; that, due to his incompetence, the acts or omissions of counsel cannot be imputed to him; that counsel did not intend to represent that Mr. Umaña was competent by filing the Supplement/Amendment; and that

1

Mr. Umaña expressly reserved the right to move for a stay of these proceedings based on his incompetence.  Doc. 69 at 1; Doc. 71 at 1.

MR. UMAÑA IS PRESENTLY INCOMPETENT

"The test for determining competency is whether a defendant 'has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding . . . and whether he has a rational as well as a factual understanding of the proceedings against him.'" *Walton v. Angelone*, 321 F.3d 442, 459 (4th Cir. 2003) (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)).

Psychiatrist Pablo Stewart has evaluated Mr. Umaña and concluded that, as a result of the combination of his cognitive impairments, post-traumatic stress disorder, and psychotic symptoms, he is presently unable to consult with his lawyer with a reasonable degree of rational understanding and lacks a rational as well as a factual understanding of the proceedings.  Exh. A.

A STAY IS REQUIRED

A defendant has a fundamental due process right not to be tried while incompetent. *Cooper v. Oklahoma*, 517 U.S. 348, 353 (1996); *Drope v. Missouri*, 420 U.S. 162, 172 (1975).  As the Court explained in *Drope*:

> It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial. . . . Some have viewed the common-law prohibition 'as a by-product of the ban against trials in absentia; the mentally incompetent defendant, though physically present in the courtroom, is in reality afforded no opportunity to defend himself.'  Foote, A Comment on Pre-Trial Commitment of Criminal Defendants, 108 U.Pa.L.Rev. 832, 834 (1960).  *See Thomas v. Cunningham*, 313 F.2d 934, 938 (CA4 1963).  For our purposes, it suffices to note that the prohibition is fundamental to an adversary system of justice.  *See generally* Note, Incompetency to Stand Trial, 81 Harv.L.Rev. 455, 457-459 (1967).

420 U.S. at 171-72.  Similarly, the Court explained in *Cooper* that, "[w]ith the assistance of counsel, the defendant also is called upon to make myriad . . . decisions concerning the course of

2

his defense." *Cooper*, 517 U.S. at 364. The importance of these rights and decisions demonstrates that proceedings conducted with an incompetent defendant "threaten[] a 'fundamental component of our criminal justice system' – the basic fairness of the [proceeding] itself." *Id.*; *see also Riggins v. Nevada*, 504 U.S. 127, 139-40 (1992) (Kennedy, J., concurring) ("Competence to stand trial is rudimentary, for upon it depends the main part of those rights deemed essential to a fair trial, including the right to effective assistance of counsel, the rights to summon, to confront, and to cross-examine witnesses, and the right to testify on one's own behalf or to remain silent without penalty for doing so."). Competency also is critically related to credibility judgments about the defendant and his case. *Riggins*, 504 U.S. at 142 (Kennedy, J., concurring) ("At all stages of the proceedings, the defendant's behavior, manner, facial expressions, and emotional responses, or their absence, combine to make an overall impression on the trier of fact, an impression that can have a powerful influence on the outcome of the trial.").

The right to competency is so basic that it cannot be waived for such a waiver "would cast doubt on his exercise or waiver of all subsequent rights and privileges through the whole course of the [proceeding]." *Riggins*, 504 U.S. at 140 (Kennedy, J., concurring). If the defendant cannot waive this right himself, the government certainly cannot waive it for him by subjecting him to adversary proceedings while incompetent.

These due process principles apply equally to any adversarial proceeding in which the defendant is entitled to effective counsel and has the rights to be present and to participate. Mr. Umaña has a right to effective counsel in these proceedings. *See* Doc. 81 at 1-3. Recognizing "that federal habeas corpus has a particularly important role to play in promoting fundamental fairness in the imposition of the death penalty," Congress, through 18 U.S.C. § 3599(a)(2), has provided "indigent capital defendants with a mandatory right to qualified legal counsel" in federal

3

capital habeas proceedings.  *McFarland v. Scott*, 512 U.S. 849, 859 (1994).  *See also Woodson v. North Carolina*, 428 U.S. 280, 305 (1976). When Congress mandated a right to counsel during Section 2255 proceedings, it created a due process and equal protection life and liberty interest in those procedures.  *Evitts v. Lucey*, 469 U.S. 387, 393 (1985); *Hicks v. Oklahoma*, 447 U.S. 343, 346 (1980); *Ford v. Wainwright*, 447 U.S. 399, 428- 29.

Moreover, in *Martinez v. Ryan*, 566 U.S. 1 (2012), a Section 2254 case, the Supreme Court recognized the need for "an effective attorney" during "the initial-review collateral proceeding" where that "is the first designated proceeding for a prisoner to raise a claim of ineffective assistance at trial."  566 U.S. at 11, 12.   A proceeding under Section 2255 is the initial review collateral proceeding for a federal criminal defendant, as it is his first and only opportunity to fully develop and present claims arising from trial and appellate counsel's ineffectiveness.  *See Massaro v. United States*, 538 U.S. 500, 508 (2003); *United States v. Williams*, 977 F.2d 866, 871 (4th Cir. 1992).  In providing for the presence of a habeas petitioner at his evidentiary hearing, Congress has specifically recognized that the petitioner enjoys heightened procedural safeguards when the issues before the Court contain the factual disputes emblematic of an initial review collateral proceeding.  *See* 28 U.S.C. § 2243 (guaranteeing prisoner's right to be present at evidentiary hearing "[u]nless the application for the writ and the return present only issues of law"); *Johnson v. Eisentrager*, 339 U.S. 763, 778 (1950) (presence of petitioner at hearing "is inherent in the very term 'habeas corpus'").

While a different standard may apply in habeas proceedings under Section 2254, which are generally limited to legal argument based upon the factual record created in the state courts, proceedings under Section 2255 are not limited in this manner and due process requires competency.  In *Ryan v. Gonzales*, 568 U.S. 57 (2013), the Supreme Court relied heavily on "the

4

backward-looking, record based nature of most federal habeas proceedings" to find no statutory right to competency existed in Section 2254 proceedings. *Id.* at 68. The Court explained that

> the types of errors redressable under § 2254(d) should be apparent from the record. *Harrington v. Richter*, 562 U.S. ——, ——, 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment)). Counsel can read the record.

*Gonzales*, 568 U.S. at 75. And that

> where a claim is "adjudicated on the merits in State court proceedings," 28 U.S.C. § 2254(d) (2006 ed.), counsel should, in most circumstances, be able to identify whether the "adjudication ... resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), without any evidence outside the record. *See Cullen v. Pinholster*, 563 U.S. ——, ——, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011) . . . Attorneys are quite capable of reviewing the state-court record, identifying legal errors, and marshaling relevant arguments, even without their clients' assistance.

*Gonzales*, 568 U.S. at 68.

These are, of course, factual descriptions and legal principles that apply only to Section 2254 proceedings. Unlike the state petitioner litigating under Section 2254, for the federal criminal defendant, 2255 proceedings are the first opportunity to litigate extra-record challenges to his conviction and sentence, *see Massaro*, *supra*, including his first opportunity to vindicate his fundamental Sixth Amendment right to effective assistance of trial counsel. *See Martinez v. Ryan*, *supra*. Counsel cannot merely just read the record, and Section 2243 specifically guarantees the petitioner's right to presence at the evidentiary hearing when there are disputed factual issues. As such, Section 2255 proceedings bear all the indicia of adversary proceedings and thus carry with them the constitutional prohibition against being forced to litigate while incompetent.

In addition, Congress has created a life and liberty interest that is arbitrarily denied, in violation of due process and equal protection, when a criminal defendant is forced to litigate his Section 2255 Motion while incompetent. When Congress has established particular procedures

5

and mandated accompanying rights, it creates a due process interest in those procedures. *Evitts v. Lucey*, 469 U.S. 387, 393 (1985); *see also Hicks v. Oklahoma*, 447 U.S. 343, 346 (1980); *Ford v. Wainwright*, 477 U.S. 399, 427-31 (1986) (O'Connor, J., concurring); *Ohio Adult Parole Authority v. Woodard*, 523 U.S. 272, 289 (1998) (O'Connor, J, with Souter, Ginsburg & Breyer, JJ., concurring); *id*. at 1254-55 (Stevens, J., concurring). The life interest at stake in a capital Section 2255 proceeding is obviously more compelling than the due process interest in liberty that applies to all other post-conviction petitioners. *See Woodard*, 523 U.S. at 293-94. As a result, society has a heightened interest in a capital Section 2255 proceeding in which the defendant is competent and meaningfully counseled, and the protections afforded a capital defendant's fundamental right to be tried only while competent and right to effective counsel are commensurately heightened.

Likewise, the equity principles articulated by the Supreme Court in *Martinez v. Ryan*, 566 U.S. 1 (2012), also require that Mr. Umaña be competent in these proceedings. As demonstrated above, these Section 2255 proceedings meet the definition of "initial review collateral proceedings" used by the *Martinez* Court. *Cf.* Brief for the United States as Amicus Curiae Supporting Petitioners, *Ryan v. Gonzales*, 10-930 & *Tibbals v. Carter*, 11-218, 2012 WL 1979938 (2012) ("Moreover, for a federal capital prisoner, Section 2255 proceedings may be the first opportunity to present evidence of certain collateral claims, for example, ineffective assistance of counsel. *See Massaro v. United States*, 538 U.S. 500 (2003)). In such circumstances, AEDPA would not necessarily foreclose a stay for a limited period to afford the prisoner the opportunity to regain his competence (on his own or with medication)."). Mr. Umaña's competency is necessary or else "as an equitable matter" this initial-review collateral proceeding, will "not . . . be[] sufficient to ensure that proper consideration was given to a substantial claim." *Martinez*, 566 U.S. at 14.

6

Mr. Umaña has neither the capacity to consult with counsel or to understand the proceedings. The majority of the claims currently before this Court would benefit from Mr. Umaña's competency in these proceedings. *See Gonzales*, 568 U.S. at 76-77 (finding, in the 2254 context, that, even in the absence of a right to competency, a district court always retains discretion to grant a stay when "the petitioner's claim could substantially benefit from the petitioner's assistance"). None of Mr. Umaña's claims are purely record-based; all raise the factual issues of trial and/or appellate counsel's ineffectiveness. The claims currently before this Court present fact-intensive inquiries regarding: Mr. Umaña's life history and its relation to his eligibility for the death penalty and the availability of mental health defenses and mitigation evidence (*see, e.g.,* Doc. 22/24, Claims 1-4, 6, 7, 13, 23, 26, 28; Doc. 69/71, Claims 31, 35, 36, 42, 43, 52, 53); the government's case-in-chief against Mr. Umaña and the reasonable-availability of evidence to challenge the government's case (*see, e.g.,* Doc. 22/24, Claims 8, 11, 19; Doc. 69/71, Claims 32, 34, 36, 53); the government's evidence in aggravation and the reasonable-availability of evidence to challenge the government's aggravation (*see, e.g.,* Doc. 22/24, Claims 5, 6, 7, 8, 9, 10, 11; Doc. 69/71, Claims 35, 36, 48, 52, 53); factual issues regarding jury selection (*see, e.g.,* Doc. 22/24, Claims 14-18; Doc. 69/71, Claims 37, 51); events that occurred in the courtroom during trial (*see, e.g.,* Doc. 22/24, Claims 20-21); and counsel's performance in conveying plea negotiations to their client (*see, e.g.,* Doc. 22/24, Claim 24).

In such circumstances, the remedy is clear: the proceeding may not go forward. "The deep roots and fundamental character of the defendant's right onot to stand trial when it is more likely than not that he lacks the capacity to understand the nature of the proceedings against him or to communicate effectively with counsel mandate constitutional protection." *Cooper*, 517 U.S. at 368. Thus, when concerns for competency clash with the government's administrative interests in

7

a conviction and sentence, "the defendant's fundamental right to be tried only while competent outweighs the government's interest in the efficient operation of its criminal justice system." *Id*. at 367; *see Drope*, 420 U.S. at 181-82 ("Whatever the relationship between mental illness and incompetence to stand trial, . . . the correct course was to suspend the trial until such an evaluation could be made. That this might have aborted the trial is a hard reality"). Just as "the Constitution requires that society bear this cost [of suspending proceedings] in order to preserve the integrity of the trial process," *Riggins*, 504 U.S. at 145, the Section 2255 proceedings of an incompetent petitioner must be suspended until such time as he may become competent.

That policy is particularly applicable where the post-conviction proceedings are adversarial in nature, involve investigation and presentation of previously undiscovered or unpresented factual claims, provide for evidentiary hearings, guarantee both the rights of effective assistance of counsel and the rights to be present and participate in evidentiary hearings, and punish the failure to timely present such claims with a jurisdictional bar to their future consideration. As the ABA Criminal Justice Standards on Mental Health recognize:

> If a court finds at any time that a prisoner under sentence of death has a mental disorder or disability that significantly impairs his or her capacity to [rationally] understand or communicate pertinent information, or otherwise to assist counsel, in connection with post-conviction proceedings, and that the prisoner's participation is necessary for a fair resolution of specific claims bearing on the validity of the conviction or death sentence, the court should suspend the proceedings and order an evaluation of the prisoner. If the court finds, after evaluation or after treatment as provided in Part IV, that there is no significant likelihood of restoring the prisoner's capacity to participate in post-conviction proceedings in the foreseeable future, it should reduce the prisoner's sentence to the sentence imposed in capital cases when execution is not an option.

Guideline 7-9.9(c), *Procedure in cases involving prisoners unable to assist counsel in post-conviction proceedings*, ABA Criminal Justice Standards on Mental Health (2016).

Because fundamental principles of due process require that a defendant be competent, post-conviction proceedings are evidentiary proceedings subject to the strictures of due process, *Ohio*

8

*Adult Parole Authority v. Woodard*, 523 U.S. 272, 293 (1998) (Stevens, J., concurring) ("if a State establishes postconviction proceedings, these proceedings must comport with due process"), and these proceedings are Mr. Umaña's first opportunity to litigate extra-record issues including the effectiveness of his trial counsel, he must be competent. This is particularly and dramatically so because this is a capital case. The right not to be tried while incompetent always outweighs the government's interest in prompt prosecution of criminal charges, and the trial must be stayed until the defendant is competent. *Cooper*, *supra*. Under death warrant, the right not to be executed while incompetent always outweighs the government's interest in carrying out even a lawfully obtained conviction and death sentence, and the proceedings must be stayed until the defendant is competent. *Ford, supra*. Initial collateral review proceedings should be no different. This Court should stay Mr. Umaña's Section 2255 proceedings until he becomes competent.

WHEREFORE, Mr. Umaña respectfully moves this Court to stay these proceedings due to his incompetency.

Respectfully submitted,

*/s/ Kelly D. Miller*
KELLY D. MILLER
Asst. Federal Public Defender
Federal Public Defender
Middle District of Pennsylvania
100 Chestnut Street, Suite 300
Harrisburg, PA 17101
Tel: 717-782-3843
Fax: 717-782-3966
kelly_miller@fd.org

*/s/ Zandra L. Lopez*
ZANDRA L. LOPEZ
Federal Defenders of San Diego, Inc.
225 Broadway, Suite 900
San Diego, California 92101-5030
Tel: 619-234-8467
Zandra_Lopez@fd.org

Dated: May 30, 2018

9

**CERTIFICATE OF SERVICE**

I, Kelly D. Miller, hereby certify that I have electronically filed the foregoing document with the Clerk of Court using the CM/ECF system and a copy of the foregoing document has been served this day upon the following via CM/ECF:

Anthony J. Enright
Assistant United States Attorney
Suite 1650, Carillon Building
227 West Trade Street
Charlotte, NC 28202
anthony.enright@usdoj.gov

*/S/ KELLY D. MILLER*
KELLY D. MILLER
Asst. Federal Public Defender
Federal Public Defender
Middle District of Pennsylvania
100 Chestnut Street, Suite 300
Harrisburg, PA 17101
Tel: 717-782-3843
Fax: 717-782-3966
kelly_miller@fd.org

Dated: May 30, 2018