# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### 3:16-cv-00057-RJC
### (3:08-cr-00134-RJC-2)

|  |  |  |
|---|---|---|
| ALEJANDRO ENRIQUE RAMIREZ UMAÑA | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **ORDER** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| _____ | ) | |

**THIS MATTER** comes before the Court upon Petitioner Alejandro Enrique Ramirez

Umaña's Motion to substitute counsel, pursuant to 18 U.S.C. §§ 3599 (a) and (c), to represent

him before this Court in ongoing 28 U.S.C. § 2255 litigation and any and all available post-

conviction remedies.  (Doc. No. 86).  Specifically, Umaña requests that the Court allow counsel

Zandra Lopez, of the Federal Defenders of San Diego, Inc. ("FDSDI"), to withdraw and that the

Court appoint the Federal Defender Services of Eastern Tennessee, Inc., Capital Habeas Unit

("FDSET"), Dana Hansen Chavis appearing, as counsel.  As grounds for the substitution, Umaña

contends the FDSDI has a conflict of interest.

## I.      RELEVANT PROCEDURAL HISTORY

Umaña was convicted after a jury trial in this Court for the capital murders of two

brothers in Greensboro, North Carolina, and for his role in a wide-ranging RICO conspiracy.  On

July 27, 2010, he was sentenced to death on four counts of conviction.  See J., United States v.

1

Umaña, 3:08-cr-00134-RJC-2 (W.D.N.C.), Doc. No. 1168.[1]

Umaña appealed.  The Fourth Circuit Court of Appeals appointed Malcolm R. Hunter, Jr., of the Center for Death Penalty Litigation ("CDPL"), as lead appellate counsel and the FDSDI as co-appellate counsel.  See United States v. Umaña, COA No. 10-6 (4th Cir. filed Oct. 14, 2010), ECF Nos. 19, 22.  Umaña's convictions and death sentences were affirmed on direct appeal.  United States v. Umaña, 750 F.3d 320 (4th Cir. 2014), cert. denied, 135 S.Ct. 2856 (2015).

While Umaña's petition for writ of certiorari was pending in the U.S. Supreme Court, Hunter and Zandra Lopez, of the FDSDI, filed a motion for the appointment of Kenneth Rose of the CDPL as lead habeas counsel and for the continued appointment of the FDSDI as co-counsel to assist Umaña in the preparation of a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255.  See Mot. to Appt. Habeas Counsel at 1, Umana, 3:08-cr-00134-RJC-2, Doc. No. 1618.  This Court granted the motion, see id. at Doc. No. 1621, and on June 22, 2016, Rose and Lopez filed a 400-page Motion to Vacate on Umaña's behalf, raising 30 claims for relief, many with sub-claims, see § 2255 Mot. (Doc. Nos. 22, 24 (sealed)).

On February 22, 2017, the Court granted Umaña's Motion for Substitution of Counsel (Doc. No. 48), relieved Attorney Rose from further representation,[2] and appointed the Office of the Federal Public Defender for the Middle District of Pennsylvania (hereinafter "Harrisburg Federal Defenders") to replace Rose as lead habeas counsel (Doc. No. 49).  Kelly Miller of the Harrisburg Federal Defenders entered notice of appearance on Umaña's behalf.  (Doc. No. 55).

---

[1] Citations to documents filed in Umaña's underlying criminal case are by docket number without parentheses; citations to documents filed in this civil action are by docket number within parentheses.  Citations to documents filed in the Fourth Circuit Court of Appeals are by ECF number.

[2] Attorney Rose moved to withdraw due to changed personal and professional circumstances.  (Doc. No. 48).

On February 22, 2018, Umaña, through counsel Kelly Miller and Zandra Lopez, filed a motion for leave to supplement/amend his § 2255 Motion (Doc. No. 68) and a 200-page proposed Supplemental/Amended § 2255 Motion (Doc. Nos. 69, 71 (sealed)), raising more than 28 additional claims, including claims of ineffective assistance of appellate counsel. Umaña now seeks substitution of counsel for Lopez, alleging that the FDSDI has a conflict of interest. See Dec. 14, 2018 Mot. for Subst. Counsel (Doc. No. 86), at ¶¶ 3-5.

## II.    DISCUSSION

Umaña's argument in support of his Motion for substitution of counsel can be summarized, as follows: the CDPL and the FDSDI represented him on both direct appeal and on initial habeas review; therefore, neither the CDPL's Rose nor the FDSDI's Lopez could reasonably be expected to investigate, develop, or assert claims of their own ineffectiveness as appellate counsel in a motion to vacate; it was not until Rose was replaced by the Harrisburg Federal Defenders that Umaña was provided conflict-free counsel who could conduct an independent review of the court records and an extra-record investigation and identify the factual bases for claims that could have been, but were not, raised on direct appeal, claims of ineffective assistance of appellate counsel, and "claims of trial counsel's ineffectiveness that FDSDI and Mr. Rose ineffectively failed to investigate, develop, and present" in the Motion to Vacate. Dec. 14, 2018 Mot. for Subst. Counsel (Doc. No. 86), at ¶¶ 3-5. Under these circumstances, Umaña argues, the FDSDI has a conflict of interest precluding it from continuing to represent him.

Umaña's right to habeas counsel is statutory, see 18 U.S.C. § 3599(a)(2), not constitutional, see Pennsylvania v. Finley, 481 U.S. 551 (1987) (holding that neither the Due Process Clause nor the Equal Protection Clause requires appointment of counsel for indigent prisoners collaterally attacking their criminal judgments). Under 18 U.S.C. § 3599 indigent

3

defendants sentenced to death are entitled to the appointment of counsel in federal habeas proceedings; they are not entitled to the counsel of their choice, however. Christeson v. Roper, 135 S. Ct. 891, 893-94 (2015). Nevertheless, "a court may 'replace' appointed counsel with 'similarly qualified counsel . . . upon motion' of the petitioner." Id. at 894 (quoting § 3559(e)). "Substitution of that federally-appointed counsel is warranted only when it would serve 'the interests of justice.'" Lambrix v. Sec'y, Fla. Dep't of Corr., 756 F.3d 1246, 1259 (11th Cir. 2014) (quoting Martel v. Clair, 565 U.S. 648, 658 (2012)).

When considering a motion to substitute counsel, a court should consider both "the timeliness of the motion" and "the asserted cause for that complaint, including the extent of the conflict or breakdown in communication between lawyer and client (and the client's responsibility, if any, for that conflict)." Christeson, 135 S. Ct. at 894 (quoting Martel, 565 U.S. at 658). However, "a district court is not required to appoint substitute counsel just so that a . . . prisoner can file a futile petition" or "pursue wholly futile claims that are conclusively time barred or could not form the basis for federal habeas relief." Lambrix, 756 F.3d at 1259 (citations omitted).

Umaña's motion for substitution of counsel is untimely. He filed the present motion on December 14, 2018, almost two and a half years after filing his Motion to Vacate (Doc. Nos. 22, 24 (sealed)), almost two years after filing his motion to substitute the Harrisburg Federal Defenders for attorney Rose (Doc. No. 48), and almost ten months after filing his motion for leave to supplement/amend (Doc. No. 68) and proposed Supplemental/Amended § 2255 Motion (Doc. Nos. 69, 71 (sealed)).

Even if his untimeliness could be excused, Umaña's statutory right to counsel under § 3599 does not carry with it the right to effective assistance on the part of that counsel, see

<u>Wainwright v. Torna</u>, 455 U.S. 586, 587-588 (1982) (explaining that where there is no constitutional right to counsel there can be no deprivation of effective assistance). Moreover, although he is entitled under § 3599 to conflict-free habeas counsel, <u>see</u>, <u>e.g.</u>, <u>Christeson</u>, 135 S.Ct. at 895 (holding that Christeson, who had been sentenced to death, was entitled to substitution of federal habeas counsel who would not be laboring under a conflict of interest); <u>Clark v. Davis</u>, 850 F.3d 770, 779 & n.41 (5th Cir. 2017) ("Capital habeas petitioners have a statutory right to conflict-free counsel." (citations omitted)); <u>Juniper v. Davis</u>, 737 F.3d 288, 290 & n.2 (4th Cir. 2013), Umaña's argument in favor of substitution breaks down on its facts.

First, Kenneth Rose did not represent Umaña on direct appeal. Thus, as habeas counsel, he was not in the untenable position of having to identify and argue his own ineffectiveness as appellate counsel.

Next, Umaña has failed to demonstrate that the CDPL, where Rose worked, represented him on direct appeal. The record shows Malcolm Hunter was appointed lead appellate counsel while he was the Executive Director of the CDPL, <u>see</u> Mot. to Sub. Counsel at 2-3, <u>Umaña</u>, COA No. 10-6, ECF. No. 8; Appearance of Counsel, <u>id.</u> at ECF No. 22, but the CDPL itself was not appointed to represent Umaña, <u>see</u> Order Grant. Mot. to Sub. Counsel, <u>id.</u> at ECF No. 19 ("The Court appoints Malcolm Ray Hunter as lead counsel and the Federal Defenders of San Diego, Inc. as co-counsel for the appellant[.]"). Furthermore, Umaña's representation did not change when Hunter and the CDPL parted ways during in the appeal process;[3] instead, Hunter continued to represent Umaña as lead counsel, and no motion or notice was filed, or order entered, related

---

[3] From the appellate docket, it appears Hunter and the CDPL parted ways between June 21, 2013, the last date Hunter's association with the CDPL is included in a defendant-appellant filing, and June 26, 2013, the first time the association is not included in a defendant-appellant filing. <u>See</u> Appellant Mot. Reply at 2, <u>Umana</u>, COA No. 10-6, ECF No. 75; Appellant Certificate of Confidentiality at 2, <u>id.</u>, ECF No. 77. Court filings show Hunter's address between June 26, 2013 and August 6, 2013, was a different suite in the same building in Durham, North Carolina, as the CDPL; beginning on August 6, 2013, appellate filings show a Chapel Hill, North Carolina, address for Hunter. <u>See id.</u> at ECF Nos. 77, 79, 81, 85, 87.

to the CDPL.  Conversely, when counsel of record for the FDSDI left that office, another attorney with the FDSDI entered a notice of appearance in Umaña's case.  <u>See</u> Appearance of Counsel at 1, 3, <u>id.</u>, ECF No. 68.  Finally, the CDPL has not been appointed to represent Umaña in these habeas proceedings.  <u>Cf.</u> <u>Umaña</u>, 3:08-cr-00134-RJC-2, Doc. No. 1621.

In short, Umaña does not identify the nature or source of Rose's alleged conflict of interest.  Umaña has not demonstrated that the CDPL has ever represented him.  He does not argue, or provide any evidence, that Rose had an actual conflict of interest.  Nor does he articulate a basis upon which a conflict of interest should be imputed to Rose.

While it is true both Rose and Hunter worked for the CDPL, Umaña does not allege Rose assisted Hunter with the appeal, was privy to any information about the case, or had any other involvement in Umaña's representation on appeal.  Indeed, when appellate counsel sought appointment of Rose as lead habeas counsel, they did not cite the statutory preference of continuity of representation for capital defendants as a reason for his appointment.  <u>See</u> Mot. to Appt. Habeas Counsel at ¶¶ 6-7, <u>Umana</u>, No. 3:08-cr-00134-RJC-2, Doc. No. 1618.  In contrast, appellate counsel cited continuity of representation as a reason for the continued appointment of the FDSDI as habeas counsel.  <u>Id.</u> at ¶ 9 (citing § 3599(e) (requiring counsel appointed in capital cases to continue their representation through all postconviction proceedings "[u]nless replaced by similarly qualified counsel upon the attorney's own motion or upon motion of the defendant")).  Umaña also does not present any facts regarding the nature of the CDPL itself, the relationship of the organization to its attorneys, or the relationship of the individual attorneys to each other within the organization (e.g. cooperative, collaborative, wholly independent) which could form the basis for imputing a conflict of interest to Rose based upon his and Hunter's overlapping tenure there.  In other words, Umaña has failed to set forth facts demonstrating Rose

6

was in any way ethically prohibited from complaining of the ineffective assistance of any of Umaña's prior attorneys.

In addition, it appears from the record that Hunter's employment with the CDPL ended almost two months before appellate counsel filed Umaña's initial opening brief and the record on appeal.  See n.3, supra at p. 5; see also Umana, COA No. 10-6, ECF Nos. 88, 90.  Umaña does not cite any rule of professional conduct or explain why a conflict of interest should be imputed to Rose when the ineffective assistance of appellate counsel claims Umaña raises in his proposed Supplemental/Amended § 2255 Motion (Doc. Nos. 69, 71 (sealed)), appear to be based upon decisions appellate counsel made after Hunter left the CDPL.

Umaña may be able to show Rose had an actual or imputed conflict of interest as habeas counsel, but he has not done so.  Instead, he presents Rose's conflict as if it were a foregone conclusion and offers no facts or ethics rules citations to back it up.  Consequently, the Court finds Umaña has not demonstrated Rose had a conflict of interest as habeas counsel.

The FDSDI, on the other hand, has represented Umaña since October 14, 2010.  As an attorney with that organization, Lopez began working on Umaña's direct appeal in 2011, see Mot. to Appt. Habeas Counsel at ¶10, Umaña, No. 3:08-cr-00134-RJC-2, Doc. No. 1618, and appeared as counsel on brief in the appeal, see Umana 750 F.3d at 329.  Advancing a claim of ineffective assistance of appellate counsel, then, would require Lopez to impugn her own performance and the performance of other FDSDI attorneys, thus creating a conflict of interest for her under the reasoning of Christeson, 135 S.Ct. at 894.

Lopez's conflict does not cancel out Rose's independence, however.  See e.g., Fowler v. Joyner, 753 F.3d 446, 463-465 (4th Cir. 2014) (concluding that state death row inmate had the benefit of qualified, independent counsel during the pendency of his federal habeas petition

where one habeas attorney had a conflict of interest related to her representation of inmate in state post-conviction proceedings but other habeas attorney had no such conflict of interest). In other words, Lopez's conflict is not imputed to Rose. See id. At least, Umaña provides no reason that it should be imputed to Rose.

In sum, Umaña has not demonstrated he was denied independent, unconflicted counsel during these habeas proceedings. Malcom Hunter and the FDSDI represented Umaña on appeal; Rose and the FDSDI represented him in the preparation and filing of the Motion to Vacate and in the eight months that followed, and the Harrisburg Federal Defenders and the FDSDI currently represent him.

In deciding whether to substitute court-appointed counsel on the habeas petitioner's request, the district court must be guided by the "interests of justice." See 18 U.S.C. § 3006A(c); Martel, 565 U.S. at 658; see also United States v. Perez, 661 F.3d 189, 191 (4th Cir.2011) (using a "good cause" standard). Under § 3599(a)(2), capital habeas petitioners seeking to vacate or set aside a death sentence are entitled to appointment of one or more qualified attorneys. Although courts customarily appoint at least two attorneys to represent a death-sentenced prisoner in federal habeas proceedings, nothing in the statute requires that a court appoint more than one attorney. See § 3599(a)(2). Umaña has not demonstrated that he has been without the assistance of at least one non-conflicted attorney prior to the filing of his § 2255 Motion to Vacate and during these habeas proceedings.

Section 3599 also favors continuity of representation. See § 3599(e) (requiring counsel appointed in capital cases to continue their representation through all postconviction proceedings). Umaña seeks appointment of new habeas counsel, who, he acknowledges, "will need to devote hundreds of hours simply to become familiar with the vast record of this case,"

8

Mot. for Sub. Counsel (Doc. No. 86), at ¶ 8, two and a half years after the statute of limitations to raise federal habeas claims expired, see § 2255(f)(1). On the other hand, the FDSDI has represented Umaña since 2010, and notwithstanding the presumed conflict of interest, see Christeson, 135 S.Ct. at 894, the FDSDI's representation of Umaña, Lopez appearing, has included filing the proposed Supplemental/Amended § 2255 Motion (Doc. Nos. 69, 71 (sealed)) that raises claims of ineffective assistance of appellate counsel.[4]

The Court finds that Umaña has not shown good cause to substitute counsel or that granting his Motion to do so is in the interests of justice. See e.g., Fowler, 753 F.3d at 463-465. Umaña has both unconflicted habeas counsel, the Harrisburg Federal Defenders, Kelly Miller appearing as lead counsel, and co-counsel, the FDSDI, Zandra Lopez appearing, that knows the record and has years of experience with Umaña's case, which satisfies Congress's intent that post-conviction representation be continuous, see 3599(e).

## III. CONCLUSION

Umaña's Motion to substitute counsel is untimely. Furthermore, Umaña has failed to demonstrate that substitution of FDSDI as habeas counsel is in the interests of justice.

**IT IS, THEREFORE, ORDERED** that Umaña's Motion for Substitution of Counsel (Doc. No. 86) is **DENIED**.

Signed: June 16, 2020

Robert J. Conrad, Jr.
United States District Judge

---

[4] The Court notes that although the Motion to substitute implies the FDSDI does not oppose the Motion, the FDSDI itself has not moved to withdraw as counsel.

9