# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## Charlotte Division

| | |
|---|---|
| ALEJANDRO UMAÑA,<br>　　　　　　　　Movant,<br><br>　　　　v.<br><br>UNITED STATES,<br>　　　　　　　　Respondent. | 3:16-CV-00057-RJC<br><br>CAPITAL § 2255 PROCEEDING<br><br>HON. ROBERT J. CONRAD, JR. |

**SUPPLEMENT/AMENDMENT TO MOTION TO VACATE AND SET ASIDE CONVICTION AND SENTENCE UNDER 28 U.S.C. §2255 IN LIGHT OF *REHAIF V. UNITED STATES*, 139 S. CT. 2191 (2019)**

Movant, Alejandro Umaña, through counsel, hereby submits his proposed Supplement/Amendment to his Motion to Vacate Under §2255 in light of *Rehaif v. United States*, 588 U.S. ___, 139 S.Ct. 2191 (2019), and in support offers the following additional new claim:

**CLAIM 59.　THE UNCONSTITUTIONAL ALIEN-WITH-A-FIREARM CONVICTION MUST BE VACATED BASED ON *REHAIF*, AND MR. UMAÑA'S DEATH SENTENCES ACCORDINGLY MUST BE VACATED.**

1.　The claims and factual allegations set forth in all other sections of all prior submissions and exhibits are incorporated by reference and realleged as if set forth entirely herein.

2.　Mr. Umaña's conviction for being an unlawful alien in possession of a firearm, 18 U.S.C. §§922(g)(5) and 924(a)(2), is unconstitutional and invalid, in light of *Rehaif v. United States*, 588 U.S. ___, 139 S.Ct. 2191 (2019). Thus, his §922(g) conviction must be vacated. The invalid §922(g) conviction affected the jury's penalty-phase deliberations, and thus his death sentences must be vacated as well.

1

3.      Mr. Umaña was charged and convicted, inter alia, with being an unlawful alien in possession of a firearm in violation of 18 U.S.C. §922(g)(5).  Count 27, Third Superseding Indictment (Crim. Doc. 623), at 52.

4.      Mr. Umaña's jury was instructed that only three elements were necessary for conviction:

> One, the defendant knowingly possessed the firearm described in count eight of the indictment, that is, a Ruger .45 caliber semi automatic pistol -- count twenty-seven of the indictment.
>
> Two, that during the possession, the defendant was an alien unlawfully residing in the United States.
>
> Three, and that the possession of this firearm was in or affecting interstate or foreign commerce.

Guilt Phase Transcript,[1] at 1251-53.  The Court further defined an "alien" as:  "someone who is not a natural born or naturalized citizen or a national of the United States."  *Id*. at 1253.  The jury was not instructed that it must find Mr. Umaña knew he belonged to the relevant category of persons barred from possessing.  *See Rehaif*, 139 S.Ct. at 2194, 2200.

5.      The jury found Mr. Umaña guilty of being an alien in possession of a firearm, and the Court sentenced him to the statutory maximum of 120 months imprisonment on that count. Guilt Phase Verdict (Crim. Doc. 1043); Judgment (Crim. Doc. 1168).

6.      After Mr. Umaña's direct appeal concluded, the Supreme Court held in *Rehaif* that, to secure conviction for alien in possession of a firearm under §922(g), "the Government must prove both that the defendant knew he possessed a firearm *and that he knew he belonged to the relevant category of persons barred from possessing a firearm.*"  139 S.Ct. at 2194, 2200.

---

[1] Collectively, Crim. Docs. 1255-1258, 1339-1345, No. 3:08-cr-00134-RJC-DSC-2 (W.D.N.C.).

7.      *Rehaif* announced a new, retroactive rule applicable on collateral review.  A rule is new if it "was not dictated by precedent existing at the time the defendant's conviction became final."  *Teague v. Lane*, 489 U.S. 288, 301 (1989).  A rule is not dictated by existing precedent unless the rule would have been "apparent to all reasonable jurists."  *Lambrix v. Singletary*, 520 U.S. 518, 528 (1997). A rule applies retroactively on collateral review if it is a "new substantive rule" or if it is one of "a small set of watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding."  *Schriro v. Summerlin*, 542 U.S. 348, 351-52 (2004) (quotation marks and emphasis omitted). Substantive rules include those that "narrow the scope of a criminal statute by interpreting its terms."  *Id.* at 351-52.

8.      By these standards, *Rehaif* is a new substantive, retroactive, constitutional rule. Clearly the rule announced in *Rehaif* was not apparent to all reasonable jurists, since every circuit to have interpreted the mens rea requirement of 18 U.S.C. §§ 922(g), 924(a) had decided the question the other way.  *See id.* at 2201 (Alito, J., dissenting).  And the new rule plainly narrowed the scope of the criminal statute.  Before *Rehaif*, a prosecutor only had to prove a person knowingly possessed a firearm; after *Rehaif*, the prosecutor must further prove the person knew they were not supposed to have it.  *Id.* at 2196-97 (majority op.).  Moreover, "the Government has conceded in other cases that pursuant to a directive from the Department of Justice, the new rule announced in *Rehaif* may be raised in an initial proceeding brought under 28 U.S.C. §2255 and will be retroactively applicable in that context."  *Clark v. Werlich*, No. 19-cv-1012-NJR, 2020 U.S. Dist. LEXIS 85696, at \*\*7-8 (S.D. Ill. 5/15/20) (dismissing §2241 petition brought under §2255(e) savings clause, as petitioner had avenue to raise claim by filing §2255 motion in district court of conviction); *Amelia v. Werlich*, No. 19-cv-815-RJD, 2020 U.S. Dist. LEXIS 41016, at \*2 (S.D. Ill. 3/10/20) (same).  Accordingly, *Rehaif* applies retroactively to Mr. Umaña's case.

3

9. Because the prosecution did not establish, and the jury did not make a finding, that Mr. Umaña knew he was prohibited from possessing a firearm based on his knowledge of his inclusion in the class of persons prohibited from possessing, his §922(g) conviction must be vacated under *Rehaif*. Mr. Umaña's §922(g) conviction is invalid because it was secured through a defective indictment that failed to allege his knowledge of the relevant prohibited status as required under *Rehaif*. *See United States v. Moore*, 810 F.3d 932, 936 (4th Cir. 2016); *United States v. Kingrea*, 573 F.3d 186, 191 (4th Cir. 2009) (indictment must contain all elements of offense charged; "mere reference to the applicable statute does not cure" failure "to include every essential element"). Additionally, due process, the Sixth Amendment, and the Eighth Amendment were violated because he did not receive a jury finding, based solely on the evidence, of proof beyond a reasonable doubt as to every element of the offense. *Hurst v. Florida*, 136 S. Ct. 616, 618 (2016); *Ring v. Arizona*, 536 U.S. 584, 589 (2002); *Apprendi v. New Jersey*, 530 U.S. 466, 476-77 (2000); *United States v. Gaudin*, 515 U.S. 506, 514 (1995); *Victor v. Nebraska*, 511 U.S. 1, 5 (1994); *Chandler v. Florida*, 449 U.S. 560, 574 (1981); *In re Winship*, 397 U.S. 358, 364 (1970). The evidence was insufficient to convict Mr. Umaña of a § 922(g) offense because the government failed to establish he knew his prohibited status at the time he possessed the firearm. *See Jackson v. Virginia*, 443 U.S. 307, 316, 320-21 (1979). Additionally, his Sixth Amendment right to a complete verdict on every element of the offense was violated by failing to instruct the jury on the knowledge-of-status element of § 922(g). *United States v. McFadden*, 823 F.3d 217, 224 (4th Cir. 2016). Finally, his right to "a meaningful opportunity to present a complete defense" was violated by failure to charge and instruct jurors on the knowledge of status element required under *Rehaif*. *See California v. Trombetta*, 467 U. S. 479, 485 (1984); *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006); *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973); *see also Rock v.*

4

*Arkansas*, 483 U.S. 44, 51 (1987); *Crane v. Kentucky*, 476 U.S. 683, 690 (1986); *Strickland v. Washington*, 466 U.S. 668, 684-85 (1984); *United States v. Cronic*, 466 U.S. 648, 656 (1984); *Washington v. Texas*, 388 U.S. 14, 23 (1967); *In re Oliver*, 333 U. S. 257, 273 (1948).

10.     There is a reasonable probability that, but for failure to instruct on the *Rehaif* knowledge element, the result of the proceeding would have been different. *Rehaif*'s knowledge-of-status element requires "proof that an alien *actually knew*—not should have known or even strongly suspected but *actually knew*—that his continued presence in the country was illegal." *Rehaif*, 139 S.Ct. at 2208 (Alito, J., dissenting).

11.     Here, the evidence did not establish Mr. Umaña actually knew his continued presence in the country was illegal.  Mr. Umaña had limited education and cognitive impairments. *See infra*.  Although he had several prior encounters with police, police did not detain him in any immigration facility, place him in immigration or removal proceedings, or inform him he was an unlawful alien.  The jury heard evidence that police encountered Mr. Umaña in Los Angeles in August 2005 and took no immigration action against him.  Guilt Phase Transcript, at 116-18. Police also arrested Mr. Umaña in North Carolina for cocaine possession on August 6, 2007, but he was released from pre-trial detention and no immigration or removal proceedings were initiated against him.  Guilt Phase Transcript, at 120-21, 173-80, 296-302, 522.  An ICE agent even testified about the typical procedure:  when an unlawful immigrant is about to be released from jail, ICE processes and deports that person, as was done to co-defendant Manuel De Jesus Ayala.  Guilt Phase Transcript, at 859-60.  But Mr. Umaña had interacted with police several times, had lawfully obtained a government-issued identification card (Guilt Phase Transcript, at 301-02), and even was arrested in North Carolina on felony drug charges—all without being detained, deported, or placed in removal proceedings.

12. Mr. Umaña was re-arrested on December 12, 2007 for the Las Jarochitas shooting of December 7, 2007. Guilt Phase Transcript, at 522, 788-89. Although ICE Agent Jose Romero testified at trial about *a different ICE agent's* interview with Mr. Umaña, Agent Romero was not present for the interview (thus Romero's testimony was triple-hearsay and a confrontation clause violation), and no evidence established what Mr. Umaña actually said during his interrogation with the unidentified ICE agent or what his knowledge of status actually was. Guilt Phase Transcript, at 858-63. Mr. Umaña certainly could have admitted to facts that make him "illegal"—such as admitting to entering the country without immigration inspection, but being questioned and inspected by police after entry—*without knowing or understanding that those facts* make him "illegal." *Rehaif*, 139 S.Ct. at 2198 (discussing when mistake of law *is* an excuse). After his prior contacts with police with no immigration consequences and his obtaining a government-issued identification card, there's a reasonable probability jurors would not have concluded, beyond a reasonable doubt, that Mr. Umaña actually knew his status as an unlawful alien that prohibited him from possessing a firearm.

13. Moreover, because Mr. Umaña's *actual knowledge* is at issue under *Rehaif*, relevant defense evidence would have been admissible to disprove or rebut proof of knowledge, and such evidence must be considered in evaluating this claim. Lay evidence would have shown that Mr. Umaña had only a third-grade education, likely in a remedial classroom, while growing up in poverty in war-torn El Salvador. Penalty Phase Transcript,[2] at 535, 541-61, 562, 569, 635; 2255 Motion (Civ. Doc. 24) at 53-57, 20-29, 32-57, 68-79, 97-100; Suppl./Amend. 2255 Motion

---

[2] Collectively, Crim. Docs. 1259-1261, 1346-1351, No. 3:08-cr-00134-RJC-DSC-2 (W.D.N.C.).

6

(Civ. Doc. 71) at 3-13, 108-18, 123-36.  He worked only unskilled manual labor jobs, sometimes as an assistant or helper to a skilled laborer, in El Salvador and the United States.  *Id.*

14.     Additionally, expert testimony, such as psychological, psychiatric, and educational expert testimony, would be admissible to rebut the government's allegation that Mr. Umaña had *actual knowledge* of his disqualifying status.  *See* Fed.R.Evid. 702; *United States v. Worrell*, 313 F.3d 867, 873 (4th Cir. 2002) (mental health evidence admissible to negate intent).  Expert testimony would have shown Mr. Umaña had low educational attainment and was cognitively impaired.[3]  2255 Motion (Civ. Doc. 24) at 64-67, 79-88, 100-02; Suppl./Amend. 2255 Motion (Civ. Doc. 71) at 3-13, 108-18, 123-36.  Given his low education, impairments, and multiple encounters with police without any immigration consequences, there is a reasonable probability jurors would not have concluded beyond a reasonable doubt that Mr. Umaña actually knew his continued presence in the country was unlawful.

15.     In short, Mr. Umaña's §922(g) conviction was obtained without proof of, nor a jury finding on, the necessary knowledge-of-status element.  There is a reasonable probability jurors would not have unanimously found beyond a reasonable doubt that Mr. Umaña actually knew his disqualifying status.  To the extent counsel could have raised this claim at trial or on direct appeal, counsel's failure to do so constitutes ineffective assistance.  Vacatur of Mr. Umaña's 922(g) conviction (Count 27) is required.

16.     Moreover, vacating the unconstitutional conviction in Count 27 also necessitates vacating the death sentences imposed on Counts 22, 23, 24, and 25.

---

[3] Counsel maintains that, above and beyond cognitive impairment, Mr. Umaña is intellectually disabled and suffers from multiple other developmental, cognitive, and mental health disorders, as articulated in his 2255 Motion and Supplement/Amended 2255 Motion.  *See* Civ. Docs. 24, 71.

17.     In *Johnson v. Mississippi*, 486 U.S. 578 (1988), the Supreme Court held that where a jury imposed a sentence of death, having considered as aggravation a conviction that is later vacated, the defendant is entitled to a new sentencing hearing.  The Court reasoned that a sentence of death imposed under such a circumstance is inconsistent with the Eighth Amendment's prohibition against cruel and unusual punishment because "the jury was allowed to consider evidence that had been revealed to be materially inaccurate." *Id*. at 579.  The Supreme Court conducted a similar analysis in *United States v. Tucker*, 404 U.S. 443, 449 (1972), a non-capital case. In *Tucker*, the Court affirmed the judgment of the Ninth Circuit ordering resentencing after two prior convictions known to the sentencer were later invalidated. *Id*. at 593. Finding the sentence was imposed "at least in part on misinformation of constitutional magnitude," the Court declared that it would be "callous to assume, now that the constitutional invalidity of the respondent's previous convictions is clear, that the [sentencer] will upon reconsideration 'undoubtedly' impose the same sentence." *Id*. at 447, 449 n.8.

18.     The determinative factor is whether the invalidated conviction was known to, and possibly considered by, the sentencer. When a defendant has been convicted and sentenced on multiple counts, and one of the convictions is later determined to be invalid, the defendant must be resentenced on the remaining valid counts, unless it is established that the sentencer did not rely on the invalid count in imposing the sentence. *See James v. United States*, 476 F.2d 936, 937 (8th Cir. 1973) (citing *Tucker*). Where it "appear[s] possible that [the sentencer] might have relied in part on an unconstitutional conviction," the defendant must be resentenced. *Id. See also Bourgeois v. Whitley*, 784 F.2d 718, 721 (5th Cir. 1986); *Jerkins v. United States*, 530 F.2d 1203, 1204 (5th Cir. 1976); *United States v. Pinkney*, 551 F.2d 1241, 1246 n.37 (D.C. Cir. 1976).

8

19.     The principle that a sentence must be vacated if it could have been influenced by an invalid conviction applies with even greater force in the case of jury sentencing, because the court can never determine with certainty what factors influenced the jury. *Cf. Wren v. United States*, 540 F.2d 643, 644 (4th Cir. 1975) ("In short, to terminate further inquiry, the district judge must be able to say either from recollection or reconstruction that had he known at the time of sentencing that the earlier convictions were invalid, he would have nevertheless imposed the same sentence.'") (quoting *Gardner v Florida*, 430 U.S. 349, 359 (1977)).

20.     Under the possibility standard, resentencing is required when there is a possibility that an invalid conviction influenced even a single juror's weighing or penalty-selection decision. *Johnson*, 486 U.S. at 586; *Kubat v. Thieret*, 867 F.2d 351, 373 (7th Cir. 1989) (finding a violation of Eighth and Fourteenth Amendment based on "substantial possibility that one or more" jurors was influenced by erroneous jury instruction); *cf. Wiggins v. Smith*, 539 U.S. 510, 537 (2003) (to satisfy *Strickland* prejudice, petitioner must show "a reasonable probability that at least one juror would have struck a different balance"); *Buck v. Davis*, 137 S. Ct. 759, 776 (2017) (same).

21.     Like *Johnson* consideration-of-invalid-conviction error, *Wiggins*, *Buck*, and other ineffective assistance of counsel cases require resentencing where a constitutional error may have affected even a single juror's decision to recommend death. Notably, though, the standard for establishing prejudice in *Johnson/Tucker* context is less stringent than the standard for establishing prejudice in the ineffective-assistance context. Under *Johnson*, as explained above, a capital defendant need only show a *possibility* that an invalid conviction affected at least one juror's penalty determination, whereas a capital defendant claiming *Wiggins* error must show a *reasonable probability* that counsel's deficiency did so. "A 'reasonable probability' [for purposes of an

9

ineffective-assistance claim] is a higher standard than *Johnson*'s 'possibility.'" *Powell v. Kelly*, 531 F. Supp. 2d 695, 732 n.40 (E.D. Va. 2008).

22. Here, there is more than a possibility that at least one juror's weighing and penalty-selection decision would have been different without the unconstitutional §922(g) conviction. During the penalty phase, jurors were instructed they could rely on any and all evidence presented in the guilt phase when deliberating and deciding on penalty phase issues. Penalty Phase Transcript, at 12, 818. During deliberations, the jury considered materially inaccurate evidence that the government had proved Mr. Umaña was guilty of unlawful alien with a firearm, when in fact the government had not met its burden of proving the necessary element of Mr. Umaña's knowledge to convict of that crime. There is no basis upon which to conclude that the jury's death verdicts were not based in part on Mr. Umaña's §922(g) conviction.

23. Alternatively, "[a]n invalidated sentencing factor (whether an eligibility factor or not) will render the sentence unconstitutional by reason of its adding an improper element to the aggravation scale in the weighing process *unless* one of the other sentencing factors enables the sentencer to give aggravating weight to the same facts and circumstances." *Brown v. Sanders*, 546 U.S. 212, 220-21 (2006) (original emphasis). "This test is not, as Justice Breyer describes it [in dissent], 'an inquiry based solely on the admissibility of the underlying evidence." *Id.* "If the presence of the invalid sentencing factor allowed the sentencer to consider evidence that would not otherwise have been before it, due process would mandate reversal without regard to the [*Sanders*] rule." *Id.* Additionally, "skewing that could result from the jury's considering *as aggravation* properly admitted evidence that should not have weighed in favor of the death penalty" gives rise to constitutional error "where the jury could not have given aggravating weight to the same facts and circumstances under the rubric of some other, valid sentencing factor." Id.

10

24.     Here, initially, Mr. Umaña's unconstitutional §922(g) conviction was not merely an invalid sentencing factor.  Instead, it was an additional, unproven count of conviction that would not have otherwise been before the sentencer.  Thus, due process requires reversal of the death sentences.

25.     Finally, the Constitution and federal law guarantee Mr. Umaña a jury finding on weighing and a jury finding on sentence-selection, free of constitutional error.  Mr. Umaña's right to a jury determination—rather than appellate reweighing or harmless-error reweighing—is guaranteed by Due Process, the Sixth Amendment, and the Eighth Amendment.

26.     The Supreme Court held in *Ring v. Arizona* "that capital defendants 'are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment'—in particular, the finding of an aggravating circumstance."  *McKinney v. Arizona*, 707-08 (2020), *quoting Ring*, 536 U.S. 584, 589 (2002).  In *Hurst v. Florida*, the Supreme Court "applied *Ring* and decided that Florida's capital sentencing scheme impermissibly allowed 'a sentencing judge to find an aggravating circumstance, independent of a jury's factfinding, that is necessary for imposition of the death penalty.'"  *Id.*, *quoting Hurst*, 577 U.S. ___, 136 S. Ct. 616, 618 (2016).  States are not constitutionally required to mandate that juries, rather than judges, weigh aggravation and mitigation or make the ultimate sentencing decision.  *Id.*  Thus, states that permit trial-judge weighing or sentence-selection may engage in appellate reweighing.  *Id.* at 706.

27.     But when a state mandates certain trial, capital sentencing, and appellate procedures, it creates Fourteenth Amendment life and liberty interests in those procedures, which are protected under federal due process.  *Evitts v. Lucey*, 469 U.S. 387, 393 (1985); *Hicks v. Oklahoma*, 447 U.S. 343, 346 (1980); *Ford*, 477 U.S. at 428-29.   "[I]t would be unthinkable that the same Constitution would impose a lesser duty on the Federal Government."  *Bolling v. Sharpe*,

11

347 U.S. 497, 500 (1954).  Thus, where federal statutory law mandates certain trial, sentencing, or appellate procedures, there is also a federal due process life and liberty interest in that procedure. Here, federal statutory law creates a due process liberty interest in jury factual findings on weighing and sentence selection, whether in the first instance or after the mix of the sentencing package has been altered by vacatur of some counts of conviction.

28. Under the Federal Death Penalty Act, Mr. Umaña has the right to jury weighing of aggravation and mitigation and a jury *fact-finding* as to the ultimate sentence-selection.  Unless the defendant and government both waive jury, the weighing of aggravation and mitigation and the ultimate sentence-selection decision all rest with the jury.  18 U.S.C. §3593(b), (d), (e). Although the jury's penalty-selection decision is called a "recommendation," the trial court must ("shall") impose whatever sentence the jury unanimously selects.  18 U.S.C. §3593(e), §3594.

29. Because the Federal Death Penalty Act provides Mr. Umaña the right to a jury determination on weighing aggravation and mitigation, and a jury determination on his penalty selection, appellate reweighing and harmless-error analysis are inapplicable and inappropriate. Instead, if there is constitutional error in the penalty selection process, remand for resentencing by jury is required.

30. Relatedly, the Fourth Circuit has fully endorsed the sentencing package doctrine. *United States v. de Jesus Ventura*, 864 F.3d 301, 309 (4th Cir. 2017).  "'[W]hen a defendant is found guilty on a multicount indictment, there is a strong likelihood that the [sentencer] will craft a disposition in which the sentences on the various counts form part of an overall plan,' and that if some counts are vacated, 'the [sentencer] should be free to review the efficacy of what remains in light of the original plan.'"  Id.  This accounts for "the holistic approach that a [sentencer] should employ when sentencing a defendant convicted of multiple offenses."  *Id.* (citations omitted).

12

Here, if any of Mr. Umaña's counts of conviction are vacated, then application of the sentencing package doctrine is appropriate and necessary. Every aspect of Mr. Umaña's original sentence—from findings on aggravation and mitigation, findings on weighing, and findings as to ultimate selection of the penalty—was conducted by the jury. As such, if any counts of conviction are vacated, this holistic approach requires the original sentencer—a jury—to review the efficacy of what sentences remain.

31. Accordingly, Mr. Umaña requests vacatur of his §922(g) conviction (Count 27) under the rule of *Rehaif*, and vacatur of his remaining sentences, including his death sentences, based on *Rehaif* error in his §922(g) conviction.

13

## REQUEST FOR RELIEF

WHEREFORE, based upon the foregoing and all prior proceedings and submissions, Movant, Alejandro Umaña, respectfully requests that the Court grant him the following relief:

A) That Movant be granted such discovery as is necessary for full and fair resolution of the claims contained in his 2255 Motion, as supplemented and amended;

B) That leave to supplement and amend be granted;

C) That an evidentiary hearing be conducted on all claims involving disputed issues of fact;

D) That Respondents be Ordered to respond to the 2255 Motion, as supplemented and amended; and

E) That Movant's convictions and sentences be vacated.

Respectfully submitted,

*/s/ Kelly D. Miller*
KELLY D. MILLER
Asst. Federal Public Defender
Federal Public Defender
Middle District of Pennsylvania
100 Chestnut Street, Suite 300
Harrisburg, PA 17101
Tel: 717-782-3843
Fax: 717-782-3966
kelly_miller@fd.org

Dated: June 19, 2020

14

**CERTIFICATE OF SERVICE**

I, Kelly D. Miller, hereby certify that I have electronically filed the foregoing document

with the Clerk of Court using the CM/ECF system and a copy of the foregoing document has been

served this day upon the following via CM/ECF:

Anthony J. Enright
Assistant United States Attorney
Suite 1650, Carillon Building
227 West Trade Street
Charlotte, NC 28202
anthony.enright@usdoj.gov

*/S/ KELLY D. MILLER*
KELLY D. MILLER
Asst. Federal Public Defender
Federal Public Defender
Middle District of Pennsylvania
100 Chestnut Street, Suite 300
Harrisburg, PA 17101
Tel: 717-782-3843
Fax: 717-782-3966
kelly_miller@fd.org

Dated: June 19, 2020

15