IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Charlotte Division

| | |
|---|---|
| ALEJANDRO UMAÑA,<br>　　　　　　Petitioner,<br><br>　　　　v.<br><br>UNITED STATES,<br>　　　　　　Respondent. | 16-CV-00057-RJC<br><br>CAPITAL § 2255 PROCEEDING<br><br>HON. ROBERT J. CONRAD, JR. |

**FEDERAL DEFENDERS OF SAN DIEGO, INC.'S MOTION TO WITHDRAWAL AS COUNSEL FOR PETITIONER ALEJANDRO UMAÑA**

Federal Defenders of San Diego, Inc. ("FDSDI") hereby submits this motion to withdraw as counsel for petitioner Alejandro Umaña. On June 16, 2020, this Court denied Mr. Umaña's motion to substitute in new second counsel in place of FDSDI. *See* June 16, 2020, Order (Doc. No. 87).[1] Mr. Umaña, through his lead counsel, Kelly Miller of Federal Defenders of the Middle District of Pennsylvania ("FDMDPA"), intends to continue to litigate and investigate ineffective assistance of counsel claims against FDSDI as his counsel on direct appeal. Despite the denial of the motion to substitute counsel, FDSDI cannot continue representing Mr. Umaña. FDSDI now respectfully requests that this Court grant its motion to withdraw as second counsel.

---

[1] Similar the Court's June 16, 2020 Order, citations to documents filed in Mr. Umaña's underlying criminal case are by docket number without parentheses; citations to documents filed in this civil action are by docket number within parentheses. Citations to documents filed in the Fourth Circuit Court of Appeals are by ECF number.

1

## I. STATEMENT OF FACTS

Since 2010, FDSDI has been appointed to work on Mr. Umaña's capital case. On October 14, 2010, the Fourth Circuit Court of Appeals appointed Malcom Tye Hunter, the then executive director of North Carolina Center for Death Penalty Litigation ("CDPL"), and FDSDI, as counsel to Mr. Umaña for his direct appeal. *See United States v. Umaña*, No. 10-6, ECF No. 19, Order Granting Mot. For Subst. (4th Cir. Oct. 14, 2010); *See also* Mot. for Subst., ECF No. 8 (Sept. 29, 2010) (requesting appointment of Mr. Hunter and Steve Hubachek, of FDSDI). On February 4, 2013, Attorney Vince Brunkow took over as attorney of record for FDSDI after Mr. Hubachek left the office for a position at a civil firm. Order Subst. Counsel, ECF No. 69. Within FDSDI, there was a core team of attorneys and staff working on Mr. Umaña's appeal, including undersigned counsel. Staff attorney David Weiss from CDPL assisted Mr. Hunter and worked with FDSDI in preparing and drafting the appeal. *See* Affidavit of Sandy Demeree at ¶ 2-5 attached hereto as Exhibit A.[2] Due to the limited hours the Fourth Circuit authorized for Mr. Hunter, FDSDI took on most of the responsibility in filing the brief. Mot. to Ext. Time, ECF No. 73 at 9 (June 12, 2013).

Prior to the filing of the opening brief, CDPL and FDSDI worked on obtaining a complete record of the case below, review of the record, and developing the legal

---

[2] Mr. Weiss was employed with CDPL, and served as a staff attorney from September 2007 to April 2013, when he left CDPL for private practice. Exhibit A at ¶ 5. Mr. Weiss returned to DCPL in April 2014, and remains employed by CDPL at this time. *Id*.

arguments. Specifically, counsel informally and through litigation, in this Court and in the Fourth Circuit, sought access to a complete record for purposes of preparing the appeal. *See* Mot. to Obtain Complete Record, Doc. No. 1501 (April 30, 2012); Order, Doc. No. 1520 (Aug. 21, 2012); Mot. to Obtain Complete Record, Doc. No. 1530 (May 29, 2013); Order, Doc. 1534 (June 6, 2013); Second Mot. to Obtain a Complete Record, Doc. No. 1538 (June 12, 2013); Sealed Order, Doc. No. 1548 (June 20, 2013); Mot. for Access to Complete District Court Record, ECF No. 81 (June 27, 2013). In filings with the Fourth Circuit, CDPL and FDSDI represented that they were in the "process of briefing" and had "identified and begun to research" appellate issues including issues of venue, intellectual disability, and voir dire. Mot. to Extend Time, ECF 66, (Sep. 14, 2012); Second Mot. to Extend Time, ECF No. 71 at 3 (March 6, 2013) (noting issue "identified" to include issues relating to jury selection, venue, intellectual disability).

In late June of 2013, Mr. Hunter left CDPL to open his own private practice and continued working on Mr. Umaña's appeal. *See* Affidavit of Sandy Demeree, attached hereto as Exhibit A at ¶ 4. By the time Mr. Hunter left CDPL, a significant portion of the work had been done on the brief. A few weeks after Mr. Hunter's departure from CDPL, counsel for Mr. Umaña informed the Fourth Circuit that they had "developed and settled on issues" for the appeal, had "repeatedly edited the brief," and were requesting permission to file a brief exceeding the ordinary word limit. Mot. to Exceed Length Limit, ECF No. 87 at 2, 5 (Aug. 6, 2013). A brief was filed in compliance with the requested limits a few days later. App. Op. Brief (later stricken),

ECF No. 88 (Aug. 14, 2013). The Fourth Circuit then granted, in part, the motion to exceed the length limit and ordered Mr. Umaña to file a corrected brief. Order, ECF No. 96 (Aug. 21, 2013). The corrected brief was filed on September 3, 2013. Corrected App. Op. Brief, ECF No. 99 (Sept. 3, 2013). Mr. Umaña's convictions and death sentences were affirmed on direct appeal. *United States v. Umaña*, 750 F.3d 320 (4th Cir. 2014), cert. denied, 135 S.Ct. 2856 (2015).

On June 1, 2015, while the petition for certiorari was pending in the Supreme Court, Mr. Hunter and FDSDI requested appointment of Ken Rose as lead counsel for the 2255 federal habeas and for FDSDI as second counsel. Mot. to Appoint § 2255 Counsel, Doc. No. 1618 (June 1, 2015). At the time of his appointment, Mr. Rose was a senior staff attorney at CDPL and had worked at CDLP since 1996. *See* Exhibit A at ¶ 6. Like Mr. Hunter, Mr. Rose, was also the executive director of CPDL for a significant period. *Id*. at ¶ 4, 6. Their employment at CDPL overlapped during the pendency of the direct appeal. *Id*. Mr. Rose had significant post-conviction and habeas corpus experience, while the FDSDI attorneys that worked on the appeal had the necessary familiarity with the case and the complex record. Doc. No. 1618 at 10. On June 3, 2015, this Court granted the appointment of Mr. Rose and the continued representation by FDSDI. Order, Doc. No. 1621, (June 3, 2015). Staff Attorney Mark Pickett with CDPL also worked with Mr. Rose, along with FDSDI, in the preparation of the habeas petition. *See* Exhibit A at ¶ 7. On June 22, 2016, CDPL and FDSDI filed a 2255 habeas petition on behalf of Mr. Umaña. 2255 Motion (Doc. Nos. 22, 24 (sealed)).

On January 30, 2017, Mr. Rose (who had recently left CDPL) and FDSDI filed a motion to substitute in Attorney Kelly Miller from FDMDPA to replace Mr. Rose. Mot. to Subst. (Doc. 48). The motion stated that while FDSDI was "responsible for critical aspects of the original 2255 habeas, it lacked the capital habeas expertise sufficient to serve as lead counsel or move the procedural aspects of the case forward in an efficient manner." (Doc. 48) at 2. On February 22, 2017, the Court appointed FDMDPA as Mr. Umaña's lead counsel. Order on Mot. to Subst. (Doc. 49).

Following the appointment, FDSDI assisted new lead counsel in getting up to speed with Mr. Umaña's case. By this time, the record in this case was massive, consisting of over 1,600 entries on the main criminal docket, a trial transcript of over 4,000 pages and discovery that includes over 40,000 pages and 300 hours of audio recordings, in addition to the fruits of the § 2255 investigation, which resulted in a total of 418 pages in the § 2255 Motion and over 800 pages of exhibits. Mot. to Subst. (Doc. 48) at 3; 2255 Motion, Doc. No. 1657. FDMDPA dedicated the time and resources with becoming familiar with the record and the process took several months.

FDSDI worked with FDMDPA in developing claims that related back to the initial 2255 Motion. The supplemental/amended 2255 filed in February of 2018, however, also included ineffective assistance of counsel claims against FDSDI relating to the representation on direct appeal. *See* Supplemental/Amended § 2255 Motion (Doc. No. 68); *See also* Reply to Government's Opposition to Supplemental/Amend § 2255 Motion (Doc. No 81). The ineffective assistance of

appellate counsel claims included issues relating to venue, intellectual disability, the voir dire process, failure to raise access to full record, and a claim that although "counsel raised some facet of a number of issues on appeal, counsel failed to raise all constitutional violations arising from the errors." Supplemental/Amended § 2255 Motion (Doc. 68) at 207; *see also id.* at 85 (venue IAC), at 119 (intellectual disability IAC), at 191 (voir dire process), at 212 (failure to access full record).

At the time of the filing of the supplemental/amended 2255, FDSDI believed it had a conflict of interest in maintaining representation, but also a duty of loyalty to file claims for the client that related back to the initial 2255 motion. Following the filing of the supplemental/amended 2255, FDSDI believed that a qualified and available substitute counsel would be required for a capital case prior to requesting to withdraw as counsel for Mr. Umaña. The process of attempting to find replacement counsel took many months. On December 14, 2018, once replacement counsel was found and approved by the Fourth Circuit Court of Appeals, a motion for substitution of counsel was filed with this Court. Mot. to Subst. (Doc. 86) (Dec. 14, 2018). During the year-and-a-half since filing the substitution motion, FDSDI has abstained from working on Mr. Umaña's case because of the conflict of interest. The Court recently denied the motion for substitution of counsel. Order on Mot. to Subst. (Doc. 87) (June 16, 2020).

This request by FDSDI to withdraw as counsel follows.

## II. FDSDI HAS AN UNWAIVABLE CONFLICT OF INTEREST AND CANNOT CONTINUE TO REPRESENT MR. UMAÑA.

In determining whether to grant a motion to withdraw counsel or a motion for substitution of counsel, the "in the interests of justice" standard applies. *Martel v. Clair*, 565 U.S. 648, 663-64 (2012). In adopting the "in the interests of justice" standard, the Supreme Court noted that "[h]abeas petitioners facing execution now receive counsel as a matter of right, not [sic] an exercise of the court's discretion" by virtue of § 3599(a)(2). *Id*. at 659. The enactment of § 3599 by Congress "'reflec[ted] a determination that quality legal representation is necessary' in all capital proceedings to foster 'fundamental fairness in the imposition of the death penalty.'" *Id*. The "interests of justice" inquiry is "peculiarly context-specific," wherein the timeliness of the motion, inquiry into defendant's complaint, and the asserted cause for that complaint should bear upon the decision. *Id*. at 663. However, the Supreme Court in *Clair* made clear that a court is compelled to relieve counsel "if the [] lawyer developed a conflict with or abandoned the client." *Id*. at 661. The Supreme Court again emphasized the need to replace counsel in *Christeson v. Roper*, emphasizing a "petitioner effectively 'has no counsel at all'—as is the case when counsel is conflicted." 574 U.S. 373, 379 (2015); *see also United States v. Swartz*, 975 F.2d 1042, 1048 (4th Cir. 1992) (concluding that when this right to counsel exists, it includes "the right to representation free from conflicts of interest").

FDSDI has a current actual conflict of interest in continuing representation of Mr. Umaña. FDSDI cannot be expected to continue to investigate, be witnesses, and prepare the arguments and factual evidence in pursuit of the current ineffective

7

assistance claims against FDSDI. *See Juniper v. Davis*, 737 F.3d 288, 290 (4th Cir. 2013) (finding it "ethically untenable" to require counsel to pursue ineffective assistance of counsel claims against herself); *See also Gray v. Pearson*, 526 F. App'x 331, 334 (4th Cir. 2013) (noting that in the context of post-conviction habeas proceedings, attorneys cannot be expected to pursue their own ineffectiveness). That's because "counsel cannot reasonably be expected to" pursue claims "which threaten[] their professional reputation and livelihood." *Christeson*, 574 U.S. at 378; *see also id.* ("a 'significant conflict of interest' arises when an attorney's 'interest in avoiding damage to [his] own reputation' is at odds with his client's 'strongest argument'") (quoting *Maples v. Thomas*, 565 U.S. 266, 285-286, n. 8 (2012)).

Moreover, the North Carolina State Bar Rules of Professional Conduct prohibit a lawyer from representing a client "if the representation involves a concurrent conflict of interest." N.C. Prof. Conduct 1.7. A concurrent conflict of interest exists if "there is a significant risk that the representation of one or more clients will be materially limited by ... a personal interest of the lawyer." *Id.* Comment 8 to Rule 1.7 makes clear that a conflict of interest exists where "lawyer's ability to consider, recommend or carry out an appropriate course of action for the client may be materially limited as a result of the lawyer's other responsibilities or interests." *Id.* In such cases, "[t]he conflict in effect forecloses alternatives that would otherwise be available to the client." *Id.* Although "[t]he mere possibility of subsequent harm does not itself preclude the representation," the "critical questions are the likelihood that the conflict will eventuate and, if it does, whether it will materially interfere with the

lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client." *Id*.

Here, FDSDI is not be able to consider, recommend, or carry out an appropriate course of action in reviewing its own performance while on direct appeal or during the initial 2255 Motion. Nor can FDSDI be expected to answer questions of ineffectiveness while simultaneously representing Mr. Umaña. Moreover, the continued representation of Mr. Umaña by FDSDI "would [] put [this Court] in the untenable position of evaluating an ineffective assistance of counsel claim against an attorney currently representing the Defendant on collateral review.*" United States v. Runyon*, No. 4:08CR16, 2014 WL 6623118, at \*4 (E.D. Va. Nov. 5, 2014). Because of the ineffective assistance of counsel claims of appellate counsel, continued representation of FDSDI "would be inappropriate." *Id*. at \*4, n. 6. Thus, FDSDI and Mr. Umaña have an irreconcilable conflict that is not waivable. "When an actual conflict of interest exists, the client is denied effective assistance of counsel, and the attorney may be disqualified." *United States v. Ross*, 33 F.3d 1507, 1523 (11th Cir. 1994) (citing *United States v. Martinez*, 630 F.2d 361 (5th Cir. 1980)).[3]

This conflict of interest is explained by Daniel E. Eaton, an attorney with expertise in legal ethics. *See* Declaration of Daniel E. Eaton (attached hereto as

---

[3] Nor does FDSDI reasonably believe that that it can continue to provide competent and diligent representation to Mr. Umaña because of this conflict. *See* Rule 1.7 (b)(1) (exception to the conflict of interest "the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client).

9

Exhibit B) at ¶¶ 2-11. Mr. Eaton opined that "FDSDI is ethically disqualified from continuing to serve on the defense team, even with the FDMDPA substituting into the case for Mr. Rose. Once the disqualifying conflict occurred, FDSDI effectively became 'no counsel at all' for Mr. Umaña." Exhibit B at ¶ 33 (citing *Christeson* at 3 79). Mr. Eaton goes on to state "FDSDI's ongoing *Christeson* conflict makes it ethically untenable for anyone in that office to serve on a team ethically bound to develop and present those arguments. The personal interest that attorneys from FDSDI have in keeping those arguments from being fully developed, which creates the disqualifying conflict under North Carolina RPC 1.7, is only aggravated by FDSDI's continued participation. That places the reputational interests of FDSDI attorneys squarely in concurrent conflict with those of the client Mr. Umaña." *Id*. "All of this means that the personal interest of FDSDI attorneys in protecting the reputation of themselves and their colleagues 'present[s] a significant risk of materially limiting the representation of the client by' all FDSDI lawyers." *Id*. (quoting North Carolina RPC l.l0(a)).

Even with this conflict, after the filing of the Supplemental/Amended 2255 Motion, FDSDI believed that its duty of loyalty to Mr. Umaña required that it take measures to seek substitution of counsel. This is particularly so where capital defendants regularly have at least two attorneys appointed to their case. In fact, the American Bar Association recommends that no fewer than two attorneys be appointed in all capital cases. *See* American Bar Association, Guidelines for Appointment and Performance of Defense Counsel in Death Penalty Cases, Guideline

4.1; *See also* CJA Guideline 6.01(A) ("judicial officers should consider appointing at least two counsel" in capital § 2255 proceedings "[d]ue to the complex, demanding and protracted nature of death penalty proceedings [.]"). Once FDSDI recognized the conflict, we believed we had a duty to seek substitution ensuring Mr. Umaña had two attorneys, before withdrawing as counsel.

As noted by Mr. Eaton, "[w]here appointed counsel is removed from representing a death-eligible indigent client, 18 U.S.C. § 3599(e) requires that the removed counsel be '*replaced* by similarly qualified counsel upon the attorney's own motion or upon motion of the defendant.'" Exhibit B at ¶ 40 (emphasis in original). Mr. Eaton further notes that "North Carolina RPC 1.16(d) requires that upon termination of employment, a lawyer take 'steps to the extent reasonably practicable to protect a client's interests.'" *Id*. He concluded that "FDSDI attorneys acted in accordance with their ethical obligations in seeking to protect Mr. Umaña's interests upon determining FDSDI's ethically mandated withdrawal from this action." *Id*. at ¶ 41.

What's more, with the filing of allegations of ineffective assistance of appellate counsel in the Supplemental/Amended 2255 Motion, FDSDI believed that Mr. Umaña did not have a conflict-free independent counsel at the time of his initial habeas review and should receive substitution of counsel. In addition to FDSDI's conflict of interest, CDPL also represented Mr. Umaña during the pendency of both the direct appeal and the initial federal habeas. Specifically, from the time of the 2010 direct appeal appointment to June 2013, Mr. Hunter and Mr. Rose were both employees of

CDPL. *See* Exhibit A at ¶ 4, 6. Mr. Weiss also worked on Mr. Umaña's direct appeal and was a colleague of Mr. Rose at CDPL during most of the direct appeal. *Id*. at ¶ 5-6. Furthermore, despite the fact that the opening brief was filed a short time after Mr. Hunter's departure from CDPL (App. Op. Brief, ECF Nos. 88, 99), counsels' decisions relating to the appellate issues that relate to the pending ineffective assistance of counsel claims set forth in the Supplemental/Amended 2255 Motion were substantially developed prior to his departure from CDPL.

The ineffective assistance of appellate counsel claims raised in the Supplemental/Amended 2255 Motion include issues relating to venue, intellectual disability, the voir dire process, and failure to raise access to full record. Supp./Amend 2255 Motion (Doc. 68) at 85 (venue IAC), at 119 (intellectual disability IAC), at 191 (voir dire process), at 212 (failure to access full record). Prior to Mr. Hunter's departure from CDPL, counsel represented to the Fourth Circuit that they had begun the "process of briefing" and "identified and begun to research" appellate issues including issues of venue, intellectual disability, and voir dire. Mot. to Extend, ECF No. 66, (Sept. 14, 2012) (counsel was in the "process of briefing" and had "identified and begun to research" issues relating to venue, intellectual disability, jury selection); Mot. to Extend, ECF No. 71 at 3. (March 6, 2013) (noting issue "identified" to include issues relating to jury selection, venue, intellectual disability). And issues relating to the efforts to access the trial record were litigated in this Court and in the Fourth Circuit while Mr. Hunter was an employee of CDPL. *See Umaña*, 08-cr-00134-RJC-2, Mot. to Obtain Complete Record, Doc. No. 1501 (April 30, 2012); Order, Doc. No.

1520 (Aug. 21, 2012); Mot. to Obtain Complete Record, Doc. No. 1530 (May 29, 2013); Order, Doc. 1534 (June 6, 2013); Second Mot. to Obtain a Complete Record, Doc. No. 1538 (June 12, 2013); Sealed Order, Doc. No. 1548 (June 20, 2013); Mot. for Access to Complete District Court Record, ECF No. 81 (June 27, 2013).

Thus, with the filing of the Supplemental/Amended 2255 Motion, FDSDI believed that Mr. Umaña did not have conflict free counsel during the pendency of the initial habeas review. As to this issue, Mr. Eaton opines that "Mr. Umaña's representation by employees of the CDPL in both the direct appeal and during the initial habeas petition whose employment at CDPL overlapped during the direct appeal effectively precluded Mr. Rose's assertion of Mr. Hunter's performance deficiencies on appeal under the principles of *Christeson*. Mr. Rose's interest in avoiding damage to the reputation of his colleague, Mr. Hunter, and the interest both men had in protecting the professional reputation of their joint employer 'presented a significant risk of materially limiting the[ir] representation of' Mr. Umaña.'" Exhibit B at ¶ 39 (citing North Carolina RPC 1.10(a)). Mr. Eaton goes on to state: that Mr. Umaña was left "without conflict-free habeas counsel during this period. In short, the same reasoning that created a *Christeson* conflict for Ms. Lopez with respect to other lawyers in the FDSDI created such a conflict for Mr. Rose with respect to Mr. Hunter and other lawyers in the CDPL." *Id*.

Finally, following the filing of the Supplemental/Amended 2255 Motion, FDSDI and FDMDPA did begin the process of searching for second counsel to replace FDSDI because of the conflict. On December 14, 2018, once replacement counsel was

found and approved by the Fourth Circuit Court of Appeals, a motion for substitution of counsel was filed with this Court. Mot. to Subst. (Doc. 86) (Dec. 14, 2018). Since the filing of the motion to withdraw and substitute counsel, FDSDI has been working to separate itself from the representation of Mr. Umaña pending this Court's ruling. As noted by Mr. Eaton, "[b]ecause FDSDI is ethically disqualified from continuing to represent Mr. Umaña, the office's continued presence on the defense team constitutes a continuing violation of RPC 1.7 and the principles of *Christeson*. That continuing ethical violation requires FDSDI's termination from its representation of Mr. Umaña under Rule 1.16." Exhibit B at ¶ 34.

### III.  CONCLUSION

FDSDI understands that the Court has denied the motion for substitution of counsel. Although FDSDI would have liked to withdraw with a new second counsel in place, it must now nevertheless seek to withdraw as Mr. Umaña's counsel. Thus, FDSDI requests that FDMDPA continue to represent the client as his lead counsel without FDSDI as second counsel.

WHEREFORE, FDSDI requests that this Court grant its motion to withdraw as counsel.

Respectfully submitted,

Date:  July 14, 2020

*/s/ Zandra L. Lopez*
ZANDRA L. LOPEZ
Federal Defenders of San Diego, Inc.
225 Broadway, Suite 900
San Diego, California 92101-5030
Tel: 619-234-8467
Zandra_Lopez@fd.org

14

I, Zandra L. Lopez, hereby certify that I have electronically filed the foregoing motion to withdraw as counsel with the Clerk of Court using the CM/ECF system and a copy of the foregoing document has been served this day upon the following via CM/ECF:

Anthony J. Enright
Assistant United States Attorney
Suite 1650, Carillon Building
227 West Trade Street
Charlotte, NC 28202
anthony.enright@usdoj.gov

Kelly D. Miller
Asst. Federal Public Defender
Federal Public Defender
Middle District of Pennsylvania
100 Chestnut Street, Suite 300
Harrisburg, PA 17101
Tel: 717-782-3843
Fax: 717-782-3966
kelly_miller@fd.org

Respectfully submitted,

*/s/ Zandra L. Lopez*
Date: July 14, 2020
ZANDRA L. LOPEZ
Federal Defenders of San Diego, Inc.
225 Broadway, Suite 900
San Diego, California 92101-5030
Tel: 619-234-8467
Zandra_Lopez@fd.org

15