

# DECLARATION OF KENNETH J. ROSE
## PURSUANT TO 28 U.S.C. § 1746

I, KENNETH J. ROSE, pursuant to 28 U.S.C. § 1746, hereby swear, affirm, and state that the following is true and correct:

1. I am an attorney licensed to practice law in North Carolina (1990). I became the Executive Director of the Center for Death Penalty Litigation (CDPL) in 1996. I stepped down as Executive Director in 2006, and Thomas Maher assumed that role. Mr. Maher left, and Malcom "Tye" Hunter, Jr. assumed the Executive Director role in 2009. I continued working at CDPL until my retirement from the office in 2017.

2. CDPL was and is a relatively small non-profit law firm. We had fewer than a dozen staff attorneys. The nature of our work required us to be all hands on deck. There were no walls between attorneys or between cases at CDPL. Our work was collaborative. We all had access to one another's files. We shared everything, and we assisted one another on our cases.

3. Although the courts in North Carolina generally appointed a specific attorney from our office (rather than the office as an entity), CDPL was the direct recipient of the court payments. In the rare occasion that a court paid one of us directly, we signed those payments over to CDPL and they were used to fund the organization. We were employees of CDPL.

4. Mr. Hunter was appointed to represent Alejandro Umana on his direct appeal along with the Federal Defenders of San Diego, Inc. (FDSDI). Another attorney at CDPL, David Weiss, also did an extensive amount of work on the direct appeal.

1

5. During Mr. Umana's direct appeal, there were two sets of files that were maintained. FDSDI maintained their own files, including an electronic file system that Mr. Hunter and Mr. Weiss could access over the internet. I did not have direct access to the San Diego files during the direct appeal. However, we also maintained files on Mr. Umana at CDPL. I had access to the CDPL files, including work product and everything else that Mr. Hunter and Mr. Weiss saved to our computer system or otherwise stored in our files.

6. As was our office's general practice on all matters, Mr. Hunter, Mr. Weiss, and I had conversations about Mr. Umana's direct appeal during the time it was pending. I became familiar with the case through their representation of Mr. Umana and gave advice regarding their legal analysis during the appeal.

7. During the appeal, Mr. Hunter retired from CDPL and Mr. Weiss left CDPL for a brief time to engage in private practice. Our consultations with one another did not stop because of their change in employment. In September 2009, North Carolina's Racial Justice Act (RJA) went into effect, allowing all people on North Carolina's death row to develop and raise any available claims of racial discrimination under the Act within one year, by September 2010. There were approximately 160 people on North Carolina's death row at that time. The litigation was ongoing and continues to this day. Even after Mr. Hunter left CDPL, he and I were actively engaged in extensive litigation under the RJA and were in regular communication and consultation with one another.

2

8. After Mr. Umana lost his direct appeal in the Fourth Circuit, but while his Petition for Writ of Certiorari was pending with the United States Supreme Court, I agreed to seek appointment as learned counsel for Mr. Umana's § 2255 motion. The District Court granted my motion for appointment, conditional on Mr. Umana's certiorari petition being denied. Because of the size and complexity of the case, and the statistical improbability that certiorari would be granted, I committed to begin working on the case as soon as possible and to accomplish that, for several months prior to my appointment, I was retained and paid by the FDSDI to begin working on the case.

9. When Mr. Umana's convictions and sentences were affirmed on direct appeal with the denial of certiorari in June 2015, my court appointment to represent Mr. Umana in his § 2255 proceedings took effect. FDSDI was appointed as my co-counsel. Just as Mr. Weiss worked on Mr. Umana's direct appeal along with Mr. Hunter, other members of the CDPL staff worked on Mr. Umana's § 2255 with me. I submitted a proposed budget (which was approved by the District Court) that included funding not only for my time, but also for an additional staff attorney (Mark Pickett), paralegal (Barrie Wallace), and intern.

10. Mr. Weiss returned to working at CPDL around the time Mr. Pickett and I started working on Mr. Umana's § 2255 motion. Just as I had access to the CDPL files (including all of Mr. Hunter's and Mr. Weiss's work product) at the time of the direct appeal, Mr. Weiss had access to the CDPL files (including all of my and Mr. Pickett's work product) as we prepared

Case 3:16-cv-00057-MOC    Document 95-1    Filed 07/14/20    Page 4 of 5

the § 2255 motion. And, as was our office's general practice, I discussed Mr. Umana's § 2255 with my colleagues in the office, and received their advice, including Mr. Weiss.

11. FDSDI had a team and resources to devote to the case, including the mitigation investigation that was primarily located in El Salvador and the investigation of the aggravating circumstances that happened in Los Angeles. My investigative work on the case focused primarily on things that were based in North Carolina. FDSDI also had the primary responsibility for communicating with Mr. Umana, as they had the Spanish-language resources, including Spanish-speaking attorneys. I do not speak Spanish.

12. I relied heavily on FDSDI's investigation and deferred to their judgment and expertise in federal trial procedure and substantive law in making decisions about how we would proceed with the investigation and development of the claims, what claims we would present, and how we would present them. Their input played a significant role in the decisions we made.

13. Mr. Hunter and I have a long relationship, both professionally and as friends. This may have impacted my ability to recognize and raise his ineffectiveness.

I hereby certify that the facts set forth above are true and correct to the best of my personal knowledge, information, and belief, subject to 28 U.S.C. § 1746.

KENNETH J. ROSE

DATE 7-10-2020

4