# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### CIVIL NO. 3:16CV57

ALEJANDRO RAMIREZ UMAÑA,     )

                        )

      Movant,                    )

                        )

vs.                              )

                        )

UNITED STATES OF AMERICA,     )

                        )

      Respondent.             )

_____ )

## RESPONSE OF THE UNITED STATES TO
## <u>UMAÑA'S JUNE 19 MOTION FOR LEAVE TO AMEND</u>

## TABLE OF CONTENTS

I.     BACKGROUND ...................................................................................2

II.    DISCUSSION.....................................................................................4

    A.    Amendment would be futile because Umaña's procedural default bars his claim.....................................................5

    B.    Umaña's jury-instruction argument fails as a matter of law................................................................................................8

    C.    Umaña's conclusory allegation of ineffective assistance of counsel is baseless..................................................................9

III.   CONCLUSION............................................................................... 10

The United States respectfully requests that this Court deny Alejandro Ramirez Umaña's June 19, 2020, motion for leave to amend his 2016 motion under 28 U.S.C. § 2255 to include what he calls "Claim 59." *Proposed Amendment* 1 (Doc. No. 89, 3:16CV57). Umaña contends that his conviction on count 27 for possession of a firearm by an alien unlawfully in the United States, 18 U.S.C. § 922(g)(5), is invalid in the light of the Supreme Court's decision in *Rehaif v. United States*, which held that section 922(g) requires proof "that the defendant knew he possessed a firearm and also that he knew he had the relevant status when he possessed it." 139 S. Ct. at 2194 (2019). He contends that this Court erroneously "fail[ed] to instruct" the jury "on the *Rehaif* knowledge element." *Proposed Amendment* 5. And he includes a conclusory, one-sentence allegation that the attorneys who represented him at trial and on direct appeal were constitutionally deficient for omitting to raise this claim earlier. *Id.* at 7.

This court should reject Umaña's motion because amendment would be futile. The record establishes that Umaña knew that he entered the United States illegally, and the jury heard evidence of Umaña's knowledge. Umaña was required to raise this issue during his trial and direct appeal, and he cannot overcome his procedural default. Even if this Court could properly consider his claim that the jury was not instructed in accordance with *Rehaif*, Umaña would be unable to establish prejudice as required to prevail on a claim under 28 U.S.C. § 2255. And Umaña's ineffective-assistance-of-counsel allegation is baseless.

## I.  BACKGROUND

The United States' March 23, 2017, response to Umaña's motion for leave to seek discovery describes the background of Umaña's criminal case and 2255 motion, *Mar. 2017 Response* (Doc. No. 50, 3:16CV57), at 3–35, but some additional background may be helpful to this Court in resolving Umaña's motion for leave to amend.  Count 27 of Umaña's indictment charged him with possession of a firearm by an alien unlawfully in the United States, 18 U.S.C. § 922(g)(5).  *Exh. 1* at 369.[1]

In advance of his trial, Umaña met with Dr. Enrique Suarez.  *Id.* at 807, 815–18, 4030–31.  Dr. Suarez interviewed him in connection with his claim that he is intellectually disabled or mentally retarded.  *Id.*

Umaña told Dr. Suarez that he "entered this country illegally in 2004." *Exh.* 1, at 4031.  And he described the details of his illegal entry.  *Id.* at 4031–33. He left El Salvador with "U.S. Dollars," and he traveled through Guatemala and Mexico to the United States.  *Id.*  He told Dr. Suarez "he purposefully did not take any identifying documents (i.e., passport)." *Id.* at 4031.  He explained that he was able to cross the borders without passports because they were "not well patrolled" and "not very secure." *Id.*  He swam across a river to get into Mexico. *Id.*  He then bought "medium chain box cutters" and used them to break into

---

[1] "*Exh. 1*" refers to Exhibit 1 to the United States' March 2017 response (Doc. No. 50, attachments 1–14 & Doc. No. 51.)  That exhibit consists of the Joint Appendix that Umana filed in the Fourth Circuit during his direct appeal.

freight cars that took him to the border of the United States, where he crossed a river to enter the country. *Id.* at 4031–32. Umaña's father later sent him identification. *Id.*

At trial, the jury heard testimony not only that Umaña "left El Salvador and illegally entered the United States," *id.* at 3160, but also that he "*admitted* to being illegally in the country." *Id.* at 2099. Special Agent Jose Romero of the Immigration and Customs Enforcement agency testified about Umaña's admission without objection. *Id.* at 2099.

The jury heard evidence that Umaña knowingly possessed a firearm after he illegally entered the country, using it to murder two people. The jury heard direct evidence that Umaña personally pulled out a gun in the Las Jarochitas family restaurant, pointed it at Ruben and Manuel Garcia Salinas, stood still for a minute, and then shot each of the two brothers to death. *Mar. 2017 Response* 4–5; *Exh 1* at 1622, 1624–1628. The jury heard that Umaña urinated on his hands afterward to remove the gunpowder and bragged about the shooting to his fellow gang members. *Exh. 1* at 1463–65, 1492, 1928.

This Court instructed the jury about the elements of possession of a firearm by an alien unlawfully in the United States. J.A. 2489. "One, the defendant knowingly possessed the firearm." *Id.* "Two," "during the possession, the defendant was an alien unlawfully residing in the United States." *Id.* And "[t]hree," "the possession of this firearm was in or affecting interstate or foreign commerce." *Id.* at 2489.

3

The jury found Umaña guilty of all counts, including count 27. *Mar.* 2017 *Response* 15. This Court imposed for Umaña's section 922(g)(5) conviction a prison sentence of 10 years, which it ordered to run concurrently with the prison sentences it imposed on other counts, including the a life sentence on count one. *Exh. 1* at 3698. The jury sentenced Umaña to death on the four capital counts with which he was charged. *Mar.* 2017 *Response* 32.

After the Fourth Circuit affirmed Umaña's conviction and sentence, in June of 2016, Umaña filed his 2255 motion. *Mar.* 2017 *Response* 32.

In June of 2016, Umaña filed his 2255 motion. *Mar.* 2017 *Response* 32. Over the following years, Umaña filed several motions for leave to amend his 2255 motion, which already exceeds 400 pages. He filed the motion related to his challenge to count 27 on June 19, 2020. He alleges that this Court erroneously instructed the jury by omitting a requirement that the jury find that Umaña knew his presence in the United States was illegal. *Proposed Amendment* 2, 4–5.

## II. DISCUSSION

This Court should deny Umaña's motion for leave to amend to challenge the jury instructions given by this Court on count 27 because amendment would be futile. *United States v. Pittman*, 209 F.3d 314 (2000). An amendment is futile to the extent that it presents matters that "would be subject to dismissal." *Gohier v. Enright*, 186 F.3d 1216, 1218 (10th Cir. 1999); *U.S. ex rel. Ahumada v. NISH*, 756 F.3d 268, 274 (4th Cir. 2014). The amendment Umaña proposes

4

would be subject to dismissal for at least two reasons.[2] Umaña's procedural default would bar his challenge to this Court's jury instructions. And his challenge to the jury instructions and his conclusory claim of ineffective assistance of counsel fail as a matter of law.

### A. Amendment would be futile because Umaña's procedural default bars his claim.

Amendment would be futile because Umaña was obligated to raise his jury-instruction claim during his criminal case on direct appeal and his procedural default bars it. *See Bousley v. United States*, 523 U.S. 614, 621 (1998). The Supreme Court has held that Umaña can raise his procedurally defaulted claim on collateral review "only" if he can "first demonstrate either 'cause' and actual 'prejudice'" or that he is "actually innocent." *Id.* at 622. Umaña cannot meet either of these two requirements. *Id.*

Umaña cannot establish the cause necessary to overcome his procedural default. Cause requires a "factor external to the defense" that impeded his attorney's efforts to comply with the requirement that he timely raise objections. *Davila v. Davis*, 137 S. Ct. 2058, 2065 (2017). That the Supreme Court had not issued its decision in *Rehaif* while Umaña's criminal case was before this Court does not establish cause. *See Bousley*, 523 U.S. at 623 (1998) (rejecting

---

[2] This response does not purport to identify all the bases for rejecting Umana's claims. This Court has not yet asked the United States to respond to Umaña's 2255 motion, in original or amended form, and the United States reserves the right to assert any defense or argument or oppose Umaña's 2255 motion on any ground at the appropriate time.

5

arguments that section 2255 movant demonstrated cause for failure to raise argument based on a new Supreme Court holding issued after his case became final). An argument in favor of *Rehaif*'s interpretation of section 922(g)(1) would not have been novel. "The issue decided in *Rehaif* was percolating in the courts for years" before Umaña's criminal case. *United States v. Bryant*, No. 11 CR 765 (RJD), 2020 WL 353424, at *3 (E.D.N.Y. Jan. 21, 2020) (citing decisions); *United States v. Allen*, 734 F. App'x 898 (4th Cir. 2018) (addressing the argument addressed by *Rehaif* before *Rehaif* was decided), *cert. granted, judgment vacated*, 139 S. Ct. 2774 (2019). And to the extent *Rehaif*'s interpretation of the statute was foreclosed by Fourth Circuit precedent, the "futility" of the argument at the time "cannot serve as 'cause' for a procedural default in the context of collateral review." *Whiteside v. United States*, 775 F.3d 180, 185 (4th Cir. 2014) (en banc).

Even if he could somehow establish cause, Umaña would remain unable to establish the requisite "actual prejudice." *Bousley*, 523 U.S. at 622 (cleaned up). The record, which is controlling, *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007), establishes that Umaña *knew* that he "entered this country illegally in 2004" because he told multiple people that he did so. *Exh.* 1 at 2099, 4031. The record includes Umaña's own account of his weeks-long "journey" across multiple borders that he knew were "patrolled." *Id.* It includes his admission that he "purposefully did not take any identifying documents," bought wire cutters, broke into train cars, and swam across rivers to "enter[] this country illegally." J.A. 4031. Simply put, "[s]omeone in" Umaña's "position cannot plausibly argue that

6

he did not know" he was illegally in the United States. *United States v. Williams*, 946 F.3d 968, 974 (7th Cir. 2020).

The jury heard testimony that Umaña "*admitted* to being illegally in the country," *id.* at 2099 (emphasis added), so he cannot establish a reasonable probability that the jury would not have found him guilty had the court instructed that it needed to find that he knew he was illegally in the country. Umaña argues — for the first time — that Agent Romero's testimony was inadmissible under the "hearsay" rule and "[C]onfrontation [C]lause." *Proposed Amendment* 6. But the evidence was admitted without objection. And Umaña's argument about its admissibility is itself procedurally defaulted, not cognizable on collateral review, *United States v. Foote*, 784 F.3d 931, 936 (4th Cir. 2015), and untimely by several years, 28 U.S.C. § 2255(f)(1). His argument that he could have raised reasonable doubts about his knowledge with evidence of cognitive impairments, *Proposed Amendment* 6–7, is belied by his ability to recount the details of his journey and the illegal nature of his entry in his 2009 interview with Dr. Suarez. And that interview, along with Agent Romero's testimony and other evidence, confirms that any defense Umaña might have mounted if the jury had been instructed the way he proposes would have been refuted by his own statements. Umaña has not and cannot establish that any *Rehaif*-related error "worked to his actual and substantial disadvantage." *Murray v. Carrier*, 477 U.S. 478, 494 (1986) (cleaned up).

Nor can Umaña establish "actual innocence" as required to overcome his

procedural default in the absence of a showing of cause and prejudice. Umaña has the burden to "demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 624 (cleaned up). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Id.* Umaña cannot possibly meet this standard in the light of his multiple statements acknowledging his awareness that he entered the United States illegally.

### B. Umaña's jury-instruction argument fails as a matter of law.

Amendment would also be futile because Umaña's jury-instruction argument fails as a matter of law. When considered on collateral review, an error in a criminal case "is harmless unless it 'had a substantial and injurious effect or influence in determining the jury's verdict.'" *Fry v. Pliler*, 551 U.S. 112, 114 (2007) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)). The Fourth Circuit has made clear that this standard applies to jury instructions challenged under 28 U.S.C. § 2255. *United States v. Smith*, 723 F.3d 510, 511 (4th Cir. 2013).

This Court's omission to instruct the jury that Umaña knew his presence in this country was illegal, *Proposed Amendment* 5, did not have "a substantial and injurious effect or influence on the jury's verdict." *Id.* at 517. As mentioned above, the "evidence presented," *id.*, included undisputed testimony that Umaña "admitted to being illegally in the country." *Exh. 1* at 2099. The testimony was admitted without objection. It was well founded in the light of Umaña's statements to Dr. Suarez, and those statements leave no room for even a long-shot defense that

8

Umaña might have forgotten about the journey to illegally enter the country. *Exh. 1*, at 4031.

**C. Umaña's conclusory allegation of ineffective assistance of counsel is baseless.**

Umaña's conclusory allegation of ineffective assistance of counsel, *Proposed Amendment* 7, does not justify amendment; if anything it underscores the futility of his effort. First, Umaña's allegation is untimely. The "right" to effective assistance of counsel was not "initially recognized by the Supreme Court" in the past year, 28 U.S.C. § 2255(f)(3); it has been well-established for decades. *See Strickland v. Washington*, 466 U.S. 668, 690 (1984). Umaña was required to assert any ineffective-assistance challenge to count 27 along with his other ineffective-assistance claims, within one year after his judgment became final in 2015. 28 U.S.C. § 2255(f)(1). Second, the conclusory nature of Umaña's allegation alone makes it insufficient. *See United States v. Roane*, 378 F.3d 382, 400–01 (4th Cir. 2004).

Even if Umaña's allegation were not untimely and conclusory, it would fail as a matter of law. An attorney is not deficient "for failing to" pursue "long-shot" claims. *United States v. Mason*, 774 F.3d 824, 830 (4th Cir. 2014). Nor could Umaña establish prejudice in the form of a reasonable probability that he would not have been convicted of possession of a firearm by an alien unlawfully in the United States. *Strickland*, 466 U.S. at 689. The jury heard evidence that Umaña knew and admitted that he was in the country illegally. *Exh. 1* at 2099. And if

9

counsel had successfully sought the instruction he proposes or otherwise pursued a lack-of-knowledge defense, the United States would have introduced additional evidence overwhelmingly refuting his defense. *Exh. 1*, at 4031.

## III.  CONCLUSION

Umaña's proposed amendment would be futile because it fails as a matter of law.  The United States, therefore, respectfully requests that this Court deny Umaña's June 19, 2020, motion for leave to amend.

RESPECTFULLY SUBMITTED, this 5th day of October, 2020.

R. ANDREW MURRAY
UNITED STATES ATTORNEY

/s/Anthony J. Enright
Assistant United States Attorney
United States Attorney's Office
227 West Trade Street, Suite 1650
Charlotte, North Carolina 28202
(704) 344-6222 (phone)
(704) 344-6629 (fax)
anthony.enright@usdoj.gov

10

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 5th day of October, 2019, I caused to be served a copy of the foregoing motion to be served on counsel for Umaña via electronic case filing

s/ANTHONY J. ENRIGHT
Assistant United States Attorney

11