# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### CIVIL NO. 3:16CV57

ALEJANDRO RAMIREZ UMAÑA,    )
          )
    Movant,          )
          )
vs.          )
          )
UNITED STATES OF AMERICA,    )
          )
    Respondent.          )
_____  )

## RESPONSE OF THE UNITED STATES TO
## UMAÑA'S JUNE 23 MOTION FOR LEAVE TO AMEND CLAIM 22

# TABLE OF CONTENTS

I.   BACKGROUND ...........................................................................................1

II.  DISCUSSION.............................................................................................6

    A.   Amendment would be futile because this Court
    already rejected the basis for Umaña's claim. ..................7

    B.   Amendment would be futile because Umaña's
    procedural default bars his claim. ......................................8

    C.   Amendment would be futile because Umaña's
    amended claim fails as a matter of law............................ 10

        1.   This Court correctly held that
        Umaña's offenses of murder in aid of
        racketeering continue to qualify as
        "crimes of violence" supporting his
        convictions on counts 23 and 25. ................. 11

        2.   Umaña's racketeering-conspiracy
        offense continues to qualify as a
        crime of violence. ............................................. 17

III. CONCLUSION............................................................................................ 19

The United States respectfully requests that this Court deny Alejandro Ramirez Umaña's June 23, 2020, motion for leave to amend claim 22 of his 2016 motion under 28 U.S.C. § 2255. Umaña's amended claim contends, as Umaña has before, that the residual clause of the definition of "crime of violence" in 18 U.S.C. § 924(c) and (j) is unconstitutionally vague and challenges his convictions on counts 23 and 25. And it asks this Court to reconsider its January 2017 ruling that those counts remain supported by a predicate crime that continues to qualify as a "crime of violence."

This court should reject his motion because amendment would be futile. Umaña offers no good reason for this court to reconsider its January 2017 ruling. His procedural default bars his claim. And recent precedent only confirms that his challenge to counts 23 and 25 fails as a matter of law.

## I.   BACKGROUND

The United States' March 23, 2017, response to Umaña's motion for leave to seek discovery describes the background of Umaña's criminal case and 2255 motion, *Mar. 2017 Response* (Doc. No. 50, 3:16CV57), at 3–35, but some additional background may be helpful to this Court in resolving Umaña's motion for leave to amend. Umaña's indictment charged him with two counts of causing the death of another by possession of a firearm in furtherance of a "crime of violence" under 18 U.S.C. §§ 924(c) and 924(j)(1). *Exh. 1* at 365, 367.[1]

---

[1] "*Exh. 1*" refers to Exhibit 1 to the United States' March 2017 response (Doc. No. 50, attachments 1–14 & Doc. No. 51.) That exhibit consists of the Joint Appendix that Umaña filed in the Fourth Circuit during his direct appeal.

The two section 924(c) and (j) counts that Umaña's motion targets —
counts 23 and 25 — each allege two predicate crimes of violence: conspiracy to
participate in a racketeering enterprise and murder in aid of racketeering. *Id.*
The murder predicates are those charged in counts 22 and 24, which allege that
Umaña "knowingly murdered" Ruben Garcia Salinas and Manuel Garcia Salinas,
respectively. *Id.* at 364–67.

The conspiracy offense that serves as a predicate for both challenged
counts is the conspiracy under the Racketeer Influenced and Corrupt
Organizations Act, 18 U.S.C. § 1962(d), charged in count 1. *Id.* at 342, 365, 367.
The maximum penalty for that conspiracy offense is ordinarily 20 years'
imprisonment. 18 U.S.C. § 1962(a)(1). "[I]f the violation is based on a
racketeering activity for which the maximum penalty includes life
imprisonment," however, the maximum penalty increases to "life imprisonment."
18 U.S.C. § 1963(a).

Count one alleged that the conspiracy was based on specific racketeering
acts including "Murder" under North Carolina law. *Exh.* 1 at 329. The count
alleged that Umaña "murdered Ruben Garcia Salinas and Manuel Garcia
Salinas." *Exh. 1*, at 337. And the indictment further alleged as "special
sentencing factors" for "count one" that Umaña "willfully, deliberately, and with
premeditation murdered" Ruben Garcia Salinas and Manuel Garcia Salinas "in
violation of North Carolina Gen. Stat. § 14-17." *Exh.* 1 at 417. That state statute
punishes a "willful, deliberate, and premeditated killing" by death or life

2

imprisonment.  N.C. Gen. Stat. § 14–17.

The statute under which Umaña was charged in count 24, 18 U.S.C. § 924(j)(1), imposes a penalty of life imprisonment or death "if the killing is murder" as defined in 18 U.S.C. § 1111.  Count 23 alleges that Umaña's conduct "result[ed] in the unlawful killing of Ruben Garcia Salinas with malice aforethought" as defined in section 1111(a).  *Exh. 1* at 365.  And Count 25 alleges that Umaña's conduct "result[ed] in the unlawful killing of Manuel Garcia Salinas with malice aforethought" as defined in section 1111(a).  *Exh. 1* at 367.

During the guilt phase of Umaña's trial, the jury heard direct evidence that Umaña personally pulled out a gun in the Las Jarochitas family restaurant, pointed it at Ruben and Manuel Garcia Salinas, stood still for a minute, and then shot each of the two brothers to death.  *Mar. 2017 Response* 4–5.  Abel Santos, who was with Umaña in the family restaurant in which the murder occurred, testified that "the defendant" — the one with distinctive "eyelid tattoos" — "pulled the gun out," "pointed it at Ruben and Manuel," "stood there for a minute," and shot the brothers.  *Exh 1* at 1622, 1624–1628.  The jury heard direct testimony that Umaña urinated on his hands, afterward, telling another gang member that he did so to remove the gunpowder from his hands.  *Exh. 1* at 1928; *see also id.* at 1492.  And the jury heard direct testimony that Umaña told his fellow gang members that he shot people in the Las Jarochitas restaurant and that he did so for himself and his fellow gang members, because "they insulted the MS 13."  *Exh.* 1 at 1463–65.

3

The jury found Umaña guilty of all counts, including counts 23 and 25. *Mar*. 2017 *Response* 15. This Court instructed the jury that to "kill with malice aforethought means either to kill another person deliberately and intentionally or to act with callous and wanton disregard for human life." J.A. 2487. The jury specifically found that the killing of Ruben Garcia Salinas in Count 23 and the killing of Manuel Garcia Salinas in Count 25 was "with malice aforethought." *Exh. 1* at 2557.

The jury also found Umaña guilty of the two counts of murder in aid of racketeering respectively involving Ruben and Manuel, and it found Umaña guilty of the racketeering conspiracy. *Id.* at 2556–57. The jury returned a special verdict form finding that Umaña's agreement included "the willful, deliberate, and premeditated murder" of both Ruben and Manuel Garcia Salinas "in violation of N.C. Gen. Stat. § 14-17." *Exh.* 1, at 2556.

At the death-penalty-eligibility phase of the trial, the jury unanimously found two statutory aggravating factors for each of Umaña's four capital counts. *Mar*. 2017 *Response* 15–16. For each count, the jury unanimously found that Umaña "intentionally and specifically engaged in an act of violence knowing that the act created a grave risk of death to a person other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life" and a person "died as a result of the act." *Exh. 1*, at 2631, 2636, 2641, 2646. And, for each count, the jury unanimously found that Umaña "killed and attempted to kill more than one person in a single

4

criminal episode." *Id.*

At the penalty phase of the trial, the jury unanimously found four aggravating factors for each of Umaña's capital counts. *Id.* at 3543–78. For two counts, the jury unanimously found that Umaña "killed Ruben Garcia Salinas to protect and maintain the name and reputation of the criminal enterprise MS-13, and to advance his position and reputation within the criminal enterprise." *Id.* at 3543, 3552. And for the other two counts the jury unanimously found that Umaña "killed Manuel Garcia Salinas to protect and maintain the name and reputation of the criminal enterprise MS-13, and to advance his position and reputation within the criminal enterprise." *Id.* at 3561, 3570.

The jury sentenced Umaña to death on all four capital counts. *Mar.* 2017 *Response* 32. This Court sentenced Umaña to life imprisonment on count one, the conspiracy count. *Exh. 1*, at 3698. The Fourth Circuit affirmed Umaña's conviction and sentence. *Mar.* 2017 *Response* 32.

In June of 2016, Umaña filed his 2255 motion. *Mar.* 2017 *Response* 32. In Claim 22, Umaña challenged his convictions on "Counts 23 and 25." *2255 Mot.* 323. He argued that the "residual clause" of the definition of "crime of violence" in 18 U.S.C. §§ 924(c) and (j) is "unconstitutionally vague." *2255 Mot.* 323–339. And he argued that neither of the two predicate offenses underlying each of the two challenged counts qualify as "crimes of violence" under the remaining portions of the definition of that term, including the "force clause." *Id.*

In January of 2017, this Court rejected Umaña's request to hold his 2255

5

motion in abeyance pending a decision by the Fourth Circuit or Supreme Court about whether the residual clause of the definition of "crime of violence" was unconstitutionally vague. *Umaña v. United States*, 229 F. Supp. 3d 388, 391 (W.D.N.C. 2017). This Court held that murder in aid of racketeering "is a crime of violence under § 924(c)'s force clause." *Id.* at 392. More than three years later, in June of 2020, Umaña filed what he acknowledges is a request that this court "revisit[]" its "prior analysis" in the form of a motion to amend claim 22 of his original 2255 motion. *Mot. to Amend* 12.

## II.     DISCUSSION

This Court should deny Umaña's motion for leave to amend claim 22 of the 2255 motion he filed years ago, because the amendment he proposes would be futile. *United States v. Pittman,* 209 F.3d 314 (2000). An amendment is futile to the extent that it presents matters that "would be subject to dismissal." *Gohier v. Enright,* 186 F.3d 1216, 1218 (10th Cir. 1999); *U.S. ex rel. Ahumada v. NISH*, 756 F.3d 268, 274 (4th Cir. 2014). The amendment Umaña proposes would be futile for at least three reasons.[2] First, this Court has already rejected the basis for his claim. Second, Umaña's procedural default would bar his claim. Finally, the amendment would be futile because Umaña's claim fails on the merits as a matter of law.

---

[2] This response does not purport to identify all the bases for rejecting Umaña's claims. This Court has not yet asked the United States to respond to Umaña's 2255 motion, in original or amended form, and the United States reserves the right to assert any defense or argument or oppose Umaña's 2255 motion on any ground at the appropriate time.

6

### A. Amendment would be futile because this Court already rejected the basis for Umaña's claim.

First, amendment would be futile because this Court has already rejected the basis of his claim — that invalidity of the residual clause of 18 U.S.C. § 924(c) and (j) entitles him to relief. Umaña asked this Court to hold his 2255 motion in abeyance for decisions about whether the residual clause was "unconstitutionally vague" because that issue was potentially "dispositive of his entire § 2255 motion." *Umaña*, 229 F. Supp. 3d at 392. This court declined that request after holding that one of the predicates for Umaña's two counts — murder in aid of racketeering — qualifies as a crime of violence under the force clause of the definition of "crime of violence." *Id.* at 397. The Court explained, in the light of its holding, "there is no need to hold this action in abeyance" until "the Supreme Court or the Fourth Circuit determines whether § 924(c)'s 'residual clause' is unconstitutionally vague." *Id.* The plain import of its decision is that Umaña would be unable to succeed on claim 22 even if the Supreme Court or Fourth Circuit held the clause invalid. *See id.*

Last year, the Supreme Court in *Davis* issued the kind of holding specifically contemplated by this Court's January 2017 ruling. 139 S. Ct. at 2336. It held that the residual clause of section 924(c)'s definition of "crime of violence" is "unconstitutionally vague." 139 S. Ct. at 2336. *Davis*, of course, does not undercut anything in this Court's January 2017 ruling; Umaña simply disagrees with it. *See Mot. to Amend* 12. Instead of moving for reconsideration within a

7

reasonable time after the court's ruling, he instead waited more than three years and moved for leave to file an amendment asking this Court to "revisit[] the Court's prior analysis." *Mot. to Amend* 12.

Umaña's motion identifies no good reason for this Court to reconsider its January 2017 ruling. The rule announced in *Davis* is no ground for reconsideration; this Court's ruling contemplated it as a possible outcome of the pending cases addressing the issue. And any other ground would be untimely. Even if the statute allowed him to assert the *Davis* rule within one year after it "was initially recognized by the Supreme Court," 28 U.S.C. § 2255(f)(3), Umaña had to assert any other rule within one year after his conviction became final, *id.* § 2255(f)(1). That deadline passed more than four years ago. *Mar.* 2017 *Response* 33–34. Moreover, as explained below, no basis for reconsideration would exist in any event because decisions from the Supreme Court and the Fourth Circuit only confirm that this Court's January 2017 ruling was correct. Umaña's convictions on counts 23 and 25 remain valid under the force clause of the definition of "crime of violence," which remains intact after *Davis*.

### B. Amendment would be futile because Umaña's procedural default bars his claim.

Amendment would also be futile because Umaña was obligated to raise his claim during his criminal case on direct appeal; his procedural default bars his claim on collateral review. *See Bousley v. United States*, 523 U.S. 614, 621 (1998). The Supreme Court has held that Umaña can raise his procedurally

8

defaulted claim on collateral review "only" if he can "first demonstrate either 'cause' and actual 'prejudice'" or that he is "actually innocent." *Id.* at 622. Umaña cannot meet either of these two requirements. *Id.*

Umaña cannot establish the cause necessary to overcome his procedural default. Cause requires a "factor external to the defense" that impeded his attorney's efforts to comply with the requirement that he timely raise objections. *Davila v. Davis*, 137 S. Ct. 2058, 2065 (2017). That the Supreme Court had not issued its decision in *United States v. Davis*, holding that the residual clause of section 924(c)'s definition of "crime of violence," is "unconstitutionally vague," 139 S. Ct. 2319, 2336 (2019), while Umaña's criminal case was before this Court does not establish cause. *See Bousley*, 523 U.S. at 623 (rejecting arguments that section 2255 movant demonstrated cause for failure to raise argument based on a new Supreme Court holding issued after his case became final). That Umaña's arguments would have been unlikely to succeed would not be enough, even if the arguments would have been entirely futile. *Whiteside v. United States*, 775 F.3d 180, 185 (4th Cir. 2014) (en banc). But Umaña has not identified any precedent that would have foreclosed his argument that the residual clause of section 924(c) is unconstitutional in any event. Indeed, Umaña presented the argument to this Court before the Supreme Court or the Fourth Circuit had spoken to the validity of section 924(c)'s residual clause.

If Umaña could establish cause, he would remain unable to establish the requisite "actual prejudice." *Bousley*, 523 U.S. at 622 (cleaned up). As explained

below, he was found guilty of what today remains a valid offense under section 924(c) & (j). He therefore cannot establish that any error affected the outcome of his proceedings.

Nor can Umaña establish "actual innocence" as required to overcome his procedural default in the absence of a showing of cause and prejudice. Umaña has the burden to "demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 624 (cleaned up). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Id.* The evidence of Umaña's guilt included the testimony of eyewitnesses who watched him use a gun to commit the premeditated murder of two individuals and Umaña's own statements bragging about committing the offense for the benefit of his gang. He cannot overcome his procedural default by establishing actual innocence.

### C. Amendment would be futile because Umaña's amended claim fails as a matter of law.

Finally, amendment would be futile because Umaña's amended claim fails as a matter of law. Offenses that meet the requirements of the "force clause" of section 924(c) continue to qualify as "crimes of violence" after *Davis*. *United States v. Mathis*, 932 F.3d 242, 263–66 (4th Cir. 2019). And both of the predicate offenses for each of Umaña's section 924(c) and (j) counts continue to qualify as "crimes of violence" under the force clause.

10

**1.** **This Court correctly held that Umaña's offenses of murder in aid of racketeering continue to qualify as "crimes of violence" supporting his convictions on counts 23 and 25.**

This Court correctly held that Umaña's convictions under 18 U.S.C. § 1959(a)(1) for murder in aid of racketeering, also known as "VICAR murder," qualify as a "crimes of violence" under the "force clause" of 18 U.S.C. § 924(c). The clause embraces any felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). Umaña's section 1959(a)(1) offenses required proof that, among other things, Umaña committed "murder" *and* that his conduct was "in violation of the laws of any State." 18 U.S.C. § 1959(a)(1). As this Court recognized, the state law Umaña was alleged and found to have violated appears at N.C. Gen. Stat. § 14–17.

The Fourth Circuit has made clear that to meet the requirements of 18 U.S.C. § 1959, the United States must prove that the defendant's conduct meets the definition of "one of the enumerated federal offenses *as well as* the charged state crime." *United States v. Keene*, 955 F.3d 391, 393 (4th Cir. 2020) (emphasis added). Because the offense must meet both requirements, if either the federal definition of murder or the "charged state crime," *id.*, "substantially corresponds" to or "is narrower than" the requirements of the force clause, then the offense categorically qualifies as a "crime of violence." *Quarles v. United States*, 139 S. Ct. 1872, 1877 (2019).

This court held that both the generic, federal definition of "murder" and

11

the charged state crime, murder under N.C. Gen. Stat. § 14–17, require the use, attempted use, or threatened use of physical force against the person of another. *Umaña*, 229 F. Supp. 3d at 394, 397. Supreme Court and Fourth Circuit precedent since that time confirms that this Court's conclusions are correct. *Cf. Mot. to Amend* 12. The Fourth Circuit held in *In re Irby*, for example, that "murder is a crime of violence under the force clause because unlawfully killing another human being requires the use of force 'capable of causing physical pain or injury to another person.'" 858 F.3d 231, 236 (4th Cir. 2017). "Common sense," it further held, "dictates that murder is categorically a crime of violence under the force clause," and such a conclusion is necessary to "avoid an absurd result." *Id.* The court reiterated more recently that "[m]urder 'requires the use of force capable of causing physical pain or injury to another person' irrespective of whether that force is exerted directly or indirectly by a defendant," holding that "first-degree murder" qualifies "categorically as a crime of violence under the force clause." *Mathis*, 932 F.3d at 265 (discussing Virginia law). And the Fourth Circuit has multiple times held that North Carolina second-degree murder meets the requirements of the force clause. *United States v. Parrish*, 767 F. App'x 440, 442–43 (4th Cir. 2019) (unpublished decision); *United States v. Bell*, 704 F. App'x 297, 298 (4th Cir. 2017) (unpublished decision); *United States v. Lee*, 697 F. App'x 175, 176 (4th Cir. 2017) (unpublished decision).

Recent Supreme Court precedent confirms that murder remains a crime of violence. When the application of federal law "requires a state conviction," the

12

Supreme Court explained when discussing the force clause of the Armed Career Criminal Act, federal law should not be construed in a way that "would render it inapplicable in many states." *Stokeling v. United States*, 139 S. Ct. 544, 552 (2019). An interpretation of the force clause that excludes either the federal or North Carolina definition of murder would contravene *Stokeling* by making that clause inapplicable to murder "in many States." *Id.* Such an interpretation would be untenable, because murder is "a quintessential crime of violence." *Irby*, 858 F.3d at 237.

This Court properly concluded that murder in aid of racketeering qualifies as a crime of violence, and none of Umaña's arguments for why he believes his murder offenses do not qualify justifies reconsideration of this Court's conclusion. *Cf. Mot. to Amend* 14–25. All of these arguments were available to Umaña when he filed his initial motion and when this Court issued its January 2017 order. And, in any event, they are meritless.

Umaña's "disagree[ment]" with Fourth Circuit precedent holding that murder that can be accomplished by poisoning falls within the confines of the force clause, *Mot. to Amend* 24–25, is irrelevant. This Court is bound by precedential decisions by the Fourth Circuit, such as *Mathis* and *Irby*, whether Umaña agrees with them or not. Those decisions rejected arguments that poisoning does not qualify as a use of force because a person can sprinkle poison without intentionally applying force to another person. "The 'use of force'" is "not the act of 'sprinkling' the poison; it is the act of employing poison knowingly as a

device to cause physical harm.  That the harm occurs indirectly, rather than directly (as with a kick or punch), does not matter." *Irby*, 858 F.3d at 235–36 (quoting *United States v. Castleman*, 134 S. Ct. 1405, 1415 (4th Cir. 2017)).

Umaña's argument that murder in North Carolina does not involve the use of force because it can be accomplished by "starvation" fails for the same reason as his poisoning theory.  The decisions he cites supporting a theory of murder by starvation involved proof that a defendant "intentionally starved" another person.  *State v. Cheeks*, 833 S.E.2d 660, 664 (N.C. Ct. App. 2019); *State v. Evangelista*, 353 S.E.2d 375, 381 (N.C. 1987).  "The 'use of force'" is "not the act of" doing nothing while someone starves; "it is the act of employing" starvation "knowingly as a device to cause physical harm." *Irby*, 858 F.3d at 235–36 (quoting *United States v. Castleman*, 134 S. Ct. 1405, 1415 (4th Cir. 2017)).  The Virginia statute that the Fourth Circuit addressed in *Mathis*, moreover, also punishes "murder . . . by starving." Va. Stat. § 18.2-32.  That feature did not prevent the Fourth Circuit from holding that the statute meets the requirements of the force clause.  *Mathis*, 932 F.3d at 265.

Fourth Circuit precedent likewise forecloses Umaña's argument that the felony-murder rule removes murder from the scope of the force clause.  *Mot to Supplement* 21–22.  The Virginia first-degree murder statute the Fourth Circuit held to be a crime of violence in *Mathis*, like the North Carolina offense, extends to murder "in the commission of" a number of other felony offenses, including arson, abduction, burglary, and others. Va. Stat. § 18.2-32.  The Fourth Circuit's

14

holding that the statute "qualifies categorically as a crime of violence under the force clause," *Mathis*, 932 F.3d at 264–65, forecloses Umaña's argument that the North Carolina murder statute does not qualify because it has the same features. Moreover, Umaña's argument that the felony-murder rule removes murder from the ambit of the force clause would render the language of that clause, which appears in several other criminal statutes, broadly inapplicable to "a quintessential crime of violence such as murder." *Irby*, 858 F.3d at 237. "[M]ost jurisdictions accept the felony-murder doctrine." 2 Wayne R. LaFave, *Substantive Criminal Law*, § 14.5 (3d ed.). The language of the force clause cannot properly be construed in a way that "would render it inapplicable in many states." *Stokeling*, 139 S. Ct. at 552.

This court's January 2017 ruling already correctly rejected Umaña's argument that North Carolina and generic murder are overly broad because they can be committed recklessly. *Compare Mot to Supplement* 22–24; *Umaña*, 229 F. Supp. 3d at 394. Neither offense requires "mere recklessness"; both require a "higher degree of intent." *Id.* Generic murder requires at a minimum "evidence of conduct which is reckless and wanton and a gross deviation from a reasonable standard of care, of such a nature that a jury is warranted in inferring that the defendant was aware of a serious risk of death or serious bodily harm." *Id.* (cleaned up) (quoting *United States v. Fleming*, 739 F.2d 945, 948 (4th Cir. 1984)). The heightened-recklessness requirement for murder under North Carolina law likewise demands an "inherently dangerous act 'done in such a

reckless and wanton manner as to manifest a mind utterly without regard for human life and social duty and deliberately bent on mischief.'" *State v. Arrington*, 819 S.E.2d 329, 332 (2018).[3]

Even courts that have accepted Umaña's argument that ordinary recklessness is insufficient under the force clause have held that "murder qualifies as a violent felony" because "murder (including second-degree murder) requires more than ordinary recklessness." *United States v. Baez-Martinez*, 950 F.3d 119, 125 (1st Cir. 2020). Most states, moreover, define murder to include unintentional killing committed with heightened recklessness, often known as "depraved-heart" murder. *See United States v. Marrero*, 743 F.3d 389, 400 & n.4 (3d Cir. 2014); Wayne R. LaFave, *Substantive Criminal Law* § 14.4 (3d ed.). Umaña's argument again asks this Court to defy *Stokeling* and construe the force clause to render it inapplicable to murder "in many states." *Stokeling*, 139 S. Ct. at 552.

Whether a jury could have convicted Umaña on a theory of aiding and abetting is irrelevant under the force clause. *Cf. Mot to Supplement* 25–26. "Aiding and abetting is not itself a federal offense, but merely 'describes the way in which a defendant's conduct resulted in the violation of a particular law.'"

---

[3] Contrary to what Umaña suggests, *Mot to Supplement* 22–23, a verdict of guilt for "second-degree murder based upon the unlawful distribution of a controlled substance" requires the state to prove the same unlawful killing with "malice" required for a verdict in any other circumstance. *State v. Parlee*, 703 S.E.2d 866, 869 (N.C. Ct. App. 2011); *State v. Barnes*, 741 S.E.2d 457, 465 (2013).

16

*Hartgrove v. United States*, No. 100CR00047, 2019 WL 4745131, at \*3 (W.D.N.C. Sept. 27, 2019) (quoting *United States v. Ashley*, 606 F.3d 135, 143 (4th Cir. 2010)). Conviction for murder in aid of racketeering under an aiding-and-abetting theory demands "pr[oof] that the substantive offense had been committed by someone." *United States v. Horton*, 921 F.2d 540, 544 (4th Cir. 1990) (quoting *United States v. Campa*, 679 F.2d 1006, 1013 (1st Cir. 1982)). That requirement is sufficient under the force clause. "There is no requirement that the defendant personally use force or threaten the use of force; it is enough that the crime [of] which the defendant was convicted has as an element the use or threatened use of force." *United States v. Dinkins*, 928 F.3d 349, 359 (4th Cir. 2019) (quoting *United States v. Presley*, 52 F.3d 64, 69 (4th Cir. 1995)); *accord United States v. Steward*, 793 F. App'x 188, 190 (4th Cir. 2019) (unpublished decision) (holding that "[a]iding and abetting in [a] Hobbs Act robbery" is a "crime of violence.").

Simply put, this Court was correct to hold that Umaña's offenses of murder in aid of racketeering continue to qualify as crimes of violence under the force clause. Umaña has identified no reason for this Court to reconsider that decision.

### 2. Umaña's racketeering-conspiracy offense continues to qualify as a crime of violence.

Umaña's racketeering-conspiracy offense under 18 U.S.C. § 1962(d) also continues to qualify as a crime of violence under the force clause of section 924(c) and (j). An ordinary racketeering conspiracy under section 1962(d), the kind

17

punishable by no more than 20 years' imprisonment, does not meet the requirements of the force clause because it requires only "an agreement to commit an offense" and not the use, attempted use, or threatened use of force. *See United States v. Jones*, 936 F.3d 266, 271 (5th Cir. 2019). But Umaña was not convicted on count one of an ordinary racketeering conspiracy; he was convicted of an aggravated form of the offense requiring proof that it was "based on a racketeering activity for which the maximum penalty includes life imprisonment." 18 U.S.C. § 1963(a). The count alleged that Umaña did well more than make an agreement — it alleged that "UMAÑA . . . murdered Ruben Garcia Salinas and Manuel Garcia Salinas." *Exh. 1*, at 337. And the jury found that Umaña not only agreed to the "willful, deliberate, and premeditated murder" of both victims, but also that the murders occurred and that Umaña was responsible for committing them. *Exh. 1*, at 2556–57.

The specific "racketeering activity" on which Umaña's conspiracy was based — the agreed-upon murders of Ruben and Manuel Garcia Salinas — is an element of the aggravated racketeering conspiracy of which Umaña was charged in count 1. It increases the statutory maximum penalty of the conspiracy offense from 20 years to life. 18 U.S.C. § 1963(a). A finding of that activity is a prerequisite to a "different punishment[]," so it "*must* be" an "element[]." *Mathis v. United States*, 136 S. Ct. 2243, 2256 (2016) (emphasis added).

Because Umaña's racketeering offense has murder as an element, that offense "has as an element the use, attempted use, or threatened use of physical

18

force against the person or property of another." 18 U.S.C. § 924(c)(3)(A); *Mathis*, 932 F.3d at 265; *Irby*, 858 F.3d at 236. Indeed, the jury found that the agreed-upon murder underlying Umaña's racketeering-conspiracy conviction was "the willful, deliberate, and premeditated murder" of both Ruben and Manuel, the most serious kind of murder. *Exh.* 1, at 2556.[4]

## III. CONCLUSION

Umaña's claim 22 fails as a matter of law, and Umaña's proposed amendment would be futile because it would not make the claim any more meritorious. The United States, therefore, respectfully requests that this Court

---

[4] Contrary to what Umaña asserts, *Br. of Appellant* 35–38, Umaña's convictions on counts 23 and 25 would remain valid if this court concluded that only one of his two predicate offenses continues to qualify as a crime of violence. An erroneous instruction on an element of an offense does not warrant reversal even on *direct review* if the error is harmless. *See Neder v. United States*, 527 U.S. 1, 7 (1999); *United States v. Lovern*, 293 F.3d 695, 700 (4th Cir. 2002). The Fourth Circuit, indeed, recently affirmed a conviction under 18 U.S.C. § 924(c) that was predicated on both a Hobbs Act robbery, which remains a crime of violence, and a conspiracy to commit a Hobbs Act Robbery, which does not. *United States v. Steward*, 793 F. App'x 188, 190 (4th Cir. 2019) (unpublished decision). The court instructed the jury erroneously that both offenses qualified as crimes of violence, but the defendant could not "show that the error affected his substantial rights." *Id.* There was "no reasonable probability that the result of the proceeding would have been different had the conspiracy offense not been listed as an underlying crime of violence to the § 924(c) charge" so there was "no reason to vacate the § 924(c) conviction." *Id.* Even if the alleged error were "structural" and required reversal without regard to prejudice when raised *on direct review*, reversal on *collateral review* would still require Umaña to show prejudice. *See United States v. Gary*, 954 F.3d 194, 198 (4th Cir. 2020) (holding that accepting a plea from a defendant misinformed about an element is a structural error); *Bousley v. United States*, 523 U.S. 614, 622 (1998) (holding that the same error when raised on collateral review requires the defendant to demonstrate "'cause' and actual 'prejudice'" or actual innocence). After hearing overwhelming evidence that Umaña murdered both Ruben and Manuel with a gun, the jury unequivocally found that Umaña committed each of the alleged predicate offenses. *Exh.* 1 at 2556–57. It found him guilty of the "murder" of each of the two victims. *Id.* It found him guilty of "us[ing] a firearm in relation to a crime of violence *resulting in the death*" of each victim. *Id* (emphasis added). And it found that each of the two "killing[s]" occurred with "malice aforethought." *Id.* This Court can conclude under any standard that the verdict would not have been different if the jury had been instructed that only one of the two predicates qualifies as a crime of violence. And Umaña cannot come close to establishing that this court's instructions about the meaning of crime of violence had "a substantial and injurious effect or influence on the jury's verdict." *United States v. Smith*, 723 F.3d 510, 511 (4th Cir. 2013).

19

deny Umaña's June 23, 2020, motion for leave to amend Claim 22.

RESPECTFULLY SUBMITTED, this 5th day of October, 2020.

R. ANDREW MURRAY
UNITED STATES ATTORNEY

/s/Anthony J. Enright
Assistant United States Attorney
United States Attorney's Office
227 West Trade Street, Suite 1650
Charlotte, North Carolina 28202
(704) 344-6222 (phone)
(704) 344-6629 (fax)
anthony.enright@usdoj.gov

20

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 5th day of October, 2020, I caused to be served a copy of the foregoing motion to be served on counsel for Umaña via electronic case filing

s/ANTHONY J. ENRIGHT
Assistant United States Attorney

21