# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### Charlotte Division

| | |
|---|---|
| ALEJANDRO UMAÑA,<br>　　　　　　　　Movant, | 3:16-CV-00057-RJC |
| v. | CAPITAL § 2255 PROCEEDING |
| UNITED STATES,<br>　　　　　　　　Respondent. | HON. ROBERT J. CONRAD, JR. |

**REPLY TO GOVERNMENT'S RESPONSE TO UMAÑA'S JUNE 23, 2020 MOTION TO SUPPLEMENT/AMEND CLAIM 22 OF HIS 2255 MOTION IN LIGHT OF *UNITED STATES V. DAVIS*, 139 S. CT. 2319 (2019)**

Movant, Alejandro Umaña, respectfully replies to the Government's Response (Doc. 101), and requests the Court grant his June 23, 2020 Motion to Supplement/Amend Claim 22 of his Motion to Vacate in Light of *Davis* (Docs. 90, 91).

In arguing against supplementation/amendment, the Government urges the Court to misconstrue the applicable standards and make factual findings that distort the question currently before the Court: whether supplementation/amendment is proper under Rule 15 of the Federal Rules of Civil Procedure. Respectfully, the Court should decline the Government's invitation, and grant leave to supplement/amend.

### A. Leave to Supplement/Amend, Properly Analyzed Under Rule 12(b) Standards, Should Be Granted

"The standards used by a district court in ruling on a motion to amend or on a motion to supplement are nearly identical. In either situation, leave should be freely granted, and should be denied only where 'good reason exists.'" *Franks v. Ross*, 313 F.3d 184, 198 n.15 (4th Cir. 2002). Rule 15 of the Federal Rules of Civil Procedure "declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182

(1962).  "In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be 'freely given.'"  *Id.*  "Rule 15 is applicable to §2255 motions." *United States v. MacDonald*, 641 F.3d 596, 616 n.12 (4th Cir. 2011).

Here, no bad faith, dilatory motive, or undue delay occurred.  This Court's January 25, 2017 ruling, denying Mr. Umaña's unopposed motion to hold the case in abeyance pending resolution of certain *Johnson* cases, did not deny or dismiss Claim 22 (the *Johnson/Davis* claim). Thus, it is appropriate for counsel to supplement this live Claim with previously unavailable legal authority, in this quickly developing area of law, that further supports Mr. Umaña's position.  Any supplementation relates back to the timely filed *Johnson* claim and, in an abundance of caution, is filed within one year of the *Davis* decision.  Further, Mr. Umaña is not dilatory.  He has no control over the timing of the release of supplemental authority that is worthy of the Court's attention. The Government is not unduly prejudiced by the supplement/amendment or timing of it, and even purports to reserve the right to raise in future pleadings any defenses it has not yet considered. (Doc. 101, at 6 n.2.)  Thus, leave should freely be granted.  *See Foman*, 371 U.S. at 182.

The Government opposes leave to supplement/amend, based on the argument such leave would be futile because the amendment "would be subject to dismissal." (Doc. 101 at 6.)  This dismissal inquiry, however, is tantamount to a Fed.R.Civ.P. 12(b)(6) inquiry:  a motion to supplement or amend may be denied based on futility *only where the amendment fails to state a*

2

*claim on which relief could be granted.* The cases the Government cited stand for this proposition.[1]

And the sole §2255 case the Government cited affirmed the denial of leave to amend where there was a clear statute-of-limitations bar to the new §2255 claims on the face of the record. *United States v. Pittman*, 209 F.3d 314, 317-19 (2000); *cf. Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005) (statute of limitations is raised by Rule 12(b)(6) motion when time bar is apparent on face of complaint).

Thus, applying Rule 12 standards to this inquiry, the Court must accept as true all well-pleaded allegations of the challenged pleading. *Nemet Chevrolet Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (*citing Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). All reasonable factual inferences from the allegations must be drawn in plaintiff/petitioner's favor. *E.I. du Pont de Nemours and Co. v. Kolon Indus., Inc.*, 637

---

[1] The Government cited *Goheir v. Enright* and *U.S. ex rel. Ahumada v. NISH* (Doc. 100 at 4), which state the standard as follows:

> A proposed amendment is futile if the complaint, as amended, would be subject to dismissal. *See id.* at 859. *The futility question is functionally equivalent to the question whether a complaint may be dismissed for failure to state a claim*, a question this court reviews *de novo.*

*Goheir v. Enright*, 186 F.3d 1216, 1218 (10th Cir. 1999) (emphasis added); and:

> Generally, we review a district court's denial of a motion for leave to amend for abuse of discretion. *See US Airline Pilots Ass'n v. Awappa, LLC*, 615 F.3d 312, 320 (4th Cir. 2010). But where, as here, the district court denied such a motion on grounds of futility, we employ the same standard that would apply to our review of a motion to dismiss. *See Pollard v. Pollard*, 325 F. App'x 270, 272 (4th Cir. 2009); *see also Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 132 (1st Cir. 2006). Thus, we review de novo the district court's legal conclusion that Ahumada's proposed amendments "fail[ed] to cure the deficiencies . . . in the [first amended complaint]": namely, that the complaint failed to state a claim on which relief could be granted and failed to overcome the FCA's public-disclosure bar. *See Ahumada*, 2013 U.S. Dist. LEXIS 74696, 2013 WL 2322836, at *7.

*U.S. ex rel. Ahumada v. NISH*, 756 F.3d 268, 274 (4th Cir. 2014).

F.3d 435, 440 (4th Cir. 2011) (citing *Nemet Chevrolet Ltd.*, 591 F.3d at 253).  And where "material facts remain disputed," dismissal is inappropriate.  *Walker v. True*, 399 F.3d 315, 319 & n.1 (4th Cir. 2005) (vacating dismissal of §2254 petition, as district court did not properly apply Rule 12(b)(6) standard when it failed to assume all facts pleaded by petitioner to be true and considered material not included in the petition).

### B. Mr. Umaña's Well-Pleaded Claim and Supplement State a Claim Upon Which Relief Could Be Granted

Mr. Umaña's well-pleaded *Johnson/Davis* claim and supplement state a claim upon which relief could be granted and thus are not futile.  Contrary to a proper Rule 12(b)(6) analysis, the Government ignores that multiple aspects of Mr. Umaña's *Johnson/Davis* claim are currently being litigated in the Fourth Circuit, Supreme Court, or other courts, or have already been resolved in Mr. Umaña's favor.  Given the quickly developing pace of this area of law, it is frankly puzzling the Government would contend that any supplement would be futile.  To the contrary, Mr. Umaña's well-pleaded *Johnson/Davis* claim could entitle him to relief.  That is all that is required at this stage.

Mr. Umaña was charged with two counts of §924(c).  Crim. Doc. 623.  Each §924(c) count listed two predicates:  racketeering (RICO) conspiracy and VICAR murder.  The jury's verdict form did not disclose which predicate(s) formed the basis for the jury's conviction on Mr. Umaña's §924(c) counts.  Thus, if either predicate – RICO conspiracy or VICAR murder – is not categorically a crime of violence, the §924(c) convictions would be invalid and must be vacated. Furthermore, vacating the convictions on the §924(c) counts would render the remaining sentences invalid and would require re-sentencing on the remaining counts.  But for the *Johnson/Davis* error, there is a reasonable probability the guilt-phase and penalty-phase outcomes would have been different.  (*See generally* 2255 Motion, at 323-344 (Docs. 22, 24) & Doc. 91.)  *See United States*

4

*v. Lockhart*, 947 F.3d 187, 192-93 (4th Cir. 2020) (en banc) ("Although the reasonable probability standard is a demanding one, a defendant need not 'prove by a preponderance of the evidence that but for error things would have been different.' Instead, a defendant must 'satisfy the judgment of the reviewing court, informed by the entire record, that the probability of a different result is 'sufficient to undermine confidence in the outcome' of the proceeding'" (citations omitted)).

Contrary to a Rule 12(b) analysis, the Government asks the Court to make a factual finding that Mr. Umaña's jury conclusively used one §924(c) predicate as opposed to another. (Doc. 101, at 19 n.4.) Mr. Umaña addressed this issue previously. (2255 Motion, at 324, 337 (Docs. 22, 24), Doc. 91, at 26-38.) Whether a §2255 court can engage in such speculation is precisely the issue the Fourth Circuit reserved in *United States v. Taylor*, No. 19-7616, slip op. at 2 n.1 (4th Cir. 10/14/2020), and is poised to consider in several pending appeals.[2] This issue alone is one upon which relief could be granted.

RICO conspiracy under §1962(d) – and §1963(a) – is not categorically a crime of violence. (2255 Motion, at 334-337 (Docs. 22, 24), Doc. 91, at 6-10.) Contrary to *Davis*, *Leocal*, *Simms*, and *Vann* (*see* Doc. 91, at 7-10), the Government asks the Court to jettison the elements-based categorical approach when analyzing this count and instead apply a fact-specific conduct-based approach. (Doc. 101, at 17-19.) First, the Government concedes §1962(d) is not categorically a crime of violence, but identifies what it characterizes as an additional element of Mr. Umaña's §1962(d) charge: that the conspiracy was "based on a racketeering activity for which the

---

[2] *E.g.*, *United States v. Ali*, No. 15-4433; *United States v. Gaithers*, No. 19-7859; *United States v. Adams*, No. 19-7868; *United States v. Williams*, No. 19-7858; *United States v. Corbett*, No. 20-6754; *United States v. Castellon*, No. 20-6377; *United States v. Ferone*, No. 20-6432; *United States v. Moore*, No. 20-6427; *United States v. Myers*, No. 20-6336; *United States v. Triggs,* No. 16-7774; *In re Wallace*, No. 20-254.

maximum penalty includes life imprisonment" under §1963(a). (Doc. 101 at 18.) Next, the Government ignores that this sentencing factor requires no proof that any racketeering acts were actually committed at all. The government also ignores that this sentencing factor can even be satisfied by agreeing on racketeering activity that is not categorically a crime of violence but nonetheless carries a maximum penalty of life imprisonment, such as kidnapping. Finally, instead, the Government asks the Court to jettison the categorical approach and apply a case-specific *conduct* analysis when determining whether "racketeering activity for which the maximum penalty includes life imprisonment" *requires* proof of force. (Doc. 101, at 18.) This kind of case-specific conduct approach was squarely rejected by the Supreme Court in *Davis* and the Fourth Circuit in *Simms*. *United States v. Davis*, 139 S. Ct. 2319, 2327 (2019); *United States v. Simms*, 914 F.3d 229, 242 (4th Cir. 2019) (en banc).

Contrary to the Government's conduct-based analysis, to determine whether an offense is a crime of violence under §924(c)(3)(A), courts must use the elements-based categorical approach. *Davis*, 139 S. Ct. at 2328, *citing Leocal*, 543 U.S. at 7; *Simms*, 914 F.3d at 233. The categorical approach requires courts to look only to the statutory elements of an offense, not at the facts of a particular case. "When a *statute* defines an offense in a way that allows for both violent and nonviolent means of commission, that offense is not 'categorically' a crime of violence under the force clause." *Simms*, 914 F.3d at 233 (emphasis added).

The Supreme Court has clearly held that RICO conspiracy under §1963(d) requires no proof of an overt act or specific act at all:

The RICO conspiracy statute, simple in formulation, provides:

"It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d).

There is no requirement of some overt act or specific act in the statute before us, unlike the general conspiracy provision applicable to federal crimes, which requires

6

that at least one of the conspirators have committed an "act to effect the object of the conspiracy." § 371. The RICO conspiracy provision, then, is even more comprehensive than the general conspiracy offense in § 371.

*Salinas v. United States*, 522 U.S. 52, 63 (1997). "The RICO conspiracy statute, §1962(d), broadened conspiracy coverage by omitting the requirement of an overt act." *Id.* at 64. "[T]o secure a conviction for RICO conspiracy, the government is not required to allege or prove the actual completion of a single racketeering act by the defendant or any other member of the conspiracy." *United States v. Cornell*, 780 F.3d 616, 624 (4th Cir. 2015). "The partners in the criminal plan need only 'agree to pursue the same criminal objective,' regardless of whether that criminal objective is ever started or carried out." *Id.* "[C]ompletion of an overt act is not an element of the offense." *Id.* Indeed, this Court instructed the jury that agreement—not action—was enough for conviction: "The government does not have to prove that any racketeering acts were actually committed at all, or that the defendant agreed to personally commit any such acts, or that the defendant agreed that two or more specific acts would be committed." Guilt Phase Transcript (Crim. Doc. 1258), at 1225, 1238-39.

The government argues that the §1963(a) enhanced penalty provision constituted an additional element of the offense which converted the offense into a crime of violence; that is, the government argues §1963(a) "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." *See* 18 U.S.C. §924(c)(3)(A). Initially, it is worth noting §1963(a) is not an element of the charged offense, is not in the same statute as §1962(d) but in a subsequent penalty statute, and is not cited anywhere in Count One (the RICO conspiracy count), anywhere in the indictment, or anywhere in the "Notice of Special Sentencing Factors." *See* Crim. Doc. 623. As the indictment must cite every element of the offense, *see United States v. Kingrea*, 573 F.3d 186, 191 (4th Cir. 2009), failure to cite directly to §1963(a) indicates it is

7

not an element of the offense. At most, the allegation supporting the sentencing enhancement is identified by the Grand Jury and Government as a "Special Sentencing Factor[]." *Id.* at 100.

As *Davis, Leocal,* and *Simms* (among others) instruct, courts must look to the statutory language of §1963(a) to determine if it "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. §924(c)(3)(A). Section 1963(a) states:

> (a) Whoever violates any provision of section 1962 of this chapter [18 USCS §1962] shall be fined under this title or imprisoned not more than 20 years (*or for life if the violation is based on a racketeering activity for which the maximum penalty includes life imprisonment*), or both, and shall forfeit to the United States, irrespective of any provision of State law−[enumerated list of proceeds and property].

18 U.S.C. §1963(a) (emphasis added). The applicable statutory language is "if the violation is based on a racketeering activity for which the maximum penalty includes life imprisonment." *Id.* This statutory language does not "ha[ve] as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. §924(c)(3)(B).

The government does not have to prove that the racketeering activity was actually committed. *Salinas*, 522 U.S. at 63; *Cornell*, 780 F.3d at 624. "The partners in the criminal plan need only 'agree to pursue the same criminal objective.'" *Cornell*, 780 F.3d at 624. "[C]ompletion of an overt act is not an element of the offense." *Id.* "The government does not have to prove that any racketeering acts were actually committed at all." Guilt Phase Transcript (Crim. Doc. 1258), at 1225, 1238-39. All that was required was agreement. If "the government does not have to prove any racketeering acts were actually committed," *id.*, it likewise does not have to prove that the racketeering acts that formed the "racketeering activity for which the maximum penalty includes life imprisonment" were actually committed. All that was required was *agreement* on racketeering acts for which the maximum penalty included life imprisonment. Regardless how serious or

8

consequential the agreement may have been, when the government "does not have to prove that any racketeering acts were actually committed," it also does not have to prove "as an element the use, attempted use, or threatened use of physical force against the person or property of another." *See* §924(c)(3)(B); *Salinas*, 522 U.S. at 63. Agreement on serious racketeering activity—without action—is enough to sustain conviction and the §1963(a) enhanced sentence. *See id.*; *Cornell*, 780 F.3d at 624 ("completion of an overt act is not an element of the offense"). *Cf. United States v. McCollum*, 885 F.3d 300, 308-09 (4th Cir. 2018) (conspiracy to commit VICAR murder under §1959(a)(5) does not require an overt act, and thus is not a crime of violence under U.S.S.G. §4B1.2). Thus, injecting the §1963(a) sentencing factor did not categorically require the government to prove use of force; it was not required to prove any overt act at all.

Further, a §1963(a) aggravated sentence—even in a murder case—does not necessarily demonstrate the government proved, as an element, the use, attempted use, or threatened use of violent physical force. A defendant who is convicted only of RICO conspiracy (membership in the gang)—and is acquitted of any role in committing or conspiring to commit murder—can still be subjected to the §1963(a) aggravated sentence. *E.g.*, *United States v. Garcia*, 474 Fed. Appx. 909, 910-12 (4th Cir. 2012) (unpub. per curiam). For example, in *Garcia*, the defendant was charged with, *inter alia*, RICO conspiracy, conspiring to commit VICAR murder, VICAR murder, and use of a firearm during a crime of violence to wit murder under §924(c), (j). *See id.*; *United States v. Garcia*, No. 09-4495, Brief of United States, at 1-2, 36-37 (4th Cir., filed 10/7/2011). He was acquitted of all counts involving any role in conspiring or committing murder, and was convicted only of the general count of RICO conspiracy. *Id.* However, the jury found that murders were a racketeering activity of the organization or larger RICO conspiracy. *Id.* This finding— despite the government's failure to prove defendant used, attempted, or threatened force (as

9

reflected in his acquittal on all other counts)—was sufficient to expose the defendant to the aggravated §1963(d) sentence. *Id.* Thus, injecting the §1963(a) sentencing factor did not categorically require the government to prove use of force—quite the opposite, the jury found defendant used no force; instead, it was only required to prove defendant's agreement to the RICO conspiracy.

Additionally, the statutory language "racketeering activity for which the maximum penalty includes life imprisonment" can be proven by agreement to racketeering acts that are not categorically crimes of violence. For example, armed kidnapping under District of Columbia law carries a maximum sentence of life imprisonment (until the penalty provision was amended in 2013), satisfies the §1963(a) element of "racketeering activity for which the maximum penalty includes life imprisonment," *see United States v. Fields*, 325 F.3d 286, 288 (D.C. Cir. 2003), and can be committed using non-violent means of "inveigling, enticing, [or] decoying." *See* D.C. Code § 22-2001; *United States v. Walker*, 934 F.3d 375, 378-79 (4th Cir. 2019) (inveigling and holding are non-violent means of committing kidnapping, rendering it not categorically a crime of violence). Similarly, federal kidnapping under 18 U.S.C. §1201 carries a maximum sentence of life imprisonment, satisfies the §1963(a) element of "racketeering activity for which the maximum penalty includes life imprisonment," and can be committed using non-violent means of inveigling and holding. *See* 18 U.S.C. §1201(a), (c); *Walker*, 934 F.3d at 378-79. Thus, injecting the §1963(a) sentencing factor did not categorically require the government to prove use of force; categorically non-violent means of establishing the relevant racketeering activity will suffice.

Moreover, the Government's novel RICO conspiracy argument here tries to up-end (or ignore) settled conspiracy law. (*See* Doc. 91 at 10-11.) The object of the conspiracy cannot be the tail that wags the dog: the object does not dictate whether the conspiracy is a crime of violence.

Conspiracy to commit a violent offense is not categorically a crime of violence, even if the offense conduct shows the target offense was substantially completed or violence was actually employed. It is frankly puzzling why the Government would agree to this correct statement of the law in *United Sates v. Taylor*, No. 19-7616, slip op. at 2-3 (4th Cir. 11/4/2020); yet argue the exact opposite here in Mr. Umaña's case.

If the Government's argument is correct—that the object of the conspiracy is the tail that wags the dog, or defendant's specific *conduct* (couched in terms of the racketeering acts) somehow factors into the elements-based categorical analysis—then co-defendant Jaime Sandoval should not have obtained relief on his *Davis* claim in his §2255 proceeding. Mr. Sandoval's RICO conspiracy under §1962(d), to which he pleaded guilty, was also aggravated and carried a maximum sentence of life imprisonment. Crim. Doc. 667, at 1; Plea Tr. (Crim. Doc. 1285), at 6. Some of Mr. Sandoval's racketeering acts involved violent conduct: robbery, extortion, and armed witness tampering by threat and intimidation. Third Superseding Indictment (Crim. Doc. 623), at 19 (¶ "ff"), 20 (¶ "ll"), 24 (¶ "lll"), 25 (¶ "ppp"), 53, 92-96. Mr. Sandoval pleaded guilty to RICO conspiracy and using a firearm in a crime of violence because he was in fact guilty. Plea Tr. (Crim. Doc. 1285), at 18-19. Although robbery is categorically a crime of violence and Mr. Sandoval's admitted robbery supplied some of the racketeering activity of his RICO conspiracy, *id.*, the Government did not implore the Court to examine that racketeering activity or that conduct-based factual finding in deciding his *Davis* claim. *See Sandoval v. United States*, No. 3:16-cv-337, Doc. 10 (W.D.N.C., filed 11/5/19). If the government were serious, or consistent, about the argument it is raising in Mr. Umaña's proceeding, it would have raised it in other cases involving RICO conspiracy, including Mr. Sandoval's. *Cf. New Hampshire v. Maine*, 532 U.S. 742, 749-51 (2001) (estoppel is appropriate where party unfairly asserts a position inconsistent with its prior position).

11

Finally, the jury verdict form, in Count One, contains no jury finding that Mr. Umaña committed the murders. The Count One verdict phrases the racketeering activity in the passive voice, thus indicating Mr. Umaña merely agreed as part of the RICO conspiracy that the murders should be committed. Crim. Doc. 1043. "[A] crime may *result* in death or serious injury without involving the *use* of physical force[.]" *United States v. Torres-Miguel,* 701 F.3d 165, 168 (4th Cir. 2012). While the Fourth Circuit acknowledges that a different aspect of *Torres-Miguel* was implicitly abrogated by the Supreme Court's decision in *United States v. Castleman*, 572 U.S. 157 (2014), it has reaffirmed this particular holding from *Torres-Miguel* in at least five subsequent decisions. *See United States v. Allred*, 942 F.3d 641, 653 (4th Cir. 2019) (although *Castleman* abrogated one aspect of *Torres-Miguel*, it "did not, however, 'abrogate the causation aspect of *Torres-Miguel* that a crime may *result* in death or serious injury without involving the *use* of physical force.'") (quoting *United States v. Covington*, 880 F.3d 129, 134 n.4 (4th Cir. 2018)); *United States v. Battle*, 927 F.3d 160, 166 (4th Cir. 2019) ("It is true that a crime 'may result in' bodily injury without involving the use of force[.]"); *United States v. Middleton*, 883 F.3d 485, 491 (4th Cir. 2018) ("a crime may *result* in death or serious injury without involving the *use* of physical force") (quoting *Torres-Miguel*, 701 F.3d at 168); *Covington*, 880 F.3d at 134 n.4 (same); *United States v. McNeal*, 818 F.3d 141, 156 n.10 (4th Cir. 2016) (same). The §924(c) force clause demands a "single" element simultaneously requiring both (1) intentional (2) use of violent force. *Middleton*, 883 F.3d at 498. Even if Mr. Umaña's §1962(d) conspiracy included agreement to racketeering acts of murder, and murder resulted, his Count One conspiracy conviction did not necessarily require proof, as an element, that he used the violent physical force with the requisite intent.

12

At the very least, the Government's novel arguments, changed litigation position, and unique interpretation of precedent indicate supplemental pleadings on Claim 22 are necessary— not dismissal worthy. Thus, leave to supplement/amend should freely be given.

VICAR murder also is not categorically a crime of violence. (2255 Motion, at 337-39 (Docs. 22, 24), Doc. 91, at 11-26.) The Government seeks to apply a novel categorical-approach analysis based on *Keene*. (Doc. 101, at 13.) First, *Keene* says nothing of how to consider §924(c); thus it plays no role in the analysis here. *United States v. Keene*, 955 F.3d 391 (4th Cir. 2020). Second, Judge Keenan authored *Keene* and *Mathis*. In *Mathis*, Judge Keenan, after concluding that Virginia kidnapping was not categorically a crime of violence, did not proceed to analyze the elements of common law or generic kidnapping before holding that §1962(a) premised on Virginia kidnapping was not categorically a crime of violence. *United States v. Mathis*, 932 F.3d 242, 263-67 (4th Cir. 2019). Judge Keenan's refusal in *Mathis*, to conduct the analysis the Government asks for based on *Keene*, is telling. The Government's novel approach is not the law – and at the very least illustrates why supplemental pleading is not futile.

The Government incorrectly argues that murder by starvation or omission merely constitutes indirect application of force. (Doc. 101, at 11-15.) While the Fourth Circuit has addressed the distinction between direct and indirect use of force (*see* Doc. 91, at 18-19, ¶¶34-35), Fourth Circuit precedent supports Mr. Umaña's position that an *actus reus* committed by omission does not have as an element the use of violent force. *See Middleton*, 883 F.3d at 490-92; *United States v. Del Carmen Gomez,* 690 F.3d 194, 201-03 (4th Cir. 2012) (statute failed to meet elements clause because defendant can be guilty "by committing an affirmative act or by neglecting to act"). *Cf. United States v. Rumley*, 952 F.3d 538, 551-52 (4th Cir. 2020) (Motz, J., concurring) ("I write separately to express my skepticism that omissions constitute violent force — an issue we need

13

not reach given that Rumley has not shown a realistic probability that omissions would be prosecuted under the statute.").

"[A] crime may result in death or serious injury without involving the use of physical force." *Middleton*, 883 F.3d at 491 (quoting *Torres-Miguel*, 701 F.3d at 168 (emphasis omitted)). While the Fourth Circuit has extended *Castleman*'s reasoning about indirect force and poison to §924(e) and (c), it rejected the idea that "any action leading to bodily injury, through however attenuated a chain of causation, necessarily qualifies as a use of physical force against the person of another." *Id.* at 492; *see McNeal*, 818 F.3d at 156 & n.10 (rejecting the suggestion that *Castleman* "has abrogated the distinction that we recognized in *Torres-Miguel* between the use of force and the causation of injury"); *Covington*, 880 F.3d at 134 n.4 (same).

There is also ample precedent from other circuits establishing that a crime or result (death or injury), that can be committed through an *actus reus* of omission, does not categorically have as an element the use of violent physical force. *United States v. Scott*, 954 F.3d 74, 77, 87 (2d Cir. 2020) ("New York first-degree manslaughter is not a crime of violence under the force clause of ACCA because it can be committed by inaction"); *United States v. Burris*, 912 F.3d 386, 398-99 (6th Cir. 2019) (en banc) (Ohio felonious assault and aggravated assault); *United States v. Mayo*, 901 F.3d 218, 226-30 (3d Cir. 2018) (Pennsylvania aggravated assault); *Whyte v. Lynch*, 815 F.3d 92, 92 (1st Cir. 2016) (offense did not satisfy elements clause because "a person may cause physical injury under the Connecticut statute by 'guile, deception or deliberate omission'"); *Whyte v. Lynch*, 807 F.3d 463, 468-71 (1st Cir. 2015); *United States v. Teague*, 469 F.3d 205, 208 (1st Cir. 2006) (Texas child endangerment); *cf. Chambers v. United States*, 555 U.S. 122, 127-28 (2009) (holding that a "failure to report" crime is not a violent felony because "the crime amounts to a form of inaction"). *See also Lassend v. United States*, 898 F.3d 115, 126-27 & n.11 (1st Cir.

14

2018) (finding it unnecessary to address "deliberately withholding vital medicine," and noting that circuits are divided on whether there is a "distinction between the causation of bodily injury and the use of violent force"); *United States v. Reyes-Contreras*, 910 F.3d 169, 181 n.25 (5th Cir. 2018) (en banc) ("*Castleman* does not address whether an omission, standing alone, can constitute the use of force, and we are not called on to address such a circumstance today."); *Harper v. United States*, 780 Fed. Appx. 236, 245 (6th Cir. 2019) (Moore, J., concurring) (noting that *Castleman* gave "examples of indirect force, all of which involve affirmative acts rather than omissions").

There is also an active split of opinion as to whether a *mens rea* of recklessness, including reckless *mens rea* murder, qualifies as the *Leocal*-required non-negligent (and Fourth Circuit required non-reckless) use of violent physical force. The Supreme Court this term will address whether a reckless *mens rea* crime satisfies the elements clause of the ACCA. *Borden v. United States*, No. 19-5410 (Oct. 2020 Term). The Supreme Court's analysis in *Borden* will impact how other reckless *mens rea* crimes are analyzed under the elements/force clauses of §924(c) and (e). At least one Circuit acknowledges that *Borden* will impact how murder is analyzed under the elements/force clause. *See United States v. Begay*, 934 F.3d 1033, 1037-41 (9th Cir. 2019); *id.*, No. 14-10080, Ord. (9th Cir. 12/5/2019) (holding case in abeyance pending *Walker/Borden*). *Cf. United States v. Hodge*, 902 F.3d 420, 427 (4th Cir. 2018) (quoting *Middleton*, 883 F.3d at 498, for proposition that force clause "requires a higher degree of *mens rea* than recklessness").

Moreover, although the Government's representation of the language of the murder statute at issue in *Mathis* is correct, in *Mathis*, no litigant raised the arguments that Mr. Umana raises here – that murder by starvation or omission or felony murder did not have as an element the use of violent physical force; and starvation, omission, and felony-murder are not mentioned in the briefing or opinion. *See Mathis*, 932 F.3d at 249-68; *Mathis*, No. 16-4633, Docs. 74, 113, 118,

15

135, 136 (4th Cir.).  The Fourth Circuit usually does not consider arguments that are not raised.[3] An issue that was neither briefed by the parties nor addressed by the Court in *Mathis* is not precedential.

Rather than showing Mr. Umaña *failed to state a claim upon which relief could be granted*, the original *Johnson* claim and *Davis* supplement suggest relief *could be granted*, and multiple cases resolving issues applicable to Mr. Umaña's case are working their ways through the Supreme Court and Fourth Circuit.

Mr. Umaña was prejudiced by the unconstitutional §924(c) counts of conviction, which undoubtedly affected his sentencing proceeding outcome.  (Doc. 91, at 26-49.)

### C.        Alleged Procedural Default Does Not Bar the Supplement

The Government incorrectly argues that procedural default renders this supplement futile.

First, it is impossible to discern what appreciable difference there is between the procedurally identical case of *United States v. Runyon*, No. 17-5 (4th Cir.), where the Government conceded procedural default is not applicable after *Davis*,[4] and Mr. Umaña's case, where the Government forestalls assessment on the merits using this inapplicable procedural defense. Runyon filed his §2255 Motion in October 2015 and included a timely *Johnson* claim.[5]  Mr. Umaña filed his timely §2255 Motion in June 2016 and included a timely *Johnson* claim.  (2255 Motion, at 323-344 (Docs. 22, 24).)  Procedural default does not apply to supplemental authority regarding a timely-raised claim that itself was not procedurally defaulted.

---

[3] *See Edwards v. City of Goldsboro*, 178 F.3d 231, 241 n.6 (4th Cir. 1999); *11126 Baltimore Boulevard, Inc. v. Prince George's County*, 58 F.3d 988, 993 n.7 (4th Cir. 1995) (*en banc*).

[4] Brief of United States, 1/13/2020, at 21 n.2, *United States v. Runyon*, No. 17-5 (4th Cir.).

[5] *Id*. at 12.

16

In any event, "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded" the ability to comply with the procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). This can occur if government interference made compliance impractical, *see id.*, or if there was constitutionally ineffective assistance of counsel, *see Coleman v. Thompson*, 501 U.S. 722, 752-53 (1991). Furthermore, if a claim "is so novel that its legal basis is not reasonably available to counsel, a defendant has cause for [the] failure to raise the claim." *Reed v. Ross*, 468 U.S. 1, 16 (1984). A petitioner cannot establish a claim was "not reasonably available to counsel" just because of the perception that "a claim was unacceptable to that particular court at that particular time," *see Bousley v. United States*, 523 U.S. 614, 622-23 (1998), but a claim is deemed unavailable when it results from a "clear break with the past" in a new Supreme Court case:

> First, a decision of this Court may explicitly overrule one of our precedents. Second, a decision may overturn a longstanding and widespread practice to which this Court has not spoken, but which a near-unanimous body of lower court authority has expressly approved. And, finally, a decision may disapprove a practice this Court arguably has sanctioned in prior cases.

*Ross*, 468 U.S. at 17 (cleaned up, citations omitted). While it "present[s] a more difficult question" when a claim implicates the third category, "[b]y definition, when a case falling into one of the first two categories is given retroactive application, there will almost certainly have been no reasonable basis upon which an attorney previously could have urged a state court to adopt the position that this Court has ultimately adopted." *Id.*

Here, *Johnson* and *Davis* represent a "clear break with the past" and have retroactive application. "The Supreme Court in *Davis* restricted for the first time the class of persons §924(c) could punish and, thus, the government's ability to impose punishments on defendants under that statute." *In re Hammoud*, 931 F.3d 1032, 1038 (11th Cir. 2019). It did so by "extended[ing] . . . to a new statute and context" the Supreme Court's decisions in *Johnson v. United States*, 135 S.

17

Ct. 2551 (2015). *Id*. *Johnson* likewise was a "clear break from the past." *See Ross*, 468 U.S. at 16. It expressly overruled the Supreme Court's prior precedents in *James v. United States*, 550 U.S. 192, 210 n.6 (2007), and *Sykes v. United States*, 564 U.S. 1, 15 (2011). *Johnson,* 135 S.Ct. at 2563 ("Our contrary holdings in *James* and *Sykes* are overruled."). Even Johnson's lawyers did not initially press a vagueness challenge in the Supreme Court—it was the Supreme Court itself that ordered briefing on the issue.[6] *Johnson* was held to apply retroactively in *Welch v. United States*, because it "struck down part of a criminal statute that regulates conduct and prescribes punishment," namely the ACCA residual clause in 18 U.S.C. § 924(e)(2)(B), "thereby alter[ing] the range of conduct or the class of persons that the law punishes." 136 S. Ct. 1257, 1268 (2016) (quoting *Schriro v. Summerlin*, 542 U. S. 348, 353 (2004)). For the same reasons, pertaining to the same language in the same statute, *Davis* is retroactive. Thus, cause for any default of a *Johnson/Davis* claim is established by *Ross*'s first and second categories. Mr. Umaña timely raised his *Johnson/Davis* claim within one year of *Johnson* in his initial 2255 Motion, and he timely brings supplemental authority to the Court's attention.

Moreover, the futility language the Government cites from *Bousley* – "futility cannot constitute cause if it means simply that a claim was 'unacceptable to that particular court at that particular time,'" *Bousley*, 523 U.S. at 623 (citation omitted) – must be read in context with *Bailey v. United States*, 516 U.S. 137 (1995). Bailey and Bousley were arrested around the same time; Bailey litigated the issue for which a notable Circuit split was already developing, while Bousley did not. Bailey was arrested in 1989 and challenged the "use" definition at trial and on appeal.

---

[6] *Compare* Order, 1/9/2015, *Johnson v. United States*, No. 13-7120 (Oct. 2013 Term), < https://www.supremecourt.gov/search.aspx?filename=/docketfiles/13-7120.htm> , *with* Question Presented, *id.*, <https://www.supremecourt.gov/qp/13-07120qp.pdf>.

18

*Bailey*, 516 U.S. at 139.  The Supreme Court granted certiorari in *Bailey* to resolve the multifaceted Circuit split that had developed on the definition of "use," standard to apply, and factors to guide the analysis.  *Id.* at 142 (collecting cases).  In contrast, Bousley was arrested in 1990, did not raise the issue, and pleaded guilty.  *Bousley*, 523 U.S. at 616.  The *Bailey* issue was available to Bousley, with pre-existing out-of-circuit precedent supporting his position.  *Id.* ("the Federal Reporters were replete with cases involving challenges"); *Bailey*, 516 U.S. at 142 (collecting cases on Circuit split), *citing, inter alia, United States v. Feliz-Cordero*, 859 F.2d 250, 254 (2d Cir. 1988) (presence of gun in dresser in apartment with drugs, drug proceeds, and paraphernalia *insufficient* to meet §924(c)(1)).  And the only futility was that Bousley's particular court was on the less favorable side of the Circuit split.  *Id.* at 622-23.  Additionally, *Bailey* did not implicate any of the *Ross* categories:  it did not overturn Supreme Court precedent or "longstanding and widespread" "near-unanimous" lower court authority, or disapprove a practice the Supreme Court "arguably ha[d] sanctioned in prior cases."  *See Bailey*, 516 U.S. at 142; *Ross*, 468 U.S. at 17.  With that context, the rationale that Bousley's *Bailey* claim was not novel or futile (just unacceptable in the Eighth Circuit at that time) makes sense.

Here, in contrast, there was no circuit split on the *Johnson* issue.  Supreme Court precedent squarely foreclosed this claim.  And Johnson's counsel did not even press the vagueness issue; the Supreme Court did and ordered briefing on it.  The issue was not merely "unacceptable to [Mr. Umaña's] particular court at that particular time."  *Bousley*, 523 U.S. at 623.  Instead, the issue was unacceptable to *all litigants in all courts* prior to *Johnson*.  *Bousley*'s limitation on cause for default is simply not applicable here.

For similar reasons, the government's citation to *Whiteside v. United States*, 775 F.3d 180 (4th Cir. 2014) (en banc), is unpersuasive.  In *Whiteside*, petitioner filed an untimely §2255 claim

19

to assert a new Circuit Court rule announced in *United States v. Simmons*, 649 F.3d 237 (4th Cir. 2011) (en banc), and sought equitable tolling of the §2255(f) limitations period based on futility of his claim prior to *Simmons*. *Whiteside*, 775 F.3d at 181-82. The Fourth Circuit denied equitable tolling, explaining that the claim was available to Whiteside prior to *Simmons* because the claim was "not entirely meritless even under then-existing precedent," Supreme Court and Circuit Court decisions "strongly foreshadowed [the rule in] *Simmons*," and, contemporaneous to Whiteside's trial and direct review, other defendants and petitioners (including Simmons himself) had raised that same claim. *Id.* at 186. Here, in contrast, no court signaled nor adopted the *Johnson/Davis* rule until the Supreme Court made a "clear break from the past" in *Johnson* by overruling its prior precedent. *See Ross*, 468 U.S. at 16. Again, the *Bousley* limitation, echoed in *Whiteside*, is not applicable here.

In the event this claim is not considered novel under *Ross*, prior counsel at all stages could have no strategic basis for failing to raise a reasonably available claim, provided objectively deficient performance by failing to do so, and thereby prejudiced Mr. Umaña. *Strickland v. Washington*, 466 U.S. 668, 687-95 (1984) (ineffective assistance standard). To the extent the government's arguments that the claim was available to Mr. Umaña have any merit, those arguments also support the contention that prior counsel, in a capital case, should have raised that readily available claim regarding two of Mr. Umaña's four death-eligible counts. If – as the government asserts – this claim was available, counsel could have no reasonable basis for failing to present this substantial issue. Counsel's ineffectiveness thus supplies cause for any alleged default. *Massaro v. United States*, 538 U.S. 500, 504 (2003) (ineffectiveness claim may be raised in §2255 proceedings, regardless whether it could have been raised on direct appeal); *Martinez v.*

20

*Ryan*, 566 U.S. 1, 9, 18 (2012) (ineffectiveness of initial collateral review counsel supplies cause for default of substantial claim of trial counsel ineffectiveness).

To establish prejudice, a petitioner must show "a reasonable probability that, but for [the] errors, the result of the proceeding would have been different." *Lee v. United States*, 137 S. Ct. 1958, 1964 (2017) (internal quotation omitted). Here, Mr. Umaña made the requisite showing. He was prejudiced by the unconstitutional §924(c) counts of conviction, which affected the outcome of his sentencing proceeding. (Doc. 91, at 26-49.)

Moreover, conviction for non-extent crimes under §924(c) amounts to conviction "for an act that the law does not make criminal. There can be no room for doubt that such a circumstance 'inherently results in a complete miscarriage of justice' and 'presents exceptional circumstances' that justify collateral relief under [28 U.S.C.] § 2255." *Davis* v. *United States,* 417 U.S. 333, 346-347 (1974).

Mr. Umaña has filed a well-pleaded *Davis* supplement to his timely-filed *Johnson* claim which is not subject to procedural default; the Government's baseless procedural default arguments are incongruent with its litigation position in other cases; and he is entitled to relief when his material facts are accepted as true and inferences drawn in his favor. That is all that is required at this stage

21

WHEREFORE, for all of the above reasons and those in the prior submissions Mr. Umaña respectfully requests this Court grant his June 23, 2020 Motion to Supplement/Amend his Motion to Vacate in Light of *Davis* (Docs. 90, 91).

Respectfully submitted,

*/s/ Kelly D. Miller*
KELLY D. MILLER
Asst. Federal Public Defender
Federal Public Defender, Middle District of Pennsylvania
100 Chestnut Street, Suite 300
Harrisburg, PA 17101
Tel: 717-782-3843
Fax: 717-782-3966
kelly_miller@fd.org

Dated: November 12, 2020

22

**CERTIFICATE OF SERVICE**

I, Kelly D. Miller, hereby certify that I have electronically filed the foregoing document with the Clerk of Court using the CM/ECF system and a copy of the foregoing document has been served this day upon the following via CM/ECF:

Anthony J. Enright
Assistant United States Attorney
Suite 1650, Carillon Building
227 West Trade Street
Charlotte, NC 28202
anthony.enright@usdoj.gov

*/S/ KELLY D. MILLER*
KELLY D. MILLER
Asst. Federal Public Defender
Federal Public Defender
Middle District of Pennsylvania
100 Chestnut Street, Suite 300
Harrisburg, PA 17101
Tel: 717-782-3843
Fax: 717-782-3966
kelly_miller@fd.org


Dated: November 12, 2020

23