# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### Charlotte Division

ALEJANDRO UMAÑA,

                Movant,

      v.

UNITED STATES,

                Respondent.

3:16-CV-00057-RJC

CAPITAL § 2255 PROCEEDING

HON. ROBERT J. CONRAD, JR.

### MOVANT'S SUPPLEMENT/AMENDMENT IN SUPPORT OF CLAIM 22 (*JOHNSON/DAVIS* CLAIM) OF HIS MOTION TO VACATE UNDER 28 U.S.C. §2255

Movant Alejandro Umaña respectfully submits this supplement/amendment containing citations to supplemental authority in support of Claim 22 of his 2255 Motion (*Johnson/Davis* claim, Civ. Doc. 22/24 at 323, Civ. Doc. 91), including citation to new Supreme Court precedent that guides the *Johnson/Davis* analysis, *Borden v. United States*, 141 S. Ct. 1817 (2021).

The claims and factual allegations set forth in all other sections of all prior submissions and exhibits are incorporated by reference and realleged as if set forth entirely herein.

1. **Supplemental authority demonstrates the Government's procedural default arguments are wrong.**

The Government previously argued that Mr. Umaña had procedurally defaulted his *Johnson/Davis* claim by failing to raise it at trial in 2010 or in direct appeal. Civ. Doc. 101, at 8-10. Mr. Umaña replied that alleged default does not apply because (1) he raised the claim timely (Civ. Doc. 104, at 16); and (2) avenues of cause exist, including novelty/unavailability of the claim under *Reed v. Ross*, 468 U.S. 1 (1984), prior to the *Johnson* and *Davis* decisions. Civ. Doc. 104, at 17-20. The Fourth Circuit has vindicated Mr. Umaña's position in *In re Thomas*, 988 F.3d 783, 788-90 & n.4 (4th Cir. 2021).

As Mr. Umaña previously stated, cause for alleged default exists if a claim "is so novel that its legal basis is not reasonably available to counsel." *Ross*, 468 U.S. at 16; Civ. Doc. 104, at 17-20. A claim is deemed unavailable when it results from a "clear break with the past" in a new Supreme Court case falling into these categories:

> First, a decision of this Court may explicitly overrule one of our precedents. Second, a decision may overturn a longstanding and widespread practice to which this Court has not spoken, but which a near-unanimous body of lower court authority has expressly approved. And, finally, a decision may disapprove a practice this Court arguably has sanctioned in prior cases.

*Ross*, 468 U.S. at 17 (cleaned up, citations omitted). "By definition, when a case falling into one of the first two categories is given retroactive application, there will almost certainly have been no reasonable basis upon which an attorney previously could have urged a state court to adopt the position that this Court has ultimately adopted." *Id.*

The Fourth Circuit, in *Thomas*, held that "*Davis* (1) announced a new rule of constitutional law (2) made retroactive to cases on collateral review (3) by the Supreme Court (4) that was previously unavailable." 988 F.3d at 786-90 & n.4 (citing 28 U.S.C. §2255(h)(2)). The Fourth Circuit held *Davis* was a "new" constitutional rule because it was not dictated by precedent; applied retroactively; and was unavailable prior to the *Davis* decision. *Id.*

Here, at minimum, Mr. Umaña's alleged default is excused under *Ross* due to novelty/prior unavailability of this claim. *Cf. id.* Put simply, if a *Johnson/Davis* claim meets the strict criteria for successor authorization under §2255(h)(2) for a movant who was convicted in 2011, it likewise meets the *Ross* criteria of a new retroactive rule that is a clear break from the past for a movant who was convicted in 2010 and whose conviction became final in 2015 before *Johnson* and *Davis* were decided. *Thomas* has clarified that the Government's default argument is wrong.

2

## 2. Supplemental authority demonstrates the Government's conduct-based approach arguments are wrong.

For both §924(c) counts (Counts 23 and 25), the indictment alleged two predicate offenses as the qualifying "crime of violence": "conspiracy to participate in a racketeering enterprise and murder in aid of racketeering," as set forth in Counts 1, 22, and 24. Third Superseding Indictment (Crim. Doc. 623), at 1-25, 47-53; Civ. Doc. 91, at 3. The jury was not required to select or identify upon which predicate it premised the §924(c) convictions. GPT 1248-1251.[1]

As to both predicates, the Government repeatedly made arguments imploring a conduct-based analysis (Civ. Doc 101[2]), rather than the elements-based categorical approach required by precedent. *Davis* and *Leocal* require the elements-based categorical approach when analyzing the elements clause of 18 U.S.C. §924(c)(3)(A). *United States v. Davis*, 139 S. Ct. 2319, 2327 (2019) (rejecting Government's "newly minted case-specific theory" for analyzing §924(c)(3)(B) residual

---

[1] "GPT" refers to Guilt Phase Transcript, Crim. Doc. 1258, No. 3:08-cr-00134-RJC (W.D.N.C.).

[2] The Government tried to transform the N.C. Gen. Stat. §14-17 VICAR murder into a "knowing[] murder" by citing vague charging language (Civ. Doc. 101, at 2), while ignoring the actual statutes and jury instructions. "Knowing," "knowingly," or "knowledge" are nowhere in 18 U.S.C. §1959 or N.C. Gen. Stat. §14-17. The jury instructions never instructed on federal or generic or "knowing[]" murder, and instead instructed broadly on N.C. Gen. Stat. §14-17 under theories/means of first degree premeditated murder, first degree felony murder, second degree murder, and conspiracy to commit murder. GPT 1235-1238, 1246.

The Government tried to transform Conspiracy under 18 U.S.C. §1962(d) into a non-Conspiracy crime by citing conduct-based overt acts. Civ. Doc. 101, at 2, 17-19.

The Government tried to alter the analysis in §924(c) and definition in §924(c)(3)(A) by citing alleged conduct and conduct-based §924(j) enhancements. Civ. Doc. 101, at 2-4. But conduct is not the question, and analyzing §924(j) puts the cart before the horse. Whether the predicate offense categorically qualified as a crime of violence—that is, whether there was even a §924(c) violation—is the primary question. Section 924(j), after all, requires an answer to the §924(c) question first: (j) applies only when "A person who, *in the course of a violation of subsection (c)*, causes the death of a person…" (emphasis added). Conduct used to answer a sentencing question does not answer that primary question: does the predicate offense categorically require proof as an element of the targeted use of violent physical force.

3

clause); *Leocal v. Ashcroft*, 543 U.S. 1, 7 (2004) (18 U.S.C. § 16's elements clause and residual clause "language requires us to look to the elements and the nature of the offense of conviction, rather than to the particular facts relating to petitioner's crime"). Recent precedent *Borden* underscores the Government's error:

> To decide whether an offense satisfies the elements clause, courts use the categorical approach. Under that by-now-familiar method, applicable in several statutory contexts, the facts of a given case are irrelevant. The focus is instead on whether the elements of the statute of conviction meet the federal standard. Here, that means asking whether a state offense necessarily involves the defendant's "use, attempted use, or threatened use of physical force against the person of another." §924(e)(2)(B)(i). If any—even the least culpable—of the acts criminalized do not entail that kind of force, the statute of conviction does not categorically match the federal standard, and so cannot serve as an ACCA predicate.

*Borden v. United States*, 141 S. Ct. 1817, 1822 (2021) (Kagan, J.) (citations omitted). The Government's conduct-based approach has, once again, been rejected by the Supreme Court.

### 3. Supplemental authority demonstrates RICO conspiracy is not categorically a crime of violence.

As to the predicate offense of RICO conspiracy, recent precedent makes clear: RICO conspiracy, even with the parenthetical sentencing enhancement contained in 18 U.S.C. §1963(a), is not categorically a crime of violence under the §924(c) elements clause. *United States v. Simmons*, 11 F.4th 239, 261 (4th Cir. 2021) (maj. opinion), *id.* at 279 (Richardson, J., concurring); *United States v. Capers*, 20 F.4th 105, 111-12, 118-21 (2d Cir. 2021) ("Even where the substantive crime that is the object of a conspiracy necessarily requires the use of force, a conspiracy to commit it does not.").

### 4. Supplemental authority demonstrates N.C. Gen. Stat. §14-17 VICAR murder is not categorically a crime of violence.

Turning to N.C. Gen. Stat. §14-17 VICAR murder, recent precedent shows this is not categorically a crime of violence under the elements clause.

This Court, in its January 25, 2017 order denying Mr. Umaña's unopposed motion to stay proceedings, analyzed generic murder and murder under N.C. Gen. Stat. §14-17. *Umaña v. United States*, 229 F. Supp. 3d 388 (W.D.N.C. 2017). As to generic murder, this Court stated the offense has two elements: unlawful killing, and malice aforethought. *Id.* at 392-93. This Court reasoned that unlawful killing amounted to (direct or indirect) application of force, and the *Leocal*-required mens rea was supplied by the element of "malice aforethought." *Id.* at 393-94. This Court reasoned that "malice aforethought" can be inferred from one of three "theories"[3]: "'intent to kill,' 'intent to commit a dangerous felony,' and 'reckless and depraved indifference to serious dangers posed to human life.'" *Id.* at 394 (citing *United States v. Marrero*, 743 F.3d 389, 401 (3d Cir. 2014)). And such intent, this Court reasoned, was a higher, more culpable mens rea than criminal negligence or criminal recklessness. *Id.* at 394-95. "Together, the elements of generic murder categorically require the 'use ... of physical force against the person ... of another,' as those terms have been interpreted by the U.S. Supreme Court." *Id.* at 395. That is, death (even if not intended), with malice aforethought (supplied by intent to commit a dangerous felony or reckless depraved indifference) establishes the use of force with the concomitant *Leocal*-required mens rea, this Court reasoned.

So too, this Court continued, with North Carolina murder. "North Carolina law recognizes only one crime of murder — an unlawful killing of another with malice aforethought, express or

---

[3] This Court was precise in defining these as theories (or means of committing one offense) as opposed to elements (of different offenses): "The definition of generic murder adopted by the Third Circuit does not change the elements of common law murder; it identifies theories that supply the mens rea for 'malice aforethought.'" *Umaña*, 229 F. Supp. 3d at 393 (citing *Schad v. Arizona*, 501 U.S. 624, 648 (1991) (Scalia, J., concurring in part and concurring in judgment) (noting that different theories can supply the mens rea of "malice aforethought," including "an intention to kill or grievously injure, knowledge that an act or omission would probably cause death or grievous injury, an intention to commit a felony, or an intention to resist lawful arrest")).

implied."[4]  *Id.* at 395 (citing *State v. Hunt*, 582 S.E.2d 593, 597 (N.C. 2003)).  Honing in on first

degree felony murder, this Court stated, "the malice element is satisfied by the intent to commit

the unlawful felony.  Thus, 'malice aforethought' for a first-degree murder conviction requires the

State to prove that [either] the defendant had a specific intent to kill the victim, an actual intent to

poison, imprison, starve, torture, or lie in wait for the victim, *or an actual intent to commit the*

*underlying felony, during the course of which an unlawful killing occurred.*"  *Id.* at 396 (emphasis

added) (citing *State v. Jones*, 538 S.E.2d 917, 923-25 (N.C. 2000)).  Once again, death (even if

unintended and entirely accidental[5]), with an implied mens rea of malice aforethought supplied by

intent to commit a felony, satisfies use of force with the concomitant *Leocal*-required mens rea,

this Court reasoned.  *Id.* at 396-97.

---

[4] North Carolina murder is an indivisible crime listing various theories (means).  North Carolina first degree murder is one crime, regardless which theory (means) the prosecution pursues: "Premeditation and deliberation is a theory by which one may be convicted of first degree murder; felony murder is another such theory.  Criminal defendants are not convicted or acquitted of theories; they are convicted or acquitted of crimes."  *State v. Thomas*, 386 S.E.2d 555, 560-61 (N.C. 1989) (citations omitted) (holding on remand defendant may be tried and convicted of "first degree murder on all theories and on all lesser homicides which may be included under any theory and supported by the evidence").  "A murder indictment in the [general, short] form prescribed by N.C.G.S. § 15-144 will support a verdict finding the defendant guilty of first degree murder upon any of the theories set forth in N.C.G.S. § 14-17."  *State v. Clark*, 386 S.E.2d 191, 194 (N.C. 1989), *citing State v. Bush*, 221 S.E.2d 333 (N.C. 1976), *death sentence vacated*, 429 U.S. 809 (1976). "The State is not required at any time to elect a theory upon which it will proceed against the defendant on the charge of first degree murder, and it is proper for the trial court to submit the issue of the defendant's guilt of that charge to the jury on each of the theories of first degree murder supported by substantial evidence presented at trial."  *Id.*, *citing State v. Strickland*, 298 S.E.2d 645 (N.C. 1983).  The prosecution is not even required to decide under which theory or means it plans to establish first-degree murder:  it need not plead the theory or means in the indictment, nor inform defense counsel in a bill of particulars.  *State v. Garcia*, 597 S.E.2d 724, 732 (N.C. 2004).

[5] *State v. York,* 489 S.E.2d 380, 390 (N.C. 1997); *State v. Richardson*, 462 S.E.2d 492, 498 (N.C. 1995); *State v. Yarborough*, 679 S.E.2d 397, 407-08 (N.C. App. 2009), *cert. denied*, 693 S.E.2d 143 (N.C. 2010).

6

All other means of commission "with malice aforethought" "'remain[] murder as at common law, but [are] classified by [§ 14-17] as murder in the second degree[.]'" *Id.* at 396 (citing *State v. Hunt*, 582 S.E.2d 593, 597 (N.C. 2003), *State v. Davis*, 290 S.E.2d 574, 588 (N.C. 1982)). "'[M]alice aforethought' may be proved by the intentional performance of an inherently dangerous act 'in such a reckless manner as to reflect knowledge that injury or death would likely result.'" *Id.* at 396-97 (citing *State v. Rich*, 527 S.E.2d 299, 304 (N.C. 2000)). Death, with non-accidental commission of an inherently dangerous act, satisfies use of force with the concomitant *Leocal*-required mens rea, this Court reasoned. *Id.* at 396-97.

*Borden*, however, has clarified that this Court's 2017 analysis demonstrates the offense is *not* a crime of violence. If an offense has an implied mental state disembodied from the application of the force, then the offense is not categorically a crime of violence under *Borden*.

The *Borden* plurality held the ACCA elements clause ("has as an element the use … of physical force against the person of another," §924(e)(2)(B)(i)) "expresses a kind of directedness or targeting," because "[t]he phrase 'against another,' when modifying the 'use of force,' demands that the perpetrator direct his action at, or target, another individual." *Borden*, 141 S. Ct. at 1825-26. The clause requires that the state crime have an element requiring that the defendant targeted or directed his force specifically at the victim. *Id.*; *see id.* at 1827 ("[B]ecause his conduct is not opposed to or directed at another—he does not come within the elements clause. He has not used force 'against' another person in the targeted way that clause requires."); *see id.* at 1829 ("The very question here is whether the statutory language Congress enacted requires that force be directed at, rather than just happen to hit, an object."). Justice Thomas concurred, applying slightly different reasoning that the phrase "use of physical force" "has a well-understood meaning applying only to *intentional* acts *designed* to cause harm." *Id.* at 1835 (Thomas, J., concurring in judgment) (citation omitted; emphasis added). Accordingly, under the rationales of the *Borden*

7

plurality and concurrence, the state crime must require as an element that the defendant directed or targeted the violent force at (or "against") the victim. Otherwise, it is not categorically a violent felony under the elements clause.

As *Borden* clarifies, an implied mens rea of malice aforethought—which does not require targeting the violent force specifically at the victim—does not satisfy the elements clause. That's not just Mr. Umaña's understanding of the holding in *Borden*; it is the *Borden* dissenters' and the Government's understanding of it too.

The four-member *Borden* dissent acknowledged that "[u]nder the Court's decision, even second-degree murder and some forms of manslaughter may be excluded from ACCA. That is because, in many States, some forms of second-degree murder and manslaughter do not require intent or knowledge." *Borden*, 141 S. Ct. at 1856 (Kavanaugh, J., dissenting).

The Government has conceded, in a different case, that the reasoning this Court articulated in its January 25, 2017 analysis means the offense is not categorically a crime of violence under *Borden*. In *United States v. King*, the Government acknowledged that identical reasoning regarding an implied mental state, articulated by the Eighth Circuit prior to *Borden*, demonstrated that the offense was not categorically a crime of violence after *Borden*. The Government explained:

> In his concurrence to the denial of Ross's and King's petition for rehearing the original panel opinion, Judge Colloton summarized how kidnapping resulting in death could be understood to satisfy the force clause:
>
>> Because a kidnapper must act intentionally, the kidnapping must cause a death, and death cannot be caused without applying force, it follows that the use of force is an element of kidnapping resulting in death. No paradigm shift by the Supreme Court is necessary to avoid a "nonsensical" or "absurd" result in this case. The imaginative hypotheticals propounded on behalf of the appellants overlook that when a perpetrator commits an intentional kidnapping, ***a culpable scienter with respect to the deadly consequences is supplied by the law based on the underlying felony***, and causing death through the indirect application of force counts as "use" the

8

same as applying force directly. **As with an offender who commits felony murder, a defendant convicted of kidnapping resulting in death does not cause the death innocently or by accident in the eyes of the law.**

*United States v. Ross*, 977 F.3d 1295, 1296 (8th Cir. 2020) (Colloton, J., concurring in denial of rehearing en banc) (emphasis added). Despite the persuasiveness of this argument, **after *Borden* the Government now respectfully submits that any mens rea imputed by law onto the underlying felony does not satisfy the force clause**.

United States Suppl. Brief, at 11, *United States v. King & Ross*, Nos. 18-2800, 18-2877 (8th Cir.), filed 3/30/2022 (CM/ECF Entry ID 5142173) (*italics in Government's original*; **bold supplied by Umaña**). That is, mens rea for the killing, when "supplied by the law based on the underlying felony," does not satisfy the elements clause after *Borden*. *Id.*

The crux of *Borden*—the Government said—was that an implied mental state will not satisfy the elements clause's mens rea:

> While *Borden* does not resolve what level of mental culpability will satisfy the force clause, the plurality opinion's understanding of the force clause's requirement of the "use of physical force against the person of another," clarifies that an implied mental state will not suffice.
>
> The plurality begins with the parties' agreement that the requisite use of force must be "volitional" or "active." *Borden*, 141 S. Ct. at 1825 (citing *Voisine v. United States*, 579 U.S. 686, ---, 136 S. Ct. 2272, 2279-81 (2016)); *see also Leocal*, 543 U.S. at 9 (holding that "'use' requires active employment"). From there, the plurality concludes that the term "against" means that the active use of force must be in some manner directed toward the person the force is used against. *Id*. at 1826. That requirement of directedness leads the plurality to conclude that reckless conduct does not satisfy the force clause because such conduct need not be "opposed to or directed at" anyone. *Id*. at 1827.
>
> It is the same requirement of directedness that forecloses the reliance here on a legally implied mental state.

*Id.* at 16-17.

"Malice aforethought" implied by commission of a felony does not satisfy the *Borden* requirement of active, volitional force directed against or targeted at the victim. *See id.*; *Borden*,

9

141 S. Ct. at 1825-27.  Because commission of a felony is one theory (or indivisible means[6]) of committing generic murder and North Carolina murder, these offenses do not categorically satisfy the §924(c)(3)(A) elements clause, as clarified by *Borden*.

Similarly, for North Carolina second degree murder, malice aforethought may be proven by intentional, non-accidental performance of an inherently dangerous act "'in such a reckless manner as to reflect knowledge that injury or death would likely result.'"  *Umaña*, 229 F. Supp. 3d at 396-97.  Thus, it too does not satisfy the *Borden* requirement of active, volitional force directed against or targeted at the victim.  *Borden*, 141 S. Ct. at 1825-27.

However, second degree murder can also be proven with a less culpable mens rea, which also does not satisfy the elements clause under *Borden*.  Second degree murder can be proven by reckless conduct that results in death.  *State v. Snyder*, 317 S.E.2d 394, 395-96 (N.C. 1984) (evidence "was sufficient to support a finding that the defendant's acts evidenced recklessness of consequences and 'total disregard for human life'" malice necessary for second degree murder, even "'though there may be no intention to injure a particular person'" (citations omitted)).  A second degree murder conviction will be affirmed, even if jurors found only the mental state of "recklessness of consequence."  *State v. Rich*, 527 S.E.2d 299, 302-03, 306-07 (N.C. 2000).  It also may be proven by "culpable negligence" that is "accompanied by 'an act which imports danger to another [and] is done so recklessly or wantonly as to manifest depravity of mind and disregard of human life.'"  *Id.* at 304 (quoting *State v. Trott*, 130 S.E. 627, 629 (N.C. 1925)); *see also State v. Mapp*, 264 S.E.2d 348, 355 (N.C. Ct. App. 1980) (second-degree murder conviction can be based on "culpable negligence evidencing malice"); *State v. Roop*, 122 S.E.2d 363, 365 (N.C. 1961) ("Culpable negligence, from which death proximately ensues, makes the actor guilty

---

[6] *See*, *supra*, footnotes 3 and 4.

of manslaughter, and under some circumstances guilty of murder"). Culpable negligence is shown by "wilful, wanton, or intentional" "violation of a safety statute which results in injury or death," even if the injury or death is unintended. *Roop*, 122 S.E.2d at 365. Culpable negligence is also shown if the defendant *inadvertently or unintentionally* violated a safety statute with "recklessness of probable consequences of a dangerous nature, when tested by the rule of reasonable prevision, amounting altogether to a thoughtless disregard of consequences or of a heedless indifference to the safety of others." *Id*. Second degree murder is even satisfied when defendant, while drunk, told a second intoxicated person to take the wheel of the car and "get away," and the driver then drove "in breach of three separate statutes … and with reckless disregard of the public safety," and killed a person in a traffic collision. *Trott*, 130 S.E. at 629. Second degree murder by drug distribution may also be proven through intentional sale with unintended death: "a wrongful act intentionally done without just cause or excuse demonstrating a willful disregard of the rights of others." *State v. Liner*, 391 S.E.2d 820, 822-23 (N.C. Ct. App. 1990) (cleaned up); *see also State v. Parlee*, 703 S.E.2d 866, 868-70 (N.C. Ct. App. 2011); *State v. Barnes*, 741 S.E.2d 457, 465-66 (N.C. Ct. App. 2013). *Borden* clarifies that all these examples mean §14-17 is not categorically a crime of violence.

While second degree murder may require volitional, non-accidental action; it does not require active, volitional force directed against or targeted at the victim. Thus, under *Borden*, it is not categorically a crime of violence. *Borden*, 141 S. Ct. at 1856 (Kavanaugh, J., dissenting) ("Under [*Borden*], even second-degree murder and some forms of manslaughter may be excluded from ACCA.").

Even if viewed through the lens of VICAR (and Mr. Umaña reiterates his position that is not the right approach (*cf.* Civ. Doc. 104, at 13)), the offense is not categorically a crime of violence. This Court did not instruct the jury on the definition or elements of generic murder, only

11

the definition and elements of N.C. Gen. Stat. §14-17 under theories/means of first degree premeditated murder, first degree felony murder, second degree murder, and conspiracy to commit murder.[7]  GPT 1235-1238, 1246.  Additionally, committing felony murder or reckless murder, or committing a voluntary act that results in death (§14-17 theories of murder)—even if done with the purpose of maintaining or increasing one's position in the enterprise—is not categorically a crime of violence.  A defendant can intend to do one risky but non-violent thing for the gang, and as a result accidentally, negligently, or recklessly injure, kill, or apply force to someone.  Intent to commit a felony (such as burglary) or intentionally committing an act (such as drive drunk)—even if done for the purpose of maintaining or increasing one's position in the enterprise (for example, burglarizing a rival's stash house for the enterprise, or chauffeuring gang members while intoxicated for the enterprise)—still does not supply the *Borden*-required volitional force directed against or targeted at the victim.  N.C. Gen. Stat. §14-17, even if viewed through the lens of VICAR, does not categorically qualify as a crime of violence under *Borden*.

Moreover, *Borden* reinforces the arguments Mr. Umaña made that reckless offenses, including homicide with a mens rea of extreme recklessness, do not categorically satisfy the elements clause.  Civ. Doc. 22/24, at 338-39; Civ. Doc. 91, at 8, 22-24.

Accordingly, *Borden* clarifies that N.C. Gen. Stat. §14-17 VICAR murder is not categorically a crime of violence.  *Borden* demonstrates—as the Government agreed in *King*— that the implied mental states this Court analyzed in its January 25, 2017 order mean Mr. Umaña's offense does not categorically qualify as a crime of violence under the elements clause.  *Borden* also demonstrates Mr. Umaña's other arguments were correct.  N.C. Gen. Stat. §14-17 VICAR

---

[7] Conspiracy, even to commit murder, is not categorically a crime of violence.  *Capers*, 20 F.4th at 121 ("Even where the substantive crime that is the object of a conspiracy necessarily requires the use of force, a conspiracy to commit it does not.").

murder does not categorically require what the elements clause does: volitional force directed against or targeted at a victim.

## CONCLUSION

WHEREFORE, based upon the foregoing and all proceedings and submissions, Movant, Alejandro Umaña, respectfully requests that the Court grant him the following relief:

A) That Movant be granted such discovery as is necessary for full and fair resolution of the claims contained in his 2255 Motion, as supplemented and amended;

B) That leave to supplement and amend be granted;

C) That an evidentiary hearing be conducted on all claims involving disputed issues of fact;

D) That Respondents be Ordered to respond to the 2255 Motion, as supplemented and amended; and

E) That Movant's convictions and sentences be vacated.

Respectfully submitted,

*/s/ Kelly D. Miller*
KELLY D. MILLER
Asst. Federal Public Defender
Federal Public Defender Office
Middle District of Pennsylvania
100 Chestnut Street, Suite 300
Harrisburg, PA 17101
Tel: 717-782-3843
Fax: 717-782-3966
kelly_miller@fd.org

Dated: June 9, 2022

13

I, Kelly D. Miller, hereby certify that I have electronically filed the foregoing document with the Clerk of Court using the CM/ECF system and a copy of the foregoing document has been served this day upon the following via CM/ECF:

Anthony J. Enright
Assistant United States Attorney
Suite 1650, Carillon Building
227 West Trade Street
Charlotte, NC 28202
anthony.enright@usdoj.gov

*/S/ KELLY D. MILLER*
KELLY D. MILLER
Asst. Federal Public Defender
Federal Public Defender Office
Middle District of Pennsylvania
100 Chestnut Street, Suite 300
Harrisburg, PA 17101
Tel: 717-782-3843
Fax: 717-782-3966
kelly_miller@fd.org

Dated: June 9, 2022

14