# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### CIVIL NO. 3:16CV57

| | |
|---|---|
| ALEJANDRO RAMIREZ UMAÑA, | ) |
| | ) |
| Movant, | ) |
| | ) |
| vs. | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |
| _____ | ) |

## RESPONSE OF THE UNITED STATES TO
## <u>UMAÑA'S JUNE 9, 2022, MOTION FOR LEAVE TO AMEND CLAIM 22</u>

# TABLE OF CONTENTS

TABLE OF CONTENTS ......................................................................................II

    A.    **Amendment of claim 22 would remain futile because this Court has already rejected the basis for Umaña's claim.** ...............................................................................2

    B.    **Amendment would be futile because Umaña's procedural default continues to bar his claim.**..........................2

    C.    **Amendment would be futile because Umaña's amended claim fails as a matter of law**..........................................3

        1.    This Court correctly held that Umaña's offenses of murder in aid of racketeering continue to qualify as "crimes of violence" supporting his convictions on counts 23 and 25. ....................................4

        2.    Umaña's theory about his racketeering-conspiracy offense does not eliminate the futility of his proposed amendment. .........................................12

CONCLUSION .................................................................................................12

The United States respectfully requests that this Court deny Alejandro Ramirez Umaña's June 9, 2022, motion for leave to amend claim 22 of his 2016 motion under 28 U.S.C. § 2255 — his second motion for leave to amend that claim. That claim challenges Umaña's convictions in counts 23 and 25 under 18 U.S.C. § 924(c) & (j) for causing the death of another through possession of a firearm in furtherance of a "crime of violence." *Response to Umaña's June 23, 2020, Mot. for Leave to Amend Claim 22*, Oct. 5, 2020 (Doc. No. 101, 3:16CV57) (hereinafter "*Oct. 2020 Response*"), at 1–2. Each count is predicated on two crimes of violence: conspiracy to participate in a racketeering enterprise, and murder in aid of racketeering. *Exh. 1*, at 365, 367.[1] Umaña contends that neither of these predicates qualifies as a "crime of violence." *Umaña's June 2022 Mem. ISO Amendment* (Doc. No. 110, 3:16cv57). The United States opposed Umaña's first motion to do so "because amendment would be futile." *Oct. 2020 Response 3*.

This Court should reject Umaña's latest effort to amend claim 22 because amendment of that claim would remain futile. Umaña offers no good reason for this court to reconsider its January 2017 ruling that murder in aid of racketeering qualifies as a crime of violence. Umaña's procedural default continues to bar his claim. And recent precedent confirms that his challenge to counts 23 and 25 fails as a matter of law.[2]

---

[1] "*Exh. 1*" refers to Exhibit 1 to the United States' March 2017 response (Doc. No. 50, attachments 1–14 & Doc. No. 51.) That exhibit consists of the Joint Appendix that Umaña filed in the Fourth Circuit during his direct appeal.

[2] This response does not purport to identify all the bases for rejecting Umaña's claims.

**A.      Amendment of claim 22 would remain futile because this Court has already rejected the basis for Umaña's claim.**

First, amendment would continue to be futile because this Court has already rejected the basis of his claim — that invalidity of the residual clause of 18 U.S.C. § 924(c) and (j) entitles him to relief.  *See Oct. 2020 Response* 7–8.  This Court correctly held in its January 25, 2017, order that "Umaña's murder in aid of racketeering convictions constitute crimes of violence under the force clause of § 924(c)."  *Umaña v. United States*, 229 F. Supp. 3d 388, 397 (W.D.N.C. 2017).  And recent Fourth Circuit precedent confirms that this holding is dispositive of his challenges to his § 924(c) & (j) convictions.  *See United States v. Jackson*, 32 F.4th 278, 284 (4th Cir. 2022) (holding that such convictions remain valid if one of multiple alleged predicates remains a "crime of violence").  None of Umaña's motions to amend identify any good reason for this Court to reconsider its January 2017 holding.

**B.      Amendment would be futile because Umaña's procedural default continues to bar his claim.**

Amendment would also be futile because Umaña'a procedural default continues to bar his claim on collateral review.  *October 2020 Response* 8–9.   The decision on which Umaña relies, *In re Thomas*, does not assist Umaña's effort to overcome his procedural default.  988 F.3d 783, 788 (4th Cir. 2021).  *Thomas* held

---

This Court has not yet asked the United States to respond to Umaña's 2255 motion, in original or amended form, and the United States reserves the right to assert any defense or argument or oppose Umaña's 2255 motion on any ground at the appropriate time.

2

that the Supreme Court's decision invalidating the residual clause of § 924(c), *United States v. Davis*, 139 S. Ct. 2319 (2019), announced the kind of new retroactive rule that satisfies the gatekeeping statute for successive 2255 motions, 28 U.S.C. § 2255(h)(2). *Thomas*, 988 F.3d at 788. The decision did not address procedural default at all, let alone hold that the *Davis* decision possessed the kind of "novelty," *Proposed Amendment* (Doc. No. 111), at 2, that can supply cause for overcoming a procedural default. *Thomas*, 988 F.3d 783, 788. "Novelty" means that "the legal tools, *i.e.*, case law, necessary to *conceive and argue* the claim were not yet in existence and available to counsel" at the "time of" the "default." *Poyner v. Murray*, 964 F.2d 1404, 1424 (4th Cir. 1992) (emphasis added). Those tools were well available to Umaña during his criminal case.

C. **Amendment would be futile because Umaña's amended claim fails as a matter of law.**

Finally, amendment would be futile because Umaña's amended claim fails as a matter of law. Offenses that meet the requirements of the "force clause" of section 924(c) continue to qualify as "crimes of violence" after *Davis*. *United States v. Mathis*, 932 F.3d 242, 263–66 (4th Cir. 2019). And a conviction under § 924(c) & (j) remains valid if any one of multiple alleged predicates continues to qualify as a "crime of violence." *Jackson*, 32 F.4th at 284. This Court correctly held that Umaña's convictions under 18 U.S.C. § 1959(a)(1) for murder in aid of racketeering, also known as "VICAR murder," which serve as predicates for both of the convictions Umaña challenges, qualify as a "crimes of violence" under the

3

"force clause" of 18 U.S.C. § 924(c).  *Umaña*, 229 F. Supp. 3d at 392.  The violent-crime status of those convictions renders Umaña's amendment futile, regardless of whether Umaña's racketeering-conspiracy offense also qualifies as a crime of violence.  *Jackson*, 32 F.4th at 284.

### 1. This Court correctly held that Umaña's offenses of murder in aid of racketeering continue to qualify as "crimes of violence" supporting his convictions on counts 23 and 25.

As the United States argued previously, *Oct. 2020 Response* 11–17, this Court correctly held that Umaña's convictions under 18 U.S.C. § 1959(a)(1) for murder in aid of racketeering, also known as "VICAR murder," categorically qualify as a "crimes of violence" under the "force clause" of 18 U.S.C. § 924(c). *Umaña*, 229 F. Supp. 3d at 392.[3]  Umaña's section 1959(a)(1) offenses required proof that, among other things, Umaña committed "murder" *and* that his conduct was "in violation of the laws of any State."  18 U.S.C. § 1959(a)(1).  As this Court recognized, the state law Umaña was alleged and found to have violated appears at N.C. Gen. Stat. § 14–17.  Section 1959(a)(1) requires proof that the defendant's conduct meets the definition of "one of the enumerated federal offenses *as well as* the charged state crime."  *United States v. Keene*, 955 F.3d 391, 393 (4th Cir. 2020) (emphasis added).  Because the offense must meet both requirements, if either the federal definition of murder or the "charged state crime," *id.*,

---

[3] Umana's suggestion that the United States "implore[ed]" this Court not to apply "the elements-based categorical approach," *Proposed Supplement* 3, mischaracterizes the United States' response to his previous effort to amend Claim 22. *Oct. 2020 Response* 11–17 (arguing that murder-in-aid-of-racketeering "categorically qualifies as a 'crime of violence.'").

4

"substantially corresponds" to or "is narrower than" the requirements of the force clause, then the offense categorically qualifies as a "crime of violence." *Quarles v. United States*, 139 S. Ct. 1872, 1877 (2019). This Court held that both the federal definition of "murder" and the charged state crime, murder under N.C. Gen. Stat. § 14–17, require the use, attempted use, or threatened use of physical force against the person of another. *Umaña*, 229 F. Supp. 3d at 394, 397. Recent precedent only confirms that this Court's holding is correct. *Oct. 2020 Response* 11–17.

### a. The federal definition of murder qualifies Umaña's offense as a crime of violence.

Umaña's "VICAR" murder offense has as an element the "commission" of the "enumerated federal offense" of murder, *Keene*, 955 F.3d 391, 394, and that element satisfies the requirements of the force clause. A statute defines "[m]urder" under federal law as "the unlawful killing of a human being with malice aforethought." 18 U.S.C. § 1111. It defines "four types of first-degree murder," *Jackson*, 32 F.4th at 284–85, and it explains that "[a]ny other murder is murder in the second degree," 18 U.S.C. § 1111. The Fourth Circuit recently held that the federal murder statute is "divisible," *Jackson*, 32 F.4th at 286, which means that it "lists potential offense *elements* in the alternative, and thus includes multiple alternative versions of the crime." *United States v. Roof*, 10 F.4th 398–99 (4th Cir. 2021). This Court discussed the "generic" definition of murder using the same basic elements, *Umaña*, 229 F. Supp. 3d at 392–93. And

Umaña does not identify anything that suggests the generic definition differs from the federal statutory definition of murder in any way material to his argument.

Although different versions of the federal crime of murder exist, *Jackson*, 32 F.4th at 286, the record makes clear that Umaña committed a version that qualifies as a crime of violence. The Fourth Circuit has held that "federal premeditated first-degree murder is a 'crime of violence'" under § 924(c) & (j). *Jackson*, 32 F.4th at 284–85. And through its "verdict sheet" at the guilt phase, *id.*, the jury found that Umaña's agreement with his fellow racketeering-enterprise members included "the willful, deliberate and premeditated murder of" both "Ruben Garcia Salinas" and "Manuel Garcia Salinas." *Exh. 1*, at 2556. Moreover, even if it were "impossible to know from the record which predicate" murder offense "the jury had in mind when it convicted" *Umaña*, he would remain unable to prevail on his claim. *United States v. Said*, 26 F.4th 653, 661 (4th Cir. 2022).

To "meet his burden" on a challenge to a § 924(c) conviction on collateral review, Umaña "must show 'more than a reasonable possibility' that the jury *only* found him guilty" of § 924(c) based on an offense that does not qualify as a crime of violence. *Id.* at 662. He cannot meet this burden, because "evidence of 'overwhelming weight'" before the jury, *id.*, established that Umaña murdered Ruben and Manuel Garcia with premeditation. *Jackson*, 32 F.4th at 286 ("To be guilty of premeditated murder, the Government must prove a person intended to

6

kill the victim."). And, "[u]ndoubtedly, federal premeditated first-degree murder is a 'crime of violence.'" *Id.* at 287.

Umaña's renewed argument about the felony-murder rule, *Proposed Amendment* (Doc. No. 111), at 108–10, does not assist him. Umaña cannot come close to establishing a "more than reasonable possibility" that the jury "*only* found him guilty" of his § 924(c) offense based on a felony-murder predicate. *Said*, 26 F.4th at 662.

Also misplaced is Umaña's argument that "second degree murder can" be proved with a "mens rea that does not satisfy the elements clause." *Proposed Amendment* (Doc. No. 111), at 10–12. This argument fails at the outset because the predicates for Umaña's section 924(c) offenses were not limited to *second degree* murder. *Exh. 1* at 2556. And, again, in the light of the jury's other findings and the overwhelming evidence "that Umaña personally pulled out a gun in the Las Jarochitas family restaurant, pointed it at Ruben and Manuel Garcia Salinas, stood still for a minute, and then shot each of the two brothers to death," *Oct. 2020 Response* 3, Umaña cannot establish that the jury only found him guilty based on a second-degree murder predicate. *Said*, 26 F.4th at 662. But Umaña's argument about second-degree murder also fails for a second reason.

"[S]econd-degree murder" under the federal murder statute, "§ 1111(a)" categorically qualifies as a crime of violence under the force clause of § 924(c). *United States v. Begay*, 33 F.4th 1081, 1093 (9th Cir. 2022) (en banc). Second-

7

degree murder's requirement of "malice aforethought" is not satisfied by "simple recklessness." *Id.* at 1093. As this Court instructed the jury, it requires, at a minimum, "callous and wanton *disregard for human life.*" *Exh. 1*, at 2487; *Begay*, 33 F.4th 1081. The depraved-heart or depraved-indifference recklessness that murder requires is a "highly culpable mental state" that makes a homicide "equivalent to purposeful and knowing killing." *Tison v. Arizona*, 481 U.S. 137, 157 (1987) (quoting George Fletcher, Rethinking Criminal Law § 6.5, at 447–48 (1978)).

Unlike ordinary recklessness, which does not require that a "perpetrator direct his action at" another individual, *United States v. Borden*, 141 S. Ct. 1817, 1824–25 (2021) (plurality opinion), the heightened recklessness of malice aforethought requires a "purpose of wantonly and intentionally putting the lives of others in danger," *United States v. Fleming*, 739 F.2d 945, 948 (4th Cir. 1984). The perpetrator of murder with depraved-indifference recklessness has targeted someone with a "very high" risk of death or serious injury, 2 Wayne R. LaFave, *Substantive Criminal Law* § 14.4(a) (3d ed.), a risk of which the perpetrator must be "aware," *United States v. Williams*, 342 F.3d 350, 356 (4th Cir. 2003). When a person *murders* someone, conscious of that very high risk, he is properly said to have used "physical force against the person . . . of another." 18 U.S.C. § 924(c)(3)(A); *Begay*, 33 F.4th at 1093; *United States v. Baez-Martinez*, 950 F.3d 119, 125 (1st Cir. 2020); *Oct. 2020 Response* 15–16.

The Supreme Court's decision in *Borden*, which held that a crime that can

8

be committed through mere recklessness does not meet the requirements of the force clause, 141 S. Ct. at 1834 (plurality opinion); *id.* at 1835 (Thomas, J., concurring), does not help Umaña. *Begay*, 33 F.4th 1081. This Court anticipated that holding when it rejected Umaña's argument in 2017 because of the "difference between mere recklessness and malice." *Umaña*, 229 F. Supp. 3d at 394. *Borden* explicitly declined to consider or address whether "depraved heart" recklessness satisfies the requirements of the force clause. 141 S. Ct. at 1825 n.4 (plurality opinion). And although *Borden* produced several opinions, eight justices notably agreed that "murder" is one of the "quintessential violent crimes." *Id.* at 1830 (plurality opinion); *id.* at 1854 (Kavanaugh, J., dissenting).

*Borden* did not "construe the force clause to render it inapplicable to murder 'in many states.'" *Oct. 2020 Response* 16 (quoting *Stokeling v. United States*, 139 S. Ct. 544, 552 (2019)); *Begay*, 33 F.4th 1081. And this Court should reject Umaña's request that this Court do so.

> **b.** **North Carolina's definition of murder also qualifies Umaña's offense as a crime of violence.**

Umaña's "charged state crime" under the "VICAR" statute, murder under N.C. Gen. Stat. § 14-17, *Keene*, 955 F.3d at 393, independently establishes that Umaña's murder-in-aid-of-racketeering offenses qualify as "crimes of violence." *Oct. 2020 Mot.* 11–17. That statute punishes "[m]urder in the first and second degree." N.C. Gen. Stat. § 14-17. The Fourth Circuit has held that North Carolina second-degree murder meets the requirements of the force clause.

9

*United States v. Parrish*, 767 F. App'x 440, 442–43 (4th Cir. 2019) (unpublished decision); *United States v. Bell*, 704 F. App'x 297, 298 (4th Cir. 2017) (unpublished decision); *United States v. Lee*, 697 F. App'x 175, 176 (4th Cir. 2017) (unpublished decision). And "second-degree murder" is a "lesser included offense" of "first-degree murder." *State v. Jones*, 353 N.C. 159, 928 (2000).

The felony-murder rule does not disqualify Umaña's murder offense under N.C. Gen. Stat. § 14-17, as a "crime of violence" because Umaña cannot establish that the jury found him guilty of his § 924(c) & (j) offenses based only on felony murder, *Said*, 26 F.4th at 662. *Cf. Proposed Amendment* 8–10. Like the federal murder statute, N.C. Gen. Stat. § 14-17 is a divisible statute that sets out several "types of criminal conduct that qualify as first-degree murder," including "premeditated killings" and "killings that occur during specifically enumerated felonies." *State v. Jones*, 538 S.E.2d 917, 923–24 (N.C. 2000). The statute is divisible because the North Carolina Supreme Court has held that these alternatives are alternative "essential element[s]." *Id.*; *Mathis v. United States*, 579 U.S. 500, 505 (2016) (divisible statute is one that lists "elements in the alternative"). A "specific intent to kill is an *essential element*" of first-degree murder with "deliberation and premeditation." *Jones*, 538 S.E.2d at 923–24 (emphasis added). "[I]ntent to kill is *not*," on the other hand, "an essential element of first-degree murder under the felony murder rule." *State v. Mann*, 560 S.E.2d 776, 311 (N.C. 2002) (emphasis added & ellipses omitted). But the "elements" of a specified "underlying offense" *are* elements of "felony murder."

10

*Id.* at 305, 311. First- and second- degree murder also have different elements both on their face and because they "carry different punishments," *Mathis*, 579 U.S. at 518. N.C. Gen. Stat. § 14-17(a), (b).

The record makes clear that the jury did not find Umaña guilty of his § 924(c) & (j) offenses predicated on felony murder, let alone felony murder *only*. The jury explicitly found that Umaña killed Ruben and Manuel Garcia with "malice aforethought," *Exh. 1* at 2557, an element of both second-degree murder and first-degree premeditated murder, *State v. Fleming*, 251 S.E.2d 430, 432 (N.C. 1979), but "not an element of felony murder," *State v. Frazier*, 790 S.E.2d 312, 317–18 (N.C. Ct. App. 2016).[4] Beyond malice, the jury explicitly found that Umaña's agreement with his fellow racketeering-enterprise members included "the willful, deliberate and premeditated murder of" both "Ruben Garcia Salinas" and "Manuel Garcia Salinas." *Exh. 1*, at 2556. Umaña cannot come close to meeting his burden to establish that the jury found him guilty under § 924(c) & (j) based only on a felony-murder predicate. *Said*, 26 F.4th at 662.

Umaña's arguments about second-degree murder are no stronger against Umaña's state-law offense than they are against the federal definition of murder. *See* § C.1.a, *supra*. First, the verdict sheet explicitly found that Umaña agreed to the "premeditated murder" of both of his victims, *Exh.* 1, at 2556, and Umaña cannot establish that the jury relied only on second-degree murder. *See* § C.1.a,

---

[4] "[T]here is . . . no offense of second-degree felony murder in" North Carolina. *Frazier*, 790 S.E.2d at 258.

11

*supra*.  Second, like its federal counterpart, second-degree murder under North Carolina law qualifies as a crime of violence under the force clause.  *Parrish*, 767 F. App'x at 442–43; *Bell*, 704 F. App'x at 298; *Lee*, 697 F. App'x at 176.  The heightened form of recklessness that second-degree murder requires — an "inherently dangerous act 'done in such a reckless and wanton manner as to manifest a mind utterly without regard for human life and social duty and deliberately bent on mischief,'" *State v. Arrington*, 819 S.E.2d 329, 332 (N.C. 2018) — continues to satisfy the requirements of the force clause after *Borden*. *See* § C.1.a, *supra*.

### 2. Umaña's theory about his racketeering-conspiracy offense does not eliminate the futility of his proposed amendment.

The Fourth Circuit's holding in *United States v. Simmons* that "an aggravated RICO conspiracy is not categorically a crime of violence," 11 F.4th 239, 260 (4th Cir. 2021), does not add merit to Umaña's challenge to his § 924(c) & (j) convictions.  *Cf. Proposed Supplement* 4 (Doc. No. 111).  A § 924(c) & (j) conviction remains valid if any of its predicates qualifies as a crime of violence. *Jackson*, 32 F.4th at 284.  Because Umaña's murder predicates continue to qualify as crimes of violence, Umaña's challenge to counts 23 and 25 is meritless. This Court should, therefore, reject Umaña's motion for leave to amend claim 22 of his § 2255 motion as futile.

### CONCLUSION

Umaña's claim 22 fails as a matter of law, and Umaña's proposed

12

amendment would be futile because it would not make the claim any more meritorious. The United States, therefore, respectfully requests that this Court deny Umaña's June 2022 motion for leave to amend Claim 22.

RESPECTFULLY SUBMITTED, this 23rd day of June, 2022.

DENA J. KING
UNITED STATES ATTORNEY

/s/Anthony J. Enright
Assistant United States Attorney
United States Attorney's Office
227 West Trade Street, Suite 1650
Charlotte, North Carolina 28202
(704) 344-6222 (phone)
(704) 344-6629 (fax)
anthony.enright@usdoj.gov

13

## CERTIFICATE OF SERVICE

I certify that on this 23rd day of June, 2022, I caused to be served a copy of the foregoing motion to be served on counsel for Umaña via electronic case filing

s/ANTHONY J. ENRIGHT
Assistant United States Attorney

14