# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### Charlotte Division

ALEJANDRO UMAÑA,

　　　　　　　Movant,

　　　　v.

UNITED STATES,

　　　　　　　Respondent.

3:16-CV-00057-RJC

CAPITAL § 2255 PROCEEDING

HON. ROBERT J. CONRAD, JR.

**MOVANT'S REPLY TO GOVERNMENT'S RESPONSE TO UMAÑA'S JUNE 9, 2022 MOTION FOR LEAVE TO SUPPLEMENT/AMEND CLAIM 22 (*JOHNSON/DAVIS* CLAIM) OF HIS MOTION TO VACATE UNDER 28 U.S.C. §2255**

Movant Alejandro Umaña respectfully replies to the Government's Response (Civ. Doc. 112), and requests the Court grant his June 9, 2022 Motion to Supplement/Amend Claim 22 of his Motion to Vacate (Civ. Docs. 109, 110, 111).

Mr. Umaña has plead a meritorious *Johnson/Davis* claim, which entitles him to relief. At minimum, Umaña has plead sufficient factual and legal support to warrant granting his motion to supplement/amend. *See* Civ. Doc.[1] 104, at 1-4 (discussing standard for Fed.R.Civ.P. 15 motions to supplement and amend). The government's arguments to the contrary are unavailing.

---

[1] "Civ. Doc." denotes CM/ECF documents from the 2255 proceeding, No. 3:16-cv-00057-RJC (W.D.N.C.).

"Crim. Doc." denotes CM/ECF documents from the criminal case, No. 3:08-cr-00134-RJC (W.D.N.C.).

### 1. Procedural default is not applicable.

Mr. Umaña's *Johnson/Davis* claim is not procedurally defaulted, or at minimum he has demonstrated cause and prejudice to overcome default. The government's default argument and interpretation of *In re Thomas* are incorrect. Civ. Doc. 112, at 2-3. One of the government's own cases, *United States v. Said*, proves the point.

Tellingly in *Said*, the government conceded that vacatur of Count 9—one of the §924(c) counts—was appropriate under *Davis*: "The Government timely appealed the vacatur of Said's convictions on Counts 4 and 10, while conceding that Count 9 was properly vacated because it was based only on the invalid predicates." *Said*, 26 F.4th 653, 658 (4th Cir. 2022).

Of note is *Said*'s procedural history: he raised no *Johnson/Davis* challenge in his trial or direct appeal proceedings. *Said*, 26 F.4th at 660 n.11. His conviction became final in May 2016 when the Supreme Court denied certiorari review, No. 15-7332, 578 U.S. 1004. The Supreme Court issued its decision in *United States v. Davis*, 139 S. Ct. 2319, on June 24, 2019. And thereafter, Said filed his (first) §2255 motion. *Said*, 26 F.4th at 658. Yet the government conceded that *Johnson/Davis* relief was appropriate for Said on Count 9 – a count that relied on three predicate offenses that no longer qualified as crimes of violence after *Davis*. *Id.* Implicit in the government's concession in *Said* is that *Davis* appropriately applies retroactively, and is not defaulted, for a petitioner who raises a *Johnson/Davis* claim after those decisions were issued by the Supreme Court.

Given the precedent of *In re Thomas*, application of *Thomas* in *Said* (*see Said*, 26 F.4th at 658), and the government's concession in *Said* that a 924(c) conviction must be vacated if premised on predicates that are not crimes of violence after *Davis*, the government's continued invocation of default in this Court on Umaña's case is perplexing, inconsistent with precedent, and inconsistent with the reasoned assessment of other U.S. attorney offices.

2

## 2. The Government's conduct-based approach is incorrect.

The government, again, invokes conduct in lieu of an elements-based analysis.[2] The Supreme Court has once again rejected the Government's approach:

> To determine whether a federal felony may serve as a predicate for a conviction and sentence under the elements clause, they say, we must apply a "categorical approach." We must because the clause poses the question whether the federal felony at issue "has *as an element* the use, attempted use, or threatened use of physical force." § 924(c)(3)(A) (emphasis added). And answering that question does not require—in fact, it precludes—an inquiry into how any particular defendant may commit the crime. The only relevant question is whether the federal felony at issue always requires the government to prove—beyond a reasonable doubt, as an element of its case—the use, attempted use, or threatened use of force."

*United States v. Taylor*, No. 20-1459, slip op. at 3, 596 U.S. ___ (June 21, 2022). "To determine whether a federal felony qualifies as a crime of violence, § 924(c)(3)(A) doesn't ask whether the crime is *sometimes* or even *usually* associated with communicated threats of force (or, for that matter, with the actual or attempted use of force). It asks whether the government must prove, as an *element* of its case, the use, attempted use, or threatened use of force." *Id.*

Appropriately applying an elements-based analysis, Mr. Umaña's N.C. Gen. Stat. §14-17 VICAR convictions are not categorically crimes of violence, for at least two reasons. "Under [*Borden*], even second-degree murder and some forms of manslaughter may be excluded from [the] ACCA [elements clause]. That is because, in many States, some forms of second-degree murder and manslaughter do not require intent or knowledge." *Borden v. United States*, 141 S. Ct. 1817, 1856 (2021) (Kavanaugh, J., dissenting). And "[f]elony murder cannot qualify as a

---

[2] *E.g.,*, Civ. Doc. 112, at 6-7, 10-11 ("…record makes clear that Umaña committed….."; citations to conspiracy racketeering activities – even though Government conceded that RICO conspiracy is not a crime of violence (*id.* at 12); discussing "'evidence of overwhelming weight' before the jury" during purported categorical approach analysis; arguing Umaña cannot show (evidence) that jury convicted by means of felony murder or second degree murder; citations to "overwhelming evidence").

'crime of violence' because it requires only the mens rea necessary to attempt or complete the underlying felony (i.e., arson, escape, etc.). That mens rea is not more than recklessness and thus, does not satisfy *Borden*." *United States v. Jackson*, 32 F.4th 278, 285 (4th Cir. 2022). Moreover, *Borden* supports the arguments Umaña made previously that §14-17 VICAR murder is not categorically a crime of violence. Civ. Doc. 23, at 337-339; Civ. Doc. 91, at 11-26; Civ. Doc. 104, at 13-16; Civ. Doc. 111, at 4-13.

### 3. Neither predicate is categorically a crime of violence.

The government finally acknowledges Umaña is correct: RICO conspiracy does not have as an element the use, attempted use, or threatened use of physical force. Civ. Doc. 112, at 12.

Umaña is also correct that N.C. Gen. Stat. §14-17 VICAR murder is not categorically a crime of violence. It does not categorically satisfy the *Borden* requirement of active, volitional force directed against or targeted at the victim. *Borden*, 141 S. Ct. at 1825-27. Civ. Doc. 111, at 7-13.

The Government misreads the VICAR statute and erroneously injects into it additional elements that did not purport to exist at the time of trial. In doing so, the Government attempts to distance VICAR from the indivisible State law offense (N.C. Gen. Stat. §14-17) that the jury actually received instructions on.[3] *See also* Civ. Doc. 104, at 13.

The Government states: "Umaña's section 1959(a)(1) offenses required proof that, among other things, Umaña committed 'murder' *and* that his conduct was 'in violation of the laws of any

---

[3] Guilt Phase Transcript (Crim. Doc. 1258), at 1235-38 (North Carolina §14-17 first degree premeditated murder, first degree felony murder, second-degree murder, and conspiracy to commit murder), 1219-21 & 1237-39 (conspiracy to commit murder), 1245-46 (North Carolina murder definitions applied to VICAR murder charges).

State.' 18 U.S.C. § 1959(a)(1)." Civ. Doc. 112, at 4. The Government then injects 18 U.S.C. §1111 into Section 1959. *Id.* at 4-6.

Section 1959(a)'s text, however, does <u>not</u> require two layers of elements—§1111 and the state law offense. It instead penalizes "Who[m]ever, … for the purpose of … maintaining or increasing position in an enterprise engaged in racketeering activity, murders, … in violation of the laws of any State <u>or</u> the United States, or attempts or conspires so to do." 18 U.S.C. § 1959(a) (emphasis added).

This was the government's and the Court's understanding of the VICAR offenses at the time of trial: the jury's VICAR instructions contained the definition and elements solely of North Carolina murder; not some additional murder definition the government now attempts to inject. Guilt Phase Transcript,[4] at 1235-38 (North Carolina first degree premeditated murder, first degree felony murder, second-degree murder, and conspiracy to commit murder), 1219-21 & 1237-39 (conspiracy to commit murder), 1245-46 (North Carolina murder definitions applied to VICAR murder charges). Tellingly, the government has not pointed to anywhere in the jury instructions where this Court instructed on some form of VICAR murder that is not N.C. Gen. Stat. §14-17.

Instead, the elements of N.C. Gen. Stat. §14-17 were in-laid into the definition of VICAR murder in the Court's instructions to the jury. *Id.* If N.C. Gen. Stat. §14-17 is not categorically a crime of violence, then VICAR murder defined by N.C. Gen. Stat. §14-17 also is not categorically a crime of violence.

### 4. N.C. Gen. Stat. §14-17 VICAR murder is indivisible.

N.C. Gen. Stat. §14-17 – and to the extent relevant, generic murder – are indivisible offenses.

---

[4] Located at Crim. Doc. 1258, No. 3:08-cr-00134-RJC-DSC-2 (W.D.N.C.).

5

First, this Court's prior analysis correctly indicated both are indivisible. *See* Civ. Doc. 111, at 5-10 & nn.3, 4, 6. "Generic 'murder' has two elements: 1) an unlawful killing of a human being, and 2) malice aforethought." *Umaña v. United States*, 229 F. Supp. 3d 388, 393 (W.D.N.C. Jan. 25, 2017). "[D]ifferent theories can supply the mens rea of 'malice aforethought.'" *Id.* at 394. "[T]he intent to kill and the intent to commit a felony were alternative aspects of the single concept of 'malice aforethought' necessary to sustain a conviction for premeditated murder or felony murder." *Id.* "'[M]alice aforethought' for generic murder requires a mens rea of intent, knowledge, or 'reckless and depraved indifference,' all of which exceed the degree of intent necessary for 'negligent or merely accidental conduct.'" *Id.*

"N.C. Gen. Stat. § 14-17" supplied "the elements of the statute forming the basis of Umaña's murder in aid of racketeering convictions." *Id.* at 395. "North Carolina law recognizes only one crime of murder — an unlawful killing of another with malice aforethought, express or implied." *Id.* "North Carolina's murder statute, § 14-17, codifies the common-law crime of murder and divides it into first-degree and second-degree murder." *Id.* "The definition of murder remains that at common law." *Id.* at 396. "'[M]alice aforethought' for a first-degree murder conviction requires the State to prove that the defendant had a specific intent to kill the victim, an actual intent to poison, imprison, starve, torture, or lie in wait for the victim, or an actual intent to commit the underlying felony, during the course of which an unlawful killing occurred." *Id.* at 396.

Tellingly, the State is not required to select (nor notify the defendant of) which means of proving "malice aforethought" it intends to pursue. Civ. Doc. 91, at 14-16; Civ. Doc. 111, at 5-10 & nn.3, 4, 6. "A murder indictment in the [general, short] form prescribed by N.C.G.S. § 15-144 will support a verdict finding the defendant guilty of first degree murder upon any of the theories set forth in N.C.G.S. § 14-17." *State v. Clark*, 386 S.E.2d 191, 194 (N.C. 1989). "Premeditation and deliberation is a theory by which one may be convicted of first degree murder; felony murder

6

is another such theory. Criminal defendants are not convicted or acquitted of theories; they are convicted or acquitted of crimes." *State v. Thomas*, 386 S.E.2d 555, 560-61 (N.C. 1989) (citations omitted) (holding on remand defendant may be tried and convicted of "first degree murder on all theories and on all lesser homicides which may be included under any theory and supported by the evidence").

The conduct prescribed by each means of commission is the same: unlawful killing, with the requisite means rea of malice aforethought. And malice aforethought can be inferred from the circumstances of certain killings, such as killings during felonies and killings under circumstances that evidence reckless disregard. *Umaña*, 229 F. Supp. 3d at 393-96. Means of proving the mens rea element of malice aforethought do not convert the "one crime of murder" under North Carolina law into multiple sub-crimes. *See id.*

This Court's prior analysis correctly demonstrated that generic murder and §14-17 are indivisible offenses. As such, Mr. Umaña's §14-17 VICAR murder counts are not categorically crimes of violence. Civ. Doc. 23, at 337; Civ. Doc. 91, at 11-26; Civ. Doc. 111, at 4-13. "This is so because it is the most innocent conduct criminalized by an indivisible statute that must categorically meet the definition of a 'crime of violence.'" *Jackson*, 32 F.4th at 285. At minimum, "[f]elony murder cannot qualify as a 'crime of violence' because it requires only the mens rea necessary to attempt or complete the underlying felony (i.e., arson, escape, etc.). That mens rea is not more than recklessness and thus, does not satisfy *Borden*." *Id.*

Second, *United States v. Jackson* underscores the <u>indivisibility</u> of Umaña's N.C. Gen. Stat. §14-17 VICAR murder charges, contrary to the government's contention. Civ. Doc. 112, at 5-10.

*Jackson* analyzed whether 18 U.S.C. §1111(a) is a divisible statute. The Fourth Circuit carefully clarified that it was only considering whether <u>Congress</u> intended §1111(a) to be divisible. *Jackson*, 32 F.4th at 285 n.7. The United States Constitution allows States to maintain indivisible

7

first-degree murder statutes. *Id.* (citing *Schad v. Arizona*, 501 U.S. 624, 630-31, 636 (1991)). Such State statutes may even require the federal court to uphold "a state conviction of first-degree murder based on a general verdict that combined findings of premeditation and felony murder." *Id.* The federal court may not ignore State law rules demonstrating indivisibility. *Id.* Umaña identified the North Carolina state law rules that demonstrate N.C. Gen. Stat. §14-17 is indivisible. Civ. Doc. 23, at 337-339; Civ. Doc. 91, at 14-16; Civ. Doc. 111, at 5-10 & nn.3, 4, 6.

Moreover, this limitation on *Jackson*, rooted in *Schad*, is exactly why §1111(a) has no bearing here (and is materially different than generic murder). *Jackson* analyzed Congress's statute, not the common law generic crime. *Jackson*, 32 F.4th at 285 n.7. "[I]ntent to kill," "intent to commit a felony," and "reckless and depraved indifference" are all "different theories [that] supply the mens rea of 'malice aforethought'"—they are "alternative aspects of the single concept of 'malice aforethought.'" *Umaña*, 229 F. Supp. 3d at 393-96. Justice Scalia's concurrence in *Schad* underscored the indivisibility of the generic crime of murder and the States' right to continue to observe this indivisibility: "As the [*Schad*] plurality observe[d], it has long been the general rule that when a single crime can be committed in various ways, jurors need not agree upon the mode of commission. That rule is not only constitutional, it is probably indispensable in a system that requires a unanimous jury verdict to convict." *Schad*, 501 U.S. at 649-50 (Scalia, J., concurring). Specifying in the indictment which of the "various ways," that is means, by which the North Carolina crime of murder will be proven was not required under North Carolina law and was not required of the prosecution here. As *Schad* and *Jackson* underscore, it is constitutional that generic murder may be proven by various indivisible means, and the federal court may not ignore State law rules that demonstrate indivisibility.

Third, even using the *Shepard/Mathis* "peek" employed in *Jackson* – and Umaña maintains such "peek" is inappropriate because indivisibility can be discerned from the charging statutes and

8

State law interpreting §14-17 – Umaña's §14-17 VICAR murder is indivisible. Comparison with *Jackson* proves this is so.

In *Jackson*, the indictment supported divisibility because it alleged Jackson killed the victim "[1] willfully, deliberately, maliciously, and with premeditation, and [2] in the perpetration and attempted perpetration of a felony." *Jackson*, 32 F.4th at 286. Umaña's indictment, in contrast, mirrors the North Carolina state law rule that the §14-17 murder allegation need not specify upon which means, or theory, the murder counts will be based. Instead, "[a] murder indictment in the [general, short] form prescribed by N.C.G.S. § 15-144 will support a verdict finding the defendant guilty of first degree murder upon any of the theories set forth in N.C.G.S. § 14-17." *State v. Clark*, 386 S.E.2d 191, 194 (N.C. 1989). *See* Civ. Doc. 91, at 15-16; Civ. Doc. 111, at 6, n.4. Umaña's murder charges alleged he "unlawfully and knowingly murdered [victim one], in violation of North Carolina General Statute Sections 14-17," and "unlawfully and knowingly murdered [victim two], in violation of North Carolina law, N.C. Gen. Stat. § 14-17." Crim. Doc. 623, at 47, 49. "Knowing," "knowingly," or "knowledge" are nowhere in N.C. Gen. Stat. §14-17 or 18 U.S.C. §1959 and thus add nothing to the (in)divisibility analysis. (In *Jackson*, in contrast, "willfully, deliberately, maliciously, and with premeditation" is explicit language from the §1111(a) statute.) The lack of specificity in Umaña's case means the VICAR counts charged indivisible means of committing §14-17.

In *Jackson*, the jury instructions pointed toward the divisibility of §1111(a) because jurors were instructed they must unanimously agree on whether defendant committed first degree premeditated murder or instead committed first degree felony murder. Umaña's jury, in contrast, was permitted to be non-unanimous on this point. Guilt Phase Transcript, at 1246.

In *Jackson*, the Fourth Circuit reasoned the jury instructions supported divisibility:

9

> If premeditated murder and felony murder were merely means of committing a single crime as Jackson urges, the jury could have found Jackson guilty of first-degree murder in the absence of unanimous agreement as to the type of murder he committed. The jury could have reached a verdict of first-degree murder if some jurors found Jackson guilty of premeditated murder (but others did not), while some jurors found Jackson guilty of felony murder (but others did not). The district court instructed the jury that it could not convict Jackson on this basis.

*Jackson*, 32 F.4th at 286-87.

Umaña's jury, in contrast, was instructed on the VICAR counts to apply North Carolina first degree premeditated murder, first degree felony murder, second degree murder, and conspiracy to commit murder.[5] The Court instructed jurors that, on the VICAR counts, they must be unanimous in deciding whether Umaña had committed <u>first</u> degree murder or instead committed <u>second</u> degree murder under North Carolina law, but did <u>*not*</u> instruct jurors they must be unanimous in deciding which means of committing first degree murder jurors found (premediated or felony first degree murder):

> I have already read to you North Carolina's murder statute in relation to the racketeering activity alleged in count one and provided instructions on the elements of murder under that statute. You are to apply that law here to this count[, Count 22, §14-17 VICAR Murder].
>
> Because North Carolina's law -- North Carolina laws's definition of murder includes both first degree and second degree murder, you must be unanimous as to which, if either, was established beyond a reasonable doubt.

Guilt Phase Transcript, at 1246; *see also id.* at 1258 (Count 24, §14-17 VICAR Murder).

In *Jackson*, the verdict form required jurors to select whether the murder was premeditated or instead was during the perpetration of a felony. *Jackson*, 32 F.4th at 287. In Umaña's case, in contrast—after being instructed on North Carolina first degree premeditated murder, first degree

---

[5] Guilt Phase Transcript, at 1235-38 (North Carolina first degree premeditated murder, first degree felony murder, second-degree murder, and conspiracy to commit murder), 1219-21 & 1237-39 (conspiracy to commit murder), 1245-46 (North Carolina murder definitions applied to VICAR murder charge).

10

felony murder, second degree murder, conspiracy to commit murder, and aiding and abetting murder[6]—jurors were not required to select upon what theory the §14-17 VICAR murder convictions rested in Counts 22 and 24. Crim. Doc. 1043.

The government has provided no authority for its conduct-based approach arguments that the Court should "peek" at other charges or engage in a wide-ranging examination of trial evidence. Indeed, because the government's request is unsupported. The categorical approach was designed to avoid those kind of "evidentiary enquiries into the factual basis for the conviction"—enquiries the Sixth Amendment prohibits. *Shepard v. United States*, 544 U.S. 13, 20 (2005); *United States v. Fuertes,* 805 F.3d 485, 498 (4th Cir. 2015). The government specifically asked the Supreme Court to remove the categorical approach from §924(c) in *Davis* in favor of the conduct-based approach it presses in Umaña's case. The Supreme Court declined. *United States v. Davis*, 139 S. Ct. 2319, 2327 (2019). The categorical approach is appropriate even when evaluating whether a crime in the current case categorically qualifies as a crime of violence under the §924(c) <u>elements</u> clause. *Taylor*, No. 20-1459, slip op. at 3-4.

Fourth, the government's §14-17 cases are inapposite. Civ. Doc. 112, at 10-11. The Government's reliance on *State v. Jones*, 538 S.E.2d 917, 923-24 (N.C. 2000), is misplaced. Nowhere in *Jones* does the North Carolina Supreme Court hold that the three means for committing first degree murder are "alternative 'essential element[s]." Civ. Doc. 112, at 10. Quite the opposite, the Court examined all means of committing first degree murder to determine whether criminally negligent driving that resulted in the death of two victims (and serious injury

---

[6] Guilt Phase Transcript, at 1235-38 (North Carolina first degree premeditated murder, first degree felony murder, second degree murder, and conspiracy to commit murder), 1219-21 & 1237-39 (conspiracy to commit murder), 1245-46 (North Carolina murder definitions applied to VICAR murder charge), 1243-45 (aiding and abetting murder).

to three others) qualified as first degree murder. *Jones*, 538 S.E.2d at 920-22, 927. The Court observed that all three means of committing first degree murder actually share the same elements of unlawful killing and intent to commit the act that resulted in death (even if death was not intended): "All of these categories require that the defendant have a *mens rea* greater than culpable or criminal negligence; that is, they all require that the defendant had 'actual intent' to commit the act that forms the basis of a first-degree murder charge." *Id.* at 923-24.

*State v. Mann*, 560 S.E.2d 776 (N.C. 2002), likewise supports Umaña's position. In *Mann*, the defendant argued the jury's verdict of "guilty of first-degree murder under the felony murder rule" collaterally estopped and precluded the jury from deliberating on whether he should receive a death sentence. *Mann*, 560 S.E.2d at 311-12. Quite the opposite, the Court held, the intent required for North Carolina first degree murder by means of felony murder was sufficiently culpable to trigger a capital sentencing proceeding. *Id.* That is, first degree felony murder has the same core elements as other means of first degree murder—unlawful killing and intent to commit the act that resulted in death, *Jones*, 538 S.E.2d at 923-24—and it entails identical sentencing exposure, a possible death sentence. *Mann*, 560 S.E.2d at 311-12.

Contrary to the government's contention, malice aforethought is an element of first degree felony murder – as well as an element of all other forms of North Carolina first degree murder: North Carolina applies the common law definition of murder, and "Common law murder has been defined as 'any intentional and unlawful killing of a human being with malice aforethought, express or implied.'" *State v. Crawford*, 406 S.E.2d 579, 587 (N.C. 1991) (citations omitted). Commission of the felony, or the torture when murder is by means of torture, establishes the requisite malice aforethought:

We have held that malice in the case of felony murder is "transferred" when the underlying felony is committed. In *State v. Gardner*, 315 N.C. 444, 340 S.E.2d 701 (1986), we stated:

> The felony-murder rule is a rule of ancient application under which there is a fictional transfer of the malice which plays a part in the underlying felony to the unintended homicide so that the homicide is deemed committed with malice.
>
> . . . .
>
> > In the typical case of felony-murder, there is no malice in "fact", express or implied; the malice is implied by the "law". What is involved is an intended felony and an unintended homicide. The malice which plays a part in the commission of the felony is transferred by the law to the homicide. As a result of the fictional transfer, the homicide is deemed committed with malice; and a homicide with malice is common law murder.
>
> 2 Wharton's Criminal Law § 145 (1979).
>
> Murder by torture is analogous to felony murder in that malice may be implied by the very act of torturing the victim. Torture is a dangerous activity of such reckless disregard for human life that, like felony murder, malice is implied by the law. The commission of torture implies the requisite malice, and a separate showing of malice is not necessary.

*Crawford*, 406 S.E.2d at 587-88.

As demonstrated above, all signs point to §14-17 VICAR murder being an indivisible offense that includes various means of commission.

### 5. N.C. Gen. Stat. §14-17 VICAR murder is not categorically a crime of violence.

For the reasons previously enumerated, §14-17 VICAR murder is not categorically a crime of violence. Civ. Doc. 23, at 337-339; Civ. Doc. 91, at 11-26; Civ. Doc. 104, at 13-16; Civ. Doc. 111, at 4-13.

Additionally, Mr. Umaña's §14-17 VICAR murder convictions were premised on committing or aiding and abetting that offense. Guilt Phase Transcript, 1242-46. Attempted commission of a crime of violence is not categorically a crime of violence. *Taylor*, No. 20-1459,

13

slip op. at 3-6. Aiding and abetting is proven using the same minimal conduct elements as attempt: intent to facilitate commission of a felony, and an act in furtherance thereof. Civ. Doc. 91, at 25-26. Like attempt, the intent element of aiding-and-abetting does not require use, attempt use, or threatened use of force: "an intention is just that, no more." *See Taylor*, slip op. at 4-5. "And whatever a substantial step requires"—or, for aiding-and-abetting, whatever may constitute an affirmative act in furtherance—"it does not require the government to prove that the defendant used, attempted to use, or even threatened to use force against another person or his property." *See id. Taylor* supports Umaña's contention that conviction for aiding and abetting N.C. Gen. Stat. §14-17 VICAR murder does not require as an element proof that Umaña used, attempted, or threatened violent force targeted at the victims.

Second degree murder is not categorically a crime of violence under the ACCA elements clause or §924(c) elements clause. Civ. Doc. 23, at 337-339; Civ. Doc. 91, at 22-24; Civ. Doc. 111, at 7-13. *See Borden*, 141 S. Ct. at 1856 (Kavanaugh, J., dissenting) ("[E]ven second-degree murder and some forms of manslaughter may be excluded from ACCA. That is because, in many States, some forms of second-degree murder and manslaughter do not require intent or knowledge."). The Government cites inapplicable unpublished Fourth Circuit cases applying the U.S. Sentencing Guidelines §4B1.2(a) definition of crime of violence to North Carolina second degree murder. Civ. Doc. 112, at 9-10, 12. Initially, unpublished opinions are not binding precedent. *See United States v. Ruhe*, 191 F.3d 376, 392 (4th Cir. 1999). Moreover, the Guidelines definition in *Parrish* included "murder" as an enumerated offense in §4B1.2(a). *United States v. Parrish*, 767 Fed. Appx. 440, 442 (4th Cir. 2019) (unpublished per curiam). And the Guidelines definition at issue in *Bell* and *Lee* included the application note that "'Crime of violence' includes murder," U.S.S.G. §4B1.2 cmt., application n.1 (2015); and included the risk/residual clause in §4B1.2(a), which remained valid despite vagueness challenge. *Beckles v. United States*, 137 S.Ct.

14

886, 890 (Mar. 6, 2017). *See United States v. Bell*, 704 F. App'x 297, 298 (4th Cir. 2017) (unpublished per curiam); *United States v. Lee*, 697 F. App'x 175, 176 (4th Cir. 2017) (unpublished per curiam). Accordingly, any elements clause analysis in *Parrish*, *Bell*, and *Lee* is non-binding and also may properly be considered unnecessary dicta. *Cf. Ruhe*, 191 F.3d at 392.

Targeted or directed application of violent physical force is what the elements clause requires under *Borden*. Even intentionally acting when aware of very high risk—although not innocent—does not convert extreme recklessness into the *Borden*-required targeted, directed application of violent physical force against the victim. The treatise and cases the government cited (Civ. Doc. 112, at 7-9, 11-12) do not support converting extreme recklessness into the targeted, directed application of force. The elements clause requires "intentional acts designed to cause harm." *See Borden* 141 S. Ct. at 1835 (Thomas, J., concurring in judgment).

### 6. Umaña need not – but can – establish prejudice under *Brecht*.

Finally, the Government argues that so long as one of the predicates remains a crime of violence, Mr. Umaña's §924(c), (j) convictions remain valid. Civ. Doc. 112, at 2, 3. For support, the Government cites *United States v. Jackson*, 32 F.4th 278, 284 (4th Cir. 2022), which in turn quotes an excerpt from *United States v. Said*, 26 F.4th 653, 659 (4th Cir. 2022). But the Government's argument ignores the different contexts presented in those cases, and the government concession in *Said* that a case (like Umaña's) may entail prejudicial *Davis* error even if one predicate remains a crime of violence.

Specifically, at oral argument in *Said*, the panel asked the government if a §2255 movant's *Davis* error could ever be prejudicial if he "has been convicted of both a § 924(c) charge and a valid crime-of-violence predicate." *Said*, 26 F.4th at 664. The government conceded prejudice (and relief) is possible if there is "conflicting testimony" about defendant's role, or there is not a "mutual symbiotic relationship between the firearm [§924(c)] counts and [the crime-of-violence]

15

counts." *Id.*, Oral Argument, at 40:10-43:15, https://www.ca4.uscourts.gov/OAarchive/mp3/21-7089-20211209.mp3. The *Said* panel noted the government's concession was correct:

> To be clear, we do not hold that a challenge such as Said's will *never* succeed when the defendant has been convicted of both a § 924(c) charge and a valid crime-of-violence predicate. Such a broad question is not before us, and another case with a different set of facts may well come out differently, as the Government agreed at oral argument. *See* Oral Arg. at 40:10-43:15, https://www.ca4.uscourts.gov/OAarchive/mp3/21-7089-20211209.mp3; *see also Ali*, 991 F.3d at 575 (noting that the analysis required in this type of case is a "'case-specific and fact-intensive' determination" (quoting *Robinson*, 627 F.3d at 956)). But here, Said has pointed to nothing to eliminate the commonsense prospect that the jury relied on one or more of the valid predicates when it convicted him of the § 924 charges in Counts 4 and 10.

*Said*, 26 F.4th at 664.

Indeed, the Government's concession in *Said* mirrors Umaña's prior arguments: *Davis* error may be harmless/non-prejudicial if the valid and invalid predicates are "entirely coextensive," but the "the RICO conspiracy Mr. Umaña was convicted of participating in was not coextensive with the single shooting incident that resulted in the VICAR murders"; the RICO conspiracy was a broader, wide-ranging, months-long conspiracy; the jury instructions on N.C. Gen. Stat. §14-17 VICAR murder permitted jurors to find Mr. Umaña guilty even if he was not the shooter, and even if he did not have the *Rosemund* knowledge ahead of time that a firearm would be employed; jurors saw photographic evidence and heard testimony of Umaña and co-conspirators possessing firearms on various occasions during the time period of the alleged RICO conspiracy (*e.g.*, Guilt Phase Transcript, at 226-32, 287, 655-58, 669-75, 692-704, 957-58; Gov. Exhs. 191, 214); and jurors could have comfortably found Umaña guilty of possessing a firearm generally during the RICO conspiracy without finding he used the firearm in the VICAR murders given the Court's instructions. Civ. Doc. 91, at 2-5, 31-33, 36-38. There was no "mutual symbiotic relationship" between Umaña's VICAR convictions and his use of a firearm in the §924(c) counts: jurors were instructed he could be found guilty of murder under theories of North Carolina first-

16

degree murder, first-degree felony murder, second-degree murder, or conspiracy to commit murder; he could be convicted of VICAR murder if he was the shooter *or if he aided and abetted*, and he did not receive a *Rosemund* jury instruction that he could be convicted only if he had prior knowledge that a firearm would be employed; the trial evidence was conflicting; but the easy call was that Umaña's use of a firearm included generally possessing or using one in furtherance of the RICO conspiracy.

As to context, in *Said* and *Jackson*, the §924(c) counts at issue involved both valid and invalid predicates that were "entirely coextensive" or involved predicates that had "mutual symbiotic relationships" with one another and the §924(c) count. In *Jackson*, the jury found the defendant kidnapped, sexually assaulted, and murdered the victim. *Jackson*, 32 F.4th 278, 282. All predicates occurred during one criminal episode on one day, during which the firearm was employed. *United States v. Jackson*, 327 F.3d 273, 279-81 (4th Cir. 2003).

In *Said*, the defendant was convicted of conspiring and committing piracy and assault offenses. The conspiracy included the piracy and assault incident, and Said "pointed to nothing to eliminate the commonsense prospect that the jury relied on one or more of the valid predicates when it convicted him of the § 924 charges in Counts 4 and 10." *Said*, 26 F.4th at 664.

Umaña, in contrast, has pointed to jury instructions, non-overlapping predicates, and conflicting evidence, which all undermine the notion that there was a "mutual symbiotic relationship" between the offenses and undermine the notion that jurors relied for the §924(c) counts on the VICAR predicates instead of the broader RICO conspiracy during which Umaña was clearly implicated in handling, using, and carrying firearms. Civ. Doc. 91, at 2-5, 26-38.

## CONCLUSION

WHEREFORE, based upon the foregoing and all proceedings and submissions, Movant, Alejandro Umaña, respectfully requests that the Court grant him the following relief:

17

A) That Movant be granted such discovery as is necessary for full and fair resolution of the claims contained in his 2255 Motion, as supplemented and amended;

B) That leave to supplement and amend be granted;

C) That an evidentiary hearing be conducted on all claims involving disputed issues of fact;

D) That Respondents be Ordered to respond to the 2255 Motion, as supplemented and amended; and

E) That Movant's convictions and sentences be vacated.

Respectfully submitted,

*/s/ Kelly D. Miller*
KELLY D. MILLER
Asst. Federal Public Defender
Federal Public Defender Office
Middle District of Pennsylvania
100 Chestnut Street, Suite 300
Harrisburg, PA 17101
Tel: 717-782-3843
Fax: 717-782-3966
kelly_miller@fd.org

Dated: June 30, 2022

18

**CERTIFICATE OF SERVICE**

I, Kelly D. Miller, hereby certify that I have electronically filed the foregoing Reply with the Clerk of Court using the CM/ECF system and a copy of the foregoing document has been served this day upon the following via CM/ECF:

Anthony J. Enright
Assistant United States Attorney
Suite 1650, Carillon Building
227 West Trade Street
Charlotte, NC 28202
anthony.enright@usdoj.gov

*/S/ KELLY D. MILLER*
KELLY D. MILLER
Asst. Federal Public Defender
Federal Public Defender Office
Middle District of Pennsylvania
100 Chestnut Street, Suite 300
Harrisburg, PA 17101
Tel: 717-782-3843
Fax: 717-782-3966
kelly_miller@fd.org

Dated: June 30, 2022

Case 3:16-cv-00057-MOC    Document 115    Filed 06/30/22    Page 19 of 19