# Exhibit 01



**Chief Federal Public Defender**
Heidi R. Freese

**First Assistant**
**Federal Public Defender**
Ronald A. Krauss

**Chief, Capital Habeas Unit**
Leane Renée

**Assistant**
**Federal Public Defenders**
Beth A. Muhlhauser
Kelly D. Miller
James T. Lawley
Alexandra K. French

**Staff Attorney**
Gerald J. Bierbaum
Jason F. Ullman

**HARRISBURG OFFICE**
100 Chestnut Street, Third Floor
Harrisburg, Pennsylvania 17101
Tel.: 717-782-3843
Fax: 717-782-3966

July 18, 2022

Anthony J. Enright
Assistant United States Attorney
Western District of North Carolina
227 West Trade St.
Suite 1650
Charlotte, NC 28202

*Via email*: Anthony.Enright@usdoj.gov

Re: *United States v. Umaña*, Case No. 3:16-CV-00057-RJC

Dear Mr. Enright:

As you are aware, we represent Alejandro Umaña, an indigent, death-sentenced federal prisoner, in the Western District of North Carolina., The Federal Defenders of San Diego, Inc. (FDSDI) and Kenneth Rose filed a motion asking the Court to vacate Mr. Umaña's sentence and conviction pursuant to 28 U.S.C. § 2255. FDSDI and Mr. Rose also filed Mr. Umana's Motion for Leave to Conduct Discovery. Our office was subsequently substituted in for Mr. Rose. We, along with FDSDI, subsequently filed a Motion for Leave to File Supplement/Amendment to Motion to Motion to Vacate and Set Aside Conviction and Sentence Pursuant to 28 U.S.C. § 2255 and a Supplemental/Amended 2255 Motion, asserting additional claims. FDSDI were subsequently permitted to withdraw from their representation of Mr. Umana due to a conflict of interest.

In reviewing the discovery provided in Mr. Umaña's case, the discovery motion filed by FDSDI and Mr. Rose, and the additional claims for relief pled in the Supplemental/Amended 2255 Motion, we have identified additional documents and information that existed at the time of trial but were never received or reviewed by Mr. Umaña's trial counsel.

Pursuant to Rule 6 of the Rules Governing Section 2255 Proceedings for the United District Courts and Local Rule 7.1(c), Mr. Umaña is preparing to file a Second Motion for Leave to Conduct Discovery and Memorandum of Law to address his entitlement to discovery items that were not identified by his prior, conflicted counsel in their Discovery Motion. In advance of that motion, we wanted to

identify the discovery requests that we currently plan to include in our soon to be filed motion. To conserve resources and avoid judicial intervention, we are providing you the enclosed list for your consideration to address whether there are any discovery requests the Government may be able to address voluntarily and without the need for a court order. We intend to seek all listed items from the Government. In addition, we have indicated by (*)asterisk where we intend to seek a Court Order or leave to issue a subpoena directed at a particular entity. Please let us know what we may state in our discovery motion about the Government's position concerning our discovery requests. If you think it would be productive to discuss, you can reach me directly at 717-996-0866. We appreciate your prompt consideration of the matters addressed herein.

Sincerely,

Kelly D. Miller
Assistant Federal Public Defender

Encl. as stated.

## List of Discovery Requests

For purposes of this discovery request, "Record" or "Records" shall be given the broadest possible meaning and shall include but not be limited to any writing of any kind, type or description, including but not limited to, writing or recording of information of any kind, correspondence, letters, memoranda, facsimiles, electronic mail (email), notes, desk calendars, diaries, statistics, telegrams, minutes, contracts, reports, studies, checks, invoices, statements, receipts, returns, warranties, guaranties, summaries, pamphlets, books, brochures, prospectuses, interoffice and intra-office communications, notations of any sort of conversation, telephone call messages, meetings or other communications, computer data, or other material of any kind from which information can be derived, whether produced, reproduced, or stored on paper, cards, tapes, film electronic facsimiles, computer storage devices, or any other medium, investigation notes, investigation records, investigation summaries, correlation summaries, surveillance (physical, electronic, photographic), case reports, interrogation reports, surveillance logs, FISUR log cover sheets, photographs, video and audio records and all transcribed statements, computer files, i-drive records, transfers of physical evidence, releases of physical evidence, diagrams, crime reports, follow-up investigation reports, toxicology reports, forensic reports, laboratory reports, evidence impound reports, warrants of arrest, search warrants, consent to search documents, returns of search warrants, extradition documents, polygraph examinations, travel documents, travel forms. "Record" and "Records" also mean a copy where the original is not in your possession, custody or control, and every copy of a Record if such copy is not an identical duplicate of the original.

The records requested pertain to the investigation and prosecution of Alejandro Umaña for the homicides of Manuel Garcia Salinas and Ruben Garcia Salinas, including the related investigation into the other crimes evidence presented at the guilt phase in support of the RICO charges and the penalty phase in support of the Government's case in aggravation, unless otherwise specified.

**A. Discovery expected to demonstrate Mr. Umaña's intellectual disability and cognitive and psychiatric impairments.**

We respectfully request evidence including:

1. All records and recordings of conversations or interactions between Mr. Umaña and any member of his legal team.
   *Guilford County Sheriff, Guilford County Jail, Mecklenburg County Sheriff, Mecklenburg County Jail, FBI, USMS

2. All records of communications between the Government and jail management and staff regarding the recruitment of individuals to be interviewed by Dr. Suarez.
   *Mecklenburg County Jail, FBI, USMS

3. All records of communications between the Government and jail staff regarding the possibility of being interviewed by Dr. Suarez.
   *Mecklenburg County Jail, FBI, USMS

1

4. All records of communications with Dr. Suarez identifying or mentioning correctional officers McIntyre, Farley and C. Holly.
*Mecklenburg County Jail, FBI, USMS

5. All records of communications with Dr. Suarez mentioning and/or discussing any other potential interviewee.
*Mecklenburg County Jail, FBI, USMS

6. All records of co-defendant statements about Mr. Umaña describing words or conduct indicating intellectual and/or adaptive defects.
* FBI, ICE, DHS, Greensboro Police Department, Charlotte-Mecklenburg Police Department, Mecklenburg County Sheriff's Office

7. All records of statements of the co-defendants, written, recorded or summarized, that describe Mr. Umaña's conduct, communication skills, relationship skills, social skills, living skills, work skills and/or any other adaptive skills relevant to the determination of Intellectual Disability.
*FBI, ICE, DHS, Greensboro Police Department, Charlotte-Mecklenburg Police Department, Mecklenburg County Sheriff's Office

8. All records of lyrical or poetic materials created by or found in the possession of Mr. Umaña's codefendants which may have provided the basis for materials Mr. Umaña allegedly created and the Court considered in reaching its Atkins determination.
*FBI, ICE, DHS, Greensboro Police Department, Charlotte-Mecklenburg Police Department, Mecklenburg County Sherrif's Office

9. All records in which any court or agency, in Florida or elsewhere, either sanctioned Dr. Suarez for improper conduct or sought sanctions related to mental health evaluations.

10. All records in the possession or control of the Florida Board of Psychology regarding complaints and disciplinary records on Enrique Suarez, Ph.D.
*Florida Board of Psychology.

11. All records of analyses of Mr. Umaña's written communications.
*FBI

12. An Order granting leave to depose Enrique Suarez, Ph.D.

**B.      Discovery challenging the Government's theory of the case and further supporting Mr. Umaña's intellectual disability and defenses, relating to Claims 5, 6, 7, 8, 11, 32, 34, 35, and 53.**

We respectfully request evidence including:

2

13. All records containing physical descriptions, including photographs and descriptions of tattoos, of Mr. Umaña and his co-defendants in this indictment.
*Guilford County Sheriff, Guilford County Jail, Mecklenburg County Sheriff, Mecklenburg County Jail, FBI, USMS, Greensboro Police Department, Charlotte-Mecklenburg Police Department, ICE, USCIS, LAPD, LA County Sheriff's Office and other detention facilities as described in Attachment A.

14. All records containing physical descriptions, including photographs and descriptions of tattoos of any other individual detained or interrogated on this case.
*Guilford County Sheriff, Guilford County Jail, Mecklenburg County Sheriff, Mecklenburg County Jail, FBI, USMS, Greensboro Police Department, Charlotte-Mecklenburg Police Department, ICE, USCIS, LAPD, LA County Sheriff's Office and other detention facilities as described in Attachment A.

15. All records that were created to document, reflect or analyze interviews of, or statements by, Luis Ramos.
*FBI, LAPD, Mecklenburg County Jail

16. All records regarding the transport/housing of Luis Ramos pretrial, during trial and during the trials and pleas of Mr. Umaña and his co-defendants.
*FBI, Mecklenburg County Jail

17. All records of statements by the co-defendants indicating that Mr. Umaña was not a leader of MS-13 and/or had no authority to order an assault against Luis Ramos, or anyone else, and/or that he did not issue any such order.
*FBI, Greensboro Police Department, Charlotte-Mecklenburg Police Department

18. All records of statements by any other witnesses interviewed by Government law enforcement, including local, county, state, or El Salvadoran law enforcement working with the Government on MS-13 investigations, including investigations in El Salvador indicating that Mr. Umaña was not a leader of MS-13 and had no power to order an assault against Luis Ramos, or anyone else, and/or that he did not issue any such order.
*FBI, DOJ, Greensboro Police Department, Charlotte-Mecklenburg Police Department

19. All records of any witnesses who agreed or refused to cooperate with the Government against Mr. Umaña.
*FBI

20. ███████████████████████████████████████████████████
████████████████████ .
*FBI, Greensboro Police Department, Charlotte-Mecklenburg Police Department

3

21. ███████████████████████████████████████

    *FBI, Greensboro Police Department, Charlotte-Mecklenburg Police Department

22. All records of translation of all letters Mr. Umaña generated or received, and all recordings that Mr. Umaña either participated in or in which he is mentioned and any notes generated in association with the creation of those translations.
    *FBI

23. All records regarding the cooperative working relationship between the Los Angeles Police Department, including without limitation Detective Flores, and the Western District of North Carolina United States Attorney's Office regarding the prosecution of Mr. Umaña.
    *FBI, LAPD, DOJ

24. All records regarding the cooperative working relationship between Los Angeles Police Department, including without limitation Detective Flores, and the Department of Justice regarding the prosecution of Mr. Umaña.
    *FBI, LAPD, DOJ

25. All records regarding the cooperative working relationship between the Los Angeles Police Department, including without limitation Detective Flores, and the Federal Bureau of Investigation.
    *FBI, LAPD, DOJ, Los Angeles County District Attorney

26. All records, including communications between the Government and the Los Angeles County District Attorney's Office, regarding the pursuit and filing of charges against Mr. Umaña for offenses that occurred in North Carolina.
    *FBI, LAPD, DOJ, Los Angeles County District Attorney

27. All records, including communications between the Federal Bureau of Investigation and North Carolina law enforcement, including but not limited to the Greensboro Police Department, Guilford County District Attorney's Office, and the North Carolina State Bureau of Investigation, regarding the pursuit and filing of charges against Mr. Umaña for offenses that occurred in Greensboro, North Carolina.
    *FBI, Greensboro Police Department, DOJ, Guilford County District Attorney, North Carolina State Bureau of Investigation

28. All records, including communications between the Western District of North Carolina United States Attorney's Office and North Carolina law enforcement, including but not limited to the Greensboro Police Department, Guilford County District Attorney's Office,

4

and North Carolina State Bureau of Investigation, regarding the pursuit and filing of charges against Mr. Umaña for offenses that occurred in Greensboro, North Carolina. *FBI, Greensboro Police Department, DOJ, Guilford County District Attorney, North Carolina State Bureau of Investigation

29. All records of communications between the Western District of North Carolina United States Attorney's Office, its Anti-Gang Task Force, and/or the FBI and the Los Angeles Police Department and/or Los Angeles District Attorney's Office regarding the investigation of the unadjudicated California murders and the Government's intention to present evidence of those offenses during the trial of this case. *FBI, LAPD, DOJ, Los Angeles County District Attorney

30. All records regarding Det. Flores' bias, credibility, malfeasance, and/or reliability as an expert and/or fact witness surrounding gang-related matters. *FBI, LAPD, DOJ

31. All records regarding law enforcement training on gang related issues in which Det. Flores participated in as either an attendee and/or presenter. *FBI, LAPD, DOJ

32. All records regarding Mr. Umaña's purported involvement in MS-13 groups in New York, Long Island and Hempstead obtained and/or investigated by the Western District of North Carolina United States Attorney's Office and its Anti-Gang Task Force, the FBI, the Department of Justice, Charlotte-Mecklenburg and Greensboro law enforcement. *FBI, Greensboro Police Department, Charlotte-Mecklenburg Police Department

33. All records regarding the homicide incidents and the shooting incident with the "White Fence" gang referenced by Detective Parshall. *FBI, LAPD

34. All records of conversations between the FBI, the LAPD, and/or the Government regarding the homicide incidents and the shooting incident with the "White Fence" gang referenced by Detective Parshall. *FBI, LAPD

35. All records regarding Rene "Moe" Arevalo's citizenship or immigration status including but not limited to records regarding deportation, removal, voluntary departure, arrest, detention, supervision, interviews, and dispositions. *FBI, ICE, USCIS, LAPD

36. ████████████████████████████████████████████████████████
*FBI, Greensboro Police Department

5

37. All records regarding Manuel Garcia Salinas and Ruben Garcia Salinas including but not limited to: arrest records; police incident reports; offense reports; reports by District Attorney investigator(s); interview reports or factual summaries; probation records; and drug and alcohol assessments connected with the prosecution of Manuel Garcia Salinas and Ruben Garcia Salinas.
*FBI, Greensboro Police Department, Guilford County District Attorney, Guilford County Adult Probation

**3. Discovery of *ex parte* communications between the Government and the Court, relating to Claims 5, 6, 32, 33, and 52.**

As described in Mr. Umaña's Initial 2255 Motion and Supplemental 2255 Motion, the Court relied on documents provided by the Government *ex parte* that were not provided to counsel. Mr. Umaña requests:

38. All documents provided by the Government to the Court remaining in the custody and control of the Court.

39. A copy of all documents the Government submitted to the Court *ex parte* during the course of the *Atkins* proceedings and any and all documentation, logs, and/or other materials demonstrating the authenticity and/or reconstruction and completeness of the *ex parte* submission.

40. A copy of all documents the Government submitted to the Court *ex parte* during the course of the pretrial proceedings regarding the admission of other crimes evidence and any and all documentation, logs, and/or other materials demonstrating the authenticity and/or reconstruction and completeness of the *ex parte* submission.

41. Copies of any logs, notes, documents, and/or communications between the Government and the Court and within the Government regarding the submission of these documents *ex parte*.

42. An order permitting interrogatories of representatives of the United States Attorney's Office regarding the submission, retention, and reconstruction of these materials.

**4. Discovery arising from Claims 6, 8 and 11 of the initial 2255 Motion and Claims 32, 33, 35, and 38 of the Supplemental/Amended Motion.**

Mr. Umaña respectfully requests the disclosure of:

43. As to each of Mr. Umaña's co-defendants on this indictment and unindicted, cooperating witnesses ███████████████████ and ██████████ :

 a. all proffer letters regarding the individual's cooperation with police and prosecution for any state, county and/or federal case, including immigration cases;

6

b.      all records regarding any investigative steps taken to verify the reliability of the individual's information/proffer;

c.      identification of any and all state, county and federal cases in which the individual testified;

d.      identification of any and all state, county and federal cases in which individual/cooperator provided information to the police or prosecution, but did not testify;

e.      identification of any and all persons about whom the individual/cooperator provided information to the police and prosecution.

*FBI, DOJ

44.    All records regarding the citizenship or immigration status Mr. Umaña's co-defendants on this indictment, ███████████████ , and █████████ .
*FBI, ICE, USCIS

45.    All records from the United States Attorney's Office and/or Department of Justice regarding any MS-13 investigation, MS-13 witness agreements, and allocation of resources for the MS-13 investigation that the Trial Judge, Robert J. Conrad, Jr., supervised, directed, or sanctioned either in his capacity as an Assistant United States Attorney or the United States Attorney for the Western District of North Carolina.
*DOJ

7