# Exhibit 01

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**Charlotte Division**

ALEJANDRO UMAÑA,
                Movant,                             3:16-CV-00057-RJC

        v.                           CAPITAL § 2255 PROCEEDING

UNITED STATES,                       HON. ROBERT J. CONRAD, JR.
                Respondent.

## [PROPOSED] ORDER ON MOVANT ALEJANDRO UMAÑA'S
## MOTION FOR LEAVE TO CONDUCT DISCOVERY

THIS CAUSE coming to be heard on Alejandro Umaña's Motion for Leave to Conduct Discovery (the "Motion"), the Court having reviewed the briefing filed by Mr. Umaña and the Government in relation to the Motion, and the Court otherwise being fully advised in the premises, **IT IS HEREBY ORDERED** that this Motion is:

    \_\_\_ **GRANTED IN FULL**

    \_\_\_ **GRANTED IN PART AND DENIED IN PART**

as stated more fully herein, with respect to the discovery requests directed toward the United States Attorney's Office for the Western District of North Carolina. The Court finds good cause exists for Mr. Umaña to obtain the discovery granted in this Order.

**I.**     **Requests for Records or Access to Tangible Items, Directed to the United States Attorney's Office (hereinafter "WDNC AUSA").**

As to each of the requests enumerated below in this Part I that bears an "X" to its left, the WDNC AUSA is **ORDERED** as follows:

1. The WDNC AUSA shall produce to Mr. Umaña's counsel all Records[1] in its possession, custody, or control that are responsive to such request, and certify when such production effort is complete;

2. To the extent such request seeks access to tangible items for purposes of testing or analysis, the WDNC AUSA shall work with Mr. Umaña's counsel to arrange for such testing and analysis to occur, at a mutually convenient time and location and with parameters agreed-upon in advance;

3. To the extent the WDNC AUSA is unable to locate any Records responsive to such request after conducting a reasonable search of the Records within the WDNC AUSA's possession, custody, or control, the WDNC AUSA shall certify in writing to Mr. Umaña's counsel that no such Records could be located;

---

[1] For purposes of this Order and the discovery requests, "Record" or "Records" shall be given the broadest possible meaning and shall include but not be limited to any writing of any kind, type or description, including but not limited to, writing or recording of information of any kind, correspondence, letters, memoranda, facsimiles, electronic mail (email), notes, desk calendars, diaries, statistics, telegrams, minutes, contracts, reports, studies, checks, invoices, statements, receipts, returns, warranties, guaranties, summaries, pamphlets, books, brochures, prospectuses, interoffice and intra-office communications, notations of any sort of conversation, telephone call messages, meetings or other communications, computer data, or other material of any kind from which information can be derived, whether produced, reproduced, or stored on paper, cards, tapes, film electronic facsimiles, computer storage devices, or any other medium, investigation notes, investigation records, investigation summaries, correlation summaries, surveillance (physical, electronic, photographic), case reports, interrogation reports, surveillance logs, FISUR log cover sheets, photographs, video and audio records and all transcribed statements, computer files, i-drive records, transfers of physical evidence, releases of physical evidence, diagrams, crime reports, follow-up investigation reports, toxicology reports, forensic reports, laboratory reports, evidence impound reports, warrants of arrest, search warrants, consent to search documents, returns of search warrants, extradition documents, polygraph examinations, travel documents, travel forms. "Record" and "Records" also mean a copy where the original is not in the WDNC AUSA's possession, custody, or control and every copy of a Record if such copy is not an identical duplicate of the original.

4. To the extent responsive Records have been or are believed to have been destroyed, the WDNC AUSA shall provide Mr. Umaña's counsel with a written statement regarding that fact or belief, the nature of the Records destroyed (including, insofar as can be discerned, by identifying the discovery request(s) to which such Records were responsive), and the date(s) such Records were destroyed;

5. To the extent the WDNC AUSA believes it has a basis to withhold Records (in whole or in part) that are responsive to such request, the WDNC AUSA shall (a) produce the portions of the Records not subject to such claim or privilege or protection, and (b) describe with specificity the nature of the Records not produced or disclosed (including by identifying the discovery request(s) to which such Records are responsive) and the WDNC AUSA's grounds for withholding such Records. Such descriptions must be provided in a manner that, without revealing information itself alleged to be privileged or protected, will enable Mr. Umaña's counsel to assess the WDNC AUSA's claim to such privilege or protection from discovery; and

6. Unless in conflict with this Order, the standards of Federal Rule of Civil Procedure 34 shall apply to the WDNC AUSA's responses to the requests. The timeframe for responding to these requests shall be as set forth in Rule 34, running from the date of entry of this Order.

7. The records requested pertain to the investigation and prosecution of Alejandro Umaña for the homicides of Manuel Garcia Salinas and Ruben Garcia Salinas, including the related investigation into the other crimes evidence presented at the

guilt phase in support of the RICO charges and the penalty phase in support of the

Government's case in aggravation, unless otherwise specified.

The enumerated requests directed to the WDNC AUSA are as follows:

1. All records and recordings of conversations or interactions between Mr. Umaña and any member of his legal team including but not limited to John Bryson, Mark Foster, and Richard McGough.

2. All records of communications between the Government and jail management and staff regarding the recruitment of individuals to be interviewed by Dr. Enrique Suarez as part of his evaluation of Mr. Umaña.

3. All records of communications between the Government and jail staff regarding the possibility of being interviewed by Dr. Enrique Enrique Suarez as part of his evaluation of Mr. Umaña.

4. All records of communications with Dr. Suarez identifying or mentioning correctional officers McIntyre, Farley and C. Holly as part of his evaluation of Mr. Umaña.

5. All records of communications with Dr. Enrique Suarez mentioning and/or discussing any other potential interviewee as part of his evaluation of Mr. Umaña.

6. All records of co-defendant statements about Mr. Umaña describing words or conduct indicating intellectual and/or adaptive defects. A list of Mr. Umaña's co-defendants is attached hereto as Attachment A.

7. All records of statements of the co-defendants, written, recorded or summarized, that describe Mr. Umaña's conduct, communication skills, relationship skills, social skills, living skills, work skills and/or any other adaptive skills relevant to the determination of Intellectual Disability. A list of Mr. Umaña's co-defendants is attached hereto as Attachment A.

8. All records of lyrical or poetic materials created by or found in the possession of Mr. Umaña's codefendants which may have provided the basis for materials Mr. Umaña allegedly created and the Court considered in reaching its Atkins determination. A list of Mr. Umaña's co-defendants is attached hereto as Attachment A.

9　All records in which any court or agency, in Florida or elsewhere, either sanctioned Dr. Suarez for improper conduct or sought sanctions related to mental health evaluations.

10　All records in the possession or control of the Florida Board of Psychology regarding complaints and disciplinary records on Enrique Suarez, Ph.D.

11　All records of analyses of Mr. Umaña's written communications.

12　An Order granting leave to depose Enrique Suarez, Ph.D.

13　All records containing physical descriptions, including photographs and descriptions of tattoos, of Mr. Umaña and his co-defendants in this indictment. A list of Mr. Umaña's co-defendants is attached hereto as Attachment A.

14　All records containing physical descriptions, including photographs and descriptions of tattoos of any other individual detained or interrogated on this case (including but not limited to Rene Mauricio Arevalo, Luis Mario Ramos, Eddie Omar Ruiz, Luis Rivera, Geovani Rodas, and Alex Montes).

15　All records that were created to document, reflect or analyze interviews of, or statements by, Luis Ramos.

16　All records regarding the transport/housing of Luis Ramos pretrial, during trial and during the trials and pleas of Mr. Umaña and his co-defendants. A list of Mr. Umaña's co-defendants is attached hereto as Attachment A.

17　All records of statements by the co-defendants indicating that Mr. Umaña was not a leader of MS-13 and/or had no authority to order an assault against Luis Ramos, or anyone else, and/or that he did not issue any such order. A list of Mr. Umaña's co-defendants is attached hereto as Attachment A.

18　All records of statements by any other witnesses interviewed by Government law enforcement, including local, county, state, or El Salvadoran law enforcement working with the Government on MS-13 investigations, including investigations in El Salvador indicating that Mr. Umaña was not a leader of MS-13 and had no power to order an assault against Luis Ramos, or anyone else, and/or that he did not issue any such order

19　All records of any witnesses who agreed or refused to cooperate with the Government against Mr. Umaña.



All records of translation of all letters Mr. Umaña generated or received, and all recordings that Mr. Umaña either participated in or in which he is mentioned and any notes generated in association with the creation of those translations.

All records regarding the cooperative working relationship between the Los Angeles Police Department, including without limitation LAPD Detective Frank Flores, and the Western District of North Carolina United States Attorney's Office regarding the prosecution of Mr. Umaña.

All records regarding the cooperative working relationship between Los Angeles Police Department, including without limitation LAPD Detective Frank Flores, and the Department of Justice regarding the prosecution of Mr. Umaña.

All records regarding the cooperative working relationship between the Los Angeles Police Department, including without limitation LAPD Detective Frank Flores, and the Federal Bureau of Investigation.

All records, including communications between the Government and the Los Angeles County District Attorney's Office, regarding the pursuit and filing of charges against Mr. Umaña for offenses that occurred in North Carolina.

All records, including communications between the Federal Bureau of Investigation and North Carolina law enforcement, including but not limited to the Greensboro Police Department, Guilford County District Attorney's Office, and the North Carolina State Bureau of Investigation, regarding the pursuit and filing of charges against Mr. Umaña for offenses that occurred in Greensboro, North Carolina.

28	All records, including communications between the Western District of North Carolina United States Attorney's Office and North Carolina law enforcement, including but not limited to the Greensboro Police Department, Guilford County District Attorney's Office, and North Carolina State Bureau of Investigation, regarding the pursuit and filing of charges against Mr. Umaña for offenses that occurred in Greensboro, North Carolina.

29	All records of communications between the Western District of North Carolina United States Attorney's Office, its Anti-Gang Task Force, and/or the FBI and the Los Angeles Police Department and/or Los Angeles District Attorney's Office regarding the investigation of the unadjudicated California murders and the Government's intention to present evidence of those offenses during the trial of this case.

30	All records regarding LAPD Det. Frank Flores' bias, credibility, malfeasance, and/or reliability as an expert and/or fact witness surrounding gang-related matters.

31	All records regarding law enforcement training on gang related issues in which LAPD Det. Frank Flores participated in as either an attendee and/or presenter.

32	All records regarding Mr. Umaña's purported involvement in MS-13 groups in New York, Long Island and Hempstead obtained and/or investigated by the Western District of North Carolina United States Attorney's Office and its Anti-Gang Task Force, the FBI, the Department of Justice, Charlotte-Mecklenburg and Greensboro law enforcement.

33	All records regarding the homicide incidents and the shooting incident with the "White Fence" gang referenced by Detective Parshall in his testimony against Mr. Umaña in 3:08-cr-00134 (W.D. NC)..

34	All records of conversations between the FBI, the LAPD, and/or the Government regarding the homicide incidents and the shooting incident with the "White Fence" gang referenced by Detective Parshall in his testimony against Mr. Umaña in 3:08-cr-00134 (W.D. NC)..

35	All records regarding Rene "Moe" Arevalo's citizenship or immigration status including but not limited to records regarding deportation, removal, voluntary departure, arrest, detention, supervision, interviews, and dispositions.

36

37 All records regarding Manuel Garcia Salinas and Ruben Garcia Salinas including but not limited to: arrest records; police incident reports; offense reports; reports by District Attorney investigator(s); interview reports or factual summaries; probation records; and drug and alcohol assessments connected with the prosecution of Manuel Garcia Salinas and Ruben Garcia Salinas.

38 All documents provided by the Government to the Court remaining in the custody and control of the Court.

39 A copy of all documents the Government submitted to the Court *ex parte* during the course of the *Atkins* proceedings and any and all documentation, logs, and/or other materials demonstrating the authenticity and/or reconstruction and completeness of the *ex parte* submission.

40 A copy of all documents the Government submitted to the Court *ex parte* during the course of the pretrial proceedings regarding the admission of other crimes evidence and any and all documentation, logs, and/or other materials demonstrating the authenticity and/or reconstruction and completeness of the *ex parte* submission.

41 Copies of any logs, notes, documents, and/or communications between the Government and the Court and within the Government regarding the submission of these documents *ex parte*.

42     As to each of Mr. Umaña's co-defendants on this indictment and unindicted, cooperating witnesses ████████████████ and ████████ :

       a.   all proffer letters regarding the individual's cooperation with police and prosecution for any state, county and/or federal case, including immigration cases;

       b.   all records regarding any investigative steps taken to verify the reliability of the individual's information/proffer;

       c.   identification of any and all state, county and federal cases in which the individual testified;

       d.   identification of any and all state, county and federal cases in which individual/cooperator provided information to the police or prosecution, but did not testify;

       e.   identification of any and all persons about whom the individual/cooperator provided information to the police and prosecution.

A list of Mr. Umaña's co-defendants is attached hereto as Attachment A.

43     All records regarding the citizenship or immigration status Mr. Umaña's co-defendants on this indictment, ████████████ , and ████████ . A list of Mr. Umaña's co-defendants is attached hereto as Attachment A.

44     All records from the United States Attorney's Office and/or Department of Justice regarding any MS-13 investigation, MS-13 witness agreements, and allocation of resources for the MS-13 investigation that the Trial Judge, Robert J. Conrad, Jr., supervised, directed, or sanctioned either in his capacity as an Assistant United States Attorney or the United States Attorney for the Western District of North Carolina.

## II. Interrogatory Requests Directed to the WDNC AUSA.

Mr. Umaña is permitted to serve interrogatories of representatives of the United States Attorney's Office regarding the submission, retention, and reconstruction of materials submitted

to the Court *ex parte* regarding the presentation of other crimes evidence and the *Atkins* determination.

SO ORDERED.

Entered: _____    _____
                                                                          Hon. Robert J. Conrad, Jr.
                                                                          U.S. District Court Judge

# Attachment A

a. Manuel De Jesus Ayala a/k/a "Chacua", DOB: ███████████████

b. Heverth Ulises Castellon a/k/a "Misterio" or "Sailor", DOB: ████████; ██████

c. Julio Cesar Rosales Lopez a/k/a "Stiler", DOB: ██████

d. Juan Gilberto Villalobos a/k/a "Smoke" or "Smokey", DOB: ██████

e. Elvin Pastor Fernandez−Gradis a/k/a "Tigre", "Flaco", "Juan Alberto Irias", or "Freddy", DOB: ████████

f. Juan Ruben Vela Garcia a/k/a "Mariachi", DOB: ██████

g. Jose Amilcar Garcia−Bonilla a/k/a "Psicopata" or "Sicario", DOB: ██████

h. Yelson Olider Castro−Licona a/k/a "Diablo", DOB: ██████

i. Carlos Ferufino−Bonilla a/k/a "Tigre", DOB: ██████

j. Nelson Hernandez−Ayala a/k/a "Sixteen", DOB: ██████

k. Mario Melgar−Diaz a/k/a "Nino", DOB: ████████████████

l. Alexi Ricardo Ramos a/k/a "Pajaro", DOB: ██████

m. Carlos Roberto Figueroa−Pineda a/k/a "Drogo", DOB: ██████

n. Cesar Yoaldo Castillo a/k/a "Chino", DOB: ██████

o. Alexander Granados a/k/a "Gorilon", DOB: ██████

p. Michael Steven Mena a/k/a "Cholo", DOB: ██████

q. Johnny Elias Gonzalez a/k/a "Solo", DOB: ██████

r. Jaime Sandoval a/k/a "Pelon", DOB: ████████

s. Santos Canales−Reyes a/k/a "Chicago", DOB: ██████

t. Jose Efrain Ayala−Urbina a/k/a "Peligroso", DOB: ████████

u. Oscar Manuel Moral−Hernandez a/k/a "Truchon", DOB: ▮▮▮▮

v. Santos Anibal Caballer Fernandez a/k/a "Garra", DOB: ▮▮▮▮

w. Manuel Cruz a/k/a "Silencisco", DOB: ▮▮▮▮8

x. Javier Molina a/k/a "Big Psycho" or "Gringo", DOB: ▮▮▮▮

y. Mario Guajardo−Garcia a/k/a "Speedy" or "Iran Guerrero-Gomez", DOB: ▮▮▮▮