# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### Charlotte Division

ALEJANDRO UMAÑA,

              Movant,

        v.

UNITED STATES,

              Respondent.

3:16-CV-00057-RJC

CAPITAL § 2255 PROCEEDING

HON. ROBERT J. CONRAD, JR.

**MOVANT'S OPPOSITION TO THE GOVERNMENT'S MOTION TO DISMISS/REPLY PURSUANT TO RULE 5 OF THE RULES GOVERNING SECTION 2255 PROCEEDINGS**

**Reply to the Government's Statement of Facts**..................................................................... 1

**Statement of Relevant Procedure** ....................................................................................... 4

**I. Material Pleadings are Currently Unresolved.** ................................................... 6

    A. The Government's Motion Addresses Movant's 2016 Motion. ........................................ 6

    B. The Court's Discovery Order does not Control the Motion to Dismiss. ........................... 9

    C. Movant's Motion to Reconsider the Denial of his First Discovery Motion and his

    Supplemental Discovery Motion and Have Not Been Addressed. ........................................... 10

    D. Conclusion ..................................................................................................................... 12

**II. The Government's Motion to Dismiss Misstates and Misapplies the Applicable**

**Standard of Review.**................................................................................................................. 12

    A. The Government misstates the controlling standard of review. ...................................... 13

    B. The Rules Governing 2255 Cases and the Fourth Circuit Application of Those Rules

    Clearly Delineate the Appropriate Standard of Review. ........................................................ 16

**III. Clarification of Procedural Default and Substantive Claims for Relief.** ....................... 21

    A. The Government is required to go beyond bare conclusory statements to adequately meet

    its burden of asserting procedural bars. .................................................................................. 21

    B. The necessary elements of Movant's substantive claims. .............................................. 26

**IV. Addressing Movant's Claims for Relief, The Government Variously Misstates or**

**Misapplies the Standard of Review that Applies to its Motion to Dismiss, Misstates or**

**Misapplies the Substantive Law, or Ignores or Mischaracterizes the Facts.** ....................... 31

A.    The Facts Contained in Claim I – Regarding Trial Counsel's Ineffectiveness in Investigating and Presenting Lay Evidence – State a Plausible Claim for Relief. ................... 31

B.    The Facts Contained in Claim II – Regarding Trial Counsel's Ineffectiveness in Investigating, Developing, and Presenting Mental Health Evidence – State a Plausible Claim for Relief. ...................................................................................................... 50

C.    The Facts Contained in Claim III – Regarding Counsel's Ineffectiveness in Investigating and Presenting Evidence at the Atkins Hearing – State a Plausible Claim for Relief. ............. 67

D.    Movant Has Stated a Plausible Claim That He Is Intellectually Disabled, Ineligible for the Death Penalty, and Appellate Counsel Ineffectively Litigated This Issue on Direct Appeal (Claim IV). ................................................................................................... 80

E.    The Facts Contained in Claim V – Regarding Counsel's Ineffectiveness in Investigating and Presenting Evidence Challenging Movant's Participation in the Los Angeles Homicides – State a Plausible Claim for Relief. ............................................................................. 93

F.    The Facts Contained in Claim VI – Regarding the Prosecution's Violation of its *Brady* Obligations – State a Plausible Claim for Relief. ................................................................ 105

G.    The Facts Contained in Claim VII – Regarding the Prosecution's Presentation of Materially Misleading and/or False Evidence and Argument – State a Plausible Claim for Relief. ................................................................................................................ 115

H.    The Facts Contained in Claim VIII – Regarding Trial and Appellate Counsel's Ineffective Litigation of the Government's Use of His Jail Letters – State a Plausible Claim for Relief. 129

I.    The Facts Contained in Claim IX – Regarding Counsel's Ineffectiveness for Failing to Present Movant's Apology Note to the Jury – States a Plausible Claim for Relief. ............... 132

J. The Facts Contained in Claim X – Regarding Counsel's Failure to Seek Redactions to Prevent the Jury From Hearing About Acquitted Other Crimes Evidence This Court Ruled Excluded – State a Plausible Claim for Relief. ........................................................ 133

K. The Facts Contained in Claim XI – Regarding Trial Counsel's Ineffective Failure to Challenge and Rebut the Government's Use of Movant's Tattoos – State a Plausible Claim for Relief. ........................................................................................................ 134

L. The Facts Contained in Claim XII – Regarding Prosecutorial Misconduct for Introducing Unredacted Exhibits Containing Information the Court Ruled Excluded – State a Plausible Claim for Relief. ............................................................................................ 136

M. The Facts Contained in Claim XIII – Regarding Trial Counsel's Failure to Seek Continuances of the Atkins Hearing and Trial – State a Plausible Claim for Relief. ............. 139

Q. The Facts Contained in Claim XVII – Regarding Bias in the Venire – State a Plausible Claim for Relief. .................................................................................................. 155

R. The Facts Contained in Claim XVIII – *Regarding Batson* – State a Plausible Claim for Relief. ................................................................................................................ 157

S. The Facts Contained in Claim XIX – Regarding Trial Counsel's Failure to Investigate and Introduce Mental Health Evidence to Contest the Admissibility and Credibility of Movant's Police Statements – State a Plausible Claim for Relief. ........................................ 159

T. The Facts Contained in Claim XX – Regarding the Denial of Movant's Right to Presence – State a Plausible Claim for Relief. ........................................ 161

U. The Facts Contained in Claim XXI – Regarding the at-Trial Security Measures – State a Plausible Claim for Relief. ........................................ 162

V. Movant Has Stated a Plausible Claim That His 924(c) Convictions are Invalid, Requiring Vacatur of His Death Sentences (Claim 22). ........................................ 163

W. The Facts Contained in Claim XXIII – Regarding Trial Counsel's Ineffective Presentation of His Case to the DOJ – State a Plausible Claim for Relief. ........................................ 168

X. The Facts Contained in Claim XXIV – Regarding Trial Counsel's Ineffectiveness in Plea Negotiations – State a Plausible Claim for Relief. ........................................ 170

Y. The Facts Contained in Claim XXV – Regarding the DOJ's Unconstitutional Decision to Seek Death Based on Race and Geography – State a Plausible Claim for Relief. ................ 171

Z. The Facts Contained in Claim XXVI – Regarding Movant's Vienna Convention Rights and Related Ineffective Assistance of Counsel and Prosecutorial Misconduct – State a Plausible Claim for Relief. ........................................ 173

AA. The Facts Contained in Claim XXVII – Regarding Trial Counsel's Failure to Object to Preserve Certain Enumerated Errors for Appellate Relief – State a Plausible Claim for Relief. ........................................ 175

BB. The Facts Contained in Claim XXVIII – Regarding the Eighth Amendment's Prohibition on Execution of Individuals with Brain Damage and Other Mental Impairments – State a Plausible Claim for Relief. ........................................................................... 175

CC. Movant's Claims of Cumulative Error (Claims 29 and 30) Are Plausible on Their Face. ............................................................................................................... 178

DD. The Facts Contained in Claim LIX – Regarding the Invalidity of Movant's Felon in Possession Conviction Following *Rehaif* – State a Plausible Claim. ..................................... 178

**Certificate of Service........................................................................................................ 179**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### Charlotte Division

_____

ALEJANDRO UMAÑA,

                Movant,

       v.

UNITED STATES,

                Respondent.

_____

3:16-CV-00057-RJC

CAPITAL § 2255 PROCEEDING

HON. ROBERT J. CONRAD, JR.

### MOVANT'S OPPOSITION TO THE GOVERNMENT'S MOTION TO DISMISS/REPLY PURSUANT TO RULE 5 OF THE RULES GOVERNING SECTION 2255 PROCEEDINGS

Movant, Alejandro Umaña, through undersigned counsel, provides this Opposition to the Government's Motion to Dismiss/Reply Pursuant to Rule 5 of the Rules Governing Section 2255 Proceedings, and states as follows:

### REPLY TO THE GOVERNMENT'S STATEMENT OF FACTS

The government's Statement of Facts describes Movant's conviction, and neglects to mention events outside the charged (and uncharged) events alleged at trial. Motions brought under § 2255 necessarily involve facts from outside the trial record so the government's statement of facts are quasi-relevant to *these* proceedings and startlingly incomplete. Moreover, because the government has declined to counter the majority of Movant's allegations – either by identifying evidence in the record or by providing additional extra-record evidence – the majority of Movant's factual allegations stand uncontradicted.

Because the government has not alleged facts to dispute or contradict most of Movant's allegations, and because those factual allegations occupy several hundreds of pages across multiple pleadings and several hundred pages of supporting exhibits, Movant does not now restate his

1

factual allegations in full. But, briefly Movant's 2016 2255 Motion (Civ. Doc. 24[1]); 2020 and 2022 *Johnson* Amendments (Civ. Docs. 91, 111), 2020 *Rehaif* Amendment (Civ. Doc. 89), 2023 Amended 2255 Motion (Civ. Doc. 146); and supporting exhibits to all, tell a different story from that advanced by the government. Movant's pleadings describe trial counsel who were overwhelmed with the sheer volume of discovery in this case and the complexities of conducting an international mitigation investigation, who failed to conduct basic investigation to challenge the case in aggravation and develop an affirmative case for their client's life. *See* Civ. Docs. 24. & 146 at Claims I-II, V, VIII, XI, XXIII, XXVI, XXX. As a result, trial counsel's mitigation case was largely dependent on one family member, Movant's father; and trial counsel failed to uncover evidence that would have cast doubt on the reliability of the government's case in aggravation. *See* Civ. Docs. 24 & 146 at Claims I, II, III.

Compounding the effect of counsel's incomplete investigation and preparation for trial, Movant was tried before a jury that was systemically tilted against him. *See* Civ. Docs. 24 & 146 at Claims IX, XIV, XV- XIX*.* As this case progressed to trial, despite counsel's failure to have conducted a complete investigation, counsel failed to ensure the jury selection process was adequately tailored to ensure a fair and impartial jury. ███████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

---

[1] Movant's 2016 2255 Motion was filed publicly and redacted at Civ. Doc. 22, and sealed and unredacted at Civ. Doc. 24. Movant's 2023 2255 Motion was filed publicly and redacted at Civ. Doc. 148, and sealed and unredacted at Civ. Doc. 146. The government's Motion to Dismiss was filed publicly and redacted at Civ. Doc. 142, and sealed and unredacted at Civ. Doc. 143. The government's Discovery Response is filed publicly and unredacted at Civ. Doc. 50, and sealed and unredacted at Civ. Doc. 52. For ease of reference, Movant will only cite to the sealed versions of these documents in this pleading.

2

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

Unpresented evidence – the factual basis of which the government does not dispute here – included first-hand accounts of over 29 family, neighbors, and friends showing that Movant's father presented a self-serving picture to trial counsel, and in fact was brutally abusive to Movant's mother and Movant, (Civ. Docs. 24 & 146 at Claim I); that Movant's father drugged Movant's mother with Rohypnol when she was pregnant with Movant, (Civ. Docs. 24 & 146 at Claim I, p. 34 & Appx. 10); that Movant's mother also binge-drank during the pregnancy, (Civ. Doc. 24, Appxs. 10, 18 & Civ. Doc. 150, Appxs. 10, 18); that Movant's mother was so distraught during the pregnancy she attempted suicide by ingesting a neurotoxic pesticide, (Civ. Docs. 24 & 150, Appx. 10); that Movant could not master third grade academics at age 16 in night school, (Civ. Docs. 24 & 146 at Claim I, III; Civ. Doc. 24 Appxs. 19, 15, 2; Civ. Doc. 150, Appxs. 19, 15, 2); that Movant could not follow basic directions to pick the ripe (red) coffee beans instead of the unripe (green) coffee) beans, (Civ. Docs. 24 & 146 at Claim I; Civ. Doc. 106, Appx. 220 at ¶¶4-6; Civ. Doc. 150, Appx. 220 at ¶¶4-6); that Movant continued to be immature even after he joined MS-13, hanging out with younger kids and watching cartoons, (Civ. Docs. 24 & 146 at Claim I; Civ. Doc. 150, Appx. 112 at ¶4, 10, 34); that the Federal Bureau of Prisons documented Movant's academic deficits shortly after his conviction in this case, (Civ. Docs. 24 & 146 at Claim III; Civ. Doc. 150, Appx. 245); and that Movant exhibited symptoms consistent with psychosis, including seeing visions and hearing voices that were not there and beliefs that his dreams foretold the future, (Civ. Docs. 24 & 146 at Claim I, II; Civ. Doc. 150, Appxs. 112, 214, 215, 216, 237; Gov't Tr. Ex.

169a, 176a). Unpresented evidence challenging the government's case in aggravation included the fact that Lemon Grove victim Roberto Ramos could have affirmatively excluded Movant as the shooter, (Civ. Docs. 24 & 146 at Claim V, VI; Civ. Doc. 24, Appx. 11 at 7-8; Civ. Doc. 150, Appx. 11 at 7-8), and statements by Freddy Gonzalez (undisclosed by the government at the time of trial) that he expressed a great deal of uncertainty about his ability to make an identification in the Lemon Grove case because he never got a good look at the shooter, (Civ. Docs. 24 & 146 at Claim V, VII). As described throughout this Reply, the story told in Movant's pleadings and proffered evidence supports a plausible claim that at least one juror would have voted to spare his life if the jury – properly constituted – heard, not just the government's side of the story, but a reasonably investigated and presented case for the defense.

**STATEMENT OF RELEVANT PROCEDURE**

Counsel who represented Movant on appeal were also appointed to represent him in any subsequent § 2255 proceedings following the conclusion of direct appeal. Crim. Doc. 1648. Appellate/2255 counsel subsequently filed a timely Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Conviction and Sentence. Civ. Doc. 24, hereinafter "2016 2255 Motion". He filed a Motion for Leave to Conduct Discovery on October 21, 2016, seeking discovery of documents and tangible items, arguing that the allegations (and relevant factual support) in his 2016 Motion established good cause for the requested discovery. Civ. Docs. 36, 37 (sealed).

For a variety of reasons not immediately relevant to this matter, on February 22, 2017, the Office of the Federal Public Defender for the Middle District of Pennsylvania was appointed as co-counsel to appellate/habeas counsel in the habeas proceedings. Civ. Doc. 49. Subsequently, in February 2018, Movant moved for leave of court to file a supplemental/amended 2255 motion which alleged, *inter alia*, ineffective assistance of appellate counsel. Civ. Docs. 68, 69. Because of the conflict of interest identified by the claims of ineffective assistance of appellate counsel,

4

Movant requested that appellate/habeas counsel be allowed to withdraw. Civ. Doc. 86. The Court denied that request in June 2020 (Civ. Doc. 87), and, in July 2020, appellate/habeas counsel again moved to withdraw as counsel (Civ. Doc. 94). That motion was ultimately granted on May 25, 2021. Civ. Doc. 107.

In addition to claims of appellate counsel's ineffectiveness, the proffered amended/supplemental 2255 (Civ. Docs. 68, 69) included allegations of movant's incompetence at all stages of the trial and sentencing, (Civ. Doc. 68, claim 31), his intellectual disability, (*Id.*, claim 42), and allegations concerning his comorbid mental illness and intellectual disability, (*Id.*, claims 31, 36, 42, 43, 52). The government responded to the request for leave to file the amended/supplemental 2255 motion on May 7, 2018, arguing that the majority of the allegations did not relate back to the original 2016 Motion or were otherwise futile, and that equitable tolling— either due to Movant's incompetence or due to appellate/habeas counsel's conflict of interest— does not excuse an otherwise-untimely amended/supplemental 2255 motion. Civ. Doc. 77.

On consecutive days, movant filed a Reply to the government's Response and a Motion to Stay Proceedings on the basis of Movant's incompetence. Civ. Docs. 81, 82. This Court denied the stay motion just under four months later, on September 24, 2018 (Civ. Doc. 85), but denied leave to file the February 2018 supplemental/amended 2255 on October 11, 2022. Civ. Doc. 131. In the same Order, the Court directed the government to respond to Movant's 2016 2255 Motion. After a series of unopposed extensions to file a response, the government filed a Motion to Dismiss on March 2, 2023. Civ. Doc. 143.

On March 23, 2023, Movant filed an as-of-right Amended Motion in part to address the "deficiencies" alleged by the government in its Motion to Dismiss. Civ. Doc. 146, hereinafter "2023 Motion". The government objected and moved to hold the as-of-right 2023 Motion in

abeyance pending resolution of the government's Motion to Dismiss. Civ. Doc. 152. In the same Motion the government asked that, should the as-of-right amendment be considered the operative 2255 Motion, the government's Motion to Dismiss Movant's 2016 2255 Motion be "transferred" to the 2023 Motion. (*Id*. at 12). While the government's abeyance motion has not been resolved, Movant files this pleading in response to the government's Motion to Dismiss which, for the reasons detailed in Section II(B), *infra*., stands as Movant's "Reply" pursuant to Rule 5 of the Rules Governing Section 2255 Cases.

## I.     MATERIAL PLEADINGS ARE CURRENTLY UNRESOLVED.

Rather than file an Answer (to Movant's 2016 Motion) pursuant to Rule 5 of the Rules Governing Section 2255 Proceedings, the government filed a Motion to Dismiss. Because motions to dismiss are designated as responsive pleadings under Rule 5, the government's choice of nomenclature mandates the application of a specific standard of review to the government's arguments that does not exist where respondents file an Answer or similar response. Before that standard of review can be addressed, however, it is necessary to determine what exactly the government is seeking to dismiss, and the bases for seeking dismissal.

### A.  The Government's Motion Addresses Movant's 2016 Motion.

As summarized in the procedural statement, *supra*., the government's Motion to Dismiss was filed in response to the 2016 Motion and before Movant filed his as of right 2023 Amended Motion. Obviously, therefore, it does not address many of the specifics contained in the 2023 Motion or all of Movant's Allegations. *See* Rule 5(b) ("The answer must address the allegations in the motion."). While the deficiencies of the government's Motion are understandable, they are entirely of the government's own making. Movant properly filed an Amended Motion under Rule 15(b)(2) to address points raised in the government's responsive pleading. For the reasons detailed here, the government was required to file a new responsive pleading to address the additional or

6

amended allegations in the 2023 Motion. Instead, the government's requests for the 2023 Motion be held in abeyance and in the alternative to "transfer" its Motion to Dismiss to the 2023 Motion are unprecedented and unwarranted, and have thrown the case into a procedural morass that will require further time and resources to untangle.

An application for habeas corpus "may be amended or supplemented as provided in the rules of procedure applicable to civil actions." 28 U.S.C. § 2242; *see also Mayle v. Felix*, 545 U.S. 644 (2005) (applying Rule 15 in the 2254 context). Federal Rule of Civil Procedure 15(a)(1)(B) provides that "a party may amend its pleadings once as of right within twenty-one days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f)," "[i]f the pleading is one to which a responsive pleading is required." The government has filed a Motion to Dismiss which, for the reasons detailed in Section III, *infra.*, is treated as a "Motion under Rule 12(b)[6]." Rule 15(a)(1)(B) therefore applies. Moreover, Rule 5 of the Rules Governing Section 2255 was amended in 2004 to "reflect[] that the response to a Section 2255 motion may be made by a motion to dismiss…" Committee Notes on the Rules-2004 Amendment. Thus, again, Rule 15(a)(1)(B) applies. There is – or should be – therefore no doubt as to Movant's right to file his 2023 Motion, *e.g.*, *Galustian v. Peter*, 591 F.3d 724, 730 (4th Cir. 2010) (because "[t]he plaintiff's right to amend once is absolute," the court may not deny amendment); *also see Martensen v. Chicago Stock Exchange*, 882 F.3d 744, 745 (7th Cir. 2018) ("An amendment authorized by Rule 15(a)(1) must be accepted."); *Marshall v. Knight*, 445 F.3d 965, 970 (7th Cir. 2006) (denying timely leave to amend was per se abuse of discretion), Movant's 2023 2255 Motion should be the operative 2255 Motion.

An amended complaint/2255 motion takes the place of the original. It nullifies any pleading that is based on or responsive to, the original. *See Berkeley Cnty. Sch. Dist. v. Hub Int'l Ltd.*, 944

7

F.3d 225, 241 (4th Cir. 2019) ("We have recognized, however, that an amended complaint – such as the Operative Complaint here – supersedes an initial complaint and renders it 'of no effect.'") (citing *Young v. City of Mount Ranier*, 238 F.3d 567, 573 (4th Cir. 2001)). Thus, in the ordinary course of events the defendant must file a new responsive pleading where the plaintiff amends their complaint. *Mitchell v. City of Charlotte*, No. 323CV00006RJCSCR, 2023 WL 3046076, at *1 (W.D.N.C. Apr. 21, 2023), citing *Young v. City of Mount Ranier* to deny without prejudice as moot defendant's motion to dismiss as it preceded plaintiff's timely Rule 15(a)(1)(B).[2]

Rather than file a new Motion to Dismiss or other responsive pleading, the government used its abeyance motion to request that its Motion to Dismiss be applied to the 2023 2255 Motion. Civ. Doc. 143. Thus, the government adopted two mutually inconsistent positions, both of which are wrong as matters of law. An abeyance is simply not a permitted procedure in response to Movant's exercising of his absolute right to amend, not least because it would create an inordinate and entirely unnecessary waste of judicial resources. If the government's proposal were adopted, the parties and this Court would be required to address and resolve the arguments in the motion to dismiss, but then lift the hold on the 2023 Motion and address and resolve a second motion to dismiss. The government provides no reason to require this unnecessarily duplicative and redundant process.

But the law is clear that, whatever the situation, the government's Motion to Dismiss *cannot* be "transferred" to the 2023 Motion. *Mitchell v. City of Charlotte*, No. 323CV00006RJCSCR, 2023 WL 3046076, at *1.

---

[2] In its abeyance motion the Government argued that "allowing" Movant to employ his Rule 15(a)(1)(B) right would allow for an infinite loop of amendments as-of-right. Fortunately, the drafters of Rule 15 considered that possibility, and so included in the very language the provision that such amendments are permitted "once". F.R.C.P. Rule (a)(1).

Ultimately, as a result of the government's unprecedented abeyance and transfer requests, neither of which are proper but both of which remain "live" and unresolved, this case now has *two* properly filed "complaints" to which the government is responding, and from which Movant must now Reply.

### B. The Court's Discovery Order does not Control the Motion to Dismiss.

In numerous instances throughout its Motion to Dismiss the government simply refers to this Court's Order denying discovery as its basis to dismiss Movant's claims. That reliance is inappropriate, for two reasons.

First, the Court's Order is not sufficient by itself to support dismissal of actual claims for relief. The Discovery Motion that the Order rejects asks for specific and discrete documents or other materials. Consequently, the Court's denial of discovery for those specific materials does not control the Court's determination of the underlying claims. *Rossi v. US Bank Nat'l Ass'n as Tr. for BAFC 2006-D*, No. CV GLR-21-2752, 2022 WL 3028003, at *6 (D. Md. Aug. 1, 2022) ("the law of the case applies only to issues that have actually been decided," *citing United States v. Bennerman*, 785 F.App'x 958, 963 (4th Cir. 2019)); *see also WW, LLC v. Coffee Beanery*, LTD, No. WMN-05-3360, 2013 WL 3776944, at *5 (D. Md. July 17, 2013) (explaining that a "holding" means "a court's determination of a matter of law pivotal to its decision").

For example, under the umbrella of Claim I, Movant requested "any" documents concerning ten specific individuals or incidents. Civ. Doc. 37 at 55. The denial of those requests concerning a small group of discrete individuals or incidents is not pivotal to the ultimate determination of Claim I. Indeed, given that Movant has provided in his 2023 2255 Motion a wealth of additional evidentiary support underpinning his Claim I allegations much of the items covered by the discovery requests are immaterial to that final determination.

Second, as noted above, the Court denied discovery on the strength of the allegations contained in Movant's 2016 2255 Motion. Thus, even if the Order could be read to decide the merits of Movant's claims, it "is of no effect" now because of the 2023 Motion. *E.g. Mitchell v. City of Charlotte*, No. 323CV00006RJCSCR, 2023 WL 3046076, at *1. The reason is obvious; the Court's analysis in denying discovery necessarily depended upon the 2016 2255 Motion's claims, and their component allegations and supporting evidence. As the 2023 2255 Motion contains additional evidentiary support for the allegations, and addresses several of the government's default arguments, the Order's analyses no longer apply. The government's Motion to Dismiss therefore incorporates by reference a pleading that, in practical effect, does not exist.

For similar reasons, the government's repeated reliance on its Discovery Response is misplaced, further highlighting the confused procedural posture of this case. The nullification effect of the 2023 2255 Motion would necessarily apply to that Response because it, like the resulting Order form the Court, relies on the now-superseded allegations in the 2016 2255 Motion.

As a consequence, it may be that the government's Motion to Dismiss simply fails as a matter of law because it does not address most of Movant's claims as it relies on analyses made in an Order (and prior pleading) that does not exist and does not apply. Alternatively, the Court may conclude that Movant's Rule 15 rights do not apply for some reason, and so the government's Motion properly can rely on the Order, requiring the parties and this Court to address the extent of that reliance. Which is the case is not clear.

### C. Movant's Motion to Reconsider the Denial of his First Discovery Motion and his Supplemental Discovery Motion and Have Not Been Addressed.

Movant moved the Court to reconsider the denial of the first discovery motion on June 28, 2022. Civ. Doc. 113. That Motion is currently undecided.

In that Motion, Movant argued that the Court had erroneously required Movant to "prove" *Strickland*-prejudice or *Brady*-materiality in respect to the claims to which certain discovery requests related. Civ. Doc. 113 at 6-7. As explained in Section II, *infra.*, Movant is not required to *prove* his claims to survive this Motion to Dismiss. Consequently, the application of prior legal rulings (in a nullified order, *see* Section I(B), *supra.*) that rest upon a much higher standard of proof than applies here would be improper. The government's repeated efforts to incorporate by reference (as addressed below) a prior (nullified) Order that applies a standard of review that is inapplicable should be rejected. However, Movant's reconsideration motion remains undecided. It is therefore not possible to know whether the government's reliance on the (nullified) Order is improper as a matter of law (and so requiring no analysis) or *procedurally* proper but requiring further legal analysis by the parties and this Court.

Also still unresolved is Movant's July 20, 2022, Supplemental Motion for Discovery. Civ. Doc. 127. That Motion followed, and so relied in part on, Movant's proffered Supplemental/Amended Section 2255 Motion. Civ. Docs. 68, 69, 71. The Court's denial of leave to file that Supplemental/Amended Motion (Civ. Doc. 131, dated October 11, 2022) did not address the Supplemental Discovery Motion. Because the Supplemental Discovery Motion relies on *both* the 2016 2255 Motion and the Supplemental/Amended Motion, the Court's denial of leave to file the Supplemental/Amended 2255 Motion did not nullify the Supplemental Discovery Motion. That Supplemental Discovery Motion therefore remains outstanding, leaving the possibility that some or all of the government's factual arguments (which, for the reasons detailed in Section II, *infra.*, are misplaced) may be mooted, resolved, or otherwise affected, by the revelation of evidence through discovery.

11

### D. Conclusion

For various reasons, the procedural status of this case is disordered to the point that ultimate resolution is practically impossible. Notwithstanding the clear *legal* requirements, the *practical* reality is this case currently has two complaints/2255 Motions with no resolution of which is operative. Relatedly, the government's 2255 response relies to significant extent on the non-controlling rulings in a nullified discovery Order, the basis of which remains under unresolved partial challenge, while another substantive discovery motion remains unaddressed. Given this disordered procedural status, it is impossible to know exactly what the government is responding to, and what the bases of that response are.

So as not to further delay this case, where possible Movant shall address the government's Motion to Dismiss as applied to both the 2016 and 2023 2255 Motions. However, Movant will also identify where necessary how the existence of two properly filed "complaints," the confusion surrounding discovery, or both, makes resolution of the government's Motion to Dismiss complicated to the point of impossibility.

## II. THE GOVERNMENT'S MOTION TO DISMISS MISSTATES AND MISAPPLIES THE APPLICABLE STANDARD OF REVIEW.

The government's Motion to Dismiss continues the confusion as to what exactly is taking place in this case. Styled as a Motion to Dismiss, the motion does not indicate what standard it seeks dismissal under. At various points through its argument, the government relies on this Court's Discovery Denial to argue Movant has not pled a "prima facie" claim for relief, Civ. Doc. 143 at 42, 101, 105, at other points the government argues that Movant's allegations are "insufficient to support" a particular claim. *Id, passim.* On many occasions, when the government does address the claims itself, it rests on speculation or conclusory statements that are either improper or simply demonstrate the need for evidentiary development.

12

The government's explanation of the applicable standard of review offers no insight into what it is the government believes requires the dismissal of Movant's 2016 2255 Motion. The government eschews the clear controlling standards of § 2255 itself, the Rules Governing 2255 cases, and the Fourth Circuit's jurisprudence addressing both. Instead, the government draws on factually or legally (or both) irrelevant caselaw to provide a standard of review that provides no true standards and seemingly requires no actual review of Movant's allegations. The government's approach is unexplained and inexplicable, and so also erroneous.

### A.    The Government misstates the controlling standard of review.

In attempting to lay out the standard of review application to its Motion to Dismiss, the government fatally misstates or even misrepresents the meaning or holdings of the cases it relies upon. For example, the government cites *McFarland* as cautioning against using habeas corpus to challenge the "main event" of trial. Civ. Doc. 143 at 33. In fact, *McFarland* explains how the courts must balance the interests of preserving the "main event" against the unambiguous principle that, "criminal defendants are entitled by federal law to challenge their conviction and sentence in habeas corpus proceedings." *McFarland v. Scott*, 512 U.S. 849, 859 (1994). Making that balance, the *McFarland* Court rejected the State's argument to preserve the "main event" and confirmed that appointment of counsel is critical to ensure habeas rights are protected. *Id.*

The government next suggests that, because Movant's conviction was upheld on appeal, his habeas claims should be rejected. Civ. Doc. 143 at 33 ("Umaña stands duly convicted and sentenced at a trial and an appeal that found it to be 'fair'") citing *United States v. Umaña*, 750 F.3d 320, 360 (4th Cir. 2014). The government is well-aware that direct appeal is limited to the record while Movant has provided extensive extra-record evidence and materials which by definition were not in the direct appeal record. The appellate court's assessment of the fairness of the trial based on only the trial record and without any knowledge of the hundreds of pages of

13

(factually supported) allegations and inferences never put in front of the jury is irrelevant to these proceedings.

From this shaky foundation, the government relies on a collection of legally or factually irrelevant cases to tease out a standard of review that lacks any real standards.

For example, the government relies on several cases that address when and whether a hearing is appropriate. Civ. Doc. 143 at 33, citing *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995); *Hill v. Ozmint*, 339 F.3d 187, 201 (4th Cir. 2003). As explained in Section II(B), *infra.*, however, by filing a Motion to Dismiss the government has created a process, and applicable standard of review, that operates procedurally *before* the determination of whether a hearing is warranted. *See also* Rule 8 of the Rules Governing Section 2255 Proceedings (setting the process for determining "whether an evidentiary hearing is warranted.") As this Motion to Dismiss falls after Rule 4 but before Rule 8, cases describing either of those two standards are not helpful here.

On occasion, the government misstates the meaning of a particular holding to the standard of review. For example, the government correctly asserts that the Court is not required to accept as true every allegation in a 2255 petition, and offers as an "example" that allegations contradicted by the record are not presumed as true. Civ. Doc. 143 at 34, citing *Puglisi v. United States*, 586 F.3d 209, 214 (2d Cir. 2009); *Schriro v. Landrigan*, 550 U.S. 464, 474 (2007). But that is not an "example" of when the Court should not presume Movant's allegations are true, but rather the *only* situation that presumption does not apply. *See* Section II(B)(2), *infra.*

Many of the government's supporting references are not § 2255 cases at all, but cases addressing § 2254 petitions. Civ. Doc. 143 at 33, citing *Hill v. Ozmint*; *Puglisi v. United States* and *Schriro v. Landrigan*. The government simply relies on the ultimate results of the cited cases, ignoring that both the default and the merits analyses applied in those § 2254 cases are substantially

different from the default and merits analyses in § 2255 cases. *See* 28 U.S.C. § 2254(d)(2) (merits analysis assesses the reasonableness of the state court's merits analysis); 18 U.S.C. § 2254(e) (presumption of correctness to state court fact-finding; limitations on federal court evidentiary development when facts were not developed in state court).

The government's most inapposite reliance on § 2254 cases is its use of *Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005) and *Schriro* to explain the meaning of Rule 2(b)(2). Civ. Doc. 143 at 34. But the Rule 2 (of the Rules Governing § 2254 Cases) is not the same Rule 2 of the Rules Governing § 2255 cases. *Compare* Rule 2 of the Rules Governing 2255 ("Rule 2. The Motion. (a) Applying for Relief. . . .") *with* Rule 2 of the Rules Governing 2254 ("Rule 2. The Petition 1 (a) Current Custody; Naming the Respondent. . . .") The government also cites *Ramsey* to define Rule 2. Civ. Doc. 143 at 34, citing *Ramsey v. United States Parole Comm'n*, 840 F.3d 853, 863 (D.C. Cir. 2016). But as *Ramsey* is a challenge to the denial of parole under § 2241, and the Rules Governing Section 2254 cases apply to § 2241 cases, *Ramsey* too does not apply here.

The government mistakenly expands the facts of *Mitchell* and *Ramsey* to support the incorrect proposition that "allegations presented in a reply <u>or elsewhere</u> do not count." Civ. Doc. 143 at 34. In both, petitioner/movant attempted to include entirely new claims in their traverse/replies. *Mitchell*, 416 F.3d at 504; *Ramsey*, 840 F.3d at 863. Neither case, however, suggests that allegations "elsewhere" are not part of the court's review. If they did, they would directly conflict with the § <u>2255</u> rules which expressly require the Court to consider all materials far beyond those contained in the pleadings. *See* Rule 4 of the Rules Governing 2255 (requiring initial review of the § 2255 motion and all attachments, as well as "the record of prior proceedings"); Rule 8 of the Rules Governing 2255 (requiring review of *additional* materials submitted under Rule 7).

In short, the government's efforts to draw out a standard of review to apply to its Motion to Dismiss relies on misstatements, mischaracterizations, or misapplications of a small collection of cases. The result is a standard of review that provides neither standards nor meaningful review. The Court should reject the government's proposed standard of review and continue to apply the standard of review that emerges from § 2255, the Rules Governing Section 2255 Proceedings, and the Fourth Circuit's clear jurisprudence applying both.

**B. The Rules Governing 2255 Cases and the Fourth Circuit Application of Those Rules Clearly Delineate the Appropriate Standard of Review.**

Determining the proper standard of review begins with § 2255 itself. Section 2255 requires a court receiving a 2255 motion to review "the motion and the files and the records." Unless that review "conclusively show[s]" that the movant is not entitled to any relief, the court shall grant a hearing. 28 U.S.C. § 2255(b). This simple, single-step analysis is broken up somewhat, however, by additional steps required by the Rules Governing Section 2255 Proceedings.

**1. The Rules Governing 2255**

Rule 4 of the Rules Governing Section 2255 Proceedings provides the first opportunity for the court to dismiss a 2255 motion, requiring the judge to dismiss only if it "plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief". Rule 4(b). If, however, the § 2255 motion and associated materials contain allegations and supporting facts that *could* sustain relief, the judge can order the government to respond. *Id*.

In the ordinary process, the government's response is accompanied by some effort by either party (or also the court, per Rule 7) to invoke Rules 6 ("Discovery") and 7 ("Expanding the Record"). Subsequently, the Court would conduct the review provided for in Rule 8 to determine whether, in light of all the pleadings, extra materials, and the entire record, a hearing is required.

16

This is not the ordinary case. Rather than file an Answer, the government has filed a Motion to Dismiss as its responsive pleading. Rule 4 does allow for the government to employ motions to dismiss as its responsive pleading. Rule 4, Committee Notes on the Rules - 2004 Amendment ("The amended rule reflects that the response to a Section 2255 motion may be a motion to dismiss or some other response…"). However, the government's choice of form has implications for the resulting process and the applicable standard of review.

While the name of the government's response does not change the fact that it is a responsive pleading[3] to which Movant may now Reply under Rule 5(d), the sequence of events makes clear that the Motion to Dismiss requires something other than the Rule 4 standard of review. The Court directed the government to respond to the 2016 2255 Motion. Civ. Doc. 131. Because Rule 4(b) *requires* the Court to dismiss the Motion if it "plainly appears…the moving party is not entitled to relief," but "must" order the government to respond if the motion passes that review, Movant's 2016 2255 Motion met the Rule 4 standards; Movant's allegations were not disproven by the record and could sustain relief if true.

However, the government's Motion to Dismiss also does not fall under the Rule 8 rubric by which the Court determines whether a hearing is warranted. The claims and evidence before the Court are yet to be augmented by any additional records. *See* Rule 6 ("Discovery"); Rule 7 ("Expanding the Record."); *see also* Rule 8(a) ("[t]he judge must review the answer, any transcripts and records of prior proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted."). The government's Motion therefore falls

---

[3] As detailed above, because the Motion to Dismiss is a responsive pleading under Rule 4, F.R.C.P. Rule 15(a)(1)(B) allowed Movant to file an "as of right" amended Motion.

somewhere between Rule 4 and Rule 8 both procedurally and, therefore, in terms of the applicable standard of review.

### 2. The Government's Motion is assessed as a hybrid Rule 12(b)(6) motion to dismiss.

The Fourth Circuit has held that motions to dismiss under FRCP Rule 12(b)(6) are appropriate responses to § 2254 cases, *Walker v. True*, 399 F.3d 315, 319 n. 1 (4th Cir. 2005), and district courts have adopted that process for § 2255 cases. *United States v. Gonzalez*, No. 5:20-CR-00109-M, 2023 WL 3467811, at *3 (E.D.N.C. May 15, 2023) (Section 2255 case relying on Section 2254 caselaw to apply FRCP Rule 12(b)(6) to Civ. Doc. 143) citing *Walker v. Kelly*, 589 F.3d 127, 138 (4th Cir. 2009).[4] In 2004, the Rules Governing Section 2255 Proceedings were amended to incorporate the use of motions to dismiss as responsive pleadings. Rules Governing Section 2255 Proceedings, Committee Notes on Rules-2004 Amendment.

Before this case, the government has routinely termed its 2255 responsive pleading a motion to dismiss *pursuant to Rule 12(b)(6)*. *E.g.*, *Linney v. United States*, No. 5:13-CR-65-MOC-DCK-1, 2019 WL 2202802, at *4 (W.D.N.C. May 21, 2019); *Collins v. United States*, No. 3:06-CR-00023-FDW-1, 2018 WL 2292765, at *1–2 (W.D.N.C. May 18, 2018). While the government has declined to define the basis of its Motion here, this established local practice combined with the prevailing approval of that practice, leads to the reasonable conclusion that the government's Motion to Dismiss should be assessed under Rule 12(b)(6). Fortunately, the parameters of the Rule 12(b)(6) standard of review have been defined by extensive jurisprudence.

---

[4] As noted above, for issues of procedural default or the merits of the substantive claim for relief, the distinction between § 2254 and § 2255 caselaw is critically important, as § 2254 contains its own unique default and merits rules that do not apply in § 2255 cases. However, the Fourth Circuit and its constituent District Courts have concluded that Rule 12(b)(6) provides the applicable standard of review for assessing motions to dismiss in both § 2254 and § 2255 cases.

18

A complaint/§ 2255 Motion states a claim sufficient to survive Rule 12(b)(6) review if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Addressing a motion to dismiss under Rule 12(b)(6), the court "accepts all well pled facts as true and construes these facts in the light most favorable to the [Movant]." A conclusory statement or aversion of legal conclusion or the elements of a claim are insufficient unless accompanied by "factual enhancement." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). Thus, an allegation must do more than simply assert the defendants, for example, entered an "unlawful agreement," but must provide facts concerning the existence of that agreement. *Twombly*, 550 U.S. 556-57. In addition to plain allegations, all reasonable inferences must be made in the plaintiff/movant's favor and also assumed to be true where they are supported by "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Nemet*, 591 F.3d at 255, citing *Iqbal* at 1952. Crucially, a complaint that meets these requirements may not be dismissed, "even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556, citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

Thus, the Rule 12(b)(6) test has two prongs: First, the court should identify and disregard legal conclusions not entitled to the assumption of truth. *Id.* Second, the court should identify and assume the truth of supported factual allegations and reasonable inferences therefrom and "determine whether they plausibly give rise to an entitlement to relief." *Id.* Plausibility is more than a "sheer possibility," but less than "probability." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 557.) In discerning the difference, the guiding principle is that the Rule 12(b)(6) standard is a *pleading* standard that tests whether there is a case to answer and not an *evidentiary* standard

19

requiring that relief be proven. The difference between the two is critical here, where the government repeatedly insists Movant's facts are "insufficient" to establish or do not show a "prima facie case." *See*, *e.g.*, Civ. Doc. 143 at 42, 44; 101, 105. As the Supreme Court has explained, though, the "prima facie case" standard is an "evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-11 (2002) (reversing the lower court's application of case-specific "prima facie case" standard to a standard Rule 12(b)(6) dismissal.).

The government's choice of a motion to dismiss as its responsive pleading was entirely proper. The government cannot ignore the meaning and effect of that choice, though. The government has filed what amounts to a Rule 12(b)(6) motion to dismiss Movant's 2016 2255 Motion for "failure to state a claim." The government cannot borrow more appealing standards of review from other proceedings to apply to its Motion; that Motion has a particular standard of review that the government is now required to meet.

This is not all to say that Rule 12(b)(6) applies absolutely to the government's motion. Rule 12(b)(6) conflicts with the Rules Governing § 2255 cases in one discrete way; the FRCP very clearly limits Rule 12(b)(6) review to the pleadings, FRCP Rule 12(d), but § 2255 proceedings mandate the court to consider the "files and records of the case" even before this intermediate stage. 28 U.S.C. § 2255(b); Rule 4(b). Thus, while any attempt by either party to reference non-pleading evidence risks converting a "civil" Rule 12(b)(6) proceeding into summary judgment, FRCP Rule 12(b)(6), the parties in § 2255 cases are encouraged to introduce extra-pleading evidence. The Rule 12(b)(6) standard that applies to the government's motion, therefore, is a hybrid that follows the FRCP standard except that it includes review of extra-pleading materials provided by the parties.

**III.** **CLARIFICATION OF PROCEDURAL DEFAULT AND SUBSTANTIVE CLAIMS FOR RELIEF.**

The government makes several broad assertions concerning the nature or meaning of certain constitutional claims and attempts to apply procedural default to many in a wholly unsupported manner. Before addressing the government's treatment of Movant's claims, it is, therefore, necessary to clarify when and how procedural default applies, as well as the basic elements of the substantive claims raised by Movant.

### A. The Government is required to go beyond bare conclusory statements to adequately meet its burden of asserting procedural bars.

The government argues that multiple of Movant's claims are procedurally barred because they could have been but were not raised at trial and direct appeal. Civ. Doc. 143 at 82, 84-90, 90-91, 98, 99, 100, 101, 102, 105-06, 115-17, 131-32. The government confuses what it means that a claim could have been raised at trial or appeal, the related application of cause and prejudice to that alleged bar, and the effect of a miscarriage of justice to the alleged bar. *See Murray v. Carrier*, 477 U.S. 478, 488, 496 (1986); *United States v. Frady*, 456 U.S. 152, 167-68 (1982).

### 1. Assertions of procedural default require more than bare conclusory statements.

Generally, ineffective assistance of counsel claims are appropriately raised in a 28 U.S.C. § 2255 motion to vacate. As the Supreme Court has recognized, this is because the district court is:

> the forum best suited to developing the facts necessary to determining the adequacy of representation during an entire trial. The court may take testimony from witnesses for the defendant and the prosecution and from the counsel alleged to have rendered the deficient performance... [T]he § 2255 motion often will be ruled upon by the same district judge who presided at trial . . . [who] having observed the earlier trial, should have an advantageous perspective.

*Massaro v. United States*, 538 U.S. 500, 505-06 (2003). It is for the very same reasons that such claims ordinarily *cannot* be raised on appeal. *United States v. Baptiste*, 596 F.3d 214, 216 n.1 (4th

Cir. 2010) (quoting *Massaro*, 538 U.S. at 504-06) ("'[I]n most cases a motion brought under §

2255 is preferable to direct appeal for deciding claims of ineffective assistance' because the trial

record is 'often incomplete or inadequate for [addressing such claims on direct review,]' thereby

risking the failure of '[e]ven meritorious claims.'"); *see also United States v. Herrera-Pagoda*, 14

F.4th 311, 318 n.6 (4th Cir. 2021) (rejecting government contention that argument was

procedurally barred for failure to raise at trial or on direct appeal when movant's claim was one of

ineffective assistance of counsel); *United States v. Faulls*, 821 F.3d 502, 507-08 (4th Cir. 2016)

("Unless an attorney's ineffectiveness conclusively appears on the face of the record, such claims

are not addressed on direct appeal.").

These same principles apply to any other claim not available on direct appeal because it

requires extra-record development. *See Mills v. United States*, 36 F.3d 1052, 1055-56 (11th Cir.

1994). There is an exception to procedural default when the facts underlying a claim are "dehors

the record and their effect on the judgment was not open to consideration and review on appeal."

*Bousley v. United States*, 523 U.S. 614, 621-22 (1998) (citing *Waley v. Johnston*, 316 U.S. 101,

104 (1942) (per curiam)). Because they require extra-record evidence, several of Movant's claims

are not subject to procedural default analysis, including his claim that this Court erred in its pre-

trial *Atkins* determination.

The government variously alleges that several of Movant's claims could have been raised

at trial or on appeal, Civ. Doc. 143, *passim*, but does not indicate where the respective

ineffectiveness of trial/appellate counsel is "conclusively apparent" on the record. Thus, the

government does not adequately plead the application of a procedural bar to those claims.

Movant's ineffective assistance of counsel claims are reviewed under the standards described

below in Section III(B).

Similarly, *Brady* claims depend on facts not developed on the record at trial and so are properly raised in 2255 proceedings where "development of the record" is possible. *United States v. Dominguez Benitez*, 542 U.S. 74, 83 n.9 (2004) (citing *Massaro*, 538 U.S. at 500). "[I]t is impossible for the defendant to know as a *factual* matter that a [*Brady*] violation has occurred before the exculpatory evidence is disclosed." *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 359 (2006) (emphasis added). *Brady* claims are typically not, therefore, available or developed for consideration on direct appeal. *See, e.g. United States v. Russell*, 971 F.2d 1098, 1112 (4th Cir. 1992) (declining to review *Brady* claim on direct appeal when *Brady* materials were not part of the record on appeal). Thus again, unless the government can show that the factual basis of a *Brady* claim – or indeed any claim that relies on non-record evidence – is facially apparent on the record, the procedural default does not apply. And again, while the government asserts that several of Movant's *Brady* claims could have been raised at trial/appeal, Civ. Doc. 143 at 81; Civ. Doc. 52 at 56, the government does not plead how the factual bases of those claims appear on the record. The government, therefore, has not adequately pled the application of procedural default to these claims. Movant's *Brady* claims are reviewed under the standards described below in Section III(B).

### 2. Cause and prejudice overcomes any procedural default.

Even if the procedural bar does apply to any particular claim, Movant may lift that bar by establishing cause and prejudice. *Wainwright v. Sykes*, 433 U.S. 72 (1977). The Supreme Court has never provided an exhaustive list of what constitutes "cause" but has generally defined "cause" as "some objective factor external to the defense." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Whatever the reason, an obviously cognizable claim may not have been raised at trial or on appeal because "the factual or legal basis for a claim was not reasonably available to counsel" at trial or appeal, thereby establishing "cause" to overcome the procedural bar. *Murray*, 477 U.S. at 488.

"Prejudice" in such a situation exists where not raising that claim "worked to [the movant's] *actual and substantial disadvantage.*" *United States v. Frady*, 456 U.S. 152, 170 (1982).

A cognizable claim may be knowable at trial or appeal, but defense counsel failed to present it. It is well settled, then, that the ineffective assistance of counsel excuses a procedural default in raising other constitutional grounds for relief. *Murray*, 477 U.S. at 488 ("[I]f the procedural default is the result of ineffective assistance of counsel, the Sixth Amendment itself requires that responsibility for the default be imputed to the State, which may not conduct trials at which persons who face incarceration must defend themselves without adequate legal assistance."). With the government now asserting the procedural bar defense, Movant Replies here to invoke counsel's ineffectiveness for failing to raise the respective claims at trial or on appeal. *See* Claims IV, VI, VII, XII, XV, XX, XXI, XXII, XXV, XXVI, XXVIII, and LIX, infra.[5] This Court may thus address the merits of all of Movant's constitutional claims underlying his claims of ineffective assistance of trial or appellate counsel.

Alternatively, the factual basis for a cognizable claim may not have existed at trial or appeal because the prosecution suppressed that factual basis. Such "[p]rosecutorial suppression of evidence" is therefore "cause." *Strickler v. Greene*, 527 U.S. 263, 283 (1999) ("As we explained in *Murray v. Carrier*, . . . it is just such [suppression of exculpatory evidence that] ordinarily

---

[5] The Government's allegations of procedural default in response to several of Movant's 2016 claims (Claims IV, VII, XII, XV, XX, XXI, XXII, XXV, XXVI, XXVIII, LIX ) are now moot because Movant's 2023 2255 Motion amended those 2016 claims with allegations of counsel's ineffectiveness for failing to raise those claims at trial or on appeal. Civ. Doc. No. 146, *passim*. As amended, those claims now allege ineffective assistance of counsel and are assessed accordingly. Ultimately, however, as explained below, because the cause and prejudice caused by counsel's ineffectiveness collapses into the substantive ineffective assistance analysis, the distinction between what is an ineffectiveness claim based on counsel's failure to raise a predicate claim and what is a defaulted free-standing claim where counsel's ineffectiveness provides cause and prejudice to overcome the default is on without a difference.

establish[es] the existence of cause for a procedural default."); *Banks v. Dretke*, 540 U.S. 668 (2004). Because both the "cause" prong and the "suppression" element of a *Brady* claim rest on showing that the prosecution kept the evidence at issue from the defense, the two questions collapse into each other. *See e.g.*, *United States v. Caro*, 733 Fed. Appx. 651, 659-61 (4th Cir. 2018) (holding <u>Brady</u> claim was procedurally barred because data concerning BOP detention was publicly available at trial).

Similarly, the "prejudice" prong of "cause and prejudice" collapses into the "materiality" standard for the substantive *Brady* claim. *United States v. Hernandez*, 94 F.3d 606, 609-10 (10th Cir. 1996) (finding that *Frady* "actual prejudice" in the *Brady* context is functionally the same as *Brady*-materiality.) In short, the "could have been raised at trial" procedural bar either does not apply to Movant's *Brady* claims or, if it applies, is overcome by establishing the merits of the underlying claim (which means it applies in name only). As such, Movant's *Brady* claims (and any respective procedural bar) are reviewed under the standards outlined in Section III(B) below.

Finally, relevant to Movant's claims, in *Reed v. Ross*, 468 U.S. 1 (1984), the Supreme Court recognized that the novelty of a legal claim may establish cause. *Id.* at 16; *see also United States v. McKinney*, 60 F.4th 188, 194-95 (4th Cir. 2023) (applying *Reed v. Ross* to *Johnson/Davis* claims). In the case of a novel legal theory, the collateral attacker must also show actual prejudice under *Frady v. United States*, 456 U.S. 152, 170 (1982), that the error "worked to his actual and substantial disadvantage." *McKinney*, 60 F.4th at 195 (citing *Frady*).

### 3. Miscarriage of Justice

To demonstrate that a miscarriage of justice would result from the Court's refusal to consider an otherwise defaulted claim, the movant must show that "a constitutional violation probably has caused the conviction of one innocent of a crime." *Murray*, 477 U.S. at 496. This standard requires a movant to "show that it is more likely than not that no reasonable juror would

have found [him] guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). When a movant asserts his actual innocence of the death penalty, he must "show by clear and convincing evidence that, but for a constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty." *Sawyer v. Whitley*, 505 U.S. 333, 336 (1992).

### B. The necessary elements of Movant's substantive claims.

Finally, because the government repeatedly argues that Movant has failed to provide sufficient factual allegations to survive a motion to dismiss, Civ. Doc. 143, *passim*, it is necessary to establish what Movant's factually supported allegations and inferences must *plausibly* support to state a claim.

### 1. Ineffective assistance of counsel.

At its most basic, to prevail in an ineffectiveness of counsel claim, a movant "must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." *Wiggins*, 539 U.S. at 521 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). Thus, to state an ineffective assistance of counsel claim for relief, the movant must allege both elements: deficient performance and resulting prejudice.

The ineffectiveness elements themselves contain "sub-elements" that determine relief. For example, on the performance element, counsel's reasonable strategic decisions are afforded substantial deference. That deference is inapplicable, however, where counsel's decisions were made without reasonable investigation or where circumstances render investigation unnecessary. *Strickland*, 466 U.S. at 691.

Every case is different, so the specifics of the case and what counsel knew when making their decisions are part of assessing the reasonableness of those decisions. *Wiggins*, 539 U.S. at 527. Nevertheless, counsel's performance is assessed according to the "prevailing professional norms" at the time. *Wiggins*, 539 U.S. at 521. Particularly concerning capital cases, certain

26

professional norms have been long-established and nationally apply. As early as 1989, for example, the Supreme Court had recognized the "well-defined norm" "that investigations into mitigating evidence 'should comprise efforts to discover all reasonably available mitigating evidence.'" *Wiggins*, 539 U.S. at 524.

What constitutes "mitigation evidence" is also long-established and includes evidence of mental illness, cognitive impairment, childhood abuse and/or neglect, poverty, and other developmental traumas. *See Rompilla v. Beard*, 545 U.S. 374, 392 (2005); *Williams v. Taylor*, 529 U.S. 362, 396 (2000); *Penry v. Johnson*, 532 U.S. 782, 787 (2001). Such evidence is "reasonably available" if the fact of its existence, the identity of possible lay or expert witnesses (for example, family members, social service workers, teachers, mental health professionals, and more), or even just official records identifying the evidence become known to counsel. *Wiggins v. Smith*, 539 U.S. 510, 523-26, 534-35 (2003); *Rompilla*, 545 U.S. at 390; *Williams*, 529 U.S. at 396. Indeed, so established is the obligation to conduct a full and complete mitigation investigation that the Supreme Court has made clear that, in a capital case at least, where the client refuses or interferes with mitigation investigation, counsel are nevertheless obliged to conduct a full and complete mitigation investigation. *Rompilla*, 545 U.S. at 381.

As to the prejudice prong, the Supreme Court has made clear that the standard is not a set of "mechanical rules" that are dependent on the defendant's innocence. *Strickland*, 466 U.S. at 696. Rather, the Sixth Amendment is concerned with the fundamental fairness of the trial, and so prejudice turns on whether counsel's decisions undermined that fairness. *Id.* With those principles in mind, the Court has long explained that prejudice can be typically assessed according to the well-established standard: where there is a reasonable probability that, but for counsel's deficient performance, the result of the proceedings would have been different.

That simple standard incorporates several critical features. First, a "reasonable probability" of a different outcome is not "proving" a different outcome. *Id.* Second, a "reasonable probability" is a categorically lower burden of proof than a "preponderance of the evidence." *Id.* at 694. Third, where the "proceeding" at issue is a trial, "difference" does not mean "acquittal." Difference simply means difference, not full acquittal or even (in a capital case) a non-death sentence. A mistrial, a hung jury caused by a single hold-out juror, acquittal of a lesser charge, an otherwise unsupported mitigator or undermining of an aggravator all differ from the conviction or sentence that actually occurred. *Rompilla*, 545 U.S. at 393.

The prejudice question is much more complex where counsel's performance does not concern a collection of missed evidence or selection of an incompetent defense theory but where counsel failed to assert or protect a particular legal right. For example, where counsel fail to object to the unwarranted closing of a public trial, the prejudice caused by that failure to prevent the violation of a structural right (to public trial) is impossible to assess. *Weaver v. Massachusetts*, 582 U.S. 286, 299-303 (2017). In such cases, the Supreme Court has explained that the "reasonable probability" test is inapplicable and that prejudice exists where the principles of a fundamentally fair trial are violated by counsel's deficient performance. *Id.* at 304.

Applying the 12(b)(6) standard to ineffectiveness claims, the Court must first discard any bare conclusory statements by Movant that simply state that counsel were "deficient" and Movant "prejudiced" without any factual support. *Nemet*, 591 F.3d at 255. Then, the Court must consider whether, in light of Movant's allegations and any reasonable inferences, it is *plausible* that counsel's decisions or (in)actions fell below established professional norms in light of the circumstances of the case. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). And, the Court must consider whether it is *plausible* that, were it not for counsel's unreasonable decision(s) or

28

(in)actions, at least one juror would not have voted to convict/impose death, or whether it is *plausible* that the fundamental fairness of the trial was undermined by counsel's unreasonable decision(s) or (in)actions.

### 2. Prosecutorial misconduct.

The prosecution's "interest . . . in a criminal prosecution is not that it shall win a case, but that justice shall be done. . . . It is as much [the prosecutor's] duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." *Berger v. United States*, 295 U.S. 78, 88 (1935).

Due Process is violated when the government suppresses favorable evidence to the accused that is material to either guilt or punishment. *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *Giglio v. United States*, 405 U.S. 150, 153-56 (1972). The duty to disclose continues past a defendant's arrest, conviction, and sentencing. *Imbler v. Pachtman*, 424 U.S. 409, 427 n.25 (1976).

Evidence is "suppressed" if it is "known to the prosecution but unknown to the defense." *United States v. Agurs*, 427 U.S. 97, 103 (1976), *holding modified by United States v. Bagley*, 473 U.S. 667 (1985). The "prosecution" includes all agents of the prosecution, so knowledge or possession of evidence by any such agent is imputed to the prosecutor even if the prosecutor had no personal knowledge of the identified evidence. *Kyles v. Whitley*, 514 U.S. 419, 438 (1995).

"Favorable evidence" under *Brady* includes evidence that impeaches the prosecution's theory or witnesses. *Bagley*, 473 U.S. at 676. Favorable evidence is material "when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Cone v. Bell*, 556 U.S. 449, 469-70 (2009). This "does not mean that the defendant 'would more likely than not have received a different verdict with the evidence,' only that the likelihood of a different result is great enough to 'undermine[ ] confidence in the outcome of the trial.'" *Smith v. Cain*, 132 S. Ct. 627, 630 (2012) (quoting *Kyles*, 514 U.S. at 434). In short,

29

the materiality standard mirrors the *Strickland* prejudice standard (not least because *Strickland* borrowed the *Brady* materiality standard. *Strickland*, 466 U.S. at 694, citing *Agurs*, 427 U.S., at 104.

Due process is also violated when the prosecution knowingly relies on false evidence. "[I]n those cases the Court has applied a strict standard of materiality, not just because they involve prosecutorial misconduct, but more importantly because they involve a corruption of the truth-seeking function of the trial process." *Agurs*, 427 U.S. at 103-04, *holding modified by Bagley*, 473 U.S. 667. Thus, where the prosecution provides or fails to correct false evidence, relief is required if "the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury." *Napue v. Illinois*, 360 U.S. 264, 271 (1959).

Because of the prosecutor's prominent role as representative of the United States – and the mantle of respect and authority this role creates in the eyes of the jury – jurors are predisposed to give great deference to the prosecutor's words, and improper prosecutorial arguments "are apt to carry much weight against the accused, when they should properly carry none." *Berger*, 295 U.S. at 88; *accord Drake v. Kemp*, 762 F.2d 1449, 1459 (11th Cir. 1985) (citing *Berger*). "For this reason, misconduct by the prosecutor . . . must be scrutinized carefully." *Drake*, 762 F.2d at 1459; *see also United States v. Young*, 470 U.S. 1, 7-8 (1985). When the prosecutor's misdeeds – viewed collectively or cumulatively and not as single instances – infect the trial with unfairness, due process is violated. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

Applying the Rule 12(b)(6) standard to these claims, the Court discards any allegation that is purely a legal conclusion. Then, the Court looks to whether any allegation or reasonable inference therefrom is conclusively disproven by the record. Based on the remaining allegations and inferences, the Court considers whether it is *plausible* that the prosecutor suppressed material

30

evidence (*Brady*), knowingly relied on false evidence (*Napue*), or committed trial misdeeds such that the trial was rendered unfair (*Donnelly*).

### IV. ADDRESSING MOVANT'S CLAIMS FOR RELIEF, THE GOVERNMENT VARIOUSLY MISSTATES OR MISAPPLIES THE STANDARD OF REVIEW THAT APPLIES TO ITS MOTION TO DISMISS, MISSTATES OR MISAPPLIES THE SUBSTANTIVE LAW, OR IGNORES OR MISCHARACTERIZES THE FACTS.

#### A. The Facts Contained in Claim I – Regarding Trial Counsel's Ineffectiveness in Investigating and Presenting Lay Evidence – State a Plausible Claim for Relief.

This Court should deny the government's request to dismiss Claim I because it misstates the controlling law, misapplies the applicable standard of review, and mischaracterizes Movant's allegations.

##### 1. Deficient Performance.

To establish the deficient performance element of a claim of ineffective assistance sufficient to survive Rule 12(b)(6) review, Movant must provide allegations which, when assumed to be true, show that counsel's performance fell below objective standards of reasonableness. The government's motion to dismiss relies on incorrect statements of law – most egregiously ignoring counsel's duty to *investigate*; relies on mischaracterizations of Movant's allegations; and improperly speculates about counsel's purported strategy. At the same time, the government offers little to no factual rebuttal of Movant's proffered facts. Consequently, it is important to identify the government's legal and factual mistakes as to what Claim 1 entails and address the government's improper unsupported speculation before turning to whether Movant's allegations and inferences *plausibly* identify deficient performance by counsel.

> a. *The presentation of some mitigation does not automatically render counsel's investigation constitutionally adequate.*

The government broadly and mistakenly argues that trial counsel's presentation of some mitigation evidence automatically renders their investigation constitutionally adequate.

31

Referencing this Court's discovery order, the government argues that because trial counsel "presented extensive testimony and evidence" about Umaña's "background," Civ. Doc. 143 at 42 (citing Civ. Doc. 108 at 31), Movant has not stated a claim of deficient performance for failure to investigate and present potential mitigation evidence. The government misstates Movant's claim and ignores the controlling law.

Movant alleged that counsel failed to "investigate or present" evidence in mitigation. Civ. Doc. 24 at 7-62; Civ. Doc. 146 at 35-103. The government's reliance on the evidence presented at trial to determine the reasonableness of counsel's performance ignores that Movant's claim specifically addresses counsel's *investigation* (Civ. Doc. 24 at 12-32; Civ. Doc. 146 at 40-62); the evidence presented at trial by definition has nothing to do with the extent or scope of the investigation counsel neglected.

> b. *The Government's argument is also contrary to the controlling law.*

*Wiggins v. Smith*, for example, states that counsel have an obligation to investigate "all reasonably available mitigating evidence." 539 U.S. 510, 522 (2003). *See also Williams v. Taylor*, 529 U.S. 362, 396 (2000) (counsel has "obligation to conduct a thorough investigation of the defendant's background"). Movant has alleged that additional evidence and additional sources of evidence existed beyond that presented at trial, but counsel failed to investigate that evidence and those sources. "[A]s *Wiggins* makes clear, an inadequate investigation into potentially mitigating evidence can be, by itself, sufficient to establish deficient performance." *Williams v. Stirling*, 914 F.3d 302, 314 (4th Cir. 2019) (citing *Wiggins*, 539 U.S. at 534); *see also Rompilla v. Beard*, 545 U.S. 374, 383, 388 (2005) (finding trial counsel ineffective for failing to review file of prior conviction, despite fact that counsel had conducted other mitigation investigation; rejecting prosecution argument "that defense counsel's efforts to find mitigating evidence by other means

32

excused them from looking in the prior conviction file"). The government's speculative "strategic reasons" are misplaced and should be rejected.

Through incorporation of its 2017 discovery reply, the government addresses just four specific components of Claim I – counsel's failure to formally request discovery from the government regarding its investigation into Movant's family; counsel's failure "to 'search for additional witnesses' to facts or allegations that Umaña's father had involved Umaña in his drug-dealing business, that Umaña had a brother in El Salvador, and that Umaña had been born in 1982 in Guatemala"; and counsel's failure to request a continuance. Civ. Doc. 143 at 42 (referencing Civ. Doc. 52 at 94-105).

### i. *Failure to Investigate Witnesses.*

The government's specific arguments regarding these aspects of deficient performance should be rejected because the government merely speculates that trial counsel purportedly made strategic decisions not to investigate further. But, to the extent the record contains any evidence regarding counsel's strategy, it is evidence tending to demonstrate that counsel had none. *See e.g.* Civ. Docs. 24, Appxs. 23-24; Civ. Doc. 150, Appxs. 23-24. The record is otherwise silent as to counsel's reasons for not investigating further, and the government has not seen fit (or is unable) to present evidence establishing or even suggesting any reason. As, in this Rule 12(b)(6) stage of proceedings, all reasonable inferences must be made in Movant's favor, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), the government's speculations are misplaced and inappropriate here.

Moreover, the government's speculations are presumptively wrong as a matter of law. It is well-established that the "prevailing professional norms" at the time of Movant's trial included counsel's obligation "that investigations into mitigating evidence 'should comprise efforts to discover all reasonably available mitigating evidence.'" *Wiggins*, 539 U.S. at 524. The fact that

33

counsel presented *some* mitigation evidence in no way negates their obligation to investigate more. Perhaps (at the proof stage of proceedings, but not here, at the motion to dismiss stage) the government could argue that counsel, *having investigated*, reasonably decided not to present the resulting more evidence. But that is not the argument here. By failing to investigate obviously relevant and reasonably available mitigation evidence, counsel failed to perform according to the prevailing professional norms. The government's argument otherwise – particularly relying as it does on unsupported speculation – is legally wrong and factually misplaced in these Rule 12(b)(6) proceedings. As described in greater detail above, section II(B)(2), it is premature to create theoretical strategic reasons counsel could have had for their acts and omissions before factual development of the record. *See, e.g. Andrus v. Texas*, 140 S. Ct. 1875, 1883 (2020) (per curiam) ("Despite repeated questioning, counsel never offered, and no evidence supports, any tactical rationale for the pervasive oversights and lapses here. Instead, the overwhelming weight of the record shows that counsels 'failure to investigate thoroughly resulted from inattention, not reasoned strategic judgment.' *Wiggins*, 539 U.S. at 526, 123 S.Ct. 2527."). And, at this stage of proceedings, all reasonable inferences must be drawn in *Movant's* favor, not the government's.

The strategic reasons assumed by the government have been found invalid by the Supreme Court. The government, for example, claims that counsel acted reasonably in not attempting to contact additional witnesses regarding his father's drug dealing, brother, and Guatemalan birth because "counsel could reasonably have expected Umaña himself to know this information" and it was likely after consultation with the client that they made a "reasonable decision" not to proceed further. Civ. Doc. 52 at 96-97, 102. If this were the test, the defendants in *Williams*, *Wiggins*, and *Rompilla* would have been precluded from obtaining relief. *Williams v. Taylor*, 529 U.S. 362 (2000) (counsel ineffective for failing to present evidence that defendant was "borderline mentally

34

retarded," had not advanced beyond sixth grade, and had suffered a nightmarish childhood); *Wiggins v. Smith*, 539 U.S. 510 (2003) (counsel ineffective for failing to present deprivation and abuse in the first six years of his life in the custody of his chronic alcoholic, absentee mother, being "shuttled from foster home to foster home," and frequent, lengthy absences from school); *Rompilla* 545 U.S. at 392 (counsel failed to uncover evidence from defendant's childhood, alcoholism, and mental capacity and health). All these cases involved the failure to present evidence of parts of the defendants' lives that they themselves were presumably aware of. Moreover, the Supreme Court has been clear that, to be a reasoned strategic decision, it must be an informed one made only after investigation, *Wiggins*, 539 U.S. at 522 (citing *Williams v. Taylor*, 529 U.S. 362 (2000)), and such investigation did not occur here. Finally, Movant could hardly be a source of data regarding the circumstances of Movant's gestation, birth, and infancy obtained from his mother.

The government's reliance on the trial mitigation specialist's testimony that Movant told him that his mother (Leticia Ramirez) had not been in his life since he was seven months old to justify counsel's investigatory failures, *see* Civ. Doc. 52 at 99, is belied by the record. As the trial mitigation specialist testified, in the same answer that the government cites in its brief, regarding Movant's descriptions *of his infancy*: "Of course it's not based on his recollection, it's what he's been told as he's been raised." PPT 523. The mitigation specialist testified that the other source he had for this information and time in Movant's life was Movant's father (Rafael Umaña). *Id.* at 522 ("Rafael told me . . ."). Relying on one family member without having even taken reasonable investigatory steps to talk to others is deficient performance. Rafael's story of maternal abandonment made interviewing Movant's mother that much more crucial to learn her side of the story to test Rafael's version of events.

The government's improper speculation that trial counsel decided not to spend resources looking for Leticia because she would not have been an impartial witness (Civ. Doc. 52 at 99-100) appears fabricated from whole cloth. The government does not explain *why* it believes Leticia would not have been impartial and does not explain why the *mother* would somehow have been less impartial than the *father*, who counsel *did* rely on. The post-conviction investigation revealed evidence not only from the mother, but other family members and impartial neighbors, that the *father* was a brutalizing force in Movant's life. Thus, the only inference supported by the files and records currently before this Court is that it was, in fact, the *father* who lacked impartiality and provided largely self-serving testimony. But trial counsel never knew that because they failed to conduct a constitutionally adequate investigation. Counsel did not *choose* to present Rafael's version of events; because of deficient investigation, Rafael's version of events was all they had. Counsel deficiently "abandoned [their] investigation of [Movant's] background after having acquired only rudimentary knowledge of his history from a narrow set of sources." *Wiggins*, 539 U.S. at 524.

The government's speculation here also ignores the critical nature of gestation and early life to childhood development – topics that a birth mother is uniquely qualified to discuss. Physiological development begins at conception. The circumstances of a child's gestation and first years of life are crucial to their development, including their brain development. Civ. Doc. 116, Appx. 237 at 5, 15 (Sermeño declaration); Civ. Doc. 150, Appx. 237 at 5, 15 (same); Civ. Doc. 106, Appx. 212 at 3 (Lugo Report); Civ. Doc. 150, Appx. 212 at 3 (same). Only one person who was present, observing, and forming memories, for all of Movant's gestation and birth. That person was not Movant, and that person was not his father. That person was his mother, whose address was contained in the pretrial discovery but who trial counsel never interviewed.

36

The government's reliance on Attorney Bryson's statement that counsel did not return to El Salvador to look for Leticia after the government produced the Guatemalan birth certificate on the eve of the trial because they were busy with other trial preparation, Civ. Doc. 52 at 100; Civ. Doc. 22, Appx. 23, ¶7, does nothing to defeat Movant's claim of deficient performance. First, Attorney Bryson's recollection of what happened does not make what trial counsel did reasonable. Trial counsel *should have known Leticia's whereabouts from documents produced earlier in discovery. See* Civ. Doc. 24 at 20; Civ. Doc. 146 at 48. Bryson's declaration does not show a reasoned strategic decision but a failure to conduct a timely, adequate investigation that left the trial team scrambling on the eve of trial, unable to follow up on an investigatory lead that the government had previously suppressed. Second, in the very paragraph relied upon by the government, attorney Bryson explains that he believes "that speaking to the mother of a capital defendant is vital to a mitigation case" and that he would have presented to the jury the information Leticia provided to post-conviction counsel had he had that information at trial. Civ. Doc. 24, Appx. 23, ¶ 7; Civ. Doc. 150, Appx. 23, ¶ 7. Trial counsel knew where Leticia was and knew Leticia was important, yet relied solely on Rafael without taking reasonable steps to locate her (or anyone else that could have discussed Movant's early years). This was deficient. To the extent there is any question regarding counsel's knowledge, motivations, or actions, that question is a disputed fact to be resolved by further evidentiary development, not dismissal.

### ii. Failure to Request Discovery

The government – again without any record support or additional evidence in support – speculates that counsel did not request further discovery of the government's mitigation evidence and/or a continuance to develop mitigation evidence further because prevailing on these requests was a "long-shot." Civ. Doc. 52 at 88. Given the absence of any evidence contradicting Movant's allegations here (indeed, the record makes clear that counsel did not request further discovery and

37

did not request a continuance), all reasonable inferences must be made in Movant's favor. Moreover, the Supreme Court has been clear that, to be a reasoned strategic decision, it must be an informed one made only after investigation, *Wiggins*, 539 U.S. at 522 (citing *Williams v. Taylor*, 529 U.S. 362 (2000)), and such investigation did not occur here. The government's speculations are misplaced, improper, and irrelevant in these Rule 12(b)(6) proceedings.

Again, the prevailing professional norms required counsel's mitigation investigation "'should comprise efforts to discover all reasonably available mitigating evidence.'" *Wiggins*, 539 U.S. at 524. Counsel were (or should have been) aware of numerous red flags that the government had mitigating evidence that would assist the defense[6]. Counsel had a duty to investigate – i.e., request in discovery – that evidence. They did not. That evidence is more than sufficient to establish the element of deficient performance to survive the government's Rule 12(b)(6) motion, yet counsel did not pursue these leads. Once the defense team had reason to believe that the government had located Mr. Umaña's mother and spoken to her; had discovered that Mr. Umaña had been born in 1982 in Guatemala; and had raised the specter that Mr. Umaña's father was a drug dealer; the team had a duty to pursue these leads further and performed deficiently when it failed to do so. When defense counsel was put on notice of these "pertinent avenues for investigation," counsel was obligated to follow up on those leads. *Porter v. McCollum*, 558 U.S. 30, 40 (2009); *accord Wiggins*, 539 U.S. at 525.

iii.  *Failure to Request a Continuance.*

Counsel's failure to request a continuance will be discussed in more detail in Claim XIII.

---

[6] As detailed in the 2016 and 2023 motions, those red flags included the government's possession of his Guatemalan birth certificate and attached narrative; the fact that the FBI interviewed his mother and attempted to interview his father; and the prosecutor's statements to counsel regarding the father's drug dealing and brother's status as an incarcerated person. Civ. Doc. 24 at 29-32; Civ. Doc. 146 at 59-62.

38

*c. Movant's undisputed factual allegations must be accepted as true.*

In assessing whether Movant has stated a claim for which relief can be granted, Rule 12(b)(6), the Court assumes all of Movant's factually supported allegations to be true and resolves all reasonable inferences therefrom in Movant's favor, unless they are conclusively disproven by the record. *Iqbal*, 556 U.S. at 679; *Nemet*, 591 F.3d at 255; *see also Hall*, 846 F.3d at 765 ("When ruling on a motion to dismiss, courts must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff."). A defendant's life history is the cornerstone of any capital penalty phase proceeding. *Penry v. Lynaugh*, 492 U.S. 302, 319 (1989); *Eddings v. Oklahoma*, 455 U.S. 104, 112 (1982). There can be little doubt that trial counsel were ill-prepared to present the most critical component of their case.

Because the government relies upon a misunderstanding of Movant's claim and the controlling law, it ignores the extensive evidence alleged in the 2255 Motion detailing the evidence that trial counsel decided not to present without first investigating it. Those allegations, and the reasonable inferences that stem from them, plausibly claim that counsel were deficient. Movant has directly alleged, with factual support, that counsel did not investigate all reasonably available mitigation evidence (for example, seeking Movant's mother for information about Movant's *in utero* health and post-natal neglect). Because conducting such investigation is an established norm in capital cases, *Wiggins*, 539 U.S. at 524, Movant's allegations and inferences plausibly claim counsel were deficient.

For example, Movant alleged that counsel limited their investigation to one primary source—Movant's father—and a small number of transitory other sources. Civ. Doc. 24 at 12-14; Civ. Doc. 146 at 40-42; *see also Wiggins*, 539 U.S. at 524 (counsel deficiently "abandoned [their] investigation of [Movant's] background after having acquired only rudimentary knowledge of his history from a narrow set of sources."). While it may be reasonable for counsel to limit their

39

investigation where no other sources exist, Movant also detailed the extensive number of other sources-not least, Movant's mother, neighbors who lived in the mesons with him, and numerous other family members, friends, and teachers-who knew Movant and the traumatic events that plagued every period of his life. Civ. Doc. 24 at 20-26; Civ. Doc. 146 at 48-55. Even ignoring the details of that evidence, counsel's failure to investigate every period of Movant's life would be deficient. *See Wiggins*, 539 U.S. at 524-25. Given that Movant's father was a significant cause of Movant's trauma, provided defense counsel with self-serving information, and only had information about a portion of Movant's life[7], counsel's decision to limit their mitigation investigation was deficient.

Movant will not repeat all of his allegations here but will note that his trial counsel's failure to investigate also included factual allegations that:

- trial counsel failed to promptly begin their mitigation investigation despite acknowledging the need to begin their investigation "immediately" in a court filing; despite knowing that Movant's foreign national status would complicate their investigation; and despite knowing that Movant exhibited red flags for brain damage and intellectual disability, Civ. Doc. 24 at 16-19; Civ. Doc. 146 at 44-48; Civ. Doc. 24, Appxs. 23, 24; Civ. Doc. 150, Appxs. 23, 24;

- trial counsel failed to conduct interviews of family and neighbors despite having readily available means to locate them (including factual allegations that Movant's mother's address was included in pretrial discovery; Movant's brother was readily locatable in

---

[7] Movant's father took part in the crucial developmental period through Movant's mid-adolescence, but the father had little first-hand knowledge of Movant's late adolescence or early adulthood. *See* Civ. Doc. 24 at 34-57; Civ. Doc. 146 at 65-99.

prison; and Movant's mitigation specialist had visited at least two different places where Movant had lived as a child and would have found several of Movant's childhood neighbors *if he had knocked on the doors*), Civ. Doc. 24 at 20-24; Civ. Doc. 146 at 48-52; Civ. Doc. 24, Appxs. 37, 47; Civ. Doc. 150, Appxs. 37, 47;

- trial counsel failed to interview Luis Ramos, despite him being readily located in prison, Civ. Doc. 146 at 54-55; Civ. Doc. 150, Appx. 112 at ¶¶ 50, 45-50;

- trial counsel could have found even more family of Movant's through the readily locatable family and neighbors described above, Civ. Doc. 24 at 24-26; Civ. Doc. 146 at 52-54; Civ. Doc. 24, Appxs. 1-15; Civ. Doc. 150, Appxs. 1-15;

- trial counsel failed to obtain all the available mitigating evidence from the witnesses they *did* interview, including Movant's girlfriend, Monica Reyes, Civ. Doc. 24 at 26-27; Civ. Doc. 146 at 55-57; Civ. Doc. 24, Appx. 12; Civ. Doc. 150, Appx. 12;

- trial counsel failed to investigate the circumstances of Movant's birth, despite having indications from pretrial discovery and Monica Reyes that Movant was born in Guatemala, Civ. Doc. 24 at 27-28; Civ. Doc. 146 at 56-58; Civ. Doc. 24, Appx. 12; Civ. Doc. 150, Appxs. 12, 105b; Def. Tr. Ex. 32 (Guatemalan Birth Certificate with interview summary on the back);

- trial counsel failed to file formal discovery requests regarding the government's investigation into Movant's background, even though trial counsel should have had reason to believe that that government obtained information exculpatory to the penalty during its investigation in El Salvador, Civ. Doc. 24 at 29-32; Civ. Doc. 146 at 59-62.

These allegations are not mere statements of legal conclusions. They are detailed, factually supported allegations that counsel failed to conduct the kind of mitigation investigation that has been an established professional norm since 1989. *Wiggins*, 539 U.S. at 524-25.

These allegations, and any reasonable inferences stemming from them, are presumed to be true unless the government can conclusively show they are not. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The government has pointed to nothing in the record and has provided no extra-record evidence that disproves Movant's allegations, conclusively or otherwise. Indeed, the government never disputes that the witnesses were there and available to talk to trial counsel and testify at trial if only trial counsel had investigated.

The government relies solely on speculative strategic reasons for counsel's decisions not to investigate. *See supra* at VI.A.1. But again, the government provides no factual support for its speculations. Because all reasonable inferences (i.e., those with factual support) are made in Movant's favor, unsupported government speculations cannot refute Movant's allegations. *See Twombly,* 550 U.S. at 555.

The government fails to address most of Movant's specific allegations of deficient performance, *see* Rule 5(b), and so does not contest that these sources of evidence were available to counsel or that counsel failed to investigate these sources of evidence. The government's offering of unfounded speculation regarding the purported reasonableness of some (but not all) of the above-described failures is inapplicable at this Rule 12(b)(6) stage. Because the government misstates the controlling law and does not even answer the majority of Movant's allegations – allegations that present a plausible claim that counsel performed deficiently – the government's argument in support of dismissal is insufficient and should be rejected.

### 2. Prejudice

The government's Motion to Dismiss relies on an incorrect conception of prejudice and mischaracterizations of Movant's allegations and the record. At the same time, the government offers little to no factual rebuttal of Movant's proffered facts.

> a. Movant's factual proffers plausibly establish a "reasonable probability" of a different outcome.

As a preliminary matter, the government relies on an incorrect statement of the law, arguing that Movant must prove that he would have received a life sentence had it not been for counsel's deficient performance. *See* Civ. Doc. 143 at 42. That is incorrect. To show prejudice in the context of counsel's failure to present or the jury's failure to credit mitigating evidence, Movant must show "a *'reasonable probability'* that at least one juror would have been moved to spare [his] life had he heard the mitigation evidence developed at the habeas hearing that was not presented at the trial." *Williams*, 529 U.S. at 394-95 (emphasis added). That is, "the available mitigating evidence, taken as a whole, 'might well have influenced the jury's appraisal of [Movant's] moral culpability." *Wiggins*, 539 U.S. 510, 538 (2003) (citing *Williams*, 529 U.S. at 398). The government's reconceptualization of clearly established law should be rejected at any stage of proceedings, let alone in a Rule 12(b)(6) motion.

Turning to Movant's factually supported allegations, here is not the place to repeat in full those facts but suffice to say Movant alleged and provided detailed factual proffers of the types of evidence trial counsel could have presented to their mental health experts and the jury had they conducted a constitutionally adequate investigation. Civ. Doc. 24 at 32-61; Civ. Doc. 146 at 63-103. He described, narratively, the story these witnesses and records could have provided (*id.*) and supported that story with documentary exhibits and lay witness affidavits. *See, e.g.,* Civ. Doc. 24, Appxs. 1-22 (affidavits), Appxs. 30-35 (records); Civ. Doc. 150, Appxs. 1-22 (affidavits); Civ.

43

Doc. 147, Appxs. 30-31 (records); Civ. Doc. 150, Appxs. 32-35 (records). And Movant presented an argument regarding how this evidence differed and changed the picture from that presented a trial, such that there was a reasonable probability that one juror would have voted for life. Civ. Doc. 24 at 32-61; Civ. Doc. 146 at 63-103. Movant's 2016 Motion alleged facts—and contained actual evidence in support of those facts—that, if true (and which the government does not now contest), would have resulted in a substantially different penalty phase of trial. At this pleading stage of proceedings, Movant pled a facially plausible claim for relief.

In 2021 and 2022, Movant filed additional lay witness affidavits that supported his factual proffer of evidence trial counsel could have presented to their experts and the jury with a constitutionally reasonable investigation. Civ. Doc. 106, Appxs. 217-30; Civ. Doc. 116, Appx. 239.

And, in response to the government's allegation in its Motion to Dismiss that his alleged facts are insufficient, Movant filed his 2023 Motion to offer even more, and even more specific, allegations and evidence of both the investigation neglected by counsel and the evidence that was available had they investigated. Civ. Doc. 146 at 35-103. Movant further developed the factual allegations of the claim and supported those factual allegations with the exhibits filed in 2016, 2021 and 2022 and reattached at Civ. Docs. 147 & 150.

Movant's factually supported allegations include:

- The true circumstances of Movant's conception, gestation (by a starving woman who nonetheless drank constantly and attempted suicide with rat poison), birth (breech with signs of infection), and infancy in (an extremely poor, unsanitary, pesticide-covered tenement in) Guatemala. Contrary to the rosy picture that Movant's father (Rafael) portrayed, the true circumstances include facts that: Movant's family suffered great poverty

in Guatemala, going hungry, sleeping on tarps outdoors, drinking from a ravine, and living near enormous fertilizer warehouses and pesticide covered fields; that Rafael physically assaulted, drugged with Rohypnol, and prostituted Movant's mother (Leticia); that Leticia further self-medicated with alcohol and marijuana, including binge drinking while she was pregnant with Movant; that Leticia's circumstances were so dire – and Rafael's behavior toward her so terribly abusive – that Leticia tried to kill herself while she was pregnant with Movant by ingesting poison; that Movant's birth was difficult; that Rafael's family forced Leticia to stop breastfeeding when Movant was five days old, instead feeding him rice water and cheap flours; and that Rafael's family kicked Leticia out when Movant was just eight months old, beating her when she asked to see her son. Civ. Doc. 24 at 34-38; Civ. Doc. 146 at 65-68.

- An accurate description of Movant's childhood in Santa Ana, El Salvador, with his father, Rafael. Again, contrary to the picture Rafael portrayed, Movant's childhood should be characterized by: Rafael's well-known reputation in his community as a violent, unpredictable man who drank, sold drugs, and threatened family and neighbors who were fearful of his erratic behavior and powerless to intervene when they observed him beat his son; that Rafael would take Movant out looking for Leticia, and when she refused to give him money, would violently beat her; that Rafael beat Movant – just for the sake of beating him – like he was a grown man, punching him with closed fists and leaving him bloody and bruised; that Movant grew up in tiny tenement rooms in mesons shared with Rafael, his grandmother, his cousin and pigeons, going without adequate clothing, food, or medical care; that other children made fun of Movant for his long, matted, lice-infested hair and teeth that were stained with permanent grime and possibly deformed by syphillis; that

45

Rafael operated a store front out of the room in which they lived, but withheld food from his son, sometimes eating in front of him, but not sharing with his own hungry child; that Movant's great-grandmother – his sole protector – died a slow death from stomach cancer, bedridden for many months in the same bed she shared with Movant, who was just eight years old. Civ. Doc. 24 at 37-47; Civ. Doc. 146 at 69, 71-82.

- The true extent of the war trauma that Movant was exposed to during his developmental years. This proffered evidence included not only detailed descriptions of threats by the death squads, but constant fear of people that supposedly could protect Movant, war atrocities and rotting corpses that Movant witnessed as a child, and specifically the fact that there was a colonel who lived above the meson in which Movant lived, who fired at the guerillas below, causing the guerillas to return rapid fire *directed at the meson* where Movant lived. Civ. Doc. 24 at 49-52; Civ. Doc. 146 at 84-87. Available evidence of trauma also included facts regarding Movant's migration to the United States, a trip during which he saw at least one man get run over while his son watched by the very train on which he was traveling. Civ. Doc. 146 at 87.

- The true functional impact of Movant's intellectual disability and low cognitive functioning. This included statements from family and friends that greatly expanded on the very minimal descriptions the jury heard about Movant's inability to supervise Coca-Cola accounts because of problems using math. *See* Def. Tr. Ex. 21 at 15:00. Evidence available to trial counsel established that Movant struggled to learn, could not master basic addition or multiplication, had such bad handwriting that people joked that it looked like he was writing with his feet, could not comprehend third grade academics at age sixteen in night school, constantly made mistakes in writing despite correction, and was derided by others

46

as "dumb." This also included statements from friends and family regarding Movant's inability to work, including his failures at picking coffee because he could not follow basic directions only to pick the red, ripe beans and that a neighbor tried to teach him carpentry, but he could not use a measuring tape or learn to sand with the grain. This also included statements from friends and family regarding his uncommon and severe difficulties with memory, including how Rafael would become angry because Movant could not remember what to buy at the store; that Movant would forget to bring things to school; and that Movant would forget where he stored his money (when it was stored in his shoe). This included evidence of deficiencies in self-care, including his inability to dress himself or tie his shoelaces. This included witnesses' observations of his immaturity, that he would joke inappropriately in serious situations; that he still acted like a little boy even after he joined MS-13, hanging around younger kids and watching cartoons, and playing children's games (of which he had difficulty learning the rules). Civ. Doc. 24 at 54-56; Civ. Doc. 146 at 87-95;

- This included further evidence of traumatic brain injury that would have corroborated the head injuries the jury heard about. In fact, readily available evidence supported at least three traumatic brain injuries: 1) falling, hitting his head, bleeding, and suffering a loss of consciousness while climbing a cupboard around age four or five; 2) also as a child, falling from the top of a mango tree, again hitting his head resulting in a bloody laceration and disorientation/confusion; and 3) a car accident as an adult where he – traveling as a passenger – hit his head on the dashboard. This further included detailed accounts of the history of his debilitating headaches that continued through adulthood and kept Movant from participating in daily life. Civ. Doc. 24 at 53-54; Civ. Doc. 146 at 96-97;

47

- Finally, this included evidence of other psychiatric symptoms that Movant demonstrated. This includes evidence that Movant had a long history, beginning in childhood, of seeing and hearing things that weren't there, staring off and talking either to himself or things that were not visible; that Movant insisted the things he saw were real and drew pictures of demon-like images to show the things he saw to others; and that he had visions and dreams that he believed were real and foretold the future. Civ. Doc. 24 at 56-57; Civ. Doc. 146 at 97-99.

The government points to nothing in the record that contradicts these facts. Indeed, given that the record contains very little evidence (because of counsel's deficient investigation) of Movant's formative years, his life in El Salvador, or his move to and life in the United States, it is reasonable to assume the record does not contradict Movant's allegations. Moreover, as the government does not "address the allegations in the motion," Rule 5(b), the government does not contest the facts alleged by Movant. Absent conclusively contrary evidence, all of Movant's allegations are presumed to be true, and all reasonable inferences are made in his favor. In light of this wealth of mitigating evidence, it is plausible that there is a reasonable probability the result of the penalty phase of trial would have been different had the jury heard the extensive and compelling evidence provided in Claim 1 in addition to the relatively meager evidence presented at trial.

> b. *The government's prejudice arguments in its discovery response are meritless.*

In its discovery response, which the government incorporated by reference into its Motion to Dismiss, the government argued that Movant cannot show prejudice resulting from trial counsel's ineffective failure to file formal discovery requests regarding the government's interviews of Movant's mother because he "has failed to identify any material related to his mother

48

that the United States was required to produce but did not." Civ. Doc. 52 at 96. The government is wrong. Movant has provided a declaration from his mother, Leticia, stating that, over the course of two lengthy interviews, she provided the government a multitude of mitigating facts, including her use of alcohol and drugs during gestation; her overwhelming inundation with toxic chemicals during gestation; Mr. Umaña's father's addiction to alcohol and consistent expression of violence; and physical health problems Mr. Umaña suffered as an infant. Civ. Doc. 22, Appx. 10, ¶¶ 81-83. However, the government withheld these details from trial counsel (and consequently from trial counsel's experts and the jury). *See* Civ. Doc. 22, Appxs. 74-75 (Notes of Prosecutor Jill Rose, provided to trial counsel during voir dire). Given this documented example of the government failing to disclose mitigating information it learned from its interviews of Mr. Umaña's mother, it is reasonable to infer the government failed to produce additional mitigating information learned from its interviews of other family members and witnesses who knew Mr. Umaña, his family, social history, and background.[8]

In its discovery response, the government also relied upon Dr. Olley's *Atkins* hearing testimony that he had "enough . . . to make an assessment for Alejandro Umaña on the question of mental retardation" to claim that Movant cannot demonstrate prejudice from counsel's failure to request a continuance of the *Atkins* hearing. Civ. Doc. 52 at 98-99. The government's argument ignores the crucial facts contained in Dr. Olley's report that: "My involvement in this case is quite recent and has allowed me time only to interview Movant and make one trip to El Salvador to interview witnesses. Thus, this case presents unique challenges in gathering adaptive functioning

---

[8] There can be no question that the government was required to produce this information, as it was exculpatory toward sentencing. *See Brady*, 373 U.S. at 87-88 (holding that prosecutorial suppression of information exculpatory to sentencing violates due process). Movant's motion for this Court to reconsider its denial of discovery on this issue remains pending. *See* Civ. Doc. 113.

information." Civ. Doc. 24, Appx. 73 at 9; Civ. Doc. 150, Appx. 73 at 9. While Dr. Olley may have had the bare minimum for making an intellectual disability diagnosis, he did not have – because counsel did not investigate – all reasonably available evidence to support that determination. *See also* infra at IV.C.3 (further discussion of Dr. Olley regarding Claim III).

The government's discovery arguments, incorporated by reference into its Motion to Dismiss, are either factually wrong or do not point to any portion of the record that conclusively disproves any of Movant's allegations. Thus, Movant's allegations, along with any reasonable inferences, are presumed true and in Movant's favor. The government's discovery arguments do not change the conclusion that Movant has plausibly alleged that he was prejudiced by counsel's deficient mitigation investigation.

### 3. Conclusion

By misstating the controlling law and by failing to meet its Rule 5 burden, the government cannot conclusively contradict any of Movant's extensive and detailed allegations concerning counsel's incomplete mitigation investigation and the evidence that was available with a complete investigation. The record does not contradict those facts, and the government has declined to offer any evidence to refute them, so they are presumed true. Movant has therefore pleaded a plausible claim for relief and dismissal for failure to state a claim is improper.

### B. The Facts Contained in Claim II – Regarding Trial Counsel's Ineffectiveness in Investigating, Developing, and Presenting Mental Health Evidence – State a Plausible Claim for Relief.

This Court should deny the government's request to dismiss Claim II because it misstates the controlling law and misapplies the applicable standard of review.

50

**1. The government urges this Court to dismiss this claim based on an erroneous test of prejudice.**

Referencing this Court's discovery order, the government argues that this claim should be dismissed because Movant had neither alleged sufficient facts to demonstrate "that counsel's performance fell below an objective standard of reasonable competence performance" nor alleged sufficient facts to show that "had counsel presented additional evidence, it would have altered the outcome." *See* Civ. Doc. 143 at 42-43 (citing Civ. Doc. 108 at 33). To show prejudice in the context of counsel's failure to present or the jury's failure to credit mitigating evidence, Movant must show "a *'reasonable probability'* that at least one juror would have been moved to spare [his] life had he heard the mitigation evidence developed at the habeas hearing that was not presented at the trial." *Williams*, 529 U.S. at 394-95 (emphasis added). That is, "the available mitigating evidence, taken as a whole, 'might well have influenced the jury's appraisal of [Movant's] moral culpability." *Wiggins*, 539 U.S. 510, 538 (2003) (citing *Williams*, 529 U.S. at 398). The government's reconceptualization of clearly established law should be rejected at any stage of proceedings, let alone in a Rule 12(b)(6) motion.

**2. The government ignores the wealth of evidence presented by Movant that is uncontested by any record evidence.**

In assessing whether Movant has stated a claim for which relief can be granted, Rule 12(b)(6), the Court assumes all of Movant's factually supported allegations to be true and resolves all reasonable inferences therefrom in Movant's favor, unless they are conclusively disproven by the record. *Iqbal*, 556 U.S. at 679; *Nemet Chevrolet, Ltd.*, 591 F.3d at 255; *see also Hall*, 846 F.3d at 765 ("When ruling on a motion to dismiss, courts must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff."). The government ignores much of the extensive evidence alleged in the Motion detailing both counsel's deficient performance and the evidence that trial counsel failed to present. Because the government

51

does not address these facts, either to show in the record where they are disproven or by providing additional evidence to disprove them, they must be assumed true at this stage. *Id*.

In support of Claim II, in his 2016 Motion, Movant presented specific factual proffers that his trial counsel's performance was deficient when they failed to investigate and present evidence of substantial deficits in intellectual functioning, including evidence presented at the *Atkins* hearing and additional evidence that trial counsel failed to obtain; the effects of trauma on Movant's developmental trajectory and state of mind; Movant's brain damage; and Movant's mental illness. *See* Civ. Doc. 24 at 62-97. Movant proffered evidence supporting this claim in his 2016 2255 Motion and supporting exhibits. *See* Civ. Doc. 24 at 64-67 (describing evidence of intellectual functioning that could have been presented to the jury); *id.* at 70-74 (describing lay evidence of trauma that could have supported a trauma expert's opinions); *id.* at 74-75 (describing what a trauma expert could have testified to based on Movant's specific circumstances); *id.* at 77-79 (describing lay witness testimony that could have supported expert testimony regarding brain damage); *id.* at 79-88 (describing expert testimony regarding brain damage that trial counsel failed to investigate and/or present); *id.* at 88-90 (describing lay witness evidence that would have supported – and constituted red flags necessitating – psychiatric evaluation). Evidence in support of his factual proffer included the affidavits/declarations/reports from: Dr. James Merikangas, M.D., that the results of his neurological examination and PET scan findings were consistent with Dr. Weinstein's neuropsychological testing, and that he could have testified about "the importance of the frontal lobes to executive function, judgment and impulse control and how brain-imaging illustrates the anatomy and physiology of that process" (Civ. Doc. 24, Appx. 27); Dr. John Gregory Olley, Ph.D., opining that additional lay witness evidence obtained in these postconviction proceedings "document[s] Mr. Umaña's very significantly limited academic and social skills" and

"describe[s] significant impairment in adaptive behavior that originated in childhood" (Civ. Doc. 24, Appx. 28); Dr. Ricardo Weinstein, Ph.D., that he conducted additional testing after the *Atkins* hearing that corroborated his finding of low IQ (Civ. Doc. 24, Appx. 81); and Dr. Ruben Gur, Ph.D., reporting results of quantitative analysis of PET scan; concluding scan showed "abnormalities in regions that are very important for regulating emotions and behavior (Civ. Doc. 24, Appx. 29).

In 2021 and 2022, Movant filed additional exhibits supporting allegations contained in this claim. (Civ. Docs. 106, 116.) Specifically, Movant filed affidavits/declarations/reports from: Dr. Antonio Puente, Ph.D., that Movant's testing and resultant IQ satisfies Prong 1 – low intelligence quotient – of the intellectual disability definition (Civ. Doc. 106, Appx. 213); Dr. Daniel Martell, Ph.D., that Movant is intellectually disabled (Civ. Doc. 116, Appx. 236); Dr. Eric Neilson, Ph.D., that Movant's letters – of the sort relied upon by this Court in its pretrial *Atkins* determination – contain derivative content and lack of sophistication as an "artist" (Civ. Doc. 116, Appx. 238); Dr. Julian Davies, M.D., that Movant suffers brain damage and psychosocial impairment as a result of Alcohol-Related Neurodevelopmental Disorder (a disorder under the umbrella of Fetal Alcohol Spectrum Disorder) (Civ. Doc. 106, Appx. 211); Dr. Andres Lugo, M.D., that Movant suffers brain damage and resultant psychosocial impairment as a result of his internal and external exposures to additional neurotoxins both *in utero* and during development, including prenatal exposure to alcohol, pre and postnatal exposure to pesticides and toxic fertilizers used in agriculture, prenatal exposure to pesticides as a result of his mother's suicide attempt, lead poisoning, and living in extreme poverty in a highly contaminated environment (Civ. Doc. 106, Appx. 212); Dr. Jennifer Sapia, Ph.D., that Movant's history of cumulative developmental trauma, which includes eight of the ten Adverse Childhood Experiences known to have deleterious effects into adulthood,

53

combined with his cognitive impairments "would have had a profound impact on his perceptions or reality, decision making, reasoning and judgment" (Civ. Doc. 106, Appx. 214); Dr. Selena Sermeño, Ph.D., that "[t]he accumulation of traumatic events in [Movant's] life . . . have placed Movant at severe risk for incomplete and extremely poor decision-making as well as cognitive delays and interruptions in his cognitive development" (Civ. Doc. 116, Appx. 237); and Dr. Pablo Stewart, M.D., that Movant suffers from Post-Traumatic Stress Disorder, cognitive impairment, low IQ, intellectual disability, neurological deficits, and psychotic symptomology all of which would have impacted his ability to regulate his emotions and behavior, including on the night of the homicides (Civ. Doc. 106, Appxs. 215, 216).

Finally, in response to the government's allegation in its Motion to Dismiss that his alleged facts are insufficient to state a plausible claim, Movant filed his 2023 Motion to offer even more, and more specific, allegations and evidence of both the investigation neglected by counsel and the mental health evidence that was available to present to the jury. Civ. Doc. 146 at 103-57. Movant further developed the factual allegations of the claim and supported those factual allegations with the exhibits filed in 2016, 2021 and 2022 and reattached at Civ. Docs. 147 & 150, and the additional exhibits filed at Civ. Doc. 150, Appxs. 242-44 (Dr. Leo Shea, III, Ph.D., reporting neuropsychological and intelligence testing conducted in connection with these post-conviction proceedings; resultant IQ that satisfies Prong 1 of the intellectual disability definition; brain damage that includes "frontal lobe deficiencies that limit his ability to effectively analyze, plan, organize and prioritize creative and effective solutions to problems especially when he is under time pressure or affected by meaning or sudden emotional stimuli" (Civ. Doc. 150, Appx. 243)); Dr. Ruben Gur, Ph.D., analyzing MRI of Movant's brain conducted in connection with these post-conviction proceedings, finding global hypotrophy and structural abnormalities in regions

"implicated in a variety of critical functions, including decision-making, memory, learning, and the control and regulation of emotions" (Civ. Doc. 150, Appx. 242); Dr. Thomas Ward, Ph.D., gang expert explaining that Movant's actions at Las Jarochitas would have been detrimental to the gang; observing that fellow gang members did not "back him up" in this spontaneous act; opining that a person with his mental health impairments would not be a leader in MS-13 (Civ. Doc. 150, Appx. 244); Dr. Robin Riner, Ph.D. regarding the government's manipulation of the translation of the Movant's jail letters to make him appear more educated and capable than he was (Civ. Doc. 150, Appx. 268); Dr. Erik Nielson, Ph.D., noting that Movant's songs are "simplistic," "highly repetitive," and "with little to distinguish it as a unique composition," which suggest "Mr. Umaña's artistic abilities and command of language are limited at best" (Civ. Doc. 150, Appx. 238)).

Except for Movant's allegations regarding trauma, which will be discussed below, the government does not dispute Movant's allegations of deficient performance. The government does not dispute that trial counsel recognized the need to hire experts to present their mitigation case. The government does not dispute that trial counsel possessed evidence presented at the *Atkins* hearing and/or from their *Atkins* hearing experts that they did not present to the jury. The government does not dispute the existence of the undiscovered lay evidence described in Claims I and II. The government does not dispute that trial counsel did not present this evidence to their experts. The government does not dispute that trial counsel did not develop or present any evidence from Drs. Puente, Martell, Sapia, Davies, Lugo, Gur, Stewart, Shea, Nielson, Ward, or Riner. The government also does not dispute that counsel did not present testimony from Dr. Weinstein or Dr. Olley at the penalty phase of trial or from Dr. Merikangas regarding Dr. Weinstein's testing.

Because the government does not dispute these facts, the facts which must be assumed true include:

- Trial counsel had in their possession, but did not present to the jury, evidence of Movant's low intelligence quotient, adaptive functioning deficits, intellectual disability, and brain damage. Civ. Doc. 22 at 64-66, 79-81; Civ. Doc. 146 at 106-16, 130-33.

- Trial counsel did not investigate to uncover additional reasonably available expert and lay evidence of Movant's low intelligence quotient, adaptive functioning deficits, intellectual disability, and brain damage. Civ. Doc. 22 at 66-67, 77-88; Civ. Doc. 146 at 108-14, 128-45.

- Trial counsel did not investigate to uncover reasonably available lay and expert evidence regarding Movant's mental illness. Civ. Doc. 22 at 88-90; Civ. Doc. 146 at 145-49.

- Trial counsel did not investigate to uncover reasonably available expert testimony regarding Movant's poor communication skills and lack of suitability as a purported "leader" in MS-13. Civ. Doc. 146 at 112, 145.

Likewise, the government ignores – and therefore certainly does not dispute – Movant's proffered factual evidence of prejudice. Movant will not repeat all his facts demonstrating prejudice here, but the record before this Court is clear that Movant alleged and provided detailed factual proffers of the expert mental health evidence counsel could have presented to the jury had they conducted a constitutionally adequate investigation and presented all reasonably available mental health evidence to the jury. Civ. Doc. 24 at 64-97; Civ. Doc. 146 at 106-57.

Because the government does not address Movant's allegations of prejudice on the face of its Motion to Dismiss, either to show in the record where they are disproven or provide additional

evidence to disprove them, Movant's allegations are presumed to be true. Those factual allegations include:

- A neuropsychologist such as Dr. Antonio Puente, Ph.D., could have testified that government expert Dr. Suarez's IQ tests were psychometrically invalid and the only reliable and consistent IQ testing in this case was conducted by Drs. Weinstein and Shea, whose testing revealed IQs of 60 and 66; Dr. Puente further could have testified that this means Movant satisfies Prong 1 – low intelligence – of the intellectual disability definition. Civ. Doc. 24 at 64-67, 100-02; Civ. Doc. 146 at 106-15, 164-65; Civ. Doc. 106, Appx. 213; Civ. Doc. 150, Appx. 213.

- A neuropsychologist such as Dr. Daniel Martell, Ph.D., could have testified that Movant is intellectually disabled, based upon his review of the testing, Dr. Puente's analysis, and the collateral information regarding adaptive deficits investigated and compiled in these postconviction proceedings. Civ. Doc. 24 at 64-67, 100-02; Civ. Doc. 146 at 39, 96, 106-15, 134-36, 166, 170, 176-77; Civ. Doc. 116, Appx. 236; Civ. Doc. 150, Appx. 236.

- An expert in rap lyrics as criminal evidence, such as Dr. Erik Nielson, would have testified about Movant's letters being based on derivative content and lacking sophistication as an "artist." Civ. Doc. 24 at 227-28; Civ. Doc. 146 at 112, 146, 311; Civ. Doc. 116, Appx. 238; Civ. Doc. 150, Appx. 238.

- A neuropsychologist such as Dr. Leo Shea, III, could have testified that his intelligence testing of Movant satisfied Prong 1 – low intelligence – of the intellectual disability diagnosis. Dr. Shea also could have testified that his neuropsychological evaluation of Movant revealed brain damage, including frontal lobe damage that limits his ability to

- analyze, plan, or effectively problem-solve under stress. Civ. Doc. 24 at 64-67, 79-82; Civ. Doc. 146 at 105-16, 131, 134, 136-38, 144; Civ. Doc. 150, Appx. 243.

- Movant suffers from Alcohol Related Neurological Disorder (ARND, under the umbrella of Fetal Alcohol Spectrum Disorder) as a result of his mother's consumption of alcohol during pregnancy. An FASD expert such as Dr. Julian Davies, M.D., could have testified about this diagnosis and Movant's resultant brain damage ("both structural and functional evidence of brain damage since childhood") and psychosocial impairment. Civ. Doc. 24 at 78, 86; Civ. Doc. 146 at 70-71, 105, 114, 129, 135-37, 144, 167; Civ. Doc. 106, Appx. 211; Civ. Doc. 150, Appx. 211.

- Movant suffered numerous toxic exposures in utero and during the developmental period, in addition to his mother's consumption of alcohol during pregnancy. These included pre and postnatal exposure to pesticides used in agriculture, prenatal exposure to pesticides due to his mother's suicide attempt, lead poisoning, and living in extreme poverty in a highly contaminated environment. A toxicology expert such as Dr. Andres Lugo, M.D., could have testified about the brain damage and psychosocial impairment Movant suffers as a result of these exposures. Civ. Doc. 24 at 60, 86; Civ. Doc. 146 at 39, 69-71, 105-06, 114, 129, 136-37, 144, 167; Civ. Doc. 106, Appx. 212; Civ. Doc. 150, Appx. 212.

- A quantitative analysis of Movant's PET scan shows abnormalities in regions important for regulating emotions and behavior.[9] An analysis of Movant's MRI shows that he has an overall small brain, 4.5 standards of deviation below the mean, and structural abnormalities in areas implicated in decision-making, memory, learning, and emotional

---

[9] The government's expert at trial, Dr. Mayberg, testified that just such a quantitative analysis would be useful and helpful in defining Movant's brain damage. PPT 787-90.

control/regulation. An expert in brain imaging and behavior, such as Dr. Ruben Gur, Ph.D., could have testified to these results. Civ. Doc. 24 at 85-87; Civ. Doc. 146 at 39, 70-71, 89-90, 105-06, 114, 129, 133, 136-37, 142-44, 152, 155-56, 166-67; Civ. Doc. 24, Appx. 29; Civ. Doc. 150, Appx. 242.

- Movant experienced eight of the ten Adverse Childhood Experiences that negatively impact a person's life trajectory. Movant's cumulative trauma history, combined with his cognitive impairments, "would have had a profound impact on his perceptions or reality, decision making, reasoning and judgment." A psychologist such as Dr. Jennifer Sapia, Ph.D., *based on an evaluation of Movant*, could have testified to these opinions regarding Movant's cumulative trauma history, its intersection with his cognitive impairments, and its negative impact on his psychosocial development and functioning. Civ. Doc. 24 at 74-75; Civ. Doc. 146 at 39, 71, 75, 88-89, 105-06, 114, 120, 124-26, 129, 133-34, 138, 342, 148, 151-52, 167, 262-63; Civ. Doc. 106, Appx. 214; Civ. Doc. 150, Appx. 214.

- A psychologist such as Dr. Selena Sermeño, Ph.D., could have testified, consistent with her postconviction declaration, *having evaluated Movant*, that Movant's experiences of cumulative trauma placed him at risk for "extremely poor decision-making" and cognitive delays. Civ. Doc. 24 at 74-75; Civ. Doc. 146 at 39-40, 71, 76, 79, 85-89, 114, 124-26, 148-52, 263, 358; Civ. Doc. 116, Appx. 237; Civ. Doc. 150, Appx. 237.

- A psychiatrist such as Dr. Pablo Stewart, M.D., could have testified that Movant suffers from Post-Traumatic Stress Disorder, cognitive impairment, low IQ, intellectual disability, neurological deficits, and psychotic symptomology, all of which would have impacted his ability to regulate his emotions and behavior, including on the night of the homicides. Civ.

59

Doc. 24 at 88-90; Civ. Doc. 146 at 39-40, 71, 88, 99, 114, 125, 133, 136-38, 144, 146, 148-49, 152-53, 326; Civ. Doc. 106; Appxs. 215, 216; Civ. Doc. 150, Appxs. 215, 216.

- Doctors such as Robin Riner, Ph.D., and Thomas Ward, Ph.D., could have testified that the government translations of Movant's letters cleaned up the letters to exaggerate his written abilities; and that his impairments would have disqualified him for a leadership role in MS-13. Civ. Doc. 24 at 227-28, 246; Civ. Doc. 146 at 90, 112, 145, 153, 162, 310-11; Civ. Doc. 150, Appxs. 268, 244.

The government further does not contest, and therefore it must be assumed true, that: Dr. Weinstein conducted additional, post-*Atkins* hearing testing; Dr. Olley reviewed additional collateral interviews and concluded that they corroborated his findings on adaptive deficits; and Dr. Merikangas could have testified about Dr. Weinstein's testing results and the functional import of Movant's brain damage, documented in the neuropsychological testing and PET scan.

Under the Rule 12(b)(6) standards, Movant has proffered factual allegations supporting a plausible claim for relief.

### 3. The government's discovery response arguments are unavailing.

The government's specific arguments – in its discovery response – regarding counsel's ineffectiveness for failing to investigate, develop, and present expert evidence should be rejected because the government merely speculates that trial counsel purportedly made strategic decisions not to investigate further, provide the fruits of that investigation to their experts, or hire additional necessary experts. Moreover, to the extent the record contains any evidence regarding counsel's strategy, it is evidence tending to demonstrate that counsel had none. *See* Civ. Docs. 24 & 150, Appxs. 23-24. The record is otherwise silent as to counsel's reasons for not investigating further, not providing the fruits of that investigation to their experts, hiring additional experts, or presenting evidence they did have to the jury, and the government has not seen fit (or is unable) to present

60

evidence establishing or even suggesting any reason. As all reasonable inferences must be made in Movant's favor, *Iqbal*, 556 U.S. at 679, the government's speculations are misplaced and inappropriate here.

In its discovery response, the government only specifically addresses one type of expert that counsel failed to develop and present – a trauma expert armed with a full social history who had evaluated Movant – and argues that trial counsel's performance in failing to investigate and present evidence of childhood trauma was not deficient because counsel "could have reasonably concluded that their time and resources were better spent elsewhere than with a neighbor who had never heard anyone call Umaña to eat or a cousin who recalled hunting for food with Umaña." Civ. Doc. 52 at 101. The government's argument must be rejected. First, it is wholly speculative about counsel's decision-making and, as demonstrated above, the government's speculation about counsel's purported decisions must be rejected at this stage when all reasonable inferences must be drawn in Movant's favor. Second, the government's argument is a gross misrepresentation of Movant's factual proffer of evidence of trauma that was undeveloped and unpresented because of counsel's narrow investigation. As demonstrated in the 2255 Motion and its supporting exhibits, the available evidence of trauma included much more than "a neighbor who never heard anyone call Umaña to eat or a cousin who recalled hunting for food with Umaña." Civ. Doc. 24 at 69-77; Civ. Doc. 146 at 116-27. On the contrary, the available – but uninvestigated and unpresented evidence – included evidence that Rafael Umaña (who trial counsel unreasonably relied upon for their family mitigation investigation) would beat Movant with his closed fists like he was a grown man until he was bloody and bruised. Civ. Doc. 24 at 45, 71; Civ. Doc. 146 at 80, 119. This evidentiary proffer alone is more than sufficient to state a plausible claim. But, as demonstrated in the 2255 Motion and its supporting exhibits, there was much more.

61

The government also faults attorney Bryson's affidavit for "not stat[ing] that the defense team did not take reasonable steps to seek evidence of abuse." Civ. Doc. 52 at 101. The fact that trial counsel did not admit the legal conclusion (which would be rejected in applying the government's motion, *Nemet Chevrolet, Ltd.*, 591 F.3d at 255) that his performance was deficient does nothing to erase the proffered *facts* that trial counsel relied on Movant's chief abuser to develop their mitigation case when, had they instructed their mitigation specialist to knock on the doors in front of him or go to the small neighborhood where Movant's mother lived (documented in the pretrial discovery), they would have learned of Rafael's brutal physical and mental abuse of Movant and so, so much more.

Contrary to the government's assertion (Civ. Doc. 52 at 101-02), counsel's deficient failure to engage in basic investigation tactics – such as knocking on doors at the mesons (which he photographed) where Movant spent most of his childhood and talking to their capital client's mother – was not transmuted into reasonable strategy because their client denied abuse when interviewed by the government's expert. First, and quite notably, *nowhere has the government disputed the proffered facts of the traumatic experiences* except to point out in its Discovery Response that Movant denied abuse to Dr. Suarez. Civ. Doc. 52 at 103. Second, the record in this case undermines, rather than supports, the government's speculation: trial counsel would not have even had Dr. Suarez's report until after November 2, 2009, *see* Civ. Doc. 24, Appx. 71; Civ. Doc. 150, Appx. 71 (Suarez's report dated 11/2/09), well after counsel's investigation should have been underway.

Third, even speculating that Movant told counsel the same things that Dr. Suarez claimed Movant said during his evaluation, Movant has proffered facts tending to show it would have been patently unreasonable for counsel to rely on their client's statements without an independent

62

investigation. *See, e.g., Rompilla*, 545 U.S. at 377. Movant has proffered evidence – which the government has not factually disputed – that his low intelligence quotient, trauma history, and cognitive impairments render him an unreliable narrator of his own life and, in particular, his experiences of traumatic events. Dr. Jennifer Sapia, Ph.D., evaluated Movant in these 2255 proceedings and explained in her report that "variables such as age, cognitive limitations and the nature of the trauma itself . . . impact Mr. Umaña's ability to understand, process, and remember and communicate his trauma history." Civ. Doc. 106, Appx. 214 at 22; Civ. Doc. 150, Appx. 214 at 22. According to Dr. Sapia, Movant "does not have the intellectual capacity to" "understand, process, remember, recall and communicate about a situation in the same way as his same age peers." *Id.* As a result, "he may not have a clear sense of what he experienced" growing up. *Id.* Dr. Sapia further noted Movant's history of dissociative symptomatology and that "dissociation or lack of integration can result in loss of memory for the events." *Id.* at 23. "It is quite common for individuals who have experienced trauma to avoid thinking about painful memories and avoidance is actually a symptom of PTSD." *Id.* Movant "tends to minimize his trauma history and romanticize his country." *Id.* Dr. Sapia noted her observations and opinions were consistent with Dr. Olley's that Movant "tried hard to make a good impression and put the best face on all events in his life." *Id.*; *see also* Civ. Doc. 24, Appx. 73 at 9 (Dr. Olley trial report); Civ. Doc. 150, Appx. 73 at 9 (same). And the trial record shows that Dr. Olley testified at the *Atkins* hearing: "[t]he factual information that the individual can provide about his life is useful to know, *because it's helpful to be able to compare that with what information we have from other sources*." *Atkins* Hearing 11/30/09 at 42 (emphasis added). Dr. Olley "would not rely entirely upon the defendant's information, because there's substantial research on interviewing people of low intelligence with

63

regarding to their understanding of the questions and being able to respond accurately and appropriately." *Id.*

Fourth, Movant was incompetent at the time of trial and is presently incompetent. *See, e.g.,* Civ. Doc. 71 at 2-13 (Supplemental/Amended claim that Movant was incompetent at trial and on direct appeal); Civ. Doc. 82 (counsel's request to stay these proceedings due to Movant's incompetence). The proffered facts demonstrate that the trial mitigation specialist was the only member of the defense team fluent in Spanish, thus able to speak directly to Movant without the barrier of an interpreter. The proffered facts further demonstrate that the mitigation specialist believed that Movant appeared "slow and paranoid," Civ. Doc. 24, Appx. 26 at ¶8; Civ. Doc. 150, Appx. 26 at ¶8, and was further concerned that when he and Mr. Umaña were "… in the middle of discussion about his case, he would suddenly break into songs and rap." Civ. Doc. 24, Appx. 26 at ¶17; Civ. Doc. 150, Appx. 26 at ¶17; *see also* (Gov't Tr. Ex. 522 at 128, 04/23/08 Transcript of Flores interview). The government does not dispute or otherwise attempt to disprove these proffered facts. Given Movant's mental state and observed bizarre behaviors, it would have been patently unreasonable – as the government speculates – for counsel to have relied upon his statements to direct their mitigation investigation.

Fifth, the government's speculative argument regarding a strategy that counsel has never stated or endorsed contradicts controlling law. The United States Supreme Court has long recognized defense attorneys' independent professional duty to investigate. *Wiggins*, 539 U.S. at 522-23. This is seen most clearly in the case of the non-cooperative client, where the Court has held that a client's non-cooperation is not, by itself, dispositive. *See Rompilla v. Beard*, 545 U.S. 374, 381 (2005) (describing Rompilla's non-cooperation and obstruction to preparation of mitigation case).

Finally, contrary to the government's speculation, the fact that Movant denied physical abuse to Dr. Suarez (Civ. Doc. 52 at 103) would not have undermined all the other witnesses to render their evidence non-prejudicial. As described above, Movant has proffered facts showing a mental health expert such as Dr. Sapia or Dr. Olley could have explained to the jury why Movant's recitation of his personal history is unreliable as a result of his impairments. Again, the government has not disputed these facts.

The government's contention that Movant "offers nothing but pure speculation" that a trauma expert could have provided reliable testimony about the effects of trauma on Movant, Civ. Doc. 52 at 102, now misses the mark. In his 2255 Motion, Movant proffered what an expert could have said, Civ. Doc. 24 at 75; Civ. Doc. 146 at 122-25, and has now provided this Court with reports/declarations of experts that could have testified. Civ. Doc. 106, Appx. 214, 215, 216; Civ. Doc. 116, Appx. 237; Civ. Doc. 150, Appxs. 214, 215, 216, 237, 243 (Drs. Sapia, Sermeño, Shea, and Stewart). Far from speculative, Movant has provided this Court with specific factual allegations of what specific experts could have testified to. As explained in the 2255 Motion, this proffered evidence was both qualitatively and quantitatively different than that developed and presented at trial.

The government's argument that the jury heard a "detailed history of Umaña's youth, including details about the horrors he witnessed during the Salvadoran civil war and difficulties he faced at home" (Civ. Doc. 52 at 101) and from other experts about Movant's trauma (Civ. Doc. 52 at 102) ignores the qualitative and quantitative difference between what was presented at trial and what has been proffered in these 2255 proceedings. A comparison of the trial mitigation

65

specialist's report,[10] Civ. Doc. 24, Appx. 36; Civ. Doc. 150, Appx. 36, and the proffered evidence contained in and attached to the 2255 Motion makes a plausible showing that the post-conviction evidence wholly changes the narrative the jury heard. That is all that is required here.

The government mischaracterizes Movant's allegation that trial counsel ineffectively presented trauma as a complaint that counsel's choice of experts was unreasonable. Civ. Doc. 52 at 102. The government misses the point – the fundamental problem was not trial counsel's choice of expert, but counsel's deficient investigation that failed to uncover reasonably available evidence of trauma, counsel's consequent failure to provide that evidence of trauma to an appropriate expert, and counsel's failure to have their trauma expert conduct a personal evaluation of Movant. Movant has proffered evidence from the same trauma expert counsel presented at trial, showing how different her trial testimony could have been if it had been predicated on adequate defense investigation and a full evaluation. *Compare* PPT 600-36 *with* Civ. Doc. 116, Appx. 237 (Dr. Sermeño declaration); Civ. Doc. 150, Appx. 237 (same); *see also* Civ. Doc. 106, Appx. 214, 215, 216; Civ. Doc. 150, Appxs. 214, 215, 216, 243 (Drs. Sapia, Shea, and Stewart).

Contrary to the government's assertion (Civ. Doc. 52 at 102), there should be no question that Movant has proffered facts demonstrating a plausible claim that Movant was prejudiced when counsel failed to develop and present the wealth of expert testimony described in Claim II.

---

[10] The record shows that the only information provided to Dr. Merikangas, Dr. Sermeño, and Ms. Santa Cruz Giralt at trial was the trial mitigation specialist's report. PPT 618, 679-80. *See also* Civ. Doc. 24, Appx. 27 at ¶¶ 4, 10 (Dr. Merikangas 2255 declaration that he reviewed McGough's social history report; that a comprehensive evaluation requires "the social history of the client."); Civ. Doc. 150, Appx. 27 at ¶¶ 4, 10 (same). The government has offered nothing to dispute that record fact or the proffered fact that Rafael Umaña was the main source of the trial mitigation specialist's report.

### 4. Conclusion

By misstating the controlling law and failing to meet its Rule 5 burden, the government effectively ignores extensive facts presented by Movant. Those facts are not contradicted by the record, and the government has declined to offer any evidence to contradict them, so are presumed to be true. Movant has therefore pleaded a plausible claim for relief and dismissal for failure to state a claim is improper.

### C. The Facts Contained in Claim III – Regarding Counsel's Ineffectiveness in Investigating and Presenting Evidence at the Atkins Hearing – State a Plausible Claim for Relief.

This Court should deny the government's request to dismiss Claim III because it misstates the controlling law and misapplies the applicable standard of review.

#### 1. The government urges this Court to dismiss this claim based on an erroneous test of prejudice.

Referencing this Court's discovery order, the government argues that this claim should be dismissed because Movant had neither alleged sufficient facts to demonstrate "that counsel's performance fell below an objective standard of reasonable competence performance" nor alleged sufficient facts to show that "had counsel presented additional evidence, it would have altered the outcome." *See* Civ. Doc. 143 at 42-43 (citing Civ. Doc. 108 at 33). As a preliminary matter, the government relies on an incorrect statement of the law. To show prejudice in the context of counsel's failure to present or the jury's failure to credit mitigating evidence, Movant must show "a 'reasonable probability'" of a different outcome. *Strickland*, 466 U.S. at 694. Movant has set forth a plausible claim of his ability to demonstrate just that here.

#### 2. The government ignores the wealth of proffered evidence presented by Movant that is uncontested by any record evidence.

In assessing whether Movant has stated a claim for which relief can be granted, Rule 12(b)(6), the Court assumes all of Movant's factually supported allegations to be true and resolves

67

all reasonable inferences therefrom in Movant's favor, unless they are conclusively disproven by the record. *Iqbal*, 556 U.S. at 679; *Nemet Chevrolet, Ltd.*, 591 F.3d at 255; *see also Hall*, 846 F.3d at 765. The government ignores much of the extensive evidence alleged in the Motion detailing counsel's deficient performance and the evidence that trial counsel failed to present. Because the government does not address these facts, either to show in the record where they are disproven or by providing additional evidence to disprove them, they must be assumed true at this stage.

Movant will not repeat all those facts here, but the record before this Court is clear that Movant alleged and provided detailed factual proffers of the lay and expert evidence supporting a diagnosis of Intellectual Disability that trial counsel failed to present to this Court in support of Movant's ineligibility for a death sentence. Civ. Doc. 24 at 53-56 (intellectual disability allegations in Claim I, incorporated by reference into Claim III); *id.* at 66-67 (intellectual disability allegations in Claim II, incorporated by reference into Claim III); *id.* at 97-102 (intellectual disability allegations in Claim III); Civ. Doc. 146 at 90-97 (intellectual disability allegations in Claim I, incorporated by reference into Claim III); *id.* at 108-14 (intellectual disability allegation in Claim II, incorporated by reference into Claim III); *id.* at 157-68 (intellectual disability allegations of Claim III). In support of that claim, in his 2016 Motion, Movant presented specific factual proffers that his trial counsel's performance was deficient and of the evidence of intellectual disability that they failed to present, including lay witness, documentary, and expert evidence. See Civ. Doc. 24 at 97-102. Movant further incorporated the legal averments and factual allegations of Claims I and II, which, as discussed above, contained evidentiary proffers of both lay and expert evidence regarding intellectual disability. Civ. Doc. 24 at 98. Movant supported these allegations with expert affidavits/declarations/reports from: Dr. Weinstein, showing additional post-*Atkins* hearing testing that corroborated his findings that Movant had an IQ in the intellectually disabled range (Civ. Doc.

24, Appx. 81; Civ. Doc. 150, Appx. 81) and Dr. Olley, reviewing additional collateral evidence of adaptive functioning, finding that it corroborated his *Atkins* hearing opinion that Movant had adaptive deficits that satisfy the intellectual disability definition (Civ. Doc. 24, Appx. 28; Civ. Doc. 150, Appx. 28).

In 2021 and 2022, Movant filed additional exhibits that supported allegations contained in this claim. Civ. Docs. 106, 116. This evidence included affidavits/declarations/reports from: Dr. Antonio Puente, Ph.D., that Movant's IQ satisfies Prong 1 – low intelligence quotient – of the intellectual disability definition (Civ. Doc. 106, Appx. 213); and Dr. Daniel Martell, Ph.D., that Movant is intellectually disabled (Civ. Doc. 116, Appx. 236). And additional lay witness declarations. Civ. Doc. 106, Appx. 217-30.

Finally, in response to the government's allegation in its Motion to Dismiss that his alleged facts are insufficient to state a plausible claim, Movant filed his 2023 Motion to offer even more, and more specific, allegations and evidence of both the investigation neglected by counsel and the evidence of intellectual disability that was available to present at the *Atkins* hearing. Civ. Doc. 146 at 103-57. Movant further developed the factual allegations of the claim and supported those factual allegations with the exhibits filed in 2016, 2021 and 2022 and reattached at Civ. Docs. 147 & 150, and the additional exhibits filed at Civ. Doc. 150, Appxs. 242-43 (Dr. Leo Shea, III, Ph.D., intelligence testing during 2255 proceedings resulted in an IQ score of 69[11] that satisfies Prong 1 of the intellectual disability definition (Civ. Doc. 150, Appx. 243) and Dr. Ruben Gur, Ph.D.,

---

[11]In reviewing Dr. Shea's testing, Dr. Puente discovered a scoring transposition. When that transposition was fixed, Movant's IQ on Dr. Shea's testing was determined to be 66. Civ. Doc. 106, Appx. 213, ¶ 58; Civ. Doc. 150, Appx. 213, ¶ 58.

analyzing postconviction MRI that documents Movant has an overall small brain, 4.5 standards of deviation below the mean (Civ. Doc. 150, Appx. 242).

Throughout these proceedings, Movant has also filed lay witness affidavits and records – that trial counsel did not investigate and obtain – tending to demonstrate intellectual disability, *see, e.g.* Civ. Doc. 24, Appx. 1 ¶¶ 17, 20-21, 25; Appx. 3 ¶11; Appx. 4 ¶23 ; Appx. 6 ¶¶ 13-20; Appx. 7 ¶5; Appx. 10 ¶¶ 39-44,48-53; Appx. 12 ¶¶ 7-12,14; Appx. 15 ¶¶ 11, 14-15, 24-26, 34, 39; Appx. 16 ¶20; Appx. 19 ¶¶ 13, 16-17; Appx. 20 ¶31; Appx. 21 ¶¶10, 12; Appx. 22 ¶¶ 25, 39, 40, 34, 37, 43; Civ. Doc. 150, Appx. 1 ¶¶ 17, 20-21, 25; Appx. 3 ¶11; Appx. 4 ¶23 ; Appx. 6 ¶¶ 13-20; Appx. 7 ¶5; Appx. 10 ¶¶ 39-44,48-53; Appx. 12 ¶¶ 7-12,14; Appx. 15 ¶¶ 11, 14-15, 24-26, 34, 39; Appx. 16 ¶20; Appx. 19 ¶¶ 13, 16-17; Appx. 20 ¶31; Appx. 21 ¶¶10, 12; Appx. 22 ¶¶ 25, 39, 40, 34, 37, 43; Appx. 219 ¶¶5, 10-20, 25; Appx. 220 ¶¶4, 6; Appx. 221 ¶¶ 5¶; Appx. 222 ¶ 5; Appx. 224 ¶2, 5, 7, 9-11, 15-16; Appx. 226 ¶7-9; Appx 227 ¶¶2-3; Appx. 228 ¶¶3-5, 8, 11; Appx. 229 ¶¶9-11; Appx. 230 ¶¶ 2-4, 6-8; Civ. Doc. 106, Appx. 219 ¶¶5, 10-20, 25; Appx. 220 ¶¶4, 6; Appx. 221 ¶¶ 5¶; Appx. 222 ¶ 5; Appx. 224 ¶2, 5, 7, 9-11, 15-16; Appx. 226 ¶7-9; Appx 227 ¶¶2-3; Appx. 228 ¶¶3-5, 8, 11; Appx. 229 ¶¶9-11; Appx. 230 ¶¶ 2-4, 6-8. and expert reports demonstrating potential etiology for Movant's intellectual disability beginning in utero and the developmental period. *See, e.g.*, Civ. Doc. 24, Appx. 29 (Dr. Gur's quantitative analysis of PET scan); Civ. Doc. 150, Appx. 29 (same); Civ. Doc. 150, Appx. 242 (Dr. Gur's analysis of MRI); Civ. Doc. 106, Appx. 211 (Dr. Julian Davies, M.D. – Alcohol Related Neurodevelopmental Disorder); Civ. Doc. 150, Appx. 211 (same); Civ. Doc. 106, Appx. 212 (Dr. Andres Lugo, M.D. – neurotoxin exposure including pesticides and lead); Civ. Doc. 150, Appx. 212 (same); Civ. Doc. 106, Appx. 214 (Dr. Jennifer Sapia, Ph.D. – cumulative trauma's impact on brain); Civ. Doc. 150, Appx. 214 (same).

70

While the government offers only limited refutation of Movant's allegations of deficient performance, which will be discussed below, the government does not dispute Movant's factual allegations of prejudice. Because the government does not dispute these facts, the facts which must be assumed true include:

- Dr. Weinstein conducted additional testing after the *Atkins* hearing and could have testified that it further demonstrated that Movant's IQ is within the intellectually disabled range. Civ. Doc. 24 at 101-02; Civ. Doc. 146 at 164; Civ. Doc. 24, Appx. 81; Civ. Doc. 150, Appx. 81.

- A neuropsychologist such as Dr. Antonio Puente, Ph.D., could have testified that government expert Dr. Suarez's IQ tests were psychometrically invalid; the only reliable IQ testing in this case was conducted by Drs. Weinstein and Shea, whose testing revealed IQs of 60 and 66. Dr. Puente further could have testified that this means Movant satisfies Prong 1 – low intelligence – of the intellectual disability definition. Civ. Doc. 24 at 64-67, 100-02; Civ. Doc. 146 at 106-15, 164-65; Civ. Doc. 146 at 164-65; Civ. Doc. 106, Appx. 213; Civ. Doc. 150, Appx. 213.

- A neuropsychologist such as Dr. Leo Shea, III, could have testified that his intelligence testing of Movant satisfied Prong 1 – low intelligence – of the intellectual disability diagnosis. Civ. Doc. 24 at 64-67, 79-82; Civ. Doc. 146 at 105-16, 131, 134, 136-38, 144; Civ. Doc. 146 at 165; Civ. Doc. 150, Appx. 243.

- A neuropsychologist such as Dr. Daniel Martell, Ph.D., could have testified that Movant is intellectually disabled, based upon his review of the testing, Dr. Puente's analysis, and the collateral information regarding adaptive deficits investigated and compiled in these postconviction proceedings. Civ. Doc. 24 at 64-67, 100-02; Civ. Doc. 146 at 39, 96, 106-

71

15, 134-36, 166, 170, 176-77; Civ. Doc. 146 at 166; Civ. Doc. 116, Appx. 236; Civ. Doc. 150, Appx. 236.

- Dr. Gregory John Olley, Ph.D., could have testified that his opinions are corroborated and strengthened by additional collateral materials he reviewed in these post-conviction proceedings. Civ. Doc. 24 at 100-01; Civ. Doc. 146 at 165; Civ. Doc. 24, Appx. 28; Civ. Doc. 150, Appx. 28.

- Movant's history contains many risk factors and potential causes of intellectual disability, including maternal consumption of alcohol during pregnancy resulting in ARND, neurotoxic exposure, traumatic brain injury, and cumulative trauma. Doctors, including Drs. Davies, Lugo, Sapia, and Gur, could have testified about Movant's developmental risk factors and structural brain abnormalities. *E.g.,* Civ. Doc. 24 at 85-87; Civ. Doc. 146 at 166-68; *see also* Civ. Doc. 24, Appx. 29; Civ. Doc. 106, Appxs. 211, 212, 214; Civ. Doc. 150, Appxs. 29, 211, 212, 214, 242.

- Movant's family and friends could have testified about the true functional impact of Movant's intellectual disability and low cognitive functioning. This included statements from family and friends that greatly expanded on the very minimal descriptions the jury heard about Movant's inability to supervise Coca-Cola accounts because of problems using math. *See* Def. Tr. Ex. 21 at 15:00. Evidence available to trial counsel established that Movant struggled to learn, could not master basic addition or multiplication, had such bad handwriting that people joked that it looked like he was writing with his feet, could not master third-grade academics at age sixteen in night school, constantly made mistakes in writing despite correction and was derided by others as "dumb." This also included statements from friends and family regarding Movant's inability to work, including his

72

failures at picking coffee because he could not follow basic directions only to pick the red, ripe beans and that a neighbor tried to teach him carpentry, but he could not use a measuring tape or learn to sand with the grain. This also included statements from friends and family regarding his uncommon and severe difficulties with memory, including how Rafael would become angry because Movant could not remember what to buy at the store; that Movant would forget to bring things to school; and that Movant would forget where he stored his money (when it was stored in his shoe). This included evidence of deficiencies in self-care, including his inability to dress himself or tie his shoelaces. This included witnesses' observations of his immaturity, that he would joke inappropriately in serious situations; that he still acted like a little boy even after he joined MS-13, hanging around younger kids and watching cartoons, and playing children's games (of which he had difficulty learning the rules). Civ. Doc. 24 at 54-56; Civ. Doc. 146 at 87-95.

As no Court has yet determined of whether Movant satisfies the IQ prong of intellectual disability, Movant's proffers of IQ are clearly not refuted by the record. Moreover, the government has offered no evidence and pointed to no place in the record to dispute Dr. Weinstein's additional testing, Dr. Shea's testing, Dr. Puente's analysis of Drs. Weinstein, Shea, and Suarez's testing, or Dr. Puente's conclusion that Dr. Suarez's testing was psychometrically invalid. Thus, at this pleading stage, all of Movant's factual assertions must be treated as true.

Nor does the government dispute the *facts* regarding the lay witness evidence describing Movant's functioning during the developmental period. As discussed above (*see* Claim I), the government does not dispute that counsel did not interview these witnesses. Nor has the government offered anything to dispute the facts contained in these witness declarations or the experts' reliance on those facts. Movant's facts must be credited as true.

The government also does not dispute the facts contained within Dr. Martell's declaration/report or that they have concluded – and could testify that – Movant is intellectually disabled. Instead, as discussed below, the government offers legally incorrect arguments to discount the import of these opinions. Because the government does not dispute the facts, they must be accepted as true.

Finally, the government does not dispute the facts regarding the potential etiology of Movant's intellectual disability but, as will be discussed below, merely tries to explain away the import of etiology. Because the government does not dispute the facts, they must be accepted as true.

### 3. The government's discovery response arguments are unavailing.

The government's specific arguments in its discovery response are equally unpersuasive at this stage of proceedings.

First, the government posits speculative and legally erroneous strategic reasons for counsel's performance that exist nowhere in the record. The government's argument that it was not unreasonable for counsel to focus on Movant's school records over anecdotal evidence of poor academic performance as a child (Civ. Doc. 52 at 104) ignores controlling precedent that counsel must investigate "all reasonably available mitigating evidence." *Wiggins v. Smith*, 539 U.S. 510, 522 (2003). Movant has alleged that additional evidence–and additional sources of evidence– existed beyond that presented at the *Atkins* hearing, but counsel failed to investigate that evidence and those sources. "[A]s *Wiggins* makes clear, an inadequate investigation into potentially mitigating evidence can be, by itself, sufficient to establish deficient performance." *Williams v. Stirling*, 914 F.3d 302, 314 (4th Cir. 2019) (citing *Wiggins*, 539 U.S. at 534). *See also Rompilla v. Beard*, 545 U.S. 374, 383, 388 (2005) (finding trial counsel ineffective for failing to review file of prior conviction, despite fact that counsel had conducted other mitigation investigation; rejecting

74

prosecution argument "that defense counsel's efforts to find mitigating evidence by other means excused them from looking in the prior conviction file"). For a "decision" to be "strategic," that decision must have been made after constitutionally adequate investigation. *Wiggins*, 539 U.S. at 521-22. Here, the deficits documented in Movant's school records should have been a red flag that additional investigation – interviewing individuals who knew Movant when the records were created to develop descriptive, collateral information from those who interacted with him – would have yielded additional helpful information. *See Wiggins,* 539 U.S. at 525 (finding the scope of counsel's investigation was deficient when the records counsel *did* obtain contained helpful information that would have caused "any reasonably competent attorney" to "realize[] that pursuing these leads was necessary"). Movant has proffered evidence that no such investigation occurred here. And the government does not dispute that counsel did not conduct an investigation to interview these collateral witnesses, nor does the government dispute the contents of their declarations.

The government's attempts to blame Dr. Olley for counsel's failure to investigate and claim that Dr. Olley conducted a "full investigation" in El Salvador – because he testified that he had enough information to make a diagnosis – are factually and legally erroneous. *See* Civ. Doc. 52 at 104-05. As a factual matter, the government wholly ignores the of-record fact that Dr. Olley stated, in his trial report, that: "My involvement in this case is quite recent and has allowed me time only to interview Mr. Umaña and make one trip to El Salvador to interview witnesses. Thus, this case presents unique challenges in gathering adaptive functioning information." *Atkins Hearing*, Def. Exh. 2 at 9 (Civ. Doc. 24, Appx. 73 at 9; Civ. Doc. 150, Appx. 73 at 9). Taken in context, it is clear that while Dr. Olley had the minimum needed to make a diagnosis, Dr. Olley did not have everything he needed, and trial counsel were on notice that Dr. Olley's limited opportunity to

75

conduct interviews presented "unique challenges in gathering adaptive functioning information." Indeed, Dr. Olley's postconviction declaration documents that the postconviction investigation uncovered evidence he was unaware of when he testified. Civ. Doc. 24, Appx. 28; Civ. Doc. 150, Appx. 28.

As a legal matter, the government's attempt to blame Dr. Olley ignores controlling Supreme Court authority that *investigating* the facts underlying mental health evidence is a task charged to counsel, not the expert. For example, in *Andrus v. Texas*, 140 S.Ct 1875 (2020), "a clinical psychologist briefly retained to examine a limited sample of Andrus' files had informed [trial counsel] that Andrus may have schizophrenia." *Id*. at 1883. The Supreme Court, in finding Andrus's trial counsel ineffective, did not discuss what the *expert* next did with that information, but what *counsel* should have done: "Clearly, 'the known evidence would [have] le[d] *a reasonable attorney* to investigate further.'" *Id*. at 1883 (citing *Wiggins,* 539 U.S. at 527) (emphasis added). The same is true here. Dr. Olley was not responsible for directing or conducting the investigation in this case; Movant's trial counsel were. Movant has provided detailed factual proffers of his counsel's deficient performance, and the government does not dispute his proffer regarding the scope of counsel's investigation.

As the government only refutes of this limited portion of Movant's fact-supported allegations concerning what and why counsel did/did not do, the rest must be presumed true. *Iqbal*, 556 U.S. at 679; *see also Hall*, 846 F.3d at 765 ("When ruling on a motion to dismiss, courts must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff."). The government does not dispute that trial counsel recognized the need to hire experts to present their case of intellectual disability. The government does not dispute that trial counsel received additional information from Dr. Weinstein after the

76

*Atkins* hearing but did not present that evidence to the Court. The government does not dispute that that counsel – faced with wildly divergent IQ tests from Drs. Weinstein and Suarez – failed to conduct an investigation (such as getting a second evaluation or a third-party expert to review the testing and figure out why the disparity) to determine the source of that disparity. The government does not dispute the existence of the undiscovered lay evidence described in Claims I, II, and III. The government does not dispute that trial counsel did not present this evidence to their experts. The government does not dispute that trial counsel did not develop or present any evidence from Drs. Puente, Martell, Sapia, Davies, Lugo, Gur, or Shea. The government solely disputes the legal conclusion that counsel's failure to investigate further was unreasonable. The government's legal argument is wrong, and because the government does not dispute the facts, they must be accepted as true.

The government's arguments regarding prejudice are also legally erroneous and based on mischaracterizations of the record and Movant's proffered evidence. The government's reliance on this Court's *Atkins* finding that Movant had not shown current deficits in functional academics (Civ. Doc. 52 at 105) to minimize the import of the uninvestigated, unpresented evidence of deficits in functional academics is legally flawed. "[T]he medical community defines intellectual disability according to three criteria: significantly subaverage intellectual functioning, deficits in adaptive functioning (the inability to learn basic skills and adjust behavior to changing circumstances), and onset of these deficits during the developmental period." *Hall v. Florida*, 572 U.S. 701, 710 (2014) (citing *Atkins v. Virginia*, 536 U.S. 304, 308 (2002). Thus, medicolegally, it is the evidence of Movant's functioning during the developmental period that controls. However, even if Movant's current functioning is relevant, Movant has proffered evidence showing he is still "substantially limited," as the Court required. Crim. Doc. 934 at 14. Civ. Doc. 146 at 162;

Civ. Doc. 150, Appx. 245 (2011 Federal Bureau of Prisons Inmate Skills Development Plan, compiling Movant's educational history, stating "intellectual deficits were noted," Movant had not completed the third grade despite several attempts, and had limited or no English fluency). The government has offered nothing to dispute the validity of the government's own BOP document. Given the close nature of the Court's call on functional academics, *see* Crim. Doc. 934 at 14-15, it is more than plausible at this pleading stage that Movant's proffered evidence could have tipped the scales.

Movant's proffered evidence also shows the error of the government's cumulativeness argument. *See* Civ. Doc. 52 at 104. Movant has proffered evidence showing that an expert, such as Dr. Daniel Martell, Ph.D., would have explained the importance of "convergent validity" when evaluating evidence of adaptive functioning. That is, Dr. Martell concluded that Movant has "significant deficits or impairments in all three domains of adaptive functioning" because there "is substantial convergent validity from anecdotal, contemporaneous, and empirical data sources." Civ. Doc. 116, Appx. 236 at 32; Civ. Doc. 150, Appx. 236 at 32. Thus, contrary to the government's assertions, Dr. Olley's statement in his post-conviction declaration that the new materials are consistent with his earlier opinion (Civ. Doc. 52 at 105) does not negate the importance of the new materials but bolsters their importance.

While the government is correct that this Court did not rule on the IQ prong of intellectual disability (Civ. Doc. 52 at 105), that does not make Movant's proffer of additional intelligence testing irrelevant here. To prevail on this claim, Movant carries the burden of demonstrating a reasonable probability of a more favorable outcome at his *Atkins* hearing; the relevant outcome is a reasonable probability that this Court would have found him intellectually disabled had trial counsel performed effectively. Thus, Movant's claim necessarily includes all allegations of

78

deficient performance and prejudice, including deficient performance in the investigation and presentation of IQ evidence and proffered evidence showing Movant satisfies all three prongs of Intellectual Disability. The government has offered nothing to factually dispute the proffered evidence, including, most importantly, Dr. Puente's analysis of the three doctors' scores, the determination that Dr. Suarez's scores are psychometrically invalid, and the conclusion that Movant satisfied Prong 1 based on Drs. Shea and Weinstein's testing. Drawing all reasonable inferences in favor of Movant, Movant has made more than a plausible showing regarding Prong 1.

Finally, the government argues that Movant's proffered evidence of trauma would not have affected the pretrial *Atkins* determination because Dr. Olley testified it is not necessary to identify an etiology of mental retardation. Civ. Doc. 52 at 103-04. However, Movant has proffered additional evidence from Dr. Olley in his postconviction declaration that, while etiology is not necessary, *it is helpful*. Civ. Doc. 24, Appx. 28 ¶6; Civ. Doc. 150, Appx. 28 ¶6. Indeed, as demonstrated in several of Movant's mental health evidentiary proffers, etiology is an important consideration in evaluating an individual, and Movant has numerous risk factors and overlapping etiologies for impairment. *See*, *e.g.*, Civ. Doc. 106, Appx. 211 (Dr. Davies); Appx. 212 (Dr. Lugo); Appx. 214 (Dr. Sapia); Civ. Doc. 150, Appxs. 211, 212, 214, 243 (Dr. Davis, Lugo, Sapia, and Shea). *See also* Crim. Doc. 934 at 18-19 (this Court reviewing evidence of etiology in considering age of onset).

### 4. Conclusion.

By misstating the controlling law and failing to meet its Rule 5 burden, the government effectively ignores extensive facts presented by Movant. Those facts are not contradicted by the record, and the government has declined to offer any evidence to contradict them, so are presumed

to be true. Movant has therefore pleaded a plausible claim for relief and dismissal for failure to state a claim is improper.

**D. Movant Has Stated a Plausible Claim That He Is Intellectually Disabled, Ineligible for the Death Penalty, and Appellate Counsel Ineffectively Litigated This Issue on Direct Appeal (Claim IV).**

The government's arguments to dismiss Claim IV do not contain any factual allegations conclusively disproving Movant's fundamental proffer that since before the age of 18, he has been intellectually impaired and suffered adaptive deficits such that he is intellectually disabled as defined by *Atkins v. Virginia*, and its progeny. Civ. Doc. 24 at Claims I, II, III & IV; Civ. Doc. 146 at Claims I, II, III, & IV. Absent any conclusively disproving facts, those factually supported allegations are presumed to be true. *Iqbal*, 556 U.S. at 679; *see also Hall*, 846 F.3d at 765 ("When ruling on a motion to dismiss, courts must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff."). Instead, the government's dismissal arguments insist that Movant has, missed the boat for presenting this uncontested evidence that he is ineligible for execution.

Specifically, the government urges dismissal for three reasons: 1) relying on this Court's discovery order, the government argues that Movant cannot relitigate his *Atkins* hearing in his 2255 proceedings (Civ. Doc. 143 at 105); 2) relying on this Court's discovery order, the government argues that Movant has failed to state a "prima facie claim" for relief (*id.*); and 3) relying on its prior discovery response, the government argues this claim is procedurally defaulted because Movant did not challenge the Court's pretrial *Atkins* determination on direct appeal (*id.*). Even though the government's arguments are primarily made in documents that are now nullified and otherwise do not control the substance of this Claim, the government's arguments are factually and legally incorrect.

**1. The History of This Claim, the United States Supreme Court's *Atkins* Jurisprudence, and Status of Counsel.**

This claim involves the complicated interaction of Movant's trial and direct appeal, intervening Supreme Court opinions, and the changing statuses of Movant's counsel. The government itself has fallen afoul of these complications, arguing on the one hand that the claim is defaulted because Movant did not raise it on appeal, Civ. Doc. 143 at 105, but on the other hand, arguing that the claim is barred because it *was* litigated on appeal, Civ. Doc. 52 at 115-16. The history of the claim follows:

- March 2010: This Court denied Movant's pretrial *Atkins* motion, holding that "the defendant has not established by a preponderance of the evidence that he is mentally retarded." The Court declined to resolve the conflicting experts' findings regarding IQ scores, instead finding that Movant had not proven, by a preponderance of evidence, the second (adaptive deficits) and third (age of onset) prongs of intellectual disability. Crim. Doc. 934 at 1-5.

- September 3, 2013: Movant's appellate counsel (who were later his initial 2255 counsel) filed Appellant's Opening Brief in the Fourth Circuit. In Claim XII of that Brief, appellate counsel raised an extensive challenge to the allocation of the burden of proof at the pretrial *Atkins* hearing. Appellate counsel also directly challenged this Court's denial of *Atkins* relief. *Umaña v. United States*, No. 10-6, Doc. 99 (4th Cir.).

- October 21, 2013: The United States Supreme Court granted certiorari in *Hall v. Florida*. 571 U.S. 973 (2013).

- April 23, 2014: The Fourth Circuit affirmed Movant's convictions and death sentences. On the *Atkins* claim, the Fourth Circuit found that any error regarding

81

allocation of the burden of proof was invited by trial counsel and expressly stated Movant "does not challenge the merits of the district court's findings with respect to his claim of mental retardation." *Umaña v. United States*, 750 F.3d 320, 358 (4th 2014).

- May 7, 2014: Movant's appellate counsel filed a Petition for Rehearing En Banc. No facet of the *Atkins* issue was included in the Petition for Rehearing. *Umaña v. United State*s, No. 10-6, Doc. 136 (4th Cir. 2014).

- May 27, 2014: The United States Supreme Court issued its opinion in *Hall v. Florida*, 572 U.S. 701 (2014).

- June 27, 2014: The Fourth Circuit denied Movant's Petition for Rehearing En Banc. 762 F.3d 413 (4th Cir. 2014).

- November 24, 2014: Appellate counsel filed a Petition for Writ of Certiorari. The Petition for Writ of Certiorari did not include the *Atkins* issue. *Umaña v. United States*, No. 14-602 (U.S.).

- June 3, 2015: This Court appointed Movant's appellate counsel to represent him in these 2255 proceedings, effective upon denial of certiorari. Crim. Doc. 1621.

- June 22, 2015: The United States Supreme Court denied Movant's Petition for Writ of Certiorari. 576 U.S. 1035 (2015).

- June 22, 2016: Appellate/2255 counsel filed Movant's 2255 Motion, which included Claim III (raising trial counsel's ineffectiveness in investigating and presenting evidence at the pretrial *Atkins* hearing) and Claim IV (alleging that Movant's death sentence must be vacated because he is intellectually disabled,

relying on *Hall v. Florida* to challenge this Court's pretrial *Atkins* determination).
Civ. Doc. 24.

- February 22, 2017: This Court appointed undersigned counsel's office, effective upon undersigned's entry of appearance. Civ. Doc. 49.

- February 22, 2018: Within one year of her appointment, undersigned counsel requested leave to file a supplemental/amended motion that included a claim of appellate counsel's ineffectiveness in litigating the *Atkins* claim on direct appeal. Civ. Docs. 68, 71.

- October 11, 2022: This Court denied the February 2018 request for leave to amend. Civ. Doc. 131.

- March 2, 2023: The government filed a Motion to Dismiss alleging, *inter alia*, that Claim IV was procedurally defaulted because it could have been, but was not, raised on direct appeal. Civ. Doc. 143.

- March 23, 2023: Movant filed an Amended 2255 motion in response to the government's Motion to Dismiss. Movant's amendment included additional factual proffers and another allegation that appellate counsel were ineffective in litigating the *Atkins* claim on direct appeal. Civ. Doc. 146 at 177-80.

**2. Movant's Amended Claim.**

Movant alleged that appellate counsel were ineffective for failing to raise the Supreme Court's opinion in *Hall v. Florida*, 572 U.S. 701 (2014), on appeal to challenge this Court's pretrial *Atkins* determination. Civ. Doc. 146 at 177-80.

As the record makes clear, the Supreme Court issued its opinion in *Hall v. Florida* on May 27, 2014. 572 U.S. 701 (2014). One month later, the Fourth Circuit denied Movant's Petition for

83

Rehearing En Banc. *Umaña v. United States*, 762 F.3d 413 (4th Cir. 2014). Movant's case was not yet final when *Hall* was decided, so *Hall* controlled. *See Department of Banking of Nebraska v. Pink*, 317 U.S. 264, 266 (1942) ("[A] timely petition for rehearing . . . operates to suspend the finality of the . . . court's judgment, pending the court's further determination whether the judgment should be modified so as to alter its adjudication of the rights of the parties."). The question, then, is whether counsel were ineffective for failing to raise *Hall*. Although the government has not addressed these allegations because of the procedural confusion caused by its abeyance motion, it is worth summarizing them here under the Rule 12(b)(6) standard.

In *Hall*, the Supreme Court clarified that, when conducting an *Atkins* review, courts must follow the medical community's standards in determining intellectual disability. *Hall*, 572 U.S. at 719-20. While *Hall* specifically held that Florida must follow the medical community's standards in defining IQ, 572 U.S. at 723, the Court's reasoning necessarily applies to all three of the *Atkins* prongs (as all three are medical terms of art drawn from the medical community. *See Hall*, 572 U.S. at 710 (citing *Atkins*, 536 U.S. at 308). Consequently, because the medical community expressly requires adaptive deficits be assessed according to the patient's *weaknesses*, not their other strengths, *see* Civ. Doc. 24 at 105-07 (describing medical community standards); Civ. Doc. 146 at 171-74 (same), and directs that institutional witnesses are not suitable witnesses for determining adaptive deficits, Civ. Doc. 24 at 105-06; Civ. Doc. 146 at 172-73, the courts may not do otherwise.[12]

---

[12] Movant argued that he fits the medical community standards for intellectual disability, Civ. Doc 24 at 107-110; Civ. Doc. 146 at 174-77, to suggest that this Court's error in analysis is not harmless.

In denying Movant's pre-trial *Atkins* motion, this Court analyzed only Movant's strengths and relied on statements provided by institutional witnesses to refuse to find adaptive deficits. Civ. Doc. 24 at 105; Civ. Doc. 146 at 168; *see also* JA 998 – 1015, 1000-1001 (incomplete legal standards), 1003-1015 (refusing adaptive deficits based on behavioral strengths). By using standards rejected by the medical community to decide Movant's *Atkins* motion, this Court contravened *Hall*. Civ. Doc. 24 at 102-10; Civ. Doc. 146 at 168-77. Thus, had appellate counsel raised *Hall* on appeal, there is a reasonable probability this Court's *Atkins* denial would have been reversed, and the matter remanded for proceedings pursuant to *Hall.* Movant has therefore pled allegations that present a plausible claim of prejudice.

Given the specific circumstances of the case, the question of counsel's performance depends to a great extent on whether a vehicle existed by which appellate counsel could have raised *Hall* while Movant's Petition was pending. The answer is a resounding yes. As cases across the country demonstrate, appellate counsel could have filed a supplemental brief or a 28(j) letter in the Circuit.[13] Counsel also could have requested the Fourth Circuit remand this issue to this

---

[13] *See, e.g.*, Order, *Pizzuto v. Blades*, No. 12-99002 (9th Cir. Nov. 4, 2013) (staying proceedings pending the Supreme Court decision in *Hall v. Florida*); Pet.'s Suppl. Br., *Pizzuto v. Blades*, No. 12-99002 (9th Cir. July 14, 2014) (filing supplemental brief asking court to vacate court and district court's order and remand in light of *Hall*); *Pizzuto v. Yordy*, 947 F.3d 510, 534 (9th Cir. 2019) (concluding that petitioner failed to satisfy § 2254(d) regarding state supreme court's 2008 decision denying petitioner's *Atkins* claims); Pet's Rule 28(j) Letter considering *Hall*, *Van Tran v. Colson*, No. 11-5867 (6th Cir. May 30, 2014) (arguing that *Hall* supports petitioner's claim of intellectual disability); *Van Tran v. Colson*, 764 F.3d 594, 626 (6th Cir. 2014) (holding that state court's application of state law on intellectual disability was contrary to clearly established federal law, and thus vacating and remanding to district court so that it may grant a conditional writ of habeas corpus prohibiting execution unless state completes new *Atkins* hearing); Petitioner's Reply Brief at 27, *Webster v. Caraway*, No. 14-1049 (7th Cir. June 4, 2014) (referencing *Hall* in brief filed eight days after *Hall*'s issuance); *Webster v. Lockett*, 2:12-CV-86-WTL-MJD, 2019 WL 2514833 (S.D. Ind. June 18, 2019), *aff'd sub nom. Webster v. Watson*, 975 F.3d 667 (7th Cir. 2020) (finding petitioner met criteria for intellectual disability and was ineligible for death penalty); Pet.'s Mot. For Suppl. Briefing, *Williams v. Mitchell*, No. 12-4269 (6th Cir. June 5, 2014)

Court for reconsideration under *Hall*.[14] And counsel could have raised this issue on certiorari to the United States Supreme Court.[15] Clearly, counsel could have ensured *Hall* was applied to Movant's *Atkins* claim on appeal (along with ensuring that the claim was actually addressed at all).

Moreover, appellate counsel *should* have done the same here. The sheer number of example-cases shows that it was a professional norm across the country for counsel with cases in similar positions to act immediately to ensure *Hall* would be applied. ABA, Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases, 2003, Guideline 10.15.1.C ("Post-conviction counsel should seek to litigate all issues, whether or not previously presented, that are arguably meritorious…. Counsel should make every professionally appropriate effort to present issues in a manner that will preserve them for subsequent review."). Thus, Movant's factually supported allegations state a plausible claim that counsel were unreasonable in deciding not to raise *Hall* or for failing to realize that *Hall* applied and could be raised.

In assessing whether Movant has stated a claim for which relief can be granted, Rule 12(b)(6), the Court assumes all of Movant's factually supported allegations to be true and resolves

---

(explaining "the impact of *Hall* is so pervasive that it is not possible to fully and properly address it in the 350-word limit of Fed. R. App. P. 28(j)" and requesting supplemental briefing); *Williams v. Mitchell*, 792 F.3d 606, 620 (6th Cir. 2015) (faulting the state supreme court for failing to apply medical and clinical definitions of intellectual disability as set forth in *Hall* and *Atkins*).

[14] *See, e.g., United States v. Wilson*, 571 Fed. Appx. 19 (2d Cir. 2014) (remanding sua sponte for reconsideration under *Hall*); *United States v. Wilson*, 170 F. Supp. 3d 347 (E.D.N.Y. 2016) (concluding that court's prior determination that petitioner was not intellectually disabled was incorrect because *Hall* required court to apply two-standard error margin to IQ score), *reversing United States v. Wilson*, 922 F. Supp. 2d 334, 368 (E.D.N.Y. 2013).

[15] *See, e.g.,* Pet. for Writ. of Cert., No. 13-1433, *Brumfield v. Cain* (U.S. May 29, 2014) (seeking petition for writ of certiorari, in part, relying on *Hall*); *Brumfield v. Cain*, 576 U.S. 305, 315 (2015) (holding in light of *Hall* that state court's conclusion that reported IQ score of 75 could not establish intellectual disability was an unreasonable determination of facts); *Brumfield v. Cain*, 808 F.3d 1041, 1043 (5th Cir. 2015) (upholding the district court's initial determination that petitioner was intellectually disabled and ineligible for death penalty under *Atkins*).

all reasonable inferences therefrom in Movant's favor, unless they are conclusively disproven by the record. *Iqbal*, 556 U.S. at 679; *Nemet Chevrolet, Ltd.*, 591 F.3d at 255; *see also Hall*, 846 F.3d at 765. As the record confirms Movant's allegations and the government has chosen not to respond to the 2023 2255 Motion, Movant's allegations, and all reasonable inferences therefrom, are presumed true. Those allegations state a plausible claim of appellate ineffectiveness that should not be dismissed at this pleading stage for failure to state a claim.

### 3. Movant's Claim is not defaulted.

Referencing to its Discovery Response, the government argues that this claim is defaulted because it was not raised on appeal but also argues that the claim is barred because it was raised on appeal. Civ. Doc. 143 at 105; Civ. Doc. 52 at 115-16. Clearly, there is confusion about to whether this claim was or was not raised on appeal. Before addressing confusion over whether the claim *was* raised on appeal, it is necessary to consider whether it *could* have been raised on appeal. *Hall* directed that courts must follow "medical community standards" in assessing *Atkins* claims, a clarification not previously directly acknowledged. Therefore, to meet the *Hall* analysis, Movant would have required evidence not in the trial record to show what the "medical community standards" were and how each expert had appreciated or failed to appreciate those standards. *See* Civ Doc 24 at 105-09; Civ. Doc. 146 at 171-77.

Further, to present the *Hall* claim, Movant would have needed to develop further extra-record facts regarding intellectual disability, specifically his deficits before the age of 18. *See* Civ. Doc. 24, Appx 18 ¶¶ 17- 21; Civ. Doc. 150, Appx 18 ¶¶ 17- 21.[16] Movant was prevented by the

---

[16] Movant gathered these facts in a timely manner because the government, by harassing Rafael Umaña before trial, prevented Movant from developing them at trial or on appeal. *See* PPT 04/26/10 at 524, JA 3091; Civ. Doc. 24, Appx. 18 at ¶23-24; Civ. Doc. 150, Appx. 18 at ¶23-24. Movant has sought, and will continue to seek, discovery proving the harassment and that the

government from gathering some of these facts. The sole family witness relied on by defense counsel, Movant's father Rafael Umaña, possessed information relevant to that issue, as he raised Movant from late childhood (after Movant's great-grandmother died) through approximately age 15. These years, during the developmental period, which independently stands as the third 'prong' of Intellectual Disability, provided a rich source of data to support the claim of Intellectual Disability. For example, Rafael possessed more detailed information about Movant dropping out of school and about Movant's inability to remember easy things than what he provided to the trial defense team, having been chilled by the government. Civ. Doc. 24 at 108; Civ. Doc. 146 at 174-75; Civ. Doc. 24, Appx. 18 at ¶¶ 15, 17; Civ. Doc. 150, Appx. 18 at ¶¶ 15, 17.

Thus, to prove his *Hall-Atkins* claim, Movant would have required extra-record evidence. As detailed in Section III(A), *supra.*, a claim that depends on extra-record evidence is at best inappropriate for direct appeal and so is properly brought in this § 2255 proceeding. That being the case, Movant's amended claim IV is properly before the Court now and is not defaulted.

The government's procedural default arguments also highlight the problems caused by the government's request to hold the 2023 2255 Motion in abeyance. The government's default arguments are directed at and not addressed by the 2016 2255 Motion. But that Motion has been amended and superseded by Movant's 2023 Amended 2255 Motion, which has also effectively nullified the Court's Discovery Order, along with the government's Discovery Response that preceded it. Section I, *supra*. The 2023 Amended 2255 Motion amended claim IV to add

---

government collected information from Rafael Umaña and similar information from Leticia Ramirez Diaz (Mr. Umaña's mother) to support Movant's intellectual disability.

allegations addressing whether the claim had been raised on appeal and the allegation of appellate counsel's ineffectiveness. Civ. Doc. 146 at 177-80.[17]

Turning to the government's confused argument that Movant did, but also did not, previously raise this claim on appeal, it is clear from the record that Movant's direct appeal Opening Brief contained a direct challenge to this Court's *Atkins* determination. Civ. Doc. 146 at 177; Brief for Defendant-Appellant, 09/03/2013, *United States v. Umaña*, No. 10-6, App. Doc. 99, p.150. The Fourth Circuit, though, noted that Movant did not make such a challenge. *Umaña v. United States*, 750 F.3d 320, 358 (4th 2014). Appellate counsel filed a Petition for Rehearing En Banc but did not seek to resolve the Panel's error and did not seek review of their briefed argument challenging this Court's pre-trial *Atkins* determination. While that Petition for Rehearing was pending, the Supreme Court issued its *Hall* opinion. Appellate counsel made no attempt to alert the Circuit of that intervening opinion or seek to amend their Petition in light of *Hall*. It is this collection of failures that Movant alleged as the basis for his amended ineffectiveness of appellate counsel claim in the 2023 iteration of this claim.

Ineffective assistance claims are properly brought in § 2255 motions. Section II, *supra*. The government's effort to apply the procedural bar should therefore be rejected, and this Court should review Movant's ineffectiveness claim on its merits, which necessarily includes review of

---

[17] This amendment was necessary because proceedings under § 2255, generally, are a criminal defendant's first opportunity to litigate the ineffectiveness of their appellate counsel. *See* Section III.C.1, *supra*. As such, a claim of appellate counsel ineffectiveness is properly brought in § 2255 proceedings. Movant was prevented from including this allegation of appellate counsel's ineffectiveness in his initial 2016 2255 Motion because appellate counsel were also his 2255 counsel and so could not claim their own ineffectiveness. *See* Civ. Docs. 68, 86, 94, 95, 107.

the underlying *Atkins* claim.[18] Alternatively, because ineffective assistance of counsel can constitute cause and prejudice to overcome the bar alleged by the government, the now-alleged ineffectiveness of appellate counsel constitutes cause and prejudice to overcome any purported default of Movant's underlying challenge to this Court's pretrial *Atkins* determination. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986). This Court can reach the merits of Movant's claim that the prior pretrial determination of Movant's intellectual disability violated *Hall* and that his intellectual disability requires vacation of his death sentence.

### 4. It would be a miscarriage of justice to refuse to review Movant's intellectual disability claim under controlling legal standards when that claim exempts him from death eligibility.

Denying Movant the opportunity to have this claim heard under controlling legal standards articulated by the United States Supreme Court *during his direct appeal* would constitute a miscarriage of justice when his intellectual disability – appropriately considered under those controlling standards – renders him actually innocent of the death penalty. *See Murray*, 477 U.S. at 496; *Schlup*, 513 U.S. at 327; *Sawyer*, 505 U.S. at 336. When a movant asserts his actual innocence of the death penalty, he must "show by clear and convincing evidence that, but for a constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty." *Sawyer*, 505 U.S. at 336. In this case, had this Court had the opportunity to apply the controlling legal standards in *Hall* and found Movant intellectually disabled – as *Hall* requires – Movant's trial would never have even proceeded to a capital sentencing phase.

---

[18] The 2023 Amendment also moots the government's default argument. But by seeking to hold that Amendment in abeyance, the government has required Movant to Reply. Assuming the government will seek to respond to the 2023 Amendment, this Reply will be nullified.

Movant's factual proffers – both in Claim IV and in Claims I, II, and III – constitute a plausible showing of intellectual disability under clinical/medical community standards. Movant has made a sufficient showing to survive dismissal at this pleading stage and proceed to further factual development of this claim.

### 5. Movant's Intellectual Disability is Jurisdictional, Can Be Raised at Any Time, and is therefore Not Defaulted.

28 U.S.C. § 2255 allows a prisoner to raise either constitutional or jurisdictional challenges to his conviction and sentence. *United States v. Martinez*, No. 3:04CR297, 2008 WL 2762211, at *1 (W.D.N.C. July 14, 2008). Because a challenge under *Atkins* asserts that the prohibition against cruel and unusual punishment in the 8th Amendment restricts the authority of the courts to execute offenders, an *Atkins* challenge is both a constitutional and jurisdictional challenge to a trial court's authority to impose a death penalty, *see Atkins v. Virginia*, 536 U.S. 304, 321 (2002) ("Construing and applying the Eighth Amendment in the light of our 'evolving standards of decency,' we therefore conclude that such punishment is excessive and that the Constitution 'places a substantive restriction on the State's power to take the life' of a mentally retarded offender. (citing) *Ford*, 477 U.S. 399, 405 (1986)."

### 6. Movant is not seeking to "relitigate" his *Atkins* hearing.

Finally, the government argues that Movant's claim is barred as an attempt to relitigate his *Atkins* hearing. That argument misunderstands and misapplies that bar. First, neither this Court nor the Fourth Circuit resolved the substance of the claim, as neither court held that Movant *is not* intellectually disabled. Civ. Doc. 143 at 105 (citing Civ. Doc. 108 at 34-35); *United States v. Umaña*, 750 F.3d 320, 358 (4th Cir. 2014); Crim. Doc. 934 at 1-5 (holding that "the defendant has not established by a preponderance of the evidence that he is mentally retarded," not conclusively saying Movant is not Intellectually Disabled). Thus, he is not attempting to relitigate the substance

91

of his claim. Instead, Movant alleges that his *Atkins* claim has never properly been litigated due to counsel's ineffectiveness. He, therefore, seeks recognition and correction of this Court's denial of his *Atkins* motion in light of controlling, contrary caselaw and seeks one procedurally fair opportunity to prove he is ineligible to be executed.

The Supreme Court's decision in *Hall* clarified the law to fix errors that lower courts had made since *Atkins* was decided – i.e., not applying the established medical community standards. This Court did not have the opportunity to consider and apply *Hall* because *Hall* was decided while this case was on direct appeal, and appellate counsel ineffectively failed to request a remand from the Fourth Circuit to allow this Court to consider this issue in the first instance. The Fourth Circuit did not have the opportunity to consider and apply *Hall* because appellate counsel ineffectively failed to request a stay of proceedings pending *Hall* and ineffectively failed to use one of the many vehicles available to raise *Hall* once that case was decided. Indeed, even ignoring *Hall*, appellate counsel did not even do the bare minimum and request the Fourth Circuit rule on the *Atkins* challenge they briefed.

### 7. Conclusion

If *Hall* were the standard all along, this Court clearly applied the wrong standard at the pretrial *Atkins* hearing. If *Hall* clarified or changed the standard, this Court never had the opportunity to apply the correct standard. Regardless, either of these issues was available to appellate counsel to raise when *Hall* was decided during Movant's direct appeal. Appellate counsel did nothing.

Movant now stands before this Court – an intellectually disabled man who has never had one fair opportunity to have his intellectual disability considered under controlling standards. Movant has, in his 2016 2255 Motion and 2023 Amended 2255 Motion, proffered additional facts

and legal arguments that this Court never had the opportunity to consider in passing on this weighty issue. Movant has stated a plausible claim for relief that should not be dismissed.

### E. The Facts Contained in Claim V – Regarding Counsel's Ineffectiveness in Investigating and Presenting Evidence Challenging Movant's Participation in the Los Angeles Homicides – State a Plausible Claim for Relief.

This Court should deny the government's request to dismiss Claim V because the facts alleged by Movant state a plausible claim for relief when reviewed under the proper standard.

The government, relying heavily on its response to Movant's motion for discovery, argues that the claim and each allegation fail. As discussed in detail in the 2255 Motion and the sections that follow, trial counsel were ineffective for failing to investigate and adequately challenge the government's account of the Fairfax and Lemon Grove homicide. Movant addresses aspects of trial counsel's constitutionally ineffective performance and the government's flawed arguments countering them, then argues that the collective weight of all of trial counsel's ineffective behavior prejudiced Movant.

#### 1. The government's overarching misapprehension of controlling law.

Throughout the motion to dismiss and incorporated discovery response, the government offers little more than invented potential explanations for trial counsel's omissions. *See*, *e.g.*, Civ. Doc. 143 at 44 (quoting Civ. Doc. 108 at 20, 22) (speculating that evidence "regarding Rod[u]s [an alternate suspect in the Lemon Grove homicide] would have been cumulative and could have run the risk of bolstering the Government's theory."); *see also* Civ. Doc. 52 at 76-77 (same); Civ. Doc. 52 at 78-79 (speculating about purported strategic reasons for trial counsel's failure to present the statements of Edgar Gutierrez, Alejandro Rodriguez, and Luis Rivera naming other persons responsible for the Lemon Grove homicide). The government's speculation is not appropriate at the motion to dismiss stage, where the court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Twombly*, 550

93

U.S. at 555-56), and "draw[ ] all reasonable . . . inferences from those facts in the plaintiff's favor," *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). The government forgets this basic principle, instead asking the Court to speculate about trial counsel's strategy (if any) for their omissions and dismiss the claim based on that speculation. *See generally* Section II. The government's speculation should be rejected.

### 2. The government's arguments misapprehend Movant's claims, misapply the law, and misstate the record.

#### a. *Evidence Linking Giovanni Rodas to the Lemon Grove Homicide.*

For Movant's claim that trial counsel failed to effectively link Rodas to the Lemon Grove homicide (Civ. Doc. 24 at 122; Civ. Doc. 146 at 184), the record contradicts the government's suggestion (Civ. Doc. 143 at 44) that trial counsel may have chosen not to implicate Rodas further for strategic reasons. The record demonstrates that it *was* counsel's strategy to implicate Rodas. During the penalty phase, trial counsel stated that Rodas was the driver and shooter in the Lemon Grove homicide. *See* PPT 219-20 (asking Parshall on cross-examination if Rodas was driving the vehicle); *id.* at 873 ("Basically, what he told the police is he was a passenger in the car. This guy named Sin [Giovani Rodas] was the driver. He didn't know what they were going to go do. He wasn't the shooter. He wasn't in the park. And he was not the driver of the car.").

The government's invented "strategy" regarding Rodas misapplies *Strickland*'s prejudice standard. The government presupposes that if there is *any* possibility a jury could have viewed the omitted evidence as damaging, the ineffective assistance claim fails. Civ. Doc. 52 at 77. But the *Strickland* standard is not so unforgiving. A movant need only show "a 'reasonable probability' that at least one juror would have been moved to spare [his] life had he heard the mitigation evidence developed at the habeas hearing that was not presented at the trial." *Williams*, 529 U.S. at 394-95 (emphasis added). Movant can prove prejudice even if he leaves open the possibility that

94

a jury might have still chosen death if presented with the evidence omitted through ineffective assistance. The Fourth Circuit's more recent decision in *Williams v. Stirling*, 914 F.3d 302 (4th Cir. 2019), *as amended* (Feb. 5, 2019), illustrates how *Strickland* prejudice applies to potentially damaging mitigating evidence. In that case, the court acknowledged that the mitigating evidence at issue – fetal alcohol syndrome – could be a "double-edged sword," but nevertheless maintained trial counsel were still ineffective for failing to present this evidence because "*if* counsel had chosen to present this evidence, the jury *may have* returned a different verdict." *Id.* at 318 & n.8 (emphasis in the original). Evidence that Rodas fired the fatal shots may have absolved Movant of being directly involved in the Lemon Grove homicide, even if the jury had a lingering doubt about more remote involvement. And Movant states a plausible claim that there is a reasonable probability that this would have made a difference to at least one juror.

> b. *Evidence that Ramos and Lara Viewed Movant's Photo and Excluded Him as the Shooter.*

In rejecting Movant's argument that trial counsel were constitutionally ineffective for failing to present readily available evidence that Roberto Ramos and Juan Lara each looked at Movant's photograph as part of a photographic array and did not pick him out as the shooter (Civ. Doc. 24 at 133; Civ. Doc. 146 at 184), the government speculates that counsel could not be ineffective because the prosecution included the photographic array presented to Ramos and Lara as part of their exhibits. Civ. Doc. 52 at 78. The photographic array cited by the government, however, is the one viewed and circled by Freddy Gonzalez and has no indication that Ramos or Lara viewed it. Civ. Doc. 52, Exh. 1 at 3423. And because trial counsel failed to confirm with Ramos and Lara that they had been shown that specific photographic array, counsel were only able to speculate that they were shown this array. PPT 884.

### c. Additional Exculpatory Statements Regarding Lemon Grove.

The government next speculates that it was not unreasonable for trial counsel not to focus on the statements of Edgar Gutierrez, Alejandro Rodriguez and Luis Rivera regarding the Lemon Grove homicide because they were not present at the homicide. Civ. Doc 52 at 79. Putting aside the fact that this is, again, improper speculation by the government regarding a potential strategy that trial counsel has never stated or endorsed, the government ignores the fact that much of the government's own case in aggravation rested on hearsay evidence. *See Umaña,* 750 F.3d 345 at 360. The fact that this evidence would have been hearsay is of no moment in the context of this case.

### d. Evidence Supporting the Theory that the Driver (Arevelo) was the Fairfax Shooter.

The government speculates that trial counsel could not have been ineffective for failing to present evidence that an eyewitness to the Fairfax Avenue homicide, Noe Bautista, met with a forensic sketch artist, who produced a sketch that did not resemble Movant, because the evidence is cumulative and would not have changed the outcome of the trial. Civ. Doc. 52 at 80-81. However, it was clearly trial counsel's chosen strategy to argue to the jury that Arevalo (the driver) was the shooter based on Bautista and Santiago's statements. PPT 196, 215. Contrary to the government's assertion (Civ. Doc. 52 at 81), the fact that the jury found the Fairfax homicide as an aggravating factor *without this evidence* merely demonstrates that additional evidence supporting the defense theory would have been useful. At the motion to dismiss stage, moreover, all reasonable inferences must be made in favor of Movant. This includes how the jury may have viewed an eyewitness sketch showing someone who looks nothing like Movant.

96

### e. Barrera's Evidence Implicating Ramos as the Fairfax Shooter.

Movant also has stated a claim that trial counsel were ineffective for failing to present evidence linking Luis Ramos to the Fairfax Avenue homicide. Specifically, Movant argues that trial counsel should have presented evidence showing that police arrested Alex Barrera for multiple robberies near Lemon Grove Park the day after the Fairfax Avenue homicide with the same brand and caliber of ammunition as the .22 caliber casings found at the homicide, and that Barrera told detectives that Luis Ramos had given him the bullets and Ramos was the Fairfax shooter. Civ. Doc. 24 at 141-142; Civ. Doc. 146 at 190. The government contends that this argument fails, because trial counsel could have concluded it would undercut their theory that Rodas was the shooter, and that even if counsel's performance was deficient on this point, he cannot establish prejudice. Civ. Doc. 52 at 82-83. The government again improperly speculates as to why trial counsel may have chosen not to present this evidence. In so doing, the government ignores the fact that counsel's error regarding Barrera was one of investigation – counsel admitted in their affidavits that they did not review Barrera's statement in discovery. *See* Civ. Doc. 24, Appxs. 23, 24; Civ. Doc. 150, Appxs. 23, 24. The Supreme Court has been clear that a decision is only as reasonable as the investigation behind that decision. *Williams v. Taylor*, 529 U.S. 362, 395 (2000). Here there was none, as counsel were unaware of the evidence.

The government's argument that counsel would have been reasonable not to present Barrera (had they even known about him) because his evidence would have contradicted Bautista and Santiago (Civ. Doc. 52 at 83) must also be rejected. The burden of proving the aggravating circumstances during a penalty hearing lies on the government, not the defense. 18 U.S.C. § 3593(c). Here, Barrera's evidence, like Bautista's and Santiago's, created a reasonable doubt that Movant was the Fairfax shooter.

### f. *Evidence Linking Barrera to the Lemon Grove Homicide.*

Movant has also stated a claim demonstrating that Barrera, who was arrested near Lemon Grove park with .22 caliber ammunition was responsible for a series of robberies in that same park, raising the possibility of his own involvement in the Lemon Grove homicide. Civ. Doc. 24 at 141-42; Civ. Doc. 146 at 190-191. The government's attempt to minimize the significance of the .22 caliber bullets possessed by Barrera (Civ. Doc. 52 at 83) fails. As demonstrated in the 2255 Motion, the so-called ballistics match evidence relied upon by the government is scientifically invalid. Civ. Doc. 24 at 153-54; Civ. Doc. 146 at 226-27; Civ. Doc. 116, Appx. 241; Civ. Doc. 150, Appx. 241. The ammunition in Barrera's pocket, and Barrera, could have been involved in the Lemon Grove homicide. And, again, the government's deficient performance arguments must be rejected because they are speculative and ignore the failure of investigation underlying this act of deficient performance.

### g. *Evidence Mitigating the Fairfax Homicides.*

The 2255 Motion alleges facts sufficient to state a plausible claim that trial counsel were constitutionally ineffective for failing to present information that mitigated the circumstances of the Fairfax homicides, including information that the Fairfax victims were the original aggressors, running towards Movant's group, threatening to kill and waiving a knife. Civ. Doc. 24 at 140-41; Civ. Doc. 146 at 211-12. The government's speculation on why trial counsel may have omitted this argument, Civ. Doc. 52 at 84, is improper at this stage. Further, the government states without explanation that additional evidence mitigating the circumstances of the Fairfax homicides would not have changed the sentencing decision. *Id.* at 85. Reviewed under the proper standard, with all reasonable inferences taken in favor of Movant, the facts are sufficient to state a claim that had trial counsel presented jurors with the full context of the Fairfax Avenue homicides, at least one juror might have weighed the mitigating and aggravating factors differently.

*h. Arevelo's Hearsay Identification of Movant as the Lemon Grove Shooter.*

The government misrepresents the nature of Movant's claim. Civ. Doc. 52 at 85. While the Fourth Circuit addressed on appeal whether Detective Small's testimony that Arevalo told him "that's your Lemon Grove shooter" when shown a photo of Movant violated the Confrontation Clause, *Umaña*, 650 F.3d at 349, it did not address Movant's argument here – whether counsel was ineffective for not objecting when the prosecutor committed misconduct by circumventing this Court's procedural safeguards for evaluating the hearsay evidence. *See* Claim XII, discussed *infra*. Movant's claim here is not foreclosed by prior ruling.

*i. Evidence of Coaching.*

In response to Movant's argument that trial counsel were ineffective for failing to present evidence that the LAPD detectives coached the Fairfax co-defendants' statements implicating Movant as the shooter, the government argues that trial counsel undertook the "entirely reasonable strategy" of arguing that the co-defendants fabricated the story together. Civ. Doc. 52 at 86-87. Confronting the detectives with their suspect interrogation techniques, however, is a distinct and complementary tactic that would have only strengthened defense counsel's theory that the suspects fabricated the story for their own self-interest. Although, as the government notes, the jury received transcripts of the Fairfax co-defendants' statements, those transcripts unfairly damaged Movant, *see* Civ. Doc. 71 at 56-67. Counsel should have examined the detectives and argued in open court.

*j. Improper Vouching.*

Contrary to the government's argument (Civ. Doc. 52 at 87), the Fourth Circuit did not address Movant's allegations regarding counsel's failure to object to the incomplete redaction of the transcript of Parshall's interrogation of Arevalo. While it is true that Movant's appellate counsel raised issues regarding vouching on direct appeal, appellate counsel did not complain

99

about the government's improper failure to redact materials that this Court instructed the prosecutor to sanitize from the transcript. *See* Brief of Appellant, *United States. v. Umaña*, No. 10-6 (4th Cir. 9/3/13) at 87-89. *See also* Claim XII, *infra*.

*k.  Daubert Challenge to Government Ballistics Evidence.*

The government's argument regarding Movant's claim (Civ. Doc. 24 at 152-57; Civ. Doc. 146 at 224-30) that trial counsel was ineffective for failing to challenge the admissibility of William Moore's testimony regarding toolmark identification fails. First, the government improperly speculates that trial counsel could have had a reasonable basis for declining to challenge the toolmark identification testimony (Civ. Doc. 143 at 45), when the standard for a motion to dismiss requires that this Court view all facts and make all reasonable inferences in Movant's favor.

Second, the government contends that it would have been a "long-shot challenge" challenge, because "expert testimony like Moore's has been accepted in the Fourth Circuit and elsewhere for decades." Civ. Doc. 143 at 45.[19] Although federal courts may have once permitted toolmark analysis testimony without controversy, that is no longer the case. In *United States v. Davis*, 4:18-CR-00011, 2019 WL 4306971, at *7 (W.D. Va. Sept. 11, 2019), the district court prohibited the government's experts from testifying that "the marks indicate a 'match,' that the cartridge cases were fired by the same firearm," that the "cartridge cases have 'signature'

---

[19] The government cites *Royal v. Taylor*, 188 F.3d 239 (4th Cir. 1999), and *Smith v. Smith*, 931 F.2d 242 (4th Cir. 1991), for this point, but the cited cases discuss the toolmarks identification testimony only as part of their summary of the trial and do not consider the use of toolmarks in their analysis, *Royal*, 188 F.3d at 245; *Smith*, 931 F.2d at 245. Relatedly, the government also states that "since Umaña's trial, other federal courts have permitted Moore to testify as a firearms expert." (Civ. Doc. 143 at 46). But the sole case cited, *Coleman v. Foulk*, CV 14-00133 JLS AN, 2014 WL 3734535 (C.D. Cal. July 28, 2014), is a decision denying a pro se petitioner's 2254 petition, which mentions in passing that Moore had testified during the state trial that the bullets were from two different types of firearms.

100

toolmarks identifying a single firearm." The court further barred the experts from testifying "'to a level of practical impossibility' that cartridges could be identified to a single firearm" or "express any confidence level" in their conclusions. *Id.*; *see also United States v. Mouzone*, 687 F.3d 207, 215 (4th Cir. 2012) (discussing district court order prohibiting toolmarks expert from testifying it was practical impossibility for different firearms to have fired casings and expressing any degree of certainty about opinion); *United States v. Medley*, No. PWG 17-242 (D. Md. April 24, 2019), ECF No. 111, at 118 (prohibiting toolmarks expert from providing opinion that cartridges came from same gun and expressing any level of confidence in his conclusions); *United States v. Willock*, 696 F. Supp. 2d 536, 546 (D. Md. 2010) (restricting characterization of certainty of firearms expert's toolmark identification in part because of concerns raised by National Research Council studies); Nat'l Rsch. Council, *Strengthening Forensic Science in the United States: A Path Forward* 42, 153-55 (2009); Nat'l Rsch. Council, *Ballistic Imaging* 1–5, 55, 82 (2008). Considering the growing judicial skepticism of toolmark identification at the time of Movant's trial, Movant states a plausible claim that trial counsel were ineffective for failing to challenge Moore's testimony.

*l.  Failure to Obtain Defense Ballistics Expert.*

The government faults Movant for failing to 'identif[y] an expert who has evaluated [] Moore's work and found that there was 'no science basis for it.'" Civ. Doc. 143 at 46. Movant's 2023 2255 Motion remedies this alleged deficiency, including a declaration from John Nixon challenging the veracity of Moore's expertise and conclusions and toolmark identification broadly. Further, Movant's initial 2255 Motion details specific criticism of toolmark identification and Moore's testimony based on scientific studies. *See* Civ. Doc. 24 at 152-57; Civ. Doc. 146 at 226-30; Civ. Doc. 116, Appx. 241; Civ. Doc. 150, Appx. 241.

*m. Reliability Instruction.*

The government maintains that the Fourth Circuit has determined that the jury should not have been instructed regarding the "presumptively unreliable" hearsay statements from MS-13 accomplices introduced through professional, law enforcement witnesses. Civ. Doc. 143 at 47. This is incorrect. The Fourth Circuit decided the question of whether the district court abused its discretion in admitting the hearsay evidence testimony, not the distinct question of how the jury should have been instructed to consider that evidence. *Umaña*, 750 F.3d at 348. Even in cases where similar hearsay evidence ultimately was permitted before a jury, instructions educating the jury to consider the testimony of the defendant's accomplices with caution and care have long been utilized and approved. *See Cool v. United States*, 409 U.S. 100, 103 (1972). Further, the Fourth Circuit considered the reliability of the hearsay evidence against only the evidence presented on direct appeal and without the additional facts included in 2255 proceedings. *Umaña*, 750 F.3d at 348; *see also Bousley*, 523 U.S. at 621-22 (describing how appellate courts cannot typically consider non-record evidence). The government's argument that the Fourth Circuit already condoned the double-hearsay statements of Rene Arevalo naming Movant as the Lemon Grove shooter, (Civ. Doc. 143 at 91), similarly fails.

### 3. Prejudice

The government's discovery response advances the argument that even if trial counsel were ineffective for failing to prove that Movant was not the shooter in Lemon Grove Park, there is no prejudice because the question before the jury was whether Movant "participated and aided and abetted the killing of Andy Abarca." Civ. Doc. 52 at 90. In support of this claim, the government relies on cases involving accomplice liability. Civ. Doc. 52 at 91 (citing *Rosemond v. United States*, 572 U.S. 65 (2014)). But capital sentencing is not a series of checkboxes, but rather asks jurors to engaging in a holistic process of weighing aggravating and mitigating factors. 18 U.S.C. § 3593(e).

102

And Movant states a plausible claim that there is a reasonable probability that one or more jurors presented with evidence that Movant was not the shooter would have weighed the case differently and that Movant would not have been sentenced to death.

The government's final suggestion that there can be no prejudice because the jury found five other aggravating factors supporting a sentence of death similarly fails. The government's attempt to downplay the importance of the Los Angeles homicides as aggravators in support of the death sentence defies common sense. *See* Doc. 52 at 60-61, 92-93. Evidence of an additional murder is "the worst kind of bad evidence." *Wong v. Belmontes*, 558 U.S. 15, 26 (2009). Moreover, at least two Fourth Circuit judges recognized that the unadjudicated homicides were the "difference between Mr. Umaña living and dying." *United States v. Umaña*, 762 F.3d 413 (2014) (Gregory, J. dissenting from denial of rehearing en banc, joined by Wynn, J.). They explained, the Lemon Grove and Fairfax homicides were both devastating and suspect. *United States v. Umaña*, 750 F.3d 320, 362 (4th Cir. 2014) (Gregory, J., dissenting).

The conviction supporting the death sentence was a double murder that occurred after an argument in a bar. It is unlikely this crime alone would have supported a death sentence, given Movant's lack of previous convictions. Rather, the reason Movant now faces execution is that the prosecutor was able to introduce out-of-court accusations from police informants and accomplices that accused Movant of several previous murders. An examination of the government's summation at sentencing demonstrates this: nearly every page of the transcript references these past murders. *Id*. If at least two reasonable jurists believed that the Los Angeles homicides were the crux of the government's case for death, then it is reasonably probable that at least one juror felt the same.

These two murders were so intertwined that any weakness in one of the aggravators undermines the other. As the Court of Appeals noted, there were "legitimate arguments" regarding

the lack of reliability of the hearsay statements of accomplices used to support the government's allegation that Movant was the Fairfax shooter. *Umaña*, 750 F.3d at 348-49. The court, however, determined that the reliability of the accomplice statements was bolstered by the fact that Movant was identified as the shooter at Lemon Grove Park and there was a ballistics "match" between guns used at both homicides. *Id.*; Crim. Doc. 1021 at 10. Thus, favorable evidence that undermines the government's case in one of the homicides also creates doubt as to the other.

In support of its meritless prejudice argument, the government contends that Movant "confessed" to "substantially participating" in those homicides, Civ. Doc. 52 at 60, 90. This contention is remarkable in light of the government's argument on direct appeal that "nobody in the room that day viewed that as an admission of guilt" and that it was "anything but a true 'confession,'" *United States v. Umaña*, No. 10-6, Government's Brief at 113 (4th Cir.). The Court of Appeals relied on the government's position as a basis for denying relief. *Umaña*, 750 F.3d at 345 (noting that Movant "never did" confess and "never admitted to committing any of the murders").

Accordingly, the government should be estopped from making the opposite argument now. *See In re Breibart*, 325 B.R. 724, 727 (Bankr.D.S.C. 2004) (finding that a party can be estopped from "accepting the benefits of a transaction or statute and then subsequently taking an inconsistent position to avoid the corresponding obligations or effects".); *Siddiqui v. United States*, 98 F.3d 1427 (2d Cir. 1996) (manifestly unjust for government to pursue inconsistent positions in a criminal case). Likewise, the government cannot now suggest that being the actual trigger-man versus a non-triggerman-accomplice are equal in aggravation, when the government repeatedly argued at trial that Movant deserved death because he was different than the other gang members because he was a killer. Civ. Doc. 52, Exhibit 1 at 3467-68. Finally, Movant's mental impairments

104

undermine the reliability of any so-called confession and the reliability of aggravating circumstances overall. *See* Civ. Doc. 22, Claim XIX; Civ. Doc. 146, Claim XIX.

Movant states a plausible claim that absent this weighty factor, there is a reasonable probability that at least one juror would have weighed the aggravating and mitigation factors differently and chose a different sentence.

Movant's claim – and factual proffers, which must be accepted as true at this stage – state a plausible claim for relief that counsel were constitutionally ineffective for failing to present evidence discrediting the credibility of the witnesses and the quality of the evidence that linked Movant to the California homicides. Dismissal is improper.

### F. The Facts Contained in Claim VI – Regarding the Prosecution's Violation of its *Brady* Obligations – State a Plausible Claim for Relief.

Relying on this Court's discovery order, the government urges dismissal of Movant's *Brady* claim because Movant "failed to allege facts sufficient to support the claim." Civ. Doc. 143 at 80. Specifically, the government alleges that Movant "failed to allege facts identifying exculpatory or material *Brady* information the United States failed to disclose." *Id*. at 81. The government also incorporated its discovery response. Id.

The government's arguments should be rejected. At the motion to dismiss stage, Movant's factual allegations must be accepted as true and Movant need only demonstrate a plausible claim for relief. *Twombly*, 550 U.S. at 556. Movant has done that here.

#### 1. Failure to disclose that Roberto Ramos could have testified that Movant was not the Lemon Grove shooter.

In support of his claim, Movant offered an affidavit from Roberto Ramos that Ramos had not seen Movant at Lemon Grove Park the night of the homicide; when Ramos saw Movant in open court, he "thought that something was wrong because the defendant was not one of the guys I saw the night of the shooting," and that – consistent with the prosecutor's instructions – he

105

signaled this to the government. *See* Civ. Doc. 24 at 171-72; Civ. Doc. 146 at 245-46; Civ. Doc. 24, Appx. 11, Ramos Dec. at pp. 7-8; Civ. Doc. 150, Appx. 11, Ramos Dec. at pp. 7-8.

Contrary to the government's assertion (Civ. Doc. 143 at 81 (citing Civ. Doc. 108 at 12)), Movant's argument is not "speculative." Movant has provided an affidavit in support of this claim. At the motion to dismiss stage, the Court must accept all facts offered by the non-moving party as true. *Twombly*, 550 U.S. at 556.

To the extent that government offers a different interpretation of Ramos's affidavit (Civ. Doc. 52 at 47), at best that creates an issue of disputed fact. Issues of disputed fact are not resolved at the motion to dismiss stage, where all facts must be construed in Movant's favor unless *conclusively* refuted by the record.

Nor is the information contained in Ramos's affidavit cumulative. Civ. Doc. 52 at 47. The government misconstrues the nature of Movant's claim. The issue is not merely that Ramos could not make an identification, but that Ramos could have affirmatively *excluded* Movant. Civ. Doc. 24, Appx. 11, Ramos Dec. at pp. 7-8; Civ. Doc. 150, Appx. 11, Ramos Dec. at pp. 7-8. Moreover, this argument again fails to make all reasonable inferences in favor of Movant, instead making reasonable inferences in favor of the government. Under the proper standard, Movant states a plausible claim that had the jury heard that Ramos would have affirmatively excluded Movant as one of the Lemon Grove Park aggressors there is a reasonable probability that the results would have been different.

The facts presented in Ramos's affidavit state a plausible claim that the government withheld exculpatory evidence, violating *Brady*.[20] This undisclosed exchange between Ramos and

---

[20] Respondent did not offer any argument against the evidence Movant proffered to prove the police and the prosecution suppressed evidence. Assuming the uncontested veracity of the affidavit

the prosecutor was exculpatory, as it was directly exonerative of Movant for the Lemon Grove Park shooting. Civ. Doc. 24 at 173-74; Civ. Doc. 146 at 246-47. And it was prejudicial. Civ. Doc. 24 at 174-77; Civ. Doc. 146 at 247-50. Ramos's affirmative exclusion of Movant would have been especially persuasive because of the Lemon Grove witnesses, only he expressed confidence that he had viewed the Lemon Grove Park attacker's face clearly enough to identify someone. PPT 126-127, 135-136. Relatedly, trial counsel could have used Ramos's exculpation to undermine Freddy Gonzalez's identification of Movant. Civ. Doc. 24 at 175-76; Civ. Doc. 146 at 197-98. Movant states a plausible claim that there is a reasonable probability that if Ramos's exculpatory testimony that Movant was not one of the Lemon Grove Park perpetrators had been presented to the jury, the outcome of the proceedings would have been different.

### 2. Failure to disclose audio recordings of witnesses.

Movant argues that the government failed to meet its *Brady* obligations by not disclosing audio recordings of detectives' interviews with Freddy Gonzalez in which he initially could not identify anyone until prodded by detectives. Civ. Doc. 24 at 177-79; Civ. Doc. 146 at 251-53. The government contends that there can be no *Brady* issue for failing to give trial counsel the audio recordings of Freddy Gonzalez's interviews because trial counsel received Freddy Gonzalez's written statement expressing uncertainty and the corresponding photographic line-up.[21] Civ. Doc. 52 at 50-51.

---

from Roberto Ramos (Declaration of Roberto Ramos, Civ. Doc. 24 & 150, Appx. 11, ¶¶ 9, 13-16, 24-32), this Court can only reach the inescapable conclusion that the government suppressed evidence.

[21] Again, the government did not offer any argument against the evidence Movant proffered to prove the police and the prosecution suppressed evidence. Assuming the accuracy of the police reports that identify undisclosed audio recordings of a suspect and critical witness, Civ. Doc. 36-1 at 8, 15-16; Civ. Doc. 36-1 at 36), this Court can only reach the inescapable conclusion that law enforcement suppressed evidence.

The government makes factual errors in assessing the evidence not provided to trial counsel. The interviews with Freddy Gonzalez reveal that Gonzalez was initially unable to identify anyone until pressed by detectives to pick a photograph; this is more than mere uncertainty. A compelling picture of Gonzalez's initial inability to make an identification was documented in detail in the material audio recording of his interview not known to the defense. Civ. Doc. 150, Appx. 253.

The 2255 Motion only specifically addresses Gonzalez's audio recording on this point. Civ. Doc. 146 at 251-53 & n.65. Considering that the produced audiotapes contain *Brady* material, the audio-recorded interviews of Gonzalez revealed the detail that Gonzalez did not see the shooter's face, which makes it impossible for him to have made any credible identification, not even a tentative one, based on the photo line-ups showing only the faces of suspects, which would have allowed further impeachment of Gonzales, and that other audiotapes remain outstanding, post-conviction counsel maintains there is a good faith basis to believe additional evidence was not produced relating to the Lemon Grove and Fairfax murders. Civ. Doc. 24 at 178; Civ. Doc. 146 at 253 n.65. The government counters that Movant improperly relies on speculation to support that other, unproduced recordings contain *Brady* material. Civ. Doc. 52 at 52. At the motion to dismiss stage, however, the standard is whether, considering Movant's allegations and any reasonable inferences, it is *plausible* that that the government failed to disclose exculpatory and material evidence. *United States v. Caro*, 597 F.3d 608, 619 (4th Cir. 2010) (concluding on direct appeal that trial court did not err in denying defendant's *Brady* motion because defendant "failed to establish that the information requested would be favorable to him" and could "only speculate as to what the requested information might reveal"). Movant meets this generous threshold, explaining the unanswered questions raised by the documents provided to trial counsel and

108

pointing to a pattern of discrepancies between the reports provided to trial counsel and the contents of the audio recordings.

Additionally, the government states – without support – that these audio recordings cannot contain *Brady* material because they are of non-testifying witnesses. Civ. Doc. 52 at 52-53. But *Brady* compels disclosure of material and exculpatory evidence without reference to whether some shadow of the evidence appeared at trial. *See Brady*, 373 U.S. at 84, 90-91 (concluding government violated due process clause for failing to disclose unsigned confession of co-defendant who did not testify at trial).

### 3. Failure to Disclose Material Mitigation Obtained from Movant's Mother

In his 2255 Motion, Mr. Umaña alleged that his mother, Leticia Ramirez, provided the government critical information regarding his family history, birth, trauma, and abuse that were not known to the defense and which the government still has not fully disclosed. Civ. Doc. 24 at 180-90; Civ. Doc. 146 at 254-62; Civ. Doc. 24 at Appxs. 10, 75; Civ. Doc. 106, Appx. 218; Civ. Doc. 150, Appxs. 10, 75, 218. Mr. Umaña further alleged the reasonable inference that the government possesses additional mitigation evidence that it has not disclosed. *Id.*

Movant also alleged that the government violated *Brady* with its late disclosure of Movant's Guatemalan birth certificate, which documented that he was born in 1982, rather than 1984, as all experts at the *Atkins* hearing had believed. Civ. Doc. 24 at 180-81; Civ. Doc. 146 at 256-57.

Relying on this Court's discovery order, the government argues this claim should be dismissed because Movant's 2255 Motion "failed to allege facts sufficient to support the claim," including the specific allegation that Movant "failed to allege facts identifying exculpatory or material *Brady* information the United States failed to disclose." Civ. Doc. 143 at 80-81. The government also incorporates its discovery response by reference. Civ. Doc. 143 at 81.

109

The government's request to dismiss this claim should be rejected because the government misapplies the law, fails to assume Movant's facts as true, and presents material issues of disputed fact which cannot be resolved at this Rule 12(b)(6) stage.

### a. Information from Movant's Mother, Leticia Ramirez

Contrary to the government's assertions, Civ. Doc. 52 at 53, the information learned from Ms. Ramirez was not confined to three narrow facts. Although Ms. Ramirez's declaration provides examples of the information she gave the prosecution, it was not an exclusive list. In fact, she specifically stated that she spoke to the government on at least two occasions and had a formal extended interview with the prosecution in a hotel room where she told them a lot of what is contained in the declaration including the listed examples. Civ. Doc. 24, Appx. 10; Civ. Doc. 150, Appx. 10. She also spoke to a local police officer who went to her home to obtain information on behalf of the FBI. *Id.*, Civ. Doc. 24, Appx. 44; Civ. Doc. 147, Appx. 44. Mr. Umaña has proffered sufficient evidence that the government learned far more mitigating evidence than it has been willing to concede. *See United States v. King*, 628 F.3d 693, 702-03 (4th Cir. 2011) (holding that a different standard applies when the "Government prevents him from ever seeing that evidence" and "an accused cannot possibly know, but may only suspect, that particular information exists which meets [the *Brady*] requirements").

Moreover, the undisclosed evidence was not "known by the defendant" (Civ. Doc. 52 at 55) simply because it concerned his life. Although Mr. Umaña would know that he was not raised by his mother, he likely did not know, or was not able to understand, that his father was a monstrously abusive man to his mother; that while she was pregnant with Mr. Umaña, the abuse did not end, he forced her into prostitution, and alternately beat her and provided her with drugs and alcohol; and that she had to flee to escape his father. Nor can it be said that Mr. Umaña knew or understood the reasons why his family fled to Guatemala prior to his birth. Moreover, what Mr.

110

Umaña "knew" about his life history must be viewed in the context of a man who has suffered significant trauma, neglect, and abuse from before birth, which impaired his ability to understand and report on his life history. *See Rompilla v Beard*, 545 U.S. 374 (2005) (finding that a competent mitigation investigation involves information outside of the defendant's self-reporting); *see also* Civ. Doc. 106, Appx. 214 at 22 (Declaration of Dr. Sapia) (how Movant's impairments prevent him from being an accurate historian of his own social history); Civ. Doc. 150, Appx. 214 at 22 (same); Civ. Doc. 24, Appx. 73 at 9 (Dr. Olley trial report); Civ. Doc. 150, Appx. 73 at 9 (same); *Atkins* Hearing 11/30/09 at 42 (Olley testimony that he would not rely on self-report of person with low intelligence); Civ. Doc. 71 at 2-13 (Supplemental/Amended claim that Movant was incompetent at trial and on direct appeal); Civ. Doc. 82 (counsel's request to stay these proceedings due to Movant's incompetence).

However, even if the evidence was "known" to Movant, that does not absolve the prosecution of its *Brady* obligations. *Cone v. Bell*, 556 U.S. 449, 470-71, 475 (finding that the prosecution suppressed exculpatory evidence of defendant's own drug use history; noting the possibility that information about the defendant's drug use from sources in addition to the defendant "might also have rebutted the State's suggestion that Cone had manipulated his expert witnesses into falsely believing he was a drug addict").

And, at trial the government was on notice that the defense did not know the facts surrounding important details of Mr. Umaña's life history. The government was first notified when counsel moved to continue trial because the defense "has only met with one member of defendant's family"; that person (the father) appears unwilling to assist because of the government's attempts to interview him; and the defense was left "with very little to present to the defendant's capital jury about defendant's life and background." Civ. Doc. 50, Exhibit 1 at 486-88. Subsequently,

when the prosecutor referred to Mr. Umaña's father as a drug dealer in El Salvador, defense counsel informally requested any evidence of this from the government because the defense had no understanding of this evidence and believed that it would be mitigating. Civ. Doc. 24, Appx. 49; Civ. Doc. 150, Appx. 49. On yet another occasion, the defense advised the government that they had not received any information about what was learned during the government's interview with Ms. Ramirez. Civ. Doc. 22, Appx. 74; Civ. Doc. 150, Appx. 74. Despite being put on notice, the government continued to suppress evidence.

The government again attempts to disparage the import of Movant's *mother's* evidence because she was only present for the first few months of his life. Civ. Doc. 52 at 55. Movant has addressed those allegations, *supra* at Section IV.A.1.b.

The government's reliance on a footnote in *United States v. Agurs*, 427 U.S. 97, 110 n.16 (1976), for the proposition that it was not required to "communicate preliminary, challenged, or speculative information," Civ. Doc. 52 at 55, is misplaced. Movant has proffered a declaration from his mother that she told government agents mitigating evidence about his life. Civ. Doc. 24, Appx. 11; Civ. Doc. 150, Appx. 11. Movant has also proffered affidavits from other individuals who corroborate the information provided by Leticia about Movant's life. *See* Civ. Docs. 24 & 146 at Claim 1. Although the government challenges whether it knew about Leticia's potential testimony, the government has provided nothing in response to challenge the substantive information Leticia provided about Movant's life. The government's insinuation, through its quotation of the *Agurs* footnote, that her evidence is somehow "preliminary, challenged, or speculative," with absolutely nothing factual to back up its argument, must be rejected at this Rule 12(b)(6) stage, when Movant's uncontested facts must be assumed true.

Moreover, the government misapprehends controlling law. "[T]he prudent prosecutor will resolve doubtful questions in favor of disclosure." *Agurs*, 427 U.S., at 108. The Supreme Court observed that "[t]his is as it should be" because it justifies trust in the prosecutor, but also because "it will tend to preserve the criminal trial, as distinct from the prosecutor's private deliberations, as the chosen forum for ascertaining the truth about criminal accusations." *Kyles v. Whitley*, 514 U.S. 419, 439-40 (1995) (internal citations omitted). Leticia's information was relevant to the *Atkins* hearing and mitigating to sentence, and as such was both exculpatory and material. Movant has stated a plausible claim for relief.

### b. *The Guatemalan Birth Certificate*

The government's procedural default arguments regarding the Guatemalan birth certificate must be rejected. Civ. Doc. 52 at 56. The government misapprehends the nature of Movant's claim. The birth certificate was *not* available in time for counsel to use it at the *Atkins* hearing. Moreover, counsel stated in their affidavits that they did not have time to use the information that accompanied the birth certificate to locate Letica given the late disclosure, Civ. Doc. 24, Appx. 23 ¶7; Civ. Doc. 24, Appx. 24 ¶6; Civ. Doc. 150, Appx. 23 ¶7; Civ. Doc. 150, Appx. 24 ¶6; and the government has asserted there is no reasonable probability this Court would have granted a continuance. Civ. Doc. 52 at 98.

This claim was likewise not available to appellate counsel as it required the development of facts outside of the record, including what the government knew and when. *See* Civ. Doc. 24 at 180-91; Civ. Doc. 146 at 254-65. Alternatively, assuming the factual basis of this claim was available to appellate counsel, appellate counsel's ineffectiveness constitutes cause and prejudice to overcome default. *Murray v. Carrier,* 477 U.S. 478 (1986). There can be no reasonable strategy not to have raised this claim if it was patent on the face of the record. Because the government violated *Brady*, there is a reasonable probability Movant would have succeeded on direct appeal.

113

While it is an open question in the Fourth Circuit whether the government's *Brady/Napue* obligations apply to pretrial hearings, *see United States v. Williams*, 10 F.3d 1070, 1077 (4th Cir. 1993), the United States Supreme Court has been clear that due process is violated when the withheld evidence had "any adverse effect" upon the defendant's ability to prepare for trial or present a defense. *United States v. Bagley*, 473 U.S. 667, 683 (1985) ("the reviewing court may consider directly any adverse effect that the prosecutor's failure to respond might have had on the preparation or presentation of the defendant's case").

The government's claim that it timely disclosed the birth certificate because it did so before trial, at a time when counsel could have requested reconsideration of the *Atkins* determination and/or a trial continuance, Civ. Doc. 52 at 57, ignores the fact that the government also argues, in the same brief, that "no reasonable probability exists that this Court would have granted a request for a continuance." *Id*. at 98. These two things cannot be simultaneously true. If the government is correct in its contention that this Court would not have granted another continuance, then there is no question that trial counsel lacked sufficient time to either reopen the *Atkins* proceedings or effectively use the government's late disclosure at trial. If the government is correct that trial counsel actually *could* have requested a continuance and requested reconsideration to the *Atkins* determination, trial counsel were ineffective for failing to do so, and that ineffectiveness overcomes any purported default.

Regarding the government's argument that the birth certificate was not material to the *Atkins* determination, Civ. Doc. 52 at 57, Movant has proffered facts tending to show otherwise. *See* Civ. Doc. 24 at 189-91; Civ. Doc. 146 at 265-66. The government offers no evidence to disprove these facts and they must be assumed true at this Rule 12(b)(6) stage.

### 4. Failure to Disclose Exculpatory Evidence Regarding MS-13 Tattoos.

The government's argument that its failure to disclose information in its possession that one does *not* have to kill to earn an MS-13 tattoo (Civ. Doc. 52 at 57-59) should be rejected for all of the reasons stated in sections IV.G.2 and XI of this Reply (regarding related *Napue* violations and ineffective assistance of counsel.

### 5. Conclusion.

The government's arguments for dismissal should be rejected. At the motion to dismiss stage, Movant's factual allegations must be accepted as true and Movant need only demonstrate a plausible claim for relief. *Twombly*, 550 U.S. at 556. Movant has done that here.

### G. The Facts Contained in Claim VII – Regarding the Prosecution's Presentation of Materially Misleading and/or False Evidence and Argument – State a Plausible Claim for Relief.

Referencing this Court's discovery order, the government urges dismissal of three parts of this claim regarding 1) materially misleading and false evidence at the *Atkins* hearing; 2) materially misleading and false evidence and argument based on Granados's testimony that one must kill to earn the MS tattoo; and 3) materially misleading and false evidence regarding Freddy Gonzalez's purported identification of the shooter because Movant "has failed to establish facts that would establish that the United States knowingly presented false testimony." Civ. Doc. 143 at 81-82. The government also incorporated its discovery response regarding these three falsehoods. Civ. Doc. 143 at 82. Finally, the government addressed for the first time Movant's arguments that Detective Parshall falsely testified that the Fairfax codefendants corroborated each other when, in fact, detectives fed them information. Civ. Doc. 143 at 82-84.

### 1. Materially Misleading and False Evidence at the *Atkins* Hearing.

Movant alleges that the government violated *Napue* when it presented and allowed to go uncorrected false evidence at the *Atkins* hearing when the government, and the government alone,

knew that Movant had been born in Guatemala in 1982, not 1984 as everyone believed. Civ. Doc. 24 at 193-97; Civ. Doc. 146 at 267-72.

Referencing this Court's discovery order, the government argues that this claim should be dismissed because Movant "failed to allege facts that would establish that the United States knowingly presented false testimony." Civ. Doc. 143 at 82. The government also references its discovery response. Civ. Doc. 143 at 82.

At this Rule 12(b)(6) stage, this Court must accept Movant's proffered facts as true. To the extent the government disputes Movant's facts, that does not constitute grounds for dismissal, but grounds for further evidentiary development to resolve those disputed facts.

### a. The government's unavailing procedural default arguments.

The government argues this claim is defaulted because Movant failed to raise it at trial or direct appeal. Civ. Doc. 52 at 62-63. The government is incorrect, not least because its argument relies on two § 2254 cases, *id.* at 63, citing *Allen v. Lee*, 366 F.3d 319, 324 n.* (4th Cir. 2004) (holding *Napue* claim procedurally defaulted); *Hoke v. Netherland*, 92 F.3d 1350, 1359 (4th Cir. 1996) (same), one of which has no bearing here and the other of which confirms that this claim is not defaulted. *Allen* concerns the § 2254 petitioner's failure to exhaust his *Napue* claim in state post-conviction proceedings. *Allen*, 366 F.3d at 323. As exhaustion in state court is not a consideration in this or any § 2255 case, *Allen* is not relevant. *Hoke* similarly concerns the § 2254 exhaustion requirement, but how it applies where evidence supporting the *Napue* claim was known at trial. *Hoke*, 92 F.3d at 1359. Thus, to the extent that *Hoke* has relevance to this § 2255 case it is as a restatement of the principle detailed above, *see* Section III(A)(1), (2), that a *Napue* claim cannot be brought at trial if the evidence at issue was not known at trial. Relatedly, the fact that the post-trial evidence (and the government's knowledge of it) is, by definition, outside the record,

*see* Civ. Doc. 24 at 193-97; Civ. Doc. 146 at 267-72, further confirms the inapplicability of default. *See* Section III(A), *supra*.

Even if this claim was raisable at trial or appeal such that it was potentially defaulted, trial and/or appellate counsel's ineffectiveness constitutes cause and prejudice to overcome any default. *See* Section III(A), *supra*. Upon learning that their client was two years older than their experts had believed, reasonable trial counsel would have recognized the import of that fact not only to the "age" prong of *Atkins*, but also the adaptive functioning prong (where his greater age would show a greater disparity between his weaknesses and those of his age-peers). Given those obviously impactful consequences of their client's true age, it would have been unreasonable for counsel to have ignored without investigation the revelation that their client's *Atkins* evidence was likely inaccurately presented to, and so assessed by, this Court. Indeed, the government acknowledges this, and in so doing tacitly acknowledges counsel's unreasonable decision-making. In its discovery response, the government argues that counsel raised the birth certificate before the jury and in the motion for new trial, and so easily could have sought reconsideration of the Court's *Atkins* determination based on the birth certificate. Civ. Doc. 52 at 66.

A continuance to investigate the import of that new fact and conduct all necessary litigation, followed by – as the government suggests – some effort to reopen or reconsider the *Atkins* hearing and discovery to determine what the government knew and when, would have been the obvious, reasonable, response. The record is clear that did not happen. And, as Movant has established the reasonable probability that, with the accurate evidence (and, in this particular case, the likelihood that accurate evidence would have been assessed more closely in time to the Supreme Court's *Hall* opinion), *see* Civ. Doc. 24, Claims III and IV; Civ. Doc. 146, Claims III and IV; Section IV(C) and (D), *supra*., Movant was prejudiced by that failure.

117

Addressing in generalized fashion Movant's claims of counsel's ineffectiveness, the government argues that this Court would never have granted another continuance, (Civ. Doc. 52 at 97-98), an argument that goes to the prejudice both of the substantive *Napue* claim itself and the hypothetical "prejudice" to overcome the non-existent procedural default. The government again ignores both the standard of review here and the standard of proof of the *Napue* claim. To survive the government's Motion to Dismiss, Movant must present sufficient factually supported allegations (and inferences therefrom) that, if true, show that it was *plausible* this Court would have permitted counsel to address the material revelation of Movant's true age, be it in a continuance or (as the government suggests in its discovery responses, a motion to reconsider the *Atkins* determination, (Civ. Doc. 52 at 66)). *Iqbal*, 556 U.S. at 670.

> b. *The government fails to rebut the presumption that Movant's allegations on each element of the claim are true.*

The full effect of the false evidence of Movant's age is best addressed under the rubric of the substantive claim (although, as explained in Section III(A), *supra*., the materiality/prejudice analyses effectively merge together). On the substantive claim itself, Movant's claim cannot be dismissed if it is plausible that his presumptively true factually supported allegations and inferences show that "the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury." *Napue*, 360 U.S. at 271. The government argues – admittedly in its discovery response, addressing in generalized fashion Movant's claims of ineffective assistance of counsel – that Movant's true age is not material to the *Atkins* determination because the "purported upshot … is that he was 12 instead of 10 when he repeated third grade." Civ. Doc. 52 at 57. Now is not the time to address in full the depth of the government's misunderstanding of the concepts of childhood development, pre-18 intellectual functioning, and the near-exponential differences in both in relation to even a single year's variation in the age of a child. Movant's allegations –

118

supported by expert opinion and additional lay witness observations and documentary evidence – are more than sufficient to establish as plausible a reasonable likelihood this Court's resolution of the *Atkins* hearing could have been affected by the false evidence.

The government spuriously attempts to deflect from the effect of the *Atkins*-experts' false belief of Movant's age, arguing that those experts did not *testify* about Movant's age. Civ. Doc. 52 at 63-64. Movant plainly alleged that the false evidence of Movant's birth date impacted the government's expert's opinions, opinions this Court relied upon in its opinion. Civ. Doc. 24 at 194-96; Civ. Doc. 146 at 269-71. Moreover, taking the government's argument at face-value, it would be accurate to Reply that the true false evidence was Dr. Suarez's testimony concerning Movant's intellectual and cognitive functioning before the age of 18. Any conclusion to which Dr. Suarez testified to that was dependent on, or affected by, age was – taking the government's approach – false. There is no question the government's use of, or failure to correct, an expert witness's false evidence violates due process just as if it were a lay witness. *See Miller v. Pate*, 386 U.S. 1, 7 (1967).

All trial experts, including the government's expert, relied on Movant's age when assessing his adaptive functioning. Civ. Doc. 24 at 194-96; Civ. Doc. 146 at 267-71. Evidence of Movant's correct age would have impacted their opinions. *See* Civ. Doc. 24 at 195 (quoting Appx. 28 ¶ 12) (Dr. Olley's opinion); Civ. Doc. 146 at 270 (same). *See also* Civ. Doc. 146 at 269-71 (detailing how the two-year mistake in Movant's age meant he was substantially more impaired that he appeared at the *Atkins* hearing). The government's derisive dismissal of the effects of a two-year difference in Movant's age does not disprove any of Movant's factually supported allegations, or the reasonable inferences therefrom. This Court concluded – based on the evidence that over-appraised Movant's cognitive and intellectual functioning – it was a "close call" whether Movant's

119

academic achievements tipped towards adaptive deficits. Crim. Doc. 934 at 13. Movant's allegations plausibly state a claim that there is a reasonable likelihood this Court's decision which way to decide that "close call" *could* have been affected by the false evidence of Movant's age.

"Materiality" is but one of the elements of Movant's false evidence claim. Concerning the element of whether the government used the evidence knowing it was false, the government argues that Movant failed "to establish" that the government "knew any testimony to be false." Civ. Doc. 52 at 65.

The government asserts that it would not have been in possession of the Guatemalan birth certificate until April 13, 2010. Civ. Doc. 52 at 64. While that assertion disputes Movant's allegation that, while Moreno's report may not have been dated until April 13, 2010, the government came into possession of the information contained therein much earlier, Civ. Doc. 24 at 182-87; Civ. Doc. 146 at 267-68, it does not conclusively disprove those allegations. Moreover, all the record evidence, including documents from the Guatemalan consulate (Civ. Doc. 22, Appx. 43; Civ. Doc. 147, Appx. 43), demonstrate that the Guatemalan birth certificate is true and correct and, therefore, the El Salvador birth certificate is false. Movant's proffered facts must be accepted as true at this stage. *Twombly*, 550 U.S. at 556. If anything, the government's assertion creates a disputed issue of material fact that, were this a Rule 56 proceeding, would prevent judgment and warrant resolution through further evidentiary development. F.R.C.P. Rule 56(a); Rule 8(a) of the Rules Governing Section 2255 Proceedings.

Movant's factually supported allegations state a plausible claim for relief. The government has not offered any evidence to show that those allegations should not be presumed to be true. At most, the government has disputed facts such that a hearing or further evidentiary development to

resolve that those disputes is warranted. Dismissal for failure to state a claim is not, therefore, warranted.

## 2. Evidence and Argument Regarding the MS Tattoo

Movant has presented sufficient facts supporting his allegation the government presented materially misleading and false evidence and argument that one had to kill to earn the MS tattoo to establish a plausible claim for relief. In fact, in its discovery response, the government conceded that Granados's testimony was false: "Common sense, moreover, would tell the jury that anyone can go to a commercial tattoo parlor and ask for any tattoo they want, without killing anyone." Civ. Doc. 52 at 59; *see also id*. at 67 ("And common sense would tell the jury that Umaña need not have killed to obtain his tattoos."). Movant's allegation is not conclusory. In addition to the government's apparent concession of falsity, Movant has supported his allegation with, *inter alia*, testimony from Rony Lopez and Frank Flores and a proffered report from Dr. Thomas Ward, Ph.D. Civ. Doc. 24 at 199-202; Civ. Doc. 146 at 274-77. This was not, as the government attempts to argue, a mere inconsistency between Rony Lopez, Frank Flores, and Alexander Granados's testimony. Civ. Doc. 52 at 67. The government knew Granados's testimony was false (contrary to common sense) but elicited it and argued based on it anyway.

The government faults Movant for having never provided an affidavit stating what he did do to earn his tattoos, if anything, if not murder, Civ. Doc. 52 at 67. Yet, Movant had no obligation to testify at trial to explain the origin of his tattoos. The government, on the other hand, had an obligation not to elicit false testimony; to correct false testimony; and not to make false and misleading arguments to the jury. And the government now concedes that the very testimony it elicited and exploited in closing argument defies common sense.

The government's argument that Movant cannot assert a *Napue* claim here because Movant knew how he got his tattoos, Civ. Doc. 52 at 68, also must be rejected. A closer read of the cases

121

cited by the government shows that this preclusion applies only when defense counsel knows about false testimony and was found to have made a strategic choice not to object. *Mangual-Garcia*, 505 F.3d 1, 10 (1st Cir. 2007) (citing *United States v. Iverson*, 648 F.2d 737, 739 (D.C.Cir.1981) (opinion on rehearing) (footnote omitted) "(Although there is some division within the circuits on the issue, we agree with the majority of circuits that 'absent unusual circumstances, the right of the defendant to disclosure by the prosecutor is deemed waived if defense counsel with actual knowledge of the [false testimony] chooses not to present such information to the jury.'"); *Meinster*, 619 F.2d 1041, 1045 (4th Cir. 1980) (defense counsel had actual knowledge of the witness's plea deal from the very DOJ that was prosecuting the defendant). The government has made no such showing. Moreover, as Movant demonstrates in Claim XX, he was not provided an effective mechanism to communicate with counsel and assist in the defense in real-time at trial. Civ. Doc. 24 at 319-21; Civ. Doc. 146 at 435-37. And, Movant was and is incompetent. Civ. Doc. 71 at 2-13; Civ. Doc. 82.

Moreover, as the Fifth Circuit recognized, this principle does not apply when the prosecutor acts to reinforce the deception. *United States v. Barham*, 595 F.2d 231, 243 & n.17 (5th Cir. 1979). That is exactly what happened here. Granados's original false testimony was a non-responsive answer on cross-examination. GPT 913. On redirect examination, the prosecutor revisited the issue, but, instead of correcting Granados's prior false testimony, asked additional questions to leave no doubt for the jury that Granados meant you must kill to get the MS tattoo. GPT 920. Then, in closing argument, the prosecutor exploited Granados's testimony by repeatedly arguing that Movant earned his tattoos by killing. *See* Civ. Doc. 24 at 203-04; Civ. Doc. 146 at 278-79. The government cannot evade its *Napue* obligations in these circumstances.

The government's prejudice arguments are likewise without merit. In response to Movant's ineffective assistance of counsel claim based on counsel's failure to object to or counter Granados's testimony, the government argues that Granados's tattoo testimony was relevant because the fact that "MS-13 rewarded its members with status symbols for killing was directly relevant to an element of an offense with which Umaña was charged: that Umaña had committed murder 'with the purpose of maintaining or enhancing'" his position in the gang. Civ. Doc. 52 at 93. Thus, the government has conceded that the jury could have used this testimony as a basis to convict. Also, as described above and in the 2255 Motion, the government exploited this testimony in closing argument. The government's own at-trial actions show that this testimony was material to the jury's determination.

The government's argument that this claim is procedurally defaulted because it is based on a transcript of the co-defendant's trial filed with the Court and electronically served on counsel seven days before counsel filed their motion for a new trial, Civ. Doc. 52 at 63, should be rejected. As demonstrated above, the default cases cited by the government are inapposite. However, assuming arguendo that the government's allegation of default is correct, Movant can demonstrate cause and prejudice to overcome that default. First, Movant's trial counsel were ineffective regarding the litigation of this issue. *See* Civ. Docs. 24 & 146, Claim XI. Second, this claim requires the development of facts outside of the record. *See Bousley*, 523 U.S. at 621-22. For example, Movant has proffered the testimony of Dr. Thomas Ward, Ph.D. in support of this claim. Moreover, the government's own arguments in opposition suggest that there are extra-record considerations to the evaluation of this claim, including what trial counsel knew when. Third, if this Court finds that this claim could have been raised on the record that existed at the time of direct appeal, appellate counsel's ineffectiveness overcomes any default. *Murray*, 477 U.S. at 488.

123

The record demonstrates that appellate counsel reviewed the record as it pertained to the codefendants, to the extent it was available to them. *Cf.* Crim. Doc. 1530. Thus, appellate counsel should have been aware of Lopez's conflicting testimony and on-notice that Granados's testimony was false. There is a reasonable probability that Movant would have received a more favorable outcome if this issue had been litigated properly.

Movant has proffered facts that state a plausible claim for relief. The government's motion to dismiss should be denied.

### 3. Materially Misleading and False Evidence and Argument at the Penalty Phase Regarding the LA Homicides.

The government's argument that this claim is defaulted because Movant failed to raise it at trial or direct appeal, Civ. Doc. 52 at 62-63, must be rejected. As demonstrated above, the default cases relied upon by the government have no bearing here. Moreover, the post-trial evidence, including Parshall's role in interviewing the Fairfax accomplices, audio recordings of those interviews (and the government's knowledge of it), and the government's knowledge of Freddy Gonzalez's false statements at trial, is, by definition, outside the record, *see* Civ. Doc. 24 at 205; Civ. Doc. 146 at 280, further confirming the inapplicability of default. *See* Section III(A), *supra.*

If this claim was raisable at trial or appeal such that it was potentially defaulted (which it was not because of the government's suppression of relevant evidence), then trial counsel rendered ineffective assistance by not thoroughly investigating these aggravating offenses. Trial counsel had no reason to not thoroughly investigate; the trial court allowed them to retain a private investigator to develop evidence regarding these offenses. Crim. Doc. 467 (filed April 17, 2009). Trial and/or appellate counsel's ineffectiveness constitutes cause and prejudice to overcome any default. *See* Section III(A), supra.

124

### a. Lemon Grove

The government argued to this Court that it should permit Freddy Gonzalez to identify Mr. Umaña before the jury because "when he was interviewed he said, I will never forget that face. If I can – you know, I will never forget that face." PPT 326. In front of the jury, the government elicited testimony from Gonzalez that he had identified Movant twice as the shooter and was certain about this identification. PPT 329-34, 830-31. This testimony was materially misleading and false evidence regarding the certainty of Gonazlez's identification of Movant as the Lemon Grove Park shooter.

The government contends that this claim fails because trial counsel elicited testimony from Gonzalez on cross-examination that he was uncertain about the identification. Civ. Doc. No. 143 at 22-23, 43.

In assessing whether this claim fails or whether Movant has stated a claim for which relief can be granted, Rule 12(b)(6), the Court assumes all of Movant's factually supported allegations to be true and resolves all reasonable inferences therefrom in Movant's favor, unless they are conclusively disproven by the record. *Iqbal*, 556 U.S. at 679; *Nemet*, 591 F.3d at 255; *see also Hall*, 846 F.3d at 765 ("When ruling on a motion to dismiss, courts must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff.").

At the outset, the audio recordings of interviews of Gonzalez provided to post-conviction counsel after the filing of the 2016 2255 Motion reveal that Gonzalez never said anything resembling what the government told this Court when arguing for the admissibility of Gonzalez's identification. Civ. Doc. 146 at 281; Civ. Doc. 36, Exh. 21(b); *see generally* Civ. 24 at Doc. 177-79. Instead, the audio recordings establish that Gonzalez was initially unable to make any identification and only offered his identification after prodding by detectives. Civ. Doc. 146 at

125

252; Civ. Doc. 36, Exh. 21(b) at 12-13. Moreover, the government knew that the identification was made while Gonzalez was in custody for violating his probation and that detectives promised Gonzalez help if he assisted them. Civ. Doc. 146 at 285; Civ. Doc. 36, Exh. 21(a) at 2, 47-48; Civ. Doc. 36, Exh. 21(b) at 2, 4-5, 10. Although counsel solicited some uncertainty from Gonzalez on cross-examination about his identification of Movant, that testimony does not neutralize the weight of the government's presentation of false evidence. PPT 335-36.

And in accordance with the 12(b)(6) standard, the facts as provided in the 2255 Motion state a plausible claim that there is a reasonable likelihood that the false testimony regarding the certainty of Mr. Gonzalez's identification affected the judgment of the jury. Gonzalez was a key witness for the government, as no other eyewitnesses identified Movant as the Lemon Grove shooter. As the Court of Appeals noted, there were "legitimate arguments" regarding the lack of reliability of the hearsay statements of suspects used to support the government's allegation that Movant was the Fairfax shooter. *United States v. Umaña*, 750 F.3d 320, 348-49 (4th Cir. 2014). The court, however, determined that the reliability of the suspect statements in Fairfax was somewhat bolstered by the fact that Movant was identified as the shooter at Lemon Grove Park. Crim. Doc. 1021 at 10. Thus, favorable evidence that undermines the government's case in Lemon Grove, also creates doubt about the case for Fairfax. Given Gonzalez's role as the sole eyewitness who identified Movant, this court can and should assume knowledge of his unwillingness to identify anyone and the suspect circumstances of his identification poses a reasonable likelihood of affecting the judgment of the jury, and deny the government's motion to dismiss.[22]

---

[22] The government's discovery response considers whether there is a reasonable probability of a different outcome, when the standard for a *Napue* claim is whether "there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97, 103 (1976).

### b. Fairfax

Further, the government presented evidence through Detective Parshall that Movant's co-defendants for the Fairfax offense, Luis Rivera, Luis Ramos, and Rene Arevalo, all corroborated one another and all consistently told police that Movant was the Fairfax shooter. PPT at 221-22. But the transcripts from their interviews reveal that this corroboration was created; Parshall took Luis Rivera's version of what happened, provided that to the other two co-defendants, and warned them that they could be blamed as the shooter if they did not provide a statement that was consistent with Rivera's account of the shooting. Unsurprising, the two co-defendants took Parshall's suggestion and parroted Luis Rivera's account of the Fairfax Avenue shooting. Civ. Doc. No 24 at 208; Civ. Doc. 146 at 286.

The government first argues that Movant cannot meet the first requirement for a *Napue* claim – that the testimony be false. Civ. Doc. 143 at 81-83. As the Fourth Circuit recently explained, "[f]alse testimony includes both perjury and evidence that, though not itself factually inaccurate, creates a false impression of facts which are known not to be true." *Juniper v. Davis*, 21-9, 2023 WL 4610068, at *7 (4th Cir. July 19, 2023) (quoting *Burr v. Jackson*, 19 F.4th 395, 410 (4th Cir. 2021)). Detective Parshall's testimony that the stories were consistent among the co-defendants created a false impression to the jurors that they arrived at similar stories on their own accord.

Second, the government argues that this claim fails because trial counsel had access to the transcripts of the interrogation of Luis Rivera and Rene Arevalo, which were introduced into evidence at trial. Civ. Doc. 143 at 84. *Napue*, unlike *Brady*, does not require that the information have been unavailable to trial counsel. The case cited by the government, *United States v. Meinster*,

127

619 F.2d 1041 (4th Cir. 1980), involves a strategic decision not to challenge the false testimony. In *Meinster,* the court considered the claim waived where defense counsel testified at an evidentiary hearing that the government specifically informed them before trial that a testifying witness would receive a deal yet counsel chose not to pursue the issue further and instead, permitted the witness to deny the deal and challenge the testimony only after the trial. *Id.*; *see also Briley v. Bass*, 584 F. Supp. 807, 834 (E.D. Va. 1984), *aff'd,* 742 F.2d 155 (4th Cir. 1984) (considering *Meinster* and holding "petitioner's strategic decision not to go into the particulars of [witness's] full plea agreement, when he had knowledge of that full plea agreement, bars him at this time from alleging that the full plea agreement was not before the jury"). As discussed in Claim V, there is no obvious or strategic reason for trial counsel to let Detective Parshall's testimony go uncorrected.

Regarding the implication that because trial counsel had the transcripts of Parshall's interviews before trial, they must have made a strategic decision not to show the jury the corroboration by Parshall, the government is not entitled to make assumptions and demand their assumptions have enough weight to compel dismissal of a claim. For Rule 12(b)(6), the Court assumes all of Movant's factually supported allegations to be true, including the allegation that Detective Parshall coordinated the accomplices' statements regarding the Fairfax offense, and resolves all reasonable inferences therefrom in Movant's favor unless they are conclusively disproven by the record. *Iqbal*, 556 U.S. at 679; *Nemet*, 591 F.3d at 255; *see also Hall*, 846 F.3d at 765 ("When ruling on a motion to dismiss, courts must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff."). The government has not conclusively disproven Movant's allegations with any evidence from the

record, but only offers assumptions unsupported by record evidence. This Court must reject the government's request to dismiss this claim.

Movant has proffered facts that state a plausible claim for relief. The government's motion to dismiss should be denied.

### H. The Facts Contained in Claim VIII – Regarding Trial and Appellate Counsel's Ineffective Litigation of the Government's Use of His Jail Letters – State a Plausible Claim for Relief.

The government repeatedly speculates on what trial counsel's purported strategy was, inventing strategies that trial counsel has never stated or otherwise endorsed. See Civ. Doc. 143 at 49-53. The government's speculation is inappropriate here, at the Rule 12(b)(6) stage, when all facts must be construed in Movant's favor. Moreover, the government's speculation of trial counsel's strategy is refuted by the record. The trial record is clear that counsel wanted to keep the jury from hearing irrelevant, unduly prejudicial content from the letters and to prevent the jury from using the letters in an unduly prejudicial manner against their client. See Civ. Doc. 24 at 212-13; Civ. Doc. 146 at 291-93; Civ. Doc. 143 at 47-48 (all describing counsel's efforts regarding the letters). Having recognized the harm that the letters could cause, counsel could have had no reasonable strategy for not fully investigating and litigating all reasonably available challenges to the letters and all reasonably available evidence to mitigate them.

Although the government's speculation is improper at this stage, Movant will, nonetheless, address some of those speculations. The government's argument that counsel was reasonable not to request redactions of the letters because this Court would not have granted that request (Civ. Doc. 143 at 49-50) should fail. This Court recognized that the admissibility of the letters "is a somewhat difficult inquiry because the letters discuss multiple topics, some of which are relevant, and some of which are not." Crim. Doc. 998. Instead of being disheartened, a reasonable attorney could have interpreted that as an invitation to seek further redaction of irrelevant, unduly

129

prejudicial materials. Moreover, Movant suggests that, contrary to the government's speculation (Civ. Doc. 143 at 50), it would have been technologically possible to redact the letters in a way that neither drew attention to the redaction or the surrounding materials.

Regarding counsel's failure to present evidence and argument to the jury showing that Movant did not threaten Luis Ramos in Exhibit 152, the government refuses to imagine a different picture. Civ. Doc. 143 at 52-53. The government already presented evidence and argument that the letters contained threats against Ramos. Civ. Doc. 24 at 228; Civ. Doc. 146 at 313. Failure to mitigate that evidence with evidence – created by the government – showing that in fact Movant was scared and reaching out to Ramos as a friend for help because – as the government improperly speculates – the government would have presented more threat evidence is nonsensical. The cat was already out of the bag; the only thing for counsel to do was to try to mitigate it. FBI Analyst Cortes's interpretation of Exhibit 152 completely changes the picture regarding the alleged threats on Ramos.

Regarding Movant's use of language and the impropriety of the government's translations, Movant has proffered evidence in support of this claim – including the Declaration of Dr. Robin Riner, Ph.D. (Civ. Doc. 150, Appx. 266); and the Report of Eileen Haag (Civ. Doc. 150, Appx. 270); Civ. Doc. 146 at 309-12 – that the government manipulated their translations of Movant's letters in a manner that changed rambling, stream of consciousness writing into standard written English such that it misrepresented and exaggerated Movant's written language abilities Movant has also proffered the report of Dr. Erik Nielson, Ph.D., that Movant's "songs" contained in the letters are derivative, simplistic, highly repetitive and show a limited command of language. Civ. Doc. 146 at 311; Civ. Doc. 116, Appx. 238; Civ. Doc. 150, Appx. 238. This was significantly more than Susan Conrad's concession that Movant was a "very poor writer" in terms of "punctuation."

Civ. Doc. 143 at 48. The government has offered nothing in rebuttal of these proffers so Movant's facts must be accepted as true.

Regarding Movant's use of "code," Movant has proffered a citation to the magazine *Highlights for Children* showing that the "code" Movant used – documented in an FBI report – was a children's game. Civ. Doc. 22 at 216 & Appx. 77 at 8; Civ. Doc. 146 at 307-08; Civ. Doc. 150, Appx. 77 at 8. The government has offered nothing in rebuttal of *Highlights for Children* so Movant's factual proffer that this was a children's code must be accepted as true.

Again, the government makes the mistake of focusing solely on what happened at trial and ignoring what could have happened with reasonable defense investigation to argue that counsel's failure to present linguistics evidence was not deficient because "this Court found that Umaña was able to 'communicate cogently in writing.'" Civ. Doc. 143 at 51-52. The Court made that finding because defense counsel did not challenge the government's case and present the Court with expert evidence showing that the government's translations misrepresented Movant's writing skills. Likewise, regarding the fact that the "code" Movant used appeared in Highlights for Children, the government ignores Movant's allegations in his 2255 Motion that the use of code was, in fact, not successful. Civ. Doc. 24 at 226-27; Civ. Doc. 146 at 308. The fact that Movant's code was not sophisticated mattered when the jury was ultimately tasked with deciding his overall moral culpability for these homicides. And, Movant would offer that the target audience of Highlights for Children also had a "relative lack of education" (*see* Civ. Doc. 143 at 52) yet were able to use the code.

Movant's claim – and factual proffers which must be accepted as true at this stage – state a plausible claim for relief. Dismissal is improper.

**I. The Facts Contained in Claim IX – Regarding Counsel's Ineffectiveness for Failing to Present Movant's Apology Note to the Jury – States a Plausible Claim for Relief.**

The government's argument in support of dismissal of this claim hinges on the purported double-edged nature of the apology note. Civ. Doc. 143 at 54-56. The government argues that counsel was reasonable not to present it (and there was no reasonable probability it would have swayed a juror) because it would have highlighted other negative aspects about Movant. *Id*.

As demonstrated throughout this Reply, the government's speculation as to counsel's purported strategic reasons is improper.

Moreover, Movant has proffered additional evidence in these proceedings that would mitigate much of the supposed "double-edged" nature of this evidence that the government relies upon. For example, the government suggests the apology note highlights Movant's status as a gang member, but Movant has proffered evidence tending to mitigate that status. *See*, *e.g.*, Civ. Doc. 150, Appx. 244, Report of Thomas Ward (Mr. Umaña would not be a leader in his gang); Civ. Doc. 106, Appx. 216 at ¶23, Decl. Pablo Stewart, M.D. (Mr. Umaña would be a bad leader due to his impairments); Civ. Doc. 150, Appx. 216 at ¶23 (same). *See also* Claims I, II, III.

Finally, the government ignores the fact that prejudice from counsel's deficient performance must be considered cumulatively. *See* Claim XXX. Movant need not show that this single deficient act would have resulted in a reasonable probability of a life sentence, but that all of counsel's deficient acts combined would have prejudiced him.

Because the facts proffered here state a plausible claim for relief, dismissal is improper at this stage.

132

**J. The Facts Contained in Claim X – Regarding Counsel's Failure to Seek Redactions to Prevent the Jury From Hearing About Acquitted Other Crimes Evidence This Court Ruled Excluded – State a Plausible Claim for Relief.**

The government's argument that this claim should be dismissed because his attorneys did vigorously litigate the admission of the transcript of his police statement (Civ. Doc. 143 at 56-57) is a misleading misrepresentation of the trial record. Trial counsel moved to suppress Movant's statement based on Fifth and Sixth Amendment grounds. Crim. Doc. 490. That litigation had nothing to do with the acquitted other crimes evidence in Movant's statement.

As demonstrated throughout this Reply, the government's speculation about strategic reasons counsel might have had (Civ. Doc. 143 at 57-58) is improper. Moreover, to the extent that the record says anything about counsel's strategy regarding the acquitted other crimes evidence, the record tends to show that strategy was to prevent the jury from hearing it. *See* Civ. Doc. 24 at 238; Civ. Doc. 146 at 327-28; Crim. Doc. 960. Counsel had already prevailed on this strategy, Crim. Doc. 1021, so could have reasonably expected success had they sought the redactions necessary to move this otherwise excluded evidence from Movant's statement.

The Fourth Circuit's treatment of Movant's direct appeal claim that the government committed misconduct for introducing the transcript of Movant's statement when it contained references to the acquitted other crimes evidence that the Court had found inadmissible cannot control here as it is impossible to know the grounds upon which the Circuit denied relief on that claim when only Judge Gregory, in dissent, wrote on the issue. *See* Civ. Doc. 143 at 58; Civ. Doc. 24 at 240-41 & n.54; Civ. Doc. 146 at 329-30 & n. 92.

Finally, the government's prejudice arguments are unavailing. Again, the government's argument is that, essentially, this attorney error could not have been prejudicial because it was a small one. Per the government, references to the acquitted conduct that this Court held inadmissible were few and far between. Civ. Doc. 143 at 58. What the government again ignores

133

is that prejudice from counsel's deficient performance must be addressed cumulatively. *See* Claim XXX. Moreover, both this Court and Judge Gregory have already noted the prejudicial value of the acquitted other crimes evidence.

Movant has proffered facts that state a plausible claim for relief. Dismissal at this stage is improper.

### K. The Facts Contained in Claim XI – Regarding Trial Counsel's Ineffective Failure to Challenge and Rebut the Government's Use of Movant's Tattoos – State a Plausible Claim for Relief.

Referencing this Court's discovery order, the government argues that Claim XI should be dismissed because Movant "failed to allege sufficient facts to state a claim." Civ. Doc. 143 at 59. This is wrong. Movant has alleged facts that Granados testified that a person must kill to earn the MS-13 tattoo; that trial counsel did not object; that trial counsel did not present evidence – such as that from a gang expert or from government witness Rony Lopez – to counter Granados's false testimony. Civ. Doc. 24 at 244-47; Civ. Doc. 146 at 336-40. Movant has further presented argument that this deficient performance was prejudicial to Movant both at the guilt phase, where the government used the false evidence to argue that Movant earned his tattoos by killing, and at penalty, where the evidence allowed the jury to infer that he had killed prior to the Greensboro murders, lending improper support to the government's case in aggravation. Civ. Doc. 24 at 247-50; Civ. Doc. 146 at 340-43. The government does not dispute Movant's proffered facts; this is more than sufficient to state a plausible claim for relief.

The government also references its discovery response. Civ. Doc. 143 at 59. However, the government's discovery response offers only speculation regarding trial counsel's purported strategy. Civ. Doc. 52 at 94. Speculation is improper at this Rule 12(b)(6) stage. While it is true that counsel need not raise every possible conceivable trial objection, *see id.*, a reasonable lawyer would object to evidence tending to establish their client did additional murders beyond that

134

currently before the jury. Furthermore, the government's speculative argument that Rony Lopez's testimony that a person must kill or commit other "different types of crimes" to earn the MS tattoo is a double-edged sword, Civ. Doc. 52 at 93-94, mischaracterizes the nature of Movant's claim. The issue was whether Movant had killed before, and whether the jury was allowed to use Granados's evidence – wholly unchallenged – as proof that Movant had committed these, the murders in Los Angeles, or some other murders. As the United States Supreme Court has recognized, evidence of an additional murder is "the worst kind of bad evidence." *Wong v. Belmontes*, 558 U.S. 15, 26 (2009).

In support of this claim, Movant has proffered evidence from Dr. Thomas Ward, Ph.D., that the assertion that a gang member must commit murder to earn the right to get a tattoo of their gang's initials is an urban myth. Not one MS-13 member has ever told Dr. Ward this in his tenure researching the gang; if it were true, there would be significantly more MS-13 murders; and it would be difficult if not impossible for MS-13 members to police such a requirement. In Dr. Ward's experience, gang members get tattooed to show affiliation, not because they have committed a murder. Civ. Doc. 24 at 246; Civ. Doc. 146 at 338-39; Civ. Doc. 150, Appx. 244. The government offers nothing in rebuttal of these facts, so they must be assumed true.

On the contrary, Movant notes that the government appears to have argued conflicting theories regarding the so-called "earning" of the tattoos in its discovery response. When addressing Movant's claim of ineffectiveness regarding the tattoos, the government argued that Granados's tattoo testimony was relevant because the fact that "MS-13 rewarded its members with status symbols for killing was directly relevant to an element of an offense with which Umaña was charged: that Umaña had committed murder 'with the purpose of maintaining or enhancing'" his position in the gang. Civ. Doc. 52 at 93. However, in responding to Movant's Brady claim based

135

on the tattoos, the government argued that "Common sense, moreover, would tell the jury that anyone can go to a commercial tattoo parlor and ask for any tattoo they want, without killing anyone." Civ. Doc. 52 at 59. Movant is at a loss about how testimony that is false, according to common sense, can also be relevant to proving an element of VICAR murder. However, this seems to be an implicit concession that Dr. Ward's proffered evidence and opinion are accurate and that Granados's testimony was false.

Finally, while the government is correct that Granados did not tell the jury what Movant personally did to "earn" his tattoos (Civ. Doc. 52 at 94), the government most certainly did in closing arguments. *See* Civ. Doc. 24 at 248-50; Civ. Doc. 146 at 341-43. The government cannot disavow prejudice from trial counsel's failure to object and present countering evidence when the government repeatedly capitalized on these failures in argument. Movant has stated a plausible claim for relief and dismissal is improper.

### L. The Facts Contained in Claim XII – Regarding Prosecutorial Misconduct for Introducing Unredacted Exhibits Containing Information the Court Ruled Excluded – State a Plausible Claim for Relief.

The government's argument that Movant cannot "relitigate" three of his contentions here because he argued them on direct appeal must fail. *See* Civ. Doc. 143 at 90-91. This argument must fail. First, regarding the acquitted other crimes evidence in the transcript of Movant's statement, the Fourth Circuit's treatment of Movant's direct appeal claim cannot control here as it is impossible to know the grounds upon which the Circuit denied relief on his prosecutorial misconduct claim when only Judge Gregory, in dissent. *See* Civ. Doc. 143 at 58; Civ. Doc. 24 at 240-41 & n.54; Civ. Doc. 146 at 329-30 & n. 92. If the Circuit believed this was misconduct, but denied relief based on prejudice, Movant's claim is properly considered in 2255 in a cumulative prejudice analysis. *See* Claim XXX. Second, regarding the government's failure to redact the transcript of Parshall's interrogation of Arevalo, while it is true that Movant's appellate counsel

136

raised issues regarding vouching on direct appeal, appellate counsel did not complain about the government's improper failure to redact materials that this Court instructed the prosecutor to sanitize from the transcript. *See* Brief of Appellant, *U.S. v. Umaña*, No. 10-6 (4th Cir. 9/3/13) at 87-89. Third, regarding the government's presentation of testimony from Detective Small that Arevalo told him "that's your Lemon Grove shooter" when shown a photo of Movant in violation of procedural safeguards instituted by this Court, while the Fourth Circuit did address on appeal whether this hearsay violated the Confrontation Clause, *Umaña*, 650 F.3d at 349, it did not address Movant's argument here – whether the prosecutor committed misconduct by circumventing this Court's procedural safeguards.

The government's argument that the issues raised here are procedurally defaulted (if they were not previously litigated) because they were not raised on appeal (Civ. Doc. 143 at 91) also must be rejected. First, in response to the government's Motion to Dismiss, Movant amended this claim to add an allegation of appellate counsel's ineffectiveness. Civ. Doc. 146 at 350-51. As described above (*see* Claim IV) Movant could not have raised these allegations of appellate ineffectiveness in his 2016 Motion because appellate and initial 2255 counsel were the same. Movant's claim of appellate ineffectiveness is properly raised in 2255 and this Court can reach the merits of the ineffectiveness.

Movant has also raised this claim as one of trial counsel's ineffectiveness for failing to object and fully litigate this issue at the time of trial. Civ. Doc. 24 at 252 & n.56; Civ. Doc. 146 at 344 & n.96, 350-51. There are no bars to this Court's consideration of claims of ineffective assistance of trial counsel in 2255. *See Massaro*, *supra*.

Finally, to the extent this claim could have been, but was not, raised at trial or on direct appeal, this Court can reach the merits of Movant's underlying claims of prosecutorial misconduct

because his allegations of trial and appellate ineffectiveness also constitute cause and prejudice to excuse any default. *See Murray v. Carrier*, *supra*.

On the merits, the government's argument that it was not required to redact references to the acquitted conduct from the transcript of Movant's statement because that transcript was not among the proffered evidence that the Court held inadmissible (Civ. Doc. 143 at 92) is nonsensical. The fact that the government failed to include potentially objectionable evidence in its proffer should not exempt the government from abiding by the Court's clear ruling that the acquitted conduct was inadmissible. If the rule the government advances were correct, the government could simply avoid pretrial exclusionary rulings by providing courts with incomplete proffers. As explained in Claim X, the government's prejudice arguments are equally unavailing.

Regarding both the acquitted conduct issue, the incomplete redaction of Arevalo's interrogation, and the government's failure to adequately redact Exhibit 152, the government notes that trial counsel did not object or otherwise act in response to these government actions. Civ. Doc. 143 at 92, 94, 97. Movant would simply remind this Court that he has also asserted ineffective assistance of trial counsel regarding the acts and omissions in this claim.

Finally, regarding the specific comment in Exhibit 152, the government's attempt to minimize the prejudicial effect from the jury receiving that exhibit (Civ. Doc. 143 at 97) should be rejected. This Court has previously recognized the prejudicial impact of racist comments. *See*, *e.g.*, GPT 1050-51, 1061 (sustaining defense objection and finding probative value not substantially outweighed by risk of unfair prejudice of admission of proffered letter exhibit 167 that also contained inflammatory language against African-Americans, when there were four African-American people on the jury); Crim. Doc. 998 ("the Court finds especially troubling certain racially-charged statements written in Exhibits 167 and 169"). The government's reliance

138

on *United States v. Mohr*, 318 F.3d 613 (4th Cir. 2003) (Civ. Doc. 143 at 97) is misplaced. In Mohr, the Circuit held that the defendant police officer's racist comment "could not be redacted from the remainder of it without changing the meaning of that remark." *Id.* at 621. Movant's comment was irrelevant here.

Movant has proffered facts that state a plausible claim for relief. Dismissal at this stage is improper.

### M. The Facts Contained in Claim XIII – Regarding Trial Counsel's Failure to Seek Continuances of the Atkins Hearing and Trial – State a Plausible Claim for Relief.

Referencing this Court's prior discovery order, the government seeks dismissal of this claim because Movant "failed to allege sufficient facts to state a claim that his attorneys were deficient for declining to ask for additional continuances." Civ. Doc. 143 at 59. The government also references its prior discovery response, in which the government argued that trial counsel were not deficient for failing to request additional continuances because they reasonably believed that this Court would not grant such a request, having already denied a request for more time for the Atkins hearing and having stated that it believed counsel had sufficient time to prepare for trial. Civ. Doc. 52 at 98.

The government is wrong. While counsel's affidavits, cited by the government, do establish that counsel believed this Court would not grant a further request, they do not establish the reasonableness of failing to *ask* for more time[23] when it was apparent that counsel needed more

---

[23] Movant submits that the question is not whether counsel held a reasonable belief about what this Court might do in response to such a request, but whether it was reasonable for counsel not to ask. ABA Guideline 10.4(D) tasks "counsel at all stages" with the duty to "demand . . . all resources necessary to provide high quality legal representation. If such resources are denied, counsel should make an adequate record to preserve the issue for further review." ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases, 2003.

time to prepare. Indeed, in the same affidavits cited by the government, counsel describe the voluminous discovery that was "dropped on [them] right before trial"; the limited nature of their investigation, the fact that they "were left with very little to present to the capital jury about Mr. Umaña's life and background," and that they "wanted more time to prepare." Civ. Doc. 24, Appx. 23, ¶¶ 6-7; Civ. Doc. 150, Appx. 23, ¶¶ 6-7; *see also* Civ. Doc. 24, Appx. 24, ¶¶ 5-6, 9; Civ. Doc. 150, Appx. 24, ¶¶ 5-6, 9.

In its discovery response, the government also argues that Movant's allegations do not establish that he was prejudiced. Movant has addressed these allegations in his discussion of Claim I, supra, and incorporates them here.

Movant has proffered sufficient facts to state a plausible claim for relief. To the extent that the government does not dispute many of those facts – including the existence of and proffered testimony of the overwhelming majority of the lay witnesses and experts described in Claims I, II, and III – those facts must be taken as true. Dismissal is inappropriate at this pleading stage.





142





145





Case 3:16-cv-00057-MOC    Document 159    Filed 07/28/23    Page 152 of 188



147



148



Case 3:16-cv-00057-MOC     Document 159     Filed 07/28/23     Page 155 of 188



150





152







### Q. The Facts Contained in Claim XVII – Regarding Bias in the Venire – State a Plausible Claim for Relief.

The government relies entirely on this Court's Order denying discovery, Civ. Doc. No. 108, Mar 2022, and its own 2017 discovery response, Civ. Doc. 52. In doing so, the government highlights both the inapplicability of the Discovery response and Order here, and the procedural and logistical difficulties caused by the government's moving to hold the 2023 Motion in abeyance instead of filing a new response to that motion.



155

In denying discovery, the Court held that Movant's claim that "based on information and belief," the Plan for the Random Selection of Grand and Petit Jurors in the U.S. District Court for the Western District of North Carolina for 2007-2009, viewed alongside voter registration demographics and data compiled from Juror Qualification Questionnaires, that there is "an underrepresentation of distinct groups, including but not limited to African Americans, Hispanics/Latinos, and Asians in the grand and petit venires" is "speculative" and does not state a claim sufficient to warrant discovery from the Clerk of materials explaining the creation of the jury list and venire. Civ. Doc. No. 108 at 38-39. That Order, as explained in Section I, *supra.*, was based on the 2016 Motion. The 2023 Motion includes additional evidence from an expert witness who has conducted a statistical analysis of the Jury Plan and the venire demographics and has concluded that Movant's speculations are correct; the Plan does underrepresent distinct groups. Civ. Doc. 146 at 412-14, Civ. Doc. 150, Appx. 273 at 7-9. The Court's conclusion that Movant's allegations are speculative therefore no longer has application. That, of course, is notwithstanding the fact that the 2023 Motion has effectively nullified the 2016 Motion and the discovery order that stemmed from it.

The government's Discovery Response is similarly afflicted, arguing that Movant's allegations are conclusory and absent "*any* specific facts." Civ. Doc. No. 52 at 106. Because the 2023 Motion has substantially amended the allegations, not least to include expert opinion that confirms Movant's conclusions, the government's arguments are not applicable here as they effectively no longer exist. *See* Section I, *supra*.

Setting aside the inapplicability (or in fact non-existence) of the government's arguments, those arguments are also legally incorrect. The government argues that Movant's allegations are "insufficient to establish ineffective assistance of counsel". Civ. Doc. 52 at 106. Again, the

government improperly applies an evidentiary proof standard to this Rule 12(b)(6) proceeding. The government also mistakenly argues that Movant is required to show that "the jury would not have convicted Umaña or sentenced him to death if his trial counsel had launched a venire challenge. *See also Truesdale*, 142 F.3d at 755–56." Civ. Doc. No 52 at 107. In fact, Movant is required to state a plausible claim that either there is a *reasonable probability* the outcome of the proceeding – *i.e., here, jury selection* – would have been different, *Strickland,* 466 U.S. at 694 or that the fundamental fairness of his trial was undermined, *Weaver*, 582 U.S. 286 at 301. As already explained above, Movant has pled specific, factually supported allegations, that demonstrate that a "distinctive" segment of the community was "substantially underrepresented" in the venire as a result of "systematic exclusion" by way of an inartfully designed jury plan. *Duren v. Missouri*, 439 U.S. 357, 364 (1979); Civ. Doc. 146 at 410-16. Assuming those allegations to be true, he has pled a plausible claim that counsel were ineffective for failing to object to the composition of the venire. Dismissal for failure to state a claim is improper.

### R. The Facts Contained in Claim XVIII – *Regarding Batson* – State a Plausible Claim for Relief.

The government relies entirely on this Court's order denying discovery, Doc. Mar 2022, and its own 2017 discovery response. In doing so, the government highlights both the inapplicability of the Discovery response and order here, and the procedural and logistical difficulties caused by the government's moving to hold the 2023 Motion in abeyance instead of filing a new response to that motion.

While counsel made several *Batson* objections and this Court conducted the second-step of the *Batson* analysis by asking the government for its race-neutral reasons, Movant alleged that counsel were ineffective for failing to argue that the government's purported race-neutral reasons were pretextual, ask the Court to compare jurors struck to those who remained, present evidence

157

that the government and/or prosecutor had a pattern of race-based strikes, or conduct any "third-step" action to challenge the government's justifications. Civ. Doc. 24 at 310. Denying discovery related to Claim XVIII, the Court held that Movant's allegations were "based on speculation and factually unsupported." Civ. Doc. No. 108 43. The Court also held that the discovery requests themselves were overly broad. *Id.*

Movant's 2023 2255 Motion included the addition of several pages of facts detailing what the third-step of the *Batson* inquiry would have revealed had counsel conducted it. Civ. Doc. 146 at 418-22. To summarize, those allegations include:

- Statistical analysis showing "the Government's peremptory strikes targeted African Americans three times more than would be expected based on the racial composition of the venire. 'Happenstance is unlikely to produce this disparity.' *Miller-El v. Cockrell*, 537 U.S. 322, 342 (2003)." Civ. Doc. 146 at 419;

- A comparative analysis of the struck and seated jurors' answers revealing that several seated jurors provided similar answers to those the government identified as reasons to strike the *Batson*-relevant jurors, Civ. Doc. 146 at 419-20; and

- Historical evidence detailing the ineffectiveness of *Batson* in state prosecutions, the training provided to state prosecutors on how to "circumvent *Batson*," and that one of the government's prosecutors had been a state prosecutor at times relevant to those factors, Civ. Doc. 146 at 421.

In short, Movant has alleged, with factual support, details as to how the *Batson* third-step would have proceeded had counsel conducted it. *Snyder*, 552 U.S. at 478 (requiring all the circumstances be considered in at the third step of the Batson process). The Court's Discovery Order therefore is now inapplicable. *See also* Section I, *supra.*

The government also relies on its own Discovery Response, in which it argued that Movant had not provided "a single fact" suggesting that counsel's failure to perform the third step of their *Batson* challenges "would have been fruitful." Civ. Doc. No 52 at 108. As detailed above, Movant's 2016 2255 Motion provides extensive factually-supported allegations as to the *Batson* third-step evidence that would have been revealed had counsel conducted that step. The government's reliance on its nullified and inapplicable Discovery Response is misplaced and insufficient to support dismissal for failure to state a claim.

The government also argued in its discovery response that Movant had failed to properly allege prejudice, relying on a presumption of prejudice rather than "reasonable probability" prejudice as required of an ineffectiveness claim. *Id.* Again, the government's argument is superseded and nullified by Movant's 2023 2255 Motion, but also contrary to the weight of judicial opinion. As detailed in the 2023 2255 Motion, several courts have concluded that *Batson* errors are structural, and so prejudice is presumed. Civ. Doc. 146 at 422-21. In the alternative, Movant also alleged that prejudice resulting from a predicate *Batson* claim is assessed for whether the fundamental fairness of trial was undermined. *Id.* citing *Weaver*, 137 S. Ct. at 1911. In short, Movant has alleged prejudice as a result of counsel's failure to perform the *Batson* third-step. That allegation is supported by uncontested and uncontroverted facts. Those facts, and all reasonable inferences stemming from them, state a plausible claim of counsel's ineffectiveness. Dismissal for failure to state a claim is, therefore, improper.

### S. The Facts Contained in Claim XIX – Regarding Trial Counsel's Failure to Investigate and Introduce Mental Health Evidence to Contest the Admissibility and Credibility of Movant's Police Statements – State a Plausible Claim for Relief.

In urging this Court to dismiss this claim, the government offers rank speculation about trial counsel's purported strategies, which counsel have neither stated nor endorsed. *See* Civ. Doc.

159

143 at 72-73, 74. As demonstrated throughout this Reply, the government's speculation is improper. Because the government offers no evidence to rebut Movant's factual allegations, they must be credited as true at this Rule 12(b)(6) stage.

The government's speculation that trial counsel could have anticipated that the government would have responded with countering mental health evidence (Civ. Doc. 143 at 72) fails for at least two reasons. First, the fact that the Court ultimately found that Movant had not proven intellectual disability does not necessarily mean that the Court would not have credited Movant's experts regarding Movant's rights waiver had that evidence been presented in support of suppression. They are two separate issues and Movant's mental health impairments did not need to rise fully to the level of intellectual disability (even though he is intellectually disabled) to impact his ability to provide a knowing, voluntary, and intelligent waiver. Second, the government fails to address the component of this claim that alleges a failure to investigate. With a reasonable investigation, counsel would have had more expert testimony than just Drs. Olley and Weinstein to support their argument and would have had additional lay witness evidence to support their doctors' opinions regarding Movant's ability to provide a knowing, voluntary and intelligent waiver. *See* Civ. Doc. 146 at 425-29.

The government's further speculation that counsel would not have wanted to challenge the reliability of Movant's statement before the jury because it would have prompted the jury to read the statement, Civ. Doc. 143 at 74, must be rejected. If that were the standard, no trial attorney would ever contest the credibility of their client's statement before a jury.

Contrary to the government's contention, Civ. Doc. 143 at 73, mental health testimony would have been relevant and admissible to the question of whether Movant's waiver of his Miranda rights was knowing and intelligent and whether his statement was voluntary. The

160

"characteristics of the defendant" remain relevant to this inquiry. *See, e.g.*, *United States v. Cristobal*, 293 F.3d 134, 140 (4th Cir. 2002) (citing *United States v. Pelton*, 835 F.2d 1067, 1071 (4th Cir.1987)); *see also* Civ. Doc. 146 at 429.

Finally, the government's reliance on what this Court and the Fourth Circuit found *without the benefit of the testimony developed in 2255* (Civ. Doc. 143 at 73-74) again applies the wrong prejudice analysis for post-conviction. The question is not what the courts found without the befit of this evidence. The question is how the trial would have been different if counsel had performed effectively and this Court, the appellate court, and the jury had heard evidence that Movant did not know what he was doing when he allegedly waived his rights and submitted to interrogation.

Movant has plead a plausible claim for relief and summary dismissal is improper.

**T. The Facts Contained in Claim XX – Regarding the Denial of Movant's Right to Presence – State a Plausible Claim for Relief.**

**1. Dismissal of Jurors Based on Questionnaires.**

This Court's consideration of this claim is not barred by procedural default. Civ. Doc. 143 at 99. Appellate counsel's ineffectiveness constitutes cause and prejudice to overcome any purported default. Civ. Doc. 146 at 437. Moreover, Movant's allegation of ineffective assistance of trial counsel is properly raised in 2255 and not subject to any default. *See Massaro*, *supra.*

Contrary to the government's assertions (Civ. Doc. 143 at 99-100), Movant did not – and could not due to his incompetency – waive his right to presence at voir dire. *See*, *e.g.*, Civ. Doc. 71 at 2-13 (Supplemental/Amended claim that Movant was incompetent at trial and on direct appeal); Civ. Doc. 82 (counsel's request to stay these proceedings due to Movant's incompetence).

Finally, Movant's 2023 Motion refutes the government's allegations regarding prejudice. *See* Civ. Doc. 143 at 100. As Movant explained in his 2023 Motion, should this Court require him to prove a reasonable probability of a more favorable outcome, such prejudice is impossible to

161

meet at this pleading stage and may be proven by showing that counsel's deficient performance undermined "the fundamental fairness of the proceeding." *Weaver,* 137 S. Ct. at 1911. Civ. Doc. 146 at 434. Movant has stated a plausible claim for relief at this pleading stage.

### 2. Denial of Effective Mechanism to Communicate with Counsel at Trial.

The Court's consideration of this claim is not barred by procedural default. Civ. Doc. 143 at 100. This claim could not have been raised on direct appeal as it requires the development of facts outside the record. *See* Civ. Doc. 24 at 320; Civ. Doc. 146 at 435-36. To the extent it could have been raised on direct appeal, appellate counsel were ineffective. Civ. Doc. 146 at 437. Moreover, Movant's allegation of ineffective assistance of trial counsel is properly raised in 2255 proceedings and not subject to any default. *See Massaro*, *supra.*

Referencing this Court's discovery order, the government argues this claim should be dismissed because Movant has not alleged facts establishing either denial of right to presence or counsel's deficient performance. Civ. Doc. 143 at 100. However, in response to the government's motion to dismiss, Movant amended this claim to allege additional facts demonstrating how Movant's impairments, in conjunction with the denial of an interpreter to interpret attorney-client conversations, denied him the right to communicate with counsel to assist in his defense. Civ. Doc. 146 at 435-36. The government has neither addressed nor offered evidence to rebut these factual allegations, so they must be accepted as true at this stage. Moreover, the record is insufficiently developed due to trial counsel's ineffective failure to litigate this issue at trial. Dismissal is improper at this Rule 12(b)(6) stage.

### U. The Facts Contained in Claim XXI – Regarding the at-Trial Security Measures – State a Plausible Claim for Relief.

The Court's consideration of this claim is not barred by procedural default. Civ. Doc. 143 at 101. This claim could not have been raised on direct appeal as it requires the development of

facts outside the record. *See* Civ. Doc. 24 at 321; Civ. Doc. 146 at 437-38. To the extent it could have been raised on direct appeal, appellate counsel were ineffective. Civ. Doc. 146 at 440. Moreover, Movant's allegation of ineffective assistance of trial counsel is properly raised in 2255 and not subject to any default. *See Massaro*, *supra.*

Referencing this Court's discovery order, the government argues this claim should be dismissed because Movant failed "to plead sufficient facts to set forth a prima facie claim that he suffered prejudice from the imposed security measures, and even if so, such measures would be justified in light of" Umaña's "conduct and risk of harm to those in the courtroom and the public." Civ. Doc. 143 at 101 (citing Civ. Doc. 108 at 45). However, as Movant pled in his 2023 2255 Motion, Civ. Doc. 146 at 440, this Court's prohibition on interviewing the trial jurors (Civ. Doc. 56) prevents Movant from making more specific allegations of actual prejudice at this stage. If juror contact remains prohibited, an evidentiary hearing is necessary to develop this claim. Moreover, because trial counsel ineffectively failed to object to these security measures, the record is insufficiently developed to determine whether the security measures were justified and comparable to those employed in the trials of similarly situated defendants. Dismissal is improper at this Rule 12(b)(6) stage.

> V. Movant Has Stated a Plausible Claim That His 924(c) Convictions are Invalid, Requiring Vacatur of His Death Sentences (Claim 22).

This Court's prior Order, denying a motion to hold this action in abeyance pending the outcome of then-pending *Johnson* appellate cases, because Movant's VICAR murder convictions were crimes of violence under the "force clause" of § 924(c), *Umana v. United States*, 229 F. Supp. 3d 388, 397 (W.D.N.C. 2017); Civ. Doc. 46, does not control the resolution of this claim due to intervening law, including *Borden v. United States*, 141 S. Ct. 1817 (2021). *See* Civ. Doc. 111. Movant has stated a plausible claim for relief and dismissal is improper.

163

### 1. There are no procedural impediments to this Court's consideration of the merits of Mr. Umana's *Johnson/Davis* claim.

The government's contention that this claim is procedurally defaulted for failure to raise it on direct appeal (*see* Civ. Doc. 143 at 115-17) is wrong for at least three reasons. First, the Fourth Circuit has held that procedural default does not apply to *Johnson/Davis* claims because "*Davis* established a new rule of constitutional law made retroactive on collateral review." *United States v. Jackson*, 32 F.4th 278, 283 & n.3 (4th 2022); *see also* Civ. Doc. 131 at 54. Second, even if procedural default does apply, there is no question that the novelty of the claim constitutes "cause" to overcome default. *United States v. McKinney*, 60 F.4th 188, 195 (4th Cir. 2023) (relying on *Reed v. Ross*, 468 U.S. 1 (1984), holding that movant established cause when novel *Johnson* claim was filed within one year of *Johnson* decision and later supplemented under *Davis*). Further, Movant was prejudiced because his 924(c) & (j) convictions must be vacated under the new rule articulated in *Johnson* and its progeny.

Third, procedural default is excused because Movant is actually innocent of the 924(c) & (j) convictions because he is no longer guilty of the offenses post-*Davis* for the reasons discussed below. *See, e.g.*, *United States v. Adams*, 814 F.3d 178, 183 (4th Cir. 2016) (holding movant was actually innocent of 922(g) felon in possession of a firearm violation based on intervening change in the law; the movant was factually innocent "because he has shown that it is impossible for the government to prove one of the required elements of a § 924(g)(1) charge – that the defendant was a convicted felon at the time of the offense. This is so because [movant] was 'in fact' not a felon"). Several courts have relied on this reasoning, and actual innocence, to excuse procedural default of *Johnson/Davis* claims. *See, e.g.*, *United States v. Sweeney*, 833 F. App'x 395, 396-97 (4th Cir. 2021) (defendant actually innocent of 924(c) charge because it was predicated on attempted Hobbs Act robbery, which did not qualify as a "crime of violence"); *United States v. Reece*, 928 F.3d 630,

164

634 (5th Cir. 2019) (petitioner actually innocent of 924(c) charge because underlying offense of federal bank robbery conspiracy categorically failed to qualify as a "crime of violence"); *United States v. Bowen*, 936 F.3d 1091, 1108 (10th Cir. 2019) (parties agreed that petitioner was actually innocent of 924(c) offense because underlying offense of witness retaliation categorically failed to qualify as "crime of violence").

Considering *Davis*, there are no facts under which Movant could have been convicted of the 924(c) & (j) offenses. As demonstrated below, neither RICO conspiracy nor North Carolina murder qualify as a crime of violence. Therefore, "it is impossible for the government to prove one of the required elements" of 924(c) – the "crime of violence" element. *Adams*, 814 F.3d at 183. Movant is "actually innocent" of the 924(c) & (j) offense.

### 2. Movant's 924(c) & (j) convictions must be vacated.

Movant's 924(c) & (j) convictions were predicated on either RICO conspiracy or VICAR via North Carolina murder. Neither of these predicates qualifies as a 924(c) crime of violence. Therefore, the 924(c) & (j) convictions are invalid and must be vacated.

#### a. *Aggravated RICO conspiracy*

As the government correctly concedes (Civ. Doc. 143 at 117), the Fourth Circuit has held that aggravated RICO conspiracy is not a crime of violence. *Simmons v. United States*, 11 F.4th 239, 260 (4th 2021).

#### b. *VICAR murder*

As Movant has previously pled, at length, Movant's convictions for VICAR murder, by way of North Carolina murder, are not 924(c) crimes of violence because North Carolina murder is indivisible; North Carolina first-degree murder includes felony murder, which the Fourth Circuit has held does not constitute a 924(c) crime of violence; and North Carolina second-degree murder can be accomplished by recklessness or culpable negligence. Civ. Doc. 24 at 337-339; Civ. Doc.

91, at 11-26; Civ. Doc. 104, at 13-16; Civ. Doc. 111, at 4-13; Civ. Doc. 115, at 4-15; Civ. Doc. 146 at 453-55, 470-84, 512-20. Movant will not repeat those allegations here except to address specific errors by the government in its Motion to Dismiss.

> **i.** *VICAR only qualifies as a crime of violence if the elements of North Carolina murder satisfy the force clause.*

This Court can only look to the elements of North Carolina murder to determine whether Movant's VICAR offense qualifies as a 924(c) crime of violence. The government's reliance on *United States v. Keene* (Civ. Doc. 143 at 117) is misplaced. *Keene* did not involve a 924(c) offense and says nothing about how to consider § 924(c); thus, it plays no role in the analysis here. *United States v. Keene*, 955 F.3d 391 (4th Cir. 2020).

In *United States v. Mathis*, 932 F.3d 242 (4th Cir. 2019), the Fourth Circuit held that a VICAR offense only qualifies as a crime of violence if the elements of the underlying state offense satisfy the 924(c) crime of violence definition under the force clause. *Id.* at 263. The Fourth Circuit reinforced this holding in *United States v. Manley*, 52 F.4th 143 (4th 2022), where the Court only looked to the elements of the underlying state offense to determine whether the VICAR qualified as a crime of violence. *Id.* at 146. *Mathis* and *Manley* are binding precedent and control here – not *Keene*. Therefore, VICAR only qualifies as a crime of violence if the elements of North Carolina murder satisfy the force clause.

However, even if the government is correct that *Keene* applies and the jury was required to find both generic federal murder and North Carolina murder to convict of VICAR (Civ. Doc. 143 at 118), that is not what happened here. Movant's jury was never instructed that the VICAR offense could be predicated on generic murder. Rather, the jury was only instructed that it could find guilt on a VICAR offense based on the elements of North Carolina murder. GPT 1246; *see*

*generally* GPT 1248-1251. The VICAR conviction was solely predicated on North Carolina murder; therefore, the generic murder definition is both inapposite and inapplicable.

> ii. *The elements of North Carolina murder do not satisfy the force clause.*

Contrary to the government's citation of unpublished opinions (Civ. Doc. 143 at 123-24), the issue of whether North Carolina second-degree murder is a crime of violence satisfying the force clause for a 924(c) conviction is pending before the Fourth Circuit. *United States v. Moss*, No. 20-7101 (4th Cir.)

The government's assertions that it is Movant's burden to "establish that the jury found him guilty of his § 924(c) & (j) offenses based only on felony murder" (Civ. Doc. 143 at 124-125), is a repackaged argument Movant has already responded to (Civ. Doc. 112, at 10-11; Civ. Doc. 115, at 11-15). As demonstrated in the prior pleadings and this Court's own careful analysis (*see* Civ. Doc. 111, at 5-13; Civ. Doc. 115, at 6-13), North Carolina murder is indivisible, and the government's attempt to look beyond the elements of the offense must be rejected.

If North Carolina first-degree murder truly articulated separate, divisible crimes, then a hung jury or failure to reach a unanimous verdict on one theory of first-degree murder would not prevent a valid conviction on other theories of first-degree murder. But the North Carolina Court of Appeals held the exact opposite in *State v. Sargeant*, 696 S.E.2d 786 (N.C. Ct. App. 2010), and reversed a trial court's decision to accept a verdict on two theories of first degree while jurors were still deadlocked/deliberating on the third theory of first degree murder presented in the case. The North Carolina Supreme Court "agree[d] with the Court of Appeals majority that the [trial court's] procedure was erroneous." *State v. Sargeant*, 707 S.E.2d 192, 195 (N.C. 2011).

Likewise, the government cannot "mix and match" line items from the verdict sheet (see Civ. Doc. 143 at 125-26) to pretend that the jury found elements that it clearly *did not find* in

167

reaching Movant's VICAR convictions. *United States v. Lang*, 732 F.3d 1246, 1249 (11th Cir 2013).

### 3. Movant's allegations of ineffective assistance of counsel.

The government offers several arguments in response to Movant's allegations of ineffective assistance of counsel regarding to this claim. Civ. Doc. 143 at 127-28. As an initial matter, Movant notes that this claim is not defaulted and properly before the court, as demonstrated above. Thus, Movant's separate and distinct substantive allegations of ineffective assistance of counsel are irrelevant at this juncture because the Court can reach the merits of the underlying *Johnson/Davis* claim. However, contrary to the government's assertions, Movant's allegations of ineffectiveness were timely and not conclusory. Movant pled with great specificity the claim underlying the allegations of ineffectiveness and demonstrated how he was prejudiced because his convictions and death sentences should be vacated. Civ. Doc. 146 at 440-520. To the extent that Movant's allegation of ineffective assistance of appellate counsel was not pled in his 2016 2255 Motion, that was because he was represented by appellate counsel when the 2016 2255 Motion was filed, and counsel could not be expected to assert their own ineffectiveness. *See, e.g.,* Civ. Docs. 94-96. Movant cured this deficiency in his 2023 2255 Motion. Civ. Doc. 146 at 498.

Movant has alleged facts stating a plausible claim for relief. Dismissal is improper at this Rule 12(b)(6) stage.

### W. The Facts Contained in Claim XXIII – Regarding Trial Counsel's Ineffective Presentation of His Case to the DOJ – State a Plausible Claim for Relief.

In Claim XXIII, Movant alleged that trial counsel were ineffective in presenting his case to the Department of Justice when the Department of Justice was deciding whether to authorize this case for capital prosecution. Civ. Doc. 24 at 345-48; Civ. Doc. 146 at 520-23. In support of that claim, Movant proffered the facts that, *inter alia*, counsel was not prepared to present to the

168

DOJ; counsel told the prosecution that he had done nothing to prepare; and counsel asked if the DOJ presentation could be postponed and was told "no." *See id.*; *see also* Civ. Doc. 24, Appx. 79; Civ. Doc. 150, Appx. 79. Movant's 2255 Motion and 2023 2255 Motion demonstrate the vast universe of evidence that trial counsel could have obtained through reasonable investigation to present to the DOJ in support of non-authorization, including lay witness mitigation; mental health expert evidence; and evidence undermining the government's case in aggravation. *See* Claims I, II, III, IV, and V.

This Court should deny the government's request to dismiss Claim XXIII because the government misstates controlling law. The government, referencing this Court's discovery order, argues that this claim should be dismissed because there is no Sixth Amendment right to counsel at authorization. Civ. Doc. 143 at 65 (citing Civ. Doc. 108 at 47-49). The government is wrong. Movant's right to counsel attached when he was indicted, long before the authorization proceedings. *Brewer v. Williams*, 430 U.S. 387, 398 (1977). DOJ authorization protocols specifically mandated counsel's participation. *See* USAM Guidelines § 9-10.050. Having conferred the right to counsel during the authorization proceedings, the Sixth Amendment required that counsel be effective. *McMann v. Richardson*, 397 U.S. 759, 771, n. 14 (1970).

In a similar situation – a plea offer – the Supreme Court explicitly recognized that the Sixth Amendment's "protections are not designed simply to protect the trial" but "appl[y] to pretrial critical stages that are part of the whole course of a criminal proceeding . . .." *Lafler v. Cooper*, 566 U.S. 156, 165 (2012). Although there is no constitutional right to capital authorization proceedings, just as there is no right to pretrial plea negotiations, the government's creation of a process that provides specific procedures for reaching a capital authorization and mandating counsel's participation where capital authorization is approved, requires a defendant be provided

169

effective assistance of counsel. *See id.* (citing *Evitts*, 469 U.S. at 401; *Douglas v. California*, 372 U.S. 353 (1963)).

The Sixth Amendment right to counsel at the authorization stage also flows from the Supreme Court's jurisprudence recognizing circumstances where "the guiding hand of counsel . . . is essential to protect the indigent accused against an erroneous or improper prosecution." *Coleman v. Alabama*, 399 U.S. 1, 9 (1970). Thus, the Supreme Court has also found counsel's assistance necessary at preliminary hearings, *id.* at 8, and probation revocation sentencing proceedings, *Mempa v. Rhay*, 389 U.S. 128, 135 (1967). Movant has stated a plausible claim, and the government's motion to dismiss should be denied.

### X. The Facts Contained in Claim XXIV – Regarding Trial Counsel's Ineffectiveness in Plea Negotiations – State a Plausible Claim for Relief.

In Claim 24, Movant alleged that trial counsel were ineffective in negotiating a plea and advising him regarding a plea. Civ. Doc. 24 at 348-51; Civ. Doc. 146 at 524-27.

The government addresses only one of these theories in its Motion to Dismiss. *See* Civ. Doc. 143 at 75-78 (solely addressing the allegation that trial counsel were ineffective for failing to adequately communicate a plea offer to Movant). Further, the government initially outlines the requirements for relief regarding a claim of ineffective assistance in the plea. Civ. Doc. 143 at 76. These requirements need not be fulfilled for a claim to survive a Motion to Dismiss. *See Thompson v. United States*, No. 5:15-CR-58-BR, 2019 WL 2126691, at *1 (E.D.N.C. May 15, 2019) (citing *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015)). The motion to dismiss standard requires this Court to accept Movant's proposed facts as true, not challenge or interpret the facts. Contrary to the government's arguments, Movant has proffered sufficient factual basis, when assumed true, to support a plausible claim that counsel advised him ineffectively even if it

strikes this Court that "actual proof of those facts is improbable." *Twombly*, 550 U.S. at 556. This claim should not be dismissed.

The government failed to address Movant's second theory that, had trial counsel adequately investigated and developed evidence of trauma, brain damage, intellectual disability, and mental illness, there is a reasonable probability that they would have persuaded the Department of Justice to prosecute Movant non-capitally or offer a plea deal that did not require cooperation. As demonstrated throughout Movant's 2016 2255 Motion and 2023 2255 Motion, there was a wealth of mental health mitigation evidence readily-available to trial counsel had they simply followed up on all investigatory red flags, knocked on doors that were literally in front of them, and conducted a constitutionally-adequate investigation into both his background and mental health. Counsel had none of this evidence when they presented Movant's case to the DOJ before capital authorization, *see* Claim XIII, and had only a small snippet of this evidence – the paltry evidence that formed the basis of their presentations at the *Atkins* hearing and trial – as they continued to negotiate as trial approached. As demonstrated above, *see* Claims I, II, III, and IV the evidence that trial counsel did not have but which was developed in these 2255 proceedings; wholly changes the picture of Movant's life history and mental health. There was a reasonable probability of a non-capital disposition to this matter had counsel performed effectively. Movant has stated a plausible claim, and the government's motion to dismiss should be denied.

### Y. The Facts Contained in Claim XXV – Regarding the DOJ's Unconstitutional Decision to Seek Death Based on Race and Geography – State a Plausible Claim for Relief.

The Court's consideration of this claim is not barred by procedural default. Civ. Doc. 143 at 101. This claim could not have been raised on direct appeal as it requires the development of facts outside the record. *See* Civ. Doc. 24 at 352-53; Civ. Doc. 146 at 527-31. To the extent it could have been raised on direct appeal, appellate counsel were ineffective (and conflicted from raising

171

their own ineffectiveness on the initial Motion). Civ. Doc. 146 at 531. Moreover, Movant's allegation of ineffective assistance of trial counsel is properly raised in 2255 and is not subject to any default. *See Massaro*, *supra.*

Referencing this Court's discovery order, the government argues that this claim should be dismissed because Movant failed to state a prima facie claim. Civ. Doc. 143 at 101. This misapplies the standard applicable at the motion to dismiss stage. In assessing whether Movant has stated a claim for which relief can be granted, Rule 12(b)(6), the Court assumes all of Movant's factually supported allegations to be true and resolves all reasonable inferences therefrom in Movant's favor, unless they are conclusively disproven by the record. *Iqbal*, 556 U.S. at 679; *Nemet*, 591 F.3d at 255; *see also Hall*, 846 F.3d at 765 ("When ruling on a motion to dismiss, courts must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff."). The government does not contest Movant's facts in support of this claim. Thus, Movant's factual allegations must be presumed true. This alone is sufficient to state a plausible claim for relief.

However, in response to the government's motion to dismiss, Movant amended this claim to allege additional facts of the racial impetus and effect behind the DOJ's charging decision and prior counsel's ineffectiveness. Specifically, Movant amended with the declaration of statistician Jeffrey Martin, showing that the DOJ's decision to charge Movant federally in the Western District, instead of allowing this case to proceed in Guilford County, resulted in a jury venire that was statistically significantly more white than Movant would have been afforded had this case remained a state prosecution. Civ. Doc. 146 at 529; Civ. Doc. 150, Appx. 273. The government has neither addressed nor offered evidence to rebut these factual allegations, so they must be accepted as true at this stage.

172

To the extent that Movant has not proffered further specific facts demonstrating the DOJ's treatment of similarly situated individuals or the bad faith of the prosecution here (Civ. Doc. 52 at 130-31), that is information that is uniquely in the government's possession. The record is insufficiently developed due to trial counsel's ineffective failure to litigate this issue at trial. Dismissal is improper at this Rule 12(b)(6) stage.

### Z. The Facts Contained in Claim XXVI – Regarding Movant's Vienna Convention Rights and Related Ineffective Assistance of Counsel and Prosecutorial Misconduct – State a Plausible Claim for Relief.

The Court's consideration of this claim is not barred by procedural default. *See* Civ. Doc. 143 at 102. As an initial matter, Movant has presented a claim that his trial counsel were ineffective for failing to investigate or advocate for Movant's rights under the Vienna Convention to Guatemalan consular assistance. Civ. Doc. 24 at 366-72; Civ. Doc. 146 at 544-50. His claim of trial counsel's ineffectiveness is properly before this Court in 2255 and is not subject to default. *See Massaro*, supra.

Because of trial counsel's ineffective assistance, no portion of this claim was raised at trial. As the issues were neither preserved nor factually developed in the trial court, appellate counsel was precluded from raising these issues on direct appeal. *See Bousley*, supra.

However, to the extent this Court may find that Movant's separate and distinct underlying Constitutional and Article 36 claims are subject to procedural default, Movant can demonstrate cause and prejudice. First, the ineffectiveness of Movant's trial and appellate counsel constitutes cause and prejudice to overcome any default. *See Murray v. Carrier*, *supra*. As demonstrated in the 2255 Motion (Civ. Doc. 24 at 366-72; Civ. Doc. 146 at 544-50), Movant's trial counsel were ineffective for failing to investigate or advocate for Movant's rights under the Vienna Convention to Guatemalan consular assistance. Likewise, as demonstrated in the 2023 2255 Motion (Civ. Doc.

146 at 551), Movant's appellate counsel were ineffective for failing to raise this claim on direct appeal to the extent it was available in the appellate record.

Alternatively, the government's bad faith constitutes cause. *See Murray*, 477 U.S. at 488 (1986); *Amadeo v. Zant*, 486 U.S. 214, 223 (1988). As demonstrated in Claims VI & VII, the government withheld information about the circumstances of Movant's birth and his actual Guatemalan birth certificate until shortly before trial, preventing counsel from securing assistance from the Guatemalan consulate.

As with all of Movant's ineffective assistance of counsel claims, the government again offers speculation about trial counsel's purported strategy for failing to request Guatemalan consular assistance. Civ. Doc. 143 at 103-04. Such speculation is improper and meaningless at this stage.

The government's complaint that Movant has failed to allege sufficient facts demonstrating prejudice (Civ. Doc. 143 at 104) is addressed by Movant's 2023 Motion. Although the 2016 2255 Motion offered some argument regarding prejudice, Civ. Doc. 24 at 371, the 2023 2255 Motion offered more. In the 2023 Motion, Movant explained not only that there was a wealth of mitigating evidence in Guatemala that the consulate could have helped him obtain, Civ. Doc. 146 at 541-42, but that the consulate from which his counsel sought assistance represented a conflicted foreign government, actively working with the United States government to secure Movant's conviction. *Id.* at 543-44, 546-47; Civ. Doc. 24, Appx. 28; Civ. Doc. 150, Appx. 28.

Movant has pled sufficient facts to allege a plausible claim for relief. The government's motion to dismiss should be denied.

174

**AA.** **The Facts Contained in Claim XXVII – Regarding Trial Counsel's Failure to Object to Preserve Certain Enumerated Errors for Appellate Relief – State a Plausible Claim for Relief.**

In assessing whether Movant has stated a claim for which relief can be granted, Rule 12(b)(6), the Court assumes all of Movant's factually supported allegations to be true and resolves all reasonable inferences therefrom in Movant's favor, unless they are conclusively disproven by the record. *Iqbal*, 556 U.S. at 679; *Nemet*, 591 F.3d at 255; *see also Hall*, 846 F.3d at 765 ("When ruling on a motion to dismiss, courts must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff."). Contrary to the government's assertions (Civ. Doc. 143 at 79-80), Movant need not *prove* his claims at this stage, but simply that he has stated a plausible claim for relief. Dismissal is improper.

**BB.** **The Facts Contained in Claim XXVIII – Regarding the Eighth Amendment's Prohibition on Execution of Individuals with Brain Damage and Other Mental Impairments – State a Plausible Claim for Relief.**

The government's argument that this claim fails as a matter of law (Civ. Doc. 143 at 105) should be rejected. In his 2255 Motion, Movant presented the legal argument that the Eighth Amendment bars the execution of individuals with "brain damage, trauma, and low intelligence that results in impaired cognition, judgment, impulse-control, and decision-making." Civ. Doc. 24 at 374-76; Civ. Doc. 146 at 552-55. Movant's 2255 Motion further contains extensive factual proffer (backed by expert declarations/affidavits/reports) that Movant suffers from these impairments. Civ. Doc. 24 at Claims I, II, III, & IV; Civ. Doc. 146 at Claims I, II, III, & IV. For all the reasons stated in the prior pleadings and this Opposition, this Court should find Movant ineligible for the death penalty based upon his impairments or, at minimum, allow for further evidentiary development of this claim. Dismissal at this stage is premature.

There are no procedural bars to this Court's consideration of this claim. To the extent that this legal claim and its factual basis were available to trial and/or direct appeal counsel, trial and/or

175

direct appeal counsel's ineffectiveness constitutes cause to overcome any default. Trial and appellate counsel should have known about the existence of this claim. For example, in August 2006 (nearly four years before Movant's trial), the American Bar Association issued Recommendation 122A, which stated that "Defendants should not be executed or sentenced to death if, at the time of the offense, they had a severe mental disorder or disability that significantly impaired their capacity (a) to appreciate the nature, consequences or wrongfulness of their conduct, (b) to exercise rational judgment in relation to conduct, or (c) to conform their conduct to the requirements of the law." Available at: https://www.americanbar.org/groups/crsj/projects/death_penalty_due_process_review_project/se vere-mental-illness-initiative/. *See also* "Associations concur on mental disability and death penalty policy," Monitor on Psychology, Vol. 38, No. 1 (Jan. 2007) (noting policies of ABA, American Psychological Association, and American Psychiatric Association against death penalty for individuals with severe mental illness) available at: https://www.apa.org/monitor/jan07/associations.

Capital counsel have a duty to "consider all legal claims potentially available" and "thoroughly investigate the basis for each potential claim before reaching a conclusion as to whether it should be asserted." ABA Guidelines, 2003, Guideline 10.8 – The Duty to Assert Legal Claims.

Movant was prejudiced by prior counsel's failure to raise this claim as there is a reasonable probability that this Court (or the appellate courts) would have vacated Movant's death sentence on this ground had it been litigated.

Alternatively, because Movant is severely mentally ill and those with severe mental illness should be excluded from death-eligibility, Movant has shown that he is actually innocent of the

death penalty. *See* III(C)(3), *supra*; *Sawyer v. Whitley*, 505 U.S. 333, 336 (1992). The government asserts that Movant cannot prove that his impairments make him ineligible for the death penalty because the government's trial experts "disagreed sharply" with Movant's trial experts. Civ. Doc. 143 at 106. The government's argument fails to account for the wealth of expert evidence that Movant has proffered (supported by declarations/affidavits/reports) in support of his 2255 motion. Those experts' opinions have not yet been subject to a hearing, adversarial testing, or credibility determinations. At this juncture, the record is silent on whether the government can undermine or otherwise rebut Movant's proffered evidence of brain damage, low IQ, and trauma, and this Court must accept Movant's factual allegations as true.

Moreover, contrary to the government's assertion (not backed up by any expert evidence), Dr. Gur's post-conviction findings regarding brain damage (Civ. Doc. 24, Appx. 29; Civ. Doc. 150, Appx. 29) are *supported* by the testimony of the government's rebuttal trial expert, Dr. Mayberg. Both Dr. Gur and Dr. Mayberg found that Movant's frontal lobes are hyperactive at rest. PPT[28] 775-76; Civ. Doc. 24, Appx. 29 at 2-3; Civ. Doc. 150, Appx. 29 at 2-3. After Dr. Mayberg testified that she could not determine if the hyperactivity of the frontal lobe was normal without a quantitative analysis (PPT 779), Dr. Gur performed a quantitative analysis in post-conviction and, based on that analysis, explained that the hyperactive frontal lobe at rest was abnormal and would shut down when the damaged amygdala fired. Civ. Doc. 24, Appx. 29 at 4; Civ. Doc. 150, Appx. 29 at 4. The brain damage that both Dr. Mayberg and Dr. Gur *agree on* would make Movant unable to modulate his response to a clear threat. Civ. Doc. 24, Appx. 29 at 3; Civ. Doc. 150, Appx. 29 at 3. This makes him less capable than a normal person and very similar to the class of intellectually

---

[28] Movant refers to the Guilt Phase Transcripts as "GPT" and the Penalty Phase Transcripts as "PPT" followed by the appropriate page number.

disabled people discussed in *Atkins*. This Court should recognize that the Eighth Amendment excludes from death-eligibility defendants with severe mental illness like Movant, especially when both parties agree on the facts that prove brain damage.

> **CC.** **Movant's Claims of Cumulative Error (Claims 29 and 30) Are Plausible on Their Face.**

The government's argument that Movant's claims of cumulative error (Claims 29 and 30) should be dismissed because they fail as a matter of law (Civ. Doc. 143 at 108) should be rejected. At a minimum, Movant has stated prima facie claims for relief that require not dismissal but further evidentiary development, and briefing. It is premature at this stage of the proceedings – when the Rules Governing 2255 Proceedings, the Federal Rules of Civil Procedure, and fundamental due process require further development of Movant's claims – to determine whether the cumulative effect of the errors asserted was prejudicial. As demonstrated throughout this Opposition, the government's reliance on this Court's discovery order (Civ. Doc. 143 at 111) is misplaced. Movant has stated prima facie claims of both trial counsel ineffectiveness and prosecutorial violation of *Brady* and its progeny requiring relief or, at minimum, further development.

> **DD.** **The Facts Contained in Claim LIX – Regarding the Invalidity of Movant's Felon in Possession Conviction Following *Rehaif* – State a Plausible Claim.**

> **1. There are no bars to this Court's consideration of this claim.**

The government's argument that this claim is procedurally defaulted (Civ. Doc. 143 at 134) must be rejected. *See* Civ. Doc. 105. The Fourth Circuit held in *United States v. Waters*, 64 F.4th 199, 201 (4th Cir. 2023), that *Rehaif v. United States,* 139 S. Ct. 2191 (2019), applies retroactively on collateral review through an initial 2255 Motion because it "announced a new substantive rule that 'narrow[s] the scope of a criminal statute by interpreting its terms.'" Accordingly, procedural

default should not apply to this claim. *See United States v. Jackson*, 32 F.4th 278, 283 & n.3 (4th 2022) (declining to apply procedural default to *Davis* claim for same reason).

Alternatively, if procedural default does apply, Movant can establish cause and prejudice. Because the Supreme Court "overturn[ed] the long-established interpretation" of §922(g), which was "used in thousands of cases for more than 30 years," and on which the Circuit Courts were unanimous, *see Rehaif*, 139 S. Ct. at 2201 (Alito, J., dissenting), Mr. Umaña's can demonstrate cause due to the novelty of the claim. *See Reed v. Ross*, *supra.*

The government's reliance on *Whiteside* (Civ. Doc. 143 at 132) must be rejected. There was no Circuit split on the *Rehaif* issue at the time of Movant's direct appeal. *See Rehaif*, 139 S. Ct. at 2201 (Alito, J. dissenting). And the *Rehaif* issue was not merely "unacceptable to [Mr. Umaña's] particular court at that particular time." *Bousley*, 523 U.S. at 623. Instead, the issue was unacceptable to all courts "for more than 30 years." *See Rehaif*, 139 S. Ct. at 2201 (Alito, J., dissenting) (emphasis added); *United States v. Rehaif*, 888 F.3d 1138, 1145 (11th Cir. 2018) ("And no court of appeals has required proof of the defendant's knowledge of his prohibited status under any subsection of §922(g)."), *overruled* by 139 S. Ct. 2191 (2019). Even if some defendants raised the issue before *Rehaif*, that alone does not prove the knowledge-of-status argument was reasonably available in the face of widespread and longstanding contrary authority. *See United States v. Mitchell*, 209 F.3d 319, 322 (4th Cir. 2000) (knowledge of possession, without requiring knowledge of status, "has been applied without exception by this and other circuits when interpreting §924(a)(2)'s application to subsection (g) firearm possession crimes" (emphasis added)). *Bousley*'s limitation on cause for default is simply not applicable here.

In the event this claim is not considered novel under *Ross*, prior counsel's ineffectiveness constitutes cause and prejudice to overcome any purported default. Prior counsel at all stages could

179

have no strategic basis for failing to raise a reasonably available claim, provided objectively deficient performance by failing to do so, and thereby prejudiced Mr. Umaña. Counsel, who raised claims regarding Mr. Umaña's intellectual and cognitive functions, could have no reasonable basis for failing to raise a reasonably-available, substantial claim that Mr. Umaña did not have adequate knowledge of his immigration status and its consequences. And Mr. Umaña made the requisite showing of prejudice. His amended *Rehaif* claim alleges that constitutional errors occurred based on omission of the knowledge-of-status element from his indictment, evidence at trial, jury instructions, and jury findings. Civ. Doc. 89, at 4, ¶9; Civ. Doc. 146, at 562-63.

Finally, conviction and sentence under §§922(g) and 924(a), without proof of the requisite knowledge element, amounts to conviction "for an act that the law does not make criminal. There can be no room for doubt that such a circumstance 'inherently results in a complete miscarriage of justice' and 'presents exceptional circumstances' that justify collateral relief under [28 U.S.C.] § 2255." *Davis v. United States*, 417 U.S. 333, 346-347 (1974).

### 2. Merits.

In response to the factual averments of Movant's *Rehaif* claim (Civ. Doc. 89 at 5-7; Civ. Doc. 146 at 563-65), the government points to several items of record evidence to argue that Movant cannot show he was unaware of his immigration status that made him a prohibited person. Civ. Doc. 143 at 128-29, 135. In assessing whether Movant has stated a claim for which relief can be granted, Rule 12(b)(6), the Court assumes all of Movant's factually supported allegations to be true and resolves all reasonable inferences therefrom in Movant's favor, unless they are conclusively disproven by the record. *Iqbal*, 556 U.S. at 679; *Nemet*, 591 F.3d at 255; *see also Hall*, 846 F.3d at 765 ("When ruling on a motion to dismiss, courts must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the

180

plaintiff."). These facts do not conclusively disprove Movant's allegations but instead create a material issue of disputed fact. Dismissal is improper at this Rule 12(b)(6) stage.

WHEREFORE, for the reasons summarized above this Court should deny the government's motion to dismiss.

Respectfully submitted,

*/s/ Kelly D. Miller*
KELLY D. MILLER
Asst. Federal Public Defender
Federal Public Defender
Middle District of Pennsylvania
100 Chestnut Street, Third Floor
Harrisburg, PA 17101
Tel: 717-782-3843
Fax: 717-782-3966
kelly_miller@fd.org

Dated: July 28, 2023

181

**CERTIFICATE OF SERVICE**

I, Kelly D. Miller, hereby certify that I have electronically filed the foregoing document with the Clerk of Court using the CM/ECF system and a copy of the foregoing document has been served this day upon the following via CM/ECF:

Anthony J. Enright
Assistant United States Attorney
Suite 1650, Carillon Building
227 West Trade Street
Charlotte, NC 28202
anthony.enright@usdoj.gov

*/S/ KELLY D. MILLER*
KELLY D. MILLER
Asst. Federal Public Defender
Federal Public Defender
Middle District of Pennsylvania
100 Chestnut Street, Third Floor
Harrisburg, PA 17101
Tel: 717-782-3843
Fax: 717-782-3966
kelly_miller@fd.org

Dated: July 28, 2023

182