# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### Charlotte Division

|  |  |
|---|---|
| ALEJANDRO UMAÑA,<br>                    Movant, | 3:16-CV-00057-MOC |
| v. | § 2255 PROCEEDING |
| UNITED STATES,<br>                    Respondent. | HON. MAX O. COGBURN, JR. |

**MOVANT'S OPPOSITION TO THE GOVERNMENT'S MOTION TO DISMISS/REPLY PURSUANT TO RULE 5 OF THE RULES GOVERNING SECTION 2255 PROCEEDINGS**

*/s/ Kelly D. Miller*
KELLY D. MILLER
Asst. Federal Public Defender
Federal Public Defender
Middle District of Pennsylvania
100 Chestnut Street, Third Floor
Harrisburg, PA 17101
Tel: 717-782-3843
Fax: 717-782-3966
kelly_miller@fd.org

Dated: January 2, 2026

# TABLE OF CONTENTS

I.    Reply to the Government's Statement of Facts ............................................................. 1

II.    Statement of Relevant Procedure................................................................................ 4

III.    Overarching Legal Issues............................................................................................ 8

A.    The Government's Motion to Dismiss Misstates and Misapplies the Applicable Standard of Review.................................................................................................................... 8

    1.    The Government misstates the controlling standard of review. ........................ 8

    2.    The Rules Governing 2255 Cases and the Fourth Circuit's Application of Those Rules Clearly Delineate the Appropriate Standard of Review. ............................................. 11

B.    Clarification of Procedural Default and Substantive Claims for Relief. .............. 16

    1.    The government must go beyond bare conclusory statements to adequately meet its burden of asserting procedural bars. ................................................................................. 16

    2.    The necessary elements of Movant's substantive claims. ............................... 21

C.    This Court's 2022 Discovery Order Does Not Control the Motion to Dismiss.... 25

D.    The Mootness of Movant's Capital Penalty Phase and *Atkins*-related Claims..... 27

E.    Movant's Amended Claims are Timely.................................................................. 30

IV.    Arguments on Specific Claims for Relief................................................................. 31

A.    Claims Related to the Jury. .................................................................................... 31

i

4.    The Facts Contained in Claim XVII – Regarding Underrepresentation of Distinct Groups in the Venire – State a Plausible Claim for Relief. .................................................. 47

5.    The Facts Contained in Claim XVIII – Regarding *Batson* – State a Plausible Claim for Relief. ........................................................................................................ 49

B.    Other Claims Pertaining to the Guilt Phase in Whole or in Part. ......................... 54

1.    The Facts Contained in Claim II – Regarding Trial Counsel's Ineffectiveness in Investigating, Developing, and Presenting Mental Health Evidence – State a Plausible Claim for Relief. ................................................................................................... 54

2.    The Facts Contained in Claim III – Regarding Counsel's Ineffectiveness in Investigating and Presenting Evidence at the *Atkins* Hearing – State a Plausible Claim for Relief. ................................................................................................... 71

3.    Movant Has Stated a Plausible Claim That He Is Intellectually Disabled and Appellate Counsel Ineffectively Litigated This Issue on Direct Appeal (Claim IV). .......... 82

4.    The Facts Contained in Claim VI.C – Regarding the Prosecution's Violation of its *Brady* Obligations Regarding the *Atkins* Determination  – State a Plausible Claim for Relief. ................................................................................................... 95

5. The Facts Contained in Claim VII.B and VII.C – Regarding the Prosecution's Presentation of Materially Misleading and/or False Evidence and Argument at the *Atkins* Hearing and at Trial – State a Plausible Claim for Relief....................................................... 101

6. The Facts Contained in Claim VIII – Regarding Trial and Appellate Counsel's Ineffective Litigation of the Government's Use of His Jail Letters – State a Plausible Claim for Relief. ................................................................................................................... 110

7. The Facts Contained in Claim XI – Regarding Trial Counsel's Ineffective Failure to Challenge and Rebut the Government's Use of Movant's Tattoos – State a Plausible Claim for Relief. ................................................................................................................... 113

8. The Facts Contained in Claim XIII – Regarding Trial Counsel's Failure to Seek Continuances of the *Atkins* Hearing and Trial – State a Plausible Claim for Relief. ......... 115

9. The Facts Contained in Claim XX – Regarding the Denial of Movant's Right to Presence – State a Plausible Claim for Relief.................................................................... 117

10. The Facts Contained in Claim XXI – Regarding the at-Trial Security Measures – State a Plausible Claim for Relief. .................................................................................. 118

11. Movant Has Stated a Plausible Claim That His 924(c) Convictions are Invalid (Claim XXII). ................................................................................................................... 119

12. The Facts Contained in Claim XXVI – Regarding Movant's Vienna Convention Rights and Related Ineffective Assistance of Counsel and Prosecutorial Misconduct – State a Plausible Claim for Relief. ............................................................... 121

13. The Facts Contained in Claim XXVII – Regarding Trial Counsel's Failure to Object to Preserve Certain Enumerated Errors for Appellate Review – State a Plausible Claim for Relief. ...................................................................................................... 123

14. Movant's Claims of Cumulative Error (Claims XXIX and XXX) are Plausible on Their Face. ............................................................................................................... 123

15. The Facts Contained in Claim LIX – Regarding the Invalidity of Movant's Felon in Possession Conviction Following *Rehaif* – State a Plausible Claim. .................... 124

C. Ineffective Assistance of Appellate Counsel Allegations.................................. 126

1. The appellate ineffectiveness allegations support plausible claims for relief. 127

2. The appellate ineffectiveness allegations are timely. .................................... 128

3. The claims are neither moot nor conclusory.................................................. 133

D. Currently Moot Claims that Pertain Solely to Movant's Commuted Death Sentences. ...................................................................................................................... 135

1. The Facts Contained in Claim I – Regarding Trial Counsel's Ineffectiveness in Investigating and Presenting Lay Evidence – State a Plausible Claim for Relief. ............. 135

2. The Facts Contained in Claim V – Regarding Counsel's Ineffectiveness in Investigating and Presenting Evidence Challenging Movant's Participation in the Los Angeles Homicides – State a Plausible Claim for Relief. ................................................ 154

3. The Facts Contained in Claim VI.A and VI.B – Regarding the Prosecution's Violation of its *Brady* Obligations Regarding the Unadjudicated Homicides Used in Aggravation – State a Plausible Claim for Relief. .............................................................. 167

iv

4. The Facts Contained in Claim VII.D – Regarding the Prosecution's Presentation of Materially Misleading and/or False Evidence and Argument Regarding the Unadjudicated Homicides Used in Aggravation – State a Plausible Claim for Relief. ............................. 171

5. The Facts Contained in Claim IX – Regarding Counsel's Ineffectiveness for Failing to Present Movant's Apology Note to the Jury – States a Plausible Claim for Relief. ................................................................................................. 177

6. The Facts Contained in Claim X – Regarding Counsel's Failure to Seek Redactions to Prevent the Jury from Hearing About Acquitted Other Crimes Evidence This Court Ruled Excluded – State a Plausible Claim for Relief. ............................................. 178

7. The Facts Contained in Claim XII – Regarding Prosecutorial Misconduct for Introducing Unredacted Exhibits Containing Information the Court Ruled Excluded – State a Plausible Claim for Relief. ................................................................................. 179

8. The Facts Contained in Claim XIX – Regarding Trial Counsel's Failure to Investigate and Introduce Mental Health Evidence to Contest the Admissibility and Credibility of Movant's Police Statements – State a Plausible Claim for Relief. .............. 183

9. The Facts Contained in Claim XXIII – Regarding Trial Counsel's Ineffective Presentation of His Case to the DOJ – State a Plausible Claim for Relief. ........................ 185

10. The Facts Contained in Claim XXIV – Regarding Trial Counsel's Ineffectiveness in Plea Negotiations – State a Plausible Claim for Relief. ........................ 186

11. The Facts Contained in Claim XXV – Regarding the DOJ's Unconstitutional Decision to Seek Death Based on Race and Geography – State a Plausible Claim for Relief. ................................................................................................. 188

v

12. The Facts Contained in Claim XXVIII – Regarding the Eighth Amendment's Prohibition on Execution of Individuals with Brain Damage and Other Mental Health Impairments – State a Plausible Claim for Relief...................................................... 189

Artificial Intelligence Certification................................................................. 1933

Certificate of Service ...................................................................................... 1944

Movant, Alejandro Umaña, through undersigned counsel, provides this Opposition to the Government's Motion to Dismiss/Reply Pursuant to Rule 5 of the Rules Governing Section 2255 Proceedings, and states as follows:

## I.     REPLY TO THE GOVERNMENT'S STATEMENT OF FACTS

The government's Statement of Facts describes the facts underlying Movant's convictions. However, motions brought under 28 U.S.C. § 2255 necessarily involve facts outside the trial record; therefore, the government's Statement of Facts is startlingly incomplete.

Because the government has not alleged facts to dispute or contradict most of Movant's factual allegations, and because those factual allegations are extensive, Movant does not now restate them in full. But, briefly, Movant's 2023 Amended 2255 Motion[1] (hereinafter, the "Operative 2255 Motion," *see* Civ. Doc. 179 at 9 (deeming 2023 Amended 2255 Motion the operative petition)) and supporting exhibits, *see* Civ. Docs. 147, 150, 163-65, tell a different story from that advanced by the government. Movant's pleadings describe trial counsel who were overwhelmed by the sheer volume of discovery in this case and the complexities of conducting an international investigation into their client's background, and who failed to conduct the basic investigation necessary not just for the pre-trial *Atkins* proceeding and penalty phase, *see* Civ. Doc. 146 at Claims I-III, V, VIII, XI, XXIII, XXVI, XXX, but also to present a cogent mental health theory of defense at the guilt phase, *see id.* at Claim II.F, and otherwise hold the government to its burden of proof and ensure their client's trial and convictions were free from constitutional error.

---

[1] Movant's 2023 Amended 2255 Motion was filed publicly and redacted at Civ. Doc. 148 and sealed and unredacted at Civ. Doc. 146. The government's Motion to Dismiss was filed publicly and redacted at Civ. Doc. 189 and sealed and unredacted at Civ. Doc. 187. For ease of reference, Movant will cite to the sealed versions of these documents in this pleading.

As a result of counsel's deficient investigation, trial counsel's knowledge of their client's background largely depended on one family member, Movant's father; and trial counsel failed to develop expert mental health evidence that would have demonstrated Movant's inability to form the specific intent necessary to support his convictions. *See id.* (particularized allegations regarding deficient stewardship of mental health evidence at guilt phase); *see also generally id.* at Claims I, II, III (regarding trial counsel's overall failure to conduct investigation necessary to develop collateral information upon which mental health experts routinely rely and consequent failure to develop expert mental health testimony).

Undeveloped evidence – the factual basis of which the government does not dispute here – included firsthand accounts of over 29 family members, neighbors, and friends showing that Movant's father presented a self-serving picture to trial counsel, and, in fact, brutally abused Movant's mother and Movant, *id.* at Claim I; that Movant's father drugged Movant's mother with Rohypnol during her pregnancy with Movant, *id.* at Claim I; Civ. Doc. 150, Appx. 10; that Movant's mother also binge-drank during the pregnancy, Civ. Doc. 150, Appxs. 10, 18; that Movant's mother, distraught during the pregnancy, attempted suicide by ingesting a neurotoxic pesticide, *id.*, Appx. 10; that Movant could not master third-grade academics at age 16 in night school, Civ. Doc. 146 at Claim I, III; Civ. Doc. 150, Appxs. 15, 19, 112; that Movant could not follow basic directions to pick the ripe (red) coffee beans instead of the unripe (green) coffee beans, Civ. Doc. 146 at Claim I; Civ. Doc. 150, Appx. 220 at ¶ 6; that Movant remained immature even after joining MS-13, hanging out with younger kids and watching cartoons, Civ. Doc. 146 at Claim I; Civ. Doc. 150, Appx. 112 at ¶¶ 4, 10, 34; that the Federal Bureau of Prisons documented Movant's academic deficits shortly after his conviction in this case, Civ. Doc. 146 at Claim III; Civ. Doc. 150, Appx. 245; and that Movant exhibited symptoms consistent with psychosis,

2

including seeing visions and hearing voices that were not there and believing his dreams foretold the future, Civ. Doc. 146 at Claim I, II; Civ. Doc. 150, Appxs. 112, 214, 215, 216, 237; Gov't Tr. Ex. 169a, 176a.

Counsel's failure to investigate the lay witness and record-based collateral information necessary for a competent mental health expert evaluation culminated in a failure to develop and present at the guilt phase of trial reasonably available expert mental health evidence regarding Movant's inability to form specific intent. In post-conviction, Movant has developed evidence from psychiatrist, Dr. Pablo Stewart, that Movant's post-traumatic stress disorder, cognitive deficits, low IQ, intellectual disability, and neurological deficits "both individually and synergistically, significantly impaired Mr. Umaña's capacity to appreciate the wrongfulness of his conduct, conform his conduct to the requirements of law, or act with specific intent or with premeditation and deliberation." Civ. Doc. 150, Appx. 215, Declaration of Dr. Stewart at ¶ 13; *see also* Civ. Doc. 146 at Claim II.F, pp.155-56; Civ. Doc. 150, Appx. 29 (Neurobehavioral Assessment by Ruben Gur, Ph.D.) at 3.

Because the government has not countered most of Movant's allegations with evidence in the record or additional extra-record evidence contradicting his allegations, the majority of Movant's factual allegations stand uncontradicted, and the Court must accept them as true at this motion to dismiss stage. As described throughout this Reply, the story told in Movant's pleadings and proffered evidence supports plausible claims for relief.

## II. STATEMENT OF RELEVANT PROCEDURE

Counsel who represented Movant on direct appeal were also appointed to represent him in any subsequent 2255 proceedings following the conclusion of direct appeal. Crim. Doc. 1648.

Before filing the 2255 motion, in April 2016 appellate/2255 counsel requested leave to interview the trial jurors and other jury-related witnesses. Civ. Doc. 11. The government opposed this request. *See* Civ. Docs. 16, 21 (sealed). The Court did not rule on this motion until after Movant's initial one-year statute of limitations expired. *See* Civ. Doc. 56 (Mar. 28, 2017) (sealed).

In June 2016, appellate/2255 counsel filed a timely Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Conviction and Sentence. Civ. Doc. 24 (hereinafter "2016 2255 Motion"). Movant filed a Motion for Leave to Conduct Discovery on October 21, 2016, seeking discovery of documents and tangible items, arguing that the allegations (and relevant factual support) in his 2016 2255 Motion established good cause for the requested discovery. Civ. Docs. 36, 37 (sealed).

For reasons not immediately relevant to this matter, on February 22, 2017, the Office of the Federal Public Defender for the Middle District of Pennsylvania was appointed as co-counsel to appellate/habeas counsel in the habeas proceedings. Civ. Doc. 49.

4

On March 23, 2017, the government filed its response in opposition to Movant's motion for leave to conduct discovery.[2] Civ. Docs. 50, 52 (sealed). Movant requested more time to file his reply to the government's discovery response,[3] because the government had alleged that several of Movant's claims were procedurally defaulted for not being raised on direct appeal; that prior to undersigned counsel's appointment, Movant's 2255 counsel were the same as his appellate counsel, preventing 2255 counsel from raising claims of appellate ineffectiveness in the initial 2255 motion; and that undersigned counsel – as Movant's first unconflicted 2255 counsel – needed more time to review the case and investigate whether there were claims of appellate ineffectiveness that needed to be raised. Civ. Doc. 57. The Court did not rule on the extension motion, and, on April 24, 2017, Movant filed his Reply to the government's opposition to his motion for leave to conduct discovery. Civ. Docs. 61, 62 (sealed).

Subsequently, in February 2018, Movant moved for leave of court to file a Supplemental/Amended 2255 Motion (hereinafter "2018 Supplemental/Amended 2255 Motion"), which alleged, *inter alia*, ineffective assistance of appellate counsel. Civ. Docs. 68, 69, 71. Because of the conflict of interest identified by the claims of ineffective assistance of appellate counsel, Movant requested that appellate/habeas counsel be allowed to withdraw. Civ. Doc. 86. The Court denied that request in June 2020, Civ. Doc. 87, and, in July 2020, appellate/habeas counsel again moved to withdraw as counsel, Civ. Doc. 94. That motion was ultimately granted on May 25, 2021. Civ. Doc. 107.

---

[2] The government's Discovery Response is filed publicly and unredacted at Civ. Doc. 50 and sealed and unredacted at Civ. Doc. 52. For ease of reference, Movant will only cite to the sealed version of this document in this pleading.

[3] Per this Court's scheduling order, Civ. Doc. 47 at 4, Movant's discovery reply was due within thirty days of the government's response.

The government responded to Movant's request for leave to file the 2018 Supplemental/Amended 2255 Motion on May 7, 2018, arguing that most of Movant's allegations did not relate back to the original 2016 2255 Motion or were otherwise futile, and that equitable tolling – either due to Movant's incompetence or appellate/habeas counsel's conflict – does not excuse an untimely amended/supplemental 2255 motion. Civ. Doc. 77 (sealed), 79.

On consecutive days in May 2018, Movant filed a Reply to the government's Response, Civ. Doc. 81, and a Motion to Stay Proceedings based on Movant's incompetence, Civ. Doc. 82. The Court denied the stay motion less than four months later, on September 24, 2018. Civ. Doc. 85.

On March 31, 2022, the Court denied Movant's motion for leave to conduct discovery. Civ. Doc. 108 (sealed). Movant sought reconsideration of that denial in June 2022. Civ. Doc. 113 (sealed). In July 2022, Movant also filed a Second Motion for Leave to Conduct Discovery, arguing that he had established good cause for discovery based on the claims in the 2016 2255 Motion and the pending 2018 Supplemental/Amended 2255 Motion. Civ. Docs. 122, 124, 125 (sealed), 127 (sealed).

The Court denied Movant's request for leave to file the 2018 Supplemental/Amended 2255 Motion on October 11, 2022. Civ. Doc. 131 (sealed) at 55. In the same Order, the Court directed the government to respond to Movant's 2016 2255 Motion. *Id.* The government filed a Motion to Dismiss on March 2, 2023. Civ. Docs. 142, 143 (sealed).

On March 23, 2023, Movant filed an as-of-right Amended 2255 Motion, in part to address the "deficiencies" the government alleged in its Motion to Dismiss. Civ. Doc. 146. The government objected and moved to hold the as-of-right 2023 Amended 2255 Motion in abeyance pending resolution of its Motion to Dismiss. Civ. Doc. 152. In the same Motion, the government

6

asked that if the as-of-right amendment became the Operative 2255 Motion, its Motion to Dismiss the 2016 2255 Motion be "transfer[red]" to the 2023 Amended 2255 Motion. *Id.* at 12 n.5.

On July 28, 2023, while the issue of which 2255 motion was the operative motion remained unresolved, Movant filed his opposition to the government's Motion to Dismiss. Civ. Docs. 159, 160 (sealed). Given the procedural complexities of this case, on August 29, 2023, Movant filed a Motion to Expand the Record to Contain a Single Collection of Materials Referenced in or Attached to Movant's 2255 Motion, Civ. Docs. 163, 164, 165 (sealed), which the government opposed, Civ. Doc. 167.

In May 2024, the Court denied Petitioner's motion for reconsideration of its March 2022 discovery denial, without referencing the intervening 2023 Amended 2255 Motion. Civ. Doc. 174.

On December 23, 2024, President Joseph R. Biden, Jr., commuted Movant's death sentences to life imprisonment without the possibility of parole. Crim. Doc. 1803.

On January 6, 2025, the Court entered an Order deeming the 2023 Amended 2255 Motion the Operative 2255 Motion; directing the government to respond to the Operative 2255 Motion; and deeming other pending matters, including the Second Motion for Leave to Conduct Discovery, moot. Civ. Doc. 179.

On February 11, 2025, Movant filed a Motion to Suspend the Briefing Schedule and Set a Discovery Period to allow Movant to litigate discovery in support of the Operative 2255 Motion prior to the government's response. Civ. Doc. 180. This Court has not ruled on this motion.

On August 19, 2025, the government filed a Motion to Dismiss Alejandro Umaña's March 2023 Amended 2255 Motion. Civ. Docs. 187 (sealed), 189.

Movant now files this pleading in response to the government's Motion to Dismiss. This pleading stands as Movant's "Reply" under Rule 5 of the Rules Governing Section 2255 Cases.

## III.  OVERARCHING LEGAL ISSUES

### A.  The Government's Motion to Dismiss Misstates and Misapplies the Applicable Standard of Review.

Rather than file an Answer to the Operative 2255 Motion pursuant to Rule 5 of the Rules Governing Section 2255 Proceedings, the government filed a Motion to Dismiss. Because motions to dismiss are designated as responsive pleadings under Rule 5, the government's choice of nomenclature mandates the application of a specific standard of review to the government's arguments that does not exist where respondents file an Answer or similar response.

Styled as a Motion to Dismiss, the motion does not indicate what standard it seeks dismissal under. At various points through its argument, the government relies on this Court's 2022 Discovery Order to argue Movant has not pled a "prima facie" claim for relief, Civ. Doc. 187, *passim*, at other points the government argues that Movant's allegations are insufficient to support a particular claim. *Id.*, *passim.* On many occasions, when the government does address the claims itself, it rests on speculation or conclusory statements that are either improper or simply demonstrate the need for evidentiary development. The government eschews the clear controlling standards of 2255 itself, the Rules Governing 2255 cases, and the Fourth Circuit's jurisprudence addressing both. Instead, the government draws on factually or legally (or both) irrelevant caselaw to provide a standard of review that provides no true standards and seemingly requires no actual review of Movant's allegations. The government's approach is unexplained and inexplicable, and so also erroneous.

#### 1.  The Government misstates the controlling standard of review.

In attempting to lay out the standard of review applicable to its Motion to Dismiss, the government fatally misstates or even misrepresents the meaning or holdings of the cases it relies upon. For example, the government cites *McFarland v. Scott*, 512 U.S. 849, 859 (1994), as

8

cautioning against using habeas corpus to challenge the "main event" of trial. Civ. Doc. 187 at 21. In fact, *McFarland* explains that courts must balance the interests of preserving the "main event" against the unambiguous principle that "criminal defendants are entitled by federal law to challenge their conviction and sentence in habeas corpus proceedings." 512 U.S. at 859. Making that balance, the *McFarland* Court rejected the State's argument to preserve the "main event" and confirmed that appointment of counsel is critical to ensure habeas rights are protected. *Id.*

The government next suggests that, because Movant's conviction was upheld on appeal, his habeas claims should be rejected. Civ. Doc. 187 at 21 ("Umaña stands duly convicted and sentenced at a trial and an appeal that found it to be 'fair'") (citing *United States v. Umaña*, 750 F.3d 320, 360 (4th Cir. 2014)). The government is well aware that direct appeal is limited to the record while Movant has provided extensive extra-record evidence and materials not in the direct appeal record. The Fourth Circuit's assessment of the fairness of the trial based on only the trial record and without any knowledge of the factually supported allegations and inferences never put in front of the jury is irrelevant to these proceedings.

From this shaky foundation, the government relies on a collection of legally or factually irrelevant cases to tease out a standard of review that lacks any real standards.

For example, the government relies on several cases that address when and whether a hearing is appropriate. Civ. Doc. 187 at 22 (citing *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995); *Hill v. Ozmint*, 339 F.3d 187, 201 (4th Cir. 2003)). However, by filing a Motion to Dismiss, the government has created a process, and applicable standard of review, that operates procedurally *before* the determination of whether a hearing is warranted. *See also* Rule 8 of the Rules Governing Section 2255 Proceedings (setting the process for determining "whether an

evidentiary hearing is warranted."). As this Motion to Dismiss falls after Rule 4 but before Rule 8, cases describing either of those two standards are not helpful here.

On occasion, the government misstates the meaning of a particular holding to the standard of review. For example, the government correctly asserts that the Court is not required to accept as true every allegation in a 2255 motion and offers as an "example" that allegations contradicted by the record are not presumed as true. Civ. Doc. 187 at 22 (citing *Puglisi v. United States*, 586 F.3d 209, 214 (2d Cir. 2009); *Schriro v. Landrigan*, 550 U.S. 464, 474 (2007)). But that is not an "example" of when the Court should not presume Movant's allegations are true, but rather the *only* situation in which that presumption does not apply. *See* Section III(A)(2).

Many of the government's supporting references are not 2255 cases at all, but cases addressing 2254 petitions. *E.g.*, Civ. Doc. 187 at 22 (citing *Ozmint*; *Schriro*; *Walton v. Johnson*, 440 F.3d 160, 178 (4th Cir. 2006)). The government simply relies on the ultimate results of the cited cases, ignoring that both the default and the merits analyses applied in those 2254 cases are substantially different from the default and merits analyses in 2255 cases. *See* § 2254(d)(2) (merits analysis assesses the reasonableness of the state court's merits analysis); § 2254(e) (presumption of correctness to state court fact-finding; limitations on federal court evidentiary development when facts were not developed in state court).

The government's most inapposite reliance on 2254 cases is its use of *Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005), and *Schriro* to explain the meaning of Rule 2(b)(2). Civ. Doc. 187 at 23. But the Rule 2 of the Rules Governing 2254 Cases is not the same Rule 2 of the Rules Governing 2255 cases. *Compare* Rule 2 of the Rules Governing 2255 ("Rule 2. The Motion. (a) Applying for Relief") *with* Rule 2 of the Rules Governing 2254 ("Rule 2. The Petition 1 (a) Current Custody; Naming the Respondent"). The government also cites *Ramsey v. United States Parole*

10

*Comm'n*, 840 F.3d 853, 863 (D.C. Cir. 2016), to define Rule 2. Civ. Doc. 187 at 23. But as *Ramsey* is a challenge to the denial of parole under 28 U.S.C. § 2241, *see* 840 F.3d at 858, and the Rules Governing Section 2254 cases apply to § 2241 cases, *Ramsey*, too, does not apply here.

The government mistakenly expands the facts of *Mitchell* and *Ramsey* to support the incorrect proposition that "allegations presented in a reply *or elsewhere* do not count." Civ. Doc. 187 at 23 (emphasis added). In both cases, petitioner/movant attempted to include entirely new claims in their traverse/replies. *Mitchell*, 416 F.3d at 504; *Ramsey*, 840 F.3d at 863. Neither case, however, suggests that allegations "elsewhere" are not part of the court's review. If they did, they would directly conflict with the 2255 rules which expressly require the Court to consider all materials far beyond those contained in the pleadings. *See* Rule 4 of the Rules Governing 2255 (requiring initial review of the 2255 motion and all attachments, as well as "the record of prior proceedings"); Rule 8 of the Rules Governing 2255 (requiring review of *additional* materials submitted under Rule 7).

In short, the government's efforts to draw out a standard of review to apply to its Motion to Dismiss relies on misstatements, mischaracterizations, or misapplications of a small collection of cases. The result is a standard of review that provides neither standards nor meaningful review. The Court should reject the government's proposed standard of review and continue to apply the standard of review that emerges from 2255, the Rules Governing Section 2255 Proceedings, and the Fourth Circuit's clear jurisprudence applying both.

> 2. **The Rules Governing 2255 Cases and the Fourth Circuit's Application of Those Rules Clearly Delineate the Appropriate Standard of Review.**

Determining the proper standard of review begins with 2255 itself. Section 2255 requires a court receiving a 2255 motion to review "the motion and the files and the records." Unless that review "conclusively show[s]" that the movant is not entitled to any relief, the court shall grant a

hearing. § 2255(b). However, this simple, single-step analysis is broken up somewhat, by additional steps in the Rules Governing Section 2255 Proceedings.

### a. The Rules Governing 2255

Rule 4 of the Rules Governing Section 2255 Proceedings provides the first opportunity for the court to dismiss a 2255 motion, requiring the judge to dismiss only if it "plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief." Rule 4(b). If, however, the 2255 motion and associated materials contain allegations and supporting facts that *could* sustain relief, the "judge must order the United States attorney" to respond. *Id.*

In the ordinary process, the government's response is accompanied by some effort by either party (or also the court, per Rule 7) to invoke Rules 6 ("Discovery") and 7 ("Expanding the Record"). Subsequently, the court would conduct the review provided for in Rule 8 to determine whether, in light of all the pleadings, extra materials, and the entire record, a hearing is required. But this is not the ordinary case. Instead of filing an Answer, the government has filed a Motion to Dismiss as its responsive pleading. Rule 4 allows the government to employ a motion to dismiss as its responsive pleading. Rule 4, Committee Notes on the Rules - 2004 Amendment ("The amended rule reflects that the response to a Section 2255 motion may be a motion to dismiss or some other response."). However, the government's choice of form affects the resulting process and the applicable standard of review.

Although the name of the government's response does not alter its status as a responsive pleading to which Movant may now Reply under Rule 5(d), the sequence of events shows that the Motion to Dismiss requires something other than the Rule 4 standard of review. The Court has now directed the government to respond to the 2023 Amended 2255 Motion, having deemed it the Operative 2255 Motion. Civ. Doc. 179 at 9. Under Rule 4(b), if it "plainly appears . . . the moving

12

party is not entitled to relief," the Court must dismiss the Motion; if not, the court "must" order the government to respond if the motion. The Operative 2255 Motion met the Rule 4 standards; the record did not disprove Movant's allegations, which could sustain relief if true.

However, the government's Motion to Dismiss also does not fall under the Rule 8 rubric by which the Court determines whether a hearing is warranted. The claims and evidence before the Court have not yet been augmented by additional records. *See* Rule 6 ("Discovery"); Rule 7 ("Expanding the Record");[4] *see also* Rule 8(a) ("the judge must review the answer, any transcripts and records of prior proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted."). The government's Motion thus lies between Rule 4 and Rule 8 both procedurally and in terms of the applicable standard of review.

> b. *The government's Motion is assessed as a hybrid Rule 12(b)(6) motion to dismiss.*

The Fourth Circuit allows motions to dismiss under FRCP Rule 12(b)(6) as responses for 2254 cases, *Walker v. True*, 399 F.3d 315, 319 n.1 (4th Cir. 2005), and district courts have adopted that process for 2255 cases, *United States v. Gonzalez*, No. 5:20-CR-00109-M, 2023 WL 3467811, at *3 (E.D.N.C. May 15, 2023) (relying on 2254 caselaw to apply FRCP Rule 12(b)(6) to government motion to dismiss in 2255 case) (citing *Walker v. Kelly*, 589 F.3d 127, 138 (4th Cir. 2009)).[5] In 2004, the Rules Governing Section 2255 Proceedings were amended to allow use of

---

[4] As described above, there is a pending motion to expand the record that this Court has not ruled on. And, because the prior discovery proceedings are mooted by the superseding amended complaint, *see infra* Section III.C., and this Court did not grant Movant's request for a period in which to conduct discovery in support of the superseding complaint, Movant has not yet had opportunity to avail himself of the Rule 6 discovery procedures in support the Operative 2255 Motion.

[5] As noted above, for issues of procedural default or the merits of the substantive claim for relief, the distinction between 2254 and 2255 caselaw is critically important, as § 2254 has its own unique default and merits rules that do not apply in 2255 cases. However, the Fourth Circuit and

motions to dismiss as responsive pleadings. Rules Governing Section 2255 Proceedings, Committee Notes on Rules-2004 Amendment.

Before this case, the government has routinely termed its 2255 responsive pleading a motion to dismiss *pursuant to Rule 12(b)(6)*. *E.g.*, *Linney v. United States*, No. 5:13-CR-65-MOC-DCK-1, 2019 WL 2202802, at *4 (W.D.N.C. May 21, 2019); *Collins v. United States*, No. 3:06-CR-00023-FDW-1, 2018 WL 2292765, at *1-2 (W.D.N.C. May 18, 2018). Although the government has declined to define the basis of its Motion here, past local practice and approval of that practice lead to the reasonable conclusion that the government's Motion to Dismiss should be assessed under FRCP Rule 12(b)(6). Indeed, as this Court recognized when it found that the 2023 amendment was the operative motion, the prior Motion to Dismiss as "not an 'answer,'" but "the functional equivalent to an ordinary civil 12(b) motion." Civ. Doc. 179 at 5.

Fortunately, the parameters of the Rule 12(b)(6) standard of review are well-defined by jurisprudence. A complaint/§ 2255 Motion states a claim sufficient to survive Rule 12(b)(6) review if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court "accepts all well-pled facts as true and construes these facts in the light most favorable to the [Movant]." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). Conclusory statements, aversion of legal conclusion, or the elements of a claim are insufficient unless accompanied by "factual enhancement." *Id.* Allegations must do more than simply assert, for example, that the defendants entered an "unlawful agreement," but must provide supporting facts. *Twombly*, 550 U.S. at 556-57. All reasonable inferences must be

---

its constituent District Courts have concluded that Rule 12(b)(6) provides the applicable standard of review for assessing motions to dismiss in both 2254 and 2255 cases.

made in the plaintiff/movant's favor and assumed to be true when supported by factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Crucially, a complaint that meets these requirements may not be dismissed, "even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

Thus, the Rule 12(b)(6) test has two prongs. First, the court should identify and disregard legal conclusions not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 679. Second, the court should identify and assume the truth of supported factual allegations and reasonable inferences therefrom and "determine whether they plausibly give rise to an entitlement to relief." *Id.* Plausibility is more than a "sheer possibility," but less than "probability." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557). In discerning the difference, the guiding principle is that the Rule 12(b)(6) standard is a *pleading* standard that tests whether there is a case to answer and not an *evidentiary* standard requiring that relief be proven. The difference between the two is critical here, where the government repeatedly insists Movant's facts are insufficient to establish or do not show a "prima facie case." *See*, *e.g.*, Civ. Doc. 187 at 51, 64, 89, 102. As the Supreme Court has explained, the "prima facie case" standard is an "evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002) (reversing lower court's application of case-specific "prima facie case" standard to standard Rule 12(b)(6) dismissal).

Although the government's choice of a motion to dismiss as its responsive pleading was entirely proper, the government cannot ignore the meaning and effect of that choice. The government cannot borrow more appealing standards of review from other proceedings to apply to its Motion; its Motion has a particular standard of review that the government must meet.

This is not all to say that Rule 12(b)(6) applies absolutely to the government's motion. Rule 12(b)(6) conflicts with the Rules Governing 2255 cases in one discrete way: the FRCP very clearly limits Rule 12(b)(6) review to the pleadings, FRCP Rule 12(d), but 2255 proceedings mandate the court to consider the "files and records of the case" even before this intermediate stage, § 2255(b); Rule 4(b). Thus, while any attempt by either party to reference non-pleading evidence risks converting a "civil" Rule 12(b)(6) proceeding into summary judgment, FRCP Rule 12(b)(6), the parties in 2255 cases are encouraged to introduce extra-pleading evidence. The Rule 12(b)(6) standard that applies to the government's motion, therefore, is a hybrid that follows the FRCP standard except that it includes review of extra-pleading materials provided by the parties.

### B. Clarification of Procedural Default and Substantive Claims for Relief.

The government makes several broad assertions about the nature or meaning of certain constitutional claims and attempts to apply procedural default to many of them in a wholly unsupported manner. Before addressing the government's treatment of Movant's claims, it is necessary to clarify when and how procedural default applies, as well as the basic elements of the substantive claims raised by Movant.

1. **The government must go beyond bare conclusory statements to adequately meet its burden of asserting procedural bars.**

The government argues that many of Movant's claims are procedurally barred because they could have been but were not raised at trial and on direct appeal. Civ. Doc. 187, *passim*. The government confuses what it means that a claim could have been raised at trial or appeal, the related application of cause and prejudice to that alleged bar, and the effect of a miscarriage of justice on the alleged bar. *See Murray v. Carrier*, 477 U.S. 478, 488, 496 (1986); *see also United States v. Frady*, 456 U.S. 152, 167-68 (1982).

Generally, ineffective assistance of counsel claims should be raised in a 2255 motion to vacate. As the Supreme Court has recognized:

> [The district court is] the forum best suited to developing the facts necessary to determining the adequacy of representation during an entire trial. The court may take testimony from witnesses for the defendant and the prosecution and from the counsel alleged to have rendered the deficient performance. . . [T]he § 2255 motion often will be ruled upon by the same district judge who presided at trial . . . [who] having observed the earlier trial, should have an advantageous perspective . . . .

*Massaro v. United States*, 538 U.S. 500, 505-06 (2003). Such claims ordinarily *cannot* be raised on appeal for the same reasons. *United States v. Baptiste*, 596 F.3d 214, 216 n.1 (4th Cir. 2010) (quoting *Massaro*, 538 U.S. at 504-06) ("'[I]n most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance' because the trial record is 'often incomplete or inadequate for [addressing such claims on direct review,]' thereby risking the failure of '[e]ven meritorious claims.'"); *see also United States v. Herrera-Pagoda*, 14 F.4th 311, 318 n.6 (4th Cir. 2021) (rejecting government contention that argument was procedurally barred for failure to raise at trial or on direct appeal when movant's claim was one of ineffective assistance of counsel); *United States v. Faulls*, 821 F.3d 502, 507-08 (4th Cir. 2016) ("Unless an attorney's ineffectiveness conclusively appears on the face of the record, such claims are not addressed on direct appeal.").

These principles apply to claims that are not available on direct appeal because they require extra-record development. *See Mills v. United States*, 36 F.3d 1052, 1055-56 (11th Cir. 1994). An exception to procedural default exists for when the facts underlying a claim are "dehors the record and their effect on the judgment was not open to consideration and review on appeal." *Bousley v. United States*, 523 U.S. 614, 621-22 (1998) (quoting *Waley v. Johnston*, 316 U.S. 101, 104 (1942)

17

(per curiam)). Several of Movant's claims require extra-record evidence and are not subject to procedural default analysis.

The government alleges that several of Movant's claims could have been raised at trial or on appeal, Civ. Doc. 187, *passim*, but does not indicate where the respective ineffectiveness of trial/appellate counsel is "conclusively apparent" on the record. Thus, the government does not adequately plead that a procedural bar applies to those claims.[6]

Similarly, *Brady*[7] claims depend on facts not developed on the record at trial and so are properly raised in 2255 proceedings where "development of the record" is possible. *United States v. Dominguez Benitez*, 542 U.S. 74, 83 n.9 (2004) (citing *Massaro*, 538 U.S. 500). "[I]t is impossible for the defendant to know as a *factual* matter that a [*Brady*] violation has occurred before the exculpatory evidence is disclosed." *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 359 (2006) (emphasis in original). *Brady* claims are not typically available or developed for consideration on direct appeal. *See, e.g.*, *United States v. Russell*, 971 F.2d 1098, 1112 (4th Cir. 1992) (declining to review *Brady* claim on direct appeal when *Brady* materials were not part of the record on appeal). Thus, again, unless the government can show that the factual basis of a *Brady* claim – or indeed any claim that relies on non-record evidence – is facially apparent on the record, the procedural default does not apply. While the government asserts that several of Movant's *Brady* claims could have been raised at trial/appeal, Civ. Doc. 187 at 26 (directing this Court to the government's prior discovery response); Civ. Doc. 52 at 56, the government does not plead how the factual bases of those claims appear on the record. The government, therefore, has

---

[6] Movant's ineffective assistance of counsel claims are reviewed under the standards described in Section III.B.2.a.

[7] *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

not adequately pled procedural default, and Movant's *Brady* claims are reviewed under the standards in *infra* Section III.B.2.b.

### b. *Cause and prejudice overcomes any procedural default.*

Even if the procedural bar applies to a claim, Movant may overcome that bar by establishing cause and prejudice. *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977). Although the Supreme Court has never provided an exhaustive list of what constitutes "cause," it generally defines "cause" as "some objective factor external to the defense." *Murray*, 477 U.S. at 488. Whatever the reason, an obviously cognizable claim may not have been raised at trial or on appeal because "the factual or legal basis for a claim was not reasonably available to counsel" at trial or on appeal, thereby establishing "cause" to overcome the procedural bar. *Id.* at 488. "Prejudice" exists if not raising that claim "worked to [the movant's] *actual* and substantial disadvantage." *Frady*, 456 U.S. at 170.

A cognizable claim may be knowable at trial or on appeal, but defense counsel failed to present it. It is well settled, then, that ineffective assistance of counsel can excuse a procedural default. *Murray*, 477 U.S. at 488 ("[I]f the procedural default is the result of ineffective assistance of counsel, the Sixth Amendment itself requires that responsibility for the default be imputed to the State, which may not conduct trials at which persons who face incarceration must defend themselves without adequate legal assistance."). Since the government asserts procedural default, Movant replies here to invoke counsel's ineffectiveness for failing to raise the respective claims at trial or on appeal. *See infra* Claims IV, VI, VII, XII, XV, XX, XXI, XXII, XXV, XXVI, XXVIII,

and LIX, and Part IV.C.[8] This Court may address the merits of all of Movant's constitutional claims underlying his claims of ineffective assistance of trial or appellate counsel.

Alternatively, the factual basis for a cognizable claim may not have existed at trial or on appeal because the prosecution suppressed it. Such "[p]rosecutorial suppression of evidence" is therefore "cause." *Strickler v. Greene*, 527 U.S. 263, 283 (1999) ("As we explained in *Murray v. Carrier*, it is just such [suppression of exculpatory evidence that] ordinarily establish[es] the existence of cause for a procedural default."); *see Banks v. Dretke*, 540 U.S. 668 (2004). Because both the "cause" prong and the "suppression" element of a *Brady* claim require showing that the prosecution kept the evidence at issue from the defense, the two questions collapse into each other. *See, e.g.*, *United States v. Caro*, 733 Fed. App'x 651, 659-61 (4th Cir. 2018) (holding *Brady* claim was procedurally barred because data concerning BOP detention was publicly available at trial).

Similarly, the "prejudice" prong of "cause and prejudice" collapses into the "materiality" standard for the substantive *Brady* claim. *United States v. Hernandez*, 94 F.3d 606, 609-10 (10th Cir. 1996) (finding, in *Brady* context, *Frady* "actual prejudice" functionally equates to *Brady*-materiality). In short, the "could have been raised at trial" procedural bar either does not apply to Movant's *Brady* claims or, if it does, is overcome by establishing the merits of the underlying claim (making it applicable in name only). As such, Movant's *Brady* claims (and any respective procedural bar) are reviewed under the standards outlined in *infra* Section III.B.2.b.

---

[8] This Court can also consider these claims as substantive claims of ineffective assistance of trial and/or appellate counsel. As explained below, the cause and prejudice caused by counsel's ineffectiveness collapses into the substantive ineffective assistance analysis, making the distinction between an ineffectiveness claim based on counsel's failure to raise a predicate claim and a defaulted free-standing claim (where counsel's ineffectiveness provides cause and prejudice to overcome the default) one without a difference.

Finally, relevant to Movant's claims, the Supreme Court in *Reed v. Ross* recognized that the novelty of a legal claim may establish cause. 468 U.S. 1, 16 (1984); *see also United States v. McKinney*, 60 F.4th 188, 194-95 (4th Cir. 2023) (applying *Reed v. Ross* to *Johnson/Davis* claims). In the case of a novel legal theory, the collateral attacker must also show actual prejudice under *Frady*, namely that the error "worked to his *actual* and substantial disadvantage." *McKinney*, 60 F.4th at 195 (emphasis in original) (quoting *Frady*, 456 U.S. at 170).

### 2. **The necessary elements of Movant's substantive claims.**

Lastly, because the government repeatedly argues that Movant has failed to provide sufficient factual allegations to survive a motion to dismiss, Civ. Doc. 187, *passim*, it is necessary to establish what Movant's allegations and inferences must *plausibly* show to state a claim.

#### a. *Ineffective assistance of counsel.*

At its most basic, to prevail on an ineffectiveness of counsel claim, a movant "must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

The elements of ineffectiveness contain "sub-elements" that determine relief. For example, on the performance element, courts generally substantially defer to counsel's reasonable strategic decisions, unless those decisions were made without a reasonable investigation or circumstances made such investigation unnecessary. *Strickland*, 466 U.S. at 691. Moreover, contrary to the government's assertions, Civ. Doc. 187 at 32-33 & n.7, when the record is silent or ambiguous about counsel's reasons for taking or not taking a particular action, but Movant presents a plausible claim, an evidentiary hearing is required to determine whether counsel acted reasonably, *United States v. McNeil*, 126 F.4th 935, 945 (4th Cir. 2025) (citing *United States v. Pressley*, 990 F.3d 383, 389 (4th Cir. 2021)).

Every case is different, so assessing the reasonableness of those decisions requires examining the specifics of the case and what counsel knew at the time. *Wiggins*, 539 U.S. at 527. Nevertheless, counsel's performance is judged by the "prevailing professional norms" at the time. *Id.* at 521 (quoting *Strickland*, 466 U.S. at 688). Certain professional norms have been long-established and nationally applied. As early as 1989, for example, the Supreme Court had recognized the "well-defined norm" in capital cases "that investigations into mitigating evidence 'should comprise efforts to discover all reasonably available mitigating evidence.'" *Id.* at 524 (internal quotation omitted); *see also Roe v. Flores-Ortega*, 528 U.S. 470, 479 (2000) (considering professional norms as guides in non-capital context).

As to the prejudice prong, the Supreme Court has made clear that the standard is not a set of "mechanical rules" that depend on the defendant's innocence. *Strickland*, 466 U.S. at 696. Rather, the Sixth Amendment is concerned with the fundamental fairness of the trial, and so prejudice turns on whether counsel's decisions undermined that fairness. *Id.* With those principles in mind, the Court has long explained that prejudice can typically be assessed under the well-established standard: whether there is a reasonable probability that, but for counsel's deficient performance, the result of the proceedings would have been different. *Id.* at 694.

That simple standard incorporates several critical features. First, a "reasonable probability" of a different outcome is not the same as *proving* a different outcome. *Id.* Second, a "reasonable probability" is a categorically lower burden of proof than a "preponderance of the evidence." *Id.* Third, when the proceeding at issue is a trial, difference does not mean acquittal. It simply means a different outcome. A mistrial, a hung jury caused by a single holdout juror, or acquittal on a lesser charge all differ from the conviction that actually occurred. *Cf. Rompilla v. Beard*, 545 U.S. 374, 393 (2005).

22

The prejudice question is much more complex when counsel's performance does not concern missing evidence or selecting an incompetent defense theory, but instead failing to assert or protect a legal right. For example, when counsel fails to object to the unwarranted closing of a public trial, the prejudice caused by that failure to prevent the violation of a structural right (to public trial) is impossible to assess. *Weaver v. Massachusetts*, 582 U.S. 286, 299-303 (2017). In such cases, the "reasonable probability" test does not apply; instead, prejudice exists when counsel's deficient performance violates the principles of a fundamentally fair trial. *Id.* at 300-01.

Applying the 12(b)(6) standard to ineffectiveness claims, the Court must first disregard any bare conclusory statements by Movant that simply state that counsel were "deficient" and that Movant was "prejudiced" without factual support. *Nemet*, 591 F.3d at 255. Then, the Court must consider whether, considering Movant's allegations and any reasonable inferences, it is *plausible* that counsel's decisions or (in)actions fell below established professional norms in light of the circumstances of the case. *See Twombly*, 550 U.S. at 556. Lastly, the Court must consider whether it is *plausible* that, had it not been for counsel's unreasonable decision(s) or (in)actions, a different outcome would have resulted, or whether it is *plausible* that the fundamental fairness of the trial was undermined.

### b. Prosecutorial misconduct.

The prosecution's "interest . . . in a criminal prosecution is not that it shall win a case, but that justice shall be done. . . . It is as much [the prosecutor's] duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." *Berger v. United States*, 295 U.S. 78, 88 (1935).

Due Process is violated when the government suppresses favorable evidence to the accused that is material to either guilt or punishment. *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *Giglio*

23

*v. United States*, 405 U.S. 150, 153-56 (1972). The duty to disclose continues after a defendant's arrest, conviction, and sentencing. *Imbler v. Pachtman*, 424 U.S. 409, 427 n.25 (1976).

Evidence is "suppressed" if it is "known to the prosecution but unknown to the defense." *United States v. Agurs*, 427 U.S. 97, 103 (1976), *modified by United States v. Bagley*, 473 U.S. 667 (1985). The "prosecution" includes all agents of the prosecution, so knowledge or possession of evidence by any such agent is imputed to the prosecutor, even if the prosecutor had no personal knowledge of the evidence. *Kyles v. Whitley*, 514 U.S. 419, 438 (1995).

Under *Brady*, "favorable evidence" includes evidence that impeaches the prosecution's theory or witnesses. *Bagley*, 473 U.S. at 676. Such evidence is material if "there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Cone v. Bell*, 556 U.S. 449, 469-70 (2009). This "does not mean that the defendant 'would more likely than not have received a different verdict with the evidence,' only that the likelihood of a different result is great enough to 'undermine[] confidence in the outcome of the trial.'" *Smith v. Cain*, 565 U.S. 73, 75 (2012) (quoting *Kyles*, 514 U.S. at 434). In short, the materiality standard mirrors the *Strickland* prejudice standard (not least because *Strickland* borrowed the *Brady* materiality standard). *Strickland*, 466 U.S. at 694 (citing *Agurs*, 427 U.S. at 104).

Due process is also violated when the prosecution knowingly relies on false evidence. "[I]n those cases the Court has applied a strict standard of materiality, not just because they involve prosecutorial misconduct, but more importantly because they involve a corruption of the truth-seeking function of the trial process." *Agurs*, 427 U.S. at 103-04, *modified by Bagley*, 473 U.S. 667. Thus, where the prosecution provides or fails to correct false evidence, relief is required if

24

"the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury." *Napue v. Illinois*, 360 U.S. 264, 271 (1959); *Glossip v. Oklahoma*, 604 U.S. 226, 626-27 (2025).

Because of the prosecutor's prominent role as representative of the United States – and the mantle of respect and authority this role carries in the eyes of the jury – jurors are predisposed to give great deference to the prosecutor's words, and improper prosecutorial arguments "are apt to carry much weight against the accused, when they should properly carry none." *Berger*, 295 U.S. at 88; *accord Drake v. Kemp*, 762 F.2d 1449, 1459 (11th Cir. 1985) (citing *Berger*). "For this reason, misconduct by the prosecutor . . . must be scrutinized carefully." *Drake*, 762 F.2d at 1459; *see also United States v. Young*, 470 U.S. 1, 7-8 (1985). When the prosecutor's misdeeds, viewed collectively or cumulatively, infect the trial with unfairness, due process is violated. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

Applying the Rule 12(b)(6) standard to these claims, the Court discards any allegation that is purely a legal conclusion. Then, the Court looks to whether any allegation or reasonable inference therefrom is conclusively disproven by the record. Based on the remaining allegations and inferences, the Court considers whether it is *plausible* that the prosecutor suppressed material evidence (*Brady*), knowingly relied on false evidence (*Napue*), or committed trial misdeeds such that the trial was rendered unfair (*Donnelly*).

### C. This Court's 2022 Discovery Order Does Not Control the Motion to Dismiss.

Throughout its Motion to Dismiss, the government cites this Court's 2022 Order denying discovery, Civ. Doc. 108, as grounds to dismiss Movant's claims. *See* Civ. Doc. 187 at 26-28 (urging dismissal of Claims I-VII, XI, XIII-XV, XVIII, XXI, XXIII and XXV for the reasons stated in the 2022 Discovery Order and the government's prior discovery response); *id.*, *passim* (citing to and/or discussing 2022 Discovery Order and/or discovery response as they apply to particular claims). That reliance is inappropriate for at least four reasons.

25

First, the prior discovery proceedings, including the 2022 Discovery Order, are moot because they were based on the 2016 2255 Motion, which has now been superseded by the 2023 Amended 2255 Motion as the operative complaint. Thus, even if the 2022 Discovery Order could be read to decide the merits of Movant's claims, it "is of no effect" now because this Court accepted the 2023 Amended 2255 Motion as the operative one. *See, e.g.*, *Mitchell v. City of Charlotte*, No. 3:23-cv-00006, 2023 WL 3046076, at *1 (W.D.N.C. Apr. 21, 2023). This Court has already recognized as much when, in its Order deeming the 2023 Amended 2255 Motion the operative motion and directing the government to respond, it denied Petitioner's Second Motion for Discovery, filed before the filing of the Operative 2255 Motion, as moot. *See* Civ. Doc. 179 at 10. The government's Motion to Dismiss thus relies on an Order that effectively no longer exists.

Second, the Court's prior discovery denial relied on the strength of the allegations in Movant's 2016 2255 Motion. Because the 2023 Amended 2255 Motion adds evidentiary support for the allegations and addresses several of the government's default arguments, the Order's analysis no longer applies. The government's reliance on its Discovery Response is similarly misplaced, as the nullification effect of the 2023 Amended 2255 Motion would necessarily extend to that Response, since both depend on the now-superseded allegations in the 2016 2255 Motion.

Third, the Court's Order, by itself, is not sufficient to support dismissal of actual claims for relief. The rejected Discovery Motion seeks specific, discrete documents or other materials. Consequently, the Court's denial of discovery for those specific materials does not control the Court's determination of the underlying claims. *Rossi v. US Bank Nat'l Ass'n*, No. CV GLR-21-2752, 2022 WL 3028003, at *6 (D. Md. Aug. 1, 2022) (citing *United States v. Bennerman*, 785 F. App'x 958, 963 (4th Cir. 2019)) ("[T]he law of the case applies only to issues that have actually been decided"); *see also WW, LLC v. Coffee Beanery, LTD*, No. WMN-05-3360, 2013 WL

26

3776944, at *5 (D. Md. July 17, 2013) (explaining that a "holding" means "a court's determination of a matter of law pivotal to its decision").

Finally, even if the government is correct that the 2022 Discovery Order is somehow a controlling, final resolution of the claims addressed therein, this Court always retains the authority, under Rule 54, to "revise[]" its prior order resolving some of the claims in a matter "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed.R.Civ.P. 54(b).

### D. The Mootness of Movant's Capital Penalty Phase and *Atkins*-related Claims.

The government argues that President Biden's commutation of Movant's death sentences to life imprisonment without the possibility of parole renders Movant's claims that pertain solely to his death sentences moot. *See* Civ. Doc. 187 at 25, 35-36 (Claim I); *id.* at 25-26, 38 (Claim II, except for subsection F); *id.* at 25, 36-37 (Claim III); *id.* at 25, 82 (Claim IV); *id.* at 25, 35-36 (Claim V); *id.* at 25, 72-73 (Claim VI.A. and VI.B); *id.* at 25-26, 84 (Claim VII.D); *id.* at 25-26, 39 (Claim VIII, in part); *id.* at 25, 35-37 (Claim IX); *id.* at 25, 35-36 (Claim X); *id.* at 25-26, 35-36 (Claim XI, in part); *id.* at 25, 81-82 (Claim XII); *id.* at 25, 37 (Claim XIII); *id.* at 25, 52-52 (Claim XIV); *id.* at 25-26, 59 (Claim XVI, in part); *id.* at 25, 36-37 (Claim XIX); *id.* at 25, 37 (Claim XXIII); *id.* at 25, 67 (Claim XXIV); *id.* at 25, 81 (Claim XXV); *id.* at 25-26 (Claim XVI, in part); *id.* at 25, 37 (Claim XXVII, in part); *id.* at 25, 81-82 (Claim XXVIII); *id.* at 25-26, 74, 125 (Claims XXIX and XXX, in part). Undersigned counsel agrees with the government that the claims pertaining solely to his death sentences are currently moot, leaving only those claims that impact (1) Movant's convictions and/or (2) his sentences on the non-capital counts as live controversies for this Court to address. Indeed, other District Courts that have faced this issue following the Biden commutations have reached this very result. *See*, *e.g.*, Order Lifting Stay and Reopening Case, *Fackrell v. United States*, No. 1:23-cv-00119, (E.D. Tex May 8, 2025), Doc. 65;

Order Lifting Stay and Reopening Case, *Cramer v. United States*, No. 1:23-cv-00355, (E.D. Tex. May 8, 2025), Doc. 27; Order, *Taylor v. United States*, No. 1:19-cv-147 (E.D. Tenn. July 7, 2025), Doc. 108.

However, given potential concerns about the future status of Movant's commutation, *see* Maj. Staff of H. Comm. on Oversight and Gov't Reform, *The Biden Autopen Presidency: Decline, Delusion, and Deception in the White House* (Oct. 28, 2025); *see also* Annie Karnie, *House Report Details Biden's Decline, Claiming He was Impaired as President*, N.Y. Times (Oct. 28, 2025), https://www.nytimes.com/2025/10/28/us/politics/biden-decline-impairment-president-house-report (reporting Attorney General Bondi post that DOJ was reviewing President Biden's use of the autopen for pardons after House report); Charlie Savage & Tyler Pager, *Biden Says He Made the Clemency Decisions That Were Recorded With Autopen*, N.Y. Times (July 13, 2025), https://www.nytimes.com/2025/07/13/us/politics/biden-pardon-autopen-trump (noting President Biden recorded the commutation of death sentences to life imprisonment with autopen), undersigned counsel does not believe that she can reasonably take any action that could be construed as an affirmative waiver of Movant's penalty phase claims. Thus, while undersigned counsel agrees that the claims pertaining solely to the penalty phase are currently moot and this Court should not (and cannot) currently address them, counsel has addressed the government's default and merits arguments regarding the currently moot claims in Section IV.D of this Opposition in the event that the legal status of Movant's commutations changes in the future.

Moreover, Movant disagrees with the government about whether certain claims pertain solely to the penalty phase. Regarding claims concerning the Court's *Atkins* determination, Movant suggests that they may not be mooted by the commutation of sentence because Movant continues to challenge trial counsel's failure to investigate, develop, and present mental health evidence that

28

would have shown that he did not or could not form the specific intent necessary to support his convictions. Intellectual disability is one of the several disorders that affect Movant's (in)ability to act with specific intent. *See* Doc. 146, Claim II.F, pp.155-57.

Movant contends that, in determining his guilt-phase mental health claims, this Court should not be bound by the pretrial *Atkins* proceeding for at least two reasons. First, the determination that Movant is asking this Court to make in Claim II.F is simply a different issue than that which was before the Court at the *Atkins* hearing. Second, Judge Conrad did not find that Movant is *not* intellectually disabled. Judge Conrad's pretrial *Atkins* order merely found that Movant had failed to establish his intellectual disability. Crim. Doc 934 at 1-5. Third, prior counsel's ineffectiveness renders those prior proceedings unreliable. Fourth, the pretrial ruling was erroneous under *Hall v. Florida*, 572 U.S. 701 (2014), and *Moore v. Texas*, 581 U.S. 1 (2017). *Hall*, which was decided while Movant's direct appeal was still pending, so undoubtedly should apply to his case, established the necessity of applying medical standards to an intellectual disability determination and applied it to the IQ prong of the determination, and *Moore* reiterated that holding, applying it to the adaptive deficits prong of the determination. Civ. Doc. 146 at Claim IV.A, pp.169-70. Judge Conrad's pretrial intellectual disability finding that Movant failed to demonstrate adaptive deficits to an intellectual disability diagnosis was contrary to the medical standards that the courts must apply. *See id.* at 174-77. Under proper standards, Movant is clearly intellectually disabled. Issue preclusion principles do not hold this Court to the pretrial intellectual disability findings. Issue preclusion provides that a "determination is conclusive in a subsequent action between the parties, whether on the same or a different claim" "when an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment." Restatement (Second) of Judgments § 27

29

(1982). Although Movant's prior *Atkins* determination arguably meets these requirements, two "intervening change[s] in the relevant legal climate," namely *Hall* and *Moore*, "may warrant reexamination" of the prior determination. *Id.* § 28, cmt. c (1982); *see also Bobby v. Bies*, 556 U.S. 825, 834-37 (2009) (declining to apply issue preclusion to intellectual disability determination).

However, to the extent that this Court might determine that it is bound by Judge Conrad's ruling that Movant's counsel failed to demonstrate his intellectual disability prior to trial, counsel's ineffectiveness at the pretrial *Atkins* hearing (Claim III), Judge Conrad's errors in making his determination and appellate counsel's ineffective litigation of that issue on direct appeal (Claim IV), and the government's *Brady* and *Napue* violations that affected the *Atkins* determination (Claims VI.C and VII.B), continue to have collateral consequences to Movant. *Cf. Evitts v. Lucey*, 469 U.S. 387, 391 n.4 (1985) (civil disabilities). Therefore, Claims III, IV, VI.C, and VII.B are arguably not moot.

Finally, the government contends two of Movant's voir dire claims (Claim XIV and XVI) and his Vienna Convention claim (Claim XXVI) are moot in whole or in part because they pertain to penalty phase issues. Movant maintains that all his voir dire claims and his Vienna Convention claim continue to present live controversies after the commutation and will address the government's mootness arguments regarding Claims XIV, XVI, and XXVI in the discussion of those claims below.

### E.  Movant's Amended Claims are Timely.

In its opening discussion of the law, the government broadly asserted that "to the extent [the Operative Motion] alleges transactions and occurrences that Umaña did not include in his original motion or timely, prior amendments made with this Court's leave, his claims are untimely." Civ. Doc. 187 at 24-25; *see also id.* at 28-30. However, the government only makes specific allegations regarding timeliness with respect to the following issues: portions of Claim

VII (the government's *Napue* violations), *id.* at 48; portions of Claim VIII (ineffectiveness regarding the jail letters), *id.* at 41; portions of Claim XI (ineffectiveness regarding the government's false tattoo evidence and argument), *id.* at 87; and Movant's allegations of appellate ineffectiveness, *id.* at 122-25.

Because timeliness is a fact-specific inquiry, the government's vague timeliness insinuations should be rejected. Movant's detailed analysis in the Operative 2255 Motion demonstrates the timeliness of his amendment. Civ. Doc. 146 at 3-28.

To the extent that the government provided any claim-specific timeliness arguments, Movant will address the government's allegations within the specific claims.

## IV. ARGUMENTS ON SPECIFIC CLAIMS FOR RELIEF

Addressing Movant's claims for relief, the government variously misstates or misapplies the standard of review that applies to its motion to dismiss, misstates or misapplies the substantive law, or ignores or mischaracterizes the facts. Movant will first address those claims related to the composition of the jury that convicted him. Second, Movant will address the remaining claims that affect his convictions, in whole or in part. Third, Movant will address the government's overarching arguments regarding his ineffective assistance of appellate counsel allegations. Finally, Movant will address those currently moot claims that he and the government agree pertain solely to his commuted death sentences.

### A. Claims Related to the Jury.



31



Case 3:16-cv-00057-MOC    Document 195    Filed 01/02/26    Page 39 of 201



33





Case 3:16-cv-00057-MOC    Document 195    Filed 01/02/26    Page 42 of 201



Case 3:16-cv-00057-MOC     Document 195     Filed 01/02/26     Page 43 of 201



Case 3:16-cv-00057-MOC    Document 195    Filed 01/02/26    Page 44 of 201



38



Case 3:16-cv-00057-MOC     Document 195     Filed 01/02/26     Page 46 of 201



40



41





Case 3:16-cv-00057-MOC     Document 195     Filed 01/02/26     Page 50 of 201



44





46



### 4. The Facts Contained in Claim XVII – Regarding Underrepresentation of Distinct Groups in the Venire – State a Plausible Claim for Relief.

The parties agree that this claim is not moot.

The government first relies on this Court's Order denying discovery, Civ. Doc. 108, and its own 2017 discovery response, Civ. Doc. 52. Civ. Doc. 187 at 26. In doing so, the government highlights both the inapplicability of the Discovery Response and Order here.

In denying discovery, the Court held that Movant's claim, made "based on information and belief," that the Plan for the Random Selection of Grand and Petit Jurors in the U.S. District Court for the Western District of North Carolina for 2007-2009, viewed alongside voter registration demographics and data compiled from Juror Qualification Questionnaires, shows "an underrepresentation of distinct groups, including but not limited to African Americans, Hispanics/Latinos, and Asians in the grand and petit venires," is "speculative" and does not state a claim sufficient to warrant discovery from the Clerk of materials explaining the creation of the jury list and venire. Civ. Doc. 108 at 38-39. That Order, as explained in *supra* Section III.C., was

based on the 2016 2255 Motion. The now Operative 2255 Motion includes additional evidence from an expert witness who has conducted a statistical analysis of the Jury Plan and the venire demographics and has concluded that Movant's speculations are correct; the Plan does underrepresent distinct groups. Civ. Doc. 146 at 412-14, Civ. Doc. 150, Appx. 273 at 7-9. The Court's conclusion that Movant's allegations are speculative therefore no longer applies. That, of course, is notwithstanding the fact that the Operative 2255 Motion has effectively nullified the 2016 2255 Motion and the 2022 Discovery Order that stemmed from it.

The government's Discovery Response is similarly afflicted, arguing that Movant's allegations are conclusory and lack "*any* specific facts." Civ. Doc. 52 at 106. Because the Operative 2255 Motion has substantially amended the allegations, not least by including expert opinion that confirms Movant's conclusions, the government's arguments are inapplicable here; they effectively no longer exist.

The arguments in the Motion to Dismiss similarly fail. First, the government argues that Movant does not establish ineffective assistance of counsel because reasonable counsel could have decided that challenging the venire was unlikely to succeed and opted to dedicate scarce resources to more promising arguments. Civ. Doc. 187 at 63-64. Further, the government argues that this ineffectiveness claim fails because Movant has not shown that trial counsel knew of the statistical evidence found by post-conviction counsel's expert. *Id.* at 64-65. The government also argues that Movant's allegations are "'insufficient to set forth' even a 'prima facie violation' of the fair-cross section requirement." *Id.* at 64 (quoting Civ. Doc. 108 at 40). The government's arguments improperly apply an evidentiary proof standard to this Rule 12(b)(6) proceeding.

Regarding counsel's awareness of the precise degree of underrepresentation on the venire, investigating the records and procedures used for jury selection is a standard component of

competent performance by defense counsel: *See* ABA Guideline 10.10.2, reprinted at 31 Hofstra L. Rev. 1049, Iss. 4 (2003). Competent counsel must also recognize and act upon "red flags," *Williams v. Stirling*, 914 F.3d 302, 315 (4th Cir. 2019), *as amended* (Feb. 5, 2019), like the dearth of Black or African American and Hispanic or Latino persons in the jury pool here.

Throughout its response, the government also mistakenly argues that Movant must show that a successful challenge would have resulted in a different outcome at trial. Civ. Doc. 187 at 64-65. However, Movant need only state a plausible claim that there is a *reasonable probability* the outcome of the proceeding – here, jury selection – would have been different, *Strickland*, 466 U.S. at 694, or that the fundamental fairness of his trial was undermined, *Weaver*, 582 U.S. 286 at 301.

Finally, the government dismisses statistical evidence of racial disparities in the venire as insufficient, because Movant must show evidence of actual discriminatory or exclusionary practices. Civ. Doc. 187 at 64 (citing Civ. Doc. 108 at 40; *Molina-Sanchez v. United States*, No. 3:12-CR-316, 2018 WL 490551, at *6 (W.D.N.C. Jan. 19, 2018)). Movant has pled specific, factually supported allegations that a "distinctive" segment of the community was "substantially underrepresented" in the venire because of "systematic exclusion" by way of an inartfully designed jury plan. *Duren v. Missouri*, 439 U.S. 357, 364 (1979); Civ. Doc. 146 at 410-16. Assuming those allegations to be true, he has pled a plausible claim that counsel were ineffective for failing to object to the venire's composition. Dismissal for failure to state a claim is improper.

5. **The Facts Contained in Claim XVIII – Regarding *Batson* – State a Plausible Claim for Relief.**

The parties agree this claim is not moot.

While counsel made several *Batson* objections and this Court conducted the second-step of the *Batson* analysis by asking the government for its race-neutral reasons, Movant alleged that counsel were ineffective for failing to argue that the government's purported race-neutral reasons

49

were pretextual, ask the Court to compare jurors struck to those who remained, present evidence that the government and/or prosecutor had a pattern of race-based strikes, or conduct any "third-step" action to challenge the government's justifications. Civ. Doc. 146 at 417-18.

The government urges this Court to dismiss Movant's *Batson* claim because of the Court's 2022 Discovery Order, Civ. Doc. 187 at 26, and then largely repeats the same arguments pled in its 2017 discovery response, *compare* Civ. Doc. 52 at 107-08 *with* Civ. Doc. 187 at 65-67.

The government's continued reliance on these pre-amendment arguments (and the Court's 2022 Discovery Order) is misplaced. By largely repeating its prior arguments, the government ignores Movant's allegations – contained in the Operative Motion – about what the third step of the *Batson* inquiry would have revealed had counsel conducted it. *See* Civ. Doc. 146 at 418-22. These allegations include:

- Statistical analysis showing "the Government's peremptory strikes targeted African Americans three times more than would be expected based on the racial composition of the venire. 'Happenstance is unlikely to produce this disparity.' *Miller-El v. Cockre*ll, 537 U.S. 322, 342 (2003)." Civ. Doc. 146 at 419;
- A comparative analysis of the struck and seated jurors' answers revealing that several seated jurors provided similar answers to those the government identified as reasons to strike the *Batson*-relevant jurors, *Id.* at 419-20; and
- Historical evidence detailing the ineffectiveness of *Batson* in state prosecutions, the training provided to North Carolina state prosecutors on how to "circumvent *Batson*," and that the particular prosecutor who selected the jurors had been a North Carolina state prosecutor at times relevant to those factors, *Id.* at 421.

To the extent that the government does directly address these factual allegations, it mischaracterizes and minimizes them. Movant's allegation is not merely that "one of the prosecutors was once 'a state prosecutor,'" Civ. Doc. 187 at 66, but that while she was a state prosecutor she would have received training on how to evade the constitutional demands of *Batson*, and worked in a state office where other prosecutors also would have received such training. This is exactly the type of evidence the Supreme Court finds relevant to determining whether a

prosecutor's strikes were race-based. *See Miller-El*, 537 U.S. at 335 (concluding "race was a factor" during selection in part because trial ADAs had "received formal training in excluding minorities from juries"). In short, Movant has alleged in the Operative Motion, with factual support, details as to how the *Batson* third step would have proceeded had counsel conducted it. *Snyder v. Louisiana*, 552 U.S. 472, 478 (2008) (requiring all circumstances be considered in at the third step of *Batson* process). Because the government offers nothing to rebut or disprove those facts, they must be accepted as true at this stage.

The government again, as is its pattern regarding most of Movant's ineffectiveness claims, speculates about trial counsel's purported strategy for failing to question the prosecution's asserted justifications for its strikes. Civ. Doc. 187 at 66. Such speculation is improper and meaningless at this stage. Moreover, the government seems to be taking the position that trial counsel were under no obligation to object to the government's pretextual justifications for its strikes and move the Court's analysis to step three because the government provided facially race-neutral pretextual justifications for its strikes. *See Id.* at 66 (faulting Movant for not repeating government's pretextual reasons, already contained in the transcript of voir dire, in the Operative Motion). This, of course, is non-sensical. If defense counsel could be relieved of the obligation to challenge a prosecutor's purported race-neutral justifications simply because the prosecutor provided purported race-neutral justifications, then the *Batson* analysis would *never* move to the third step and racial discrimination in voir dire would go wholly unchecked. The government's argument must be rejected at this motion to dismiss stage based on the currently uncontroverted facts before this Court. Movant has proffered evidence demonstrating that the prosecution used its peremptory strikes disproportionately against African Americans who provided voir dire/questionnaire answers similar to white venirepersons whom the prosecution accepted. A reasonable trial attorney

51

would have lodged the required objections to require the Court's analysis to proceed to step three under these circumstances.

In responding to Movant's allegations, the government also mistakenly considers each fact in isolation. *Id.* at 66. However, the Court must consider "the totality of the relevant facts" and "all relevant circumstances." *Batson v. Kentucky*, 476 U.S. 79, 94, 98 (1986). This collective analysis is necessary because "[s]ome [of the prosecutor's] stated reasons are false, and although some false reasons are shown up within the four corners of a given case, sometimes a court may not be sure unless it looks beyond the case at hand." *Miller-El*, 545 U.S. at 240; *see also Snyder*, 552 U.S. at 478 (citing *Miller-El*, 545 U.S. at 239) ("In *Miller-El v. Dretke*, the Court made it clear that in considering a *Batson* objection, or in reviewing a ruling claimed to be *Batson* error, all of the circumstances that bear upon the issue of racial animosity must be consulted.")

Finally, the government argues that Movant failed to properly allege prejudice, relying on a presumption of prejudice rather than "reasonable probability" prejudice as required of an ineffectiveness claim. Civ. Doc. 187 at 67. As detailed in the Operative 2255 Motion, several courts have found that a *Batson* violation is a structural error and, by its nature, is not subject to a prejudice analysis. Civ. Doc. 146 at 422-23; *see also Winston v. Boatwright*, 649 F.3d 618, 632 (7th Cir. 2011), *cert. denied*, 566 U.S. 976 (2012).

Alternatively, Movant alleged that prejudice resulting from a predicate *Batson* claim is assessed for whether the fundamental fairness of trial was undermined. Civ. Doc. 146 at 422-43 (citing *Weaver*, 582 U.S. at 300). There should be no question that the prosecution's racially-motivated strikes undermined the fundamental fairness of the proceeding when that concept of fundamental fairness is the backbone of the Supreme Court's *Batson* jurisprudence.

Further prejudice analysis defies logic and, most troubling, is fundamentally predicated on impermissible racial stereotypes of the very sort that *Batson* cautions litigants and courts not to employ. In a typical *Strickland* analysis, looking at whether there was a reasonable probability of a different outcome had trial counsel performed effectively, the reviewing court analyzes the effect that counsel's error had on the jury's rendered verdict. However, the court does not look at how counsel's error affected the actual seated jurors; indeed, such evidence would be generally inadmissible. *Warger*, 574 U.S. at 47 ("[T]he testimony of a juror is not admissible for the impeachment of his verdict" (quoting *Clark v. United States*, 289 U.S. 1, 18 (1933)). Instead, the court relies upon the legal concept of a reasonable juror or jury. In the case of errors such as *Batson* violations that go to the very composition of the jury, this analysis is necessarily turned on its head. The entire concept of a *Batson* violation rests upon the premise that there is constitutional significance to the actual composition of the jury. This Court cannot find Movant was not prejudiced based on arguments about what the hypothetical reasonable juror would have done because, quite simply, the hypothetical reasonable juror does not exist when the very constitutional violation goes to the seating of actual, specific jurors with actual, specific personal attributes including membership in one or more protected classes, that necessarily make them different from the mean or average juror in a constitutionally-significant way.

In short, Movant has alleged prejudice as a result of counsel's failure to perform the *Batson* third step. That allegation is supported by uncontested and uncontroverted facts. Those facts, and all reasonable inferences stemming from them, state a plausible claim of counsel's ineffectiveness. Dismissal for failure to state a claim is, therefore, improper.

53

**B. Other Claims Pertaining to the Guilt Phase in Whole or in Part.**

    1. **The Facts Contained in Claim II – Regarding Trial Counsel's Ineffectiveness in Investigating, Developing, and Presenting Mental Health Evidence – State a Plausible Claim for Relief.**

This claim is partially mooted because it pertains to counsel's deficient performance at the penalty phase, but it still presents a live case or controversy regarding counsel's deficient performance in failing to investigate, develop, and present a guilt-phase mental health defense.

This Court should deny the government's request to dismiss Claim II because the government fails to overcome the facts proffered in the Operative 2255 Motion, misstates the controlling law, and misapplies the applicable standard of review.

    *a. The government urges this Court to dismiss this claim based on an erroneous test of prejudice.*

Referencing this Court's 2022 Discovery Order, the government argues that this claim should be dismissed because Movant failed to allege sufficient facts demonstrating "that counsel's performance fell below an objective standard of reasonable competence" or that "had counsel presented additional evidence, it would have altered the outcome." *See* Civ. Doc. 187 at 26, 38 (citing Civ. Doc. 108 at 33). As demonstrated in *supra* Section III.B., to show prejudice, Movant need only present facts demonstrating a "reasonable probability" of a different outcome, not certainty. For Movant's guilt phase mental health allegations, Movant must show only a reasonable probability of a more favorable outcome. This need not be a full acquittal but could include a hung jury or a conviction of a lesser offense. And, regarding counsel's failure to present or the jury's failure to credit mitigating evidence, Movant must show only "a *'reasonable probability'* that at least one juror would have been moved to spare [his] life had he heard the mitigation evidence developed at the habeas hearing that was not presented at the trial." *Williams v. Taylor*, 529 U.S.

362, 394-95 (2000) (emphasis added). The government's reconceptualization of clearly established law should be rejected at any stage of proceedings, let alone in a Rule 12(b)(6) motion.

> b. *The government ignores the wealth of evidence presented by Movant that is uncontested by any record evidence.*

In assessing whether Movant has stated a claim for which relief can be granted under Rule 12(b)(6), the Court assumes all Movant's factually supported allegations to be true and resolves all reasonable inferences in Movant's favor, unless conclusively disproven by the record. *Iqbal*, 556 U.S. at 679; *see also Hall*, 846 F.3d at 765. The government ignores much of the extensive evidence alleged in the Operative 2255 Motion detailing both counsel's deficient performance and the evidence that trial counsel failed to present. Because the government does not address these facts, either by showing in the record where they are disproven or by providing additional evidence to disprove them, they must be assumed true at this stage.

Regarding Movant's allegations that his trial counsel ineffectively failed to investigate, develop, and present a guilt-phase mental health defense, Movant's post-conviction psychiatrist Dr. Pablo Stewart opined that Movant's post-traumatic stress disorder, cognitive deficits, low IQ, intellectual disability, and neurological deficits "both individually and synergistically, significantly impaired Mr. Umaña's capacity to appreciate the wrongfulness of his conduct, conform his conduct to the requirements of law, or act with specific intent or with premeditation and deliberation." Civ. Doc. 146 at 156; Civ. Doc. 150, Appx. 216, Decl. of Dr. Stewart at ¶ 13; *see also id.*, Appx. 29 at 3 (Report of Dr. Gur regarding effects of brain damage that would impair Movant's ability to modulate his response to a clear threat).

Dr. Stewart's opinion regarding Movant's ability to form the requisite mens rea to support his VICAR murder convictions and his 924 convictions that are now predicated solely on VICAR

55

murder[13] – and Movant's allegations that trial counsel were ineffective for failing to develop and present that evidence at the guilt phase – are informed[14] and corroborated by the extensive evidence Movant proffered in support of his penalty phase allegations that his trial counsel's performance was deficient because they failed to investigate, develop, and present evidence of substantial deficits in intellectual functioning, including evidence presented at the *Atkins* hearing and additional evidence trial counsel failed to obtain; the effects of trauma on Movant's developmental trajectory and state of mind; Movant's brain damage; and Movant's mental illness. *See* Civ. Doc. 146 at 103-55. Evidence supporting Movant's factual proffer included affidavits/declarations/reports from: Dr. James Merikangas, M.D., stating that the results of his neurological examination and PET scan findings were consistent with Dr. Weinstein's neuropsychological testing, and that he could have testified about "the importance of the frontal lobes to executive function, judgment and impulse control and how brain-imaging illustrates the anatomy and physiology of that process," Civ. Doc. 150, Appx. 27; Dr. J. Gregory Olley, Ph.D., that additional lay witness evidence obtained in these postconviction proceedings "document[s] Mr. Umaña's very significantly limited academic and social skills" and "describe[s] significant impairment in adaptive behavior that originated in childhood," *id.*, Appx. 28; Dr. Ricardo Weinstein, Ph.D., that additional testing he conducted after the *Atkins* hearing corroborated his prior finding of low IQ, *id.*, Appx. 81; Dr. Ruben Gur, Ph.D., that a quantitative analysis of PET scan showed "abnormalities in regions that are very important for regulating emotions and

---

[13] As discussed in Claim XX, RICO conspiracy is not a crime of violence capable of supporting Movant's 924 convictions.

[14] Dr. Stewart considered and relied on the opinions of several of Movant's other mental health experts in reaching his conclusions. *See* Civ. Doc. 150, Appxs. 215, 216.

behavior," *id.*, Appxs. 29; Dr. Antonio Puente, Ph.D., that Movant's testing and resultant IQ satisfies Prong 1 – low intelligence quotient – of the intellectual disability definition, *id.*, Appx. 213; Dr. Daniel Martell, Ph.D., that Movant is intellectually disabled, *id.*, Appx. 236; Dr. Julian Davies, M.D., that Movant suffers brain damage and psychosocial impairment as a result of Alcohol-Related Neurodevelopmental Disorder (a disorder under the umbrella of Fetal Alcohol Spectrum Disorder), *id.*, Appx. 211; Dr. Andres Lugo, M.D., that Movant suffers brain damage and resultant psychosocial impairment as a result of his internal and external exposures to additional neurotoxins both *in utero* and during development, including prenatal exposure to alcohol, pre- and postnatal exposure to pesticides and toxic fertilizers used in agriculture, prenatal exposure to pesticides as a result of his mother's suicide attempt, lead poisoning, and living in extreme poverty in a highly contaminated environment, *id.*, Appx. 212; Dr. Jennifer Sapia, Ph.D., that Movant's history of cumulative developmental trauma, including eight of the ten Adverse Childhood Experiences known to have deleterious effects into adulthood, combined with his cognitive impairments "would have had a profound impact on his perceptions or reality, decision making, reasoning and judgment," *id.*, Appx. 214; Dr. Selena Sermeño, Ph.D., that "[t]he accumulation of traumatic events in [Movant's] life . . . have placed Movant at severe risk for incomplete and extremely poor decision-making as well as cognitive delays and interruptions in his cognitive development," *id.*, Appx. 237; Dr. Stewart's additional findings relevant to mitigation, *id.*, Appxs. 215, 216; Dr. Leo Shea, III, Ph.D., that neuropsychological and intelligence testing conducted in connection with these post-conviction proceedings showed a resultant IQ that satisfies Prong 1 of the intellectual disability definition and brain damage that includes "frontal lobe deficiencies that limit his ability to effectively analyze, plan, organize and prioritize creative and effective solutions to problems especially when he is under time pressure or affected by

57

meaning or sudden emotional stimuli," *id.*, Appx. 243; Dr. Ruben Gur, Ph.D., that an MRI of Movant's brain conducted post-conviction showed global hypotrophy and structural abnormalities in regions "implicated in a variety of critical functions, including decision-making, memory, learning, and the control and regulation of emotions," *id.*, Appx. 242; Dr. Thomas Ward, Ph.D., a gang expert, that Movant's actions at Las Jarochitas would have been detrimental to the gang, observing that fellow gang members did not "back him up" in this spontaneous act and opining that a person with his mental health impairments would not be a leader in MS-13, *id.*, Appx. 244; Dr. Robin Riner, Ph.D., that the government's manipulation of the translation of Movant's jail letters made him appear more educated and capable than he was, *id.*, Appx. 268; and Dr. Eric Neilson, Ph.D., that Movant's letters – of the sort relied upon by the Court in its pretrial *Atkins* determination – contain derivative content and lack of sophistication as an "artist," *id.*, Appx. 238.

The government does not dispute most of Movant's proffered factual evidence supporting this claim. The government does not dispute that trial counsel recognized the need to hire experts to present their case. The government does not dispute that trial counsel had evidence from the *Atkins* hearing and/or from their *Atkins* hearing experts that they did not present to the jury. The government does not dispute the existence of the undiscovered lay evidence described in Claims I and II. The government does not dispute that trial counsel did not present this evidence to their experts. The government does not dispute that trial counsel did not develop or present any evidence from Drs. Puente, Martell, Sapia, Davies, Lugo, Gur, Stewart, Shea, Nielson, Ward, or Riner, or present testimony from Drs. Weinstein, Olley, and.

Because the government does not dispute these facts, the Court must presume Movant's proffered facts as true, including the following facts supporting his allegations that trial counsel were ineffective for failing to develop and present a guilt-phase mental health defense:

58

- Trial counsel possessed, but did not present to the jury, evidence of Movant's low IQ, adaptive functioning deficits, intellectual disability, and brain damage, which would have tended to show that Movant did not act with specific intent or with premeditation and deliberation at the time of his offenses. Civ. Doc. 146 at 106-16, 130-39.
- Trial counsel did not investigate to uncover additional reasonably available expert and lay evidence of Movant's low IQ, adaptive functioning deficits, intellectual disability, and brain damage that would have tended to show that Movant did not act with specific intent or with premeditation and deliberation at the time of his offenses. *Id.* at 108-14, 127-45.
- Trial counsel did not investigate to uncover reasonably available lay and expert evidence regarding Movant's mental illness that demonstrated Movant's impaired ability to act with specific intent or with premeditation and deliberation. *Id.* at 145-49.

Likewise, the government does not dispute Movant's proffered factual evidence of prejudice. Movant will not repeat all the facts demonstrating prejudice here, but the record shows Movant alleged and provided detailed factual proffers of the expert mental health evidence counsel could have presented to the jury if they conducted a constitutionally adequate investigation and presented all reasonably available mental health evidence to the jury. *Id.* at 106-57. Movant's allegations regarding the available mental health evidence are, therefore, presumed to be true. These factual allegations include:

- A psychiatrist, such as Dr. Pablo Stewart, M.D., could have testified that Movant has Post-Traumatic Stress Disorder, cognitive impairment, low IQ, intellectual disability, neurological deficits, and psychotic symptomology, all of which would have impacted his ability to regulate his emotions and behavior, including on the night of the homicides, and would have impaired his ability to act with specific intent or with premeditation and deliberation. Civ. Doc. 146 at 39-40, 71, 88, 99, 114, 125, 133, 136-38, 144, 146, 148-49, 152-53, 156, 326; Civ. Doc. 150, Appxs. 215, 216.

- A neuropsychologist like Dr. Antonio Puente, Ph.D., could have testified that government expert Dr. Suarez's IQ testing was psychometrically invalid and only Drs. Weinstein and

59

Shea's tests, returning IQs of 60 and 66, were reliable and consistent. This means Movant satisfies the low intelligence prong of the intellectual disability definition. Civ. Doc. 146 at 106-15, 164-65; Civ. Doc. 150, Appx. 213.

- A neuropsychologist, such as Dr. Daniel Martell, Ph.D., could have testified that Movant is intellectually disabled, based on his review of the testing, Dr. Puente's analysis, and the collateral information regarding adaptive deficits investigated and compiled in these postconviction proceedings. Civ. Doc. 146 at 39, 96, 106-15, 134-36, 166, 170, 176-77; Civ. Doc. 150, Appx. 236.

- A neuropsychologist such as Dr. Leo Shea, III, could have testified that his intelligence testing of Movant satisfied Prong 1 – low intelligence – of the intellectual disability diagnosis. Dr. Shea also could have testified that his neuropsychological evaluation of Movant revealed brain damage, including frontal lobe damage that limits Movant's ability to analyze, plan, or effectively problem-solve under stress. Civ. Doc. 146 at 105-16, 131, 134, 136-38, 144; Civ. Doc. 150, Appx. 243.

- Movant suffers from Alcohol-Related Neurological Disorder (ARND, under the umbrella of Fetal Alcohol Spectrum Disorder) because of his mother's alcohol consumption during pregnancy. An FASD expert such as Dr. Julian Davies, M.D., could have testified about this diagnosis and Movant's resultant brain damage ("both structural and functional evidence of brain damage since childhood") and psychosocial impairment. Civ. Doc. 146 at 70-71, 105, 114, 129, 135-37, 144, 167; Civ. Doc. 150, Appx. 211.

- Movant suffered numerous toxic exposures in utero and during the developmental period, in addition to his mother's alcohol consumption during pregnancy. These included pre- and postnatal exposure to pesticides used in agriculture, prenatal exposure to pesticides due to

his mother's suicide attempt, lead poisoning, and living in extreme poverty in a highly contaminated environment. A toxicology expert, such as Dr. Andres Lugo, M.D., could have testified about the resulting brain damage and psychosocial impairment. Civ. Doc. 146 at 39, 69-71, 105-06, 114, 129, 136-37, 144, 167; Civ. Doc. 150, Appx. 212.

- A quantitative analysis of Movant's PET scan shows abnormalities in regions important for regulating emotions and behavior.[15] Movant's MRI shows that he has a small brain, 4.5 standard deviations below average, and structural abnormalities in areas implicated in decision-making, memory, learning, and emotional control/regulation. An expert in brain imaging and behavior, such as Dr. Ruben Gur, Ph.D., could have testified to these results. Civ. Doc. 146 at 39, 70-71, 89-90, 105-06, 114, 129, 133, 136-37, 142-44, 152, 155-56, 166-67; Civ. Doc. 150, Appxs. 29, 242.

- Movant experienced eight of the ten Adverse Childhood Experiences that negatively affect a person's life trajectory. Movant's cumulative trauma history, combined with his cognitive impairments, "would have had a profound impact on his perceptions of reality, decision making, reasoning and judgment." A psychologist such as Dr. Jennifer Sapia, Ph.D., *based on an evaluation of Movant*, could have testified to these opinions regarding Movant's cumulative trauma history, its intersection with his cognitive impairments, and its negative impact on his psychosocial development and functioning. Civ. Doc. 146 at 39, 71, 75, 88-89, 105-06, 114, 120, 124-26, 129, 133-34, 138, 342, 148, 151-52, 167, 262-63; Civ. Doc. 150, Appx. 214.

---

[15] The government's expert at trial, Dr. Mayberg, testified that such a quantitative analysis would be useful in defining Movant's brain damage. PPT 787-90.

- A psychologist, such as Dr. Selena Sermeño, Ph.D., could have testified, *having evaluated Movant*, that Movant's experiences of cumulative trauma placed him at risk for "extremely poor decision-making" and cognitive delays. Civ. Doc. 146 at 39-40, 71, 76, 79, 85-89, 114, 124-26, 148-52, 263, 358; Civ. Doc. 150, Appx. 237.

- Doctors such as Robin Riner, Ph.D., and Thomas Ward, Ph.D., could have testified that the government's translations of Movant's letters were cleaned up to exaggerate his written abilities; and that his impairments would have disqualified him from a leadership role in MS-13. Civ. Doc. 146 at 90, 112, 145, 153, 162, 310-11; Civ. Doc. 150, Appxs. 268, 244.

- An expert in rap lyrics as criminal evidence, such as Dr. Erik Nielson, would have testified that Movant's letters were based on derivative content and lacked sophistication as an "artist." Civ. Doc. 146 at 112, 146, 311; Civ. Doc. 150, Appx. 238.

The government further does not contest, and therefore it must be assumed true, that: Dr. Weinstein conducted additional, post-*Atkins* hearing testing; Dr. Olley reviewed additional collateral interviews and concluded that they corroborated his findings on adaptive deficits; and Dr. Merikangas could have testified about Dr. Weinstein's testing results and the functional import of Movant's brain damage, as documented in the neuropsychological testing and the PET scan.

Instead of contesting this evidence, the government argues that there is "overwhelming evidence of Umaña's culpable mens rea in the record," citing testimony that Movant "stood there for a minute" before pulling the trigger, later bragged about the shooting, and urinated on his own hands to remove gunshot residue. Civ. Doc. 187 at 39. According to the government, this evidence is so strong that a "reasonable attorney could easily conclude that an expert would not likely convince a jury that Umaña was incapable of forming the mens rea needed for murder and instead focus his "limited resources' elsewhere," or at the very least, "forecloses any reasonable

62

probability that the jury would have acquitted Umaña if it had heard the kind of expert testimony he describes." *Id.*

The government's arguments are insufficient to overcome Movant's proffer at the motion to dismiss stage. First, the jury's inconsistent mens rea findings at the penalty phase demonstrate a reasonable probability that expert testimony explaining how Movant's impairments affected his ability to act with specific intent or with premeditation or deliberation would have resulted in a different outcome at the guilt phase had trial counsel presented a mental health defense. *Compare* Crim. Docs. 1045 & 1047 *with* Crim. Docs. 1044 & 1046. Moreover, at the penalty phase, the jury unanimously found that the murders did not involve substantial planning and occurred during an emotionally charged argument. Crim. Docs. 1048, 1049, 1050, 1051. Indeed, the murders stemmed from a fight over music playing on a restaurant jukebox. *See* Civ. Doc. 150, Appx. 240 (Rpt. R. Robert Tressel).

Second, the evidence cited by the government – Movant's perceived pause – aligns with the evidence of Movant's psychotic symptomology and brain damage, which the government ignores. As Dr. Stewart and lay witnesses observed, Movant stares into space and sees things that are not visible communicate with him. *Id.*, Appx. 215 at ¶¶ 16-17; *id.*, Appx. 12, Decl. of Monica Tatiana Reyes at ¶ 13. Brain imaging shows that Movant's corpus callosum, a part of the brain responsible for communication between the brain's hemispheres, has abnormally slow metabolism. *Id.*, Appx. 29 at 3. This slow metabolism can "lead to deficits in integrating verbal reasoning and analytic processing modes of the left hemisphere with intuitive, integrative, and affect-related processing modes of the right hemisphere," impairing "speed of processing across cognitive and affective domains." *Id.* Dr. Shea reviewed Movant's testing and reports from those who know him and found that Movant consistently demonstrates "significant limitations" across

virtually every area of cognition, including processing speed. *See id.*, Appx. 243, Report of Dr. Shea at 11.

Third, Movant's later conduct is irrelevant to whether, *at the time of the shooting*, he had the requisite mens rea; his attempt to remove gunshot residue by urinating on his hands only underscores Movant's impairment, as the act was both disgusting and ineffective.

The government's second argument, that trial counsel "could easily [have] conclude[d] that an expert would not likely convince a jury that Umaña was incapable of forming the mens rea needed for murder and instead focus his 'limited resources' elsewhere," Civ. Doc. 187 at 39, should be rejected as merely speculation. Moreover, to the extent the record contains any evidence regarding counsel's strategy, it tends to demonstrate that counsel had none. *See* Civ. Doc. 150, Appxs. 23-24. The record is otherwise silent as to counsel's reasons for not investigating further, not providing the fruits of that investigation to their experts, hiring additional experts, or presenting evidence they did have to the jury, and the government has not seen fit (or is unable) to present evidence establishing or even suggesting any reason. Given the importance of Movant's state of mind not only to the guilt phase, but also to both the eligibility and selection criteria at the penalty phase, counsel's failure to develop reasonably available expert mental health evidence about factors influencing Movant's ability to act with specific intent or with premeditation or deliberation cannot be explained away by a "limited resources" argument. Quite simply, Movant's state of mind was a key consideration at all stages of the case, and counsel's attention (regardless of "limitations") should have been focused there. Because all reasonable inferences must be made in Movant's favor, *Iqbal*, 556 U.S. at 679, the government's speculations to the contrary are inappropriate here.

64

Movant presents expert testimony, bolstered by lay witnesses, demonstrating that Movant could not or did not act with specific intent or with premeditation and deliberation. The government effectively ignores these facts and does not rebut them to meet the standard for a motion to dismiss. Further, the government misstates the controlling law and fails to meet its Rule 5 burden. Movant has therefore pleaded a plausible claim for relief, and dismissal for failure to state a claim is improper.

### c. The government's discovery response arguments are unavailing.

The government also implores this Court to reject this claim for the reasons argued in its prior discovery response. Civ. Doc. 187 at 26. The government's discovery response arguments regarding counsel's ineffectiveness for failing to investigate, develop, and present expert evidence are based on improper speculation and should be rejected as improper at this stage of the litigation.

In its discovery response, the government addresses only one type of expert that counsel failed to develop and present – a trauma expert with a full social history who had evaluated Movant and could have presented evidence in mitigation – and argues that trial counsel's failure to investigate and present evidence of childhood trauma was not deficient because counsel "could have reasonably concluded that their time and resources were better spent elsewhere than with a neighbor who had never heard anyone call Umaña to eat or a cousin who recalled hunting for food with Umaña." Civ. Doc. 52 at 101. The government's argument must be rejected. First, it is wholly speculative about counsel's decision-making and the government's speculation about counsel's purported decisions must be rejected at this stage when all reasonable inferences must be drawn in Movant's favor. Second, the government's argument grossly misrepresents Movant's factual proffer of evidence of trauma that was undeveloped and unpresented because of counsel's narrow investigation. The available evidence of trauma included much more than "a neighbor who never heard anyone call Umaña to eat or a cousin who recalled hunting for food with Umaña." Civ. Doc.

146 at 116-27. On the contrary, the available – but uninvestigated and unpresented evidence – included evidence that Rafael Umaña (whom trial counsel unreasonably relied upon for their family social history/mitigation investigation) beat Movant with his closed fists like he was a grown man until he was bloody and bruised. Civ. Doc. 146 at 80, 119. This evidentiary proffer alone states a plausible claim. But, as demonstrated in the Operative Motion and its supporting exhibits, there was much more.

The government also faults attorney Bryson's declaration for "not stat[ing] that the defense team did not take reasonable steps to seek evidence of abuse." Civ. Doc. 52 at 101. The fact that trial counsel did not admit the legal conclusion (which would be rejected in applying the government's motion, *Nemet*, 591 F.3d at 255) that his performance was deficient does not erase that trial counsel relied on Movant's chief abuser to develop their social history/mitigation case. Had they instructed their mitigation specialist to knock on the doors in front of him or to go to the small neighborhood where Movant's mother lived (as documented in the pretrial discovery), they would have learned of Rafael's brutal physical and mental abuse of Movant and much more.

Contrary to the government's assertion, Civ. Doc. 52 at 101-02, counsel's deficient failure to engage in basic investigative tactics – such as knocking on doors at the mesons (which he photographed) where Movant spent most of his childhood and talking to their capital client's mother – was not transformed into a reasonable strategy because their client denied abuse when interviewed by the government's expert. First, and quite notably, *the government has not disputed the proffered facts of the traumatic experiences,* except to note in its Discovery Response that Movant denied abuse to Dr. Suarez. *Id.* at 103. Second, the record in this case undermines, rather than supports, the government's speculation: trial counsel would not have even had Dr. Suarez's

66

report until after November 2, 2009, *see* Civ. Doc. 150, Appx. 71 (Suarez's report dated 11/2/09), well after counsel's investigation should have been underway.

Third, even if Movant told counsel the same things that Dr. Suarez claimed Movant said during his evaluation, Movant has proffered facts tending to show that it would have been unreasonable for counsel to rely on their client's statements without an independent investigation. *See*, *e.g.*, *Rompilla*, 545 U.S. at 377. Movant has proffered evidence – which the government has not factually disputed – that his low intelligence quotient, trauma history, and cognitive impairments render him an unreliable narrator of his own life, and particularly his experiences of traumatic events. Dr. Jennifer Sapia, Ph.D., evaluated Movant in these 2255 proceedings and explained in her report that "variables such as age, cognitive limitations and the nature of the trauma itself . . . impact Mr. Umaña's ability to understand, process, and remember and communicate his trauma history." Civ. Doc. 150, Appx. 214 at 22. According to Dr. Sapia, Movant "does not have the intellectual capacity to" "understand, process, remember, recall and communicate about a situation in the same way as his same age peers." *Id.* As a result, "he may not have a clear sense of what he experienced" growing up. *Id.* Dr. Sapia further noted Movant's history of dissociative symptomatology and that "dissociation or lack of integration can result in loss of memory for the events." *Id.* at 23. "It is quite common for individuals who have experienced trauma to avoid thinking about painful memories and avoidance is actually a symptom of PTSD." *Id.* Movant "tends to minimize his trauma history and romanticize his country." *Id.* Dr. Sapia noted that her observations and opinions were consistent with Dr. Olley's that Movant "tried hard to make a good impression and put the best face on all events in his life." *Id.*; *see also* Civ. Doc. 150, Appx. 73 at 9 (Dr. Olley trial report). And the trial record shows that Dr. Olley testified at the *Atkins* hearing: "[t]he factual information that the individual can provide about his life is useful to

know, *because it's helpful to be able to compare that with what information we have from other sources.*" *Atkins* Hearing 11/30/09 at 42 (emphasis added). Dr. Olley "would not rely entirely upon the defendant's information, because there's substantial research on interviewing people of low intelligence with regard to their understanding the questions and being able to respond accurately and appropriately." *Id.*

Fourth, Movant was incompetent at the time of trial and remains so. *See, e.g.*, Civ. Doc. 71 at 2-13 (Supplemental/Amended claim that Movant was incompetent at trial and on direct appeal); Civ. Doc. 82 (counsel's request to stay these proceedings due to Movant's incompetence); Civ. Doc. 150, Appx. 215 (Dr. Stewart Decl.). The trial mitigation specialist, the only member of the defense team fluent in Spanish, thus able to speak directly to Movant without the barrier of an interpreter, believed Movant appeared "slow and paranoid," Civ. Doc. 150, Appx. 26 at ¶ 8, and was concerned that, when he and Movant were "in the middle of discussion about his case, he would suddenly break into songs and rap," *id.* ¶ 17; *see also* Gov't Tr. Ex. 522 at 128, 04/23/08 Transcript of Flores interview. The government does not dispute or otherwise attempt to disprove these proffered facts. Given Movant's mental state and bizarre behaviors, it would have been patently unreasonable – as the government speculates – for counsel to have relied on his statements to direct their social history/mitigation investigation.

Fifth, the government's speculative argument regarding a strategy that counsel has never stated or endorsed contradicts controlling law. The Supreme Court has long recognized defense attorneys' independent professional duty to investigate. *Wiggins*, 539 U.S. at 522-23. This is most clearly seen in cases involving a non-cooperative client, where the Court has held that a client's non-cooperation, by itself, is not dispositive. *See Rompilla*, 545 U.S. at 381 (describing petitioner's non-cooperation and obstruction of preparation of mitigation case).

68

Finally, contrary to the government's speculation, Movant's denial of physical abuse to Dr. Suarez, Civ. Doc. 52 at 103, would not have undermined the other witnesses to render the omission of their evidence non-prejudicial. Movant has proffered facts showing that a mental health expert, such as Dr. Sapia or Dr. Olley, could have explained to the jury why Movant's impairments make his account of his personal history unreliable. Again, the government has not disputed these facts.

The government's prior contention in its Discovery Response that Movant "offers nothing but pure speculation" that a trauma expert could have provided reliable testimony about the effects of trauma on Movant, *id.* at 102, now misses the mark. In the Operative Motion, Movant proffered what an expert could have said, Civ. Doc. 146 at 122-25, and provided this Court with reports/declarations of experts who could have testified, Civ. Doc. 150, Appxs. 214-16, 237, 243 (Drs. Sapia, Sermeño, Shea, and Stewart). Far from speculative, Movant has provided specific factual allegations of what specific experts could have testified to.

The government's argument that the jury heard a "detailed history of Umaña's youth, including details about the horrors he witnessed during the Salvadoran civil war and difficulties he faced at home," Civ. Doc. 52 at 101, and from other experts about Movant's trauma, *id.* at 102, ignores the qualitative and quantitative differences between what was presented at trial and what has been proffered in these 2255 proceedings. A comparison of the trial mitigation specialist's report,[16] Civ. Doc. 150, Appx. 36, and the evidence contained in and attached to the Operative

---

[16] The record shows that the only information provided to Dr. Merikangas, Dr. Sermeño, and Ms. Santa Cruz Giralt at trial was the trial mitigation specialist's report. PPT 618, 679-80; *see also* Civ. Doc. 150, Appx. 27 at ¶¶ 4, 10 (Dr. Merikangas's 2255 declaration stating that he reviewed McGough's social history report; that a comprehensive evaluation requires "the social history of the client"). The government has offered nothing to dispute that record fact or the proffered fact that Rafael Umaña was the main source of the trial mitigation specialist's report.

69

Motion plausibly shows that the post-conviction evidence wholly changes the narrative the jury heard. That is all that is required here.

The government mischaracterizes Movant's allegation that trial counsel ineffectively presented trauma as a complaint that counsel's choice of experts was unreasonable. Civ. Doc. 52 at 102. The fundamental problem was not trial counsel's choice of expert, but counsel's deficient investigation that failed to uncover reasonably available evidence of trauma, their failure to provide that evidence to an appropriate expert, and their failure to have their trauma expert conduct a personal evaluation of Movant. Movant has proffered evidence from the same trauma expert who testified at trial, showing how her trial testimony could have been different if predicated on adequate defense investigation and a full evaluation. *Compare* PPT[17] 600-36 *with* Civ. Doc. 150, Appx. 237 (Dr. Sermeño declaration); *see also* Civ. Doc. 150, Appxs. 214, 215, 216, 243 (Drs. Sapia, Shea, and Stewart).

Contrary to the government's assertion, Civ. Doc. 52 at 102, there should be no question that Movant has proffered facts demonstrating a plausible claim that Movant was prejudiced by counsel's failure to develop and present the wealth of expert testimony described in Claim II.

By misstating the controlling law and failing to meet its Rule 5 burden, the government effectively ignores the extensive, uncontradicted facts presented by Movant. Movant has therefore pled a plausible claim for relief, and dismissal for failure to state a claim is improper.

---

[17] Movant refers to the Guilt Phase Transcripts as "GPT" and the Penalty Phase Transcripts as "PPT," followed by the appropriate page number.

2. **The Facts Contained in Claim III – Regarding Counsel's Ineffectiveness in Investigating and Presenting Evidence at the *Atkins* Hearing – State a Plausible Claim for Relief.**

If this Court finds that it is bound by Judge Conrad's pretrial *Atkins* ruling when assessing the merits of Claim II.F regarding counsel's ineffective failure to investigate, develop, and present a mental health defense at the guilt phase, it should reject the government's mootness argument, Civ. Doc. 187 at 35-36, and address the claim's merits, *see supra* Section III.D.

If this Court reaches the merits of this claim that counsel were ineffective for failing to investigate, develop, and present reasonably available evidence of Movant's intellectual disability at the pre-trial *Atkins* hearing, it should reject the government's contentions that the claim fails due to the March 2022 Discovery Order and for the reasons stated in that prior discovery order and the government's 2017 discovery response. Civ. Doc. 187 at 26. The 2022 Discovery Order does not control; neither the order nor the prior discovery response refute Movant's factual allegations, which must therefore be assumed true; the government's prior discovery arguments are unavailing; and Movant has stated a plausible claim for relief.

a. *The government urges this Court to dismiss this claim based on erroneous and/or inapplicable legal standards contained in the 2022 Discovery Order.*

The 2022 Discovery Order applied an erroneous and/or inapplicable standard, finding that discovery was unwarranted because Movant "does not allege sufficient facts to show that counsel's performance fell below an objective standard of reasonable competence or that had counsel presented additional evidence, it would have altered the outcome." *See* Civ. Doc. 108 at 33. But, at the motion to dismiss stage, Movant need only state a plausible claim for relief, not *prove* his claims. Moreover, to show prejudice, Movant never has to prove that additional evidence *would have* changed the course of his trial, only a "reasonable probability" of a different outcome. *Strickland*, 466 U.S. at 694. Movant has set forth a plausible claim of his ability to meet that here.

71

b. *The government ignores the wealth of proffered evidence presented by Movant, which is uncontested by any record evidence.*

In assessing whether Movant has stated a claim for which relief can be granted, Rule 12(b)(6), the Court assumes all of Movant's factually supported allegations to be true and resolves all reasonable inferences in Movant's favor, unless they are conclusively disproven by the record. *Iqbal*, 556 U.S. at 679; *Nemet*, 591 F.3d at 255; *see also Hall*, 846 F.3d at 765. Because neither this Court's 2022 Discovery Order nor the government's 2017 Discovery Response addresses these facts, either by showing in the record where they are disproven or by providing additional evidence to disprove them, they must be assumed true at this stage.

Movant will not repeat all those facts here, but the record before this Court is clear that Movant alleged and provided detailed factual proffers of lay and expert evidence supporting a diagnosis of Intellectual Disability that trial counsel failed to present at the *Atkins* hearing. Civ. Doc. 146 at 90-97 (intellectual disability allegations in Claim I, incorporated by reference into Claim III); *id.* at 109-14 (intellectual disability allegations in Claim II, incorporated by reference into Claim III); *id.* at 157-68 (intellectual disability allegations in Claim III); *id.* at 308 (intellectual disability allegation in Claim VIII, incorporated by reference in Claim III).

In the Operative Motion, Movant presented specific factual proffers that his trial counsel's performance was deficient and of the evidence of intellectual disability that they failed to present, including lay witness, documentary, and expert evidence. *See* Civ. Doc. 146 at 157-68. Movant further incorporated the legal averments and factual allegations of Claims I, II, and VIII, which contained factual allegations of both lay and expert evidence regarding intellectual disability. Civ. Doc. 146 at 158. Movant supported these allegations with expert affidavits/declarations/reports from: Dr. Weinstein, showing additional post-*Atkins* hearing testing that corroborated his findings that Movant had an IQ in the intellectually disabled range, Civ. Doc. 150, Appx. 81; Dr. Olley,

72

reviewing additional collateral evidence of adaptive functioning, finding that it corroborated his *Atkins* hearing opinion that Movant had adaptive deficits that satisfy the intellectual disability definition, Civ. Doc. 150, Appx. 28; Dr. Antonio Puente, Ph.D., affirming that Movant's IQ satisfies Prong 1 – low intelligence quotient – of the intellectual disability definition, Civ. Doc. 150, Appx. 213; Dr. Daniel Martell, Ph.D., confirming that Movant is intellectually disabled, Civ. Doc. 150, Appx. 236; Dr. Leo Shea, III, Ph.D., presenting intelligence testing during § 2255 proceedings that resulted in an IQ score of 69,[18] which satisfies Prong 1 of the intellectual disability definition, Civ. Doc. 150, Appx. 243; Dr. Ruben Gur, Ph.D., analyzing postconviction MRI that documents Movant has an overall small brain, 4.5 standard deviations below the mean (Civ. Doc. 150, Appx. 242).

Throughout these proceedings, Movant has also filed lay witness declarations and records that trial counsel did not investigate and obtain, tending to demonstrate intellectual disability, *see, e.g.*, Civ. Doc. 150, Appx. 1 ¶¶ 17, 20-21, 25; Appx. 3 ¶ 11; Appx. 4 ¶ 23; Appx. 6 ¶¶ 13-20; Appx. 7 ¶ 5; Appx. 10 ¶¶ 39-44,48-53; Appx. 12 ¶¶ 7-12,14; Appx. 15 ¶¶ 11, 14-15, 24-26, 34, 39; Appx. 16 ¶ 20; Appx. 19 ¶¶ 13, 16-17; Appx. 20 ¶31; Appx. 21 ¶¶ 10, 12; Appx. 22 ¶¶ 25, 39, 40, 34, 37, 43; Appx. 219 ¶¶ 5, 10-20, 25; Appx. 220 ¶¶ 4, 6; Appx. 221 ¶¶ 5 ¶; Appx. 222 ¶ 5; Appx. 224 ¶¶ 2, 5, 7, 9-11, 15-16; Appx. 226 ¶¶ 7-9; Appx 227 ¶¶ 2-3; Appx. 228 ¶¶ 3-5, 8, 11; Appx. 229 ¶¶ 9-11; Appx. 230 ¶¶ 2-4, 6-8, and expert reports demonstrating potential etiology for Movant's intellectual disability beginning in utero and the developmental period. *See, e.g.*, Civ. Doc. 150, Appx. 29 (Dr. Gur's quantitative analysis of PET scan); *id.*, Appx. 242 (Dr. Gur's analysis of

---

[18] In reviewing Dr. Shea's testing, Dr. Puente discovered a scoring transposition. When that transposition was fixed, Movant's IQ on Dr. Shea's testing was determined to be 66. Civ. Doc. 150, Appx. 213, ¶ 58. Either score, however, would support an intellectual disability diagnosis.

MRI); *id.*, Appx. 211 (Dr. Julian Davies, M.D. – Alcohol-Related Neurodevelopmental Disorder); *id.*, Appx. 212 (Dr. Andres Lugo, M.D. – neurotoxin exposure, including pesticides and lead); *id.*, Appx. 214 (Dr. Jennifer Sapia, Ph.D. – cumulative trauma's impact on brain).

While the government offers only limited refutations of Movant's allegations of deficient performance, which will be discussed below, the government does not dispute Movant's factual allegations of prejudice. Since these facts are uncontested, they must be assumed true, including:

- Dr. Weinstein conducted additional testing after the *Atkins* hearing and could have testified that it further demonstrated that Movant's IQ is within the intellectually disabled range. Civ. Doc. 146 at 164; Civ. Doc. 150, Appx. 81.

- A neuropsychologist, such as Dr. Antonio Puente, Ph.D., could have testified that government expert Dr. Suarez's IQ tests were psychometrically invalid; the only reliable IQ testing in this case was conducted by Drs. Weinstein and Shea, whose testing revealed IQs of 60 and 66. Dr. Puente further could have testified that this means Movant satisfies Prong 1 – low intelligence – of the intellectual disability definition. Civ. Doc. 146 at 106-15, 164-65; Civ. Doc. 150, Appx. 213.

- A neuropsychologist, such as Dr. Leo Shea, III, could have testified that his intelligence testing of Movant satisfied the low intelligence prong of the intellectual disability diagnosis. Civ. Doc. 146 at 105-16, 131, 134, 136-38, 144, 165; Civ. Doc. 150, Appx. 243.

- A neuropsychologist, such as Dr. Daniel Martell, Ph.D., could have testified that Movant is intellectually disabled, based on his review of the testing, Dr. Puente's analysis, and the collateral information regarding adaptive deficits investigated and compiled in postconviction proceedings. Civ. Doc. 146 at 39, 96, 106-15, 134-36, 166, 170, 176-77; Civ. Civ. Doc. 150, Appx. 236.

- Dr. J. Gregory Olley, Ph.D., could have testified that additional collateral materials he reviewed in these post-conviction proceedings corroborated and strengthened his opinions. Civ. Doc. 146 at 165; Civ. Doc. 150, Appx. 28.

- Movant's history contains many risk factors and potential causes of intellectual disability, including maternal alcohol consumption during pregnancy resulting in ARND, neurotoxic exposure, traumatic brain injury, and cumulative trauma. Doctors, including Drs. Davies, Lugo, Sapia, and Gur, could have testified about Movant's developmental risk factors and structural brain abnormalities. *E.g.*, Civ. Doc. 146 at 166-68; *see also* Civ. Doc. 150, Appxs. 29, 211, 212, 214, 242.

- Movant's family and friends could have testified about the true functional impact of Movant's intellectual disability and low cognitive functioning. This included statements from family and friends that greatly expanded on the very minimal descriptions the jury heard about Movant's inability to supervise Coca-Cola accounts because of difficulties with math. *See* Def. Tr. Ex. 21 at 15:00. Evidence available to trial counsel established that Movant struggled to learn, could not master basic addition or multiplication, had such bad handwriting that people joked that it looked like he was writing with his feet, could not master third-grade academics at age sixteen in night school, made constant mistakes in writing despite correction and was called "dumb." This also included statements from friends and family that he was unable to work, failing at picking coffee because he could not follow basic directions only to pick the red, ripe beans and struggling when a neighbor tried to teach him carpentry because he could not use a measuring tape or learn to sand with the grain. This also included statements from friends and family regarding his uncommon and severe difficulties with memory, including how Movant's father would

become angry because Movant could not remember what to buy at the store; that Movant would forget to bring things to school; and that Movant would forget where he stored his money (when it was stored in his shoe). This included evidence of deficiencies in self-care, including his inability to dress himself or tie his shoelaces. This included witnesses' observations of his immaturity; he would joke inappropriately in serious situations and still acted like a little boy even after he joined MS-13, hanging around younger kids, watching cartoons, and playing children's games (of which he had difficulty learning the rules). Civ. Doc. 146 at 87-95.

As no Court has yet determined whether Movant satisfies the IQ prong of intellectual disability, Movant's proffered IQs are not refuted by the record. Moreover, the government has offered no evidence and pointed to no place in the record to dispute Dr. Weinstein's additional testing, Dr. Shea's testing, Dr. Puente's analysis of Drs. Weinstein, Shea, and Suarez's testing, or Dr. Puente's conclusion that Dr. Suarez's testing was psychometrically invalid. Thus, at this pleading stage, all of Movant's factual assertions must be treated as true.

Nor does the government dispute the facts regarding the lay witness evidence describing Movant's functioning during the developmental period. The government does not dispute that counsel did not interview these witnesses. Nor has the government offered anything to dispute the facts contained in these witness declarations or the experts' reliance on those facts. Movant's facts must be credited as true.

The government also does not dispute the facts contained in Dr. Martell's declaration/report or his conclusion that Movant is intellectually disabled, only offering legally incorrect arguments to discount the import of these opinions. Because the government does not dispute the facts, they must be accepted as true.

76

Finally, the government does not dispute the facts about the potential etiology of Movant's intellectual disability but merely tries to downplay its significance. Again, because the government does not dispute the facts, they must be accepted as true.

### c. The government's discovery response arguments are unavailing.

The government's specific arguments in its discovery response are equally unpersuasive at this stage of proceedings.

First, the government posits speculative and legally erroneous strategic reasons for counsel's performance that exist nowhere in the record. The government's argument that it was not unreasonable for counsel to focus on Movant's school records over anecdotal evidence of poor academic performance as a child, Civ. Doc. 52 at 104, ignores controlling precedent that counsel must investigate "all reasonably available mitigating evidence." *Wiggins*, 539 U.S. at 522. Movant has alleged that additional evidence–and additional sources of evidence–existed beyond that presented at the *Atkins* hearing, but counsel failed to investigate that evidence and those sources. "[A]s *Wiggins* makes clear, an inadequate investigation into potentially mitigating evidence can be, by itself, sufficient to establish deficient performance." *Williams v. Stirling*, 914 F.3d at 314 (citing *Wiggins*, 539 U.S. at 534); *see also Rompilla*, 545 U.S. at 388 (rejecting prosecution argument "that defense counsel's efforts to find mitigating evidence by other means excused them from looking in the prior conviction file"). For a "decision" to be "strategic," that decision must have been made after constitutionally adequate investigation. *Wiggins*, 539 U.S. at 521-22. Here, the deficits documented in Movant's school records should have been a red flag that additional investigation – interviewing individuals who knew Movant when the records were created to develop descriptive, collateral information from those who interacted with him – would have yielded additional helpful information. *See id.*, 539 U.S. at 525 (finding the scope of counsel's investigation was deficient when the records counsel *did* obtain contained helpful information that

77

would have caused "any reasonably competent attorney" to "realize[] that pursuing these leads was necessary"). Movant has proffered evidence that no such investigation occurred here. And the government does not dispute that counsel did not investigate to interview these collateral witnesses, nor does the government dispute the contents of their declarations.

The government's attempts to blame Dr. Olley for counsel's failure to investigate and claim that Dr. Olley conducted a "full investigation" in El Salvador – because he testified that he had enough information to make a diagnosis – are factually and legally erroneous. *See* Civ. Doc. 52 at 104-05. As a factual matter, the government wholly ignores the of-record fact that Dr. Olley stated, in his trial report, that: "My involvement in this case is quite recent and has allowed me time only to interview Mr. Umaña and make one trip to El Salvador to interview witnesses. Thus, this case presents unique challenges in gathering adaptive functioning information." *Atkins Hearing*, Def. Exh. 2 at 9 (Civ. Doc. 150, Appx. 73 at 9). Taken in context, while Dr. Olley had the minimum needed to make a diagnosis, Dr. Olley did not have everything he needed, and trial counsel were on notice that Dr. Olley's limited opportunity to conduct interviews presented "unique challenges in gathering adaptive functioning information." Indeed, Dr. Olley's postconviction declaration documents that the postconviction investigation uncovered evidence he was unaware of when he testified. Civ. Doc. 150, Appx. 28.

As a legal matter, the government's attempt to blame Dr. Olley ignores controlling Supreme Court authority that *investigating* the facts underlying mental health evidence is a task charged to counsel, not the expert. For example, in *Andrus v. Texas*, 590 U.S. 806 (2020), "a clinical psychologist briefly retained to examine a limited sample of Andrus' files had informed [trial counsel] that Andrus may have schizophrenia." *Id*. at 816. The Supreme Court, in finding Andrus's trial counsel ineffective, did not discuss what the *expert* next did with that information,

but what *counsel* should have done: "Clearly, 'the known evidence would [have] le[d] *a reasonable attorney* to investigate further.'" *Id.* (citing *Wiggins*, 539 U.S. at 527) (emphasis added). The same is true here. Dr. Olley was not responsible for directing or conducting the investigation in this case, Movant's trial counsel were. Movant has provided detailed factual proffers of his counsel's deficient performance, and the government does not dispute his proffer regarding the scope of counsel's investigation.

As the government only refutes this limited portion of Movant's fact-supported allegations concerning what counsel did/did not do and why, the rest must be presumed true. *Iqbal*, 556 U.S. at 679; *see also Hall*, 846 F.3d at 765 ("When ruling on a motion to dismiss, courts must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff."). The government does not dispute that trial counsel recognized the need to hire experts to present their case of intellectual disability. The government does not dispute that trial counsel received additional information from Dr. Weinstein after the *Atkins* hearing but did not present that evidence to the Court. The government does not dispute that counsel – faced with wildly divergent IQ tests from Drs. Weinstein and Suarez – failed to investigate (such as getting a second evaluation or a third-party expert to review the testing and figure out why the disparity) to determine the source of that disparity. The government does not dispute the existence of the undiscovered lay evidence described in Claims I, II, and III. The government does not dispute that trial counsel did not present this evidence to their experts. The government does not dispute that trial counsel did not develop or present any evidence from Drs. Puente, Martell, Sapia, Davies, Lugo, Gur, or Shea. The government solely disputes the legal conclusion that counsel's failure to investigate further was unreasonable. The government's legal argument is wrong, and because the government does not dispute the facts, they must be accepted as true.

The government's arguments regarding prejudice are also legally erroneous and based on mischaracterizations of the record and Movant's proffered evidence. The government's reliance on this Court's *Atkins* finding that Movant had not shown current deficits in functional academics, Civ. Doc. 52 at 105, to minimize the import of the uninvestigated, unpresented evidence of deficits in functional academics is legally flawed. "[T]he medical community defines intellectual disability according to three criteria: significantly subaverage intellectual functioning, deficits in adaptive functioning (the inability to learn basic skills and adjust behavior to changing circumstances), and onset of these deficits during the developmental period." *Hall v*, 572 U.S. at 710 (citing *Atkins v. Virginia*, 536 U.S. 304, 308 (2002)). Thus, medicolegally, it is the evidence of Movant's functioning during the developmental period that controls. However, even if Movant's current functioning is relevant, Movant has proffered evidence showing he is still "substantially limited," as the Court required. Crim. Doc. 934 at 14; *see also* Civ. Doc. 146 at 162; Civ. Doc. 150, Appx. 245 (2011 Federal Bureau of Prisons Inmate Skills Development Plan) (compiling Movant's educational history, stating "intellectual deficits were noted," Movant had not completed the third grade despite several attempts, and had limited or no English fluency). The government has offered nothing to dispute the validity of the government's own BOP document. Given the close nature of the Court's call on functional academics, *see* Crim. Doc. 934 at 14-15, it is more than plausible at this pleading stage that Movant's proffered evidence could have tipped the scales.

Movant's proffered evidence also shows the error of the government's cumulativeness argument. *See* Civ. Doc. 52 at 104. Movant has proffered evidence showing that an expert, such as Dr. Daniel Martell, Ph.D., would have explained the importance of "convergent validity" when evaluating evidence of adaptive functioning. That is, Dr. Martell concluded that Movant has "significant deficits or impairments in all three domains of adaptive functioning" because there "is

substantial convergent validity from anecdotal, contemporaneous, and empirical data sources." Civ. Doc. 150, Appx. 236 at 32. Thus, contrary to the government's assertions, Dr. Olley's statement in his post-conviction declaration that the new materials are consistent with his earlier opinion, Civ. Doc. 52 at 105, does not negate the importance of the new materials but bolsters their importance.

While the government is correct that this Court did not rule on the IQ prong of intellectual disability, Civ. Doc. 52 at 105, that does not make Movant's proffer of additional intelligence testing irrelevant here. To prevail on this claim, Movant carries the burden of demonstrating a reasonable probability of a more favorable outcome at his *Atkins* hearing; the relevant outcome is a reasonable probability that this Court would have found him intellectually disabled had trial counsel performed effectively. Thus, Movant's claim necessarily includes all allegations of deficient performance and prejudice, including deficient performance in the investigation and presentation of IQ evidence and proffered evidence showing Movant satisfies all three prongs of Intellectual Disability. The government has offered nothing to factually dispute the proffered evidence, including, most importantly, Dr. Puente's analysis of the three doctors' scores, the determination that Suarez's scores are psychometrically invalid, and the conclusion that Movant satisfied Prong 1 based on Drs. Shea and Weinstein's testing. Drawing all reasonable inferences in favor of Movant, Movant has made more than a plausible showing regarding Prong 1.

Finally, the government argues that Movant's proffered evidence of trauma would not have affected the pretrial *Atkins* determination because Dr. Olley testified it is not necessary to identify an etiology of intellectual disability. Civ. Doc. 52 at 103-04. However, Movant has proffered additional evidence from Dr. Olley in his postconviction declaration that, while etiology is not necessary, *it is helpful*. Civ. Doc. 150, Appx. 28 ¶ 6. Indeed, as demonstrated in several of

81

Movant's mental health evidentiary proffers, etiology is an important consideration in evaluating an individual, and Movant has numerous risk factors and overlapping etiologies for impairment. *See*, *e.g.*, Civ. Doc. 150, Appxs. 211, 212, 214, 243 (Dr. Davis, Lugo, Sapia, and Shea). *See also* Crim. Doc. 934 at 18-19 (this Court reviewing evidence of etiology in considering age of onset).

### d. Conclusion

By misstating the controlling law and failing to meet its Rule 5 burden, the government effectively ignores extensive facts presented by Movant. Those facts are not contradicted by the record, and the government has declined to offer any evidence to contradict them, so are presumed to be true. Movant has therefore pleaded a plausible claim for relief and dismissal for failure to state a claim is improper.

3. **Movant Has Stated a Plausible Claim That He Is Intellectually Disabled and Appellate Counsel Ineffectively Litigated This Issue on Direct Appeal (Claim IV).**

If this Court finds that it is bound by Judge Conrad's pretrial *Atkins* ruling in assessing whether Movant has intellectual disability when assessing the merits of Claim II.F regarding counsel's ineffective failure to investigate, develop, and present a mental health defense at the guilt phase, it should reject the government's mootness argument, Civ. Doc. 187 at 81-82, and address the merits of this claim. *See supra* Section III.D.

If this Court reaches the merits of this claim, which proffers that Movant meets the standard for Intellectual Disability and appellate counsel ineffectively litigated Movant's intellectual disability on direct appeal, it should reject the government's arguments that this claim should be dismissed. Briefly, the government argues:[19] (1) relying on this Court's 2022 Discovery Order and

---

[19] The government presents a fourth argument regarding the timeliness of all Movant's allegations of appellate ineffectiveness that is addressed in *infra* Section IV.C.

the government's prior discovery response, that Movant cannot relitigate his *Atkins* hearing in his 2255 proceedings, Civ. Doc. 187 at 26; *id.* at 82 (citing Civ. Doc. 108 at 35; Civ. Doc. 52 at 114-18)); (2) that Claim IV fails because this Court has already determined Movant is not intellectually disabled, citing this Court's Discovery Order ruling that Movant failed to state a "prima facie claim" for relief, Civ. Doc. 187 at 83 (citing Civ. Doc. 108 at 35; Civ. Doc. 52 at 114-18); and (3) relying on its prior discovery response, the government argues this claim is procedurally defaulted because Movant did not challenge the *Atkins* determination on direct appeal, *id.* These arguments, primarily made in documents that are now nullified and otherwise do not control the substance of this claim, are factually and legally incorrect.

The government's arguments to dismiss Claim IV do not contain any factual allegations conclusively disproving Movant's fundamental proffer that since before the age of 18, he has been intellectually impaired and suffered adaptive deficits such that he is intellectually disabled as defined by *Atkins* and its progeny. Civ. Doc. 146 at Claims I, II, III, & IV. Absent any conclusively disproving facts, those factually supported allegations are presumed to be true. *Iqbal*, 556 U.S. at 679; *see also Hall*, 846 F.3d at 765 ("When ruling on a motion to dismiss, courts must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff."). Instead, the government's dismissal arguments insist that Movant has missed the boat for presenting this uncontested evidence that he is intellectually disabled.

> a. *The History of This Claim, the Supreme Court's Atkins Jurisprudence, and Status of Counsel.*

This claim involves the complicated interaction of Movant's trial and direct appeal, intervening Supreme Court opinions, and the changing statuses of Movant's counsel. The government itself has fallen afoul of these complications, arguing on the one hand that the claim is defaulted because Movant did not raise it on appeal, Civ. Doc. 187 at 82, but on the other hand,

arguing that the claim is barred because it *was* litigated on appeal, *id*. The history of the claim follows:

- March 2010: This Court denied Movant's pretrial *Atkins* motion, holding that "the defendant has not established by a preponderance of the evidence that he is mentally retarded." Crim. Doc. 934 at 1. The Court declined to resolve conflicting expert findings regarding IQ scores, instead finding that Movant had not proven, by a preponderance of evidence, the second (adaptive deficits) and third (age of onset) prongs of intellectual disability. *Id.* at 5, 18-19.

- September 3, 2013: Movant's appellate counsel (who were later his initial 2255 counsel) filed Appellant's Opening Brief in the Fourth Circuit. In Claim XII of that Brief, appellate counsel raised an extensive challenge to the allocation of the burden of proof at the pretrial *Atkins* hearing. Appellate counsel also directly challenged this Court's denial of *Atkins* relief. Appellate Br., *Umaña v. United States*, No. 10-6 (4th Cir.), Doc. 99.

- October 21, 2013: The United States Supreme Court granted certiorari in *Hall v. Florida*. 571 U.S. 973 (2013).

- April 23, 2014: The Fourth Circuit affirmed Movant's convictions and death sentences. On the *Atkins* claim, the Fourth Circuit found that any error regarding allocation of the burden of proof was invited by trial counsel and expressly stated Movant "does not challenge the merits of the district court's findings with respect to his claim of mental retardation." *Umaña v. United States*, 750 F.3d 320, 358 (4th 2014).

- May 7, 2014: Movant's appellate counsel filed a Petition for Rehearing En Banc. No facet of the *Atkins* issue was included in the Petition for Rehearing. *Umaña v. United State*s, No. 10-6, (4th Cir.), Doc. 136.

- May 27, 2014: The United States Supreme Court issued its opinion in *Hall v. Florida*, 572 U.S. 701 (2014).

- June 27, 2014: The Fourth Circuit denied Movant's Petition for Rehearing En Banc. 762 F.3d 413 (4th Cir. 2014).

- November 24, 2014: Appellate counsel filed a Petition for Writ of Certiorari. The Petition for Writ of Certiorari did not include the *Atkins* issue. *Umaña v. United States*, No. 14-602 (U.S.).

- June 3, 2015: This Court appointed Movant's appellate counsel to represent him in these 2255 proceedings, effective upon denial of certiorari. Crim. Doc. 1621.

- June 22, 2015: The United States Supreme Court denied Movant's Petition for Writ of Certiorari. 576 U.S. 1035 (2015).

- June 22, 2016: Appellate/2255 counsel filed Movant's 2255 Motion, which included Claim III (raising trial counsel's ineffectiveness in investigating and presenting evidence at the pretrial *Atkins* hearing) and Claim IV (alleging that Movant's death sentence must be vacated because he is intellectually disabled, relying on *Hall v. Florida* to challenge this Court's pretrial *Atkins* determination). Civ. Doc. 24.

- February 22, 2017: This Court appointed undersigned counsel's office, effective upon undersigned's entry of appearance. Civ. Doc. 49.

- February 22, 2018: Within one year of her appointment, undersigned counsel requested leave to file a supplemental/amended 2255 motion that included a claim of appellate counsel's ineffectiveness in litigating the *Atkins* claim on direct appeal. Civ. Docs. 68, 71.

- October 11, 2022: This Court denied the February 2018 request for leave to amend. Civ. Doc. 131.

- March 2, 2023: The government filed a Motion to Dismiss alleging, *inter alia*, that Claim IV was procedurally defaulted because it could have been, but was not, raised on direct appeal. Civ. Doc. 143.

- March 23, 2023: Movant filed an Amended 2255 Motion in response to the government's Motion to Dismiss. Movant's amendment included additional factual proffers and another allegation that appellate counsel were ineffective in litigating the *Atkins* claim on direct appeal. Civ. Doc. 146 at 177-80.

- January 6, 2026: this Court deemed the March 2023 Amended 2255 Motion the operative complaint. Civ. Doc. 179.

      b.   *Movant's Amended Claim as States in the Operative 2255 Motion.*

Movant alleged that appellate counsel were ineffective for failing to raise the Supreme Court's opinion in *Hall v. Florida*, 572 U.S. 701 (2014), on appeal to challenge this Court's pre-trial *Atkins* determination. Civ. Doc. 146 at 177-80.

As the record makes clear, the Supreme Court issued its opinion in *Hall* on May 27, 2014. 572 U.S. 701 (2014). One month later, the Fourth Circuit denied Movant's Petition for Rehearing En Banc. *Umaña*, 762 F.3d 413. Movant's case was not yet final when *Hall* was decided, so *Hall* controlled. *See Department of Banking of Nebraska v. Pink*, 317 U.S. 264, 266 (1942) ("[A] timely

petition for rehearing . . . operates to suspend the finality of the . . . court's judgment, pending the court's further determination whether the judgment should be modified so as to alter its adjudication of the rights of the parties."). The question, then, is whether counsel were ineffective for failing to raise *Hall*. Although the government offers nothing to address these allegations other than generalized assertions that appellate counsel's overall performance was not deficient, *see* Civ. Doc. 187 at 119-26, it is worth summarizing them here under the Rule 12(b)(6) standard.

In *Hall*, the Supreme Court clarified that, when conducting an *Atkins* review, courts must follow the medical community's standards in determining intellectual disability. 572 U.S. at 719-20. While *Hall* specifically held that Florida must follow the medical community's standards in defining IQ, *id.* at 723, the Court's reasoning necessarily applies to all three of the *Atkins* prongs (as all three are medical terms of art drawn from the medical community, *id*. at 710 (citing *Atkins*, 536 U.S. at 308). Consequently, because the medical community expressly requires adaptive deficits be assessed according to the patient's *weaknesses*, not their other strengths, *see* Civ. Doc. 146 at 171-74 (describing medical community standards), and directs that institutional witnesses are not suitable witnesses for determining adaptive deficits, Civ. Doc. 146 at 172-73, the courts may not do otherwise.[20]

In denying Movant's pre-trial *Atkins* motion, this Court analyzed only Movant's strengths and relied on statements provided by institutional witnesses to refuse to find adaptive deficits. Civ. Doc. 146 at 168; *see also* JA 998-1015, 1000-1001 (incomplete legal standards), 1003-15 (refusing adaptive deficits based on behavioral strengths). By using standards rejected by the medical community to decide Movant's *Atkins* motion, this Court contravened *Hall*. Civ. Doc. 146 at 168-

---

[20] Movant argued that he fits the medical community standards for intellectual disability, Civ. Doc. 146 at 174-77, to suggest that this Court's error in analysis is not harmless.

77. Thus, had appellate counsel raised *Hall* on appeal, there is a reasonable probability this Court's *Atkins* denial would have been reversed, and the matter remanded for proceedings pursuant to *Hall.* Movant has therefore pled allegations that present a plausible claim of prejudice.

Given the specific circumstances of the case, the question of counsel's performance depends to a great extent on whether a vehicle existed by which appellate counsel could have raised *Hall* while Movant's Petition for Rehearing was pending. The answer is a resounding yes. As cases across the country demonstrate, appellate counsel could have filed a supplemental brief or a 28(j) letter in the Circuit.[21] Counsel also could have requested the Fourth Circuit remand this issue to this Court for reconsideration under *Hall.*[22] And counsel could have raised this issue on

---

[21] *See*, *e.g.*, Order, *Pizzuto v. Blades*, No. 12-99002 (9th Cir. Nov. 4, 2013) (staying proceedings pending the Supreme Court decision in *Hall v. Florida*); Petitioner's Supplemental Brief, *Pizzuto v. Blades*, No. 12-99002 (9th Cir. July 14, 2014) (filing supplemental brief asking court to vacate court and district court's order and remand in light of *Hall*); *Pizzuto v. Yordy*, 947 F.3d 510, 534 (9th Cir. 2019) (concluding that petitioner failed to satisfy § 2254(d) regarding state supreme court's 2008 decision denying petitioner's *Atkins* claims); Petitioner's Rule 28(j) Letter considering *Hall*, *Van Tran v. Colson*, No. 11-5867 (6th Cir. May 30, 2014) (arguing that *Hall* supports petitioner's claim of intellectual disability); *Van Tran v. Colson*, 764 F.3d 594, 626 (6th Cir. 2014) (holding that state court's application of state law on intellectual disability was contrary to clearly established federal law, and thus vacating and remanding to district court so that it may grant a conditional writ of habeas corpus prohibiting execution unless state completes new *Atkins* hearing); Petitioner's Reply Brief at 27, *Webster v. Caraway*, No. 14-1049 (7th Cir. June 4, 2014) (referencing *Hall* in brief filed eight days after *Hall*'s issuance); *Webster v. Lockett*, 2:12-CV-86-WTL-MJD, 2019 WL 2514833 (S.D. Ind. June 18, 2019), *aff'd sub nom. Webster v. Watson*, 975 F.3d 667 (7th Cir. 2020) (finding petitioner met criteria for intellectual disability and was ineligible for death penalty); Petitioner's Motion For Supplemental Briefing, *Williams v. Mitchell*, No. 12-4269 (6th Cir. June 5, 2014) (explaining "the impact of *Hall* is so pervasive that it is not possible to fully and properly address it in the 350-word limit of Fed. R. App. P. 28(j)" and requesting supplemental briefing); *Williams v. Mitchell*, 792 F.3d 606, 620 (6th Cir. 2015) (faulting the state supreme court for failing to apply medical and clinical definitions of intellectual disability as set forth in *Hall* and *Atkins*).

[22] *See, e.g.*, *United States v. Wilson*, 571 Fed. Appx. 19 (2d Cir. 2014) (remanding sua sponte for reconsideration under *Hall*); *United States v. Wilson*, 170 F. Supp. 3d 347 (E.D.N.Y. 2016) (concluding that court's prior determination that petitioner was not intellectually disabled was incorrect because *Hall* required court to apply two-standard error margin to IQ score), *reversing United States v. Wilson*, 922 F. Supp. 2d 334, 368 (E.D.N.Y. 2013).

certiorari to the Supreme Court.[23] Clearly, counsel could have ensured *Hall* was applied to Movant's *Atkins* claim on appeal (along with ensuring that the claim was actually addressed at all).

Moreover, appellate counsel *should* have done the same here. The sheer number of example-cases shows that it was a professional norm across the country for counsel with cases in similar positions to act immediately to ensure *Hall* would be applied. ABA, Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases, 2003, Guideline 10.15.1.C ("Post-conviction counsel should seek to litigate all issues, whether or not previously presented, that are arguably meritorious … . . .  Counsel should make every professionally appropriate effort to present issues in a manner that will preserve them for subsequent review."). Thus, Movant's factually supported allegations state a plausible claim that counsel were unreasonable in deciding not to raise *Hall* or for failing to realize that *Hall* applied and could be raised.

In assessing whether Movant has stated a claim for which relief can be granted, Rule 12(b)(6), the Court assumes all of Movant's factually supported allegations to be true and resolves all reasonable inferences therefrom in Movant's favor, unless they are conclusively disproven by the record. *Iqbal*, 556 U.S. at 679; *Nemet*, 591 F.3d at 255; *see also Hall*, 846 F.3d at 765. As the record confirms Movant's allegations and the government has not presented any evidence disputing those allegations, and all reasonable inferences therefrom, are presumed true. The

---

[23] *See, e.g.*, Petition for Writ. of Cert., No. 13-1433, *Brumfield v. Cain* (U.S. May 29, 2014) (seeking petition for writ of certiorari, in part, relying on *Hall*); *Brumfield v. Cain*, 576 U.S. 305, 315 (2015) (holding in light of *Hall* that state court's conclusion that reported IQ score of 75 could not establish intellectual disability was an unreasonable determination of facts); *Brumfield v. Cain*, 808 F.3d 1041, 1043 (5th Cir. 2015) (upholding district court's initial determination that petitioner was intellectually disabled and ineligible for death penalty under *Atkins*).

allegations presented in this claim state a plausible claim of appellate ineffectiveness that should not be dismissed at this pleading stage for failure to state a claim.

### c. *Movant's claim is not defaulted.*

The government argues that this claim is defaulted because it was not raised on appeal but also argues that the claim is barred because it was raised on appeal. Civ. Doc. 187 at 82. Clearly, there is confusion about to whether this claim was or was not raised on appeal. Before addressing confusion over whether the claim *was* raised on appeal, it is necessary to consider whether it *could* have been raised on appeal. *Hall* directed that courts must follow "medical community standards" in assessing *Atkins* claims, a clarification not previously directly acknowledged. Therefore, to meet the *Hall* analysis, Movant would have required evidence not in the trial record to show what the "medical community standards" were and how each expert had appreciated or failed to appreciate those standards. *See* Civ. Doc. 146 at 171-77.

Further, to present the *Hall* claim, Movant would have needed to develop further extra-record facts regarding intellectual disability, specifically his deficits before the age of 18. Civ. Doc. 150, Appx 18 ¶¶ 17-21.[24] Movant was prevented by the government from gathering some of these facts. The sole family witness relied on by defense counsel, Movant's father Rafael Umaña, possessed information relevant to that issue, as he raised Movant from late childhood (after Movant's great-grandmother died) through approximately age 15. These years, during the developmental period, which independently stands as the third 'prong' of Intellectual Disability,

---

[24] Movant's presentation of these facts in these 2255 proceedings is timely because the government, by harassing Rafael Umaña before trial, prevented Movant from developing them at trial or on appeal. *See* PPT 04/26/10 at 524, JA 3091; Civ. Doc. 150, Appx. 18 at ¶¶ 23-24. Movant has sought, and will continue to seek, discovery proving the harassment and that the government collected information from Rafael Umaña and similar information from Leticia Ramirez Diaz (Mr. Umaña's mother) to support Movant's intellectual disability.

provided a rich source of data to support the claim of Intellectual Disability. For example, Rafael possessed more detailed information about Movant dropping out of school and about Movant's inability to remember easy things than what he provided to the trial defense team, having been chilled by the government. Civ. Doc. 146 at 174-75; Civ. Doc. 150, Appx. 18 at ¶¶ 15, 17.

Thus, to prove his *Hall-Atkins* claim, Movant would have required extra-record evidence. As detailed in *supra* Section III.B., a claim that depends on extra-record evidence is inappropriate for direct appeal and so is properly brought in this § 2255 proceeding. That being the case, Movant's Claim IV is properly before the Court now and is not defaulted.

Moreover, contrary to the government's argument that the Court's 2022 Discovery Order directs the determination that this claim is foreclosed by the relitigation bar, Civ. Doc. 187 at 82, Movant's 2023 Amended 2255 Motion effectively nullified that Order, along with the government's Discovery Response that preceded it. *Supra* Section III.C. The 2023 Amended 2255 Motion amended Claim IV to add allegations addressing whether the claim had been raised on appeal and the allegation of appellate counsel's ineffectiveness. Civ. Doc. 146 at 177-80.[25]

Turning to the government's confused argument that Movant did, but also did not, previously raise this claim on appeal, it is clear from the record that Movant's direct appeal Opening Brief contained a direct challenge to this Court's *Atkins* determination. Civ. Doc. 146 at 177; Br. for Def.-Appellant at 150, *United States v. Umaña*, No. 10-6 (4th Cir. Sept. 3, 2013), App.

---

[25] This amendment was necessary because proceedings under § 2255, generally, are a criminal defendant's first opportunity to litigate the ineffectiveness of their appellate counsel. *See supra* Section III.B. As such, a claim of appellate counsel ineffectiveness is properly brought in § 2255 proceedings. Movant was prevented from including this allegation of appellate counsel's ineffectiveness in his initial 2016 2255 Motion because appellate counsel were also his 2255 counsel and so could not claim their own ineffectiveness. *See* Civ. Docs. 68, 86, 94, 95, 107, 146 at 3-4 & n.3.

Doc. 99. The Fourth Circuit, though, noted that Movant did not make such a challenge. *Umaña*, 750 F.3d at 358. Appellate counsel filed a Petition for Rehearing En Banc but did not seek to resolve the Panel's error and did not seek review of their briefed argument challenging this Court's pre-trial *Atkins* determination. While that Petition for Rehearing was pending, the Supreme Court issued its *Hall* opinion. Appellate counsel made no attempt to alert the Circuit of that intervening opinion or seek to amend their Petition in light of *Hall*. It is this collection of failures that Movant alleged as the basis for his amended ineffectiveness of appellate counsel claim in the current iteration of this claim.

Ineffective assistance claims are properly brought in § 2255 motions. *Supra* Section III.B. The government's effort to apply the procedural bar should therefore be rejected, and this Court should review Movant's ineffectiveness claim on its merits, which necessarily includes review of the underlying *Atkins* claim. Alternatively, because ineffective assistance of counsel can constitute cause and prejudice to overcome the bar alleged by the government, the ineffectiveness of appellate counsel constitutes cause and prejudice to overcome any purported default of Movant's underlying challenge to this Court's pretrial *Atkins* determination. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986). The government's argument that Movant cannot establish that he suffered actual prejudice to overcome any procedural default of this issue because he is now serving a life sentence due to the commutation, Civ. Doc. 187 at 82-83, is unavailing for the reasons stated above explaining why this claim may not be moot. *See* Section III(D). To the extent that this Court might believe it is bound by the prior Intellectual Disability ruling when considering Movant's challenge to trial counsel's ineffective failure to develop and present a mental health defense at the guilt phase, Movant is still suffering actual consequences of the pretrial ruling and counsel's ineffectiveness regarding intellectual disability in both this Court and during direct appeal. This

Court can reach the merits of Movant's claim that the prior pretrial determination of Movant's intellectual disability violated *Hall* and that he is intellectually disabled, a condition that not only made him exempt from the death penalty but which was also relevant to a reasonably-available guilt phase mental health defense.

### d. Movant is not seeking to "relitigate" his Atkins hearing.

The government argues that Movant's claim is barred as an attempt to relitigate his *Atkins* hearing. Civ. Doc. 187 at 82. That argument misunderstands and misapplies that bar. First, neither this Court nor the Fourth Circuit resolved the substance of the claim, as neither court held that Movant *is not* intellectually disabled. *Umaña*, 750 F.3d at 358; Crim. Doc. 934 at 1 (holding "the defendant has not established by a preponderance of the evidence that he is mentally retarded," not conclusively saying Movant is not Intellectually Disabled). Thus, he is not attempting to relitigate the substance of his claim. Instead, Movant alleges that his *Atkins* claim has never properly been litigated due to counsel's ineffectiveness. He, therefore, seeks recognition and correction of this Court's denial of his *Atkins* motion in light of controlling, contrary caselaw and seeks one procedurally fair opportunity to prove he is intellectually disabled.

The Supreme Court's decision in *Hall* clarified the law to fix errors that lower courts had made since *Atkins* was decided – i.e., not applying the established medical community standards. This Court did not have the opportunity to consider and apply *Hall* because *Hall* was decided while this case was on direct appeal, and appellate counsel ineffectively failed to request a remand from the Fourth Circuit to allow this Court to consider this issue in the first instance. The Fourth Circuit did not have the opportunity to consider and apply *Hall* because appellate counsel ineffectively failed to request a stay of proceedings pending *Hall* and ineffectively failed to use one of the many vehicles available to raise *Hall* once that case was decided. Indeed, even ignoring *Hall*, appellate

93

counsel did not even do the bare minimum and request the Fourth Circuit rule on the *Atkins* challenge they briefed.

> e. *Were the legal status of Movant's commutation to change, it would also be a miscarriage of justice to refuse to review Movant's intellectual disability claim under controlling legal standards when that claim exempts him from death eligibility.*

Denying Movant the opportunity to have this claim heard under controlling legal standards articulated by the United States Supreme Court *during his direct appeal* would constitute a miscarriage of justice when his intellectual disability – appropriately considered under those controlling standards – renders him actually innocent of the death penalty. *See Murray*, 477 U.S. at 496; *Schlup*, 513 U.S. at 327; *Sawyer v. Whitley*, 505 U.S. 333, 336 (1992). When a movant asserts his actual innocence of the death penalty, he must "show by clear and convincing evidence that, but for a constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty." *Sawyer*, 505 U.S. at 336. In this case, had this Court had the opportunity to apply the controlling legal standards in *Hall* and found Movant intellectually disabled – as *Hall* requires – Movant's trial would never have even proceeded to a capital sentencing phase.

Movant's factual proffers – both in Claim IV and in Claims I, II, and III – constitute a plausible showing of intellectual disability under clinical/medical community standards. Movant has made a sufficient showing to survive dismissal at this pleading stage and proceed to further factual development of this claim.

> f. *Were the legal status of Movant's commutation to change, this Court could also review this claim because Movant's Intellectual Disability is jurisdictional, can be raised at any time, and is therefore not defaulted.*

28 U.S.C. § 2255 allows a prisoner to raise either constitutional or jurisdictional challenges to his conviction and sentence. *United States v. Martinez*, No. 3:04CR297, 2008 WL 2762211, at *1 (W.D.N.C. July 14, 2008). Because a challenge under *Atkins* asserts that the prohibition against

94

cruel and unusual punishment in the 8th Amendment restricts the authority of the courts to execute offenders, an *Atkins* challenge is both a constitutional and jurisdictional challenge to a trial court's authority to impose a death penalty, *see Atkins*, 536 U.S. at 321 (citing *Ford v. Wainwright*, 477 U.S. 399, 405 (1986)) ("Construing and applying the Eighth Amendment in the light of our 'evolving standards of decency,' we therefore conclude that such punishment is excessive and that the Constitution 'places a substantive restriction on the State's power to take the life' of a mentally retarded offender.)."

### g. Conclusion

Movant has established that this claim cannot be dismissed. If *Hall* were the standard all along, this Court clearly applied the wrong standard at the pretrial *Atkins* hearing. If *Hall* clarified or changed the standard, this Court never had the opportunity to apply the correct standard. Regardless, either of these issues was available to appellate counsel to raise when *Hall* was decided during Movant's direct appeal. Appellate counsel did nothing.

Now before this Court is an intellectually disabled man who has never had one fair opportunity to have his intellectual disability considered under controlling standards. Movant has proffered facts and legal arguments that this Court never had the opportunity to consider in passing on this weighty issue. Movant has stated a plausible claim for relief that should not be dismissed.

4. **The Facts Contained in Claim VI.C – Regarding the Prosecution's Violation of its *Brady* Obligations Regarding the *Atkins* Determination – State a Plausible Claim for Relief.**

If this Court finds that it is bound by Judge Conrad's pretrial *Atkins* ruling in assessing whether Movant has intellectual disability when assessing the merits of Claim II.F regarding counsel's ineffective failure to investigate, develop, and present a mental health defense at the guilt

phase, it should reject the government's mootness argument regarding Claim VI.C,[26] Civ. Doc. 187 at 25, 72-73, and address the merits of this claim. *See supra* Section III.D.

If this Court reaches the merits of this claim, which proffers that the government's failure to disclose Movant's Guatemalan birth certificate and information obtained from Movant's mother prior to the *Atkins* hearing violated *Brady*, it should reject the government's contention that this claim should be dismissed based on the Court's prior, now mooted discovery order and the government's prior discovery response, *id.* at 26, 73, because this Court found in its discovery order that Movant failed to allege facts identifying *Brady* material that the government failed to disclose. *Id.* at 73. At the motion to dismiss stage, Movant's factual allegations must be accepted as true and Movant need only demonstrate a plausible claim for relief. *Twombly*, 550 U.S. at 556. Movant has done that here.

In the Operative 2255 Motion, Movant alleged that his mother, Leticia Ramirez, provided the government critical information regarding his family history, birth, trauma, and abuse that were not known to the defense and which the government still has not fully disclosed. Civ. Doc. 146 at 254-62; Civ. Doc. 150, Appxs. 10, 75, 218. Movant further alleged the reasonable inference that the government possesses additional mitigation evidence that it has not disclosed. *Id.*

Movant also alleged that the government violated *Brady* with its late disclosure of Movant's Guatemalan birth certificate, which documented that he was born in 1982, rather than 1984, as all experts at the *Atkins* hearing had believed. Civ. Doc. 146 at 256-57.

### a. Information from Movant's Mother, Leticia Ramirez

Contrary to the government's assertions in its incorporated discovery response, Civ. Doc. 52 at 53, the information learned from Ms. Ramirez was not confined to three narrow facts.

---

[26] Movant will address the remainder of this claim in Part D.3, below.

Although Ms. Ramirez's declaration provides examples of the information she gave the prosecution, it was not an exclusive list. In fact, she specifically stated that she spoke to the government on at least two occasions and had a formal extended interview with the prosecution in a hotel room where she told them much of what is contained in the declaration including the listed examples. Civ. Doc. 150, Appx. 10. She also spoke to a local police officer who went to her home to obtain information on behalf of the FBI. *Id.*; Civ. Doc. 147, Appx. 44. Movant has proffered sufficient evidence that the government learned far more social history/mitigation evidence than it has been willing to concede. *See United States v. King*, 628 F.3d 693, 702-03 (4th Cir. 2011) (holding different standard applies when "Government prevents him from ever seeing that evidence" and "an accused cannot possibly know, but may only suspect, that particular information exists which meets [the *Brady*] requirements").

Moreover, the undisclosed evidence was not "known by the defendant," Civ. Doc. 52 at 55, simply because it concerned his life. Although Movant would know that he was not raised by his mother, he likely did not know, or was not able to understand, that his father was a monstrously abusive man to his mother; that while she was pregnant with Movant, the abuse did not end, he forced her into prostitution, and alternately beat her and provided her with drugs and alcohol; and that she had to flee to escape his father. Nor can it be said that Movant knew or understood the reasons why his family fled to Guatemala prior to his birth. Moreover, what Movant "knew" about his life history must be viewed in the context of a man who has suffered significant trauma, neglect, and abuse from before birth, which impaired his ability to understand and report on his life history. *See Rompilla*, 545 U.S. 374 (finding competent mitigation investigation involves information outside of defendant's self-reporting); *see also* Civ. Doc. 150, Appx. 214 at 22 (Declaration of Dr. Sapia) (how Movant's impairments prevent him from being an accurate historian of his own social

history); *id.*, Appx. 73 at 9 (Dr. Olley trial report); *Atkins* Hearing 11/30/09 at 42 (Olley testimony that he would not rely on self-report of person with low intelligence); Civ. Doc. 71 at 2-13 (Supplemental/Amended claim that Movant was incompetent at trial and on direct appeal); Civ. Doc. 82 (counsel's request to stay these proceedings due to Movant's incompetence).

However, even if the evidence was "known" to Movant, that does not absolve the prosecution of its *Brady* obligations. *Cone*, 556 U.S. at 470-71, 475 (finding that prosecution suppressed exculpatory evidence of defendant's own drug use history; noting possibility that information about defendant's drug use from sources in addition to the defendant "might also have rebutted the State's suggestion that Cone had manipulated his expert witnesses into falsely believing he was a drug addict").

And, at trial the government was on notice that the defense did not know the facts surrounding important details of Movant's life history. The government was first notified when counsel moved to continue trial because the defense "has only met with one member of defendant's family"; that person (the father) appears unwilling to assist because of the government's attempts to interview him; and the defense was left "with very little to present to the defendant's capital jury about defendant's life and background." Civ. Doc. 50, Exh. 1 at 486-88. Subsequently, when the prosecutor referred to Movant's father as a drug dealer in El Salvador, defense counsel informally requested any evidence of this from the government because the defense had no understanding of this evidence and believed that it would be mitigating. Civ. Doc. 150, Appx. 49. On yet another occasion, the defense advised the government that they had not received any information about what was learned during the government's interview with Ms. Ramirez. *Id.*, Appx. 74. Despite being put on notice, the government continued to suppress evidence.

98

The government attempts to disparage the import of Movant's *mother's* evidence because she was only present for the first few months of his life. Civ. Doc. 52 at 55. Movant has addressed those allegations, *infra* Section IV.D.1.a.ii.

The government's reliance on a footnote in *Agurs*, for the proposition that it was not required to "communicate preliminary, challenged, or speculative information," Civ. Doc. 52 at 55 (citing *Agurs*, 427 U.S. at 110 n.16), is misplaced. Movant has proffered a declaration from his mother that she told government agents mitigating evidence about his life. Civ. Doc. 150, Appx. 10. Movant has also proffered declarations from other individuals who corroborate the information provided by Leticia about Movant's life. *See* Civ. Doc. 146 at Claim I. Although the government challenges whether it knew about Leticia's potential testimony, the government has provided nothing in response to challenge the substantive information Leticia provided about Movant's life. The government's insinuation, through its quotation of the *Agurs* footnote, that her evidence is somehow "preliminary, challenged, or speculative," with absolutely nothing factual to back up its argument, must be rejected at this Rule 12(b)(6) stage, when Movant's uncontested facts must be assumed true.

Moreover, the government misapprehends controlling law. "[T]he prudent prosecutor will resolve doubtful questions in favor of disclosure." *Agurs*, 427 U.S. at 108. The Supreme Court observed that "[t]his is as it should be" because it justifies trust in the prosecutor, but also because "it will tend to preserve the criminal trial, as distinct from the prosecutor's private deliberations, as the chosen forum for ascertaining the truth about criminal accusations." *Kyles*, 514 U.S. at 439-40 (internal citations omitted). Leticia's information was relevant to the *Atkins* hearing and mitigating to sentence, and as such was both exculpatory and material. Movant has stated a plausible claim for relief.

### b. The Guatemalan Birth Certificate

The government's procedural default arguments regarding the Guatemalan birth certificate must be rejected. Civ. Doc. 52 at 56. The government misapprehends the nature of Movant's claim. The birth certificate was *not* available in time for counsel to use it at the *Atkins* hearing. Moreover, counsel stated in their declarations that they did not have time to use the information that accompanied the birth certificate to locate Letica given the late disclosure, Civ. Doc. 150, Appx. 23 ¶ 7; *id.*, Appx. 24 ¶ 6; and the government has asserted there is no reasonable probability this Court would have granted a continuance. Civ. Doc. 52 at 98.

This claim was likewise not available to appellate counsel as it required the development of facts outside of the record, including what the government knew and when. *See* Civ. Doc. 146 at 254-65. Alternatively, assuming the factual basis of this claim was available to appellate counsel, appellate counsel's ineffectiveness constitutes cause and prejudice to overcome default. *Murray*, 477 U.S. at 488. There can be no reasonable strategy not to have raised this claim if it was patent on the face of the record. Because the government violated *Brady*, there is a reasonable probability Movant would have succeeded on direct appeal.

While it is an open question in the Fourth Circuit whether the government's *Brady/Napue* obligations apply to pretrial hearings, *see United States v. Williams*, 10 F.3d 1070, 1077 (4th Cir. 1993), the United States Supreme Court has been clear that due process is violated when the withheld evidence had "any adverse effect" upon the defendant's ability to prepare for trial or present a defense, *Bagley*, 473 U.S. at 683 ("[T]he reviewing court may consider directly any adverse effect that the prosecutor's failure to respond might have had on the preparation or presentation of the defendant's case.").

The government's claim that it timely disclosed the birth certificate because it did so before trial, at a time when counsel could have requested reconsideration of the *Atkins* determination

100

and/or a trial continuance, Civ. Doc. 52 at 57, ignores the fact that the government also argues, in the same brief, that "no reasonable probability exists that this Court would have granted a request for a continuance." *Id*. at 98. These two things cannot be simultaneously true. If the government is correct in its contention that this Court would not have granted another continuance, then there is no question that trial counsel lacked sufficient time to either reopen the *Atkins* proceedings or effectively use the government's late disclosure at trial. If the government is correct that trial counsel actually *could* have requested a continuance and requested reconsideration to the *Atkins* determination, trial counsel were ineffective for failing to do so, and that ineffectiveness overcomes any purported default.

Finally, regarding the government's argument that the birth certificate was not material to the *Atkins* determination, *id.* at 57, Movant has proffered facts tending to show otherwise. *See* Civ. Doc. 146 at 265-66. The government offers no evidence to disprove these facts and they must be assumed true at this Rule 12(b)(6) stage.

The government's arguments for dismissal should be rejected. At the motion to dismiss stage, Movant's factual allegations must be accepted as true and Movant need only demonstrate a plausible claim for relief. *Twombly*, 550 U.S. at 556. Movant has done that here.

5. **The Facts Contained in Claim VII.B and VII.C – Regarding the Prosecution's Presentation of Materially Misleading and/or False Evidence and Argument at the *Atkins* Hearing and at Trial – State a Plausible Claim for Relief.**

If this Court finds that it is bound by Judge Conrad's pretrial *Atkins* ruling in assessing whether Movant has intellectual disability when assessing the merits of Claim II.F regarding counsel's ineffective failure to investigate, develop, and present a mental health defense at the guilt phase, it should reject the government's mootness argument regarding Claim VII.B, Civ.

Doc. 187 at 25-26, 84, and address the merits of this claim. *See supra* Section III.D. The government agrees that Claim VII.C. is not moot.[27] Civ. Doc. 187 at 85-87,

Reaching the merits of this claim, which proffers that the government presented and/or failed to correct materially misleading and/or false evidence at the *Atkins* hearing and at trial, this Court should reject the government's request to dismiss this claim based on the Court's prior discovery order and the government's prior discovery response, *id.* at 26, 86-87, particularized arguments regarding the tattoo evidence, and procedural default, *id.* at 86.

> a. *Materially Misleading and False Evidence at the Atkins Hearing (VII.B).*

Movant alleges that the government violated *Napue* when it presented and allowed to go uncorrected false evidence at the *Atkins* hearing when the government, and the government alone, knew that Movant had been born in Guatemala in 1982, not 1984 as everyone believed. Civ. Doc. 146 at 267-72.

The government urges dismissal of these allegations because the Court found in its discovery order that Movant had not alleged facts to establish the knowing presentation of false testimony. Civ. Doc. 187 at 86-87. The government also directs this Court to its discovery response for additional reasons to dismiss this claim. *Id.* at 26.

At this Rule 12(b)(6) stage, this Court must accept Movant's proffered facts as true. To the extent the government disputes Movant's facts, that does not constitute grounds for dismissal, but grounds for further evidentiary development to resolve those disputed facts.

---

[27] Movant will address the remainder of this claim in Section D.4, below.

*i.* *The government's unavailing procedural default arguments.*

The government argues this claim is defaulted because Movant failed to raise it at trial or direct appeal. Civ. Doc. 187 at 86; Civ. Doc. 52 at 62-63. The government is incorrect, not least because its argument relies on two § 2254 cases, Civ. Doc. 52 at 63 (citing *Allen v. Lee*, 366 F.3d 319, 324 n.* (4th Cir. 2004)) (holding *Napue* claim procedurally defaulted); *Hoke v. Netherland*, 92 F.3d 1350, 1359 (4th Cir. 1996) (same), one of which has no bearing here and the other of which confirms that this claim is not defaulted. *Allen* concerns the § 2254 petitioner's failure to exhaust his *Napue* claim in state post-conviction proceedings. *Allen*, 366 F.3d at 323. As exhaustion in state court is not a consideration in this or any § 2255 case, *Allen* is not relevant. *Hoke* similarly concerns the § 2254 exhaustion requirement, but how it applies where evidence supporting the *Napue* claim was known at trial. *Hoke*, 92 F.3d at 1359. Thus, to the extent that *Hoke* has relevance to this § 2255 case it is as a restatement of the principle detailed above, *see supra* Section III.B, that a *Napue* claim cannot be brought at trial if the evidence at issue was not known at trial. Relatedly, the fact that the post-trial evidence (and the government's knowledge of it) is, by definition, outside the record, *see* Civ. Doc. 146 at 267-72, further confirms the inapplicability of default. *See supra* Section III.B.

Even if this claim was raisable at trial or appeal such that it was potentially defaulted, trial and/or appellate counsel's ineffectiveness constitutes cause and prejudice to overcome any default. *Id*. Upon learning that their client was two years older than their experts had believed, reasonable trial counsel would have recognized the import of that fact not only to the "age" prong of *Atkins*, but also the adaptive functioning prong (where his greater age would show a greater disparity between his weaknesses and those of his age-peers). Given those obviously impactful consequences of their client's true age, it would have been unreasonable for counsel to have ignored without investigation the revelation that their client's *Atkins* evidence was likely

103

inaccurately presented to, and so assessed by, this Court. Indeed, the government acknowledges this, and in so doing tacitly acknowledges counsel's unreasonable decision-making. In its discovery response, the government argues that counsel raised the birth certificate before the jury and in the motion for new trial, and so easily could have sought reconsideration of the Court's *Atkins* determination based on the birth certificate. Civ. Doc. 52 at 66.

A continuance to investigate the import of that new fact and conduct all necessary litigation, followed by – as the government suggests – some effort to reopen or reconsider the *Atkins* hearing and discovery to determine what the government knew and when, would have been the obvious, reasonable, response. The record is clear that did not happen. And, as Movant has established the reasonable probability that, with the accurate evidence (and, in this particular case, the likelihood that accurate evidence would have been assessed more closely in time to the Supreme Court's *Hall* opinion), *see* Civ. Doc. 146, Claims III and IV, Movant was prejudiced by that failure.

Addressing in generalized fashion Movant's claims of counsel's ineffectiveness, the government argues that this Court would never have granted another continuance, (Civ. Doc. 52 at 97-98), an argument that goes to the prejudice both of the substantive *Napue* claim itself and the hypothetical "prejudice" to overcome the non-existent procedural default. The government again ignores both the standard of review here and the standard of proof of the *Napue* claim. To survive the government's Motion to Dismiss, Movant must present sufficient factually supported allegations (and inferences therefrom) that, if true, show that it was *plausible* this Court would have permitted counsel to address the material revelation of Movant's true age, be it in a continuance or (as the government suggests in its discovery responses, a motion to reconsider the *Atkins* determination, Civ. Doc. 52 at 66). *Iqbal*, 556 U.S. at 670.

104

ii. *The government fails to rebut the presumption that Movant's allegations on each element of the claim are true.*

The full effect of the false evidence of Movant's age is best addressed under the rubric of the substantive claim (although, as explained in *supra* Section III.B, the materiality/prejudice analyses effectively merge together). On the substantive claim itself, Movant's claim cannot be dismissed if it is plausible that his presumptively true factually supported allegations and inferences show that "the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury." *Napue*, 360 U.S. at 271. The government argues – admittedly in its discovery response, addressing in generalized fashion Movant's claims of ineffective assistance of counsel – that Movant's true age is not material to the *Atkins* determination because the "purported upshot … is that he was 12 instead of 10 when he repeated third grade." Civ. Doc. 52 at 57. Now is not the time to address in full the depth of the government's misunderstanding of the concepts of childhood development, pre-18 intellectual functioning, and the near-exponential differences in both in relation to even a single year's variation in the age of a child. Movant's allegations – supported by expert opinion and additional lay witness observations and documentary evidence – are more than sufficient to establish as plausible a reasonable likelihood this Court's resolution of the *Atkins* hearing could have been affected by the false evidence.

The government spuriously attempts to deflect from the effect of the *Atkins*-experts' false belief of Movant's age, arguing that those experts did not *testify* about Movant's age. *Id.* at 63-64. Movant plainly alleged that the false evidence of Movant's birth date impacted the government's expert's opinions, opinions this Court relied upon in its opinion. Civ. Doc. 146 at 269-71. Moreover, taking the government's argument at face-value, it would be accurate to Reply that the true false evidence was Dr. Suarez's testimony concerning Movant's intellectual and cognitive functioning before the age of 18. Any conclusion to which Dr. Suarez testified that was dependent

105

on, or affected by, age was – taking the government's approach – false. There is no question the government's use of, or failure to correct, an expert witness's false evidence violates due process just as if it were a lay witness. *See Miller v. Pate*, 386 U.S. 1, 7 (1967).

All trial experts, including the government's expert, relied on Movant's age when assessing his adaptive functioning. Civ. Doc. 146 at 267-71. Evidence of Movant's correct age would have impacted their opinions. *See id.* at 270 (quoting Appx. 28 ¶ 12) (Dr. Olley's opinion); *see also id.* at 269-71 (detailing how the two-year mistake in Movant's age meant he was substantially more impaired that he appeared under the evidence presented at the *Atkins* hearing). The government's derisive dismissal of the effects of a two-year difference in Movant's age does not disprove any of Movant's factually supported allegations, or the reasonable inferences therefrom. This Court concluded – based on the evidence that over-appraised Movant's cognitive and intellectual functioning – it was a "close[] call" whether Movant's academic achievements tipped towards adaptive deficits. Crim. Doc. 934 at 14. Movant's allegations plausibly state a claim that there is a reasonable likelihood this Court's decision which way to decide that "close call" *could* have been affected by the false evidence of Movant's age.

"Materiality" is but one of the elements of Movant's false evidence claim. Concerning the element of whether the government used the evidence knowing it was false, the government argues that Movant failed "to establish" that the government "knew any testimony to be false." Civ. Doc. 52 at 65.

The government asserts that it would not have been in possession of the Guatemalan birth certificate until April 13, 2010. *Id.* at 64. While that assertion disputes Movant's allegation that, while Moreno's report may not have been dated until April 13, 2010, the government came into possession of the information contained therein much earlier, Civ. Doc. 146 at 267-68, it does not

conclusively disprove those allegations. Moreover, all the record evidence, including documents from the Guatemalan consulate, Civ. Doc. 147, Appx. 43, demonstrate that the Guatemalan birth certificate is true and correct and, therefore, the El Salvador birth certificate is false. Movant's proffered facts must be accepted as true at this stage. *Twombly*, 550 U.S. at 556. If anything, the government's assertion creates a disputed issue of material fact that, were this a Rule 56 proceeding, would prevent judgment and warrant resolution through further evidentiary development. F.R.C.P. Rule 56(a); Rule 8(a) of the Rules Governing Section 2255 Proceedings.

Movant's factually supported allegations state a plausible claim for relief. The government has not offered any evidence to show that those allegations should not be presumed to be true. At most, the government has disputed facts such that a hearing or further evidentiary development to resolve that those disputes is warranted. Dismissal for failure to state a claim is not, therefore, warranted.

### b. *Evidence and Argument Regarding the MS Tattoo (VII.C)*

Contrary to the government's assertions, Civ. Doc. 187 at 85, Movant has presented sufficient facts supporting his allegation the government presented materially misleading and false evidence and argument that one had to kill to earn the MS tattoo to establish a plausible claim for relief. The government concedes that Alexander Granados's testimony was false and that it knows his testimony was false when it argues: "Common sense, moreover, would tell the jury that anyone can go to a commercial tattoo parlor and ask for any tattoo they want, without killing anyone." *Id.* at 86; *see also* Civ. Doc. 52 at 67 ("And common sense would tell the jury that Umaña need not have killed to obtain his tattoos.").

This was not, as the government attempts to argue, a mere inconsistency between Rony Lopez, Frank Flores, and Alexander Granados's testimony. Civ. Doc. 187 at 85. The government

knew Granados's testimony was false (contrary to common sense) but elicited it and argued based on it anyway.

In its incorporated discovery response, the government faults Movant for having never provided an affidavit stating what he did do to earn his tattoos, if anything, if not murder, Civ. Doc. 52 at 67. Yet, Movant had no obligation to testify at trial to explain the origin of his tattoos. The government, on the other hand, had an obligation not to elicit false testimony; to correct false testimony; and not to make false and misleading arguments to the jury. And the government now concedes that the very testimony it elicited and exploited in closing argument defies common sense.

The government's argument that Movant cannot assert a *Napue* claim here because Movant knew how he got his tattoos, Civ. Doc. 187 at 86, also must be rejected. A closer read of the cases cited by the government shows that this preclusion applies only when defense counsel knows about false testimony and was found to have made a strategic choice not to object. *United States v. Mangual-Garcia*, 505 F.3d 1, 10 (1st Cir. 2007) (citing *United States v. Iverson*, 648 F.2d 737, 739 (D.C. Cir. 1981) (opinion on rehearing) (footnote omitted) "(Although there is some division within the circuits on the issue, we agree with the majority of circuits that 'absent unusual circumstances, the right of the defendant to disclosure by the prosecutor is deemed waived if defense counsel with actual knowledge of the [false testimony] chooses not to present such information to the jury.'")); *United States v. Meinster*, 619 F.2d 1041, 1045 (4th Cir. 1980) (defense counsel had actual knowledge of the witness's plea deal from the very DOJ that was prosecuting the defendant). The government has made no such showing. Moreover, as Movant demonstrates in Claim XX, he was not provided an effective mechanism to communicate with

108

counsel and assist in the defense in real-time at trial. Civ. Doc. 146 at 435-37. And Movant was and is incompetent. Civ. Doc. 71 at 2-13; Civ. Doc. 82; Civ. Doc. 150, Appx. 215.

Moreover, as the Fifth Circuit recognized, this principle does not apply when the prosecutor acts to reinforce the deception. *United States v. Barham*, 595 F.2d 231, 243 & n.17 (5th Cir. 1979). That is exactly what happened here. Granados's original false testimony was a non-responsive answer on cross-examination. GPT 913. On redirect examination, the prosecutor revisited the issue, but, instead of correcting Granados's prior false testimony, asked additional questions to leave no doubt for the jury that Granados meant you must kill to get the MS tattoo. GPT 920. Then, in closing argument, the prosecutor exploited Granados's testimony by repeatedly arguing that Movant earned his tattoos by killing. *See* Civ. Doc. 146 at 278-79. The government cannot evade its *Napue* obligations in these circumstances.

The government's prejudice arguments are likewise without merit. In response to Movant's ineffective assistance of counsel claim based on counsel's failure to object to or counter Granados's testimony, the government argues that Granados's tattoo testimony was relevant because the fact that "MS-13 rewarded its members with status symbols for killing was directly relevant to an element of an offense with which Umaña was charged: that Umaña had committed murder 'with the purpose of maintaining or enhancing'" his position in the gang. Civ. Doc. 187 at 48-49. Thus, the government has conceded that the jury could have used this testimony as a basis to convict. Also, as described above and in the 2255 Motion, the government exploited this testimony in closing argument. The government's own at-trial actions show that this testimony was material to the jury's determination.

The government's argument that this claim is procedurally defaulted because it is based on a transcript of the co-defendant's trial filed with the Court and electronically served on counsel

seven days before counsel filed their motion for a new trial, Civ. Doc. 52 at 63, should be rejected. As demonstrated above, the default cases cited by the government are inapposite. However, assuming arguendo that the government's allegation of default is correct, Movant can demonstrate cause and prejudice to overcome that default. First, Movant's trial counsel were ineffective regarding the litigation of this issue. *See* Civ. Doc. 146, Claim XI. Second, this claim requires the development of facts outside of the record, *see Bousley*, 523 U.S. at 621-22, including Movant's proffered testimony from Dr. Thomas Ward, Ph.D., which must be accepted as true at this stage. Moreover, the government's own arguments in opposition suggest that there are extra-record considerations to the evaluation of this claim, including what trial counsel knew when. Third, if this Court finds that this claim could have been raised on the record that existed at the time of direct appeal, appellate counsel's ineffectiveness overcomes any default. *Murray*, 477 U.S. at 488. The record demonstrates that appellate counsel reviewed the record as it pertained to the codefendants, to the extent it was available to them. *See*, *e.g.*, Crim. Doc. 1530. Thus, appellate counsel should have been aware of Lopez's conflicting testimony and on-notice that Granados's testimony was false. There is a reasonable probability that Movant would have received a more favorable outcome if this issue had been litigated properly.

Movant has proffered facts that state a plausible claim for relief. The government's motion to dismiss should be denied.

6. **The Facts Contained in Claim VIII – Regarding Trial and Appellate Counsel's Ineffective Litigation of the Government's Use of His Jail Letters – State a Plausible Claim for Relief.**

This claim is partially mooted as it pertains to the penalty phase, *see* Civ. Doc. 187 at 39-40, but continues to present live issues regarding the jail letters at the guilt phase.

First, the government contends that Movant's claim that trial counsel should have objected to Federal Bureau of Investigation language analyst Susan Conrad's expert testimony on the

110

ground that she did not have the qualifications to translate documents is untimely. Civ. Doc. 187 at 41. Allegations regarding Conrad's qualifications concern the dispute over whether the government's translations of the jail letters were accurate. Counsel's failure to challenge Conrad's qualifications refer to the same "common core of operative facts" that formed the basis of the original Claim VIII, and so "relation back will be in order." *Mayle v. Felix*, 545 U.S. 644, 665 (2005). Likewise, Movant's claim that counsel were deficient for failing to request limiting instructions concerns the same "common core of operative facts" – counsel's failure to challenge admission of inflammatory content from the non-redacted letters. Counsel's failure to request a limiting instruction is offered as an alternative to the contention that counsel should have sought to have the letters redacted. Civ. Doc. 146 at 298-99.

The government repeatedly speculates on what trial counsel's purported strategy was, inventing strategies that trial counsel has never stated or endorsed. *See* Civ. Doc. 187 at 41-47. The government's speculation is inappropriate here, at the Rule 12(b)(6) stage, when all facts must be construed in Movant's favor. Moreover, the government's speculation of trial counsel's strategy is refuted by the record. The trial record is clear that counsel wanted to keep the jury from hearing irrelevant, unduly prejudicial content from the letters and to prevent the jury from using the letters in an unduly prejudicial manner against their client. *See* Civ. Doc. 146 at 291-93 (describing counsel's efforts regarding letters). Having recognized the harm the letters could cause, counsel could have had no reasonable strategy for not fully investigating and litigating all reasonably available challenges to the letters and all reasonably available evidence to mitigate them.

Although the government's speculation is improper at this stage, Movant will, nonetheless, address some of those speculations. The government's argument that counsel was reasonable not to request redactions of the letters because this Court would not have granted that request, Civ.

Doc. 187 at 43-45, should fail. This Court recognized that the admissibility of the letters "is a somewhat difficult inquiry because the letters discuss multiple topics, some of which are relevant, and some of which are not." Crim. Doc. 998 at 5. Instead of being disheartened, a reasonable attorney could have interpreted that as an invitation to seek further redaction of irrelevant, unduly prejudicial materials.

Regarding Movant's use of language and the impropriety of the government's translations, Movant has proffered evidence in support of this claim – including the Declaration of Dr. Robin Riner, Ph.D., Civ. Doc. 150, Appx. 268; and the Report of Eileen Haag, Civ. Doc. 150, Appx. 270; Civ. Doc. 146 at 309-12 – that the government manipulated its translations of Movant's letters in a manner that changed rambling, stream of consciousness writing into standard written English such that it misrepresented and exaggerated Movant's written language abilities. Movant has also proffered the report of Dr. Erik Nielson, Ph.D., that Movant's "songs" contained in the letters are derivative, simplistic, highly repetitive, and show a limited command of language. Civ. Doc. 146 at 311; Civ. Doc. 150, Appx. 238. This was significantly more than Susan Conrad's concession that Movant was a "very poor writer" in terms of "punctuation." Civ. Doc. 187 at 40. The government has offered nothing in rebuttal of these proffers so Movant's facts must be accepted as true.

Regarding Movant's use of "code," the government speculates that trial counsel may have had the purported strategy of not "plac[ing] even more emphasis on Umaña's use of code, because, whether sophisticated or not, it showed that he understood the need to use code to evade police and that he was largely successful in employing the code despite his relative lack of education." *Id.* at 46. Again, the government's speculation is inappropriate at the Rule 12(b)(6) stage when all facts must be construed in Movant's favor. Further, the "code" Movant used appeared in

112

*Highlights for Children*, and was not successful. Civ. Doc. 146 at 308. Again, the government makes the mistake of focusing solely on what happened at trial and ignoring what could have happened with reasonable defense investigation to argue that counsel's failure to present linguistics evidence was not deficient because "this Court found that Umaña was able to 'communicate cogently in writing.'" Civ. Doc. 187 at 46. The Court made that finding because defense counsel did not challenge the government's case and present the Court with expert evidence showing that the government's translations misrepresented Movant's writing skills.

Movant's claim – and factual proffers which must be accepted as true at this stage – state a plausible claim for relief. Dismissal is improper.

7. **The Facts Contained in Claim XI – Regarding Trial Counsel's Ineffective Failure to Challenge and Rebut the Government's Use of Movant's Tattoos – State a Plausible Claim for Relief.**

This claim is partially mooted as it pertains to the penalty phase but continues to present a live controversy as it pertains to the guilt phase.

The government argues that Claim XI merits dismissal, offering speculation regarding trial counsel's purported strategy. Civ. Doc. 187 at 48-49. Speculation is improper at this Rule 12(b)(6) stage. Although it is true that counsel need not raise every possible conceivable trial objection, a reasonable lawyer would object to evidence tending to establish their client committed additional murders beyond that currently before the jury. Furthermore, the government's speculative argument that Rony Lopez's testimony that a person must kill or commit other "different types of crimes" to earn the MS tattoo is a double-edged sword, *id.* at 49, mischaracterizes the nature of Movant's claim. The issue was whether Movant had killed before, and whether the jury was allowed to use Granados's evidence – wholly unchallenged – as proof that Movant had committed these, the murders in Los Angeles, or some other murders. As the United States Supreme Court

113

has recognized, evidence of an additional murder is "the worst kind of bad evidence." *Wong v. Belmontes*, 558 U.S. 15, 26 (2009).

Further, Movant's proffered evidence from Dr. Thomas Ward, Ph.D., is not untimely. Full evidentiary development in 2255 cases does not end with the initial 2255 Motion but may include discovery, expansion of the record under Habeas Rule 7, and an evidentiary hearing. In his 2016 2255 Motion, Movant specifically pled that trial counsel were ineffective for their "failure to independently investigate the meaning of the tattoos – *including seeking and securing the assistance of a gang and/or tattoo expert.*" Civ. Doc. 24 at 246 (emphasis added). Dr. Ward's expert report and proffered expert opinion provide evidence in support of this allegation. Dr. Ward's report explains that the assertion that a gang member must commit murder to earn the right to get a tattoo of their gang's initials is an urban myth. Not one MS-13 member has ever told Dr. Ward this in his tenure researching the gang; if it were true, there would be significantly more MS-13 murders; and it would be difficult if not impossible for MS-13 members to police such a requirement. In Dr. Ward's experience, gang members get tattooed to show affiliation, not because they have committed a murder. Civ. Doc. 146 at 338-39; Civ. Doc. 150, Appx. 244. The government offers nothing in rebuttal of these facts, so they must be assumed true.

On the contrary, Movant notes that the government appears to have argued conflicting theories regarding the so-called "earning" of the tattoos. When addressing Movant's claim of ineffectiveness regarding the tattoos, the government argued that Granados's tattoo testimony was relevant because the fact that "MS-13 rewarded its members with status symbols for killing was directly relevant to an element of an offense with which Umaña was charged: that Umaña had committed murder 'with the purpose of maintaining or enhancing'" his position in the gang. Civ. Doc. 187 at 48-49. However, in responding to Movant's *Brady* claim based on the tattoos, the

114

government argued that "[c]ommon sense, moreover, would tell the jury that anyone can go to a commercial tattoo parlor and ask for any tattoo they want, without killing anyone." *Id.* at 86. Movant is at a loss about how testimony that is false, according to common sense, can also be relevant to proving an element of VICAR murder. However, this seems to be an implicit concession that Dr. Ward's proffered evidence and opinion are accurate and that Granados's testimony was false.

Finally, although the government is correct that Granados did not tell the jury what Movant personally did to "earn" his tattoos, *id.* at 50, the government most certainly did in closing arguments, *see* Civ. Doc. 146 at 341-43. The government cannot disavow prejudice from trial counsel's failure to object and present countering evidence when the government repeatedly capitalized on these failures in argument. Movant has stated a plausible claim for relief and dismissal is improper.

8. **The Facts Contained in Claim XIII – Regarding Trial Counsel's Failure to Seek Continuances of the *Atkins* Hearing and Trial – State a Plausible Claim for Relief.**

If this Court finds that it is bound by Judge Conrad's pretrial *Atkins* ruling in assessing whether Movant has intellectual disability when assessing the merits of Claim II.F regarding counsel's ineffective failure to investigate, develop, and present a mental health defense at the guilt phase, it should reject the government's mootness argument, *id.* at 50-51, and address the merits of this claim. *See supra* Section III.D.

If this Court reaches the merits of this claim, which proffers that counsel were ineffective for failing to seek a necessary continuance, it should reject the government's request to dismiss this claim based on the Court's 2022 Discovery Order finding Movant failed to state a prima facie claim, Civ. Doc. 187 at 59 (citing Civ. Doc. 108 at 29-31), and the arguments in the government's prior discovery response that trial counsel were not deficient for failing to request additional

continuances because they reasonably believed that this Court would not grant such a request, having already denied a request for more time for the *Atkins* hearing and having stated that it believed counsel had sufficient time to prepare for trial. *Id.* (citing Civ. Doc. 52 at 97-100).

While counsel's declarations, cited by the government, do establish that counsel believed this Court would not grant a further continuance request, they do not establish the reasonableness of failing to *ask* for more time[28] when it was apparent that counsel needed more time to prepare. Indeed, in the same declarations cited by the government, counsel describe the voluminous discovery that was "dropped on [them] right before trial," the limited nature of their investigation, the fact that they "were left with very little to present to the capital jury about Mr. Umaña's life and background," and that they "wanted more time to prepare." Civ. Doc. 150, Appx. 23, ¶¶ 6-7; *see also* Civ. Doc. 150, Appx. 24, ¶¶ 5-6, 9.

In its discovery response, the government also argues that Movant's allegations do not establish that he was prejudiced. Movant has addressed these allegations in his discussion of Claim I, section D.1.b.2, and incorporates them here.

Movant has proffered sufficient facts to state a plausible claim for relief. To the extent that the government does not dispute many of those facts – including the existence of and proffered testimony of the overwhelming majority of the lay witnesses and experts described in Claims I, II, and III – those facts must be taken as true. Dismissal is inappropriate at this pleading stage.

---

[28] Movant submits that the question is not whether counsel held a reasonable belief about what this Court might do in response to such a request, but whether it was reasonable for counsel not to ask. ABA Guideline 10.4(D) tasks "counsel at all stages" with the duty to "demand . . . all resources necessary to provide high quality legal representation. If such resources are denied, counsel should make an adequate record to preserve the issue for further review." ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases, 2003.

116

9. **The Facts Contained in Claim XX – Regarding the Denial of Movant's Right to Presence – State a Plausible Claim for Relief.**

The parties agree this claim is not moot.

### a. *Dismissal of Jurors Based on Questionnaires.*

This Court's consideration of this claim is not barred by procedural default. Civ. Doc. 187 at 99. Appellate counsel's ineffectiveness constitutes cause and prejudice to overcome any purported default. Civ. Doc. 146 at 437. Moreover, Movant's allegation of ineffective assistance of trial counsel is properly raised in 2255 proceedings and not subject to any default. *See Massaro*, 538 U.S. at 504.

Contrary to the government's assertions, Civ. Doc. 187 at 99, Movant did not – and could not due to his incompetency – waive his right to presence at voir dire. *See, e.g.*, Civ. Doc. 71 at 2-13 (Supplemental/Amended claim that Movant was incompetent at trial and on direct appeal); Civ. Doc. 82 (counsel's request to stay these proceedings due to Movant's incompetence).

Finally, should this Court require him to prove a reasonable probability of a more favorable outcome, Civ. Doc. 187 at 99-100, such prejudice is impossible to meet at this pleading stage and may be proven by showing that counsel's deficient performance undermined "the fundamental fairness of the proceeding," *Weaver*, 582 U.S. at 300; Civ. Doc. 146 at 434. Movant has stated a plausible claim for relief.

### b. *Denial of Effective Mechanism to Communicate with Counsel at Trial.*

The Court's consideration of this claim is not barred by procedural default. Civ. Doc. 187 at 99. This claim could not have been raised on direct appeal as it requires the development of facts outside the record. *See* Civ. Doc. 146 at 435-36. To the extent it could have been raised on direct appeal, appellate counsel were ineffective which constitutes cause and prejudice to overcome any purported default. *Id.* at 437. Moreover, Movant's allegation of ineffective assistance of trial

117

counsel is properly raised in 2255 proceedings and not subject to any default. *See Massaro*, 538 U.S. at 504.

The government argues this claim should be dismissed because Movant has not alleged facts establishing either denial of right to presence or counsel's deficient performance, citing portions of the record demonstrating that the Court appointed an interpreter/translator to assist trial counsel before trial and arranged interpreters to interpret for court proceedings Civ. Doc. 187 at 100. This reasoning misunderstands Movant's argument. Although interpreters were generally present in the courtroom, their role was primarily focused on interpreting the witness testimony, arguments of counsel, and pronouncements by the Court. Because Movant's trial counsel did not speak Spanish, Movant was left with no way of directly communicating with anyone on his legal team during court proceedings. Nor was an interpreter provided for this purpose. The record does not show that any measures were taken to ensure that Movant could communicate with counsel while the proceedings were taking place. And nothing indicates that Movant could hear and understand the courtroom interpreter. Civ. Doc. 146 at 435-36. The government has neither addressed nor offered evidence to rebut these factual allegations, so they must be accepted as true at this stage. Moreover, the record is insufficiently developed due to trial counsel's ineffective failure to litigate this issue at trial. Dismissal is improper at this Rule 12(b)(6) stage.

10. **The Facts Contained in Claim XXI – Regarding the at-Trial Security Measures – State a Plausible Claim for Relief.**

The parties agree this claim is not moot.

The Court's consideration of this claim is not barred by procedural default. Civ. Doc. 187 at 102. This claim could not have been raised on direct appeal as it requires the development of facts outside the record. Civ. Doc. 146 at 437-38. To the extent it could have been raised on direct appeal, appellate counsel were ineffective. Civ. Doc. 146 at 440. Moreover, Movant's allegation

118

of ineffective assistance of trial counsel is properly raised in 2255 proceedings and not subject to any default. *See Massaro*, 538 U.S. at 504.

Referencing this Court's 2022 Discovery Order, the government argues this claim should be dismissed because Movant failed "to plead sufficient facts to set forth a prima facie claim." Civ. Doc. 187 at 102 (citing Civ. Doc. 108 at 45). However, this Court's prohibition on interviewing the trial jurors, Civ. Doc. 56, prevents Movant from making more specific allegations of actual prejudice at this stage, Civ. Doc. 146 at 440. If juror contact remains prohibited, an evidentiary hearing is necessary to develop this claim. Moreover, because trial counsel ineffectively failed to object to these security measures, the record is insufficiently developed to determine whether the security measures were justified and comparable to those employed in the trials of similarly situated defendants. Dismissal is improper at this Rule 12(b)(6) stage.

11. **Movant Has Stated a Plausible Claim That His 924(c) Convictions are Invalid (Claim XXII).**

The parties agree this claim is not moot.

The government argues that *United States v. Tipton*, 95 F.4th 831, 848 (4th Cir. 2024), precludes Movant's claim that VICAR murder does not qualify as a crime of violence and that there is not "more than a reasonable possibility" this his § 924 convictions rested solely on the other charged predicate offense, conspiracy to participate in a racketeering enterprise. Civ. Doc. 187 at 103-07. Movant acknowledges that this Court is bound by the Fourth Circuit's holding in *Tipton* regarding whether VICAR murder is a crime of violence.

However, it remains true that RICO conspiracy, the other offense upon which the jury was instructed as a predicate offense for the 924 convictions, is categorically not a crime of violence capable of supporting those convictions. *United States v. Simmons*, 11 F.4th 239, 260 (4th Cir. 2021). For all the reasons stated in the Operative Motion, Movant can demonstrate prejudice, and

119

his 924 convictions should be vacated. Moreover, as demonstrated in Claim II.F, Movant's trial counsel were ineffective for failing to develop and present mental health evidence that would have undermined the government's theory and presented a mens rea defense at the guilt phase to the VICAR murder charges. Under these circumstances, Movant's 924 convictions cannot stand.

The government's procedural default arguments regarding this claim, Civ. Doc. 187 at 105-06, should be rejected. First, the Fourth Circuit has held that procedural default does not apply to *Johnson/Davis* claims because "*Davis* established a new rule of constitutional law made retroactive on collateral review." *United States v. Jackson*, 32 F.4th 278, 283 & n.3 (4th 2022); *see also* Civ. Doc. 131 at 54. Second, even if procedural default does apply, there is no question that the novelty of the claim constitutes "cause" to overcome default. *McKinney*, 60 F.4th at 195 (relying on *Reed v. Ross*, 468 U.S. 1 (1984), in holding movant established cause when novel *Johnson* claim was filed within one year of *Johnson* decision and later supplemented under *Davis*). Further, Movant was prejudiced because his 924(c) & (j) convictions must be vacated under the new rule articulated in *Johnson* and its progeny.

The government offers several arguments in response to Movant's allegations of ineffective assistance of counsel regarding this claim. Civ. Doc. 187 at 107. As an initial matter, Movant notes that this claim is not defaulted and properly before the court, as demonstrated above. Thus, Movant's separate and distinct substantive allegations of ineffective assistance of counsel are irrelevant at this juncture because the Court can reach the merits of the underlying *Johnson/Davis* claim. However, contrary to the government's assertions, Movant's allegations of ineffectiveness were timely and not conclusory. Movant pled with great specificity the claim underlying the allegations of ineffectiveness and demonstrated how he was prejudiced because his convictions and death sentences should be vacated. Civ. Doc. 146 at 440-520. To the extent that

120

Movant's allegation of ineffective assistance of appellate counsel was not pled in his 2016 2255 Motion, that was because he was represented by appellate counsel when the 2016 2255 Motion was filed, and counsel could not be expected to assert their own ineffectiveness. *See, e.g.*, Civ. Docs. 94-96. Movant cured this deficiency in his 2023 Amended 2255 Motion. Civ. Doc. 146 at 498.

Movant has alleged facts stating a plausible claim for relief. Dismissal is improper at this Rule 12(b)(6) stage.

12. **The Facts Contained in Claim XXVI – Regarding Movant's Vienna Convention Rights and Related Ineffective Assistance of Counsel and Prosecutorial Misconduct – State a Plausible Claim for Relief.**

The government has presented mootness arguments regarding a portion of this claim, which will be addressed below.

The Court's consideration of this claim is not barred by procedural default. *See* Civ. Doc. 187 at 108. As an initial matter, Movant has presented a claim that his trial counsel were ineffective for failing to investigate or advocate for Movant's rights under the Vienna Convention to Guatemalan consular assistance. Civ. Doc. 146 at 544-50. His claim of trial counsel's ineffectiveness is properly before this Court in 2255 and is not subject to default. *See Massaro*, 538 U.S. at 504.

Because of trial counsel's ineffective assistance, no portion of this claim was raised at trial. As the issues were neither preserved nor factually developed in the trial court, appellate counsel was precluded from raising these issues on direct appeal. *See Bousley*, 523 U.S. at 621-22.

However, to the extent this Court may find that Movant's separate and distinct underlying Constitutional and Article 36 claims are subject to procedural default, Movant can demonstrate cause and prejudice. First, the ineffectiveness of Movant's trial and appellate counsel constitutes cause and prejudice to overcome any default. *See Murray*, 477 U.S. at 488. As demonstrated in

the Operative 2255 Motion, Civ. Doc. 146 at 544-50, Movant's trial counsel were ineffective for failing to investigate or advocate for Movant's rights under the Vienna Convention to Guatemalan consular assistance. Likewise, Movant's appellate counsel were ineffective for failing to raise this claim on direct appeal to the extent it was available in the appellate record. *Id.* at 551

Alternatively, the government's bad faith constitutes cause. *See Murray*, 477 U.S. at 488; *Amadeo v. Zant*, 486 U.S. 214, 223 (1988). As demonstrated in Claims VI & VII, the government withheld information about the circumstances of Movant's birth and his actual Guatemalan birth certificate until shortly before trial, preventing counsel from securing assistance from the Guatemalan consulate.

As with all of Movant's ineffective assistance of counsel claims, the government offers speculation about trial counsel's purported strategy for failing to request Guatemalan consular assistance. Civ. Doc. 187 at 109-10. Such speculation is improper and meaningless at this stage.

The government's complaint that Movant has failed to allege sufficient facts demonstrating prejudice because he is no longer sentenced to death, *id.* at 110, should be rejected. Movant explained not only that there was a wealth of mitigating evidence in Guatemala that the consulate could have helped him obtain, Civ. Doc. 146 at 541-42, but that the Salvadoran consulate from which his counsel sought assistance represented a conflicted foreign government, which actively worked with the United States government to secure Movant's conviction, *id.* at 543-44, 546-47; Civ. Doc. 150, Appx. 10, ¶ 81; *id.*, Appx. 18, ¶ 23, and wholly failed to protect Movant's rights when the United States Government intercepted his communications with the Salvadoran consulate, Civ. Doc. 146 at 544, and that there were areas in addition to the development of mitigation in which the Guatemalan consulate could have provided assistance. Civ. Doc. 146 at 550.

Movant has pled sufficient facts to allege a plausible claim for relief. The government's motion to dismiss should be denied.

13. **The Facts Contained in Claim XXVII – Regarding Trial Counsel's Failure to Object to Preserve Certain Enumerated Errors for Appellate Review – State a Plausible Claim for Relief.**

The portions of this claim pertaining to penalty phase closing argument are currently moot, but the portions pertaining to voir dire issues are not. In assessing whether Movant has stated a claim for which relief can be granted, Rule 12(b)(6), the Court assumes all of Movant's factually supported allegations to be true and resolves all reasonable inferences therefrom in Movant's favor, unless they are conclusively disproven by the record. *Iqbal*, 556 U.S. at 679; *Nemet*, 591 F.3d at 255; *see also Hall*, 846 F.3d at 765 ("When ruling on a motion to dismiss, courts must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff."). Contrary to the government's assertions, Civ. Doc. 187 at 79-80, Movant need not prove his claims at this stage, but simply that he has stated a plausible claim for relief. Dismissal is improper.

14. **Movant's Claims of Cumulative Error (Claims XXIX and XXX) are Plausible on Their Face.**

Because Movant's cumulative error claims addressed the cumulative weight of errors at all stages of the trial proceedings, including the capital sentencing hearing, they are partially moot.

The government's argument that Movant's claims of cumulative error (Claims XXIX and XXX) should be dismissed because they fail as a matter of law, Civ. Doc. 187 at 74, should be rejected. Movant has stated plausible claims for relief, supported by sufficient factual matter, to survive Rule 12(b)(6) review. Movant's claims require not dismissal but further evidentiary development and briefing. It is premature at this stage of the proceedings – when the Rules Governing 2255 Proceedings, the Federal Rules of Civil Procedure, Fourth Circuit precedent, and

fundamental due process require further development of Movant's claims – to determine whether the cumulative effect of the errors asserted was prejudicial. As demonstrated throughout this Opposition, the government's reliance on this Court's prior, now mooted, Discovery Order, Civ. Doc. 187 at 74, 76, is misplaced. Movant has stated plausible claims of both trial counsel ineffectiveness and prosecutorial violation of *Brady* and its progeny requiring relief or, at minimum, further development.

15. **The Facts Contained in Claim LIX – Regarding the Invalidity of Movant's Felon in Possession Conviction Following *Rehaif* – State a Plausible Claim.**

The parties agree this claim is not moot.

a. *There are no bars to this Court's consideration of this claim.*

The government's argument that this claim is procedurally defaulted, *id.* at 114-16, must be rejected. *See* Civ. Doc. 105. The Fourth Circuit held in *United States v. Waters*, 64 F.4th 199, 201 (4th Cir. 2023), that *Rehaif v. United States*, 588 U.S. 225 (2019), applies retroactively on collateral review through a first 2255 Motion because it "announced a new substantive rule that 'narrow[s] the scope of a criminal statute by interpreting its terms.'" Accordingly, procedural default should not apply to this claim. *See Jackson*, 32 F.4th at 283 & n.3 (declining to apply procedural default to *Davis* claim for same reason).

Alternatively, if procedural default does apply, Movant can establish cause and prejudice. Because the Supreme Court "overturn[ed] the long-established interpretation" of § 922(g), which was "used in thousands of cases for more than 30 years," and on which the Circuit Courts were unanimous, *see Rehaif*, 588 U.S. at 238-39 (Alito, J., dissenting), Movant can demonstrate cause due to the novelty of the claim. *See Reed v. Ross*, *supra*.

The government's reliance on *Whiteside v. United States*, 775 F.3d 180 (4th Cir. 2014) (en banc), Civ. Doc. 187 at 114-15, must be rejected. There was no Circuit split on the *Rehaif* issue at

the time of Movant's direct appeal. *See Rehaif*, 588 U.S. at 238-39 (Alito, J. dissenting). And the *Rehaif* issue was not merely "unacceptable to [Movant's] particular court at that particular time." *Bousley*, 523 U.S. at 623. Instead, the issue was unacceptable to all courts "for more than 30 years." *See Rehaif*, 588 U.S. at 238-39 (Alito, J., dissenting); *United States v. Rehaif*, 888 F.3d 1138, 1145 (11th Cir. 2018) ("And no court of appeals has required proof of the defendant's knowledge of his prohibited status under any subsection of §922(g)."), *overruled* by 588 U.S. 225 (2019). Even if some defendants raised the issue before *Rehaif*, that alone does not prove the knowledge-of-status argument was reasonably available in the face of widespread and longstanding contrary authority. *See United States v. Mitchell*, 209 F.3d 319, 322 (4th Cir. 2000) (knowledge of possession, without requiring knowledge of status, "has been applied without exception by this and other circuits when interpreting § 924(a)(2)'s application to subsection (g) firearm possession crimes" (emphasis added)). *Bousley*'s limitation on cause for default is simply not applicable here.

In the event this claim is not considered novel under *Ross*, prior counsel's ineffectiveness constitutes cause and prejudice to overcome any purported default. Prior counsel at all stages could have no strategic basis for failing to raise a reasonably available claim, provided objectively deficient performance by failing to do so, and thereby prejudiced Movant. Counsel, who raised claims regarding Movant's intellectual and cognitive functions, could have no reasonable basis for failing to raise a reasonably-available, substantial claim that Movant did not have adequate knowledge of his immigration status and its consequences. And Movant made the requisite showing of prejudice. He alleges that constitutional errors occurred based on omission of the knowledge-of-status element from his indictment, evidence at trial, jury instructions, and jury findings. Civ. Doc. 146, at 562-63.

Finally, conviction and sentence under §§ 922(g) and 924(a), without proof of the requisite knowledge element, amounts to conviction "for an act that the law does not make criminal. There can be no room for doubt that such a circumstance 'inherently results in a complete miscarriage of justice' and 'presents exceptional circumstances' that justify collateral relief under [28 U.S.C.] § 2255." *Davis v. United States*, 417 U.S. 333, 346-347 (1974).

> b. *Merits.*

In response to the factual averments of Movant's *Rehaif* claim, Civ. Doc. 146 at 563-65, the government points to several items of record evidence to argue that Movant cannot show he was unaware of his immigration status that made him a prohibited person, Civ. Doc. 187 at 110-11, 117-18. In assessing whether Movant has stated a claim for which relief can be granted, Rule 12(b)(6), the Court assumes all of Movant's factually supported allegations to be true and resolves all reasonable inferences therefrom in Movant's favor, unless they are conclusively disproven by the record. *Iqbal*, 556 U.S. at 679; *Nemet*, 591 F.3d at 255; *see also Hall*, 846 F.3d at 765 ("When ruling on a motion to dismiss, courts must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff."). These facts do not conclusively disprove Movant's allegations but instead create a material issue of disputed fact. Dismissal is improper at this Rule 12(b)(6) stage.

## C. Ineffective Assistance of Appellate Counsel Allegations.

The Operative 2255 Motion does not contain a stand-alone claim of ineffective assistance of appellate counsel. Instead, the Operative 2255 Motion added allegations of appellate counsel's ineffectiveness to Claims IV (intellectual disability), VIII (jail letters), XII (prosecutorial misconduct), XV (juror misconduct), XX (right to presence), XXI (security measures), XXV

126

(death penalty based on race and geography), and XXVI (Vienna Convention) that were not contained in the 2016 2255 Motion.[29]

The government has chosen to address what it believes to be common flaws in Movant's appellate ineffectiveness allegations in a separate section of its Motion to Dismiss. Civ. Doc. 187 at 119-26. The government urges this Court to reject Movant's allegations of appellate ineffectiveness because they are meritless as a matter of law, are untimely, and are "for the most part" moot and conclusory. *Id.*

### 1. The appellate ineffectiveness allegations support plausible claims for relief.

The government's argument that Movant's appellate ineffectiveness allegations are meritless as a matter of law because this Court previously denied him leave to amend to add a stand-alone claim of appellate ineffectiveness, *see id.* at 120, misstates this Court's reasoning. The Court characterized the 2018 proposed stand-alone claim as a "general[] assert[ion] that appellate counsel failed to raise all constitutional issues on appeal, which is insufficient to set forth a cognizable claim." Civ. Doc. 131 at 53. While Movant disagrees with the Court's analysis that his 2018 proposed stand-alone claim was meritless as a matter of law, Movant also suggests that his current allegations of appellate ineffectiveness are more particularized than the "general assertion" that the Court previously rejected. In the Operative Motion, Movant presents allegations of ineffective assistance of appellate counsel that are tied to specific underlying constitutional violations which state plausible claims for relief.

---

[29] In addition, the Operative 2255 Motion contains allegations of appellate ineffectiveness in relation to Claim XXII (*Johnson/Davis*) and in relation to Claim LIX (*Rehaif*), which were initially pled in Movant's separate amendments regarding those claims. *See* Civ. Doc. 146 at 498, 565; Civ. Doc. 89 at 7; Civ. Doc. 91 at 39. The Court has already found that the allegations in the *Rehaif* and *Johnson/Davis* amendments were timely. *See* Civ. Doc. 131 at 53, 54.

The government further argues that appellate counsel could not have been ineffective because the brief they filed was long, raising many claims, and one of the claims they raised was sufficiently meritorious to result in a divided panel of the Fourth Circuit. *See* Civ. Doc. 187 at 121-22. This is, of course, not the standard. As the government seems to agree, the length of a brief has nothing to do with its merit. *Cf. id.* at 126. Moreover, the fact that appellate counsel identified and raised an issue that drew dissent in the appellate court in no way disproves Movant's assertions that there were other issues that could have prevailed on appeal had counsel performed effectively.

The government's merits analysis also ignores the fact that one of the issues for which Movant alleges his appellate counsel were ineffective *was an issue that appellate counsel raised on direct appeal*. Appellate counsel *chose* to challenge the trial court's intellectual disability determination; appellate counsel then failed to obtain a ruling on that challenge from the Circuit and failed to raise *Hall v. Florida* when the Supreme Court decided that case while Movant's direct appeal was still pending. *See* Civ. Doc. 146 at 177-80; *supra* Section IV.B. Attorneys representing similarly-situated defendants raised *Hall* in pending appeals when it was decided. Because the trial court's intellectual disability determination was contrary to medical standards, and *Hall* made clear that medical standards must apply to *Atkins* determinations, there is a reasonable probability that Movant would have prevailed on appeal had appellate counsel performed effectively.

Movant's allegations of appellate ineffectiveness support plausible claims for relief, and therefore should not be dismissed at this Rule 12(b)(6) stage.

### 2. **The appellate ineffectiveness allegations are timely.**

The government's argument that Movant's allegations of appellate ineffectiveness are untimely because they do not relate back to his 2016 2255 Motion, Civ. Doc. 187 at 122-23, should be rejected. As "long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order." *Mayle v. Felix*, 545 U.S. 644, 665 (2005).

Movant demonstrated in the Operative Motion how he meets that standard. *See* Civ. Doc. 146 at 3-28.

Contrary to the government's assertion, Civ. Doc. 187 at 123, *United States v. Pittman*, 209 F.3d 314 (4th Cir. 2000), does not compel a finding of untimeliness. Because *Pittman* involved a case where the movant sought to add a claim that counsel was ineffective for failing even to file a notice of appeal and did not provide any allegations about what counsel should have raised in that hypothetical appeal, *see United States v. Pittman*, No. 98-6937, Br. of Appellant, 1999 WL 33612805, *25-26, it presents a wholly different situation than that presented here, where Movant seeks to amend to add allegations of appellate ineffectiveness for failing to raise constitutional violations that were previously pled. Facing a question more directly on point to Movant's case, the Ninth Circuit has found that allegations of appellate ineffectiveness regarding a previously pled constitutional violation relate back. *See Nguyen v. Curry*, 736 F.3d 1287, 1297 (9th Cir. 2013) (holding claim that appellate counsel was ineffective for failing to raise double jeopardy claim related back to double jeopardy claim). Movant's allegations of appellate ineffectiveness in the Operative 2255 Motion all concern appellate counsel's ineffectiveness for failing to raise or competently litigate on direct appeal constitutional violations contained in the 2016 2255 Motion.

Contrary to the government's assertions, Civ. Doc. 187 at 123, the Court's prior finding that the appellate ineffectiveness claim in the 2018 proposed amendment did not relate back to the 2016 Motion is of no bearing here. As discussed above, while Movant disagrees with the Court's prior ruling on that claim, it is also clear that Movant's allegations in the Operative Motion are not the same as the "general assertion" which the Court previously rejected. Moreover, as discussed in *supra* Section III.C (regarding the 2022 Discovery Order), this Court always retains the

129

authority to revisit a prior order that disposes of some, but not all, of the claims under Federal Rule of Civil Procedure 54.

If this Court finds that Movant's current allegations of appellate ineffectiveness are untimely because they were not pled in and do not relate back to the 2016 2255 Motion, it should grant equitable tolling and deem those allegations timely. In *Holland v. Florida*, the Supreme Court affirmed the presumption in favor of applying principles of equitable tolling in AEDPA cases, recognizing that "the presumption's strength is reinforced by the fact that 'equitable principles' have traditionally 'governed' the substantive law of habeas corpus." 560 U.S. 631, 646 (2010) (quoting *Munaf v. Geren*, 553 U.S. 674, 693 (2008)). Equitable tolling is appropriate where the petitioner demonstrates "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. Diguglielmo*, 544 U.S. 408, 418 (2005). The *Holland* Court made clear that the Court's inquiry must be a flexible one that "draw[s] upon decisions made in other similar cases for guidance," but also recognizes "that specific circumstances, often hard to predict in advance, could warrant special treatment in an appropriate case." *Holland*, 560 U.S. at 650.

Equitable tolling is warranted due to both Movant's incompetence and his initial 2255 counsel's conflict of interest. First, equitable tolling based on mental condition is appropriate "in exceptional circumstances, such as institutionalization or adjudged mental incompetence." *Grant v. McDonnell Douglas Corp.*, 163 F.3d 1136, 1138 (9th Cir. 1998); *see also United States v. Sosa*, 364 F.3d 507, 513 (4th Cir. 2004). Undersigned counsel has provided this Court with voluminous evidence supporting a finding of Movant's incompetence. Most prominently, psychiatrist Dr. Pablo Stewart evaluated Movant in connection with these proceedings and found him to be incompetent. *See* Civ. Doc. 150, Appx. 215; *see also* Civ. Doc. 69 & 71 at Claim 31 (asserting

Movant's incompetency at all stages of these proceedings); Civ. Doc. 82 (seeking to stay proceedings based on incompetency). In addition to Dr. Stewart's expert declaration, the record is replete with other expert evidence of Movant's mental health disorders and cognitive dysfunction, including opinions by Daniel Martell, Ph.D., Civ. Doc. 150, Appx. 236, Antonio Puente, Ph.D., *id.*, Appx. 213, Julian Davies, M.D., *id.*, Appx. 211, Andres Lugo, M.D., *id.*, Appx. 212, Jennifer Sapia, Ph.D., *id.*, Appx. 214, Selena Sermeño, Ph.D., *id.*, Appx. 237, Pablo Stewart, M.D., *id.*, Appxs. 215, 216, J. Gregory Olley, Ph.D., *id.*, Appxs. 28, 73, James Merikangas, M.D., *id.*, Appxs. 26, 72, Ruben Gur, Ph.D., *id.*, Appxs. 29, 242, and Ricardo Weinstein, Ph.D., *id.*, Appxs. 70, 81. Lay witness observations of Movant's mental health signs and symptoms are also in the record. *See id.*, Appxs. 1-22, 27, 217-230, 239. While Movant has not been formally "adjudged" mentally incompetent by a court of competent jurisdiction, *Grant*, 163 F.3d 1136, he has provided this Court with evidence sufficient to support such an adjudication, and this Court always retains the authority to conduct such a hearing. This extraordinary circumstance of Movant's incompetency, alone and in combination with Movant's conflicted original § 2255 counsel, *see infra*, warrants equitable tolling of the one-year statute of limitations.

Second, as this Court is well aware, Movant's initial 2255 counsel were the same as his direct appeal counsel,[30] and Supreme Court precedent is clear that they could not have been reasonably expected to investigate, develop, or assert claims of their own ineffectiveness. *See Christeson v. Roper*, 574 U.S. 373, 377 (2015). The government's argument that this conflict did not prevent Movant from raising his appellate ineffectiveness allegations in his 2016 2255 Motion,

---

[30] *See, e.g.*, Civ. Doc. 146 at 3-4 & n.3; Civ. Doc. 94 at 6-14 (asserting former counsel's belief that it had a conflict of interest in continuing to represent Movant and requesting to withdraw as counsel); Civ. Doc. 86 at 2-3 (citing conflict of interest in requesting to withdraw as counsel and appointment of substitute counsel).

Civ. Doc. 187 at 124, must be rejected. The record is clear that Movant did not raise any allegations of appellate ineffectiveness until after this Court appointed unconflicted counsel. The government's focus on the fact that conflicted attorney Lopez's name was on the 2018 proposed supplement/amendment (along with unconflicted undersigned counsel's name) does nothing to counter the fact that conflicted counsel could not have been expected to investigate and identify claims of their own ineffectiveness and did not raise those claims when they were the sole attorneys representing Movant.

The government's reliance on *Davilla v. Davis*, 582 U.S. 521 (2017), *see id.* at 124 (directing Court to argument in prior pleading), conflates Supreme Court jurisprudence on procedural default with Supreme Court jurisprudence on equitable tolling. The Supreme Court has been well-aware, when finding that there are circumstances in which habeas counsel's conduct can support equitable tolling, that a habeas petitioner does not have a constitutional right to effective habeas counsel. *See Holland*, 560 U.S. at 656 (Alito, J., concurring). And yet, the Supreme Court has found that equitable tolling can apply in certain circumstances.

The government further wants this Court to find the appellate ineffectiveness allegations untimely and reject equitable tolling based on initial 2255 counsel's conflict because the government believes that Movant has not been diligent in trying to raise his appellate ineffectiveness allegations. In support of this argument, the government points out that undersigned counsel was appointed in 2017, but did not raise the current iteration of Movant's appellate ineffectiveness allegations until 2023. Civ. Doc. 187 at 124-25. The government does not explain what else undersigned counsel could have done to raise the appellate ineffectiveness allegations more diligently.

Movant has been actively trying to amend his 2255 Motion to include allegations of appellate ineffectiveness for almost the entire time that undersigned, unconflicted counsel has represented him. Undersigned counsel alerted the Court to the potential problem caused by initial 2255 counsel's conflict of interest within two months of her appointment and asked the Court for time to investigate and determine what steps may be necessary to protect Movant's rights. Civ. Doc. 61 at 4. The Court effectively entered a pocket veto of counsel's request for time by failing to rule on it.

Then, within one year of her appointment, in February 2018, undersigned counsel moved for leave to amend/supplement the 2016 2255 Motion with a claim asserting appellate ineffectiveness. Civ. Doc. 71 at 205-07 (Claim 56). In October 2022, four and one-half years later, the Court denied the 2018 motion for leave to supplement/amend and found that the "general" appellate ineffectiveness claim was untimely and failed as a matter of law. Civ. Doc. 131 at 52-53. Less than three weeks later, counsel filed a motion to reconsider that denial of leave to amend, raising the conflict of interest. Civ. Docs. 132, 133. That reconsideration motion was still pending when counsel filed the 2023 Amended 2255 Motion. Indeed, the Court was silent on the reconsideration motion until January 2025, when it denied the motion as moot. Civ. Doc. 179 at 10. There should be no question that Movant has been diligent in this regard.

### 3. **The claims are neither moot nor conclusory.**

The government urges this Court to find that any appellate ineffectiveness allegations that pertain solely to the death sentences are moot. Civ. Doc. 187 at 125-26. Movant has/will address the government's mootness arguments in the individual claims to which the appellate ineffectiveness allegations relate. Briefly, while Movant agrees that the allegations pertaining solely to his death sentences are currently moot, he disagrees with the government about whether certain claims pertain solely to his death sentences. *See* Section III(D). Movant has asserted that

133

those claims pertaining to the *Atkins* determination may continue to present a live case or controversy due to his continued litigation of his mental health in Claim II.F; that all claims pertaining to jury selection impacted all phases of trial; and that his Vienna Convention claim remains live. *Id.*

The government's arguments that Movant's appellate ineffectiveness allegations regarding Claims XV (juror misconduct), XX (denial of right to presence), XXI (court security measures), XXV (imposition of death penalty based on race), and XXVI (Vienna Convention) should be dismissed as conclusory, Civ. Doc. 187 at 126, should be rejected. Each of these claims lays out extensive factual and legal averments explaining why particular acts, omissions, or events require relief and argues that, to the extent it was possible to raise the claims on direct appeal, appellate counsel were ineffective for having not done so. *See* Civ. Doc. 146 at Claims XV, XX, XXI, XXV, XXVI. These allegations are simply not conclusory as they flesh out substantive constitutional violations.[31]

---

[31] Movant had pled substantially similar constitutional violations in his 2016 2255 Motion. *See* Civ. Doc. 24 at Claims XV, XX, XXI, XXV, XXVI. The government in its 2023 Motion to Dismiss then argued, without any particularity, that these claims were procedurally defaulted because they could have been raised on direct appeal. Civ. Doc. 143 at 84-87; *see supra* section III(B)(1) (noting that bare allegations of procedural default are insufficient to raise that defense when the government has not shown *how* a particular claim could have been raised earlier). The government continues to assert procedural default for failure to raise these claims on direct appeal in its current Motion to Dismiss, but still fails to provide any argument explaining *how* the government thinks appellate counsel could have raised these claims on direct appeal. At the same time, the government appears to be faulting Movant for also not explaining *how* these claims could have been raised on direct appeal.

Except for Claim XX.A, Movant has argued, in the alternative, that these claims could not have been raised on direct appeal because they required facts outside of the trial record and, in the case of the juror misconduct claim, Movant was further impeded from developing his allegations due the very juror misconduct about which he complains. *See supra* and *infra* (discussion of Claims XV, XX, XXI, XXV, XXVI). However, because the government continues to assert that they could have been raised on direct appeal, Movant also continues to allege that, if the government's bald assertions are somehow correct, appellate counsel was accordingly ineffective.

134

The government's argument that Movant's allegations of appellate ineffectiveness regarding Claim LIX (*Rehaif*) should be dismissed as conclusory, Civ. Doc. 187 at 126, should likewise be rejected. The *Rehaif* claim lays out extensive factual and legal averments explaining why Movant's person not to possess conviction should be vacated and argues that, to the extent it was possible to raise the claim on direct appeal, appellate counsel were ineffective for having not done so, *see* Civ. Doc. 146 at 559-71. Because Movant's allegations of appellate ineffectiveness support plausible claims for relief, the government's Motion to Dismiss should be denied.

### D. Currently Moot Claims that Pertain Solely to Movant's Commuted Death Sentences.

As discussed in *supra* Section III.D, Movant agrees with the government that the following claims pertaining solely to the death sentences are currently moot because of the presential commutation of those sentences to life imprisonment and that the Court should not (and cannot) currently reach their merits. *See* Civ. Doc. 187 at 25, 35-36 (Claim I); *id.* at 25, 35-36 (Claim V); *id.* at 25, 72-73 (Claim VI.A. and V.B); *id.* at 25-26, 84 (Claim VII.D); *id.* at 25, 35-37 (Claim IX); *id.* at 25, 35-36 (Claim X); *id.* at 25, 81-82 (Claim XII); *id.* at 25, 36-37 (Claim XIX); *id.* at 25, 37 (Claim XXIII); *id.* at 25, 67 (Claim XXIV); *id.* at 25, 81 (Claim XXV); *id.* at 25, 81-82 (Claim XXVIII). Movant addresses the government's merits arguments regarding these claims only in the event that the legal status of Movant's commutations changes in the future.

1. **The Facts Contained in Claim I – Regarding Trial Counsel's Ineffectiveness in Investigating and Presenting Lay Evidence – State a Plausible Claim for Relief.**

The government urges this Court to dismiss Claim I because of this Court's 2022 Discovery Order and the reasons stated in the government's prior discovery response. *Id.* at 26. This Court should deny the government's request to dismiss Claim I based on these prior, mooted documents,

135

because they misstate the controlling law, misapply the applicable standard of review, and mischaracterize Movant's allegations.

### a. Deficient Performance.

To establish the deficient performance element of a claim of ineffective assistance sufficient to survive Rule 12(b)(6) review, Movant must provide allegations which, when assumed to be true, show that counsel's performance fell below objective standards of reasonableness. The government's motion to dismiss arguments premised on the prior discovery litigation rely on incorrect statements of law – most egregiously ignoring counsel's duty to *investigate*; rely on mischaracterizations of Movant's allegations; and improperly speculate about counsel's purported strategy. At the same time, the government offers little to no factual rebuttal of Movant's proffered facts. Consequently, it is important to identify the government's legal and factual mistakes as to what Claim I entails and address the government's improper unsupported speculation before turning to whether Movant's allegations and inferences *plausibly* identify deficient performance by counsel.

#### i. The presentation of some mitigation does not automatically render counsel's investigation constitutionally adequate.

The government broadly and mistakenly argues that trial counsel's presentation of some mitigation evidence automatically renders their investigation constitutionally adequate. By referencing this Court's 2022 Discovery Order, the government argues that because trial counsel "presented extensive testimony and evidence" about Movant's "background," Civ. Doc. 108 at 31, Movant has not stated a claim of deficient performance for failure to investigate and present potential mitigation evidence. The government misstates Movant's claim and ignores the controlling law.

Movant alleged that counsel failed to "investigate or present" evidence in mitigation. Civ. Doc. 146 at 35-103. The government's reliance on the evidence presented at trial to determine the reasonableness of counsel's performance ignores that Movant's claim specifically addresses counsel's *investigation*, Civ. Doc. 146 at 40-62; the evidence presented at trial by definition has nothing to do with the extent or scope of the investigation counsel neglected.

> ii. *The government's argument is also contrary to the controlling law.*

*Wiggins v. Smith*, for example, states that counsel have an obligation to investigate "all reasonably available mitigating evidence." 539 U.S. 510, 522 (2003). *See also Williams v. Taylor*, 529 U.S. 362, 396 (2000) (explaining counsel has "obligation to conduct a thorough investigation of the defendant's background"). Movant has alleged that additional evidence and additional sources of evidence existed beyond that presented at trial, but counsel failed to investigate that evidence and those sources. "[A]s *Wiggins* makes clear, an inadequate investigation into potentially mitigating evidence can be, by itself, sufficient to establish deficient performance." *Williams v. Stirling*, 914 F.3d at 314 (citing *Wiggins*, 539 U.S. at 534); *see also Rompilla*, 545 U.S. at 383, 388 (finding trial counsel ineffective for failing to review file of prior conviction, despite fact that counsel had conducted other mitigation investigation; rejecting prosecution argument "that defense counsel's efforts to find mitigating evidence by other means excused them from looking in the prior conviction file"). The government's speculative "strategic reasons" are misplaced and should be rejected.

Through incorporation of its 2017 discovery reply, the government addresses just three specific components of Claim I – counsel's failure to formally request discovery from the government regarding its investigation into Movant's family; counsel's failure "to 'search for additional witnesses' to facts or allegations that Umaña's father had involved Umaña in his drug-

dealing business, that Umaña had a brother in El Salvador, and that Umaña had been born in 1982 in Guatemala"; and counsel's failure to request a continuance. Civ. Doc. 52 at 94-105.

<u>Failure to Investigate Witnesses.</u>

The government's specific arguments regarding these aspects of deficient performance should be rejected because the government merely speculates that trial counsel purportedly made strategic decisions not to investigate further. But, to the extent the record contains any evidence regarding counsel's strategy, it is evidence tending to demonstrate that counsel had none. *See*, *e.g.*, Civ. Doc. 150, Appxs. 23-24. The record is otherwise silent as to counsel's reasons for not investigating further, and the government has not presented evidence establishing or even suggesting any reason. As, in this Rule 12(b)(6) stage of proceedings, all reasonable inferences must be made in Movant's favor, *Twombly*, 550 U.S. at 555, the government's speculations are misplaced and inappropriate here.

Moreover, the government's speculations are presumptively wrong as a matter of law. It is well-established that the "prevailing professional norms" at the time of Movant's trial included counsel's obligation "that investigations into mitigating evidence 'should comprise efforts to discover all reasonably available mitigating evidence.'" *Wiggins*, 539 U.S. at 524. The fact that counsel presented *some* mitigation evidence in no way negates their obligation to investigate more. Perhaps (at the proof stage of proceedings, but not here, at the motion to dismiss stage) the government could argue that counsel, *having investigated*, reasonably decided not to present the resulting more evidence. But that is not the argument here. By failing to investigate obviously relevant and reasonably available mitigation evidence, counsel failed to perform according to the prevailing professional norms. The government's argument otherwise – particularly relying as it does on unsupported speculation – is legally wrong and factually misplaced in these Rule 12(b)(6)

proceedings. As described in greater detail above, section III(B)(2), it is premature to create theoretical strategic reasons counsel could have had for their acts and omissions before factual development of the record. *See*, *e.g.*, *Andrus v. Texas*, 590 U.S. 806, 816-17 (2020) (per curiam) (quoting *Wiggins*, 539 U.S. at 526) ("Despite repeated questioning, counsel never offered, and no evidence supports, any tactical rationale for the pervasive oversights and lapses here. Instead, the overwhelming weight of the record shows that counsels 'failure to investigate thoroughly resulted from inattention, not reasoned strategic judgment.'"). And, at this stage of proceedings, all reasonable inferences must be drawn in *Movant's* favor, not the government's.

The strategic reasons assumed by the government have been found invalid by the Supreme Court. The government, for example, claims that counsel acted reasonably in not attempting to contact additional witnesses regarding his father's drug dealing, brother, and Guatemalan birth because "counsel could reasonably have expected Umaña himself to know this information" and it was likely after consultation with the client that they made a "reasonable decision" not to proceed further. Civ. Doc. 52 at 96-97, 102. If this were the test, the defendants in *Williams*, *Wiggins*, and *Rompilla* would have been precluded from obtaining relief. *Williams*, 529 U.S. 362 (counsel ineffective for failing to present evidence that defendant was "borderline mentally retarded," had not advanced beyond sixth grade, and had suffered a nightmarish childhood); *Wiggins*, 539 U.S. 510 (counsel ineffective for failing to present deprivation and abuse in the first six years of his life in the custody of his chronic alcoholic, absentee mother, being "shuttled from foster home to foster home," and frequent, lengthy absences from school); *Rompilla* 545 U.S. at 392 (counsel failed to uncover evidence from defendant's childhood, alcoholism, and mental capacity and health). All these cases involved the failure to present evidence of parts of the defendants' lives that they themselves were presumably aware of. Moreover, the Supreme Court has been clear that, to be a

139

reasoned strategic decision, it must be an informed one made only after investigation, *Wiggins*, 539 U.S. at 522 (discussing *Williams*, 529 U.S. 362), and such investigation did not occur here. Finally, Movant could hardly be a source of data regarding the circumstances of Movant's gestation, birth, and infancy obtained from his mother.

The government's reliance on the trial mitigation specialist's testimony that Movant told him that his mother (Leticia Ramirez) had not been in his life since he was seven months old to justify counsel's investigatory failures, *see* Civ. Doc. 52 at 99, is belied by the record. As the trial mitigation specialist testified, in the same answer that the government cites in its brief, regarding Movant's descriptions *of his infancy*: "Of course it's not based on his recollection, it's what he's been told as he's been raised." PPT 523. The mitigation specialist testified that the other source he had for this information and time in Movant's life was Movant's father (Rafael Umaña). PPT at 522 ("Rafael told me . . ."). Relying on one family member without having even taken reasonable investigatory steps to talk to others is deficient performance. Rafael's story of maternal abandonment made interviewing Movant's mother that much more crucial to learn her side of the story to test Rafael's version of events.

The government's improper speculation that trial counsel decided not to spend resources looking for Leticia because she would not have been an impartial witness, Civ. Doc. 52 at 99-100, appears fabricated from whole cloth. The government does not explain *why* it believes Leticia would not have been impartial and does not explain why the *mother* would somehow have been less impartial than the *father*, who counsel *did* rely on. The post-conviction investigation revealed evidence not only from the mother, but other family members and impartial neighbors, that the *father* was a brutalizing force in Movant's life. Thus, the only inference supported by the files and records currently before this Court is that it was, in fact, the *father* who lacked impartiality and

140

provided largely self-serving testimony. But trial counsel never knew that because they failed to conduct a constitutionally adequate investigation. Counsel did not *choose* to present Rafael's version of events; because of deficient investigation, Rafael's version of events was all they had. Counsel deficiently "abandoned [their] investigation of [Movant's] background after having acquired only rudimentary knowledge of his history from a narrow set of sources." *Wiggins*, 539 U.S. at 524.

The government's speculation here also ignores the critical nature of gestation and early life to childhood development – topics that a birth mother is uniquely qualified to discuss. Physiological development begins at conception. The circumstances of a child's gestation and first years of life are crucial to their development, including their brain development. Civ. Doc. 150, Appx. 237 at 5, 15 (Sermeño declaration); Civ. Doc. 150, Appx. 212 at 3 (Lugo Report). Only one person was present, observing, and forming memories, for all of Movant's gestation and birth. That person was not Movant, and that person was not his father. That person was his mother, whose address was contained in the pretrial discovery but whom trial counsel never interviewed.

The government's reliance on Attorney Bryson's statement that counsel did not return to El Salvador to look for Leticia after the government produced the Guatemalan birth certificate on the eve of the trial because they were busy with other trial preparation, Civ. Doc. 52 at 100; Civ. Doc. 150, Appx. 23, ¶ 7, does nothing to defeat Movant's claim of deficient performance. First, Attorney Bryson's recollection of what happened does not make what trial counsel did reasonable. Trial counsel *should have known Leticia's whereabouts from documents produced earlier in discovery*. *See* Civ. Doc. 146 at 48. Bryson's declaration does not show a reasoned strategic decision but a failure to conduct a timely, adequate investigation that left the trial team scrambling on the eve of trial, unable to follow up on an investigatory lead that the government had previously

suppressed. Second, in the very paragraph relied upon by the government, attorney Bryson explains that he believes "that speaking to the mother of a capital defendant is vital to a mitigation case" and that he would have presented to the jury the information Leticia provided to post-conviction counsel had he had that information at trial. Civ. Doc. 150, Appx. 23, ¶ 7. Trial counsel knew where Leticia was and knew Leticia was important yet relied solely on Rafael without taking reasonable steps to locate her (or anyone else that could have discussed Movant's early years). This was deficient. To the extent there is any question regarding counsel's knowledge, motivations, or actions, that question is a disputed fact to be resolved by further evidentiary development, not dismissal.

Failure to Request Discovery.

The government – again without any record support or additional evidence in support – speculates that counsel did not request further discovery of the government's mitigation evidence and/or a continuance to develop mitigation evidence further because prevailing on these requests was a "long-shot." Civ. Doc. 52 at 88. Given the absence of any evidence contradicting Movant's allegations here (indeed, the record makes clear that counsel did not request further discovery and did not request a continuance), all reasonable inferences must be made in Movant's favor. Moreover, the Supreme Court has been clear that, to be a reasoned strategic decision, it must be an informed one made only after investigation, *Wiggins*, 539 U.S. at 522 (discussing *Williams*, 529 U.S. 362), and such investigation did not occur here. The government's speculations are misplaced, improper, and irrelevant in these Rule 12(b)(6) proceedings.

Again, the prevailing professional norms required counsel's mitigation investigation "'should comprise efforts to discover all reasonably available mitigating evidence.'" *Wiggins*, 539 U.S. at 524. Counsel were (or should have been) aware of numerous red flags that the government

142

had mitigating evidence that would assist the defense.[32] Counsel had a duty to investigate – i.e., request in discovery – that evidence. They did not. That evidence is more than sufficient to establish the element of deficient performance to survive the government's Rule 12(b)(6) motion, yet counsel did not pursue these leads. Once the defense team had reason to believe that the government had located Movant's mother and spoken to her; had discovered that Movant had been born in 1982 in Guatemala; and had raised the specter that Movant's father was a drug dealer; the team had a duty to pursue these leads further and performed deficiently when it failed to do so. When defense counsel was put on notice of these "pertinent avenues for investigation," counsel was obligated to follow up on those leads. *Porter v. McCollum*, 558 U.S. 30, 40 (2009); *accord Wiggins*, 539 U.S. at 525.

Failure to Request a Continuance.

Counsel's failure to request a continuance is discussed in more detail in Claim XIII.

> iii.    *Movant's undisputed factual allegations must be accepted as true.*

In assessing whether Movant has stated a claim for which relief can be granted, Rule 12(b)(6), the Court assumes all of Movant's factually supported allegations to be true and resolves all reasonable inferences therefrom in Movant's favor, unless they are conclusively disproven by the record. *Iqbal*, 556 U.S. at 679; *Nemet*, 591 F.3d at 255; *see also Hall*, 846 F.3d at 765 ("When ruling on a motion to dismiss, courts must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff."). A defendant's life

---

[32] As detailed in the Operative Motion, those red flags included the government's possession of his Guatemalan birth certificate and attached narrative; the fact that the FBI interviewed his mother and attempted to interview his father; and the prosecutor's statements to counsel regarding the father's drug dealing and brother's status as an incarcerated person. Civ. Doc. 146 at 59-62.

history is the cornerstone of any capital penalty phase proceeding. *Penry v. Lynaugh*, 492 U.S. 302, 319 (1989); *Eddings v. Oklahoma*, 455 U.S. 104, 112 (1982). There can be little doubt that trial counsel were ill-prepared to present the most critical component of their case.

Because the government relies upon a misunderstanding of Movant's claim and the controlling law, it ignores the extensive evidence alleged in the 2255 Motion detailing the evidence that trial counsel decided not to present without first investigating it. Those allegations, and the reasonable inferences that stem from them, plausibly claim that counsel were deficient. Movant has directly alleged, with factual support, that counsel did not investigate all reasonably available mitigation evidence (for example, seeking Movant's mother for information about Movant's *in utero* health and post-natal neglect). Because conducting such investigation is an established norm in capital cases, *Wiggins*, 539 U.S. at 524, Movant's allegations and inferences plausibly claim counsel were deficient.

For example, Movant alleged that counsel limited their investigation to one primary source—Movant's father—and a small number of transitory other sources. Civ. Doc. 146 at 40-42; *see also Wiggins*, 539 U.S. at 524 (explaining counsel deficiently "abandoned [their] investigation of [Movant's] background after having acquired only rudimentary knowledge of his history from a narrow set of sources"). While it may be reasonable for counsel to limit their investigation where no other sources exist, Movant also detailed the extensive number of other sources-not least, Movant's mother, neighbors who lived in the mesons with him, and numerous other family members, friends, and teachers-who knew Movant and the traumatic events that plagued every period of his life. Civ. Doc. 146 at 48-55. Even ignoring the details of that evidence, counsel's failure to investigate every period of Movant's life would be deficient. *See Wiggins*, 539 U.S. at 524-25. Given that Movant's father was a significant cause of Movant's trauma, provided

defense counsel with self-serving information, and only had information about a portion of Movant's life,[33] counsel's decision to limit their mitigation investigation was deficient.

Movant will not repeat all his allegations here but will note that his trial counsel's failure to investigate also included factual allegations that:

- trial counsel failed to promptly begin their mitigation investigation despite acknowledging the need to begin their investigation "immediately" in a court filing; despite knowing that Movant's foreign national status would complicate their investigation; and despite knowing that Movant exhibited red flags for brain damage and intellectual disability, Civ. Doc. 146 at 44-48; Civ. Doc. 150, Appxs. 23, 24;

- trial counsel failed to conduct interviews of family and neighbors despite having readily available means to locate them (including factual allegations that Movant's mother's address was included in pretrial discovery; Movant's brother was readily locatable in prison; and Movant's mitigation specialist had visited at least two different places where Movant had lived as a child and would have found several of Movant's childhood neighbors *if he had knocked on the doors*), Civ. Doc. 146 at 48-52; Civ. Doc. 150, Appxs. 37, 47;

- trial counsel failed to interview Luis Ramos, despite him being readily located in prison, Civ. Doc. 146 at 54-55; Civ. Doc. 150, Appx. 112 at ¶¶ 50, 45-50;

---

[33] Movant's father took part in the crucial developmental period through Movant's mid-adolescence, but the father had little first-hand knowledge of Movant's late adolescence or early adulthood. *See* Civ. Doc. 146 at 65-99.

145

- trial counsel could have found even more family of Movant's through the readily locatable family and neighbors described above, Civ. Doc. 146 at 52-54; Civ. Doc. 150, Appxs. 1-15;

- trial counsel failed to obtain all the available mitigating evidence from the witnesses they *did* interview, including Movant's girlfriend, Monica Reyes, Civ. Doc. 146 at 55-57; Civ. Doc. 150, Appx. 12;

- trial counsel failed to investigate the circumstances of Movant's birth, despite having indications from pretrial discovery and Monica Reyes that Movant was born in Guatemala, Civ. Doc. 146 at 56-58; Civ. Doc. 150, Appxs. 12, 105b; Def. Tr. Ex. 32 (Guatemalan Birth Certificate with interview summary on the back); and

- trial counsel failed to file formal discovery requests regarding the government's investigation into Movant's background, even though trial counsel should have had reason to believe that that government obtained information exculpatory to the penalty during its investigation in El Salvador, Civ. Doc. 146 at 59-62.

These allegations are not mere statements of legal conclusions. They are detailed, factually supported allegations that counsel failed to conduct the kind of mitigation investigation that has been an established professional norm since 1989. *Wiggins*, 539 U.S. at 524-25.

These allegations, and any reasonable inferences stemming from them, are presumed to be true unless the government can conclusively show they are not. *Twombly*, 550 U.S. at 555. The government has pointed to nothing in the record and has provided no extra-record evidence that disproves Movant's allegations, conclusively or otherwise. Indeed, the government never disputes that the witnesses were there and available to talk to trial counsel and testify at trial if only trial counsel had investigated.

The government relies solely on speculative strategic reasons for counsel's decisions not to investigate. But again, the government provides no factual support for its speculations. Because all reasonable inferences (i.e., those with factual support) are made in Movant's favor, unsupported government speculations cannot refute Movant's allegations. *See Twombly*, 550 U.S. at 555.

The government fails to address most of Movant's specific allegations of deficient performance, *see* Rule 5(b), and so does not contest that these sources of evidence were available to counsel or that counsel failed to investigate these sources of evidence. The government's offering of unfounded speculation regarding the purported reasonableness of some (but not all) of the above-described failures is inapplicable at this Rule 12(b)(6) stage. Because the government misstates the controlling law and does not even answer the majority of Movant's allegations – allegations that present a plausible claim that counsel performed deficiently – the government's argument in support of dismissal is insufficient and should be rejected.

### b. Prejudice

The government's Motion to Dismiss (incorporating the 2022 Discovery Order and the government's 2017 discovery response) relies on an incorrect conception of prejudice and mischaracterizations of Movant's allegations and the record. At the same time, the government offers little to no factual rebuttal of Movant's proffered facts.

#### i. Movant's factual proffers plausibly establish a "reasonable probability" of a different outcome.

As a preliminary matter, the government relies on an incorrect statement of the law, arguing that Movant must prove that he would have received a life sentence had it not been for counsel's deficient performance. *See* Civ. Doc. 108 at 33. That is incorrect. To show prejudice in the context of counsel's failure to present or the jury's failure to credit mitigating evidence, Movant must show "a *'reasonable probability'* that at least one juror would have been moved to spare [his] life had

147

he heard the mitigation evidence developed at the habeas hearing that was not presented at the trial." *Williams*, 529 U.S. at 394-95 (emphasis added). That is, "the available mitigating evidence, taken as a whole, 'might well have influenced the jury's appraisal of [Movant's] moral culpability." *Wiggins*, 539 U.S. at 538 (citing *Williams*, 529 U.S. at 398). The government's reconceptualization of clearly established law should be rejected at any stage of proceedings, let alone in a Rule 12(b)(6) motion.

Turning to Movant's factually supported allegations, here is not the place to repeat in full those facts but suffice to say Movant alleged and provided detailed factual proffers of the types of evidence trial counsel could have presented to their mental health experts and the jury had they conducted a constitutionally adequate investigation. Civ. Doc. 146 at 63-103. He described, narratively, the story these witnesses and records could have provided (*id.*) and supported that story with documentary exhibits and lay witness declarations. *See, e.g.*, Civ. Doc. 150, Appxs. 1-22, 217-30, 239 (declarations); *id.*, Appxs. 32-35 (records); Civ. Doc. 147, Appxs. 30-31 (records). And Movant presented an argument regarding how this evidence differed and changed the picture from that presented a trial, such that there was a reasonable probability that one juror would have voted for life. Civ. Doc. 146 at 63-103.

Movant's factually supported allegations include:

- The true circumstances of Movant's conception, gestation (by a starving woman who nonetheless drank constantly and attempted suicide with rat poison), birth (breech with signs of infection), and infancy in (an extremely poor, unsanitary, pesticide-covered tenement in) Guatemala. Contrary to the rosy picture that Movant's father (Rafael) portrayed, the true circumstances include facts that: Movant's family suffered great poverty in Guatemala, going hungry, sleeping on tarps outdoors, drinking from a ravine, and living

148

near enormous fertilizer warehouses and pesticide covered fields; that Rafael physically assaulted, drugged with Rohypnol, and prostituted Movant's mother (Leticia); that Leticia further self-medicated with alcohol and marijuana, including binge drinking while she was pregnant with Movant; that Leticia's circumstances were so dire – and Rafael's behavior toward her so terribly abusive – that Leticia tried to kill herself while she was pregnant with Movant by ingesting poison; that Movant's birth was difficult; that Rafael's family forced Leticia to stop breastfeeding when Movant was five days old, instead feeding him rice water and cheap flours; and that Rafael's family kicked Leticia out when Movant was just eight months old, beating her when she asked to see her son. *Id.* at 65-68.

- An accurate description of Movant's childhood in Santa Ana, El Salvador, with his father, Rafael. Again, contrary to the picture Rafael portrayed, Movant's childhood should be characterized by: Rafael's well-known reputation in his community as a violent, unpredictable man who drank, sold drugs, and threatened family and neighbors who were fearful of his erratic behavior and powerless to intervene when they observed him beat his son; that Rafael would take Movant out looking for Leticia, and when she refused to give him money, would violently beat her; that Rafael beat Movant – just for the sake of beating him – like he was a grown man, punching him with closed fists and leaving him bloody and bruised; that Movant grew up in tiny tenement rooms in mesons shared with Rafael, his grandmother, his cousin and pigeons, going without adequate clothing, food, or medical care; that other children made fun of Movant for his long, matted, lice-infested hair and teeth that were stained with permanent grime and possibly deformed by syphilis; that Rafael operated a store front out of the room in which they lived, but withheld food from his son, sometimes eating in front of him, but not sharing with his own hungry child; that

Movant's great-grandmother – his sole protector – died a slow death from stomach cancer, bedridden for many months in the same bed she shared with Movant, who was just eight years old. *Id.* at 69, 71-82.

- The true extent of the war trauma that Movant was exposed to during his developmental years. This proffered evidence included not only detailed descriptions of threats by the death squads, but constant fear of people that supposedly could protect Movant, war atrocities and rotting corpses that Movant witnessed as a child, and specifically the fact that there was a colonel who lived above the meson in which Movant lived, who fired at the guerillas below, causing the guerillas to return rapid fire *directed at the meson* where Movant lived. *Id.* at 84-87. Available evidence of trauma also included facts regarding Movant's migration to the United States, a trip during which he saw at least one man get run over while his son watched by the very train on which he was traveling. *Id.* at 87.

- The true functional impact of Movant's intellectual disability and low cognitive functioning. This included statements from family and friends that greatly expanded on the very minimal descriptions the jury heard about Movant's inability to supervise Coca-Cola accounts because of problems using math. *See* Def. Tr. Exh. 21 at 15:00. Evidence available to trial counsel established that Movant struggled to learn, could not master basic addition or multiplication, had such bad handwriting that people joked that it looked like he was writing with his feet, could not comprehend third grade academics at age sixteen in night school, constantly made mistakes in writing despite correction, and was derided by others as "dumb." This also included statements from friends and family regarding Movant's inability to work, including his failures at picking coffee because he could not follow basic directions only to pick the red, ripe beans and that a neighbor tried to teach

150

him carpentry, but he could not use a measuring tape or learn to sand with the grain. This also included statements from friends and family regarding his uncommon and severe difficulties with memory, including how Rafael would become angry because Movant could not remember what to buy at the store; that Movant would forget to bring things to school; and that Movant would forget where he stored his money (when it was stored in his shoe). This included evidence of deficiencies in self-care, including his inability to dress himself or tie his shoelaces. This included witnesses' observations of his immaturity, that he would joke inappropriately in serious situations; that he still acted like a little boy even after he joined MS-13, hanging around younger kids and watching cartoons, and playing children's games (of which he had difficulty learning the rules). Civ. Doc. 146 at 87-95;

- This included further evidence of traumatic brain injury that would have corroborated the head injuries the jury heard about. In fact, readily available evidence supported at least three traumatic brain injuries: 1) falling, hitting his head, bleeding, and suffering a loss of consciousness while climbing a cupboard around age four or five; 2) also as a child, falling from the top of a mango tree, again hitting his head resulting in a bloody laceration and disorientation/confusion; and 3) a car accident as an adult where he – traveling as a passenger – hit his head on the dashboard. This further included detailed accounts of the history of his debilitating headaches that continued through adulthood and kept Movant from participating in daily life. *Id.* at 96-97;

- Finally, this included evidence of other psychiatric symptoms that Movant demonstrated. This includes evidence that Movant had a long history, beginning in childhood, of seeing and hearing things that weren't there, staring off and talking either to himself or things that were not visible; that Movant insisted the things he saw were real and drew pictures of

151

demon-like images to show the things he saw to others; and that he had visions and dreams that he believed were real and foretold the future. *Id.* at 97-99.

The government points to nothing in the record that contradicts these facts. Indeed, given that the record contains very little evidence (because of counsel's deficient investigation) of Movant's formative years, his life in El Salvador, or his move to and life in the United States, it is reasonable to assume the record does not contradict Movant's allegations. Moreover, as the government does not "address the allegations in the motion," Rule 5(b), the government does not contest the facts alleged by Movant. Absent conclusively contrary evidence, all of Movant's allegations are presumed to be true, and all reasonable inferences are made in his favor. In light of this wealth of mitigating evidence, it is plausible that there is a reasonable probability the result of the penalty phase of trial would have been different had the jury heard the extensive and compelling evidence provided in Claim I in addition to the relatively meager evidence presented at trial.

ii. *The government's prejudice arguments in its discovery response are meritless.*

In its discovery response, which the government incorporated by reference into its Motion to Dismiss, the government argued that Movant cannot show prejudice resulting from trial counsel's ineffective failure to file formal discovery requests regarding the government's interviews of Movant's mother because he "has failed to identify any material related to his mother that the United States was required to produce but did not." Civ. Doc. 52 at 96. The government is wrong. Movant has provided a declaration from his mother, Leticia, stating that, over the course of two lengthy interviews, she provided the government a multitude of mitigating facts. Civ. Doc. 150, Appx. 10, ¶¶ 81-83. However, the government withheld these details from trial counsel (and consequently from trial counsel's experts and the jury). *See id.*, Appxs. 74-75 (Notes of Prosecutor

152

Jill Rose, provided to trial counsel during voir dire). Given this documented example of the government failing to disclose mitigating information it learned from its interviews of Movant's mother, it is reasonable to infer the government failed to produce additional mitigating information learned from its interviews of other family members and witnesses who knew Movant, his family, social history, and background.[34]

In its discovery response, the government also relied upon Dr. Olley's *Atkins* hearing testimony that he had "enough . . . to make an assessment for Alejandro Umaña on the question of mental retardation" to claim that Movant cannot demonstrate prejudice from counsel's failure to request a continuance of the *Atkins* hearing. Civ. Doc. 52 at 98-99. The government's argument ignores the crucial facts contained in Dr. Olley's report that: "My involvement in this case is quite recent and has allowed me time only to interview Movant and make one trip to El Salvador to interview witnesses. Thus, this case presents unique challenges in gathering adaptive functioning information." Civ. Doc. 150, Appx. 73 at 9. While Dr. Olley may have had the bare minimum for making an intellectual disability diagnosis, he did not have – because counsel did not investigate – all reasonably available evidence to support that determination. *See also infra* Section IV.C.3 (further discussion of Dr. Olley regarding Claim III).

The government's discovery arguments, incorporated by reference into its Motion to Dismiss, are either factually wrong or do not point to any portion of the record that conclusively disproves any of Movant's allegations. Thus, Movant's allegations, along with any reasonable inferences, are presumed true and in Movant's favor. The government's discovery arguments do

---

[34] There can be no question that the government was required to produce this information, as it was exculpatory toward sentencing. *See Brady*, 373 U.S. at 87-88 (holding that prosecutorial suppression of information exculpatory to sentencing violates due process).

not change the conclusion that Movant has plausibly alleged that he was prejudiced by counsel's deficient mitigation investigation.

### c. Conclusion

By misstating the controlling law and by failing to meet its Rule 5 burden, the government cannot conclusively contradict any of Movant's extensive and detailed allegations concerning counsel's incomplete mitigation investigation and the evidence that was available with a complete investigation. The record does not contradict those facts, and the government has declined to offer any evidence to refute them, so they are presumed true. Movant has therefore pleaded a plausible claim for relief and dismissal for failure to state a claim is improper.

2. **The Facts Contained in Claim V – Regarding Counsel's Ineffectiveness in Investigating and Presenting Evidence Challenging Movant's Participation in the Los Angeles Homicides – State a Plausible Claim for Relief.**

The government contends that Claim V, like all of Movant's ineffective assistance of counsel claims, fails as a matter of law, Civ. Doc. 187 at 30-35, contending it must be dismissed because this Court held that the claim fails as a matter of law in the prior Discovery Order, *id.* at 26-28 (citing Civ. Doc. 108). In doing so, the government incorporates its March 2017 discovery response, Civ. Doc. 143. *See* Civ. Doc. 187 at 26. As discussed in *supra* Section III.C, the Discovery Order is not controlling. Moreover, the government's arguments presented in the Discovery Response fail.

### a. The government's overarching misapprehension of controlling law.

Throughout its incorporated discovery response, the government offers little more than invented potential explanations for trial counsel's omissions. *See, e.g.*, Civ. Doc. 52 at 76-77 (speculating that evidence "regarding Rod[u]s [an alternate suspect in the Lemon Grove homicide] would have been cumulative and could have run the risk of bolstering the Government's theory.");

154

*id.* at 78-79 (speculating about purported strategic reasons for trial counsel's failure to present the statements of Edgar Gutierrez, Alejandro Rodriguez, and Luis Rivera naming other persons responsible for the Lemon Grove homicide). In its discussion of the *Strickland* standard in its Motion to Dismiss, the government intimates the same: trial counsel's acts or omissions were the result of reasonable professional judgment. *See* Civ. Doc. 187 at 31-34.

The government's speculation is not appropriate at the motion to dismiss stage, where the court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Twombly*, 550 U.S. at 555-56), and "draw[ ] all reasonable . . . inferences from those facts in the plaintiff's favor," *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). The government forgets this basic principle, instead asking the Court to speculate about trial counsel's strategy (if any) for their omissions and dismiss the claim based on that speculation. *See generally* Section III(B)(2). The government's speculation should be rejected.

      b. *The government's arguments misapprehend Movant's claims, misapply the law, and misstate the record.*

         i. *Evidence Linking Giovanni Rodas to the Lemon Grove Homicide.*

For Movant's claim that trial counsel failed to effectively link Rodas to the Lemon Grove homicide, Civ. Doc. 146 at 184, the record contradicts the government's implicit suggestion, Civ. Doc. 187 at 31-34, that trial counsel had strategic reasons for their acts or omissions. The record demonstrates that it *was* counsel's strategy to implicate Rodas. During the penalty phase, trial counsel stated that Rodas was the driver and shooter in the Lemon Grove homicide. *See* PPT 219-20 (asking Parshall on cross-examination if Rodas was driving vehicle); PPT at 873 ("Basically, what he told the police is he was a passenger in the car. This guy named Sin [Giovani Rodas] was the driver. He didn't know what they were going to go do. He wasn't the shooter. He wasn't in the park. And he was not the driver of the car.").

The government's invented "strategy" regarding Rodas misapplies *Strickland*'s prejudice standard. The government presupposes that if there is *any* possibility a jury could have viewed the omitted evidence as damaging, the ineffective assistance claim fails. Civ. Doc. 52 at 77. But the *Strickland* standard is not so unforgiving. A movant need only show "a 'reasonable probability' that at least one juror would have been moved to spare [his] life had he heard the mitigation evidence developed at the habeas hearing that was not presented at the trial." *Williams*, 529 U.S. at 394-95. Movant can prove prejudice even if he leaves open the possibility that a jury might have still chosen death if presented with the evidence omitted through ineffective assistance. The Fourth Circuit's decision in *Williams v. Stirling*, 914 F.3d 302 (4th Cir. 2019), *as amended* (Feb. 5, 2019), illustrates how *Strickland* prejudice applies to potentially damaging mitigating evidence. In that case, the court acknowledged that the mitigating evidence at issue – fetal alcohol syndrome – could be a "double-edged sword," but nevertheless maintained trial counsel were still ineffective for failing to present this evidence because "*if* counsel had chosen to present this evidence, the jury *may have* returned a different verdict." *Id.* at 318 & n.8 (emphasis in the original). Evidence that Rodas fired the fatal shots may have absolved Movant of being directly involved in the Lemon Grove homicide, even if the jury had a lingering doubt about more remote involvement. And Movant states a plausible claim that there is a reasonable probability that this would have made a difference to at least one juror.

ii. *Evidence that Ramos and Lara Viewed Movant's Photo and Excluded Him as the Shooter.*

In rejecting Movant's argument that trial counsel were constitutionally ineffective for failing to present readily available evidence that Roberto Ramos and Juan Lara each looked at Movant's photograph as part of a photographic array and did not pick him out as the shooter, Civ. Doc. 146 at 184, the government speculates that counsel could not be ineffective because the

156

prosecution included the photographic array presented to Ramos and Lara as part of their trial exhibits, Civ. Doc. 52 at 78. The photographic array cited by the government, however, is the one viewed and circled by Freddy Gonzalez and has no indication that Ramos or Lara viewed it. *Id.*, Exh. 1 at 3423. And because trial counsel failed to confirm with Ramos and Lara that they had been shown that specific photographic array, counsel were only able to speculate that they were shown this array. PPT 884.

       iii. *Additional Exculpatory Statements Regarding Lemon Grove.*

The government next speculates that it was not unreasonable for trial counsel not to focus on the statements of Edgar Gutierrez, Alejandro Rodriguez and Luis Rivera regarding the Lemon Grove homicide because they were not present at the homicide. Civ. Doc 52 at 79. Putting aside the fact that this is, again, improper speculation by the government regarding a potential strategy that trial counsel has never stated or endorsed, the government ignores the fact that much of the government's own case in aggravation rested on hearsay evidence. *See Umaña*, 750 F.3d 345 at 360. The fact that this evidence would have been hearsay is of no moment in the context of this case.

       iv. *Evidence Supporting the Theory that the Driver (Arevelo) was the Fairfax Shooter.*

The government speculates that trial counsel could not have been ineffective for failing to present evidence that an eyewitness to the Fairfax Avenue homicide, Noe Bautista, met with a forensic sketch artist, who produced a sketch that did not resemble Movant, because the evidence is cumulative and would not have changed the outcome of the trial. Civ. Doc. 52 at 80-81. However, it was clearly trial counsel's chosen strategy to argue to the jury that Arevalo (the driver) was the shooter based on Bautista and Santiago's statements. PPT 196, 215. Contrary to the government's assertion, Civ. Doc. 52 at 81, the fact that the jury found the Fairfax homicide as an

157

aggravating factor *without this evidence* merely demonstrates that additional evidence supporting the defense theory would have been useful. At the motion to dismiss stage, moreover, all reasonable inferences must be made in favor of Movant. This includes how the jury may have viewed an eyewitness sketch showing someone who looks nothing like Movant.

> v.  *Barrera's Evidence Implicating Ramos as the Fairfax Shooter.*

Movant also has stated a claim that trial counsel were ineffective for failing to present evidence linking Luis Ramos to the Fairfax Avenue homicide. Specifically, Movant argues that trial counsel should have presented evidence showing that police arrested Alex Barrera for multiple robberies near Lemon Grove Park the day after the Fairfax Avenue homicide with the same brand and caliber of ammunition as the .22 caliber casings found at the homicide, and that Barrera told detectives that Luis Ramos had given him the bullets and Ramos was the Fairfax shooter. Civ. Doc. 146 at 190. The government contends that this argument fails, because trial counsel could have concluded it would undercut their theory that Rodas was the shooter, and that even if counsel's performance was deficient on this point, he cannot establish prejudice. Civ. Doc. 52 at 82-83. The government again improperly speculates as to why trial counsel may have chosen not to present this evidence. In so doing, the government ignores the fact that counsel's error regarding Barrera was one of investigation – counsel admitted in their declarations that they did not review Barrera's statement in discovery. *See* Civ. Doc. 150, Appxs. 23, 24. The Supreme Court has been clear that a decision is only as reasonable as the investigation behind that decision. *Williams*, 529 U.S. at 395. Here there was none, as counsel were unaware of the evidence.

The government's argument that counsel would have been reasonable not to present Barrera (had they even known about him) because his evidence would have contradicted Bautista and Santiago, Civ. Doc. 52 at 83, must also be rejected. The burden of proving the aggravating

158

circumstances during a penalty hearing lies on the government, not the defense. 18 U.S.C. § 3593(c). Here, Barrera's evidence, like Bautista's and Santiago's, created a reasonable doubt that Movant was the Fairfax shooter.

### vi. Evidence Linking Barrera to the Lemon Grove Homicide.

Movant has also stated a claim demonstrating that Barrera, who was arrested near Lemon Grove park with .22 caliber ammunition was responsible for a series of robberies in that same park, raising the possibility of his own involvement in the Lemon Grove homicide. Civ. Doc. 146 at 190-91. The government's attempt to minimize the significance of the .22 caliber bullets possessed by Barrera, Civ. Doc. 52 at 83, fails. As demonstrated in the 2255 Motion, the so-called ballistics match evidence relied upon by the government is scientifically invalid. Civ. Doc. 146 at 226-27; Civ. Doc. 150, Appx. 241. The ammunition in Barrera's pocket, and Barrera, could have been involved in the Lemon Grove homicide. And, again, the government's deficient performance arguments must be rejected because they are speculative and ignore the failure of investigation underlying this act of deficient performance.

### vii. Evidence Mitigating the Fairfax Homicides.

The Operative 2255 Motion alleges facts sufficient to state a plausible claim that trial counsel were constitutionally ineffective for failing to present information that mitigated the circumstances of the Fairfax homicides, including information that the Fairfax victims were the original aggressors, running towards Movant's group, threatening to kill and waiving a knife. Civ. Doc. 146 at 211-12. The government's speculation on why trial counsel may have omitted this argument, Civ. Doc. 52 at 84, is improper at this stage. Further, the government states without explanation that additional evidence mitigating the circumstances of the Fairfax homicides would not have changed the sentencing decision. *Id.* at 85. Reviewed under the proper standard, with all reasonable inferences taken in favor of Movant, the facts are sufficient to state a claim that had

159

trial counsel presented jurors with the full context of the Fairfax Avenue homicides, at least one juror might have weighed the mitigating and aggravating factors differently.

          *viii.*     *Arevalo's Hearsay Identification of Movant as the Lemon Grove Shooter.*

The government misrepresents the nature of Movant's claim. *Id.* While the Fourth Circuit addressed on appeal whether Detective Small's testimony that Arevalo told him "that's your Lemon Grove shooter" when shown a photo of Movant violated the Confrontation Clause, *Umaña*, 650 F.3d at 349, it did not address Movant's argument here – whether counsel was ineffective for not objecting when the prosecutor committed misconduct by circumventing this Court's procedural safeguards for evaluating the hearsay evidence. *See* Claim XII, discussed *infra*. Movant's claim here is not foreclosed by prior ruling.

          *ix.*     *Evidence of Coaching.*

In response to Movant's argument that trial counsel were ineffective for failing to present evidence that the LAPD detectives coached the Fairfax co-defendants' statements implicating Movant as the shooter, the government argues that trial counsel undertook the "entirely reasonable strategy" of arguing that the co-defendants fabricated the story together. Civ. Doc. 52 at 86-87. Confronting the detectives with their suspect interrogation techniques, however, is a distinct and complementary tactic that would have only strengthened defense counsel's theory that the suspects fabricated the story for their own self-interest. Although, as the government notes, the jury received transcripts of the Fairfax co-defendants' statements, those transcripts unfairly damaged Movant by presenting other crimes evidence that the jury otherwise would not have been permitted to hear. Counsel should have examined the detectives and argued in open court.

160

### x. *Improper Vouching.*

Contrary to the government's argument, *id.* at 87, the Fourth Circuit did not address Movant's allegations regarding counsel's failure to object to the incomplete redaction of the transcript of Parshall's interrogation of Arevalo. While it is true that Movant's appellate counsel raised issues regarding vouching on direct appeal, appellate counsel did not complain about the government's improper failure to redact materials that this Court instructed the prosecutor to sanitize from the transcript. *See* Br. of Appellant at 87-89, *United States. v. Umaña*, No. 10-6 (4th Cir. Sept. 3, 2013); *see also infra* Claim XII.

### xi. *Daubert Challenge to Government Ballistics Evidence.*

The government presents no specific argument regarding this sub-issue, and it was not addressed in the prior discovery litigation. However, to the extent that the prior discovery litigation did not address portions of claims that the government contends should be controlled by the moot discovery order, the government also directs this Court to its prior motion to dismiss. Civ. Doc. 187 at 26. Movant contends that such incorporation is improper since there should be no question that the prior Motion to Dismiss is mooted by the Court's January 2025 order directing the government to respond to the Operative Motion. Nevertheless, Movant will respond to those prior arguments.

The government's argument regarding Movant's claim, Civ. Doc. 146 at 224-30, that trial counsel were ineffective for failing to challenge the admissibility of William Moore's testimony regarding toolmark identification fails. First, the government improperly speculates that trial counsel could have had a reasonable basis for declining to challenge the toolmark identification testimony, Civ. Doc. 143 at 45, when the standard for a motion to dismiss requires that this Court view all facts and make all reasonable inferences in Movant's favor.

Second, the government contends that it would have been a "long-shot challenge" challenge, because "expert testimony like Moore's has been accepted in the Fourth Circuit and elsewhere for decades." Civ. Doc. 143 at 45.[35] Although federal courts may have once permitted toolmark analysis testimony without controversy, that is no longer the case. In *United States v. Davis*, 4:18-CR-00011, 2019 WL 4306971, at \*7 (W.D. Va. Sept. 11, 2019), the district court prohibited the government's experts from testifying that "the marks indicate a 'match,' that the cartridge cases were fired by the same firearm," that the "cartridge cases have 'signature' toolmarks identifying a single firearm." The court further barred the experts from testifying "'to a level of practical impossibility' that cartridges could be identified to a single firearm" or "express any confidence level" in their conclusions. *Id.*; *see also United States v. Mouzone*, 687 F.3d 207, 215 (4th Cir. 2012) (discussing district court order prohibiting toolmarks expert from testifying it was practical impossibility for different firearms to have fired casings and expressing any degree of certainty about opinion); Order at 118, *United States v. Medley*, No. PWG 17-242 (D. Md. April 24, 2019), ECF No. 111 (prohibiting toolmarks expert from opining that cartridges came from same gun and expressing any level of confidence in his conclusions); *United States v. Willock*, 696 F. Supp. 2d 536, 546 (D. Md. 2010) (restricting characterization of certainty of firearms expert's toolmark identification, in part, because of concerns raised by National Research Council studies); Nat'l Rsch. Council, *Strengthening Forensic Science in the United States: A Path Forward* 42,

---

[35] The government cites *Royal v. Taylor*, 188 F.3d 239 (4th Cir. 1999), and *Smith v. Smith*, 931 F.2d 242 (4th Cir. 1991), for this point, but the cited cases discuss the toolmarks identification testimony only as part of their summary of the trial and do not consider the use of toolmarks in their analysis, *Royal*, 188 F.3d at 245; *Smith*, 931 F.2d at 245. Relatedly, the government also states that "since Umaña's trial, other federal courts have permitted Moore to testify as a firearms expert." (Civ. Doc. 143 at 46). But the sole case cited, *Coleman v. Foulk*, CV 14-00133 JLS AN, 2014 WL 3734535 (C.D. Cal. July 28, 2014), is a decision denying a pro se petitioner's 2254 petition, which mentions in passing that Moore had testified during the state trial that the bullets were from two different types of firearms.

153-55 (2009); Nat'l Rsch. Council, *Ballistic Imaging* 1-5, 55, 82 (2008). Considering the growing judicial skepticism of toolmark identification at the time of Movant's trial, Movant states a plausible claim that trial counsel were ineffective for failing to challenge Moore's testimony.

### xii.    Failure to Obtain Defense Ballistics Expert.

Likewise, this issue was not addressed in the prior discovery litigation, so the government directs this Court to its prior Motion to Dismiss in which the government faults Movant for failing to 'identif[y] an expert who has evaluated [] Moore's work and found that there was 'no science basis for it.'" Civ. Doc. 143 at 46. The Operative Motion remedies this alleged deficiency, including a declaration from John Nixon challenging the veracity of Moore's expertise and conclusions and toolmark identification broadly. Further, Movant's 2255 Motion details specific criticism of toolmark identification and Moore's testimony based on scientific studies. *See id.* at 226-30; Civ. Doc. 150, Appx. 241.

### xiii.    Reliability Instruction.

Likewise, this issue was not addressed in the prior discovery litigation, so the government directs this Court to its prior Motion to Dismiss in which the government maintains that the Fourth Circuit has determined that the jury should not have been instructed regarding the "presumptively unreliable" hearsay statements from MS-13 accomplices introduced through professional, law enforcement witnesses. Civ. Doc. 143 at 47. This is wrong. The Fourth Circuit decided the question of whether the district court abused its discretion in admitting the hearsay evidence testimony, not the distinct question of how the jury should have been instructed to consider that evidence. *Umaña*, 750 F.3d at 348. Even in cases where similar hearsay evidence ultimately was permitted before a jury, instructions educating the jury to consider the testimony of the defendant's accomplices with caution and care have long been used and approved. *See Cool v. United States*, 409 U.S. 100, 103 (1972). Further, the Fourth Circuit considered the reliability of the hearsay evidence against only

163

the evidence presented on direct appeal and without the additional facts included in 2255 proceedings. *Umaña*, 750 F.3d at 348; *see also Bousley*, 523 U.S. at 621-22 (describing how appellate courts cannot typically consider non-record evidence). The government's argument that the Fourth Circuit already condoned the double-hearsay statements of Rene Arevalo naming Movant as the Lemon Grove shooter, Civ. Doc. 143 at 91, similarly fails.

### c. Prejudice

The government's discovery response advances the argument that even if trial counsel were ineffective for failing to prove that Movant was not the shooter in Lemon Grove Park, there is no prejudice because the question before the jury was whether Movant "participated and aided and abetted the killing of Andy Abarca." Civ. Doc. 52 at 90. In support of this claim, the government relies on cases involving accomplice liability. *Id.* at 91 (citing *Rosemond v. United States*, 572 U.S. 65 (2014)). But capital sentencing is not a series of checkboxes, but rather asks jurors to engage in a holistic process of weighing aggravating and mitigating factors. 18 U.S.C. § 3593(e). And Movant states a plausible claim that there is a reasonable probability that one or more jurors presented with evidence that Movant was not the shooter would have weighed the case differently and that Movant would not have been sentenced to death.

The government's final suggestion that there can be no prejudice because the jury found five other aggravating factors supporting a sentence of death similarly fails. The government's attempt to downplay the importance of the Los Angeles homicides as aggravators in support of the death sentence defies common sense. *See* Doc. 52 at 60-61, 92-93. Evidence of an additional murder is "the worst kind of bad evidence." *Wong v. Belmontes*, 558 U.S. 15, 26 (2009). Moreover, at least two Fourth Circuit judges recognized that the unadjudicated homicides were the "difference between Mr. Umaña living and dying." *United States v. Umaña*, 762 F.3d at 416

(Gregory, J. dissenting from denial of rehearing en banc, joined by Wynn, J.). They explained the Lemon Grove and Fairfax homicides were both devastating and suspect. *Umaña*, 750 F.3d at 362 (Gregory, J., dissenting).

The conviction supporting the death sentence was a double murder that occurred after an argument in a bar. It is unlikely this crime alone would have supported a death sentence, given Movant's lack of previous convictions. Rather, the reason Movant received a death sentence is that the prosecutor was able to introduce out-of-court accusations from police informants and accomplices that accused Movant of several previous murders. An examination of the government's summation at sentencing demonstrates this: "[n]early every page" of the transcript references these past murders. *Id*. If at least two reasonable jurists believed that the Los Angeles homicides were the crux of the government's case for death, then it is reasonably probable that at least one juror felt the same.

These two murders were so intertwined that any weakness in one of the aggravators undermines the other. As the Court of Appeals noted, there were "legitimate arguments" regarding the lack of reliability of the hearsay statements of accomplices used to support the government's allegation that Movant was the Fairfax shooter. *Id.* at 348-49. The court, however, determined that the reliability of the accomplice statements was bolstered by the fact that Movant was identified as the shooter at Lemon Grove Park and there was a ballistics "match" between guns used at both homicides. *Id.* at 349; *see also* Crim. Doc. 1021 at 5-6, 9-10. Thus, favorable evidence that undermines the government's case in one of the homicides also creates doubt as to the other.

In support of its meritless prejudice argument, the government contends that Movant "confessed" to "substantially participating" in those homicides, Civ. Doc. 52 at 60, 90. This contention is remarkable in light of the government's argument on direct appeal that "nobody in

165

the room that day viewed that as an admission of guilt" and that it was "anything but a true 'confession,'" Government's Brief at 113, *United States v. Umaña*, No. 10-6, (4th Cir.). The Court of Appeals relied on the government's position as a basis for denying relief. *Umaña*, 750 F.3d at 345 (noting that Movant "never did" confess and "never admitted to committing any of the murders").

Accordingly, the government should be estopped from making the opposite argument now. *See In re Breibart*, 325 B.R. 724, 727 (Bankr. D.S.C. 2004) (finding party can be estopped from "accepting the benefits of a transaction or statute and then subsequently taking an inconsistent position to avoid the corresponding obligations or effects"); *Siddiqui v. United States*, 98 F.3d 1427 (2d Cir. 1996) (manifestly unjust for government to pursue inconsistent positions in criminal case). Likewise, the government cannot now suggest that being the actual triggerman versus a non-triggerman-accomplice are equal in aggravation, when the government repeatedly argued at trial that Movant deserved death because he was different than the other gang members because he was a killer. Civ. Doc. 52, Exh. 1 at 3467-68. Finally, Movant's mental impairments undermine the reliability of any so-called confession and the reliability of aggravating circumstances overall. *See* Civ. Doc. 146, Claim XIX.

Movant states a plausible claim that absent this weighty factor, there is a reasonable probability that at least one juror would have weighed the aggravating and mitigation factors differently and chose a different sentence.

Movant's claim – and factual proffers, which must be accepted as true at this stage – state a plausible claim for relief that counsel were constitutionally ineffective for failing to present evidence discrediting the credibility of the witnesses and the quality of the evidence that linked Movant to the California homicides. Dismissal is improper.

3. **The Facts Contained in Claim VI.A and VI.B – Regarding the Prosecution's Violation of its *Brady* Obligations Regarding the Unadjudicated Homicides Used in Aggravation – State a Plausible Claim for Relief.**

The government urges this Court to dismiss Claim VI.A and Claim VI.B based on the Court's prior, now mooted discovery order and the government's prior discovery response. Civ. Doc. 187 at 26, 73. The government specifically argues this claim should be dismissed because this Court has already found that Movant has failed to allege facts identifying *Brady* material that the government failed to disclose. *Id.* at 73. The government's arguments should be rejected. At the motion to dismiss stage, Movant's factual allegations must be accepted as true and Movant need only demonstrate a plausible claim for relief. *Twombly*, 550 U.S. at 556. Movant has done that here.

> a. *Failure to disclose that Roberto Ramos could have testified that Movant was not the Lemon Grove shooter.*

In support of his claim, Movant offered a declaration from Roberto Ramos that Ramos had not seen Movant at Lemon Grove Park the night of the homicide; when Ramos saw Movant in open court, he "thought that something was wrong because the defendant was not one of the guys I saw the night of the shooting," and that – consistent with the prosecutor's instructions – he signaled this to the government. *See* Civ. Doc. 146 at 245-46; Civ. Doc. 150, Appx. 11, Ramos Decl. at pp.7-8. At the motion to dismiss stage, the Court must accept all facts offered by the non-moving party as true. *Twombly*, 550 U.S. at 556.

To the extent that government offers a different interpretation of Ramos's declaration, Civ. Doc. 52 at 47, at best, that creates an issue of disputed fact. Issues of disputed fact are not resolved at the motion to dismiss stage, where all facts must be construed in Movant's favor unless *conclusively* refuted by the record.

Nor is the information contained in Ramos's declaration cumulative. *Id.* at 47. The government misconstrues the nature of Movant's claim. The issue is not merely that Ramos could not make an identification, but that Ramos could have affirmatively *excluded* Movant. Civ. Doc. 150, Appx. 11, Ramos Decl. at pp. 7-8. Moreover, this argument again fails to make all reasonable inferences in favor of Movant, instead making reasonable inferences in favor of the government. Under the proper standard, Movant states a plausible claim that had the jury heard that Ramos would have affirmatively excluded Movant as one of the Lemon Grove Park aggressors there is a reasonable probability that the results would have been different.

The facts presented in Ramos's declaration state a plausible claim that the government withheld exculpatory evidence, violating *Brady*.[36] This undisclosed exchange between Ramos and the prosecutor was exculpatory, as it was directly exonerative of Movant for the Lemon Grove Park shooting. Civ. Doc. 146 at 246-47. And it was prejudicial. *Id.* at 247-50. Ramos's affirmative exclusion of Movant would have been especially persuasive because of the Lemon Grove witnesses, only he expressed confidence that he had viewed the Lemon Grove Park attacker's face clearly enough to identify someone. PPT 126-127, 135-136. Relatedly, trial counsel could have used Ramos's exculpation to undermine Freddy Gonzalez's identification of Movant. Civ. Doc. 146 at 197-98. Movant states a plausible claim that there is a reasonable probability that if Ramos's exculpatory testimony that Movant was not one of the Lemon Grove Park perpetrators had been presented to the jury, the outcome of the proceedings would have been different.

---

[36] Respondent did not offer any argument against the evidence Movant proffered to prove the police and the prosecution suppressed evidence. Assuming the uncontested veracity of the declaration from Roberto Ramos (Declaration of Roberto Ramos, Civ. Doc. 150, Appx. 11, ¶¶ 9, 13-16, 24-32), this Court can only reach the inescapable conclusion that the government suppressed evidence.

### b. Failure to disclose audio recordings of witnesses.

Movant argues that the government failed to meet its *Brady* obligations by not disclosing audio recordings of detectives' interviews with Freddy Gonzalez in which he initially could not identify anyone until prodded by detectives. Civ. Doc. 146 at 251-53. The government contends that there can be no *Brady* issue for failing to give trial counsel the audio recordings of Freddy Gonzalez's interviews because trial counsel received Freddy Gonzalez's written statement expressing uncertainty and the corresponding photographic line-up.[37] Civ. Doc. 52 at 50-51.

The government makes factual errors in assessing the evidence not provided to trial counsel. The interviews with Freddy Gonzalez reveal that Gonzalez was initially unable to identify anyone until pressed by detectives to pick a photograph; this is more than mere uncertainty. A compelling picture of Gonzalez's initial inability to make an identification was documented in detail in the material audio recording of his interview not known to the defense. Civ. Doc. 147, Appx. 253.

The Operative 2255 Motion only specifically addresses Gonzalez's audio recording on this point. Civ. Doc. 146 at 251-53 & n.65. Considering that the produced audiotapes contain *Brady* material, the audio-recorded interviews of Gonzalez revealed the detail that Gonzalez did not see the shooter's face, which makes it impossible for him to have made any credible identification, not even a tentative one, based on the photo line-ups showing only the faces of suspects, which would have allowed further impeachment of Gonzalez, and that other audiotapes remain outstanding, post-conviction counsel maintains there is a good faith basis to believe additional evidence was

---

[37] Again, the government did not offer any argument against the evidence Movant proffered to prove the police and the prosecution suppressed evidence. Assuming the accuracy of the police reports that identify undisclosed audio recordings of a suspect and critical witness, Civ. Doc. 36-1 at 8, 15-16, 36, this Court can only reach the inescapable conclusion that law enforcement suppressed evidence.

not produced relating to the Lemon Grove and Fairfax murders. Civ. Doc. 146 at 253 n.65. The government counters that Movant improperly relies on speculation to support that other, unproduced recordings contain *Brady* material. Civ. Doc. 52 at 52. At the motion to dismiss stage, however, the standard is whether, considering Movant's allegations and any reasonable inferences, it is *plausible* that that the government failed to disclose exculpatory and material evidence. *United States v. Caro*, 597 F.3d 608, 619 (4th Cir. 2010) (concluding on direct appeal that trial court did not err in denying defendant's *Brady* motion because defendant "failed to establish that the information requested would be favorable to him" and could "only speculate as to what the requested information might reveal"). Movant meets this generous threshold, explaining the unanswered questions raised by the documents provided to trial counsel and pointing to a pattern of discrepancies between the reports provided to trial counsel and the contents of the audio recordings.

Additionally, the government states – without support – that these audio recordings cannot contain *Brady* material because they are of non-testifying witnesses. Civ. Doc. 52 at 52-53. But *Brady* compels disclosure of material and exculpatory evidence without reference to whether some shadow of the evidence appeared at trial. *See Brady*, 373 U.S. at 84, 90-91 (concluding government violated due process clause for failing to disclose unsigned confession of co-defendant who did not testify at trial).

The government's arguments for dismissal should be rejected. At the motion to dismiss stage, Movant's factual allegations must be accepted as true and Movant need only demonstrate a plausible claim for relief. *Twombly*, 550 U.S. at 556. Movant has done that here.

4. **The Facts Contained in Claim VII.D – Regarding the Prosecution's Presentation of Materially Misleading and/or False Evidence and Argument Regarding the Unadjudicated Homicides Used in Aggravation – State a Plausible Claim for Relief.**

The government urges this Court to dismiss Claim VII.D based on the Court's prior discovery order and the government's prior discovery response, Civ. Doc. 187 at 26, 86-87, argues the entire claim is procedurally defaulted, *id.* at 86, and finally that the portion of the claim regarding the admission of his interview transcript is untimely because he previously attempted to present it as part of Claim 35 of his 2018 Supplemental/Amended 2255 Motion, which the Court found untimely. *Id.* at 87. This Court should reject the government's arguments regarding Claim VII.D.[38]

a. *Materially Misleading and False Evidence and Argument at the Penalty Phase Regarding the LA Homicides (VII.D.1 & VII.D.2).*

The government's argument that this claim is defaulted because Movant failed to raise it at trial or direct appeal, *id.* at 86; Civ. Doc. 52 at 62-63, must be rejected. As demonstrated above, the default cases relied upon by the government have no bearing here. Moreover, the post-trial evidence, including Parshall's role in interviewing the Fairfax accomplices, audio recordings of those interviews (and the government's knowledge of it), and the government's knowledge of Freddy Gonzalez's false statements at trial, is, by definition, outside the record, *see* Civ. Doc. 146 at 280, further confirming the inapplicability of default. *Supra* Section III.B.

If this claim was raisable at trial or appeal such that it was potentially defaulted (which it was not because of the government's suppression of relevant evidence), then trial counsel rendered ineffective assistance by not thoroughly investigating these aggravating offenses. Trial counsel

---

[38] Movant has already addressed the government's allegations regarding the remainder of Claim VII in *supra* Section IV.B.5.

171

had no reason to not thoroughly investigate; the trial court allowed them to retain a private investigator to develop evidence regarding these offenses. *See* Crim. Doc. 467 (filed April 17, 2009) (sealed). Trial and/or appellate counsel's ineffectiveness constitutes cause and prejudice to overcome any default. *See supra* Section III.B.1.b.

### i. Lemon Grove

The government argued to this Court that it should permit Freddy Gonzalez to identify Movant before the jury because "when he was interviewed he said, I will never forget that face. If I can – you know, I will never forget that face." PPT 326. In front of the jury, the government elicited testimony from Gonzalez that he had identified Movant twice as the shooter and was certain about this identification. PPT 329-34, 830-31. This testimony was materially misleading and false evidence regarding the certainty of Gonazlez's identification of Movant as the Lemon Grove Park shooter.

The government contends that this claim fails because trial counsel elicited testimony from Gonzalez on cross-examination that he was uncertain about the identification. Civ. Doc. 52 at 68-69.

In assessing whether this claim fails or whether Movant has stated a claim for which relief can be granted, Rule 12(b)(6), the Court assumes all of Movant's factually supported allegations to be true and resolves all reasonable inferences therefrom in Movant's favor, unless they are conclusively disproven by the record. *Iqbal*, 556 U.S. at 679; *Nemet*, 591 F.3d at 255; *see also Hall*, 846 F.3d at 765.

At the outset, the audio recordings of interviews of Gonzalez provided to post-conviction counsel after the filing of the 2016 2255 Motion reveal that Gonzalez never said anything resembling what the government told this Court when arguing for the admissibility of Gonzalez's identification. Civ. Doc. 146 at 281; Civ. Doc. 36, Exh. 21(b); *see generally* Civ. Doc. 24 at 177-

79. Instead, the audio recordings establish that Gonzalez was initially unable to make any identification and only offered his identification after prodding by detectives. Civ. Doc. 146 at 252; Civ. Doc. 36, Exh. 21(b) at 12-13. Moreover, the government knew that the identification was made while Gonzalez was in custody for violating his probation and that detectives promised Gonzalez help if he assisted them. Civ. Doc. 146 at 285; Civ. Doc. 36, Exh. 21(a) at 2, 47-48; Civ. Doc. 36, Exh. 21(b) at 2, 4-5, 10. Although counsel solicited some uncertainty from Gonzalez on cross-examination about his identification of Movant, that testimony does not neutralize the weight of the government's presentation of false evidence. PPT 335-36.

And in accordance with the 12(b)(6) standard, the facts as provided in the 2255 Motion state a plausible claim that there is a reasonable likelihood that the false testimony regarding the certainty of Mr. Gonzalez's identification affected the judgment of the jury. Gonzalez was a key witness for the government, as no other eyewitnesses identified Movant as the Lemon Grove shooter. As the Court of Appeals noted, there were "legitimate arguments" regarding the lack of reliability of the hearsay statements of suspects used to support the government's allegation that Movant was the Fairfax shooter. *Umaña*, 750 F.3d at 348-49. The court, however, determined that the reliability of the suspect statements in Fairfax was somewhat bolstered by the fact that Movant was identified as the shooter at Lemon Grove Park. Crim. Doc. 1021 at 5-6, 9-10. Thus, favorable evidence that undermines the government's case in Lemon Grove, also creates doubt about the case for Fairfax. Given Gonzalez's role as the sole eyewitness who identified Movant, this court can and should assume knowledge of his unwillingness to identify anyone and the suspect

173

circumstances of his identification poses a reasonable likelihood of affecting the judgment of the jury, and deny the government's motion to dismiss.[39]

### ii. Fairfax

Further, the government presented evidence through Detective Parshall that Movant's co-defendants for the Fairfax offense, Luis Rivera, Luis Ramos, and Rene Arevalo, all corroborated one another and all consistently told police that Movant was the Fairfax shooter. PPT at 221-22. But the transcripts from their interviews reveal that this corroboration was created; Parshall took Luis Rivera's version of what happened, provided that to the other two co-defendants, and warned them that they could be blamed as the shooter if they did not provide a statement that was consistent with Rivera's account. Unsurprising, the two co-defendants took Parshall's suggestion and parroted Luis Rivera's account of the Fairfax Avenue shooting. Civ. Doc. 146 at 286.

The government first argues that Movant cannot meet the first requirement for a *Napue* claim – that the testimony be false. Civ. Doc. 52 at 70. As the Fourth Circuit explained, "[f]alse testimony includes both perjury and evidence that, though not itself factually inaccurate, creates a false impression of facts which are known not to be true." *Juniper v. Davis*, 74 F.4th 196, 211 (4th Cir. 2023) (quoting *Burr v. Jackson*, 19 F.4th 395, 410 (4th Cir. 2021)). Detective Parshall's testimony that the stories were consistent among the co-defendants created a false impression to the jurors that they arrived at similar stories on their own accord.

Second, the government argues that this claim fails because trial counsel had access to the transcripts of the interrogation of Luis Rivera and Rene Arevalo, which were introduced into

---

[39] The government's discovery response asks whether there is a reasonable probability of a different outcome, when the standard for a *Napue* claim is whether "there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Agurs*, 427 U.S. at 103.

evidence at trial. Civ. Doc. 52 at 70-71. *Napue*, unlike *Brady*, does not require that the information was unavailable to trial counsel. The case cited by the government, *United States v. Meinster*, 619 F.2d 1041 (4th Cir. 1980), involves a strategic decision not to challenge the false testimony. In *Meinster*, the court considered the claim waived where defense counsel testified at an evidentiary hearing that the government specifically informed them before trial that a testifying witness would receive a deal yet counsel chose not to pursue the issue further and instead, permitted the witness to deny the deal and challenge the testimony only after the trial. 619 F.2d 1041 at 1043-06; *see also Briley v. Bass*, 584 F. Supp. 807, 834 (E.D. Va. 1984), *aff'd,* 742 F.2d 155 (4th Cir. 1984) (considering *Meinster* and holding "petitioner's strategic decision not to go into the particulars of [witness's] full plea agreement, when he had knowledge of that full plea agreement, bars him at this time from alleging that the full plea agreement was not before the jury"). As discussed in Claim V, there is no obvious or strategic reason for trial counsel to let Detective Parshall's testimony go uncorrected.

Regarding the implication that because trial counsel had the transcripts of Parshall's interviews before trial, they must have made a strategic decision not to show the jury the corroboration by Parshall, the government is not entitled to make assumptions and demand their assumptions have enough weight to compel dismissal of a claim. For Rule 12(b)(6), the Court assumes all of Movant's factually supported allegations to be true, including the allegation that Detective Parshall coordinated the accomplices' statements regarding the Fairfax offense, and resolves all reasonable inferences therefrom in Movant's favor unless they are conclusively disproven by the record. *Iqbal*, 556 U.S. at 679; *Nemet*, 591 F.3d at 255; *see also Hall*, 846 F.3d at 765. The government has not conclusively disproven Movant's allegations with any evidence

175

from the record, but only offers assumptions unsupported by record evidence. This Court must reject the government's request to dismiss this claim.

> b. *Materially Misleading and False Evidence in Movant's Interrogation Transcript (VII.D.3).*

The government's arguments regarding these specific allegations, including its timeliness arguments, should be rejected. Movant acknowledged in the Operative Motion that the Court had previously denied leave to amend to include these allegations, Civ. Doc. 146 at 288 n.81, but argued that, regardless, this Court must consider the materiality of any *Brady/Napue* allegation cumulatively with all other such violations. Thus, the Court should consider these violations here. Movant's arguments are not procedurally defaulted because extra-record evidence is necessary to fully demonstrate the falsity of the statements contained in the transcripts. Moreover, to the extent this issue was available to prior counsel, Movant's trial and appellate counsel's ineffectiveness overcomes any asserted default. There can be no strategic basis for counsel's failure to object to and litigate on appeal the erroneous admission of false evidence against their client. There is a reasonable probability that the jury would have rejected the Los Angeles homicides had they not been exposed to the lies the detectives told during the interrogation. There is also a reasonable probability that inclusion of this issue on direct appeal would have tipped the scales in appellant's favor when dissenting judges in the appellate court already had concerns about the government's evidentiary presentation regarding the Los Angeles homicides.

Movant has proffered facts that state a plausible claim for relief. The government's motion to dismiss should be denied.

5. **The Facts Contained in Claim IX – Regarding Counsel's Ineffectiveness for Failing to Present Movant's Apology Note to the Jury – States a Plausible Claim for Relief.**

The government does not respond to Claim IX's merits specifically in its Motion to Dismiss. Nor does this Court's Discovery Order or the government's Discovery Response address Claim IX. Civ. Doc. 187 at 26. Nonetheless, because the government references arguments made in its clearly mooted prior Motion to Dismiss (Civ. Doc. 143), Civ. Doc. 187 at 26-27, Movant will respond to the government's arguments regarding Claim IX therein.

The government's argument in support of dismissal of this claim hinges on the purported double-edged nature of the apology note. Civ. Doc. 143 at 54-56. The government argues that counsel was reasonable not to present it (and there was no reasonable probability it would have swayed a juror) because it would have highlighted other negative aspects about Movant. *Id.* at 55-56.

As demonstrated throughout this Reply, the government's speculation as to counsel's purported strategic reasons is improper.

Moreover, Movant has proffered additional evidence in these proceedings that would mitigate much of the supposed "double-edged" nature of this evidence that the government relies upon. For example, the government suggests the apology note highlights Movant's status as a gang member, but Movant has proffered evidence tending to mitigate that status. *See*, *e.g.*, Civ. Doc. 150, Appx. 244, Report of Thomas Ward (Movant would not be a leader in his gang); Appx. 216 at ¶ 23, Decl. Pablo Stewart, M.D. (Movant would be a bad leader due to his impairments); *see also* Claims I, II, III.

Finally, the government ignores the fact that prejudice from counsel's deficient performance must be considered cumulatively. *See* Claim XXX. Movant need not show that this

177

single deficient act would have resulted in a reasonable probability of a life sentence, but that all of counsel's deficient acts combined would have prejudiced him.

Because the facts proffered here state a plausible claim for relief, dismissal is improper at this stage.

6. **The Facts Contained in Claim X – Regarding Counsel's Failure to Seek Redactions to Prevent the Jury from Hearing About Acquitted Other Crimes Evidence This Court Ruled Excluded – State a Plausible Claim for Relief.**

Although neither the government's Motion to Dismiss nor the Discovery Response and Order respond to Claim X's merits, the government references arguments made in its prior clearly moot Motion to Dismiss, Civ. Doc. 187 at 26-27. Accordingly, Movant will respond to the government's arguments in its prior Motion to Dismiss.

In the prior Motion to Dismiss, the government's argued that Claim X should be dismissed because Movant's attorneys did vigorously litigate the admission of the transcript of his police statement. Civ. Doc. 143 at 56-57. This misrepresents the trial record. Trial counsel moved to suppress Movant's statement based on Fifth, Sixth, and Eighth Amendment grounds. Crim. Doc. 490. That litigation had nothing to do with the acquitted other crimes evidence in Movant's statement.

As demonstrated throughout this Reply, the government's speculation about strategic reasons counsel might have had, Civ. Doc. 143 at 57-58, is improper. Moreover, to the extent that the record says anything about counsel's strategy regarding the acquitted other crimes evidence, the record tends to show that strategy was to prevent the jury from hearing it. *See* Crim. Doc. 960; *see also* Civ. Doc. 146 at 327-28. Counsel had already prevailed on this strategy, Crim. Doc. 1021, so could have reasonably expected success had they sought the redactions necessary to remove this otherwise excluded evidence from Movant's statement.

178

The Fourth Circuit's treatment of Movant's direct appeal claim that the government committed misconduct for introducing the transcript of Movant's statement when it contained references to the acquitted other crimes evidence that the Court had found inadmissible cannot control here as it is impossible to know the grounds upon which the Circuit denied relief on that claim when only Judge Gregory, in dissent, wrote on the issue. *See* Civ. Doc. 143 at 58; Civ. Doc. 146 at 329-30 & n.92.

Finally, the government's prejudice arguments are unavailing. Again, the government's argument is that, essentially, this attorney error could not have been prejudicial because it was a small one. Per the government, references to the acquitted conduct that this Court held inadmissible were few and far between. Civ. Doc. 143 at 58. What the government again ignores is that prejudice from counsel's deficient performance must be addressed cumulatively. *See* Claim XXX. Moreover, both this Court and Judge Gregory have already noted the prejudicial value of the acquitted other crimes evidence.

Movant has proffered facts that state a plausible claim for relief. Dismissal at this stage is improper.

7. **The Facts Contained in Claim XII – Regarding Prosecutorial Misconduct for Introducing Unredacted Exhibits Containing Information the Court Ruled Excluded – State a Plausible Claim for Relief.**

a. *This claim is not barred by the relitigation doctrine*

The government argues that three aspects of Movant's claim are barred by the relitigation doctrine. Civ. Doc. 187 at 82, n.9. This argument must be rejected. First, the government notes that Movant argued on direct appeal that the failure to redact accusations against Movant of other crimes in El Salvador amounted to prejudicial misconduct. *Id.* Although this is accurate, *see* Brief of Appellant, *U.S. v. Umaña*, No. 10-6 (4th Cir. 9/3/13) at 90-91, the sub-claim was not in fact "previously decided" by the Fourth Circuit. *See Boeckenhaupt v.United States*, 537 F.2d 1182,

179

1183 (4th Cir. 1976). The Circuit's majority opinion did not address, let alone "decide[]," this sub-claim. *See Umaña*, 750 F.3d at 349-50. Judge Gregory, in dissent, did address this issue, but only within a Sixth Amendment analysis – not within the context of prosecutorial misconduct, as is the context in which this claim is raised. *See Umaña*, 750 F.3d at 364 (Gregory, J. dissenting). As such, the majority opinion cannot control here as it is impossible to know the grounds upon with the Circuit denied relief on Movant's prosecutorial misconduct claim. If the Circuit believed this was prosecutorial misconduct, but denied relief based on prejudice, Movant's claim is properly considered in 2255 in a cumulative prejudice analysis. *See* Claim XXX.

Second, the government asserts that the Circuit considered and rejected the argument that a hearsay statement accusing Movant of committing the Lemon Grove murder was improperly presented. Civ. Doc. 187 at 82 n.9 (citing *Umaña*, 750 F.3d at 349-50, 359). While the Circuit did address on appeal whether this hearsay violated the Confrontation Clause, *Umaña*, 750 F.3d at 349-50, it did not address Movant's argument here – that the prosecutor committed misconduct by circumventing this Court's procedural safeguards. Just as the sub-claim discussed above, the majority opinion cannot control here as it is impossible to know the grounds upon with the Circuit denied relief on Movant's prosecutorial misconduct claim.

Third, the government argues that Movant's sub-claim concerning the "references to the interviewing officer's belief that Arevalo was telling the truth in Arevalo's interview transcript" has also been previously litigated. Civ. Doc. 187 at 82 n.9. While it is true that Movant's appellate counsel raised issues regarding vouching on direct appeal, appellate counsel did not complain about the government's improper failure to redact materials that this Court instructed the prosecutor to sanitize from the transcript. *See* Brief of Appellant at 87-89, *United States v. Umaña*, No. 10-6 (4th Cir. Sept. 3, 2013).

*b. This claim is not procedurally defaulted as Movant can establish cause and prejudice*

The government asserts that if this claim is not barred by the relitigation doctrine, it is procedurally defaulted because Movant did not raise this claim during trial or on direct appeal and, further, he is unable to establish cause and prejudice for failure to do so. Civ. Doc. 187 at 77-78, 81-83. This argument must be rejected.

First, although the crux of the argument concerns prosecutorial misconduct, Movant has also raised this claim as one of trial counsel's ineffectiveness for failing to object and fully litigate this issue at the time of trial. Civ. Doc. 146 at 344 & n.96, 350-51. There are no bars to this Court's consideration of claims of ineffective assistance of trial counsel in 2255. *See Massaro*, 538 U.S. at 504. To the extent this claim could have been, but was not, raised at trial, this Court can reach the merits of Movant's underlying claims of prosecutorial misconduct because his allegations of trial counsel's ineffectiveness also constitute cause and prejudice to excuse any default. *See Murray*, 477 U.S. at 488.

Second, the government summarily contends that Movant's allegation of appellate counsel's ineffectiveness cannot establish cause for procedural default. *See* Civ. Doc. 187 at 79. However, as addressed in *supra* Section IV.B.1.b, Movant can demonstrate that his appellate counsel were ineffective. At the motion to dismiss stage, Movant's factual allegations must be accepted as true and Movant need only demonstrate a plausible claim for relief. *Twombly*, 550 U.S. at 556. Movant has done that here.

*c. Consideration of the merits of Claim XII*

The government does not provide any merits argument on this claim other than to direct this Court to arguments made in its prior Motion to Dismiss. Civ. Doc. 187 at 83 (citing Civ. Doc.

143 at 90-98). Although the prior Motion to Dismiss is clearly moot and such incorporation improper, Movant will respond to the government's arguments raised there.

The government's argument that it was not required to redact references to the acquitted conduct from the transcript of Movant's statement because that transcript was not among the proffered evidence that the Court held inadmissible, Civ. Doc. 143 at 92, is nonsensical. The fact that the government failed to include potentially objectionable evidence in its proffer should not exempt the government from abiding by the Court's clear ruling that the acquitted conduct was inadmissible. If the rule the government advances were correct, the government could simply avoid pretrial exclusionary rulings by providing courts with incomplete proffers. As explained in Claim X, the government's prejudice arguments are equally unavailing.

Regarding both the acquitted conduct issue, the incomplete redaction of Arevalo's interrogation, and the government's failure to adequately redact Exhibit 152, the government notes that trial counsel did not object or otherwise act in response to these government actions. *Id.* at 92, 94, 97. Movant would simply remind this Court that he has also asserted ineffective assistance of trial counsel regarding the acts and omissions in this claim.

Furthermore, regarding the specific comment in Exhibit 152, the government's attempt to minimize the prejudicial effect from the jury receiving that exhibit, Civ. Doc. 143 at 97, should be rejected. This Court has previously recognized the prejudicial impact of racist comments. *See*, *e.g.*, GPT 1050-51, 1061 (sustaining defense objection and finding probative value not substantially outweighed by risk of unfair prejudice of admission of proffered letter exhibit 167 that also contained inflammatory language against African Americans, when there were four African-American people on jury); Crim. Doc. 998 at 6 ("[T]he Court finds especially troubling certain racially-charged statements written in Exhibits 167 and 169"). The government's reliance on

182

*United States v. Mohr*, 318 F.3d 613 (4th Cir. 2003), Civ. Doc. 143 at 97, is misplaced. In *Mohr*, the Circuit held that the defendant police officer's racist comment "could not be redacted from the remainder of it without changing the meaning of that remark." 318 F.3d at 621. Movant's comment was irrelevant here.

In sum, Movant has proffered facts that state a plausible claim for relief. Dismissal at this stage is improper.

8. **The Facts Contained in Claim XIX – Regarding Trial Counsel's Failure to Investigate and Introduce Mental Health Evidence to Contest the Admissibility and Credibility of Movant's Police Statements – State a Plausible Claim for Relief.**

The government contends that Claim XIX, like all Movant's ineffective assistance of counsel claims– fails as a matter of law, without further claim-specific argument. Civ. Doc. 187 at 30-35. Although neither the government's Motion to Dismiss nor the Discovery Response and Order address Claim XIX's merits, the government also references arguments made in its prior clearly moot Motion to Dismiss, *id.* at 26-27. Accordingly, Movant will respond to the government's arguments in its prior Motion to Dismiss.

In its prior Motion to Dismiss, the government offered rank speculation about trial counsel's purported strategies, which counsel have neither stated nor endorsed. *See* Civ. Doc. 143 at 72-74. The government's speculation is improper. Because the government offers no evidence to rebut Movant's factual allegations, they must be credited as true at this Rule 12(b)(6) stage.

The government's prior speculation that trial counsel could have anticipated that the government would have responded with countering mental health evidence, *see id.* at 72, fails for at least two reasons. First, the fact that the Court ultimately found that Movant had not proven intellectual disability does not necessarily mean that the Court would not have credited Movant's experts regarding Movant's rights waiver had that evidence been presented in support of

183

suppression. They are two separate issues and Movant's mental health impairments did not need to rise fully to the level of intellectual disability (even though he is intellectually disabled) to impact his ability to provide a knowing, voluntary, and intelligent waiver. Second, the government fails to address the component of this claim that alleges a failure to investigate. With a reasonable investigation, counsel would have had more expert testimony than just Drs. Olley and Weinstein to support their argument and would have had additional lay witness evidence to support their doctors' opinions regarding Movant's ability to provide a knowing, voluntary and intelligent waiver. *See* Civ. Doc. 146 at 425-29.

The government's further speculation that counsel would not have wanted to challenge the reliability of Movant's statement before the jury because it would have prompted the jury to read the statement, *see* Civ. Doc. 143 at 74, must be rejected. If that were the standard, no trial attorney would ever contest the credibility of their client's statement before a jury.

Contrary to the government's contention, *see id.* at 73, mental health testimony would have been relevant and admissible to the question of whether Movant's waiver of his *Miranda* rights was knowing and intelligent and whether his statement was voluntary. The "characteristics of the defendant" remain relevant to this inquiry. *See, e.g.*, *United States v. Cristobal*, 293 F.3d 134, 140 (4th Cir. 2002) (citing *United States v. Pelton*, 835 F.2d 1067, 1071 (4th Cir. 1987)); *see also* Civ. Doc. 146 at 429.

Finally, the government's reliance on what this Court and the Fourth Circuit found *without the benefit of the testimony developed in 2255*, *see* Civ. Doc. 143 at 73-74, again applies the wrong prejudice analysis for post-conviction. The question is not what the courts found without the benefit of this evidence. The question is how the trial would have been different if counsel had performed effectively and this Court, the appellate court, and the jury had heard evidence that

184

Movant did not know what he was doing when he allegedly waived his rights and submitted to interrogation.

Movant has pled a plausible claim for relief and summary dismissal is improper.

        9.      The Facts Contained in Claim XXIII – Regarding Trial Counsel's Ineffective Presentation of His Case to the DOJ – State a Plausible Claim for Relief.

In Claim XXIII, Movant alleged that trial counsel were ineffective in presenting his case to the Department of Justice when the Department of Justice was deciding whether to authorize this case for capital prosecution. Civ. Doc. 146 at 520-23. In support of that claim, Movant proffered the facts that, *inter alia*, counsel was not prepared to present to the DOJ; counsel told the prosecution that he had done nothing to prepare; and counsel asked if the DOJ presentation could be postponed and was told "no." *See id.* at 520-21; *see also* Civ. Doc. 150, Appx. 79. The Operative 2255 Motion demonstrates the vast universe of evidence that trial counsel could have obtained through reasonable investigation to present to the DOJ in support of non-authorization, including lay witness mitigation; mental health expert evidence; and evidence undermining the government's case in aggravation. *See* Claims I, II, III, IV, and V.

This government's argument that this Court should dismiss Claim XIII for the reasons stated in the Court's 2022 Discovery Order and the government's prior discovery response, Civ. Doc. 187 at 26, should be denied. Movant's right to counsel attached when he was indicted, long before the authorization proceedings. *Brewer v. Williams*, 430 U.S. 387, 398 (1977). DOJ authorization protocols specifically mandated counsel's participation. *See* USAM Guidelines § 9-10.050. Having conferred the right to counsel during the authorization proceedings, the Sixth Amendment required that counsel be effective. *McMann v. Richardson*, 397 U.S. 759, 771, n.14 (1970).

In a similar situation – a plea offer – the Supreme Court explicitly recognized that the Sixth Amendment's "protections are not designed simply to protect the trial" but "appl[y] to pretrial critical stages that are part of the whole course of a criminal proceeding." *Lafler v. Cooper*, 566 U.S. 156, 165 (2012). Although there is no constitutional right to capital authorization proceedings, just as there is no right to pretrial plea negotiations, the government's creation of a process that provides specific procedures for reaching a capital authorization and mandating counsel's participation where capital authorization is approved, requires a defendant be provided effective assistance of counsel. *See id.* (citing *Evitts v. Lucey*, 469 U.S. 387, 401 (1985); *Douglas v. California*, 372 U.S. 353 (1963)).

The Sixth Amendment right to counsel at the authorization stage also flows from the Supreme Court's jurisprudence recognizing circumstances where "the guiding hand of counsel . . . is essential to protect the indigent accused against an erroneous or improper prosecution." *Coleman v. Alabama*, 399 U.S. 1, 9 (1970). Thus, the Supreme Court has also found counsel's assistance necessary at preliminary hearings, *id.* at 8, and probation revocation sentencing proceedings, *Mempa v. Rhay*, 389 U.S. 128, 135 (1967). Movant has stated a plausible claim, and the government's motion to dismiss should be denied.

10. **The Facts Contained in Claim XXIV – Regarding Trial Counsel's Ineffectiveness in Plea Negotiations – State a Plausible Claim for Relief.**

In Claim XXIV, Movant alleged that trial counsel were ineffective in negotiating a plea and advising him regarding a plea. Civ. Doc. 146 at 524-27.

The government addresses only one of Movant's theories in its Motion to Dismiss. *See* Civ. Doc. 187 at 67-70 (addressing allegation that trial counsel were ineffective for failing to adequately communicate a plea offer to Movant). Further, the government outlines the requirements for relief regarding a claim of ineffective assistance in the plea process. *Id.* at 68. But

186

these requirements need not be fulfilled for a claim to survive a Motion to Dismiss. *See Thompson v. United States*, No. 5:15-CR-58-BR, 2019 WL 2126691, at *1 (E.D.N.C. May 15, 2019) (citing *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015)). The motion to dismiss standard requires this Court to accept Movant's proposed facts as true, not challenge or interpret the facts. Contrary to the government's arguments, Movant has proffered sufficient factual bases, when assumed true, to support a plausible claim that counsel advised him ineffectively even if it strikes this Court that "actual proof of those facts is improbable." *Twombly*, 550 U.S. at 556. And, contrary to the government's arguments, Movant has identified specific acts and omissions of counsel that constitute deficient performance in (not adequately) advising him. *See* Civ. Doc. 146 at 524-27 (detailing how counsel did not spend enough time with their client and waited until too late in process; did not adjust their approach to communicating with Movant to accommodate his known impairments; and did not confirm that Movant understood differences between U.S. and Salvadoran criminal legal systems). This claim should not be dismissed.

The government failed to address Movant's second theory that, had trial counsel adequately investigated and developed evidence of trauma, brain damage, intellectual disability, and mental illness, there is a reasonable probability that they would have persuaded the Department of Justice to prosecute Movant non-capitally or offer a plea deal that did not require cooperation. As demonstrated throughout the Operative Motion, there was a wealth of mental health mitigation evidence readily available to trial counsel had they simply followed up on all investigatory red flags, knocked on doors that were literally in front of them, and conducted a constitutionally-adequate investigation into both his background and mental health. Counsel had none of this evidence when they presented Movant's case to the DOJ before capital authorization, *see* Claim XIII, and had only a small snippet of this evidence – the paltry evidence that formed the basis of

187

their presentations at the *Atkins* hearing and trial – as they continued to negotiate as trial approached. As demonstrated in Claims I, II, III, and IV the evidence that trial counsel did not have but which was developed in these 2255 proceedings wholly changes the picture of Movant's life history and mental health. There was a reasonable probability of a non-capital disposition to this matter had counsel performed effectively. Movant has stated a plausible claim, and the government's motion to dismiss should be denied.

11. **The Facts Contained in Claim XXV – Regarding the DOJ's Unconstitutional Decision to Seek Death Based on Race and Geography – State a Plausible Claim for Relief.**

The government asserts that Claim XXV fails as a matter of law for the reasons stated in the prior Discovery Order and the government's prior discovery response. Civ. Doc. 187 at 26-28, 83. The prior discovery proceedings are moot and not controlling for the reasons stated in Section III.C. Moreover, the government's substantive arguments presented in the Discovery Response fail when all of Movant's proffered facts, not just those that were contained in the 2016 2255 Motion that was the foundation of the prior moot discovery proceedings, are considered under the proper standard for this stage of litigation.

Unlike the "prima facie claim" standard applied by the Court in the prior discovery order, at the Rule 12(b)(6) stage, the Court assumes all of Movant's factually supported allegations to be true and resolves all reasonable inferences therefrom in Movant's favor, unless they are conclusively disproven by the record. *Iqbal*, 556 U.S. at 679; *Nemet*, 591 F.3d at 255; *see also Hall*, 846 F.3d at 765. The government does not contest Movant's facts in support of this claim. Thus, Movant's factual allegations must be presumed true.

Moreover, Movant's amended claim alleges additional facts of the racial impetus and effect behind the DOJ's charging decision and prior counsel's ineffectiveness that were not previously before this Court. Specifically, Movant amended with the declaration of statistician Jeffrey Martin,

188

showing that the DOJ's decision to charge Movant federally in the Western District, instead of allowing this case to proceed in Guilford County, resulted in a jury venire that was statistically significantly more white than Movant would have been afforded had this case remained a state prosecution. Civ. Doc. 146 at 529; Civ. Doc. 150, Appx. 273. The government has neither addressed nor offered evidence to rebut these factual allegations, so they must be accepted as true at this stage.

To the extent that Movant has not proffered further specific facts demonstrating the DOJ's treatment of similarly situated individuals or the bad faith of the prosecution here, *see* Civ. Doc. 52 at 130-31, that is information that is uniquely in the government's possession. The record is insufficiently developed due to trial counsel's ineffective failure to litigate this issue.

The government's contention that this claim is procedurally defaulted, Civ. Doc. 187 at 76-83, fails. This claim could not have been raised on direct appeal as it requires the development of facts outside the record. *See* Civ. Doc. 146 at 527-31. To the extent it could have been raised on direct appeal, appellate counsel were ineffective, which constitutes cause and prejudice to overcome default. Moreover, Movant's allegation of ineffective assistance of trial counsel is properly raised in 2255 proceedings and is not subject to any default, as is his substantive claim of appellate counsel's ineffectiveness. *See Massaro*, 538 U.S. at 504.

Dismissal is improper at this Rule 12(b)(6) stage.

12. **The Facts Contained in Claim XXVIII – Regarding the Eighth Amendment's Prohibition on Execution of Individuals with Brain Damage and Other Mental Health Impairments – State a Plausible Claim for Relief.**

The government contends this claim is procedurally defaulted for failure to raise at trial or on direct appeal and, further, that Movant cannot establish cause and prejudice. Civ. Doc. 187 at 77-78, 81-83. The government provides no specific analysis here, but because it also directs this

189

Court to its prior, moot Motion to Dismiss, *see id.* at 26; Civ. Doc. 143 at 105-06, Movant will respond to those prior arguments.

To the extent that this legal claim and its factual basis were available to trial and/or direct appeal counsel, trial and/or direct appeal counsel's ineffectiveness constitutes cause to overcome any default. Trial and appellate counsel should have known about the existence of this claim. For example, in August 2006 (nearly four years before Movant's trial), the American Bar Association issued Recommendation 122A, which stated that "Defendants should not be executed or sentenced to death if, at the time of the offense, they had a severe mental disorder or disability that significantly impaired their capacity (a) to appreciate the nature, consequences or wrongfulness of their conduct, (b) to exercise rational judgment in relation to conduct, or (c) to conform their conduct to the requirements of the law." ABA Death Penalty Due Process Review Project, *Severe Mental Illness*, https://www.americanbar.org/groups/crsj/projects/death_penalty_due_process_review_project/severe-mental-illness-initiative/ (last visited Dec. 30, 2025); *see also* E. Packard, *Associations concur on mental disability and death penalty policy*, Monitor on Psychology, Vol. 38, No. 1 (Jan. 2007) (noting policies of ABA, American Psychological Association, and American Psychiatric Association against death penalty for individuals with severe mental illness), *available at* https://www.apa.org/monitor/jan07/associations (last visited Jan. 1, 2026).

Capital counsel have a duty to "consider all legal claims potentially available" and "thoroughly investigate the basis for each potential claim before reaching a conclusion as to whether it should be asserted." ABA Guidelines, 2003, Guideline 10.8 – The Duty to Assert Legal Claims.

Movant was prejudiced by prior counsel's failure to raise this claim as there is a reasonable probability that this Court (or the appellate courts) would have vacated Movant's death sentence on this ground had it been litigated.

Alternatively, because Movant is severely mentally ill and those with severe mental illness should be excluded from death-eligibility, Movant has shown that he is actually innocent of the death penalty. *See supra* Section IV.B.3; *Sawyer*, 505 U.S. at 336. The government asserts that Movant cannot prove that his impairments make him ineligible for the death penalty because the government's trial experts "disagreed sharply" with Movant's trial experts. Civ. Doc. 143 at 106. The government's argument fails to account for the wealth of expert evidence that Movant has proffered (supported by declarations/affidavits/reports) in support of his 2023 Amended 2255 motion. Those experts' opinions have not yet been subject to a hearing, adversarial testing, or credibility determinations. At this juncture, the record is silent on whether the government can undermine or otherwise rebut Movant's proffered evidence of brain damage, low IQ, trauma, and psychotic symptomology and this Court must accept Movant's factual allegations as true.

Moreover, contrary to the government's assertion (not backed up by any expert evidence), Dr. Gur's post-conviction findings regarding brain damage, Civ. Doc. 150, Appx. 29, are *supported* by the testimony of the government's rebuttal trial expert, Dr. Mayberg. Both Dr. Gur and Dr. Mayberg found that Movant's frontal lobes are hyperactive at rest. PPT 775-76; Civ. Doc. 150, Appx. 29 at 2-3. After Dr. Mayberg testified that she could not determine if the hyperactivity of the frontal lobe was normal without a quantitative analysis, PPT 779, Dr. Gur performed a quantitative analysis in post-conviction and, based on that analysis, explained that the hyperactive frontal lobe at rest was abnormal and would shut down when the damaged amygdala fired, Civ. Doc. 150, Appx. 29 at 4. The brain damage that both Dr. Mayberg and Dr. Gur *agree on* would

191

make Movant unable to modulate his response to a clear threat. Civ. Doc. 150, Appx. 29 at 3. This makes him less capable than a normal person and very similar to the class of intellectually disabled people discussed in *Atkins*. This Court should recognize that the Eighth Amendment excludes from death-eligibility defendants with severe mental illness like Movant, especially when both parties agree on the facts that prove brain damage.

The government's argument that this claim fails as a matter of law, Civ. Doc. 143 at 105, should be rejected. In his 2023 Amended 2255 Motion, Movant presented the legal argument that the Eighth Amendment bars the execution of individuals with "brain damage, trauma, and low intelligence that results in impaired cognition, judgment, impulse-control, and decision-making." Civ. Doc. 146 at 552-55. Movant's Motion further contains extensive factual proffer (backed by expert declarations/affidavits/reports) that Movant suffers from these impairments. *Id.* at Claims I, II, III, & IV. For all the reasons stated in the prior pleadings and this Opposition, this Court should find Movant ineligible for the death penalty based upon his impairments or, at minimum, allow for further evidentiary development of this claim. Dismissal at this stage is premature.

WHEREFORE, for the reasons above this Court should deny the government's motion to dismiss.

Respectfully submitted,

*/s/ Kelly D. Miller*
KELLY D. MILLER
Asst. Federal Public Defender
Federal Public Defender
Middle District of Pennsylvania
100 Chestnut Street, Third Floor
Harrisburg, PA 17101
Tel: 717-782-3843
Fax: 717-782-3966
kelly_miller@fd.org

Dated: January 2, 2026

**ARTIFICIAL INTELLIGENCE CERTIFICATION**

No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg.

Every statement and citation of an authority contained in this document has been checked by an attorney or a paralegal working at an attorney's direction as to the accuracy of the proposition for which it is offered, and the citation of authority provided.

*/S/ KELLY D. MILLER*
KELLY D. MILLER
Asst. Federal Public Defender
Federal Public Defender
Middle District of Pennsylvania
100 Chestnut Street, Third Floor
Harrisburg, PA 17101
Tel: 717-782-3843
Fax: 717-782-3966
kelly_miller@fd.org

Dated: January 2, 2026

193

**CERTIFICATE OF SERVICE**

I, Kelly D. Miller, hereby certify that I have electronically filed the foregoing document with the Clerk of Court using the CM/ECF system and a copy of the foregoing document has been served this day upon the following via CM/ECF:

Anthony J. Enright
Assistant United States Attorney
Suite 1650, Carillon Building
227 West Trade Street
Charlotte, NC 28202
anthony.enright@usdoj.gov

*/S/ KELLY D. MILLER*
KELLY D. MILLER
Asst. Federal Public Defender
Federal Public Defender
Middle District of Pennsylvania
100 Chestnut Street, Third Floor
Harrisburg, PA 17101
Tel: 717-782-3843
Fax: 717-782-3966
kelly_miller@fd.org

Dated: January 2, 2026

194